# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (A) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (B) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, (C) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING ADEQUATE ASSURANCE REQUESTS, AND (D) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) approving the Debtors' Proposed

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

1

Adequate Assurance (as defined herein) of payment for future utility services, (b) prohibiting Utility Companies (as defined herein) from altering, refusing, or discontinuing services, (c) approving the Debtors' proposed procedures for resolving Adequate Assurance Requests (as defined herein), and (d) granting related relief. In support of this Motion, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

**Background**

4. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

5. The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

6. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc., in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

**Relief Requested**

7. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively: (a) approving the Debtors' Proposed Adequate Assurance (as defined herein) of payment for future utility

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

services; (b) prohibiting Utility Companies (as defined herein) from altering, refusing, or discontinuing services; (c) approving the Debtors' proposed procedures for resolving Adequate Assurance Requests (as defined herein); (d) authorizing, but not directing, the Debtors to pay Summit (as defined below) in the ordinary course of business; (e) authorizing the continuance of the Utility Bond Programs; and (f) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately twenty-five (25) days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## The Utility Services and Utility Companies

8. In connection with the operation of their businesses and management of their properties, the Debtors obtain electricity, natural gas, telephone, water, waste disposal, and other similar services (collectively, the "Utility Services") from a number of utility companies or brokers (collectively, the "Utility Companies"). A nonexclusive list of the Utility Companies and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit C**.[3] The relief requested herein is requested with respect to all Utility Companies providing Utility Services to the Debtors.

9. Uninterrupted Utility Services are essential to the Debtors' ongoing business operations. The Debtors' operations require electricity and gas for lighting, heating, trash, sewer services, and air conditioning. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations could be severely disrupted, and such disruption

---

[3] The inclusion of any entity on, or the omission of any entity from, the Utility Services List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.

4

would jeopardize the Debtors' ability to operate their business. Accordingly, it is essential that the Utility Services continue uninterrupted during the chapter 11 cases.

10. To manage the Utility Services at their many locations, the Debtors contract with Summit Energy Service, aka Schneider Electric ("<u>Summit</u>"), a third-party processor. Summit manages the Debtors' accounts for most of the Utility Companies, including managing the Utility Services, reviewing bills for the Utility Services, paying bills for the Utility Services as an agent for the Debtors (after receiving funds from the Debtors for such payments), establishing new Utility Services, terminating Utility Services for closing locations, and providing accounting information to the Debtors with respect to the Utility Services managed by Summit. Although the Debtors contract directly with the Utility Companies, invoices from the Utility Companies are directed to Summit, which then reconciles and consolidates the invoices, submits them to the Debtors with a request for funding and a payment date (via a consolidated daily invoice), and then disburses the funds from the Debtors to the Utility Companies. Summit charges the Debtors a monthly fee for such services based on the volume of activity on the Debtors' accounts. The services provided by Summit are integral to the Debtors' operations and the success of these chapter 11 cases. The Debtors pay, on average, approximately $3,500 per month for Summit's services. The Debtors believe that, as of the Petition Date, they owe Summit approximately $3,700 for administrative fees.

11. Pursuant to the leases for several of the Debtors' locations, certain Utility Services are billed directly to the Debtors' landlords and passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements. The relief

requested herein is with respect to all Utility Providers supplying Utility Services to the Debtors, including those that indirectly supply services through the applicable landlords.

12. To the best of the Debtors' knowledge, there are no defaults or arrearages on account of the Debtors' undisputed invoices for prepetition Utility Services in connection with the Debtors' active accounts for operating locations. On average, the Debtors pay approximately $1.4 million[4] each month for third party Utility Services.

13. The Debtors have provided certain of the Utility Providers with prepetition surety bonds (the "Utility Bond Programs") and cash deposits (collectively, the "Prepetition Deposits"). The Debtors estimate the amount of Prepetition Deposits held by all Utility Providers is approximately $2 million.[5] The Debtors request authority to pay outstanding prepetition obligations, if any, arising under Utility Bond Programs and to continue the Utility Bond Programs during these chapter 11 cases. As of the Petition Date, the Debtors believe they are current on premium payments due under the Utility Bond Programs.

**Proposed Adequate Assurance of Payment**

14. The Debtors intend to pay postpetition obligations owed to the Utility Companies in a timely manner.

15. To provide additional assurance of payment, the Debtors propose to deposit into a segregated account $511,199 (the "Adequate Assurance Deposit"), which represents an

---

[4] The average monthly payable for Utility Services calculation only takes into account Ruby Tuesday restaurants that have not been closed permanently.

[5] As discussed in the First Day Declaration, the Debtors have closed several under-performing restaurants permanently due to adverse economic factors, including the Covid-19 pandemic. As a result, some of the Utility Providers may be holding excessive deposits. The Debtors are working with the Utility Providers to obtain the release of excess deposits.

amount equal to approximately one-half of the Debtors' average monthly cost of Utility Services, excluding any prepaid amounts or Prepetition Deposits held by the Utility Companies, as detailed in **Exhibit C**.  The Adequate Assurance Deposit will be held in the segregated account for the duration of these chapter 11 cases.  The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

