**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- )
                                                        )
In re:                                                  )   Chapter 11
                                                        )
RTI HOLDING COMPANY, LLC,[1]                            )   Case No. 20-12456
------------------------------------------------------- )
                                                            (Joint Administration Requested)


**APPLICATION OF THE DEBTORS FOR ENTRY OF ORDER
APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS
CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby seek entry of an order, substantially in the form of **Exhibit "A"** hereto (the "Retention Order"), pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), appointing Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent ("Claims

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

1

and Noticing Agent") in the Debtors' cases (the "Section 156(c) Application"). In support of the Section 156(c) Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

3. The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

4. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filings, is set forth in detail in the *Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc., in*

*Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

## RELIEF REQUESTED

5.　　This Section 156(c) Application is made pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code and LBR 2002-1(f) for an order appointing Epiq to act as the claims and noticing agent in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' cases. The Debtors' selection of Epiq to act as the claims and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtors have obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise. The terms of Epiq's proposed retention are set forth in the Standard Services Agreement between Epiq and the Debtors, dated as of August 25, 2020 and annexed hereto as **Exhibit "C"** (the "Engagement Agreement"); provided, however, that the Debtors are seeking to retain Epiq solely on the terms and provisions as set forth in this Application and the proposed order attached hereto.

6.　　Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be in excess of 106,000 entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

7. By separate application, the Debtors may seek authorization to retain and employ Epiq as administrative advisor in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, as the administration of these chapter 11 cases may require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

### EPIQ'S QUALIFICATIONS AND NEED FOR EPIQ'S SERVICES

8. Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[3]

9. The appointment of Epiq as the Claims and Noticing Agent in these chapter 11 cases will expedite the distribution of notices and the processing of claims, more efficiently facilitate other administrative aspects of these chapter 11 cases, and relieve the Clerk's office of these administrative burdens. The Debtors believe that the appointment of Epiq as the Claims and Noticing Agent will thus serve to maximize the value of the Debtors' estates

---

[3] *See, e.g.*, In re Tonopah Solar Energy, LLC, Case No. 20-11884 (KBO) (Bankr. D. Del. Jul 30, 2020); In re Permian Holdco 1, Inc., Case No. 20-11822 (MFW) (Bankr. D. Del. Jul 19, 2020); In re Lucky Brand Dungarees, LLC, Case No. 20-11768 (CSS) (Bankr. D. Del. Jul 3, 2020); In re Advantage Holdco, Inc., Case No. 20-11259 (JTD) (Bankr. D. Del. May 26, 2020); In re TP RemainCo, LLC, Case No. 20-11049 (LSS); (Bankr. D. Del. May 6, 2020); In re Quorum Health Corporation, Case No. 20-10766 (KBO) (Bankr. D. Del. Apr. 7, 2020); In re Southland Royalty Company, LLC, Case No. 20-10158 (KBO) (Bankr. D. Del. Jan 27, 2020); In re Fred's, Inc., Case No. 19-11984 (CSS) (Bankr. D. Del. Sep. 09, 2019); In re THG Holdings LLC, Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); In re RUI Holding Corp., Case No. 19-11509, (JTD) (Bankr. D. Del. Jul. 7, 2019); In re HDR Holding, Inc., Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); In re Joerns WoundCo Holdings, Inc., Case No. 19-11401 (JTD) (Bankr. D. Del. June 26, 2019; In re The Weinstein Company Holdings LLC, Case No. 18-10601 (MFW) (Bankr. D. Del. Apr. 18, 2018).

for all stakeholders. In support of this Section 156(c) Application, the Debtors submit the Declaration of Kathryn Tran attached hereto as **Exhibit "B"** (the "Tran Declaration").

## SCOPE OF SERVICES

10. This Section 156(c) Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and LBR 2002-1(f). Any work to be performed by Epiq that is set forth in the Engagement Agreement but outside of the scope of 28 U.S.C. § 156(c) is not covered by this Section 156(c) Application or by the Order. Specifically, Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"), to the extent requested by the Debtors:

   a. Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable, (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as applicable), (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the a plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

   b. If applicable, maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

   c. Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

d. Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f. For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses (subject to any orders that may be entered by the Court with respect to confidentiality), (iii) the manner of service, and (iv) the date served;

g. Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h. Maintain an electronic platform for purposes of filing proofs of claim;

i. Maintain the official claims register for the Debtors (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

j. Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k. Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

l. Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m. Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

n. Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o. Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

p. Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q. Assist in the dissemination of information to the public and respond to requests for administrative information regarding the chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

r. Monitor the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

s. If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the case;

t. Thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

u. Within seven (7) days of notice to Epiq of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of the cases; and

v. At the close of these chapter 11 cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

7

11. The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

## COMPENSATION

12. The Debtors are proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Engagement Agreement. The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

13. Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14. Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000. Epiq seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

15. Epiq shall have absolute or qualified immunity, as applicable, to the maximum extent permitted by law, for all services provided herein. Additionally, no action shall commence against Epiq or its Agents by any party for any claim relating to Epiq' provision of services provided herein or any act or omission of Epiq without first obtaining leave of the Court to proceed with such an action.

## EPIQ'S DISINTERESTEDNESS

16. Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention may be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Tran Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estate in connection with any matter on which it would be employed.

17. Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Tran Declaration, among other things, that:

    a. Epiq is not a creditor of the Debtors;

    b. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

    c. By accepting employment in these chapter 11 cases, Epiq waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

    d. In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

  e. Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

  f. Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

  g. In its capacity as Claims and Noticing Agent in these chapter 11 cases, Epiq will not intentionally misrepresent any fact to any person;

  h. Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

  i. Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

  j. None of the services provided by Epiq as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

18. Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

19. This Section 156(c) Application complies with the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* and substantially conforms to the standard Section 156(c) Application in use in this Court. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

## RELIEF AS OF PETITION DATE IS APPROPRIATE

20. In accordance with the Debtors' request, Epiq agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Section 156(c) Application. The Debtors believe that no party in interest will be prejudiced by the granting of relief as of the

10

Petition Date as proposed in this Section 156(c) Application, because Epiq has provided and continues to provide valuable services to the Debtors' estates during the interim period.

## **NOTICE**

21. The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee; (b) the Debtors' fifty largest unsecured creditors on a consolidated basis; (c) counsel to Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Motion and any order with respect hereto will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary under the circumstances.

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 7, 2020

                                            Ruby Tuesday, Inc., et al.

                                            By: _____
                                                Shawn Lederman
                                                Its Chief Executive Officer