IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

**FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS (A) TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES PURSUANT TO 11 U.S.C. § 365, EFFECTIVE *NUNC PRO TUNC* TO THE REJECTION DATE, (B) ABANDON ANY REMAINING PERSONAL PROPERTY LOCATED AT THE LEASED PREMISES, AND (C) FIXING A BAR DATE FOR CLAIMS OF COUNTERPARTIES**

---

**THIS MOTION SEEKS TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED NON RESIDENTIAL REAL PROPERTY LEASES. PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND EXECUTORY CONTRACTS OR UNEXPIRED NON RESIDENTIAL REAL PROPERTY LEASES IN THE SCHEDULES ATTACHED TO EXHIBIT B OF THIS MOTION.**

---

The above-captioned debtors and debtors in possession (the "Debtors"), file this

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

DOCS_LA:332565.2

motion (the "Motion") pursuant to sections 105(a), 365(a) and 554(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 6006 and 6007 (the "Bankruptcy Rules") for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) authorizing the rejection of executory contracts (the "Rejected Contracts") and unexpired leases of non-residential real property (the "Rejected Leases") for certain of the premises leased by the Debtors (collectively, the "Leased Premises"), each as set forth on **Exhibit B** attached hereto, effective as of the Petition Date, (b) authorizing the Debtors to abandon any remaining personal property located at the Leased Premises, and (c) fixing a bar date for claims, if any, of the counterparties to each Rejected Contract and Rejected Lease (the "Counterparties"). In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule predicates for the relief sought herein are sections 365(a) and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

### Background

4.      On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

5.      The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

6.      The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc., in Support of First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.[2]

7.      In order to manage their business and assets responsibly and economically, the Debtors wish to begin the process of contract and lease rejection for executory contracts and unexpired leases of nonresidential property that are no longer needed by the Debtors, the assets of

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

which are a burden on the Debtors and their estates. To that end, the Debtors have identified certain leases of closed restaurant locations, and certain executory contracts that the Debtors will not require to operate their business going forward, that can be rejected immediately, as of the Petition Date (the "Rejection Date").

## Relief Requested

8. Through this Motion, the Debtors seek the entry of an order, pursuant to section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, (a) authorizing and approving the Debtors' rejection of the Rejected Contracts and Rejected Leases, effective as of the Petition Date,[3] (b) confirming that any furniture, fixtures and equipment ("FF&E") or other assets remaining at each Leased Premises and not removed by the Petition Date or otherwise within the time agreed upon by and among the Debtors and the landlord (the "Landlord") of the applicable Leased Premises (unless extended by agreement among the Debtors and the applicable Landlord) is hereby deemed abandoned by the Debtors pursuant to section 554 of the Bankruptcy Code without the applicable Landlord incurring liability to any person or entity, and upon such abandonment at the time of the rejection of the applicable lease for the Leased Premises, the Landlord shall be permitted to use or dispose of such abandoned FF&E or other assets remaining at such Leased Premises without notice or liability to the Debtors or any third person or entity, and (c) fixing a bar date for claims, if any, of the Counterparties.[4]

---

[3] The Debtors reserve all rights with respect to the characterization of the Rejected Contracts and the Rejected Leases, whether such Rejected Contracts and Rejected Leases have expired by their own terms or have been terminated or assigned prepetition, and any rejection or other damages that may be asserted.

[4] Nothing herein is intended as an attempt of the Debtors' to abandon any of the Debtors' liquor licenses.

9. As set forth in detail below, the relief requested herein is in the best interest of the Debtors' estates and creditors. With respect to the Rejected Contracts, the Debtors no longer require the goods and/or services provided under the Rejected Contracts. In turn, with respect to the Rejected Leases, the Debtors have ceased operations at the Leases Premises and have no further use for the Leased Premises.

10. To the extent notice of the Debtors' intention to reject the Rejected Contracts and Rejected Leases has not been previously provided, the filing and service of this Motion shall serve as notice to the Counterparties of the Debtors' intention to reject the Rejected Contracts and Rejected Leases listed on **Exhibit B**.

**Basis for Relief**

11. Section 365(a) of the Bankruptcy Code provides that a trustee or debtor in possession, "subject to the court's approval, may … reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Muerexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

12. The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the trustee. *See NLRB v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *see also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re*

*HQ Global Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003). The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim or caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

   13. Rejection of an executory contract or unexpired lease is appropriate where rejection of the contract would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989). The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Commercial Fin. Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("under the business judgment test, a court should approve a debtor's proposed rejection if such rejection will benefit the estate.").

   14. If a trustee's or debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 462 U.S. at 523 (1984); *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

   15. In applying the business judgment standard, courts show great deference to the trustee's or debtor's decisions to reject. *See e.g., NRLB V. Bildisco & Bildisco*, 462 U.S. at 523 (1984); *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) (court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr.

D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

16. Pursuant to section 365(a) of the Bankruptcy Code, the Debtors seek to reject the Rejected Contracts and Rejected Leases effective as of the Rejection Date in order to avoid the possibility of incurring any additional expenses and costs related to the Rejected Contracts and Rejected Leases. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 530 (1984) (stating that rejection relates back to the petition date). Furthermore, a court may permit retrospective rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. *See In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (N.D. Tex. 1996); *see also In re Thinking Mach. Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); *In re Jamesway Corp.*, 179 B.R. 33, 37-38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject").

