# Exhibit 1

DOCS_LA:282540.1 73538/001

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING**

Upon the *Motion of Debtors For Entry Of Interim And Final Orders (I) Authorizing Debtors To (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And (B) Use Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361, 362, 363, And 364, And (III) Scheduling Final Hearing* (the "Motion"),[2] seeking entry of (i) an interim order (this "Interim Order"); (ii) a final order (the "Final Order"); and (iii) requesting related

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

relief (collectively, the "<u>Requested Relief</u>") and the Debtors' having requested on the record at the interim hearing on the Motion (the "<u>Interim Hearing</u>") that the Court enter an Interim Order, *inter alia*:

(a)        authorizing Ruby Tuesday, Inc. ("<u>RTI</u>") and its affiliated debtors (collectively, the "<u>Debtors</u>") to obtain secured postpetition financing on a superpriority basis pursuant to the terms and conditions of that certain "Debtor-in-Possession Credit and Guaranty Agreement," in substantially the form attached hereto (without exhibits or schedules) as <u>Exhibit A</u> (as the same may be amended, supplemented, restated or otherwise modified from time to time in accordance with its terms, the "<u>DIP Credit Agreement</u>"), by and among RTI and certain subsidiaries of RTI, as Borrowers, RTI Holding Company, LLC ("<u>Holdings</u>"), as Borrower Representative and a Guarantor, certain other subsidiaries of Holdings, each as a Guarantor, Goldman Sachs Specialty Lending Group, L.P. ("<u>GSSLG</u>"), as Administrative Agent and Collateral Agent (in such capacities, the "<u>DIP Agent</u>"), Goldman Sachs Bank USA ("<u>GS Bank</u>"), as issuer of the Existing Letters of Credit ("<u>Issuing Bank</u>"), and each Lender party thereto (together with Issuing Bank, collectively, the "<u>DIP Lenders</u>", and together with DIP Agent, collectively, the "<u>DIP Secured Parties</u>"), in an aggregate principal amount not to exceed $18,500,000, consisting of a term loan facility in the aggregate principal amount of $18,500,000 (the "<u>DIP Facility</u>", and any draws on the DIP Facility, the "<u>DIP Loans</u>"), of which $12,600,000 will be available immediately upon entry of this Interim Order. Such DIP Facility includes (i) a $9,600,000 sub-facility to be used solely for the reimbursement of any draws made under the Existing Letters of Credit, which sub-facility shall account for $9,600,000 of the total amount that will be available immediately upon entry of this Interim Order and which Existing Letters of Credit, upon entry of this Interim Order, shall be treated as having been issued under the DIP Credit Agreement and shall

2

constitute part of the Credit Extensions and Obligations and be entitled to all of the benefits and security of the DIP Loan Documents, the DIP Collateral (as defined below) and this Interim Order, in each case as provided in the DIP Loan Documents (as defined below) and this Interim Order and (ii) a roll-up of Term Loans (as defined in the Pre-Petition Credit Agreement (as defined below)) in the aggregate principal amount of $2,000,000 extended to the Credit Parties by the DIP Lenders on the Seventh Amendment Effective Date *plus* all accrued and unpaid interest and fees related thereto as of the entry of the Final Order (which accrued and unpaid interest and fees are equal to not less than $11,681.11 as of the Petition Date (as defined below)), which Term Loans and accrued and unpaid interest and fees shall, upon entry of the Final Order, be treated as having been issued under the DIP Credit Agreement, constitute part of the Credit Extensions and Obligations and be entitled to all of the benefits and security of the DIP Loan Documents, the DIP Collateral and the Final Order, in each case as provided in the DIP Loan Documents and the Final Order;

(b)    authorizing the Debtors to execute the DIP Credit Agreement and all other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with their respective terms, and, collectively with the DIP Credit Agreement, the "DIP Loan Documents");

(c)    authorizing the Debtors to use the proceeds from the DIP Facility as permitted in the DIP Loan Documents and in accordance with this Interim Order, the Final Order, and the DIP Budget (as defined below);

3

(d)      granting to the DIP Agent, for itself and for the benefit of the DIP Lenders, first priority security interests in and liens on all assets that constitute the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, this Interim Order, and the Final Order, as applicable (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "DIP Obligations"), which shall rank senior in priority to all other liens other than Permitted Priority Liens (as defined below) (other than the Pre-Petition Liens) as described herein and payment of the Carve-Out (as defined below);

(d)      granting superpriority administrative expense claims against each Debtor's estate to the DIP Agent and the DIP Lenders with respect to the DIP Obligations in accordance with Section 364(c)(1) of the Bankruptcy Code over any and all administrative expenses of any kind or nature subject and subordinate only to the payment of the Carve-Out;

(e)      authorizing the Debtors to use Cash Collateral (as defined below);

(f)      authorizing the Debtors to grant adequate protection to the Pre-Petition Agent (as defined below) on behalf of the Pre-Petition Secured Parties[3] (as defined below) to the extent of any diminution in value of their interest in the Pre-Petition Collateral (as defined below) and subject to the Carve-Out;

(g)      vacating and modifying the automatic stay pursuant to Section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent necessary to implement and effectuate the terms and provisions of the Interim Order, the Final Order and the DIP Loan Documents;

---

[3]  As of the Petition Date, the Pre-Petition Secured Parties are the same parties as the DIP Secured Parties.

4

(h)     waiving any applicable stay with respect to the effectiveness and enforceability of the Interim Order (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"));

(i)     scheduling a hearing (the "Final Hearing"), pursuant to Bankruptcy Rule 4001(c)(2), to consider final approval of the DIP Facility, use of Cash Collateral and other Requested Relief pursuant to a proposed final order, as set forth in the Motion and the DIP Loan Documents filed with this Court;

and the interim hearing on the Requested Relief (the "Interim Hearing") having been held on October 8, 2020; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief; and it appearing that the Requested Relief is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[4]**

A.     <u>Petition Date</u>.  On October 7, 2020 (the "<u>Petition Date</u>"), the Debtors commenced their chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner or official committee of creditors holding unsecured claims (a "<u>Creditors' Committee</u>") has been appointed in any of these Chapter 11 Cases.

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

[AM_ACTIVE 402640889_19]

B.  <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Requested Relief under 28 U.S.C. §§ 1408 and 1409.

C.  <u>Notice</u>.  Proper, timely, adequate and sufficient notice under the circumstances of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the local rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

D.  <u>Debtors' Acknowledgments and Stipulations</u>.  The Debtors acknowledge, represent, stipulate, and agree, subject to the terms and provisions of Paragraph 15 below:

(i)  *Pre-Petition Obligations*.  Pursuant to that certain "Credit and Guaranty Agreement," dated as of December 21, 2017 (as has been amended, restated or modified from time to time prior to the Petition Date, the "<u>Pre-Petition Credit Agreement</u>", and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "<u>Pre-Petition Credit Agreement Documents</u>"), among (a) RTI and certain subsidiaries of RTI, as borrowers (in such capacity, the "<u>Pre-Petition Borrowers</u>"), (b) Holdings, as borrower representative (in such capacity, the "<u>Pre-Petition Borrower Representative</u>"), together with certain subsidiaries of RTI as guarantors (collectively, the "<u>Pre-Petition Guarantors</u>"), (c) GSSLG, as administrative agent, collateral agent, and syndication agent (in such capacities, the "<u>Pre-Petition Agent</u>"), (d) GS Bank, as issuing bank

6

(the "Pre-Petition Issuing Bank"), and (e) each lender party thereto (together with Pre-Petition

Issuing Bank, collectively, the "Pre-Petition Lenders", and together with the Pre-Petition Agent,

collectively, the "Pre-Petition Secured Parties"), the Pre-Petition Lenders provided term loan

commitments, revolving loan commitments and other financial accommodations to, or for the

benefit of, the Pre-Petition Borrowers and the Pre-Petition Guarantors (such loans and financial

accommodations, the "Pre-Petition Loans", and such facility, the "Pre-Petition Facility").  As of

the Petition Date, the Debtors were jointly and severally indebted to the Pre-Petition Secured

Parties in the aggregate principal amount of $37,856,513.21, consisting of (a) $26,304,679.21 in

the aggregate principal amount of Term Loans (as defined in the Pre-Petition Credit Agreement),

(b) $2,000,000.00 in the aggregate principal amount of Revolving Loans (as defined in the Pre-

Petition Credit Agreement), and (c) $9,551,834.00 in the aggregate principal amount of Existing

Letters of Credit (as defined in the Pre-Petition Credit Agreement) (collectively, together with

accrued and unpaid interest with respect thereto and any additional fees, costs, expenses

(including any attorneys', financial advisors', and other professionals' fees and expenses),

reimbursement obligations, indemnification obligations, contingent obligations, make-whole

premiums, call premiums, yield maintenance premiums, and other charges of whatever nature,

whether or not contingent, whenever arising, due, or owing that would constitute Obligations (as

defined in the Pre-Petition Credit Agreement) owing under or in connection with the Pre-Petition

Credit Agreement Documents, the "Pre-Petition Obligations"), which Pre-Petition Obligations

have been guaranteed on a joint and several basis by each of the Pre-Petition Borrowers and the

Pre-Petition Guarantors.

> (ii)    *Pre-Petition Credit Agreement Liens and Collateral.*  As more fully set

forth in the Pre-Petition Credit Agreement Documents, the Pre-Petition Obligations are secured

7

by first priority liens on and security interests in the "Collateral" under and as defined in the Pre-Petition Credit Agreement Documents (collectively, the "Pre-Petition Liens") in substantially all of the Debtors' assets to the extent set forth in the Pre-Petition Credit Documents (the "Pre-Petition Collateral").

