IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**DECLARATION OF SHAWN LEDERMAN, CHIEF EXECUTIVE OFFICER, IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1), AND 364(E) OF THE BANKRUPTCY CODE AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (III) SCHEDULING FINAL HEARING**

I, Shawn Lederman, declare and state as follows:

1.  I am the Chief Executive Officer of debtor and debtor-in-possession Ruby Tuesday, Inc. ("RTI"), and have been a member of RTI's Board of Directors since December 2017. I am generally familiar with the current day-to-day operations, business, and financial

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.
.

affairs of RTI and its debtor affiliates (the "Debtors"), as well as their books and records. Except as otherwise indicated, all facts set forth in this declaration are based on (i) my personal knowledge of the Debtors' employees, operations, and finances; (ii) information learned from my review of relevant documents; (iii) information supplied to me by other members of the Debtors' management team and its advisors; or (iv) my opinion based on my experience, knowledge and information concerning the Debtors' operations and financial condition. I am over the age of 18 and am authorized to submit this declaration on behalf of the Debtors. If called upon to, I could and would testify competently to the facts set forth herein.

2.  I make this declaration in support of the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of the Bankruptcy Code and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing* (the "DIP Financing Motion"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Motion. Except as otherwise noted, I could and would testify to the following based upon my personal knowledge. I have reviewed the DIP Financing Motion and believe the facts set forth therein are true and correct.

3.  Pursuant to the DIP Financing Motion, the Debtors seek authority to consummate a new senior, secured debtor-in-possession financing facility (the "DIP Facility") with their existing Pre-Petition Lenders. The DIP Facility will consist of term loans in the aggregate

principal amount of $18.5 million (including a $9.6 million sub-facility to be used solely for the reimbursement of any draws under certain existing letters of credit).  The DIP Facility includes a roll-up of the Debtors' prepetition letter of credit facility (potential exposure of approximately $9.6 million) upon entry of the Interim Order and a roll-up of $2.0 million in prepetition bridge advances upon entry of the Final Order.  The new money advances that will be available to the Debtors under the DIP Facility total $6.9 million, of which $3.0 million will be available upon entry of the Interim Order.  The DIP Facility will consensually prime the obligations of the Pre-Petition Secured Parties as to the Prepetition Collateral, and will provide needed financing during these cases pending consummation of the Debtors' contemplated chapter 11 plan.

4. The Debtors are an operating restaurant business with thousands of employees, vendors, and customers that depend on the Debtors' continuing performance of their ongoing business obligations.  The Debtors have an urgent and immediate need to obtain financing and for authority to use Cash Collateral subject to the terms of the DIP Financing Motion in order to, among other things:  (a) continue to operate their business in an orderly manner; (b) maintain their valuable relationships with employees, vendors, and customers; (c) pay various administrative professionals' fees to be incurred in the Chapter 11 Cases; and (d) support the Debtors' working capital, general corporate and overall operational needs.  The foregoing expenditures are critically necessary to preserve and maintain the going concern value of the Debtors' business and, ultimately, help ensure a successful reorganization under the Debtors' contemplated chapter 11 plan.  Without access to funding under the DIP Facility and use of Cash Collateral, the Debtors would be forced to cease operations and liquidate their assets.

5.  After careful review of their financing options, the Debtors concluded that the proposed DIP Facility would allow the Debtors to meet their goals and provide the Debtors with sufficient liquidity on economic terms that were superior to terms proposed by any other prospective lender.  The DIP Lenders are unwilling to lend into the DIP Facility except on a fully secured and senior (*i.e.*, priming) basis as to the DIP Collateral.  In connection with the DIP Facility, the DIP Lenders also provided a term sheet for exit financing that would continue to provide liquidity for the Debtors' operations post-emergence.  The Debtors subsequently negotiated the terms of the debtor-in-possession with the DIP Lenders and their counsel.  Such negotiations were conducted at arms' length and in good faith and proceeded over several weeks as the Debtors sought to secure the best possible terms under the circumstances.  The outcome of such negotiations is the DIP Credit Agreement incorporated in the DIP Financing Motion.

6.  Based on the foregoing, approval of the financing for the Debtors proposed in the DIP Financing Motion reflects a sound exercise of business judgment and the best possible terms available under the circumstances. I therefore urge the Court to approve the DIP Financing Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  October 8, 2020      /s/ Shawn Lederman
At: Maryville, Tennessee      Shawn Lederman
                              Chief Executive Officer

DOCS_LA:332939.3 76136/001