# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RTI HOLDING COMPANY, LLC,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 20-12456 (JTD)<br><br>(Jointly Administered) |

**Objection Deadline: October 29, 2020 at 4:00 p.m. (ET)**
**Hearing Date: November 5, 2020 at 11:00 a.m. (ET)**

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER: (I) AUTHORIZING DEBTORS TO EMPLOY AND RETAIN FOCALPOINT SECURITIES, LLC AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT AGREEMENT, (III) MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS, AND (IV) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company") hereby apply to the Court (this "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order") (i) authorizing them to employ and retain FocalPoint Securities, LLC ("FocalPoint"), as investment banker *nunc pro tunc* to the Petition Date (as defined below) in accordance with the terms and conditions set forth in that certain Amended and Restated Financial Advisory Services Engagement Letter, dated as of October 9, 2020 (the "Engagement Agreement"), copies of which are attached as **Exhibit 1** to the Order; (ii) approving the terms of the Engagement Agreement, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth therein, (iii) modifying certain information requirements of Local Rule 2016-2, and (iv) granting related relief. In support of this Application, the Debtors submit the declaration of Richard F. NeJame (the "NeJame Declaration"), attached hereto as **Exhibit B**. In further support of the Application, the Debtors respectfully represent as follows:

**Jurisdiction**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2(h).

**Background**

4. On October 7, 2020 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5. The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

6. A more detailed description of the Debtors' business and operations, and the events leading to the commencement of these chapter 11 cases, is provided in the *Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc., in Support of*

*First Day Pleadings* [Docket No. 3] (the "First Day Declaration"), and incorporated herein by reference.[2]

### Relief Requested

7. By this Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2(h), the Debtors request authority to appoint and retain FocalPoint as their investment banker in the Debtors' chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Agreement, effective as of the Petition Date.

8. The Debtors are pursuing a restructuring of their operations and financial affairs pursuant to the terms set forth in a Restructuring Support Agreement, dated October 8, 2020 ("RSA"), which contemplates "parallel paths" involving a plan of reorganization as well as a marketing and sale process regarding the disposition of the Debtors' business as a going concern. The RSA requires the Debtors to employ FocalPoint to spearhead this marketing and sale process, which is a critical element in ensuring that the chapter 11 cases result in maximizing value for creditors. The RSA also contemplates the potential for seeking alternative Exit Financing sources, for which FocalPoint also will be responsible.

### FocalPoint's Qualifications

9. In light of the size and complexity of these cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings set forth in the First Day Declaration.

4

FocalPoint to assist them in pursuing the transactions that are crucial to the success of the Debtors' cases. Investment banking expertise, such as the expertise provided by FocalPoint, is a necessary, vital, and critical service that will complement the services provided by the Debtors' other professionals, without duplication. The Debtors believe the retention of FocalPoint as their investment banker is in the best interest of their estates and will inure to the benefit of all parties in interest because, among other things, FocalPoint has extensive experience in, and an excellent reputation for, providing investment banking services to debtors in bankruptcy reorganizations and other restructurings and has provided services to the Debtors prior to the Petition Date.

10. FocalPoint, and in particular Mr. NeJame, who is the Managing Director, has extensive experience advising leveraged and distressed corporate clients, as well as institutional, private equity, and other investing clients. Mr. NeJame's experience spans a broad array of transactions, with an emphasis on bespoke financing structures, liability management, and recapitalization transactions effected through both chapter 11 and out-of-court processes. During his career, Mr. NeJame has executed more than $100B in aggregated transaction value involving approximately 75 deals.

11. The partners and associates of FocalPoint have considerable expertise in the fields of bankruptcy, insolvency, reorganizations, liquidations, valuation, and debt restructuring, among other expertise. FocalPoint is a leading, independent middle market investment bank with approximately fifty professionals in Chicago, Los Angeles, New York, and

5

Shanghai. The principals of FocalPoint have extensive experience representing financially distressed companies in both bankruptcy proceedings and out of-court transactions.

