# **EXHIBIT A**

# **Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RTI HOLDING COMPANY, LLC,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 20-12456 (JTD)<br><br><br>(Jointly Administered) |

### ORDER: (I) AUTHORIZING DEBTORS TO EMPLOY AND RETAIN FOCALPOINT SECURITIES, LLC AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT AGREEMENT, (III) MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS, AND (IV) GRANTING RELATED RELIEF

Upon consideration of the application (the "Application")[2] filed by the debtors

and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the

"Company"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

"Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order (this "Order"): (i) authorizing the Debtors to employ and retain FocalPoint Securities, LLC ( "FocalPoint") as investment banker *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in that certain Amended and Restated Financial Advisory Services Engagement Letter dated as of October 9, 2020 (together, the "Engagement Agreement"), (ii) approving the terms of the Engagement Agreement, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth therein, (iii) modifying certain information requirements of Local Rule 2016-2, and (iv) granting related relief, as more fully set forth in the Application; and upon consideration of the NeJame Declaration attached to the Application as Exhibit B; this Court has found that: (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) this Court is able to issue a final order consistent with Article III of the United States Constitution, (iii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (v) notice of the Application and a hearing on the Application was sufficient under the circumstances, and it appearing that no other or further notice need be provided; and after due deliberation, this Court has determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that the terms and conditions of

DOCS_LA:332694.6 76136/001

FocalPoint's engagement, including but not limited to the fee and expense structure set forth in the Engagement Agreement and summarized in the Application, are reasonable as required by section 328(a) of the Bankruptcy Code; and the Court having found that FocalPoint is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors, their creditors, their estates and all other parties in interest; and sufficient cause appearing therefore; it is HEREBY ORDERED THAT:

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are hereby authorized, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1, to employ and retain FocalPoint as their investment banker in accordance with the terms and conditions set forth in the Engagement Agreement, *nunc pro tunc* to the Petition Date and to pay fees and reimburse expenses to FocalPoint on the terms and at the times specified in the Engagement Agreement, subject to the modifications set forth herein.

3.      The terms of the Engagement Agreement, attached hereto as <u>Exhibit 1</u>, are approved in all respects except as limited or modified herein.

4.      All of FocalPoint's compensation set forth in the Engagement Agreement, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code and FocalPoint shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement

Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of the Court.

5.     None of the fees payable to FocalPoint shall constitute a "bonus" or fee enhancement under applicable law.

6.     FocalPoint shall file fee applications for interim and final allowance of compensation for services and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; *provided*, *however*, the fee applications filed by FocalPoint shall be subject to review only pursuant to the standard of review set forth in section 328 of the Bankruptcy Code and not subject to the standard of review set forth in section 330 of the Bankruptcy Code.

7.     Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to FocalPoint's request(s) for interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of FocalPoint's fees under the standard set forth in the preceding sentence.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of FocalPoint's fees.

8.     FocalPoint is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the

Application. Among other things, FocalPoint shall maintain records of services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour (.5) increments) and the identity of the individuals who provided those services. FocalPoint shall include such records in its fee applications.

9. The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Agreement and will indemnify and hold harmless FocalPoint and the other Indemnified Parties (as defined in the Engagement Agreement), pursuant to the Engagement Agreement, subject, during the pendency of the cases, to the following:

(a) FocalPoint shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by this Court;

(b) The Debtors shall have no obligation to indemnify FocalPoint, or provide contribution or reimbursement to FocalPoint, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from FocalPoint's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of FocalPoint's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which FocalPoint should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Cases, FocalPoint believes that it is entitled to the

payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, FocalPoint must file an application therefore in this Court, and the Debtors may not pay any such amounts to FocalPoint before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by FocalPoint for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify FocalPoint. All parties in interest shall retain the right to object to any demand by FocalPoint for indemnification, contribution or reimbursement.

10.     Notwithstanding any Bankruptcy Rule or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in the cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of the cases to cases under chapter 7.

12.     To the extent that there may be any inconsistency between the terms of the Application, the NeJame Declaration, the Engagement Agreement, and this Order, the terms of this Order shall govern.

