# **EXHIBIT B**

## **NeJame Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RTI HOLDING COMPANY, LLC,[1] | Case No. 20-12456 (JTD) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF RICHARD F. NEJAME IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER: (I) AUTHORIZING DEBTORS TO EMPLOY AND RETAIN FOCALPOINT SECURITIES, LLC AS INVESTMENT BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE, (II) APPROVING THE TERMS OF THE ENGAGEMENT AGREEMENT, (III) MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS, <u>AND (IV) GRANTING RELATED RELIEF</u>

I, Richard F. NeJame, declare as follows:

1.     I am a Managing Director at FocalPoint Securities, LLC ("FocalPoint"),

an investment banking firm with headquarter offices at 11150 Santa Monica Blvd., Suite 1550,

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

Los Angeles, CA 90025.  I am authorized to make this declaration (this "<u>Declaration</u>") on behalf of FocalPoint.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

2.	I submit this Declaration in support of the *Debtors' Application for Entry of an Order (I) Authorizing Them to Employ and Retain FocalPoint Securities, LLC as Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date, (II) Approving the Terms of the Engagement Agreement, (III) Waiving Certain Time-Keeping Requirements, and (IV) Granting Related Relief* (the "<u>Application</u>").[2]

3.	I understand that the Debtors are pursuing a restructuring of their operations and financial affairs pursuant to the terms set forth in a Restructuring Support Agreement, dated October 8, 2020 ("<u>RSA</u>"), which contemplates "parallel paths" involving a plan of reorganization as well as a marketing and sale process regarding the disposition of the Debtors' business as a going concern.  The RSA requires the Debtors to employ FocalPoint to spearhead this marketing and sale process, which is a critical element in ensuring that the Chapter 11 cases result in maximizing value for creditors.  The RSA also contemplates the potential for seeking alternative Exit Financing sources, for which FocalPoint also will be responsible.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

## FocalPoint's Qualifications

4.      I understand that, in light of the size and complexity of these cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of FocalPoint to assist them in pursuing the transactions that are crucial to the success of the Debtors' cases.  I further understand that an investment banker such as FocalPoint is a critical service that complements the services provided by the Debtors' other professionals.  I am informed that the Debtors believe retaining FocalPoint as their investment banker is in the best interest of their estates and all parties in interest because, among other things, FocalPoint has extensive experience in, and an excellent reputation for, providing investment banking services to debtors in bankruptcy reorganizations and other restructurings.

5.      I have extensive experience advising leveraged and distressed corporate clients, as well as institutional, private equity, and other investing clients.  My experience spans a broad array of transactions, including capital raising, M&A, exchange offers, and Chapter 11 reorganizations. Prior to joining FocalPoint, I held senior positions at a number of firms, including Lazard Fréres & Co., Gleacher & Co., and Oppenheimer & Co..  During my career, I have executed more than $70B in aggregated transaction value involving approximately 75 deals.

6.      In addition, the partners and associates of FocalPoint have considerable expertise in the fields of bankruptcy, insolvency, reorganizations,  liquidations, valuation, and debt restructuring, among other expertise. FocalPoint is a leading, independent middle market investment bank with approximately fifty professionals in Chicago, Los Angeles, New York, and

Shanghai. FocalPoint's professionals have significant experience in the farm-to-table food sector, and specifically with respect to advising other restaurant businesses. FocalPoint's special situations professionals also represent diverse backgrounds in law, public accounting, senior lending and investment banking. The principals of FocalPoint have extensive experience representing financially distressed companies in both bankruptcy proceedings and out of-court transactions.

7.     Moreover, FocalPoint's professionals have assisted and advised parties in numerous Chapter 11 proceedings. In particular, they have provided services to debtors, creditors' committees, and other constituencies in chapter 11 cases, including: Trico Marine Services, Inc. (Bankr. S.D.N.Y.); O'Sullivan Industries, Inc., Inc. (Bankr. N.D. Ga.); SpectraSite Holdings, Inc. (Bankr. E.D.N.C.); Boston Chicken, Inc. (Bankr. D. Ariz.); Intermet Corporation (Bankr. E.D. Mich.); Safety-Kleen Corp. (Bankr. D. Del.); Formica Corporation (Bankr. S.D.N.Y.); Lyondell Chemical Company, et al. (Bankr. S.D.N.Y.); AbitibiBowater, Inc. et al. (Bankr. D. Del.); Oglebay Norton Company (Bankr. D. Del.); Ahern Rental, Inc. (Bankr. D. Nev.); and Vlasic Foods International, Inc. (Bankr. D. Del.).

