IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Objection Deadline: November 5, 2020 at 4:00 p.m. (ET)
Hearing Date: November 12, 2020 at 2:00 p.m.. (ET)

**RUBY TUESDAY, INC.'S MOTION FOR AN ORDER AUTHORIZING RUBY TUESDAY, INC. TO EXERCISE ITS OWNERSHIP RIGHTS OVER TRUST ASSETS CURRENTLY HELD IN A "RABBI TRUST" FOR RUBY TUESDAY, INC.'S NONQUALIFIED "DEFINED CONTRIBUTION" DEFERRED COMPENSATION PLANS**

Ruby Tuesday, Inc. ("RTI"), one of the debtors and debtors in possession (collectively, the "Debtors") in the above captioned cases hereby files this motion (the "Motion") for entry of an order, in substantially the form attached hereto as **Exhibit D** (the "Proposed Order"), (i) authorizing RTI to exercise its ownership rights over assets held in a "rabbi trust" (the "Trust") for RTI's nonqualified "defined contribution" deferred compensation plans,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

1

(ii) authorizing and directing the trustee of the Trust, Wells Fargo Bank, N.A. (the "Trustee"), to liquidate and transfer RTI's assets held in the Trust (the "Trust Assets") to RTI's bankruptcy estate, and (iii) authorizing RTI and the Trustee to terminate the Trust and authorizing the termination of the Trust and the discharge of all of the Trustee's obligations to the Trust after all of the Trust Assets or their proceeds have been transferred to RTI. In support of this Motion, RTI respectfully states:

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The statutory bases for the relief requested herein are sections 105(a), 363(b), 541, 542 and 543 of Title 11 of the United States Code (the "Bankruptcy Code"), rules 6003, 6004, and 9013 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Local Rule 9013-1(f). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

**Background**

3. On October 7, 2020 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

5. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc., in Support of First Day Pleadings* (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.[2]

6. The centerpiece of the Debtors' proposed restructuring through their chapter 11 cases, which has the support of the Debtors' senior secured lenders and postpetition lenders, is a dual-track process pursuant to the terms of a Restructuring Support Agreement, dated October 8, 2020, entered into between the Debtors and their senior secured lenders (the "RSA"), that provides for either (a) the stand-alone reorganization of the Debtors business; or (b) the sale of substantially

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

all of the Debtors' assets if a bid (or bids) is submitted by one or more third parties other than the Debtors' secured creditors that, *inter alia*, provides for cash consideration at closing that is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt Claims in cash in full on the closing date.

**RTI'S Non-Qualified Defined Contribution Deferred Compensation Plans**

7. Effective as of January 1, 2005, RTI adopted the Ruby Tuesday, Inc. 2005 Deferred Compensation Plan (the "2005 Plan"). Prior to January 1, 2005, RTI maintained the Ruby Tuesday, Inc. Deferred Compensation Plan (the "Old Plan") that was originally established by indenture dated December 18, 1989, that was restated effective November 26, 2002. RTI is the "Primary Sponsor" of both the Old Plan and the 2005 Plan (collectively, the "Plans"). The Old Plan was frozen as of January 1, 2005.

8. The Plans were created and maintained for the purpose of providing deferred compensation to a select group of highly compensated employees (the "Participants") of RTI and any RTI affiliate adopting the 2005 Plan or the Old Plan, under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") on an unfunded basis.[3] More specifically, the Plans are unfunded, non-tax qualified, defined contribution type deferred compensation plans that are intended to (a) comply with the requirements of section 409A of the Internal Revenue Code of 1986, as amended (the "IRC"), or, with respect to the Old Plan, IRS Revenue Procedure 60-31, and (b) qualify for the exemptions provided under sections 201, 301, and 401 of ERISA, as

---

[3] Section 15.1 of the restated Old Plan and Section 14.1 of the 2005 Plan each provides: "All payments provided under the Plan Sponsor and no separate fund shall be established to secure payment. Notwithstanding the foregoing, the Primary Sponsor may establish a grantor trust to assist it and other Plan Sponsors in funding Plan obligations, and any payments made to a Member or Beneficiary from such trust shall relieve the Plan Sponsor from any further obligations under the Plan only to the extent of such payment."

4

amended. The 2005 Plan adopted on January 1, 2005, was designed to conform to the requirements of newly-enacted IRC section 409A.

## The Rabbi Trust for the Plans

9. On July 1, 1997, RTI established the Trust for the Old Plan pursuant to the *Trust Agreement for the Ruby Tuesday, Inc. Deferred Compensation Plan* (the "Trust Agreement") that would provide RTI, the "Primary Sponsor," and affiliated corporations that adopted the Old Plan with a source of funds in a grantor trust to assist in meeting their liabilities to the individual members participating in the Plan.[4] A true and correct copy of the Trust Agreement and the First Amendment thereto made as of June 10, 2002, is attached as **Exhibit A**.

