# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RTI HOLDING COMPANY, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-12456 (JTD)<br><br>(Jointly Administered) |

**Objection Deadline: October 29, 2020 at 4:00 p.m. (ET)**
**Hearing Date: November 5, 2020 at 11;00 a.m. (ET)**

## APPLICATION OF DEBTORS FOR AUTHORIZATION TO (I) RETAIN AND EMPLOY HILCO REAL ESTATE, LLC AS REAL ESTATE ADVISOR FOR DEBTORS *NUNC PRO TUNC* TO PETITION DATE AND (II) WAIVE CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(H)

RTI Holding Company, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>" or the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

"Company"), respectfully represent as follows in support of this application (the "Application"):

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule predicates for the relief sought herein are sections pursuant to sections 327 and 328 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules.

**Background**

4. On the October 7, 2020 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

5. The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

6. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Shawn Lederman, Chief Executive Officer, in Support of First Day Pleadings* (the "First Day Declaration") filed on October 7, 2020 [Docket No. 3] and fully incorporated herein by reference.[2]

**Relief Requested**

7. By this Application, the Debtors request, entry of an order (a) authorizing the employment and retention of Hilco Real Estate, LLC ("Hilco") as real estate advisor to the Debtors, *nunc pro tunc* to the Petition Date (as defined herein) in accordance with the terms and conditions set forth in that certain real estate consulting and advisory services agreement dated October 9, 2020, including any amendments or schedules thereto (the "Engagement Agreement"), and (b) waiving certain information requirements of Local Rule 2016-2(d).

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

8.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "Proposed Order").[3]

9.      In support of the Application, the Debtors submit the declaration of Sarah Baker, Vice President and Assistant General Counsel of Hilco Trading, LLC, parent company of Hilco, annexed hereto as **Exhibit B** (the "Baker Declaration").

### Hilco's Qualifications

10.     As of the Petition Date, the Debtors were party to leases for more than 400 locations in the United States (collectively, the "Leases" or the "Lease Portfolio"). As detailed in the First Day Declaration, the Debtors, with the assistance of their advisors, engaged in a comprehensive review of the Debtors' Lease Portfolio, with the objective of optimizing their go-forward footprint. This analysis includes, among other components, determining each location's current and projected profitability, as well as the market rate for each location's rent terms. In light of the size and complexity of the Debtors' Lease Portfolio, the Debtors require a qualified and experienced real estate advisor with the resources, capabilities, and experience of Hilco to assist them in pursuing various negotiations and transactions with the Debtors' landlords, which are crucial to the Debtors' successful emergence from these cases. The Debtors believe that retaining Hilco as their real estate advisor is in the best interests of their estate and creditors because, among other things, Hilco has extensive experience in providing real estate

---

[3] A copy of the Engagement Agreement is also annexed to the Proposed Order as **Exhibit 1**.

consulting and advisory services to debtors in bankruptcy reorganizations and other restructurings.

11. Hilco is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and disposes of all types of real estate assets located both nationally and internationally. The Debtors seek to retain Hilco in particular because of Hilco's significant qualifications and experience in real estate restructuring matters. Hilco has extensive experience solving complex real estate problems and evaluating, negotiating, and restructuring real estate lease terms. Hilco has an excellent reputation as a leader in the real estate field and has an experienced team of real estate brokers, attorneys, and analysts.