**The Adequate Assurance Procedures**

16.     Any Utility Company that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each an "Adequate Assurance Request") pursuant to the adequate assurance procedures set forth below (the "Adequate Assurance Procedures"):

a.     Any Utility Company that objects to the Debtors' Proposed Adequate Assurance must serve an Adequate Assurance Request on:  (i) the Debtors, RTI Holding Company, LLC, 333 East Broadway Ave., Maryville, TN 37804, Attn:  Shawn Lederman, slederman@rubytuesday.com; (ii) proposed counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801) Attn:  James E. O'Neill, Esq., joneill@pszjlaw.com; (iii) counsel to Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); (iv) counsel to any statutory committee appointed in these cases; and (v)  the Office of The United States

Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer, Esq., linda.richenderfer@usdoj.gov (collectively, the "Notice Parties").

    b. Any Adequate Assurance Request must: (i) be made in writing; (ii) identify the location for which Utility Services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any deposits or other prepetition security provided; and (iv) explain why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

    c. The Debtors are authorized to resolve, in their sole discretion, any Adequate Assurance Request by mutual agreement with a Utility Company and without further order of the Court and, in connection with any such agreement, in their sole discretion, provide a Utility Company with alternative adequate assurance of payment, including cash deposits, payments of prepetition balances, prepayments, or other forms of security, without further order of the Court, if the Debtors believe such alternative assurance is reasonable.

    d. If the Debtors are unable to consensually resolve an Adequate Assurance Request by mutual agreement within fourteen (14) days of receipt of the Adequate Assurance Request, the Debtors will seek a hearing with the Court (the "Determination Hearing") to determine the appropriate amount of adequate assurance required with respect to such Adequate Assurance Request. Pending resolution of such Adequate Assurance Request at the Determination Hearing, the Utility Company shall be prohibited from altering, refusing, or discontinuing services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

    e. The Utility Companies are prohibited from requiring additional adequate assurance of payment other than pursuant to the Adequate Assurance Procedures.

    f. All Utility Companies who do not file an objection or serve an Adequate Assurance Request shall be:  (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Company in compliance with section 366 of the Bankruptcy Code; and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

    g. The Debtors may add or remove any Utility Company from the Utility Services List, and the Debtors shall add to or subtract from the Adequate Assurance Deposit an amount equal to one-half of the Debtors' average monthly cost for each subsequently-added or removed Utility Company as soon as practicable.  For Utility Companies that are added to the Utility Services List, the Debtors will cause a copy of the order granting this Motion, including the Adequate Assurance Procedures, to be served on such subsequently added Utility Company.  Any Utility Company subsequently added to the Utility Services List shall be bound by the Adequate Assurance Procedures.

    17. The Debtors submit that the Adequate Assurance Procedures set forth a streamlined process for Utility Companies to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to continue their business operations uninterrupted.  More specifically, the Adequate Assurance Procedures permit a Utility Company to object to the Proposed Adequate Assurance by filing and serving an Adequate

Assurance Request upon certain notice parties. The Debtors may then resolve any Adequate Assurance Request by mutual agreement with the Utility Company and without further order of the Court. If the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Adequate Assurance Request.

18. As stated above, given the scale of the Debtors' operations, Summit provides critical and necessary services to the Debtors. Summit is familiar with the Debtors' and the Utility Companies' respective invoicing and payment systems, and enables the Debtors to pay the Utility Companies in an efficient and orderly fashion, thereby minimizing the potential for late fees and penalties and ensuring that there is no interruption to the Debtors' Utility Services. Further, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing. *See* 11 U.S.C. § 363(c). Accordingly, the Debtors submit that the continuation of postpetition payments to Summit in the ordinary course of the Debtors' business is authorized under sections 363 and 105(a) of the Bankruptcy Code.

**Basis for Relief**

19. As discussed above, section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-

exhaustive list of examples for what constitutes "assurance of payment." 11 U.S.C. § 366 (c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtors' ability to pay. *See, e.g.*, *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an absolute guarantee of payment." (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

20. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Company will be subject to an unreasonable risk of nonpayment. *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)).

21. Here, the Utility Companies are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit, and the Debtors' ongoing

11

ability to meet obligations as they come due in the ordinary course, provides assurance of the Debtors' payment of their future obligations. Moreover, termination of the Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

22. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "[t]he plain language of §366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Companies still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Company could make an extortionate,

last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services.  *See id.* at *5.

23.     Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein.  Indeed, similar procedures have been approved by courts in this district.  *See, e.g.*, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 21, 2020) (approving adequate assurance deposit equal to one half of debtor's monthly utility expenses on a final basis); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (approving adequate assurance deposit equal to one half of debtor's monthly utility expenses on an interim basis); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) (approving adequate assurance deposit equal to one half of debtor's monthly utility expenses on a final basis); *In re Forever 21*, *Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 1, 2019) (same); *In re PES Holdings LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 21, 2019) (same); *In re True Religion Apparel, Inc.* Case No. 17-11460 (CSS) (Bankr. D. Del. July 31, 2017) (same).

24.     Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions on the Bankruptcy Code, particularly section 366 thereof.  Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

**The Requirements of Bankruptcy Rule 6003 are Satisfied**

25.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, prohibiting Utility Companies from altering or discontinuing services, authorizing the Debtors to deposit the Proposed Adequate Assurance and utilize the Adequate Assurance Procedures, and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Reservation of Rights**

26.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission

as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

27. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

28. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); and (c) the Debtors' fifty largest unsecured creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated: October 7, 2020
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:   302-652-4400
email:  rpachulski@pszjlaw.com
            mpagay@pszjlaw.com
            joneill@pszjlaw.com
            vnewmark@pszjlaw.com

[Proposed] Counsel to the Debtors and Debtors in Possession