17. The Debtors seek to reject the Rejected Contracts and Rejected Leases, in accordance with principles of sound business judgment and the circumstances of these cases. The Rejected Contracts and Rejected Leases are, and will continue to be, a burden to the Debtors' estates. There are no longer operations at the particular restaurants subject to the Rejected Leases and the Debtors have no further use for each of the Leases Premises. The Debtors will have

vacated or will vacate the Leased Premises as of the Petition Date, and the Rejected Contracts and Rejected Leases no longer provide any economic benefit to the Debtors' estates.

18. Additionally, the Debtors have determined, in their reasonable business judgment, that there is no net benefit that can be realized from an attempt to market and assign the Rejected Contracts and Rejected Leases.[5] As a result, the Debtors have determined that the cost to the Debtors of continuing to occupy the Leased Premises under the Rejected Leases, and of performing the Debtors' obligations under the Rejected Contracts and Rejected Leases and incurring unnecessary administrative expenses, is burdensome, and that rejection of the Rejected Contracts and Rejected Leases out of an abundance of caution is thus in the best interests of the Debtors' estates and creditors. For all of the above reasons, the Debtors submit that rejection of the Rejected Contracts and Rejected Leases is in the best interests of the Debtors' estates and creditors, and other parties in interest.[6]

19. The Debtors may have claims against the Counterparties arising under, or independently of, the Rejected Contracts and Rejected Leases. The Debtors do not waive such claims by the filing of this Motion or by the rejection of the Rejected Contracts and Rejected Leases.

**Abandonment of Remaining Personal Property**

20. To the extent that the Debtors retained any ownership interest in any FF&E or other assets remaining at each Leased Premises, the Debtors seek authority to abandon such

---

[5] The Debtors reserve all of their rights with respect to the determination of whether any Rejected Contract or Rejected Lease has been or will have been terminated or breached. In either event, the Debtors do not believe that assumption of the Rejected Contracts and Rejected Leases is in the best interests of the Debtors' estates or their creditors and thus seek to reject the Rejected Contracts and Rejected Leases pursuant to this Motion.

[6] The Debtors continue to review their contract and lease portfolio and will file additional motions if they determine that closing additional restaurants and/or other rejecting other contracts and leases is in the estates' best interests.

8

FF&E or other assets that remain at the Leased Premises subject to the Rejected Leases as of the Rejection Date.

21.     The Debtors seek to abandon any remaining FF&E and other assets remaining at a Leased Premises described above as is, where is, and in accordance with section 554(a) of the Bankruptcy Code.  Section 554(a) provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  The Debtors believe that the costs associated with liquidating any remaining FF&E and other assets at the Leased Premises as of the Petition Date will likely approach or exceed the value of such assets.  Accordingly, the Debtors believe that the remaining FF&E and other assets at the Leased Premises, if any, has inconsequential value to the Debtors' estates and should be abandoned as of the Petition Date.  Additionally, the remaining FF&E and other assets at the Leased Premises are deemed abandoned pursuant to section 554 of the Bankruptcy Code without the applicable Landlord incurring liability to any person or entity, and upon such abandonment at the time of the rejection of the applicable lease for the Leased Premises, the Landlord shall be permitted to use or dispose of such abandoned FF&E or other assets remaining at such Leased Premises without notice or liability to the Debtors or any third person or entity.

## Claims Bar Date

22.     As set forth above, the Counterparties may seek to assert claims in connection with the Rejected Contracts and Rejected Leases or the rejection or termination of the Rejected Contracts and Rejected Leases.

23.     Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides: "[t]he court shall fix . . . the time within which proofs of claim may

be filed." Bankruptcy Rule 2002(a)(7) requires at least twenty-one days' notice by mail of the time fixed for filing proofs of claim and interest pursuant to Bankruptcy Rule 3003(c)(3).

24. The Debtors further request by this Motion that the Court fix the claims bar date with respect to the Rejected Contracts and Rejected Leases to be the claims bar date to be established by the Court for all holders of general unsecured claims, failing which such claim or claims by the Counterparties shall be forever barred.

25. The Debtors reserve any and all rights to object to any rejection damage claims or other claims filed by any Counterparty.

## Notice

26. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); (c) the Debtors' fifty largest unsecured creditors on a consolidated basis; (d) the United States Attorney's Office for the District of Delaware; (e) the counterparties to all leases for the Debtors' restaurants; (f) any party known by the Debtors to have an interest in personal property in a leased premises and (g) and any party requesting notice pursuant to Bankruptcy Rule 2002(a).

## No Prior Request

27. No previous request for the relief sought herein has been made to this or any other Court.

*[Remainder of page intentionally left blank]*

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, (a) granting the Motion; (b) approving the rejection of the Rejected Contracts and Rejected Leases effective as of the Rejection Date; (c) authorizing the Debtors to abandon any remaining FF&E and other assets at the Leased Premises on the Rejection Date; (d) fixing a bar date for filing claims, if any, of the Counterparties to the Rejected Contracts and Rejected Leases to be the bar date for general unsecured claims to be set by the Court; and (e) granting such other and further relief as the Court may deem proper.

Dated:  October 7, 2020
        Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  rpachulski@pszjlaw.com
       mpagay@pszjlaw.com
       joneill@pszjlaw.com
       vnewmark@pszjlaw.com

[Proposed] Counsel to the Debtors and Debtors in Possession