(iii)    *Validity, Perfection and Priority of Pre-Petition Liens and Pre-Petition Obligations.*  The Debtors represent, acknowledge and agree that, as of the Petition Date, (a) the Pre-Petition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens (other than Pre-Petition Permitted Prior Liens, as defined below) and the Debtors shall not raise or join any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual, or otherwise), claims, counterclaims, cross-claims, offsets, recoupments, objections, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; (b) the Pre-Petition Liens were senior in priority over any and all other liens on the Pre-Petition Collateral, subject only to liens senior by operation of law or permitted by the Pre-Petition Credit Agreement Documents, and solely to the extent any such liens were valid, properly perfected, non-avoidable and senior in priority to the Pre-Petition Liens as of the Petition Date (the "Pre-Petition Permitted Prior Liens"); (c) the Pre-Petition Obligations are unconditionally owing by the Debtors and constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Pre-Petition Credit Agreement Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, reductions, set-off, offset, disgorgement, recharacterization,

8

subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges pursuant to the Bankruptcy Code or any applicable law or regulation; (e) the Debtors shall not raise or join in any assertion of any claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Pre-Petition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Pre-Petition Facility; and (f) the Debtors have waived, discharged, and released any right to challenge any of the Pre-Petition Obligations, the priority of the Pre-Petition Obligations, and the validity, extent, and priority of the Pre-Petition Liens.

(iv)    *No Control*. None of the Pre-Petition Secured Parties or the DIP Secured Parties controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Loan Documents, the Pre-Petition Facility, and/or the Pre-Petition Credit Agreement Documents.

(v)    *Payments in Respect of Pre-Petition Obligations.*  Any payments made on account of the Pre-Petition Obligations prior to the Petition Date were (a) payments out of the Pre-Petition Collateral, and/or (b) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors;

(vi)    *Cash Collateral*.  All of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Pre-

9

Petition Collateral, other than cash held in Excluded Accounts (as defined in the Pre-Petition Credit Agreement) constitutes Cash Collateral securing the Pre-Petition Obligations;

(vii) *Necessary Approvals*. Upon approval of this Interim Order by the Court, the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents to which any Debtor is a party and the use of Cash Collateral as provided herein;

(viii) *DIP Liens and Obligations.* (a) Until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided to the DIP Secured Parties by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (I) the Permitted Priority Liens (other than the Pre-Petition Liens) as described herein and (II) prior payment of the Carve-Out; and (b) until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to prior payment of the Carve-Out;

10

(ix)    the Debtors have requested that the Pre-Petition Secured Parties consent to, among other things, (a) the Debtors' use of Cash Collateral securing the Pre-Petition Obligations and the other Pre-Petition Collateral, (b) the incurrence of the DIP Obligations by the Credit Parties and the Credit Parties' guarantees of the DIP Obligations under the DIP Loan Documents and (c) the Debtors' granting of the priming DIP Liens (as defined below) in connection therewith. The Pre-Petition Agent and Pre-Petition Lenders are entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Pre-Petition Collateral, including the Cash Collateral securing the Pre-Petition Obligations (x) in exchange for their consent to allow the Debtors' use of such Pre-Petition Collateral, including the Cash Collateral securing the Pre-Petition Obligations, and (y) for any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral securing the Pre-Petition Obligations and any other Pre-Petition Collateral, the priming of the Pre-Petition Liens by the DIP Agent and DIP Lenders pursuant to this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise.

E.    <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent or the Pre-Petition Agent have, for the benefit of the DIP Lenders or the Pre-Petition Lenders, respectively, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise and shall include, without limitation:

11

(i)        all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including insurance policies, in or on which the DIP Lenders or the Pre-Petition Lenders have a lien or a replacement lien (if any), whether as part of the DIP Collateral or the Pre-Petition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)        all of the respective deposits, refund claims and rights in retainers of the Debtors on which the DIP Secured Parties or the Pre-Petition Secured Parties hold a lien or replacement lien (if any), whether as part of the DIP Collateral or the Pre-Petition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)        the proceeds of any sale of DIP Collateral or Pre-Petition Collateral, including any Asset Sales.

F.        Adequate Protection.  Each of the Pre-Petition Secured Parties is entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Pre-Petition Collateral, including the Cash Collateral securing the Pre-Petition Obligations, in exchange for the Debtors' use of such Pre-Petition Collateral, to the extent of any diminution in value of the Pre-Petition Collateral including, without limitation, any diminution in value resulting from the sale, lease, or use by the Debtors (or other decline in value) of Cash Collateral securing the Pre-Petition Obligations and any other Pre-Petition Collateral, the priming of the Pre-Petition Liens of the Pre-Petition Agent on and in the Pre-Petition Collateral, for itself and for the benefit of the Pre-Petition Lenders, by the DIP Agent or the DIP Lenders, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.      Roll-Up.  Subject to (i) the entry of this Interim Order, the Existing Letters of Credit shall be deemed issued under the DIP Credit Agreement, and any reimbursement obligations in connection with any draws of such Existing Letters of Credit shall constitute DIP Obligations and (ii) the entry of the Final Order, Term Loans (as defined in the Pre-Petition Credit Agreement) in an aggregate principal amount of $2,000,000 extended to the Credit Parties by the DIP Lenders on the Seventh Amendment Effective Date *plus* all accrued and unpaid interest and fees related thereto as of the entry of the Final Order shall be converted into DIP Obligations.  Such conversion or deemed issuance (collectively, the "DIP Roll-Up Obligations") shall be authorized as compensation for, in consideration for, and not as payments under, adequate protection for or otherwise on account of, any Pre-Petition Obligations.  The Pre-Petition Secured Parties would not otherwise consent to the use of their Cash Collateral securing the Pre-Petition Obligations or the subordination of their liens to the DIP Liens, and the DIP Lenders would not be willing to provide the DIP Loans or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Obligations in the DIP Obligations.

H.      Purpose and Necessity of Financing. The Debtors require the financing described in the Requested Relief (i) for working capital and general corporate purposes of the Credit Parties, (ii) to pay fees and expenses incurred by the DIP Secured Parties in connection with the DIP Loan Documents as provided therein, (iii) to make adequate protection payments to the Pre-Petition Lenders as provided in this Interim Order, (iv) to pay restructuring costs and Professional Fees of the Borrowers and Guarantors relating solely to these Chapter 11 Cases, and (v) for other purposes as provided in and subject to the terms of the DIP Credit Agreement, and in all cases, subject to compliance with the DIP Budget (and Permitted Variances).  If the Debtors do not obtain authorization to borrow under the DIP Credit Agreement, they will suffer

13

immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances. A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time.

I.       <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors.  The liquidity to be provided under the DIP Loan Documents will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' assets.  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and their creditors.  The terms of the DIP Facility are fair and reasonable, reflect each Debtor's exercise of its respective business judgment, and are supported by reasonably equivalent value and fair consideration.

J.       <u>Sections 506(c) And 552(b) Waivers</u>.  In light of (i) the DIP Agent's and the DIP Lenders' agreement to permit their DIP Liens and DIP Superpriority Claim (as defined below) to be subject to prior payment of the Carve-Out, and in exchange for and as a material inducement

14

to the DIP Agent and DIP Lenders to agree to provide the DIP Facility and (ii) the Pre-Petition

Agent's and the Pre-Petition Lenders' agreement to permit their Pre-Petition Liens, Replacement

Liens (as defined below) and Adequate Protection Superpriority Claim (as defined below) to be

subject to prior payment of the Carve-Out, the DIP Liens, and the DIP Superpriority Claim and

to permit the use of their Cash Collateral securing the Pre-Petition Obligations for payments

made in accordance with the DIP Budget (subject to the Permitted Variances) and the terms of

this Interim Order, the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition

Lenders are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of

the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the

Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

       K.    <u>Good Faith</u>.    The terms of the DIP Loan Documents, including, without

limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more

favorable to the Debtors than any available from alternative sources.  Based upon the record

before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-

length among the Debtors, the DIP Lenders and the DIP Agent.  Any DIP Loans and other

financial accommodations made to the Debtors by the DIP Agent and the DIP Lenders pursuant

to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the

DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the

Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections

afforded thereby.

       L.    <u>Fair Consideration and Reasonably Equivalent Value</u>.  Each of the Debtors has

received and will receive fair and reasonable consideration in exchange for access to the DIP

Loans and all other financial accommodations provided under the DIP Loan Documents and this

15

Interim Order. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

M. <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful reorganization or sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Motion Approved</u>. The Motion is granted on an interim basis as set forth herein, and the Debtors' incurrence of the DIP Facility and use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2. <u>Objections Overruled</u>. Any objections, reservations of rights or other statements with respect to the Motion and entry of the Interim Order, to the extent not withdrawn or resolved, are overruled on the merits. This Interim Order shall become effective immediately upon its entry.