12. Considering the RSA's requirement of a marketing a sale process to move forward simultaneously with the Debtors' pursuit of confirmation of their Plan and the importance of obtaining the best Exit Financing terms to allow the Debtors to flourish as a going-forward business, the Debtors seek this Court's approval of FocalPoint's retention. The Debtors believe that FocalPoint is well qualified and uniquely situated to serve as their investment banker in these chapter 11 cases.

13. FocalPoint's professionals have assisted and advised parties in numerous chapter 11 proceedings. In particular, they have provided services to debtors, creditors' committees, and other constituencies in chapter 11 cases, including: Omni Facility Services (Bankr. S.D.N.Y.); Chart Industries, Inc. (Bankr. D. Del.); Delphi Corporation (Bankr. S.D.N.Y.); Pull'R Holdings, LLC (Bankr. C.D. Cal.); Gas City, Ltd. (Bankr. N.D. Ill.); Michael's Market, Inc. (Bankr. N.D. Ill.); Natural Pork Production II, LP (Bankr. S.D. Iowa); Constar International Holdings, LLC (Bankr.); Valuepart, Inc. (Bankr. N.D. Tex.); Chellino Crane, Inc. (Bankr. N.D. Ill.); Schramm, Inc. (Bankr. D. Del.); and Loot Crate, Inc. (Bankr. D. Del.).

14. Additionally, FocalPoint is already familiar with the Debtors' operations and assets. As discussed more fully in the NeJame Declaration, the Debtors first engaged FocalPoint on June 4, 2020. Since that date, FocalPoint has worked with the Debtors, and the Debtors' other professionals, to provide the services outlined below. Thus, FocalPoint is already

6

knowledgeable about the Debtors' business and is well-suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Agreement and described herein.

## Services to Be Provided

15. Subject to the approval of the Court, the contemplated terms and conditions of FocalPoint's engagement in these cases are set forth in the Engagement Agreement, dated as of October 9, 2020. These terms were negotiated at arm's length between the Debtors and FocalPoint and reflect the parties' mutual agreement as to the substantial efforts that will be required by FocalPoint in this engagement. In consideration for the compensation contemplated in the Engagement Agreement, FocalPoint has provided and has agreed to provide the following services (the "Services") in these cases:[3]

> (a) assist the Company in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any proposed transaction, including any proposed sale, any potential restructuring or any financing (any of the foregoing, a "Transaction";
>
> (b) assist the Company in preparing, revising, or updating marketing materials;
>
> (c) prepare, revise, or update a list or lists of potential purchasers and financiers;

---

[3] The summary of the Engagement Agreement in this Application is qualified in its entirety by reference to the provisions of the Engagement Agreement. To the extent that there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Agreement, the terms of the Engagement Agreement shall govern and control. Capitalized terms used in describing the terms of the Engagement Agreement, but not otherwise defined herein, shall have the meanings given to such terms in the Engagement Agreement.

(d) contact potential purchasers to solicit their interest in any Transaction and to provide them with the confidential information memorandum under a confidential disclosure agreement;

(e) compile and disseminate due diligence materials to prospective purchasers and maintain a secure data vault for review of due diligence materials;

(f) participate in due diligence visits, meetings and consultations between the Company and interested potential purchasers, and coordinate and track distribution of all information related to a Transaction with such parties;

(g) assist the Company with evaluating offers, indications of interest, negotiating agreements and definitive contracts;

(h) determine a range of values for the Company and any instruments that the Company offers or proposes to offer in connection with a restructuring;

(i) evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(j) attend auctions and upon request, attend meeting of the Company's Board of Directors (or equivalent body) and its committees, creditor groups, official constituencies and other interested parties, as necessary; and

(k) to the extent required, provide affidavits and other testimony in support of Debtors' motions in the Bankruptcy Court, with respect to any matters in connection with or arising out of the foregoing or the Original Agreement.

16. To the extent the Debtors request FocalPoint to perform additional services not contemplated by the Engagement Agreement, such services and the fees for such services will be mutually agreed upon by FocalPoint and the Debtors, in writing, in advance and subject to Court approval.