13.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

14.     This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation and/or interpretation of this Order.

 Dated: _____, 2020

_____
Hon. John T. Dorsey
United States Bankruptcy Judge

DOCS_LA:332694.6 76136/001

# EXHIBIT 1

## Engagement Agreement



**OCTOBER 9, 2020**

**SHAWN LEDERMAN**
**CHIEF EXECUTIVE OFFICER**
**RUBY TUESDAY, INC.**
**333 EAST BROADWAY AVENUE**
**MARYSVILLE, TN 37804**

<u>Re:  Amended and Restated Financial Advisory Services Engagement Letter</u>

Dear **MR. LEDERMAN**:

We refer to our letter agreement dated June 4, 2020 (the "<u>Original Agreement</u>") by and between **RUBY TUESDAY, INC.** (together with its subsidiaries and affiliates, the "<u>Company</u>"), and FocalPoint Securities, LLC ("<u>FocalPoint</u>") with respect to the provision of certain financial advisory and investment banking services.  The Company and FocalPoint hereby agree to amend and restate the Original Agreement (this "<u>Amendment</u>") in its entirety, pursuant to which FocalPoint has been retained, on the terms and subject to the conditions set forth herein, as the Company's exclusive investment banker in order to provide the following services ("<u>Services</u>"):

- Assist the Company in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any proposed transaction, including any proposed Sale , any potential Restructuring or any Financing (any of the foregoing, a "<u>Transaction</u>");

- Assist the Company in preparing, revising, or updating marketing materials;

- Prepare, revise, or update a list or lists of potential purchasers and financiers;

- Contact potential purchasers and financiers to solicit their interest in any Transaction and to provide them with the confidential information memorandum under a non-disclosure agreement;

- Compile and disseminate due diligence materials to prospective purchasers and maintain a secure data vault for review of due diligence materials;

- Participate in due diligence visits, meetings and consultations between the Company and interested potential purchasers, and coordinate and track distribution of all information related to a Transaction with such parties;

- Assist the Company with evaluating offers, indications of interest, negotiating agreements and definitive contracts;

- Determine a range of values for the Company and any instruments that the Company offers or proposes to offer in connection with a Restructuring;

- Evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

- Attend auctions and upon request, attend meetings of the Company's Board of Directors (or equivalent body) and its committees, creditor groups, official constituencies and other interested parties, as necessary; and

- To the extent required, provide affidavits and other testimony in support of Debtors' motions, in any U.S. Bankruptcy Court having jurisdiction over Company's Chapter 11 cases (the "Bankruptcy Court"), with respect to any matters in connection with or arising out of the foregoing or the Original Agreement.

Unless otherwise noted, all capitalized terms used herein shall have the meaning set forth in the Appendix A to this Amendment.

**Professional Fees and Expenses**

In consideration of the Services provided by FocalPoint, the Company, and its successors, if any, agrees to pay FocalPoint the following fees in cash:

1. Commencing as of the date of the Original Agreement, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Advisory Fee") of **$50,000** per month during the term hereof. Pursuant to the Original Agreement, the Company has paid five (5) Monthly Advisory Fees and pursuant to this Amendment, the next Monthly Advisory Fee is earned, due and payable on November 4, 2020. Thereafter, a Monthly Advisory Fee shall be earned, due and payable on each monthly anniversary of such date.

2. A fee (the "Completion Fee") of $600,000, payable upon the earlier of: (a) the completion of any Restructuring including, without limitation, the confirmation and effectiveness of a Plan of Reorganization under the Chapter 11 of the Bankruptcy Code (a "Plan") or (b) the closing of any Restructuring or Sale transaction, *provided that* the Completion Fee shall be fully creditable against any Financing Fee or against any Sale Fee without duplication.

3. In the event that the Company consummates a Financing, a fee (the "Financing Fee") to be paid either as underwriting discounts, placement fees or other compensation upon the closing of any Financing equal to the greater of (i) $600,000 and (ii) the sum of:

   a. **2.00**% of the gross amount of funded or committed straight indebtedness that is secured by a first lien up to $40 million; plus

   b. **3.00**% of (i) the gross amount of funded or committed straight indebtedness that is secured by a first lien in excess of $40 million and (ii) the gross amount of any other funded or committed straight indebtedness that is not secured by a first lien,

    c.   **5.25**% of the gross amount of any funded or committed preferred or common equity, convertible or otherwise equity-linked debt or equity securities or obligations.

    d.   Any amounts advanced, or committed to, by the Company's existing lenders – Goldman Sachs Specialty Lending Group and TCW/Crescent Mezzanine – or by NRD Capital Management or its affiliates (to include LPs of its various investment funds), or funds that the Company may directly source with its own efforts via a governmental lending program (such as the Main Street Lending Program under the CARES Act) shall be excluded in calculating any Financing Fee.

4.   In the event that the Company consummates a Sale, a fee (the "Sale Fee") to be paid upon the closing of any Sale equal to the greater of (i) $600,000 and (ii) 2.5% of Transaction Value.

5.   The parties acknowledge that, pursuant to the provisions herein, FocalPoint may become entitled to either a Financing Fee or Sale Fee, but not both.

6.   FocalPoint shall credit 50% of the first four Monthly Advisory Fees paid to FocalPoint against any Financing Fee or Sale Fee, without duplication.