8.     Additionally, FocalPoint is already familiar with the Debtors' operations. The Debtors first engaged FocalPoint on June 4, 2020. From that date, FocalPoint has worked with the Debtors to provide the services outlined below. Thus, FocalPoint is well-suited to provide the investment banking services to the Debtors that are contemplated by the Engagement Agreement and described herein.

## **Services to be Provided**

9.      In connection with the Engagement Agreement, FocalPoint has provided

and has agreed to provide the following services (the "Services") in these cases:

(a)      assist the Company in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any proposed transaction, including any proposed sale, any potential restructuring or any financing (any of the foregoing, a "Transaction");

(b)      assist the Company in preparing, revising, or updating marketing materials;

(c)      prepare, revise, or update a list or lists of potential purchasers and financiers;

(d)      contact potential purchasers to solicit their interest in any Transaction and to provide them with the confidential information memorandum under a confidential disclosure agreement;

(e)      compile and disseminate due diligence materials to prospective purchasers and maintain a secure data vault for review of due diligence materials;

(f)      participate in due diligence visits, meetings and consultations between the Company and interested potential purchasers, and coordinate and track distribution of all information related to a Transaction with such parties;

(g)      assist the Company with evaluating offers, indications of interest, negotiating agreements and definitive contracts;

(h)      determine a range of values for the Company and any instruments that the Company offers or proposes to offer in connection with a restructuring;

(i)      evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(j)      attend auctions and upon request, attend meeting of the Company's Board of Directors (or equivalent body) and its committees, creditor groups, official constituencies and other interested parties, as necessary; and

(k)     to the extent required, provide affidavits and other testimony in support of Debtors' motions in the Bankruptcy Court, with respect to any matters in connection with or arising out of the foregoing or the Original Agreement.

## **Professional Compensation**

10.     In consideration of the Services, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtors have agreed to have agreed to pay FocalPoint the proposed compensation (the "Professional Fees and Expenses") set forth in the Engagement Agreement, which is summarized below:

(a)     Commencing as of the date of the Original Agreement, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Advisory Fee") of $50,000 per month during the term hereof.  Pursuant to the Original Agreement, the Company has paid five (5) Monthly Advisory Fees and pursuant to the Engagement Agreement, the next Monthly Advisory Fee is earned, due and payable on November 4, 2020.  Thereafter, a Monthly Advisory Fee shall be earned, due and payable on each monthly anniversary of such date.

(b)     A fee (the "Completion Fee") of $600,000, payable upon the earlier of: (a) the completion of any restructuring including, without limitation, the confirmation and effectiveness of a plan of reorganization (a "Plan"); or (b) the closing of any restructuring or sale transaction, *provided that* the Completion Fee shall be fully creditable against any financing fee or against any sale fee without duplication or sale transaction.

(c)     In the event that the Company consummates a financing (the "Financing"), a financing fee (the "Financing Fee") shall be paid either as underwriting discounts, placement fees or other compensation upon the closing of any Financing equal to the greater of (i) $600,000 and (ii) the sum of:

i.      2.00% of the gross amount of funder or committed straight indebtedness that is secured by a first lien up to $40 million;

ii.     3.00% of (i) the gross amount of funded or committed straight indebtedness that is secured by a

first lien in excess of $40 million and (ii) the gross amount of any other funded or committed straight indebtedness that is not secured by a first lien; and

iii. 5.25% of the gross amount of any funded or committed preferred or common equity, convertible or otherwise equity-linked debt or equity securities or obligations.

iv. Any amounts advanced, or committed to, by the Company's existing lenders – Goldman Sachs Specialty Lending Group and TCW/Crescent Mezzanine – or by NRD Capital Management or its affiliates (to include LPs of its various investment funds), or funds that the Company may directly source with its own efforts via a governmental lending program (such as the Main Street Lending Program under the CARES Act) shall be excluded in calculating any Financing Fee.

(d) In the event that the Company consummates a sale (a "Sale"), a fee (the "Sale Fee") shall be paid upon the closing of any Sale equal to the greater of (i) $600,000 and (ii) 2.5% of the transaction value.

(e) The Company and FocalPoint acknowledge that, pursuant to the Engagement Agreement, FocalPoint may become entitled to either a Financing Fee or Sale Fee, but not both.

(f) FocalPoint shall credit 50% of the first four Monthly Advisory Fees paid to Focal Point against any Financing Fee or Sale Fee, without duplication.