10. The Trust Agreement provides for the establishment of a "fund" with the Trustee (the "Trust Assets") to be held and administered in accordance with the Trust. *See* Trust Agreement, § II. Following the freeze of the Old Plan and the establishment of the 2005 Plan effective January 1, 2005, the Trust under the Trust Agreement was utilized for Participants in the 2005 Plan in addition to existing Participants of the Old Plan. The current Trustee of the Trust is Wells Fargo Bank, N.A.[5]

11. The Trust was intended to provide additional assurance to the Participants of the Plans that their unfunded deferred compensation benefits under the Plans would be met in the future, but like all rabbi trusts, the Trust Agreement provides that the Trust Assets remain the property of the Plan Sponsor and the rights of the Participants to benefits provided by the Plans

---

[4] The Participants are identified as "Members" in the Trust Agreement.

[5] Wells Fargo Bank, N.A., is administering the Trust through its subsidiary Wells Fargo Institutional Retirement & Trust that has been sold to Principal Financial Group ("Principal"). However, RTI has been informed that the migration to Principal is not scheduled to occur until mid-year of 2021.

and the Trust Assets in the Trust do not exceed those of a general creditor of the Plan Sponsors in the event of the Plan Sponsor's insolvency. Specifically, section XI.A of the Trust Agreement provides in pertinent part:

> **The Fund assets shall be treated as general assets of the Plan Sponsor and shall remain subject to claims of the general creditors of the Plan Sponsor** under applicable state and federal law. …No Member shall have a preferred claim on or any beneficial ownership in the Fund prior to the time for distribution to the Member under the terms of a Plan or the terms of this Trust Agreement. In the event that the Plan Sponsor becomes insolvent as described in Subsection C below, each Member shall be deemed to waive any priority the Member may have under law as an employee with respect to any claim against the Plan Sponsor and the Trust beyond the rights of the Member would have as a general creditor of the Plan Sponsor.

*Id.* § XI.A (emphasis added).

12. Pursuant to Section XI.C of the Trust Agreement, upon receipt of written notice from the board of directors of the Plan Sponsor of the "insolvency" of the Plan Sponsor as defined in the Trust Agreement "the Trustee shall suspend all further payments to Members or their beneficiaries and shall hold the assets of the Trust for the benefit of the creditors of the Plan Sponsor in the manner directed by a court of competent jurisdiction." The Trust Agreement additionally provides that: "In the event the Trustee has actual knowledge of the insolvency of the Plan Sponsor, the Trustee shall hold the assets for the benefit of the creditors of the Plan Sponsor in the manner directed by a court of competent jurisdiction." *See* Trust Agreement, § XI.C.

13. RTI is and had been insolvent prior to its chapter 11 filing within the meaning of the Trust Agreement's definition of insolvency which provides: "the term 'insolvency' shall mean the inability of the Plan Sponsor to pay its debts as they become due in the usual course of business or that the liabilities of the Plan Sponsor are in excess of its assets." *Id.* Based on a

6

determination of the board of directors of RTI (the "RTI Board") that RTI was insolvent prior to the Debtors' bankruptcy filings under the insolvency definition in the Trust Agreement, on September 2, 2020, a written notice of insolvency (the "Notice of Insolvency") was sent to the Trustee at the direction of the RTI Board. A true and correct copy of the Notice of Insolvency is attached as **Exhibit B** and a true and correct copy of the Written Consent of the RTI Board to the Notice of Insolvency is attached hereto as **Exhibit C**. On September 14, 2020, a further letter was sent to the Trustee on behalf of RTI and the RTI Board confirming that the Notice of Insolvency was from the RTI Board. Thus, due to RTI's insolvency, as well as its subsequent chapter 11 filing, the Trust assets can no longer be used to pay benefits to the Participants, but must be held by the Trustee for the benefit of the creditors of RTI in the manner directed by a court of competent jurisdiction.

14. The Trustee has informed RTI that the Trust currently holds investment funds in accounts with a total current value of approximately $5,234,764.66 as of September 24, 2020. The values may increase or decrease based on changes in the market and the type of investment fund. The costs of liquidating the investment funds are expected to be *de minimis*. Thus, the liquidation and return of the Trust Assets to RTI's bankruptcy estate will provide RTI with substantial funds and liquidity for the benefit of its bankruptcy estate and creditors. Specifically, under the terms of the RSA, in order to secure the Exit Financing contemplated therein and successfully emerge from these chapter 11 cases, the Debtors must have minimum liquidity of $12.5 million after satisfying their obligations to creditors under the Plan.