12. Moreover, Hilco has served as real estate broker and real estate consultant, in a similar capacity as contemplated here, in many complex bankruptcy cases. See, e.g. *In re Gymboree Grp, Inc.*, Case No. 19-30258 (KLP) (Bankr. E.D. Va. Mar. 8, 2019) [Docket No. 515]; *In re PGHC Holdings, Inc.*, Case No. 18-12537 (MFW) (Bankr. D. Del. Nov. 28, 2018) [Docket No. 131]; *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del. May 3, 2018) [Docket No. 161]; *In re Claire's Stores Inc.,* No. 18-10584 (MFW) (Bankr. D. Del. April 17, 2018) [Docket No. 293]; In re hhgregg, Inc., Ch. 11 Case No. 17-01302-RLM-11 (Bankr. S.D. Ind. Apr. 6, 2017); *In re The Great Atl. & Pac. Tea Co.*, Ch. 11 Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Sept. 14, 2015); *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. April 11, 2014) [Docket No. 127]; *In re Neff Corp.*, No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 9, 2010) [Docket No. 131]; *In re Lenox Sales, Inc.*, No. 08-

14679 (ALG) (Bankr. S.D.N.Y. March 11, 2009) [Docket No. 397]; *In re Bally Total Fitness of Greater N.Y.*, No. 08-14818 (BRL) (Bankr. S.D.N.Y Jan. 14, 2009) [Docket No. 424]; see also, *In re The Oceanaire Tex. Rest. Co., L.P.*, No. 09-34262 (BJH) (Bankr. N.D. Tex. Nov. 17, 2009) [Docket No. 289]; *In re Bashas' Inc.*, No. 09-16050 (JMM) (Bankr. D. Ariz. Aug. 26, 2009) [Docket No. 485]; *In re RCC Liquidating Corp.*, No. 09-10617 (MFW) (Bankr. D. Del. May 19, 2009) [Docket No. 583]; *In re Everything But Water, LLC*, No. 09-10649 (MFW) (Bankr. D. Del. Apr. 16, 2009) [Docket No. 215]; *In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. Sept. 26, 2008) [Docket No. 540]; *In re BSCV, Inc.*, No. 08-11637 (KG) (Bankr. D. Del. Sept. 15, 2008) [Docket No. 286]. Accordingly, Hilco has developed significant relevant experience and expertise that will enable Hilco and its professionals to provide necessary real estate consulting and advisory services in these chapter 11 cases.

13. Hilco's real estate services team also has skills in improving the cash flows of its clients' businesses through the repositioning and restructuring of real estate commitments. Hilco's real estate services team executes real estate strategies quickly and efficiently by advising its clients on a range of options and working with owners, investors, buyers, sellers, and lenders. Hilco works across industry sectors and products, serving distressed and healthy companies in the United States and globally, providing services which include: analysis and valuation and strategic real estate planning services; real estate acquisition and disposition services; real estate financing and sale lease-back services; and real estate lease-related services, including negotiation, modification, and termination of leases.

14. Thus, Hilco is particularly suited to provide the real estate consulting and advisory services to the Debtors that are contemplated by the Engagement Agreement and described herein.

**Services to Be Provided**

15. Hilco has agreed to provide services to the Debtors in these chapter 11 cases in accordance with the terms and conditions set forth in the Engagement Agreement. The terms of the Engagement Agreement reflect the mutual agreement between the Debtors and Hilco as to the substantial efforts that may be required of Hilco throughout the course of these proceedings. The Engagement Agreement provides, in consideration for the compensation contemplated thereby, that Hilco will, to the extent requested by the Debtors, render the following services to the Debtors (a) real estate consulting and advisory services including: consulting with the Debtors and their advisor to ascertain the Debtors' goals, objectives, and financial parameters; reviewing the Debtors' Lease Portfolio, consulting with the Debtors with respect to a strategic plan for restructuring, deferring and waiving rent, shortening term or terminating the Leases (the "Strategy"), providing general real estate consulting and advisory services with respect to the Leases and the implementation of the Strategy, (b) lease restructuring services which include negotiating the terms of restructuring, rent deferral and waiver, and term shortening agreements with the landlords under the Leases, providing written reports periodically to the Debtors regarding the status of negotiations with landlords; and

assisting the Debtors in closing the pertinent Lease restructuring agreements, in each case approved by the Debtors (collectively, the "Services").[4]

16. The aforementioned Services are necessary to enable the Debtors to maximize the value of their estates and successfully emerge from these chapter 11 cases. Hilco has indicated a willingness to act on behalf of the Debtors, on the terms described herein and in the Engagement Agreement, and to subject itself to the jurisdiction of the Court. Additionally, the Debtors have been advised by Hilco that it will endeavor to coordinate with the other retained professionals in these chapter 11 cases to eliminate unnecessary duplication or overlap of work.