[AM_ACTIVE 402640889_19]

**AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL**

3.       Authorization For DIP Financing And Use of Cash Collateral Pursuant to DIP Budget.

(a)       The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately subject to the terms of this Interim Order, the DIP Budget (subject to the Permitted Variances) and the DIP Loan Documents, in the aggregate principal amount of up to $12,600,000 (inclusive of the Existing Letters of Credit) (the "Maximum Interim Borrowing"). The Maximum Interim Borrowing includes up to $3,000,000 of new money advances.    The Borrowers are hereby authorized to borrow money pursuant to the DIP Credit Agreement, and each Guarantor under the DIP Credit Agreement is hereby authorized to provide a guaranty of payment in respect of the Debtors' obligations with respect to such borrowings, subject to any limitations on borrowing under the DIP Loan Documents, including working capital and general corporate requirements of the Debtors, bankruptcy-related costs and expenses, reimbursement obligations with respect to the Existing Letters of Credit and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the DIP Budget (subject to the Permitted Variances) and the DIP Loan Documents.

(b)       Prior to the Maturity Date, the Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the DIP Budget (subject to the Permitted Variances) and the DIP Loan Documents, without further approval by the Court, including, for avoidance of doubt, and consistent with the DIP Loan Documents, the use of cash proceeds from any Assets Sales for repayment of the Pre-Petition Obligations, and following repayment of the Pre-Petition Obligations in full in cash, repayment of the DIP Obligations.

17

(c)    The Debtors have delivered to the DIP Agent a rolling cash forecast, in Microsoft Excel format, in form, scope and substance satisfactory to the DIP Lenders, for a period of thirteen (13) weeks beginning on the Petition Date and updated every four (4) weeks thereafter in accordance with the terms of the DIP Credit Agreement, setting forth projected cash flows and disbursements, a copy of which is attached hereto as Exhibit B (the "DIP Budget").  The DIP Budget shall at all times be in form and substance acceptable to the DIP Agent and the DIP Lenders and approved in writing by each, in their respective sole discretion, in accordance with the DIP Credit Agreement.  The Debtors shall provide updates to the DIP Budget at least once every four (4) weeks and other financial reporting with respect to the Debtors, in accordance with the terms of the DIP Loan Documents.  Funds borrowed under the DIP Credit Agreement and Cash Collateral used under this Interim Order, as well as other cash held by the Debtors, shall be used by the Debtors in accordance with the DIP Budget (subject to the Permitted Variances), the DIP Loan Documents and this Interim Order.  The consent of the DIP Lenders to any DIP Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral (subject to the Carve-Out) after the occurrence of the Maturity Date, regardless of whether the aggregate funds shown on the DIP Budget have been expended.

(d)    Any amendments, supplements or modifications to the DIP Budget must be consented to in writing by the Requisite Lenders, in their sole discretion in accordance with the DIP Credit Agreement, prior to the implementation thereof and shall not require further notice, hearing, or court order; provided, however, that the Debtors will provide written notice of any such amendment, supplement or modification to the Creditors' Committee.

(e)    The DIP Secured Parties (i) may assume the Debtors will comply with the DIP Budget (subject to the Permitted Variances), (ii) shall have no duty to monitor such compliance

18

and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral or Pre-Petition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any DIP Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time.

(f)      [Reserved].

(g)      Notwithstanding anything in this Interim Order to the contrary, the DIP Loan Documents shall expire, and the DIP Loans made pursuant to this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on the Maturity Date.

4.      <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)      Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto. Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Secured Parties.

(b)      Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim Order.

19

5.      <u>Pre-Petition Obligations Roll-Up</u>.   Subject to and effective upon entry of this Interim Order, the DIP Liens shall secure the DIP Roll-Up Obligations with respect to the Existing Letters of Credit, including the reimbursement obligations with respect thereto, which shall be deemed to be incurred by the Debtors under the DIP Loan Documents and subject to the terms and conditions set forth in the DIP Loan Documents.

6.      <u>Valid and Binding Obligations</u>.   All obligations under the DIP Loan Documents shall constitute valid, binding, and nonavoidable obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

7.      <u>Authorization for Payment of DIP Financing Fees and Expenses</u>.   All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, costs and expenses referred to in the DIP Loan Documents and the DIP Agent's and DIP Lenders' attorneys' fees and expenses), under the DIP Loan Documents, by the Debtors to the DIP Secured Parties are hereby approved and shall not be subject to disgorgement by any party for any reason.  Subject to the notice provision below, the Debtors are hereby authorized to pay all such fees, costs and expenses in accordance with the terms of the DIP Loan Documents and this Interim Order, without any requirement that the Debtors, the DIP Agent, the DIP Lenders or any

20

of their respective counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses.  Subject to the notice provision below, the Debtors agree to pay promptly (without further order of or application to the Court) (a) all of the DIP Agent's actual and reasonable costs and expenses of preparation of the DIP Loan Documents and any consents, amendments, waivers, or other modifications thereto; (b) all the reasonable fees, expenses and disbursements of counsel to the DIP Agent and DIP Lenders (including for avoidance of doubt, Issuing Bank) in connection with the negotiation, preparation, execution, and administration of the DIP Loan Documents and any consents, amendments, waivers or other modifications thereto and any other documents or matters requested by any Borrower or Guarantor; (c) all the actual costs and reasonable expenses of creating and perfecting Liens in favor of DIP Agent, for the benefit of the DIP Secured Parties, including filing and recording fees, expenses and Taxes, stamp or documentary Taxes, search fees, title insurance premiums, and reasonable fees, expenses and disbursements of counsel to DIP Agent; (d) all of the DIP Agent's actual costs and reasonable fees, expenses for and disbursements of any of DIP Agent's, auditors, accountants, consultants or appraisers whether internal or external, and all reasonable attorneys' fees (including allocated costs of internal counsel and expenses and disbursements of outside counsel) incurred by DIP Agent; (e) all of the actual costs and reasonable expenses (including the reasonable fees, expenses, and disbursements of any appraisers, consultants, advisors and agents employed or retained by DIP Agent and its counsel) in connection with the custody or preservation of any of the DIP Collateral; (f) all of the other actual and reasonable costs and expenses incurred by the DIP Agent and/or DIP Lenders in connection with the negotiation, preparation and execution of the DIP Loan Documents and any consents, amendments, waivers or other modifications thereto and the transactions contemplated

21

thereby; (g) after the occurrence of a Default or an Event of Default, all costs and expenses, including reasonable attorneys' fees (including allocated costs of internal counsel) and costs of settlement, incurred by DIP Agent and/or DIP Lenders in enforcing any DIP Obligations of or in collecting any payments due from any Credit Party under the DIP Loan Documents by reason of such Default or Event of Default (including in connection with the sale of, collection from, or other realization upon any of the DIP Collateral or the enforcement of the Guaranty) or in connection with any refinancing or restructuring of the credit arrangements provided thereunder in the nature of a "work out" or pursuant to any insolvency or bankruptcy cases or proceedings (including these Chapter 11 Cases); and (h) any other fees or expenses as required by the DIP Loan Documents.  Subject to the notice provision below, the foregoing fees, costs, and expenses of the DIP Agent and the DIP Lenders authorized by this Interim Order, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Loan Documents, shall be deemed fully earned, non-refundable and irrevocable as of the date of this Interim Order.  None of the DIP Agent's or DIP Lenders' attorneys, financial advisors and accountants' fees and disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the United States Trustee for this region (the "U.S. Trustee"), and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Any such fees, costs and expenses shall be evidenced by a summary invoice (redacted, as necessary, to protect any applicable privilege) and delivered to the Debtors, the U.S. Trustee, and any Creditors' Committee.  The U.S. Trustee and any Creditors' Committee shall have ten (10) business days from the date of such delivery within which to object in writing to such payment.  Following the expiration of such period, the applicable counsel shall notify the Debtors in writing of the expiration of such period and the

22

absence of any objection by the U.S. Trustee or any Creditors' Committee, and the Debtors shall pay such invoice within five (5) business days of such written notice, without the need for further application to or order of the Court.  In the event that, within such period, the U.S. Trustee or any Creditors' Committee raises an objection to a particular invoice, the applicable counsel shall notify the Debtors in writing of the objection and the Debtors shall pay the fees and expenses not subject to the objection within five (5) business days of such written notice, without the need for further application to or order of the Court.

8.    _Amendments, Consents, Waivers, and Modifications_.    The Debtors, with the express written consent of the DIP Agent and Requisite Lenders (or all affected DIP Lenders, as required in accordance with the DIP Credit Agreement) in accordance with the DIP Credit Agreement, may enter into any non-material amendments, consents, waivers, or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

9.    _DIP Liens_

(a)    To secure the DIP Obligations, the DIP Agent is hereby granted for the benefit of the DIP Secured Parties (i) pursuant to section 364(c)(2), a perfected first-priority lien on the DIP Collateral (as defined below) to the extent that such DIP Collateral was not subject to Permitted Priority Liens[5]; (ii) pursuant to section 364(c)(3), a perfected lien on the DIP Collateral junior to any Permitted Priority Liens (other than the Pre-Petition Liens) on such DIP Collateral, and (iii) pursuant to section 364(d) of the Bankruptcy Code, a perfected first-priority, priming and senior

---

[5] "Permitted Priority Liens" means valid, enforceable, non-avoidable and perfected liens in existence on the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code).

23

security interest and lien on the DIP Collateral subject to any Permitted Priority Liens (other than the Pre-Petition Liens), in each case subject to the Carve-Out ((i)-(iii) collectively, the "DIP Liens").