17. The Services being provided to the Debtors are necessary to assist the Debtors in determining the most optimal and value-maximizing strategy in these chapter 11

8

cases. The resources, capabilities, and experience of FocalPoint in advising the Debtors are important to the Debtors' chapter 11 efforts. As a highly-qualified investment banker, FocalPoint fulfills a critical need, which complements the services offered by the Debtors' other restructuring professionals.

**Professional Compensation**

18. In consideration of the Services, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtors have agreed to pay FocalPoint the proposed compensation (the "Professional Fees and Expenses") set forth in the Engagement Agreement, which is summarized below:

(a) Commencing as of the date of the Original Agreement, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Advisory Fee") of $50,000 per month during the term hereof. Pursuant to that certain engagement agreement between FocalPoint and the Debtors dated as of June 4, 2020 (the "Original Agreement"), the Company has paid five (5) Monthly Advisory Fees and pursuant to the Engagement Agreement, the next Monthly Advisory Fee is earned, due and payable on November 4, 2020. Thereafter, a Monthly Advisory Fee shall be earned, due and payable on each monthly anniversary of such date.

(b) A fee (the "Completion Fee") of $600,000, payable upon the earlier of: (a) the completion of any restructuring including, without limitation, the confirmation and effectiveness of a plan of reorganization (a "Plan"); or (b) the closing of any restructuring or sale transaction, *provided that* the Completion Fee shall be fully creditable against any financing fee or against any sale fee without duplication. or sale transaction.

(c) In the event that the Company consummates a financing (the "Financing"), a financing fee (the "Financing Fee") shall be paid either as underwriting discounts, placement fees or other compensation upon the closing of any Financing equal to the greater of (i) $600,000 and (ii) the sum of:

9

- i. 2.00% of the gross amount of funder or committed straight indebtedness that is secured by a first lien up to $40 million;

- ii. 3.00% of (i) the gross amount of funded or committed straight indebtedness that is secured by a first lien in excess of $40 million and (ii) the gross amount of any other funded or committed straight indebtedness that is not secured by a first lien; and

- iii. 5.25% of the gross amount of any funded or committed preferred or common equity, convertible or otherwise equity-linked debt or equity securities or obligations.

- iv. Any amounts advanced, or committed to, by the Company's existing lenders – Goldman Sachs Specialty Lending Group and TCW/Crescent Mezzanine – or by NRD Capital Management or its affiliates (to include LPs of its various investment funds), or funds that the Company may directly source with its own efforts via a governmental lending program (such as the Main Street Lending Program under the CARES Act) shall be excluded in calculating any Financing Fee.

(d) In the event that the Company consummates a sale (a "<u>Sale</u>"), a fee (the "<u>Sale Fee</u>") shall be paid upon the closing of any Sale equal to the greater of (i) $600,000 and (ii) 2.5% of the transaction value.

(e) The Company and FocalPoint acknowledge that, pursuant to the Engagement Agreement, FocalPoint may become entitled to either a Financing Fee or Sale Fee, but not both.

(f) FocalPoint shall credit 50% of the first four Monthly Advisory Fees paid to Focal Point against any Financing Fee or Sale Fee, without duplication.

(g) Expenses will be invoiced separately by FocalPoint each month and will be reimbursed by the Company in accordance with Appendix A to the Engagement Agreement, in addition to the fees set forth above. The expenses incurred will consist of, but are not limited to, postage and shipping charges, use of third-party databases, telephone copying, facsimiles, printing, travel, lodging, overtime meals, transportation, and other miscellaneous engagement expenses, including, but not limited to, the reasonable fees and expenses of its outside legal counsel incurred in connection with the performance of the Engagement Agreement

10

and the matters contemplated therewith. FocalPoint shall not incur more than $15,000 of expenses without the Company's preapproval.

19. FocalPoint's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of FocalPoint's engagement hereunder, were important factors in determining the Fee and Expense Structure. The Debtors believe that the ultimate benefit of FocalPoint's services hereunder cannot be measured by reference to the number of hours to be expended by FocalPoint's professionals in the performance of such services.

20. FocalPoint has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of FocalPoint, in accordance with section 504 of the Bankruptcy Code.