Expenses will be invoiced separately by FocalPoint each month and will be reimbursed by the Company in accordance with Appendix A in addition to the fees set forth above. The expenses incurred will consist of, but are not limited to, the following: postage and shipping charges, use of third-party databases, telephone, copying, facsimiles, printing, travel, lodging, overtime meals, transportation, and other miscellaneous engagement expenses, including, but not limited to, the reasonable fees and expenses of its outside legal counsel incurred in connection with the performance of this Amendment and the matters contemplated hereby. FocalPoint shall not incur more than $15,000 of Expenses without the Company's preapproval.

This Amendment, together with Appendix A attached hereto, constitutes the entire agreement of the parties hereto with respect to this engagement, supersedes all other oral or written representations, understanding or agreements relating to this Amendment, and may not be amended except by written agreement signed by both parties. To the extent any of the foregoing provisions in this letter conflicts with those set forth in Appendix A, the foregoing letter provisions shall control.

We appreciate the opportunity to provide you with our professional services. If this Amendment meets with your approval, please sign a copy of this Amendmentinitial a copy of <u>Appendix A</u> and return it to us. If you have any further questions or comments, please feel free to contact **Richard F. NeJame** at 917-741-8094.

Very truly yours,

**FocalPoint Securities, LLC**

By: _____
    **RICHARD F. NEJAME**
    Managing Director

By: _____
    **DAVID PORTER**
    Chief Compliance Officer

Confirmed and agreed to on **OCTOBER 9, 2020**

**Ruby Tuesday, Inc.**

By: _____
    **SHAWN LEDERMAN**
    **CHIEF EXECUTIVE OFFICER**

Company's Tax Identification Number:   **[63-0475239]**

# APPENDIX A
## GENERAL BUSINESS TERMS

This Appendix A is pursuant to the Amendment, dated SEPTEMBER XX, 2020, between **Ruby Tuesday, Inc.** and FocalPoint Securities, LLC. Unless otherwise noted, all capitalized terms used herein shall have the meaning set forth in the Amendment.

1. **Definitions.** For purposes of this Amendment, capitalized terms shall have the following definitions:

   a. "Transaction Fee" or "Transaction Fees" shall collectively refer to any Financing Fee or Sale Fee on a combined or individual basis.

   b. "Transaction Value" shall be the total proceeds and other consideration paid or received (including assets retained as described below), or to be paid or received, by the Company or its security holders, employees or creditors in connection with a Transaction (which consideration shall be deemed to include amounts in escrow), including, without limitation, the gross value of all cash and the fair market value of: (i) equity securities (including, but not limited to, common stock, preferred stock, warrants, options, stock appreciation rights, in each case whether or not vested or issued), equity interests, carried interests and equity reinvestment, in the Company, its successor or buyer; (ii) straight or convertible debt instruments or other obligations held by the Company or its security holders, whether or not vested or issued; (iii) interest-bearing debt (including capitalized leases) and pension (including SERP liabilities or obligations) and other unfunded liabilities assumed or refinanced in connection with a Transaction; (iv) guarantees and other similar liabilities of the Company; (v) assets or businesses retained by the Company, in the event of an asset sale, or distributed to the Company's shareholders, in the event of a stock sale, merger or similar reorganization; (vi) amounts paid with respect to other assets or businesses in which the Company or its security holders or creditors have an interest and that are included in the Transaction; (vii) amounts paid to the Company, its security holders, employees or directors in connection with non-competition agreements; (viii) amounts paid with respect to severance, employee benefit plans, management retention, consulting, lease, royalty, licensing or any similar agreements; (ix) excess amounts paid for above market employment and consulting agreements; (x) amounts paid, at any time during FocalPoint's period of engagement, as extraordinary dividends or other compensation paid to the Company's security holders in contemplation of a Transaction; and (xi) any obligations of the Company or its security holders', including transaction expenses, which are forgiven or assumed by a purchaser or, in the event of a stock sale, merger or similar organization, which are left outstanding after a Transaction. In the event of a sale of less than 100% of the equity interests of the Company, the Transaction Value shall be calculated as if 100% of the ownership of the equity interests of the Company has been sold dividing (i) the Transaction Value by (ii) the percentage of ownership which is sold. The face amount of all escrowed funds, promissory notes, seller notes, fixed future payments, or other non-contingent future payments will be considered received by Company at Closing and included in Transaction Value for purposes of calculating FocalPoint's Transaction Success Fee.