(g) Expenses will be invoiced separately by FocalPoint each month and will be reimbursed by the Company in accordance with Appendix A to the Engagement Agreement, in addition to the fees set forth above. The expenses incurred will consist of, but are not limited to, postage and shipping charges, use of third-party databases, telephone copying, facsimiles, printing, travel, lodging, overtime meals, transportation, and other miscellaneous engagement expenses, including, but not limited to, the reasonable fees and expenses of its outside legal counsel incurred in connection with the performance of the Engagement Agreement and the matters contemplated therewith. FocalPoint shall not incur more than $15,000 of expenses without the Company's preapproval.

11.     The fee and expense structure described above is comparable to compensation generally charged by other firms of similar stature to FocalPoint for comparable engagements, both in and out of bankruptcy.  The fee and expense structure is also consistent with FocalPoint's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined above.  I believe that the fee and expense structure is reasonable, and I further understand that the Debtors believe the fee and expense structure is reasonable.

12.     In determining the level of compensation to be paid to FocalPoint and its reasonableness, I understand that the Debtors compared FocalPoint's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases.  The fee and expense structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of FocalPoint and its professionals in connection with these chapter 11 cases, that such commitment may foreclose other opportunities for FocalPoint, and that the actual time and commitment required of FocalPoint and its professionals to perform its services in connection with these chapter 11 cases may vary substantially from week to week or month to month.

13.     I understand that the Debtors believe FocalPoint has obtained valuable institutional knowledge of the Debtors' businesses, financial affairs and creditors as a result of providing services to the Debtors before the Petition Date and that FocalPoint is both well qualified and uniquely able to perform these services and assist the Debtors in these chapter 11

cases.  Moreover, I understand that the Debtors believe that FocalPoint's services will assist the Debtors in a successful outcome of these chapter 11 cases.

14.     FocalPoint's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of FocalPoint's engagement in connection with these chapter 11 cases, were important factors in determining the fee and expense structure.  Based on discussions with the Debtors, I understand the Debtors believe that the ultimate benefit of FocalPoint's services hereunder cannot be measured by reference to the number of hours to be expended by FocalPoint's professionals in the performance of such services.

15.     FocalPoint has not shared or agreed to share any compensation to be paid by the Debtors with any other person, other than other principals and employees of FocalPoint, in accordance with section 504 of the Bankruptcy Code.

16.     It is my understanding, in light of the foregoing and given the numerous issues which FocalPoint may be required to address in the performance of its services hereunder, FocalPoint's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for FocalPoint's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the fee and expense structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.  Additionally, FocalPoint believes that the fee and expense structure is

market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

17.     Accordingly, I understand that the Debtors believe that this Court should approve FocalPoint's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that FocalPoint's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

## Disinterestedness

18.     In connection with its proposed retention by the Debtors in these cases, FocalPoint undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, FocalPoint obtained from the Debtors representatives the names of individuals and entities that may be parties in interest in these cases (the "Potential Parties in Interest"), and such parties are listed on Schedule 1 attached hereto.  I understand that this is the same list the Debtors' counsel used to determine if there are any potential conflicts in connection with its retention application.

19.     FocalPoint has researched its electronic client databases to determine connections with the Potential Parties in Interest.  To the best of my knowledge and belief, FocalPoint has not represented any Potential Parties in Interest in connection with matters relating to the Debtors or their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these cases.

20. In addition, I understand that an email was broadly circulated within FocalPoint to inquire whether any employees or partners at FocalPoint, or any member of such recipient's immediate family (spouse, minor children, or family members living in your household) (i) have any connection to the Potential Parties in Interest; (ii) own any equity security of any of the Debtors; (iii) own any debt security of any of the Debtors; (iv) hold a general unsecured claim against any of the Debtors; (v) hold any other claim against any of the Debtors; or (vi) own more than one percent, manage or otherwise control, or have any influence over any of the Potential Parties in Interest. I understand that no affirmative response was received in response to any of these email inquiries.

21. Further, the email inquired whether any recipient of the email, or any member of such recipient's immediate family, (i) has, within the last two (2) years, been an officer, director, or employee of any of the Debtors or (ii) holds an interest materially adverse to interests of the Debtors, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. I understand that no affirmative response was received in response to these email inquiries.

22. Moreover, the email inquired whether any recipient, or any member of such recipient's immediate family, is related to (i) any bankruptcy judge for the District of Delaware and/or (ii) any employee of the United States Trustee for Region 3. I understand that no affirmative response was received in response to these email inquiries.

23.     During the 90-day period before the Petition Date, FocalPoint received

$216,439.92 in respect of fees and expenses.  In accordance with the terms of its Engagement

Agreement, FocalPoint's next Monthly Advisory Fee is earned, due and payable in the amount of

$50,000.00 on November 4, 2020.