15. RTI has consulted with the Trustee regarding the return of the Trust Assets

7

and the relief requested in this Motion. The Trustee has advised RTI that it will direct the liquidation and return of the Trust Assets to RTI if this is provided for in an order of this Court pursuant to the requirement of section XI.C of the Trust Agreement that, upon receipt of written notice of insolvency, "the Trustee shall suspend payments to Members and hold the assets of the Trust for the benefit of the creditors of the Plan Sponsor in the manner directed by a court of competent jurisdiction." The Trustee also advised RTI that the liquidation of the Trust Assets by the Trustee and the return of the cash proceeds to RTI's bankruptcy estate can be accomplished within approximately three (3) business days after such action is authorized and directed by this Court subject to assignment of a "deconversion representative" to oversee the process.

## Relief Requested

16. By this Motion, RTI seeks entry of the Proposed Order directing the Trustee to liquidate and transfer the Trust Assets to RTI's bankruptcy estate and authorizing the termination of the Trust and the discharge of all of the Trustee's obligations to the Trust after all of the Trust Assets or their proceeds have been transferred to RTI.

## Basis for Relief Requested

**A.** **The Trust Assets Constitute Property of the Bankruptcy Estate**

17. Section 541(a)(1) of the Bankruptcy Code broadly defines property of the estate to include any legal or equitable interests of the debtor, wherever located, as of the commencement of the case. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983) (holding that section 541(a)(1) defines what is included in the estate and encompasses any property made available to the estate by other provisions of the Bankruptcy Code); *see also Georgia Pac.*

*Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 967–68 (5th Cir. 1983) (holding that, where the estate had a legal interest in property, the property was required to be turned over to enable the bankruptcy court to decide entitlement to sum); *see generally* Analysis of H.R. 8200, H.R. Rep. No. 595, 95th Cong. 1st Sess. 367–68 (1977) (noting that the scope of section 541(a)(1) is broad and was intended to include any property made available to the estate by other provisions of the Bankruptcy Code).

18. Pursuant to section 541 of the Bankruptcy Code, because the Trust Agreement explicitly states that the Trust Assets are subject to the claims of RTI's creditors, the Trust Assets constitute property of RTI's bankruptcy estate. *See, e.g.*, *In re IT Group., Inc.*, 448 F.3d 661, 669–70 (3d Cir. 2006), *as amended* (July 10, 2006) (stating that rabbi trust beneficiaries' claims to deferred amounts are *pari passu* with company's general unsecured creditors); *Bank of Am., N.A. v. Moglia*, 330 F.3d 942, 943 (7th Cir. 2003) (affirming bankruptcy court decision that trust corpus was included in property of the bankruptcy estate); *Goodman v. Res. Trust Corp.*, 7 F.3d 1123 (4th Cir. 1993) (affirming the holding that the company had the right under the terms of its trust agreements to recover trust assets in order to satisfy claims of creditors); *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, 441 B.R. 120, 130–31 (BAP 9th Cir. 2010) (holding that deferred compensation plan trust assets were not beyond the reach of the company's general unsecured creditors and were therefore property of the bankruptcy estate); *In re Bill Heard Enterprises, Inc.*, 419 B.R. 858, 866 (Bankr. N.D. Ala. 2009) (holding that rabbi trust and all assets contained therein are property of the bankruptcy estate); *In re Collins & Aikman Corp.*, 2006 WL 2310798, *3 (Bankr. E.D. Mich. 2006) (holding that life insurance policies in a rabbi trust are property of the estate).

DOCS_LA:332580.10 76136/001

19. Because the Trust Assets constitute property of RTI's estate, the Trustee must immediately provide the Trust Assets to RTI pursuant to section 542 of the Bankruptcy Code. *See Collins*, 2006 WL 2310798 at \*3 (holding that the debtor was entitled to assets held in a rabbi trust pursuant to section 542(a)). Section 542(a) of the Bankruptcy Code provides, in relevant part:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property . . .

11 U.S.C. § 542(a).

20. Section 542(a) provides that entities, other than a custodian, having possession, custody, or control of property that belongs to the debtor must turn over such property. Section 101(11) of the Bankruptcy Code defines custodian as a:

> (a) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding under this title;
>
> (b) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (c) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

21. The Trustee does not qualify as a custodian under section 101(11) because it is not a trustee, receiver, or agent appointed or authorized by this Court to take charge of property of RTI. Moreover, the Trust Agreement does not authorize the Trustee to take charge of RTI's property for the purpose of enforcing a lien against Trust Assets or to generally administer the Trust

10

Assets for the benefit of the RTI's creditors. *Id*. Thus, the Trustee is required to deliver the Trust Assets to RTI, subject to the requirement in the Trust Agreement that it be done in the manner directed by a court of competent jurisdiction.