## Professional Compensation

17. Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective January 30, 1996, established by the Executive Office for the United States Trustees (collectively, the "Fee Guidelines"), the Debtors will compensate Hilco in accordance with the terms and provisions of the Engagement Agreement, which provides a compensation structure (the "Fee and Expense Structure") in relevant part as follows:[5]

---

[4] The summary of Services provided herein is for illustrative purposes only and is subject to the Engagement Agreement in all respects. In the event of any inconsistency between the Services as set forth herein and the Engagement Agreement, the Engagement Agreement shall control.

[5] The summary of the Fee and Expense Structure provided herein is for illustrative purposes only and is subject to the Engagement Agreement in all respects. In the event of any inconsistency between the Fee and Expense Structure as set forth herein and the Engagement Agreement, the Engagement Agreement shall control.

18. As compensation for Hilco's Services, the Debtors will pay to Hilco compensation in accordance with the following fees as further defined herein below (a) a Monthly Consulting Fee; (b) A Restructured Lease Savings Fee; (c) a Restructured Master Lease Savings Fee; (d) a Term Shortened Lease Fee; (e) an Initial Fee and (f) reimbursement of expenses <u>provided</u>, that for any Restructured Lease or Restructured Master Lease that is rejected during a pending Chapter 11 bankruptcy case, fees shall be due and payable with respect to such Restructured Lease or Restructured Master Lease solely to the extent that (a) the Company realizes the benefit of any Restructured Lease Savings resulting from an agreement negotiated by Hilco prior to rejection of such Restructured Lease or Restructured Master Lease, in which case Hilco's compensation shall be calculated solely based on the Restructured Lease Savings realized by the Company on a post-petition basis prior to rejection, or (b) the Debtors realize the benefit of Restructured Lease Savings resulting from a Restructured Lease or Restructured Master Lease that is designated for rejection but ultimately reinstated with improved terms for the Debtors pursuant to an agreement negotiated by Hilco, in which case Hilco's compensation shall be based solely on the Restructured Lease Savings realized by the Debtors on a post-petition basis. A detailed summary of the Fee and Expense Structure is attached hereto as **Exhibit C**.

19. <u>Initial Fee</u>. The Company shall pay Hilco an initial fee of $50,000, which shall be due and payable within three (3) business days of entry of the Retention Order (the "<u>Initial Fee</u>"). The Initial Fee shall be offset against earned Restructured Lease Savings Fees, Restructured Master Lease Savings Fee (to the extent applicable), and Term Shortened Lease

Fees at a rate of $.25 on the dollar; provided, further, however, in no event shall Hilco have any obligation to refund any portion of the Initial Fee.

20. Expenses. All Expenses (defined below) shall be borne by the Company, and Hilco shall be entitled to reimbursement from the Company for all Expenses. Billing shall be monthly and invoices are due not later than thirty (30) days after the date of invoice. "Expenses" means all reasonable, documented (through receipts or invoices) out-of-pocket expenses incurred by Hilco in connection with its performance of its Services hereunder, including, without limitation: reasonable expenses of advertising, marketing, coach travel and transportation, including, the cost of out-of-town travel and postage and courier/overnight express fees and other mutually agreed upon expenses incurred in connection with performing the services required by this Agreement.