   (b)  The DIP Liens shall attach to all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to: (v) all of the property, assets or interests in property or assets of each Debtor and all "property of the estate" (other than the DIP Collateral Excluded Accounts (as defined in the Pledge and Security Agreement)), including, without limitation, the Pre-Petition Collateral, all leases (to the extent not included in the Pre-Petition Collateral) and, to the extent any property, assets or interests of any Debtor are excluded from the DIP Collateral, such as certain liquor licenses or leases that restrict the grant of a security interest or lien in such assets, the proceeds of such property, assets or interests; (w) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any money or other tangible or intangible property resulting from the sale, exchange, collection or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; (x) all other property and assets (other than the DIP Collateral Excluded Accounts (as defined in the Pledge and Security Agreement)) including, without limitation, Cash Collateral and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above; (y) avoidance actions under chapter 5 of the Bankruptcy Code or applicable state law ("Avoidance Actions", and the proceeds thereof,

"Avoidance Actions Proceeds"); and (z) a pledge of 100% of the Capital Stock of each Debtor's respective Subsidiaries, (collectively with (v)-(y), the "DIP Collateral"); subject only to (i) the Permitted Priority Liens (other than the Pre-Petition Liens), and (ii) prior payment of the Carve-Out.  Notwithstanding the foregoing, Avoidance Actions and Avoidance Actions Proceeds shall not constitute DIP Collateral until after the entry of the Final Order.

(c)       The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens (other than the Pre-Petition Liens) as provided herein; and (ii) prior payment of the Carve-Out.

(d)       The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Agent or the DIP Lenders to perfect such interests.

(e)       Those certain control agreements (collectively, the "Control Agreements"), entered into by and among RTI, certain other Pre-Petition Borrowers or Pre-Petition Guarantors (in each case, to the extent such Pre-Petition Borrowers or Pre-Petition Guarantors are party thereto), the Pre-Petition Agent and the applicable Bank (as defined in the proposed order attached as Exhibit A to the *Motion of Debtors for Order under Sections 105, 345, 363, 364, 503, 1107 and 1108 of the Bankruptcy Code Authorizing (I) Maintenance of Existing Bank Accounts; (II) Continuance of Existing Cash Management System, Bank Accounts, Checks and Related Forms; (III) Continued Performance of Intercompany Transactions; (IV) Limited Waiver of*

25

*Section 345(b) Deposit and Investment Requirements and (V) Granting Related Relief* (the "Cash Management Motion") and as listed in Exhibit B to the Cash Management Motion), shall inure to the benefit of the DIP Agent and the DIP Lenders.  Each Bank shall comply with instructions given to it by the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement), without the further consent of any other party to the applicable Control Agreement.  This Interim Order hereby amends each Control Agreement so that, until such time as the applicable Bank receives written notice from the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement), each reference to "Lender," "Collateral Agent" or "Secured Party" in the applicable Control Agreement is replaced by the DIP Agent.

10.    DIP Lenders' Superpriority Claim.  The DIP Agent, for the benefit of the DIP Secured Parties, is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtors' Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "Successor Case(s)") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors, including all cash and cash equivalents, and all proceeds

26

thereof including, without limitation but subject to entry of a Final Order, any Avoidance Actions and Avoidance Actions Proceeds. The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out. Except as referenced in this Interim Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case(s). The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with any sale of the Debtors' assets and the Adequate Protection Superpriority Claim.

11.     <u>Survival of DIP Liens and DIP Superpriority Claim</u>. The DIP Liens, DIP Superpriority Claim and other rights and remedies granted under this Interim Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtors' Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

<b><u>ADEQUATE PROTECTION FOR PRE-PETITION COLLATERAL USE</u></b>

12.     <u>Adequate Protection for Pre-Petition Secured Parties</u>. As adequate protection for any diminution in the value of the Pre-Petition Collateral resulting from the incurrence of the DIP Obligations, the use of Cash Collateral securing the Pre-Petition Obligations, the granting of DIP Liens and the agreement of the Pre-Petition Secured Parties to subordinate their right to

27

receive payment from the proceeds of Pre-Petition Collateral to the prior payment of the Carve-Out (collectively, the "Diminution Claim"), the Pre-Petition Agent (on behalf of the Pre-Petition Lenders) is hereby granted (in each case subject to the DIP Liens, the DIP Superpriority Claim and prior payment of the Carve-Out) the following adequate protection:

(a)    Adequate Protection Liens.    Subject to Paragraph 15 hereof, to secure the Diminution Claim, the Pre-Petition Agent, for itself and for the benefit of the Pre-Petition Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements and/or other agreements or instruments) valid, perfected, postpetition security interests and liens (the "Replacement Liens") in and on all of the Pre-Petition Collateral, provided, however, that the Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof, (ii) the Permitted Priority Liens (other than the Pre-Petition Liens), and (iii) prior payment of the Carve-Out.

(b)    Adequate Protection Superpriority Claims.    Subject to Paragraph 15 hereof, as further adequate protection for and solely to the extent of the Diminution Claim, the Pre-Petition Agent, for itself and for the benefit of the Pre-Petition Lenders, is hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Superpriority Claim"), which allowed Adequate Protection Superpriority Claim

28

shall be payable from and have recourse to all pre- and postpetition property of the Debtors, including all cash and cash equivalents, and all proceeds thereof including without limitation, but subject to and upon entry of the Final Order (and excluding avoidance actions against any of the Pre-Petition Secured Parties, in their capacities as such), any Avoidance Actions and Avoidance Actions Proceeds.  The Adequate Protection Superpriority Claim shall be subordinate and subject only to the DIP Superpriority Claim and prior payment of the Carve-Out.

(c)      Pre-Petition Secured Parties' Legal Fees and Expenses.  The Pre-Petition Secured Parties shall each receive from the Debtors payment of all reasonable and documented outstanding fees and expenses (the "Pre-Petition Fee Payments"), including, but not limited to, fees and expenses of legal counsel, incurred by the Pre-Petition Secured Parties, to the extent provided for under the Pre-Petition Credit Agreement.  The prior or simultaneous payment of all invoiced and outstanding Pre-Petition Fee Payments as of the Petition Date shall be a condition to funding of any portion of the DIP Loans.  The Pre-Petition Fee Payments are hereby approved and shall not be subject to disgorgement by any party for any reason.

(d)      As additional adequate protection, the Pre-Petition Secured Parties shall be entitled to (i) cash payment of post-petition interest on the Pre-Petition Obligations as such interest becomes due and payable at the applicable non-default rate thereunder and (ii) the additional benefits set forth in this Interim Order, including Paragraphs 14 (Restrictions on Use of Funds); 15 (Challenge Period); 17 (Estate Release); 19 (Section 506(c) Waiver Upon Entry of Final Order); 20 (No Marshaling); 21 (Equities of the Case Waiver Upon Entry of Final Order); and 35 (Sale/Conversion/Dismissal) hereof.

29

(e)    Consent to Priming and Adequate Protection.  The Pre-Petition Secured Parties consent to the Debtors' use of Cash Collateral securing the Pre-Petition Obligations and the priming provided for herein; provided, however, that such consent to the priming, the use of Cash Collateral securing the Pre-Petition Obligations and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order relating to the DIP Loan Documents and DIP Loans set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor in possession financing other than the DIP Loans provided under the DIP Loan Documents; provided, further, that such consent shall be of no force and effect in the event this Interim Order is not entered and the DIP Loan Documents and DIP Loans as set forth herein are not approved.

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

13.    Carve-Out.

(a)    The DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Superpriority Claims shall be subject and subordinate only to prior payment of: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses payable to any legal or financial advisors retained by the Debtors (the "Debtors' Professional Fees") or any Creditors' Committee (the "Committee's Professional Fees", and together with the Debtors' Professional Fees, the "Professional Fees") that are incurred or accrued prior to the date on which the DIP Agent provides written notice to the Debtors and the Creditors' Committee of the occurrence of either an Event of Default or the Maturity Date (such notice, the "Carve-Out Trigger Notice", and the date of a delivery of such notice to the Debtors and the Creditors' Committee (if any), the "Carve-Out Trigger Date"), but solely if, as

30

and to the extent such Professional Fees (whenever incurred prior to the Carve-Out Trigger

Date) are or have been provided for in, and are consistent with, the DIP Budget (subject to the

Permitted Variances) and are ultimately allowed by the Court pursuant to section 330 of the

Bankruptcy Code, including upon being earned and payable, any success fees and expenses

payable to any investment bank of the Debtors per the terms of its engagement letter approved

by the Requisite Lenders and any order of the Court approving such engagement and (iii)

unpaid (x) Debtors' Professional Fees incurred or accrued on or after the Carve-Out Trigger

Date in an aggregate amount not to exceed $100,000 and (y) Committee's Professional Fees

incurred or accrued on or after the Carve-Out Trigger Date in an aggregate amount not to

exceed $25,000, in each case under <u>clauses (x)</u> and <u>(y)</u> to the extent allowed at any time,

whether by interim order, procedural order or otherwise (<u>clauses (i)</u>, <u>(ii)</u> and <u>(iii)</u>, collectively,

the "<u>Carve-Out</u>", and <u>clause (iii)</u> alone, the "<u>Capped Carve-Out</u>").  Subject to the immediately

preceding sentence, so long as the Carve-Out Trigger Date has not occurred, the Debtors shall

be permitted to pay Case Administration Fees and Professional Fees allowed and payable

under Bankruptcy Code sections 330, 331, and 503, as provided in the DIP Loan Documents

and the DIP Budget (subject to the Permitted Variances).  Any payment of Carve-Out

expenses incurred after the occurrence of the Carve-Out Trigger Date, including any payment

of Professional Fees, shall permanently reduce the Capped Carve-Out on a dollar-for-dollar

basis.  Without limiting the generality of the foregoing, the Carve-Out shall not include, apply

to or be available for any success fee or similar payment to any professionals or other persons,

including, without limitation, any such fee payable in connection with a restructuring or asset

disposition with respect to any of the Debtors or otherwise unless otherwise agreed to in

writing by the DIP Agent and the Requisite Lenders (or all affected Lenders, as applicable) in accordance with the DIP Credit Agreement.