21. In sum, in light of the foregoing and given the numerous issues which FocalPoint may be required to address in the performance of its services hereunder, FocalPoint's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for FocalPoint's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

22. Accordingly, as more fully described below, the Debtors believe that this Court should approve FocalPoint's retention subject to the standard of review set forth in section

328(a) of the Bankruptcy Code and that FocalPoint's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

### **Indemnification**

23. As part of the overall compensation payable to FocalPoint under the terms of the Engagement Agreement, the Debtors have agreed to certain indemnification and contribution obligations as described in the Original Agreement, the Engagement Agreement and "Appendix A" attached thereto (the "Indemnification Provision"). The Indemnification Provision provides, among other things, that the Debtors will indemnify and hold harmless FocalPoint and its affiliates and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively the "Indemnified Parties") from and against any and all claims, losses, damages, expenses or liabilities, joint or several, arising out of or related to the Original Agreement or Engagement Agreement, subject to customary carve outs for gross negligence, bad faith, or intentional misconduct of FocalPoint. Both the Debtors and FocalPoint believe that such provisions are customary and reasonable for investment banking engagements, both out-of- court and in chapter 11 cases. The terms of the Indemnification Provision are similar to indemnification terms that have been previously approved by the Court and other bankruptcy courts in other large chapter 11 cases.

24. The Debtors and FocalPoint fully negotiated the terms of the Engagement Agreement and the Indemnification Provision at arm's length, and the Debtors respectfully submit that the terms of the Indemnification Provision are reasonable and in the best interests of

12
DOCS_LA:332694.6 76136/001

the Debtors, their estates, and creditors. Accordingly, as part of this Application, the Debtors request that this Court approve the terms of the Engagement Agreement and Appendix "A" attached thereto.

## No Duplication of Services

25. In addition to this Application, the Debtors have applied, or anticipate that they will apply, to the Court to retain, among others, (a) Pachulski Stang Ziehl & Jones LLP, as bankruptcy counsel, (b) CR3 Partners, LLC, as financial advisor, and (c) Hilco Real Estate, LLC, as lease consultant; and (d) Epiq Corporate Restructuring, LLC as claims and noticing agent and administrative advisor. The Debtors are mindful of the need to avoid duplication of services and the Debtors understand that FocalPoint will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors. The Debtors believe that FocalPoint's services will not duplicate the efforts of the other professionals retained by the Debtors in these cases.

## Record-Keeping Requirements and Modification of Local Rule 2016-2

26. It is not the general practice of investment banking firms, including FocalPoint, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because FocalPoint does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors request pursuant to Local Rule 2016-2(h) that FocalPoint be excused from compliance with the requirements under Local Rule 2016-2(d). Instead, FocalPoint proposes to maintain records of services rendered for the

13

Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour (.5) increments) and the identity of the individuals who provided those services. FocalPoint will include such records in its fee applications.

27. FocalPoint will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. FocalPoint's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Agreement, in accordance with the procedures established by the Court.

28. Bankruptcy courts in this and other jurisdictions have approved similar waivers to the one requested in this Application. *See*, *e.g.*, *In re M&G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

**Disinterestedness**

29. As more fully set forth in the NeJame Declaration, prior to filing this application, the Debtors' counsel provided FocalPoint with a list of Potential Parties in Interest, which is the same list the Debtors' counsel used to search for potential conflicts in connection with its retention application. FocalPoint ran the list of Potential Parties in Interest through its database and also sent an email to all FocalPoint personnel to determine if FocalPoint had any connections with the Potential Parties in Interest.

14

30. To the best of the Debtors' knowledge, information and belief as of the date hereof, FocalPoint(a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as required under section 327(a) of the Bankruptcy Code and, as set forth in further detail in the NeJame Declaration, (b) does not hold or represent an interest materially adverse to Debtors' estates and (c) has no connection to the Debtors, their creditors, shareholders or other parties in interest, except as disclosed in the NeJame Declaration.