   c. For the purpose of calculating the Transaction Value, any securities will be valued at the time of the closing of the Transaction as follows: (i) if such securities are traded on a stock exchange or the National Market System, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the closing of the Transaction; (ii) if such securities are traded primarily in over-the-counter transactions (OTC), the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the closing of the Transaction; and (iii) if such securities have not been traded prior to the closing of the Transaction, FocalPoint will prepare a valuation of the securities and FocalPoint and the Company will mutually agree on a fair valuation thereof for the purposes of calculating FocalPoint's Transaction Success Fee (or, if FocalPoint and the Company cannot agree, as determined by an independent third-party accounting or valuation firm mutually chosen by the parties). Any other non-cash consideration shall be valued at the fair market value thereof as of the

day prior to the closing of the Transaction, as such fair market value shall be mutually agreed by FocalPoint and the Company acting in good faith (or, if FocalPoint and the Company cannot agree, as determined by an independent third-party accounting or valuation firm mutually chosen by the parties).

d.  In the event that the Company proceeds with a Transaction that includes earn-out provisions or other performance-based contingent consideration ("Earnouts"), the Company and FocalPoint will negotiate in good faith to agree on the value of such Earnout for the purpose of calculating that portion of the Transaction Success Fee to be paid to FocalPoint upon the Closing in consideration thereof, and, if they cannot so agree, the value of the Earnout shall be included in Transaction Value for the purposes of FocalPoint's fee calculation hereunder only if and when paid to the Company or its security holders.

e.  "Financing" shall mean: (i) a private issuance, sale or placement of the equity, equity-linked or debt securities (including any 144A offering), instruments or obligations of the Company with one or more Counterparties except to the extent issued to existing security holders of the Company in exchange for their existing securities, or (ii) any secured or unsecured loan, lease, credit facility, letter-of-credit facility or other financing, also except to the extent issued to existing security holders of the Company in exchange for their existing like-kind securities, including if so requested by the Company, any "debtor in possession financing" or "exit financing" (regardless of by whom provided) in connection with a case under the Bankruptcy Code, and (iii) any rights offering.

f.  "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's debt securities and/or equity securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, tort obligations or other secured and unsecured claims or indebtedness) including pursuant to any repurchase, exchange transaction, a Plan or solicitation of consents, waivers, acceptances or authorizations.

g.  "Sale" shall mean the disposition to one or more third parties in one or a series of transactions of (i) all or substantially all  of the equity securities of the Company, or (ii) all or substantially all of the assets (including the assignment of any executory contacts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase options, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity or any similar transaction.  For avoidance of doubt, "Sale" shall include a credit bid by any secured lender, a sale under section 363 of the Bankruptcy Code or a Plan that incorporates a Sale.

2.  **Payment of Invoices.**  FocalPoint's invoices are due upon presentation.  Invoices upon which payment is not received within thirty days of the invoice date shall accrue a late charge from the invoice date of the lesser of: (a) 1½% per month or (b) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law.  Any Monthly Advisory Fees, Transaction Fees or unpaid expenses owing to FocalPoint shall be paid at each applicable Closing, except as set forth in the Amendment with respect to Earnouts. Transaction Fees (and any unpaid expenses or other fees, and with the exception of Earnouts) shall be paid in full to FocalPoint at the Closing directly by the Company out of the proceeds of the initial funding under any Transaction or from other cash available to the Company, including, without limitation, through borrowings under existing or new lines of credit. The Company agrees that the consummation of the Closing shall be expressly conditioned on the concurrent payment by the Company of such amount to FocalPoint.   Notwithstanding the foregoing, in the event the Company commences a case under Chapter 11, then the payment of fees and reimbursement of expenses shall be governed by the terms of the order employing FocalPoint in said Chapter 11 case.

3. **Term.** This Amendment shall commence on the date hereof and shall terminate upon the date this Amendment is terminated by either party at any time for any reason by giving written notice to the other party not less than thirty (30) days before the effective date of such termination. Upon termination of the Amendment, the Company will reimburse FocalPoint for all unpaid expenses incurred in connection with the Original Agreement or this Amendment through the effective date of termination, subject to Bankruptcy Court approval. Notwithstanding the foregoing, if within **twelve (12)** months following the termination by either party of this Amendment (the "<u>Fee Period</u>"): the Company (x) consummates a Transaction or (y) enters into a definitive agreement to effect a Transaction that is consummated concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) with capital providers with which FocalPoint discussed a Transaction, FocalPoint will be entitled to receive upon the Closing thereof the Transaction Fee, subject to Bankruptcy Court approval. The provisions of this Amendment relating to payment of the Transaction Fee on any Earnouts, Transactions during the Fee Period, limitation on warranties, limitation on damages and indemnification set forth in Section 9 of this Appendix A, Company responsibilities, limitation on actions, confidentiality obligations set forth in Section 14 of this Appendix A, public references, credit, interpretation, assignment, waiver of jury trial/legal fees, arbitration and governing law shall survive any termination hereof.