24.     As of the Petition Date, the Debtors did not owe FocalPoint any fees or

expenses incurred prior to the Petition Date that will not be waived upon entry of the Proposed

Order (including unreimbursed expenses in excess of amounts paid to FocalPoint prepetition).

25.      To the best of my knowledge, as set forth above, no individual

assignment in which FocalPoint is involved appeared on the Potential Parties in Interest, and

accordingly, none of the entities listed on the Potential Parties in Interest accounts for more than

10% of FocalPoint's gross revenue during the twelve month period prior to the date hereof.

26.     FocalPoint provides investment banking and financial advisory services to

a wide variety of clients.  As a result, FocalPoint has represented, and may in the future

represent, certain Potential Parties in Interest in matters unrelated to these cases, either

individually or as part of the representation of an ad hoc or official committee of creditors or

interest holders.  To the best of my knowledge, information and belief, insofar as I have been

able to ascertain after reasonable inquiry, none of these representations are adverse to the

Debtors' interests.

27.     Based on the foregoing, to the best of my knowledge and belief, neither

FocalPoint nor I, nor any other employee of FocalPoint that will provide services to the Debtors

in connection with this engagement, has any connection with or holds any interest adverse to the Debtors, their estates or the Potential Parties in Interest.

28. In addition, to the best of my knowledge, FocalPoint has received no revenue in the last 2 years from any of the Potential Parties in Interest. Further, to the best of my knowledge, there has been no outside business activities or private investments disclosed in FocalPoint's compliance system for any of the Potential Parties in Interest.

29. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, except with respect to the Engagement Agreement, FocalPoint has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these cases. FocalPoint will, however, continue to provide professional services to other entities or persons that may be creditors or equity security holders of the Debtors or interested parties in these cases; provided that such services do not relate to, or have any direct connection with, these cases or the Debtors. Additionally, in connection with its debt capital markets and special situations practices, in the ordinary course of business, FocalPoint has and, may in the future, present investment opportunities to certain of the Potential Parties in Interest

30. I am not related or connected to and, to the best of my knowledge, no other professional of FocalPoint who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware or any employee in the Office of the United States Trustee for Region 3.

31.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of FocalPoint, I, nor any employee of FocalPoint who will work on the engagement holds or represents any interest adverse to the Debtors or their estates, and FocalPoint is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that FocalPoint, and its professionals and employees who will work on the engagement:

(a)     are not creditors, equity security holders or insiders of the Debtors;

(b)     were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer or employee of the Debtors; and

(c)     do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

32.     To the extent that FocalPoint discovers any additional facts bearing in a material respect on its disinterestedness during the period of FocalPoint's retention in connection with these cases, FocalPoint will supplement this Declaration, as required by Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: October 13, 2020

Respectfully Submitted,

Richard F. NeJame
Managing Director
FocalPoint Securities, LLC

DOCS_LA:332694.6 76136/001

# **SCHEDULE 1**

**Potential Parties in Interest**

**Debtors and Subsidiaries**

RTI Holding Company, LLC
Ruby Tuesday, Inc.
Ruby Tuesday, LLC
RTBD, LLC
RT of Carroll County, LLC
RT Denver Franchise, L.P.
RT Detroit Franchise, LLC
RT Distributing, LLC
RT Finance, LLC
RT FL Gift Cards, Inc.
RT Florida Equity, LLC
RT Franchise Acquisition, LLC
RT of Fruitland, Inc.
RT Indianapolis Franchise, LLC
RT Jonesboro Club
RT KCMO Franchise, LLC
RT Kentucky Restaurant Holdings, LLC
RT Las Vegas Franchise, LLC
RT Long Island Franchise, LLC
RT of Maryland, LLC
RT Michiana Franchise, LLC
RT Michigan Franchise, LLC
RT Minneapolis Franchise, LLC
RT Minneapolis Holdings, LLC
RT New England Franchise, LLC
RT New Hampshire Restaurant Holdings, LLC
RT New York Franchise, LLC
RT Omaha Franchise, LLC
RT Omaha Holdings, LLC
RT One Percent Holdings, LLC
RT One Percent Holdings II, LLC
RT Orlando Franchise, LP
RT Restaurant Services, LLC
RT South Florida Franchise, LP
RT Southwest Franchise, LLC
RT St. Louis Franchise, LLC
RT Tampa Franchise, LP
RT Western Missouri Franchise, LLC
RT West Palm Beach Franchise, LP
RTTA, LP
RTT Texas, Inc.
RTTT, LLC
Ruby Tuesday of Allegany County, Inc.
Ruby Tuesday of Bryant, Inc.