22. Further, even if the Trustee did qualify as a custodian, section 543(b)(1) requires a custodian in possession or control of any property of the debtor to deliver the property to such debtor if: (a) the custodian has custody possession or control of the property; and (b) such property is the property of the debtor. *Sovereign Bank v. Schwab*, 414 F.3d 450, 454 (3d Cir. 2005). It is undisputed that the Trustee has custody of the Trust Assets, and, as discussed above, the Trust Assets are property of the estate. Therefore, even assuming the Trustee is a custodian, the Trustee is still required to turn over the Trust Assets to RTI.

**B.   RTI's Decision to Exercise it Ownership Rights Over the Trust Assets is an Exercise of Its Sound Business Judgment and in the Best Interests of Its Estate and Creditors**

23.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); In determining whether to authorize the use of property outside the ordinary course of business, courts require a debtor to show that it is based upon the debtor's sound business judgment and proposed in good faith. See, e.g., *In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp*. and requiring good faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale). Section 105(a) of the Bankruptcy Code, in turn, authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

24.    RTI's decision to exercise its ownership rights over the Trust Assets at this time is an exercise of sound business judgment, is undertaken in good faith and is in the best interest of RTI, its estate and creditors.  Indeed, transferring the Trust Assets to RTI's control will lead to a cash inflow of over $5 million, thereby providing RTI's bankruptcy estate with significant

12

liquidity. Exercising its ownership rights over the Trust Assets falls squarely within RTI's rights under the Trust Agreement. By pursuing these rights, RTI is not affecting the interests of any other party. Indeed, the Trust Assets are solely assets of RTI for the benefit of RTI's creditors. As expressly provided in the Trust Agreement, the Trust Assets are subject to the claims of RTI's creditors and upon the insolvency of RTI as defined in the Trust Agreement, each Participant "shall be deemed to waive any priority the Member may have under law as an employee with respect to any claim against the Plan Sponsor and the Trust beyond the rights the Member would have as a general creditor of the Plan Sponsor." *See* Trust Agreement, § XI.A. Moreover, the Participants do not have any beneficial ownership interest in the Trust Assets because the Trust Assets at all times remained property of RTI. See, *IT Group, Inc.*, *supra* 448 F.3d at 669-70 (holding that funds held in deferred compensation plan that qualified as a rabbi trust were not subject to the claims of participants whose rights to the trust funds were no greater than the rights of general unsecured creditors, citing to similar analysis and holdings of other courts of appeal). Additionally, for the avoidance of doubt, the relief being sought herein is without prejudice to the unsecured claims of the Participants against RTI or other Debtors to the extent they hold any such claims.

25. Similar relief to that sought herein has been granted by other courts. *See e.g. In re The PMI Group, Inc.*, Case No. 11-13730 (BLS) (Bankr. D. Del. 2013) [Docket No. 760]; *In re BearingPoint, Inc*., Case No. 09-10691 (REG) (Bankr. S.D.N.Y. 2010) [Docket No. 1825]; *In re Washington Mutual*, *Inc*., Case No. 08-12229 (MFW) (Bankr. D. Del. 2011) [Docket No. 7836-1];

*In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (Bankr. D. Del. 2007) [Docket No. 1840].

C. **The Trustee Has Indicated that it has No Objection to the Relief Requested in this Motion**

26. Finally, RTI has consulted with the Trustee and its counsel regarding the relief requested in this Motion. The Trustee has indicated it has no objection to the relief requested in the Motion and will promptly direct the liquidation and transfer the Trust Assets to RTI upon authorization and direction by an unstayed order of this Court to do so. Once all of the Trust Assets or their proceeds have been transferred to RTI, the Trustee has requested that RTI obtain court authorization to terminate the Trust pursuant to the terms of the Trust providing that "the Trust shall terminate and all Fund assets shall be distributed … on the complete distribution of the Fund in accordance with the terms and provisions of the Plan." *See* Trust Agreement at § XV.B. RTI submits that transfer of the Trust Assets to RTI under the terms of Section XI.C of the Trust Agreement satisfies this termination provision.

**Notice**

27. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); (c) the Debtors' fifty largest unsecured creditors on a consolidated basis; (d) the Trustee; and (e) the Participants. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**No Prior Request**

28. No prior motion for the relief requested herein has been made to this or any other court.

**Conclusion**

WHEREFORE, RTI respectfully requests that the Court enter the Proposed Order, substantially in the form annexed hereto as **Exhibit D**, granting (a) the relief requested herein, and (b) such other and further relief as the Court may deem proper.

Dated: October 15, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email: rpachulski@pszjlaw.com
          mpagay@pszjlaw.com
          joneill@pszjlaw.com
          vnewmark@pszjlaw.com

[Proposed] Counsel to the Debtors and Debtors in Possession