21. Indemnification. The Engagement Agreement provides for mutual indemnification between the Debtors and Hilco. Specifically, the Debtors have agreed to indemnify Hilco and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco, including, without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) the Debtors' material breach of or failure to comply with any of its agreements, covenants, representations, or warranties contained in the Engagement Agreement and (ii) the fraud, gross negligence (including omissions) or willful misconduct of the Debtors, their officers, directors, employees, agents, or representatives. Hilco has agreed to the same indemnification provisions of the Debtors.

22. The Fee and Expense Structure generally described herein and set forth in the Engagement Agreement is consistent with and typical of arrangements entered into by Hilco and other real estate advisors when rendering similar services to clients such as the Debtors. Hilco and the Debtors believe that the foregoing compensation arrangement is both reasonable and market-based. In determining the level of compensation to be paid to Hilco and the reasonableness of such compensation, the Debtors compared Hilco's fee structure and the amount of the fees to similar real estate engagements in other chapter 11 cases.

23. Due to the transactional nature of the services that Hilco provides, its professionals do not bill clients on an hourly basis while performing such services. Hilco's real estate restructuring expertise was an important factor in determining the Fee and Expense Structure, and the Debtors believe that the ultimate benefit to their estates resulting from Hilco's services hereunder could not be measured by reference to the number of hours to be expended by Hilco's professionals in the performance of such services.

24. The Debtors respectfully submit that the Fee and Expense Structure has been agreed upon by the parties on an arm's-length basis in anticipation that a substantial commitment of professional time and effort will be required of Hilco and its professionals hereunder and in light of the fact that (i) such commitment may foreclose other opportunities for Hilco and (ii) the actual time and commitment required of Hilco and its professionals to perform its services hereunder may vary substantially from week to week and month to month.

25. Based upon the nature of the services to be provided by Hilco and the fact that the Fee and Expense Structure was developed because Hilco does not bill clients on an

hourly basis, the Debtors seek relief from having Hilco maintain time records or file interim fee applications pursuant to Local Rule 2016-2(h); *provided* that Hilco will file a final fee application with a summary of fees earned and expenses incurred along with a summary of what fees and expenses have been paid. In addition, Hilco will submit invoices to the Debtors, counsel for Debtors, the U.S. Trustee, counsel to the DIP Lender, and counsel for any statutory committee appointed in these chapter 11 cases, for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Engagement Agreement when such compensation becomes due and owing and such expenses are incurred. Such parties shall have fifteen (15) days to review and dispute any such invoice submitted by Hilco, and if no such disputes are received, without any further order of the Court, the Debtors shall be authorized to pay such Hilco invoices. If an objection is received, the Debtors shall withhold the payment of the portion of the payment that is objected to and promptly pay the remainder. All objections that are not resolved shall be preserved and presented to the court for determination. Such procedures have been approved between debtors and Hilco by courts in the past. *See, e.g., In re Gymboree Grp., Inc.*, Case No. 19-30258 (KLP) (Bankr. E.D. Va. Mar. 8, 2019) [Docket No. 515] (order authorizing debtors to retain Hilco as real estate advisors for the debtors, *nunc pro tunc*); *In re Claire's Stores Inc.,* No. 18-10584 (MFW) (Bankr. D. Del. April 17, 2018) [Docket No. 293] (same); *In re The Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. April 30, 2014) [Docket No. 237] (same).

### **No Duplication of Services**

26. The Debtors intend that the services to be provided by Hilco will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases. Hilco understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**Hilco's Disinterestedness**

27. To the best of the Debtors' knowledge and as disclosed herein and in the Baker Declaration, (i) Hilco is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (ii) Hilco has no connection to the Debtors, its creditors or its related parties, except as may be disclosed in the Baker Declaration.

28. As set forth in the Baker Declaration, Hilco has represented to the Debtors that, after a review of its files and records, Hilco has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, the Debtors' chapter 11 cases. If the Debtors are authorized by the Court to employ and retain Hilco, Hilco will not accept any engagement or perform any service for any entity other than the Debtors in these chapter 11 cases.