(b)    Prior to the Carve-Out Trigger Date: (i) an amount sufficient to pay the Professional Fees set forth in clause (a)(ii) above (excluding any success fees) may be funded by the Debtors on a weekly basis into a trust account held by the Debtors' general bankruptcy counsel (the "Professional Fee Trust Account") in the amount specified under the DIP Budget (without taking into consideration any Permitted Variances) for such week (the "Professional Fee Trust Weekly Amounts"), (ii) the Debtors shall be permitted to borrow under the DIP Credit Agreement to fund the Professional Fee Trust Weekly Amounts and (iii) the Debtors shall pay all Professional Fees allowed by the Court first from the Professional Fee Trust Account.   Following the Carve-Out Trigger Date, the Debtors shall be permitted to borrow under the DIP Credit Agreement to fund the Professional Fee Trust Account for all unpaid Professional Fees set forth in clauses (a)(ii) and (a)(iii) above, to the extent not previously funded.  Any excess amounts remaining in the Professional Fee Trust Account after payment of the Professional Fees shall be refunded to the Debtors and shall remain DIP Collateral.

(c)    Nothing contained in this Interim Order shall be construed:  (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (ii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the DIP Agent or the DIP Lenders to object to the reasonableness of such amounts.

32

14.    <u>Restrictions on Use of Funds</u>.  Notwithstanding anything in this Interim Order or the DIP Loan Documents to the contrary, no proceeds of the DIP Facility, any DIP Collateral or Pre-Petition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used in any manner to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations, the Pre-Petition Obligations and the adequate protection obligations set forth in Paragraph 12 hereof, (b) pay any amount for any use not provided for under <u>Section 2.5</u> of the DIP Credit Agreement and as set forth in the DIP Budget (subject to the Permitted Variances), (c) investigate (except as set forth in Paragraph 15 below), assert, join, commence, support or prosecute any cause of action or claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief against the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders (in their respective capacities as such) or any of their respective Related Parties (in their respective capacities as such), with respect to any transaction, occurrence, omission, or action related to the DIP Liens, the DIP Obligations, the Pre-Petition Liens or the Pre-Petition Obligations, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any action relating to any act or omission related to, or aspect of, the relationship between or among any of the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders (in their respective capacities as such), on the one hand, and the Debtors or any of their affiliates, on the other; (iii) any action with respect to the validity and extent of the DIP Obligations or the Pre-Petition Obligations or the validity,

33

perfection, extent, enforceability and/or priority of the DIP Liens, the Pre-Petition Liens or the

Replacement Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in

whole or in part, the DIP Liens, the Pre-Petition Liens or the Replacement Liens; or (v) any

action that has the effect of preventing, hindering or delaying, whether directly or indirectly, the

DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders in respect of the

enforcement of their liens and security interests in the DIP Collateral, Cash Collateral or the Pre-

Petition Collateral; (d) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy

Code) without the prior written consent of the DIP Agent and the Requisite Lenders in

accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the

DIP Credit Agreement) unless otherwise approved by the Court; and/or (e) use or seek to use

Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby

or by the DIP Loan Documents, without the consent of the DIP Agent and the Requisite Lenders

in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by

the DIP Credit Agreement).  Notwithstanding the foregoing, up to $25,000 in the aggregate of

proceeds of the DIP Loans, Cash Collateral and Carve-Out (collectively) may be used by a

Creditors' Committee to investigate (but not to commence or pursue any litigation, objection, or

challenge to) the Pre-Petition Obligations, the Pre-Petition Liens and/or claims against the

Releases prior to the Challenge Period Termination Date (as each is defined below).

   15. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

   (a) The Debtors' acknowledgements, agreements and stipulations set forth in

Paragraph D above (the "<u>Debtors' Stipulations</u>") shall be binding upon the Debtors upon entry of

this Interim Order; <u>provided</u>, <u>however</u>, that the Debtors shall be permitted to share information

with the Creditors' Committee upon a request therefor by the Creditors' Committee in

34

connection with the investigation of claims against the Releases and shall be permitted to use the proceeds of the DIP Loans, the DIP Collateral and the Cash Collateral to pay any Debtors' Professional Fees incurred in connection therewith.  The Debtors' Stipulations shall be binding upon each other party in interest, including the Creditors' Committee, if any, unless such Creditors' Committee or any other party in interest having standing other than the Debtors (or if these Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case(s)), first, commences, by the earlier of (x) with respect to any Creditors' Committee, the date that is sixty (60) calendar days from the formation of any Creditors' Committee, and (y) with respect to other parties in interest with requisite standing other than the Debtors or any Creditors' Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (such time period established by the earlier of clauses (x) and (y), the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations or (B) a contested matter, adversary proceeding, or other action against any or all of the Pre-Petition Agent or the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Obligations or the actions or inactions of the Pre-Petition Agent or the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Obligations or otherwise, including, without limitation, any claim against the Pre-Petition Agent or any or all of the Pre-Petition Secured Parties in the nature of a

35

"lender liability" cause of action, setoff, counterclaim or defense to the Pre-Petition Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code (in each case including a contested matter, adversary proceeding, or other action or "claim" brought derivatively on behalf of one or more Debtors' estates but excluding, solely for the purpose of this Interim Order, those under section 506(c) of the Bankruptcy Code) ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.

(b)    Upon the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) all payments made to or for the benefit of the Pre-Petition Agent or the Pre-Petition Lenders pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Pre-Petition Obligations shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtors' Stipulations in Paragraph D hereof and the releases in Paragraph 17 hereof shall be binding on all parties in interest, including any Creditors' Committee as if such parties had made such Debtors' Stipulations.

16.    <u>Prohibition on Granting of Additional Liens and Interests</u>.  No liens, claims, interests or priority status, other than the Carve-Out or Permitted Priority Liens, if any, having a lien or administrative priority superior to, *pari passu* with, or junior to that of the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Superpriority Claims or the Replacement

36

Liens granted by this Interim Order, shall be granted while any portion of the DIP Obligations remain outstanding, or any commitment under the DIP Loan Documents remains in effect, without the prior written consent of the DIP Agent and the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement).

17.    <u>Release</u>.    The release, discharge, waivers, settlements, compromises and agreements set forth in this Paragraph 17 shall be deemed effective upon entry of the Interim Order, and subject only to the rights set forth in Paragraph 15 above.  The Debtors forever and irrevocably (a) release, discharge, and acquit the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders (in their respective capacities as such), and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and successors and predecessors in interest (in their respective capacities as such) (collectively, the "<u>Releases</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship among the DIP Agent, the DIP Lenders, the Pre-Petition Lenders or the Pre-Petition Agent (in their respective capacities as such) and the Debtors and their affiliates including any equitable subordination or recharacterization claims or defenses, with respect to or relating to the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Pre-Petition Obligations, the Pre-Petition Liens, the Pre-Petition Credit Agreement Documents, the Debtors' attempts to restructure the Pre-Petition Obligations, any and all claims and causes of action arising under title 11 of the United States Code and any and all claims regarding the

37

validity, priority, perfection, or avoidability of the liens or secured claims of the DIP Secured

Parties and the Pre-Petition Secured Parties; and (b) waive any and all defenses (including,

without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection,

priority, enforceability and non-avoidability of the DIP Obligations, the DIP Liens, the Pre-

Petition Obligations and the Pre-Petition Liens.

## REMEDIES; MODIFICATION OF AUTOMATIC STAY

18.    <u>Remedies and Stay Modification</u>.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the

extent applicable, vacated and modified without further application or motion to, or order from,

the Court, to the extent necessary so as to permit the following, and neither section 105 of the

Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be

utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits,

privileges and remedies regardless of any change in circumstances (whether or not foreseeable):

(i)    Whether or not a Default or an Event of Default under the DIP Loan

Documents or a default by any of the Debtors of any of their obligations under this Interim Order

has occurred, (A) to require all cash, checks or other collections or proceeds from DIP Collateral

received by any of the Debtors to be deposited in accordance with the requirements of the DIP

Loan Documents, and to apply any amounts so deposited and other amounts paid to or received

by the DIP Agent and the DIP Lenders under the DIP Loan Documents in accordance with any

requirements of the DIP Loan Documents, (B) the right to file or record any financing

statements, mortgages or other instruments or other documents to evidence the security interests

in and liens upon the DIP Collateral, (C) the right to charge and collect any interest, fees, costs

and other expenses accruing at any time under the DIP Loan Documents as provided therein, and

[AM_ACTIVE 402640889_19]

(D) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this Interim Order.

(ii)    Subject to subparagraph (a)(iv) below, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Agent, for itself and on behalf of the DIP Lenders, upon the occurrence and during the continuance of an Event of Default, and without any interference from the Debtors or any other party in interest but subject to five (5) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Loan Documents; (B) declare all DIP Obligations immediately due and payable; (C) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (D) foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (E) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Agent and DIP Lenders); and/or (F) exercise any other default-related rights and remedies under the under the DIP Loan Documents or this Interim Order.  The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents.