31. During the 90-day period before the Petition Date, FocalPoint received $216,439.92 in respect of fees and expenses. In accordance with the terms of its Engagement Agreement, FocalPoint's next Monthly Advisory Fee is earned, due and payable in the amount of $50,000.00 on November 4, 2020.

## Basis for Relief

### A. The Debtors Should Be Permitted to Employ and Retain FocalPoint on the Terms of the Engagement Agreement Pursuant to Sections 327 and 328 of the Bankruptcy Code

32. The Debtors seek approval of FocalPoint's retention and compensation structure pursuant to sections 327(a) and 328(a) of the Bankruptcy Code Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the [Debtors], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out [their] duties under this title.

11 U.S.C. § 327(a).

33. Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

34. Section 328(a) of the Bankruptcy Code provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment banking firms, on more flexible terms that reflect the nature of their services and market conditions.

35. As discussed above and as set forth in the NeJame Declaration, FocalPoint satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Additionally, given the numerous issues that FocalPoint may be required to address in the performance of the services for the Debtors pursuant to the Engagement Agreement, FocalPoint's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for FocalPoint's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Agreement are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

16

36. Similar fixed and contingency fee arrangements have been approved and implemented by courts in this and other districts in other large chapter 11 cases. *See*, *e.g.*, *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. June 12, 2019); *In re M&G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex., July 14, 2017); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc*., No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016); *In re Alpha Natural Res., Inc.*, No. 15- 33896 (KRH) (Bankr. E.D. Va. Sept. 17, 2015); *In re Allen Sys. Grp., Inc.*, No. 15-10332 (KJC) (Bankr. D. Del. Mar. 19, 2015); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 22, 2014); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013); *In re LCI Holding Co., Inc.*, No. 12-13319 (KG) (Bankr. D. Del. Jan. 10, 2013).

**B.** *Nunc Pro Tunc* **Relief is Warranted**

37. The Debtors believe that the employment of FocalPoint *nunc pro tunc* to the Petition Date is warranted under the circumstances of these cases so FocalPoint may be compensated for its services prior to entry of an order approving FocalPoint's retention. Further, the Debtors believe no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment because FocalPoint has provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

17
DOCS_LA:332694.6 76136/001

38. Courts in this and other districts routinely approve *nunc pro tunc* employment similar to that requested herein. *See*, *e.g.*, *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. June 12, 2019); *In re M&G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

C. **The Retention of FocalPoint Is Critical to the Debtors' Chapter 11 Efforts.**

39. The Debtors submit that the retention of FocalPoint is in the best interest of all parties in interest in these cases. FocalPoint is a preeminent investment banking firm that is intimately familiar with the Debtors' businesses. Denial of the relief requested herein will result in the Debtors' breach of the RSA and deprive the Debtors of the assistance of a uniquely qualified investment banking advisor and would be disadvantageous to the Debtors and all parties in interest. The Debtors remain in need of investment banking services to perform analysis, engage the marketplace, and negotiate the terms of one or more potential transactions in an effort to pursue the most value-maximizing strategy in these cases. Absent FocalPoint's retention, the Debtors would likely be required to engage a new investment banker who would lack FocalPoint's understanding of the Debtors' business. A newly-retained investment banking advisor would require time and resources to get up to speed, which would imperil the Debtors'

18

ability to efficiently determine and execute the appropriate strategy in these cases and create attendant administrative costs for the Debtors' estates.

40. Moreover, comparable investment bankers that the Debtors would require in these cases would likely charge an equal or greater amount of fees. Based on services performed to date, FocalPoint has been integral to preparing the Debtors for these cases. Based on the foregoing, the Debtors submit they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Debtors to retain and employ FocalPoint in these cases on the terms described herein and in the Engagement Agreement.

**Notice**

41. Notice of this Application will be provided to the following parties, or, in lieu thereof, their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (c) counsel to Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that no other or further notice need be provided.

**No Prior Request**

42. No prior request for the relief sought herein has been made to this Court or any other court.

[Remainder of page left blank]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Respectfully submitted,

Dated: October 13, 2020

    Ruby Tuesday, Inc., et al.

By: _____
    Shawn Lederman
    Its Chief Executive Officer