4. **Exclusivity.** The Company agrees that FocalPoint shall be the Company's sole and exclusive investment banker in connection with any proposed Transaction. The Company shall promptly identify to FocalPoint: (a) all potential Counterparties who have been in contact with the Company during the six months prior to FocalPoint's engagement; and (b) all potential Counterparties who make inquiries to the Company during the term of the Amendment. FocalPoint shall maintain a comprehensive list of all such potential Counterparties, to include Counterparties it adds of its own accord.

5. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of FocalPoint and its professionals to provide the Services, and that such commitment may foreclose other opportunities for FocalPoint. Moreover, the actual time and commitment required to provide the Services may vary substantially, creating "peak load" issues for FocalPoint. Given the numerous issues that may arise in engagements such as this, FocalPoint's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of FocalPoint that will be required in this engagement, and the market rate for FocalPoint's services of this nature, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates FocalPoint, and provides the requisite certainty to the Company. Furthermore, FocalPoint shall not be required to maintain time records.

6. **Retention of FocalPoint.** In the event that the Company becomes or is a debtor under Chapter 11 of the Bankruptcy Code, the Company shall use good faith efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this Amendment and FocalPoint's retention by the Company under the terms of this Amendment and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code (the "<u>Application</u>"). The Company shall supply FocalPoint with a draft of the Application and any proposed order authorizing FocalPoint's retention sufficiently in advance of the filing to enable FocalPoint and its counsel to review and comment thereon. FocalPoint shall cooperate with the Company in the preparation of the Application and will provide the Company and its counsel with the information and support necessary to prepare the Application. FocalPoint shall have no obligation to provide any services under this Amendment unless the terms of this Amendment are approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration (other than under Fed. R. Civ. P. 60 or Fed. R. Bankr. P. 9024) or petition for certiorari, and which order is acceptable to FocalPoint in all respects. FocalPoint acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, FocalPoint's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guidelines and orders.

7. **Fee Protections.** The Company shall use good faith efforts to obtain "carve-outs" from secured lenders and/or an order from the Court, in each case acceptable to FocalPoint, that provide that the Monthly Advisory Fees, Transaction Fees and other obligations owed to FocalPoint under this Amendment will be paid either directly from the proceeds of any Transaction, paid from other cash available to the Company including under new or existing credit lines, or paid from a "carve-out" from the collateral of the secured creditor (collectively, the "Fee Protections"), without further order from the Court, subject to authorization under section 328 of the Bankruptcy Code. FocalPoint shall be under no obligation to provide the services under this Amendment without Fee Protections acceptable to FocalPoint in its sole discretion, such acceptance not to be unreasonably withheld.

8. **Company Responsibilities and Cooperation.**

a. The Company shall cooperate with FocalPoint in the performance by FocalPoint of the Services, including, without limitation, by providing FocalPoint with reasonable facilities and timely access to data, information and personnel of the Company. The Company shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to FocalPoint for purposes of the performance by FocalPoint of the Services. The Company acknowledges and agrees that FocalPoint's performance is dependent upon the timely and effective satisfaction of the Company's responsibilities hereunder and timely decisions and approvals of the Company in connection with the Services. FocalPoint shall be entitled to rely on all decisions and approvals of, and data and information provided by, the Company without independent verification. The Company will promptly notify FocalPoint in writing of any material inaccuracy or misstatement in, or material omissions from, any information previously delivered to FocalPoint, or any materials provided to any interested party.

b. The Company, in consultation with its legal counsel and other advisors, as appropriate, shall, without limitation, be solely responsible for the following in connection with the Services: (i) preparation of any historical and prospective financial statements, including, without limitation, financial projections supported by appropriate assumptions which, to the Company's best knowledge and belief represent the Company's results of operations and changes in financial position; (ii) providing or preparing all data, material and other information concerning, without limitation, the business, assets, liabilities, and cash flows of the Company that FocalPoint reasonably requests in connection with the Services; (iii) preparation, negotiation, review, and execution of all documentation with respect to any transaction; (iv) determination of the value range or range of terms within which negotiations shall occur with respect to any transaction as well as the ultimate value, pricing and/or terms to be agreed to in connection with any transaction; and (v) designation of a management-level individual or individuals to be responsible for all decisions with respect to the Services and FocalPoint's involvement in activities associated with the Services, including, without limitation, the adequacy thereof.