1

Ruby Tuesday of Columbia, Inc.
Ruby Tuesday of Frederick, Inc.
Ruby Tuesday of Linthicum, Inc.
Ruby Tuesday of Marley Station, Inc.
Ruby Tuesday of Pocomoke City, Inc.
Ruby Tuesday of Russellville, Inc.
Ruby Tuesday of Salisbury, Inc.

## **Related Parties**

Beth, Susan
Clarry, Ellen
Dorsey, Michael
Harmon, Jennifer
Hashim, Aziz
Lederman, Shawn
Medley, Stephanie Burke
National Restaurant Development
NRD Capital, LLC
NRD Capital Management  II, LLC
NRD Partners I, L.P.
NRD Partners II, L.P.
NRD Partners III, L.P.
NRD RT Holdings, LLC
RT Investment Company, LLC
Strategic Financial Intermediation II, LLC
White, Darrin

## **Lenders and Related Parties**

Crescent Mezzanine
Goldman Sachs Bank USA
Goldman Sachs Specialty Lending Group, L.P.
Goldman Sachs Specialty Lending Holdings, Inc.
TCW Asset Management Company, LLC
TCW Brazos Fund LLC
TCW Direct Lending LLC
TCW Skyline Lending, L.P.
Zions Bancorporation, N.A., dba California Bank & Trust

## **Sale/Leaseback Lessors**

Limestone Ruby, LLC
National Retail Properties, L.P.
OREOF 2017 Ruby LLC

DOCS_LA:332694.6 76136/001

SCF RC Funding IV LLC
Store Master Funding XIII LLC
Store Master Funding XIV LLC

**<u>Other Major Creditors</u>**

Aberle, Paul & Heinrich
Affinity9 Realty, LLC
AHGIE, LLC
Allen Kushynski, Trustee of the Kushynski Family Trust
Avenues Mall, LLC
Bennett, Patricia Ann
Bennett Partners, LLLP
Bettis, Daniel F.
Bishop Jr., Earnest
Bismark Properties
Brown Capital LLLP
Brown, Cecilia A.
Buffalo-Bloomfield Assoc., LLC
Burnett Family Trust Dated 03-07-2005
Burnett, Molly
Buettgen, James J.
CGI 3 LP (fka RT Beaufort, LLC)
Chazparem, LLC
Clark, Myra C.
Cope, Collin
Crossgates Mall Company Newco LLC
Crystal Run Newco LLC
DATO Food Group RT, LLC
Duffy, Marguerite
Eldridge, Richard H.
FEB Realty Mebane LLC
French Associates I, LLC
Friedman, Anthony J.
Grand IX Ventures, LLC
Grant, Kimberly
Grau, Henry
HaiYang, Inc.
Hamilton Mall Realty LLC
Hepp, Andrew
Hobart Corporation
Holyoke Mall Company, LP
Hunt, Pfilip G.
Ibrahim, Nicolas
Interstate Augusta Properties LLC
J Artson, LLC

DOCS_LA:332694.6 76136/001

Kagasoff, Denny L.
Lanham LLLP
Lapidus, Dennis
Laxmi, Jay Shree
LeBoeuf, Robert
Lebow, Lawrence N.
Lebow, Jonathan
Lusavi Pagosa, LLC
Macerich Deptford LLC
May, Scarlett
Mazza LaVale LLC
Mazza Lexington LLC
McClenagan Jr., Robert
Mesa Clemmons, LLC
Mothershed, J. Russell
National Retail Properties, LP
Nelson, Craig
Northeast Properties, LLC
Oakdale Mall II LLC
Papazian Sherman Way LLC
Parkway Lodging Realty, LLC
Paul, Eric M.
PBM Cape Coral RT, LLC
Performance Food Group
Piet, Edward M.
P&M Investment Company, LLC
PMP Properties
Quadre Investments L.P.
Roder, Mike
Route Ten, LLC
RPAI Worcester Lincoln Plaza LLC
RT Henderson, LLC
RT Orlando Investment, LLC
Rubicon Global LLC
Scoggins, Andrew
Shreibman, Amnon
South Riding Owner, LLC
St John and Partners Advertising and Public Relations Inc.
Strategic Equipment LLC
Sycamore Springs LLC
TAU South LLC (fka CNL Funding 2000-A, L)
The Marshall Family Trust dated February 14, 2000
The Nicholson Trust Agreement dated October 1, 1990
Times Square Tower Associates LLC
Tomaszweicz Trust dated November 18, 2002
Van Horne, Jeff

4

Vestar – CPT Tempe
VOMC Company Inc.
Wallace III, Sidney
Wendover ZS LLC
Wenne, LLC
Winters Chapel Plaza, LLC
Young, Mark