29. Hilco's review is continuing and Hilco will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise,

Hilco will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration.

30. Hilco is not a creditor of the Debtors. Hilco received no payment from the Debtors during the 90-day (90) period prior to the Petition Date. Further, Hilco has not shared or agreed to share any of its compensation from the Debtors with any other person except as permitted by section 504 of the Bankruptcy Code.

**Relief Requested Should Be Granted**

31. The Debtors seek authority to employ and retain Hilco as their real estate advisor under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code as those sections relate to cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

32. The Debtors seek approval of the Fee and Expense Structure under the Engagement Agreement pursuant to section 328(a) of the Bankruptcy Code, which provides that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including real estate advisors, on flexible terms that reflect the nature of their services and market conditions. Thus, section 328 is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* (internal citations omitted).

33. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This change makes clear that the Debtors may retain, with Court approval, a professional on a fixed or percentage fee basis such as the Fee and Expense Structure provided for in the Engagement Agreement.

34. The Debtors believe that the Fee and Expense Structure and other terms and conditions in the Engagement Agreement are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects (i) the nature and scope of the services to be provided by Hilco in these chapter 11 cases and work already performed by Hilco prior to the retention date and (ii) the fee structures typically utilized by Hilco.

35. The Debtors respectfully submit that they should be authorized to retain and employ Hilco in accordance with the terms and conditions of the Engagement Agreement. As discussed in the Baker Declaration, Hilco satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Moreover, Hilco has become familiar with the Debtors' business operations and Lease Portfolio, and has committed a significant amount of time and effort with respect to the restructuring of the leases contemplated under the Engagement Agreement. Hilco's services are needed postpetition to assist with negotiations to favorably renegotiate and restructure certain of the Debtors' Leases for the benefit of the Debtors' estates. Hilco has extensive experience and an excellent reputation in providing high-quality real estate advisory services to debtors in bankruptcy reorganizations and other restructurings. The Debtors believe that Hilco is well qualified to provide the Services to the Debtors in a cost-effective, efficient, and timely manner.

36. In addition, the Debtors believe that the Fee and Expense Structure is market based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects the nature and scope of Services, Hilco's substantial experience with respect to lease restructuring services, and the fee and expense structures typically utilized by Hilco and other leading advisory firms that do not bill their clients on an hourly basis. In particular, the Debtors believe the Fee and Expense Structure creates a proper fee mix based on the overall success of Hilco's efforts to restructure the Debtors' various lease obligations.

37. Courts have approved similar fixed and contingency fee arrangements in other large chapter 11 cases. *See, e.g.*, *In re Gymboree Grp., Inc.*, Case No. 19-30258 (KLP) (Bankr. E.D. Va. Mar. 8, 2019) [Docket No. 515] (approving a flexible fee structure and engagement letter under section 328 of the Bankruptcy Code on the grounds that both were reasonable); *In re Claire's Stores Inc.,* No. 18-10584 (MFW) (Bankr. D. Del. April 17, 2018) (same); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Dec. 18, 2013) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (same); *In re Exide Technologies, Inc.*, No. 13-11482 (Bankr. D. Del. July 10, 2013) (same); *In re Geokinetics, Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (Bankr. D. Del. Nov. 20, 2012) (same).

38. Because it is not customary for Hilco to keep detailed time records similar to those customarily kept by attorneys, the Debtors submit, on behalf of Hilco, that a waiver of the requirements of Local Rule 2016-2(d) (to bill activities in one-tenth of an hour

increments, to provide or conform to a schedule of hourly rates, and to divide activity descriptions into general project categories of time) is justified.

## **Notice**

39. Notice of this Application will be provided to the following parties, or, in lieu thereof, their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (c) counsel to Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); (d) any official committee of unsecured creditors appointed in this matter; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 15, 2020

Ruby Tuesday, Inc., *et al*.

_____
Shawn Lederman
Chief Executive Officer