(iii)    Upon the occurrence of an Event of Default or a default by any of the Debtors of any of their obligations under this Interim Order, and without being subject to the Remedies Notice Period, (A) the DIP Agent, for itself and the benefit of the DIP Lenders, may

39

immediately charge interest at the default rate set forth in the DIP Loan Documents and (B) twenty-four (24) hours after the DIP Agent delivers a notice of an Event of Default to the Borrower Representative, the DIP Agent shall, subject to the Carve-Out, have no further obligation to permit the continued use of Cash Collateral.

(iv)    The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.

(v)    If the DIP Lenders are entitled, and have elected in accordance with the provisions hereof, to direct the DIP Agent to enforce the DIP Liens or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent and the DIP Lenders in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent or the DIP Lenders (including any collateral liquidator or consultant), (B) providing the DIP Agent and the DIP Lenders and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or the DIP Lenders or their respective representatives, (C) performing all other obligations set forth in the DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's or the DIP Lenders' enforcement of rights.

[AM_ACTIVE 402640889_19]

(vi)     Upon the occurrence and during the continuance of a Default or an Event of Default under the DIP Loan Documents, a violation of the terms of or an event of default under this Interim Order or occurrence of the Maturity Date, the DIP Agent, at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement), shall have no further obligation to provide financing under the DIP Loan Documents.

(vii)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested.

## **MISCELLANEOUS**

19.    <u>Limitation on Section 506(c) Claims</u>.  Subject to entry of the Final Order and as additional adequate protection for the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the DIP Secured Parties, the Pre-Petition Secured Parties or any of their respective claims, the Carve-Out, the DIP Collateral or the Pre-Petition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the DIP Agent and the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement). No action, inaction, or acquiescence by the DIP Secured Parties or the Pre-Petition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a

41

surcharge against the DIP Secured Parties, the Pre-Petition Secured Parties, any of their respective claims, the Carve-Out, the DIP Collateral or the Pre-Petition Collateral.

20.     No Marshaling.  The DIP Secured Parties and the Pre-Petition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Pre-Petition Collateral.  Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Loan Documents or termination or breach under the DIP Loan Documents.

21.     Equities of the Case Waiver Upon Entry of Final Order.  The DIP Agent, the DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Pre-Petition Collateral.

22.     Additional Perfection Measures.  The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order.  None of the Debtors, the DIP Secured Parties or the Pre-Petition Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or any other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property or

42

filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)    If the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement)), chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments or to otherwise record or perfect such security interests and liens, the DIP Agent is hereby authorized, but not directed, to take such action or to request that the Debtors take such action on its behalf (and the Debtors are hereby authorized and directed to take such action), and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent may choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the Collateral, and such filing by the DIP Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

23.    <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the DIP Loan Documents, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent, subject to the payment of or reserve for the Carve-Out and allowed claims secured by Permitted Priority Liens (other than the Pre-Petition Liens) as

43

described herein, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agent or the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents.  In furtherance of the foregoing:

(a)    all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution, other than the DIP Collateral Excluded Accounts (as defined in the Pledge and Security Agreement), shall be subject to a perfected, first priority security interest in favor of the DIP Agent (or its designee);

(b)    upon the occurrence of the Maturity Date and the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor, other than the DIP Collateral Excluded Accounts (as defined in the Pledge and Security Agreement), is hereby authorized and instructed to (i) comply at all times with any instructions originated by the DIP Agent (or its designee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Agent (or its designee) by wire transfer (to such account as the DIP Agent (or its designee) shall specify, or in such other manner as the DIP Agent (or its designee) shall direct) all such cash, securities, investment property and other items held by it and (ii) subject to entry of the Final Order, waive any right of set off, banker's lien or other similar lien, security interest or encumbrance as against the DIP Agent (or its designee);

(c)    any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor and the DIP Agent in connection with the DIP Loan

44

Documents shall establish control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations; and

(d)        any deposit account control agreement executed and delivered by any bank or other financial institution, any Debtor and the Pre-Petition Agent prior to the Petition Date in connection with the Pre-Petition Credit Agreement Documents shall establish co-control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Agent), and all rights thereunder in favor of the Pre-Petition Agent shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full in cash, at which time exclusive control shall automatically revert to the Pre-Petition Agent.

24.        <u>Access to Collateral</u>. Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Loan Documents, or a default by any of the Debtors of any of their obligations under this Interim Order, has occurred and is continuing or that the Maturity Date has occurred, the DIP Agent (including at the direction of the Requisite Lenders in accordance with the DIP Credit Agreement (or all affected Lenders to the extent required by the DIP Credit Agreement)), (i) may, unless otherwise provided in any

[AM_ACTIVE 402640889_19]

separate agreement by and between the applicable landlord or licensor and the DIP Agent or the Pre-Petition Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph, without interference from lienholders, landlords or licensors thereunder, subject to such lienholders', landlords', or licensors' rights under applicable law, provided, however, that the DIP Lenders shall pay only base rent payable during the period of such occupancy or use by the DIP Agent calculated on *a per diem* basis.  Nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph.

25.    [Reserved].

26.    Delivery of Documentation.  The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Agent, counsel to the DIP Lenders, and, after the Maturity Date and the repayment of the DIP Obligations in full in cash, counsel to the Pre-Petition Lenders, all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent and/or the DIP Lenders pursuant to the DIP Loan Documents or the Pre-Petition Agent, as the case may be, or (ii) reasonably requested by the DIP

46

Agent and/or the DIP Lenders (or their legal and financial advisors) or by the Pre-Petition Agent

and/or the Pre-Petition Lenders (or their advisors), as the case may be.

27.    <u>Access to Books and Records</u>.    The Debtors (and/or their legal and financial

advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which

full, true, and correct entries shall be made of all dealings and transactions in relation to their

business and activities, (b) cooperate, consult with and provide to the DIP Secured Parties all

such information as required or allowed under the DIP Loan Documents or the provisions of this

Interim Order or that is afforded to the Creditors' Committee and/or the Creditors' Committee's

respective legal or financial advisors, (c) permit, consistent with the DIP Loan Documents,

representatives of the DIP Secured Parties to visit and inspect any of their respective properties,

to examine and make abstracts or copies from any of their respective books and records, to

conduct a collateral audit and analysis of their respective inventory and accounts, to tour the

Debtors' business premises and other properties, and to discuss, and provide advice with respect

to, their respective affairs, finances, properties, business operations and accounts with their

respective officers, employees and independent public accountants as often as may reasonably be

desired, and (d) permit, consistent with the DIP Loan Documents, representatives of the DIP

Secured Parties to consult with and advise the Debtors' management on matters concerning the

general status of the Debtors' business, financial condition and operations.

28.    <u>Lenders Not Responsible Persons</u>.    In (a) making the decision to make the DIP

Loans; (b) administering the DIP Loans; (c) extending other financial accommodations to the

Debtors under the DIP Loan Documents; (d) making the decision to make the loans and financial

accommodations under the Pre-Petition Credit Agreement Documents; (e) administering the

loans and financial accommodations extended under the Pre-Petition Credit Agreement

47

Documents; (f) extending other financial accommodations to the Debtors under the Pre-Petition Credit Agreement Documents; and (g) making the decision to collect the indebtedness and obligations of the Debtors, none of the DIP Secured Parties or the Pre-Petition Secured Parties shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent rights afforded them under the DIP Loan Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law.

29.    <u>Successors and Assigns</u>.  The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code.  The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

30.    <u>Debtors Will Not Challenge Credit Bid Rights</u>.  Without prejudice to any rights or claims reserved pursuant to Paragraph 15 hereof as to any party in interest other than the Debtors (and subject to the limitations therein), no Debtor shall object to any DIP Lender credit bidding up to the full amount of its outstanding DIP Obligations or, subject to entry of the Final Order, any Pre-Petition Lender credit bidding up to the full amount of its outstanding Pre-Petition Obligations, in each case including, without limitation, any accrued interest and expenses, in any

48

sale of any DIP Collateral whether such sale is effectuated through section 363 of the Bankruptcy Code in a Chapter 11 or Chapter 7 proceeding, under section 1129 in a Chapter 11 proceeding, by a Chapter 7 trustee in a Chapter 7 proceeding or otherwise. The DIP Lenders and Pre-Petition Lenders expressly reserve the right to credit bid up to the full amount of their outstanding DIP Obligations or Pre-Petition Obligations, including, without limitation, all principal, interest, fees, expenses, call premiums, yield maintenance premiums and other fees and charges; provided, however, that the Debtors expressly preserve their rights to contest the allowance of any call premium and yield maintenance premium under the Pre-Petition Credit Agreement.

31.     Binding Nature of Agreement.  Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Loan Documents have been or will be properly executed and delivered to the DIP Agent or the DIP Lenders by the Debtors, no later than one business day after entry of this Interim Order.  Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens and priorities of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, and the Pre-Petition Lenders provided for in this Interim Order, the DIP Loan Documents or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code.

32.     Subsequent Reversal or Modification.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the

49

provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders, prior to the date of receipt by the DIP Agent and the Pre-Petition Agent of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders prior to written notice to the DIP Agent and the Pre-Petition Agent of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders, shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

33.    Collateral Rights.  If any party who holds a lien or security interest in DIP Collateral or Pre-Petition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens or the Pre-Petition Liens in such DIP Collateral or Pre-Petition Collateral receives or is paid the proceeds of such DIP Collateral or Pre-Petition Collateral prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents and (b) the Pre-Petition Obligations under the Pre-Petition Credit Agreement Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Pre-Petition Collateral in trust for the DIP

[AM_ACTIVE 402640889_19]

Lenders and the Pre-Petition Lenders and shall immediately turn over such proceeds for application by the DIP Agent and the Pre-Petition Agent to repay the DIP Obligations and the Pre-Petition Obligations in accordance with the DIP Loan Documents, the Pre-Petition Credit Agreement Documents and this Interim Order until indefeasibly paid in full in cash.