c. The Company agrees that it is solely responsible for ensuring that any Transaction complies with applicable law. The Company further agrees that FocalPoint is not being engaged to: (i) provide, any fairness opinion with respect to a Transaction or its terms or any valuation of the Company, its securities or its assets, (ii) provide, nor shall it be responsible for providing, legal, tax or accounting advice, (iii) participate in the preparation or interpretation of any legal documents or (iv) conduct any appraisal of assets or liabilities of the Company or any other person. Furthermore, FocalPoint's services are limited to those specifically provided for in this Amendment, or subsequently agreed upon, in writing, by the parties hereto. FocalPoint shall have no obligation or responsibility for any other services.

d. It is expressly understood that, unless otherwise provided for herein, FocalPoint's reports, recommendations, analyses, conclusions and other documents, if any, whether written or oral, do not, in whole or in part, constitute a fairness or solvency opinion or feasibility determination and the Services will be advisory in nature. FocalPoint will not render any advice as to whether, or at

what price, any Transaction should be entered into. The Company acknowledges that FocalPoint cannot commit the Company to the terms of any transaction, or consummate any transaction on behalf of the Company, and that the Company, through its management, shall make all decisions that commit the Company with respect to any transaction.

e. The Company agrees that none of it, its controlling equity holders, its affiliates or its management will initiate any discussions regarding a Transaction during the term of this Amendment except with prior notice to FocalPoint. In the event the Company, its controlling equity holders, its affiliates or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform FocalPoint of such inquiry so that FocalPoint can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

f. The Company represents and agrees as follows:

   i. If applicable, the Company shall assist FocalPoint with the preparation of a private placement memorandum or similar marketing document (the "Memorandum"). The Company shall not distribute the Memorandum to any potential lender, investor or other third party without notice to FocalPoint.

   ii. The Company agrees that it is solely responsible for the accuracy, completeness and appropriateness of any Memorandum, including, without limitation, all information contained in or omitted from any such Memorandum.

**9. Limitation on Damages and Indemnification.**

a. As a material part of the consideration for the agreement of FocalPoint to provide the Services, the Company shall: (i) indemnify and hold harmless FocalPoint and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all claims, losses, damages, expenses or liabilities (or actions in respect thereof), joint or several, (collectively "Claims") arising out of or related to the Original Agreement or this Amendment, FocalPoint's engagement under the Original Agreement or this Agreement, any transaction or any action taken or omitted to be taken by an Indemnified Party or the Company in connection with the Original Agreement or this Amendment and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to the formulation or consummation of any transaction, the Original Agreement or this Amendment , or other such engagement, transaction or action. However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any Claim which is finally judicially determined by a court of competent jurisdiction to have resulted solely from the bad faith, gross negligence or intentional misconduct of FocalPoint.

b. In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unenforceable, insufficient or unavailable for any reason the Company shall contribute to any Claims relating to this engagement in such proportion that reflects the relative benefits to the Company, on the one hand, and to FocalPoint, on the other hand (whether or not a transaction is consummated). For purposes of this paragraph, the relative benefits to the Company and FocalPoint arising out of this engagement shall be deemed to be in the same proportion as the total value received or contemplated to be received by the Company as a result of or in connection with the Transaction contemplated by this Amendment bears to the fees actually paid to FocalPoint by the Company hereunder. If the allocation provided in the two immediately preceding sentences

is unenforceable or unavailable for any reason, the Company shall contribute to such Claims, as is appropriate to reflect not only the relative benefits received or contemplated to be received, as provided above, but also the relative fault that FocalPoint's conduct bears to all other conduct giving rise to such Claims.

c.  The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder if an Indemnified Party is an actual or potential party thereto, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to FocalPoint.

d.  No Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advance) to the Company or any of its creditors, employees, directors or shareholders or any person or entity asserting claims for any Claims in an aggregate amount in excess of the fees paid by the Company to FocalPoint pursuant to this Amendment, except and solely to the extent that they are determined to have resulted primarily from the bad faith, gross negligence or intentional misconduct of FocalPoint. In no event shall any Indemnified Party be liable for consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

e.  The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein: (i) shall apply to any services provided by FocalPoint to the Company prior to the date hereof and to any modifications of the Original Agreement or this Amendment; (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the Services and any expiration or termination of the relationship established by this Amendment.

f.  Notwithstanding any provisions herein to the contrary, in the event the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the following provision will apply to the indemnification provided by this Appendix A.

  i.  The Company shall have no obligation to indemnify FocalPoint or provide contribution or reimbursement to FocalPoint: (A) for any claim or expense that is judicially determined (the determination having become final) to have arisen from FocalPoint's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct, (B) for a contractual dispute in which the Company alleges the breach of FocalPoint's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003), or (C) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (A) and (B) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which FocalPoint should not receive indemnity, contribution or reimbursement under the terms of the Amendment.