34.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, DIP Lenders, Pre-Petition Agent or Pre-Petition Lenders may have to bring or be heard on any matter brought before this Court.

35.    <u>Sale/Conversion/Dismissal</u>.  If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Superpriority Claims granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Loan Documents until all DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the adequate protection obligations set forth in Paragraph 12 hereof.

36.    <u>Limits on Lenders' Liability</u>.  Nothing in this Interim Order or in any of the DIP Loan Documents, the Pre-Petition Credit Agreement Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties, or, subject to Paragraph 15 of this Interim Order, the Pre-Petition Secured

[AM_ACTIVE 402640889_19]

Parties, of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

37.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, the Requested Relief, any other order of this Court or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

38.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

39.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim shall continue in these Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim shall maintain their priorities as provided in this Interim Order, the Final Order and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit,

[AM_ACTIVE 402640889_19]

incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Agent or the DIP Lenders in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases or by any other act or omission until (i) all DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance therewith, and (ii) the Pre-Petition Obligations have been or are deemed to have been satisfied in accordance with the Bankruptcy Code.

40.    <u>Adequate Notice/Scheduling of Final Hearing</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules and the Local Rules, such notice was sufficient under the particular circumstances and no other or further notice of the request for relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to any known party affected by the terms of this Interim Order and/or Final Order and any other party requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (a) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd. 13th Foor, Los Angeles, CA 90067-4003 (Attn.: Richard Pachulski and Malhar S. Pagay); (b) counsel to GSSLG and GS Bank, (i) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 (Attn: Sean O'Neal and Jane VanLare); and (ii) Hunton Andrews Kurth LLP, Bank of America Plaza, Suite 4100, 600 Peachtree Street, N.E., Atlanta, GA 30308-2216 (Attn: Greta T. Griffith); (c) counsel to TCW Direct Lending LLC, TCW Skyline Lending, L.P., and TCW Brazos Fund LLC, Paul Hastings

53

LLP, 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071 (Attn: Justin Rawlins); (d) each Bank identified on Exhibit B attached to the Cash Management Motion, at the "Bank Name and Address" set forth therein; (e) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801; and (f) any Creditors' Committee appointed in these cases.  The Court shall conduct a Final Hearing on the Requested Relief commencing on [___,] 2020 at [_____] (Eastern).

41.    <u>Immediate Binding Effect; Entry of Interim Order</u>.  This Interim Order shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

42.    <u>Proofs of Claim</u>.  Notwithstanding any order of this Court to the contrary, the Pre-Petition Agent, Pre-Petition Lenders, DIP Agent and DIP Lenders hereby are relieved of any obligation or requirement to file proofs of claim in these Chapter 11 Cases with respect to any Pre-Petition Obligations or DIP Obligations and any other claims or liens granted hereunder or created hereby.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Pre-Petition Agent and the Pre-Petition Lenders upon approval of this Interim Order, and the Pre-Petition Agent and the Pre-Petition Lenders shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim.  Notwithstanding the foregoing, the Pre-Petition Agent and the Pre-Petition Lenders are hereby authorized and entitled, in their discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Case(s) for any claim allowed herein.

[AM_ACTIVE 402640889_19]

43.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order.

Dated:  Wilmington, Delaware
                  _____, 2020


                                                      _____
                                                            UNITED STATES BANKRUPTCY JUDGE

55

EXHIBIT A

**DIP CREDIT AGREEMENT**
**(without exhibits or schedules)**

[see attached]

EXHIBIT B

**BUDGET**

[see attached]

**Ruby Tuesday, Inc.**
DIP Budget
*(US $ in 000s)*

| | Petition Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Post Fcst | Fcst |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual / Forecast --> | | | | | | | | | | | | | | | | | |
| Week Number --> | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 16-Week Total |
| Period Ending --> | P5 W1 | P5 W2 | P5 W3 | P5 W4 | P6 W1 | P6 W2 | P6 W3 | P6 W4 | P7 W1 | P7 W2 | P7 W3 | P7 W4 | P7 W5 | P8 W1 | P8 W2 | P8 W3 | |
| Week Starting Date --> | 10/07/20 | 10/14/20 | 10/21/20 | 10/28/20 | 11/04/20 | 11/11/20 | 11/18/20 | 11/25/20 | 12/02/20 | 12/09/20 | 12/16/20 | 12/23/20 | 12/30/20 | 01/06/21 | 01/13/21 | 01/20/21 | 10/07/20 |
| Week Ending Date --> | 10/13/20 | 10/20/20 | 10/27/20 | 11/03/20 | 11/10/20 | 11/17/20 | 11/24/20 | 12/01/20 | 12/08/20 | 12/15/20 | 12/22/20 | 12/29/20 | 01/05/21 | 01/12/21 | 01/19/21 | 01/26/21 | 01/26/21 |
| **Operating Receipts** | | | | | | | | | | | | | | | | | |
| Restaurant operations | $ 5,017 | $ 4,963 | $ 4,957 | $ 4,956 | $ 5,029 | $ 5,037 | $ 5,038 | $ 5,039 | $ 5,111 | $ 5,120 | $ 5,121 | $ 5,121 | $ 5,121 | $ 5,194 | $ 5,203 | $ 5,204 | $ 81,231 |
| Other | 37 | 39 | 42 | 69 | 41 | 42 | 43 | 67 | 42 | 42 | 42 | 42 | 72 | 47 | 219 | 118 | 1,005 |
| Total Operating Receipts | 5,054 | 5,003 | 4,999 | 5,025 | 5,070 | 5,079 | 5,081 | 5,105 | 5,153 | 5,162 | 5,164 | 5,164 | 5,193 | 5,241 | 5,421 | 5,322 | 82,236 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | |
| COGS Vendors (PFG & Fintech) | (1,821) | (1,697) | (1,683) | (1,681) | (1,683) | (1,701) | (1,705) | (1,705) | (1,704) | (1,723) | (1,727) | (1,726) | (1,725) | (1,730) | (1,754) | (1,758) | (27,524) |
| Total Payroll | (2,335) | (2,221) | (2,152) | (2,211) | (2,150) | (2,178) | (2,231) | (2,246) | (2,186) | (2,208) | (2,261) | (2,213) | (2,271) | (2,212) | (2,242) | (2,296) | (35,613) |
| Service Channel | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (300) | (4,800) |
| Sales Tax | (175) | (1,401) | (88) | (88) | (102) | (1,636) | (205) | (102) | (81) | (1,300) | (162) | (81) | (83) | (1,321) | (165) | (83) | (7,073) |
| Utilities | - | - | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (350) | (4,900) |
| Rent | - | - | - | (50) | - | - | - | (50) | - | - | - | - | (2,736) | - | - | - | (2,836) |
| Property Tax | - | - | (12) | (164) | (51) | (28) | (326) | - | (48) | (63) | (11) | (396) | (449) | (509) | (2) | (198) | (143) | (2,399) |
| IT | (210) | (53) | (48) | (84) | (111) | (30) | (6) | (169) | (46) | (53) | (6) | (91) | (84) | (69) | (30) | (123) | (1,211) |
| Ordinary course prof service | (68) | (277) | (58) | (140) | (62) | (252) | (58) | (175) | (33) | (281) | (58) | (175) | (33) | (79) | (235) | (110) | (2,097) |
| Insurance | (27) | (5) | (53) | (33) | (73) | (7) | (5) | (81) | (73) | (143) | (5) | (5) | (81) | (73) | (7) | (5) | (677) |
| Marketing | - | (115) | (65) | (340) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (250) | (3,520) |
| Other | (189) | (195) | (95) | (298) | (95) | (195) | (95) | (298) | (95) | (362) | (95) | (160) | (283) | (95) | (195) | (95) | (2,839) |
| Total Operating Disbursements | (5,126) | (6,264) | (4,904) | (5,738) | (5,228) | (6,928) | (5,532) | (5,773) | (5,182) | (6,980) | (5,611) | (5,800) | (8,704) | (6,482) | (5,725) | (5,513) | (95,488) |
| **Net Operating Cash Flow** | (71) | (1,262) | 95 | (713) | (158) | (1,849) | (450) | (668) | (28) | (1,818) | (447) | (637) | (3,511) | (1,241) | (304) | (191) | (13,252) |
| **Restructuring** | | | | | | | | | | | | | | | | | |
| Restructuring Professional Fees Escrow | (259) | (209) | (233) | (300) | (365) | (228) | (221) | (276) | (351) | (221) | (221) | (269) | (592) | (156) | (211) | (156) | (4,271) |
| Secured Lender Professional Fees | (115) | (115) | (115) | (115) | (115) | (115) | (70) | (70) | (70) | (70) | (30) | (30) | (30) | (30) | (25) | (25) | (1,140) |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | (250) | - | (83) | (333) |
| Utility deposit | - | - | - | (511) | - | - | - | - | - | - | - | - | - | - | - | - | (511) |
| Adequate Protection (pre-petition debt) | - | - | - | (199) | - | - | - | (265) | - | - | - | - | (322) | - | - | - | (786) |
| Secured Lender Professional Fees (pre-petition) | (1,277) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,277) |
| DIP Loan Interest and Fees | - | - | - | (86) | - | - | - | (127) | - | - | - | - | (166) | - | - | - | (378) |
| Total Restructuring | (1,651) | (324) | (348) | (1,211) | (480) | (343) | (291) | (738) | (421) | (291) | (251) | (299) | (1,109) | (436) | (236) | (265) | (8,697) |
| **Net Cash Flow Before Other Trust / Estate** | (1,723) | (1,586) | (253) | (1,924) | (638) | (2,192) | (742) | (1,406) | (449) | (2,109) | (698) | (936) | (4,621) | (1,677) | (540) | (456) | (21,949) |
| **Other Trust / Estate Receipts & (Disbursements)** | | | | | | | | | | | | | | | | | |
| Deferred Comp Plan | - | - | - | - | - | - | 5,290 | - | - | - | - | - | - | - | - | - | 5,290 |
| COLI Trust from ESP/MRP Plans | - | - | - | - | - | 22,631 | - | - | - | - | - | - | - | - | - | - | 22,631 |
| Asset sales | - | - | - | - | - | - | - | - | 1,520 | - | - | - | - | - | - | - | 1,520 |
| Paydown from asset sales | - | - | - | - | - | - | - | - | (1,520) | - | - | - | - | - | - | - | (1,520) |
| Total Other Trust / Estate Receipts & (Disbursements) | - | - | - | - | - | 22,631 | 5,290 | - | - | - | - | - | - | - | - | - | 27,921 |
| **Net Cash Flow** | $ (1,723) | $ (1,586) | $ (253) | $ (1,924) | $ (638) | $ 20,439 | $ 4,548 | $ (1,406) | $ (449) | $ (2,109) | $ (698) | $ (936) | $ (4,621) | $ (1,677) | $ (540) | $ (456) | $ 5,972 |