  ii.  If, before the earlier of: (A) the entry of an order confirming a chapter 11 plan in the Chapter 11 case(s) (that order having become final and no longer subject to appeal), and (B) the entry of an order closing the chapter 11 case(s), an Indemnified Party believes that it is entitled to the payment of any amounts by the Company on account of an Indemnifying Party's indemnification, contribution and/or reimbursement obligations under this Appendix A, including, without limitation, the advancement of defense costs, such Indemnified Party must file an application therefore with the Bankruptcy Court, and the Company may not

pay any such amounts to such Indemnified Party before entry of an order by the Bankruptcy Court approving the payment. This paragraph is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for payment by an Indemnified Party, and not a provision limiting the duration of the Company's obligation to indemnify such Indemnified Party. All parties in interest in the chapter 11 case(s) shall retain the right to object to any demand by an Indemnified Party for indemnification, contribution and/or reimbursement.

10. **Limitation on Warranties. THIS IS A SERVICES ENGAGEMENT. FOCALPOINT WARRANTS THAT IT SHALL PERFORM THE SERVICES WITH DUE PROFESSIONAL CARE. FOCALPOINT DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE COMPANY'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR FOCALPOINT, UPON RECEIPT OF WRITTEN NOTICE, TO USE COMMERCIALLY REASONABLE EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL FEES PAID TO FOCALPOINT HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.**

11. **Limitation on Actions.** Except as otherwise required by law or with respect to indemnification, no action, regardless of form, relating to this engagement, may be brought by either party more than one year after the party bringing such action receives notice or otherwise becomes aware of the facts or circumstances giving rise to such cause of action, except that an action for non-payment may be brought by a party not later than one year following the date (including any extensions thereof) of the last payment due to such party bringing such action.

12. **Force Majeure.** Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

13. **Independent Contractor.** It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

14. **Confidentiality**. Reference is made here to the Confidentiality Agreement executed by FocalPoint and Company on May 14, 2020.

15. **Information.** In the event that the Information belonging to the Company is stored electronically on FocalPoint's computer systems, FocalPoint shall not be liable for any damages resulting from unauthorized access, misuse or alteration of any such information by persons not acting on its behalf, provided, that FocalPoint has exercised the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Information that it exercises with regard to its own most sensitive proprietary information.

16. **Public References.** Any advice (whether written or oral) rendered by FocalPoint pursuant to this Amendment is intended solely for the use of the Company in considering the matters to which the Amendment relates, and such advice may not be relied upon by any other person or used for any other purpose. No advice rendered by, or communication from, FocalPoint in connection with the services performed by FocalPoint pursuant to this Amendment will be disseminated to any third party or summarized, quoted or otherwise referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Company or any person or corporation

controlling, controlled by or under common control with the Company or any director, officer, employee, or representative of any thereof, without FocalPoint's prior written authorization, or except as otherwise required by law. If FocalPoint resigns prior to the dissemination of any Memorandum, forms of the definitive agreement or any other documents or information prepared in connection with the Transaction, no reference shall be made therein to FocalPoint.

17. **Credit.** FocalPoint may, at its own expense, place announcements on its corporate website, in marketing materials, and in financial and other newspapers and periodicals or distribute announcements via electronic mail (such as customary "tombstone" advertisements) describing its services in connection with this Amendment. The Company agrees that, if requested by FocalPoint, that any press release by the Company announcing the Transaction shall include a mutually acceptable reference to FocalPoint's role as financial advisor to the Company with respect thereto.

18. **Interpretation.** The Company acknowledges and agrees that no affiliated or related entity of FocalPoint shall have any liability hereunder to the Company or any other person and the Company will not bring any action against any such affiliated or related entity in connection with this engagement. Without limiting the foregoing, affiliated and related entities of FocalPoint are intended third-party beneficiaries of these terms, including, without limitation, the limitation on liability and indemnification and reimbursement provisions of paragraph 9, and the agreements and undertakings of the Company contained in the Amendment. Any affiliated or related entity of FocalPoint may in its own right enforce such terms, agreements and undertakings. Any duties arising hereunder on the part of FocalPoint shall be owed solely to the Company. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against FocalPoint because this Amendment was drafted by FocalPoint, and the parties waive any statute or rule of law to such effect.

19. **Assignment**. This Amendment shall be binding upon FocalPoint and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company pursuant to any form of change of control, asset purchase or other transaction). Notwithstanding the foregoing, neither party may assign, transfer, or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) if the other party withholds consent to such assignment, such consent not to be unreasonably withheld. Notwithstanding the foregoing, the Company hereby irrevocably consents to FocalPoint assigning or subcontracting any of FocalPoint's rights and obligations hereunder to: (a) any affiliate or related entity, or (b) any entity that acquires all or a substantial part of the assets or business of FocalPoint.