| **Liquidity Summary** | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash [non-escrow] | $ 5,410 | $ 6,687 | $ 5,101 | $ 4,848 | $ 6,424 | $ 5,786 | $ 26,225 | $ 30,774 | $ 29,368 | $ 28,918 | $ 26,809 | $ 26,111 | $ 25,175 | $ 20,555 | $ 18,877 | $ 18,337 | $ 5,410 |
| Net Cash Flow | (1,723) | (1,586) | (253) | (1,924) | (638) | 20,439 | 4,548 | (1,406) | (449) | (2,109) | (698) | (936) | (4,621) | (1,677) | (540) | (456) | 5,972 |
| DIP Advances / (Paydowns) | 3,000 | - | - | 3,500 | - | - | - | - | - | - | - | - | - | - | - | - | 6,500 |
| Ending Cash [non-escrow] | 6,687 | 5,101 | 4,848 | 6,424 | 5,786 | 26,225 | 30,774 | 29,368 | 28,918 | 26,809 | 26,111 | 25,175 | 20,555 | 18,877 | 18,337 | 17,882 | 17,882 |
| Restructuring Professionals Escrow | 259 | 469 | 702 | 1,002 | 1,187 | 1,080 | 1,301 | 1,577 | 1,798 | 1,267 | 1,488 | 1,757 | 1,969 | 1,417 | 1,629 | 1,785 | 1,785 |
| Utility Deposit Escrow | - | - | - | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 |
| Ending Cash + Escrowed Cash | $ 6,946 | $ 5,570 | $ 5,549 | $ 7,937 | $ 7,484 | $ 27,816 | $ 32,586 | $ 31,456 | $ 31,228 | $ 28,587 | $ 28,110 | $ 27,443 | $ 23,035 | $ 20,806 | $ 20,477 | $ 20,178 | $ 20,178 |

| **DIP Facility Summary** | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning DIP Balance | $ - | $ 12,571 | $ 12,571 | $ 12,571 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ - |
| + Advances | 3,000 | - | - | 3,500 | - | - | - | - | - | - | - | - | - | - | - | - | 6,500 |
| + Pre-Petition LC Roll-up | 9,571 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 9,571 |
| + Pre-Petition Roll-Up | - | - | - | 2,000 | - | - | - | - | - | - | - | - | - | - | - | - | 2,000 |
| Ending DIP Balance | $ 12,571 | $ 12,571 | $ 12,571 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 | $ 18,071 |

**Ruby Tuesday, Inc.**
DIP Budget - Professional Fees Schedule
*(US $ in 000s)*

| | W1 Petition Fcst | W2 Post Fcst | W3 Post Fcst | W4 Post Fcst | W5 Post Fcst | W6 Post Fcst | W7 Post Fcst | W8 Post Fcst | W9 Post Fcst | W10 Post Fcst | W11 Post Fcst | W12 Post Fcst | W13 Post Fcst | W14 Post Fcst | W15 Post Fcst | W16 Post Fcst | 16-Week Total Fcst |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Number -->** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | |
| **Period Ending -->** | P5 W1 | P5 W2 | P5 W3 | P5 W4 | P6 W1 | P6 W2 | P6 W3 | P6 W4 | P7 W1 | P7 W2 | P7 W3 | P7 W4 | P7 W5 | P8 W1 | P8 W2 | P8 W3 | 16-Week Total |
| **Week Starting Date -->** | 10/07/20 | 10/14/20 | 10/21/20 | 10/28/20 | 11/04/20 | 11/11/20 | 11/18/20 | 11/25/20 | 12/02/20 | 12/09/20 | 12/16/20 | 12/23/20 | 12/30/20 | 01/06/21 | 01/13/21 | 01/20/21 | 10/07/20 |
| **Week Ending Date -->** | 10/13/20 | 10/20/20 | 10/27/20 | 11/03/20 | 11/10/20 | 11/17/20 | 11/24/20 | 12/01/20 | 12/08/20 | 12/15/20 | 12/22/20 | 12/29/20 | 01/05/21 | 01/12/21 | 01/19/21 | 01/26/21 | 01/26/21 |
| **Restructuring Professional Fees Escrow** | | | | | | | | | | | | | | | | | |
| **Debtor** | | | | | | | | | | | | | | | | | |
| Debtor Counsel | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (133) | (2,133) |
| Debtor FA | (76) | (76) | (70) | (67) | (57) | (50) | (43) | (43) | (43) | (43) | (43) | (36) | (33) | (13) | (13) | (13) | (717) |
| Investment Banker | - | - | - | - | (55) | - | - | - | (55) | - | - | - | (55) | - | - | - | (165) |
| Valuation Expert | - | - | - | - | - | - | - | - | - | - | - | - | (250) | - | - | - | (250) |
| Lease Advisor | (50) | - | - | - | (75) | - | - | - | (75) | - | - | - | (75) | - | - | - | (275) |
| Noticing & Claims Agent Fees | - | - | - | (55) | - | - | - | (55) | - | - | - | (55) | - | - | (55) | - | (220) |
| Total Debtor | (259) | (209) | (203) | (255) | (320) | (183) | (176) | (231) | (306) | (176) | (176) | (224) | (547) | (146) | (201) | (146) | (3,761) |
| **UCC** | | | | | | | | | | | | | | | | | |
| UCC Counsel | - | - | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (10) | (10) | (10) | (360) |
| UCC FA | - | - | - | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | - | - | - | (150) |
| Total UCC | - | - | (30) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (10) | (10) | (10) | (510) |
| **Total Restructuring Professional Fees Escrow** | (259) | (209) | (233) | (300) | (365) | (228) | (221) | (276) | (351) | (221) | (221) | (269) | (592) | (156) | (211) | (156) | (4,271) |

| Restructuring Professional Fees ("RPF") Escrow Balance Summary | W1 | W2 | W3 | W4 | W5 | W6 | W7 | W8 | W9 | W10 | W11 | W12 | W13 | W14 | W15 | W16 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning RPF Balance** | $ - | $ 259 | $ 469 | $ 702 | $ 1,002 | $ 1,187 | $ 1,080 | $ 1,301 | $ 1,577 | $ 1,798 | $ 1,267 | $ 1,488 | $ 1,757 | $ 1,969 | $ 1,417 | $ 1,629 | $ - |
| + Escrowed Fees | 259 | 209 | 233 | 300 | 365 | 228 | 221 | 276 | 351 | 221 | 221 | 269 | 592 | 156 | 211 | 156 | 4,271 |
| - Cash Disbursements | - | - | - | - | (180) | (335) | - | - | (130) | (753) | - | - | (380) | (708) | - | - | (2,486) |
| **Ending RPF Balance** | $ 259 | $ 469 | $ 702 | $ 1,002 | $ 1,187 | $ 1,080 | $ 1,301 | $ 1,577 | $ 1,798 | $ 1,267 | $ 1,488 | $ 1,757 | $ 1,969 | $ 1,417 | $ 1,629 | $ 1,785 | $ 1,785 |

| Secured Lender Professional Fees (not part of RPF) | W1 | W2 | W3 | W4 | W5 | W6 | W7 | W8 | W9 | W10 | W11 | W12 | W13 | W14 | W15 | W16 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Secured Lender Counsel | (75) | (75) | (75) | (75) | (75) | (75) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (25) | (25) | (740) |
| Secured Lender FA | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | - | - | - | - | - | - | (400) |
| **Total Secured Lender Professional Fees** | (115) | (115) | (115) | (115) | (115) | (115) | (70) | (70) | (70) | (70) | (30) | (30) | (30) | (30) | (25) | (25) | (1,140) |