20. **Services to Other Parties.** The Company acknowledges that FocalPoint engages in providing investment banking, financing and financial advisory services to a wide range of institutions and individuals. The Company further agrees that nothing herein shall preclude FocalPoint from pursuing, investigating, analyzing or engaging in business relationships that involve the Company, or other entities engaged in a business that is similar to the business of, or the same industry as, the Company.

21. **Governing Law/Waiver of Jury Trial/Legal Fees. THIS AMENDMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF CALIFORNIA. ANY DISPUTES ARISING OUT OF OR RELATED TO THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW AND, SUBJECT TO THE REQUIREMENTS OF SECTION 22, SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURT OF IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, <u>PROVIDED</u>, THAT THE COMPANY IS NOT IN A BANKRUPTCY CASE, IN WHICH CASE THE BANKRUPTCY COURT SHALL BE THE COURT OF EXCLUSIVE COMPETENT JURISDICTION. BY EXECUTION AND DELIVERY OF THIS AMENDMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION,**

IMPROPER VENUE OR <u>FORUM</u> <u>NON</u> <u>CONVENIENS</u> AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY AND FOCALPOINT EACH CONSENTS TO SERVICE OF PROCESS IN ACCORDANCE WITH CALIFORNIA LAW. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS AMENDMENT OF THE PERFORMANCE BY FOCALPOINT OF THE SERVICES CONTEMPLATED BY THIS AMENDMENT. IF LITIGATION IS EVER INSTITUTED BY EITHER PARTY HERETO TO ENFORCE, OR SEEK TO ENFORCE, OR TO SEEK DAMAGES FOR THE BREACH OF, ANY PROVISION HEREOF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOUP FROM THE OTHER ALL REASONABLE ATTORNEYS' FEES INCURRED BY THE PREVAILING PARTY IN THAT LITIGATION.

22. **Arbitration.** Provided that the Company is not in a bankruptcy case, in which case the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of or relating to this Amendment, any such dispute shall be determined by binding arbitration in Los Angeles, California before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the arbitration award may be entered in any court having jurisdiction. This clause shall not preclude the parties from seeking provisional remedies in advance of arbitration from a court of appropriate jurisdiction. The arbitrator may, in the arbitration award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

23. **Notice.** All notices given pursuant to any of the provisions of this Amendment shall be in writing and shall be mailed or delivered: (a) to the Company, at its offices at **333 East Broadway Avenue, Maryville, TN 37804** Attention: **Shawn Lederman**; and (b) to FocalPoint, at its offices at 11150 Santa Monica Boulevard, Suite 1550, Los Angeles, CA 90025, Attention: David Porter, Chief Compliance Officer. Notice shall be effective upon receipt.

24. **Severability.** If it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any term or provision of this Amendment is invalid or unenforceable: (a) the remaining terms and provisions hereof shall be unimpaired and shall remain in full force and effect, and (b) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

25. **Counterparts.** This Amendment may be executed in any number of counterparts, each of which will be deemed an original and all of which together shall be considered a single document. Such counterparts may be delivered by one party to the other by facsimile, e-mail or other electronic transmission, and such counterparts shall be valid for all purposes.

26. **Other.** The Company agrees that, in order to assist the government in its efforts to fight the funding of terrorism and money laundering activities, the Company shall provide FocalPoint with any and all information as FocalPoint may reasonably request that pertains to: (a) the Company and its affiliates, and (b) any entity that is a source of funds or assets in connection with a Transaction, as applicable. In connection with the foregoing, the Company further agrees that FocalPoint may provide any such information to a third party, subject to confidentiality restrictions, in order that such third party may assist FocalPoint in verifying the background of the Company, its affiliates and the source of such funds or assets. FocalPoint maintains a Business Continuity Plan, a written summary of which may be obtained by writing to FocalPoint Securities, LLC, 11150 Santa Monica Blvd., Suite 1550, Los Angeles, CA 90025.

**27. Representation**.  The Company represents and warrants to FocalPoint that (a) it has all requisite power and authority to enter into this Amendment, (b) this Amendment has been duly and validly authorized by all necessary action on its part, (c) this Amendment  has been duly executed and delivered on its part and (d) this Amendment constitutes a legal, valid and binding agreement of it, enforceable in accordance with its terms.

By initialing below, **RUBY TUESDAY, INC.** and FocalPoint Securities, LLC hereby acknowledge that they have read and agree to and accept the terms and conditions set forth in this <u>Appendix A</u>.

FocalPoint Securities, LLC                    RUBY TUESDAY, INC.