# Exhibit A

## Proposed Order

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RTI HOLDING COMPANY, LLC,[1] | Case No. 20-12456 (JTD) |
| Debtors. | (Jointly Administered) |

## ORDER AUTHORIZING DEBTOR TO (I) RETAIN AND EMPLOY HILCO REAL ESTATE, LLC AS REAL ESTATE ADVISOR FOR DEBTORS *NUNC PRO TUNC* TO PETITION DATE AND (III) WAIVE CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(H)

Upon the application (the "Application")[2] of RTI Holding Company, LLC and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), for entry of an order authorizing the Debtors to retain and employ

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

Hilco Real Estate, LLC ("Hilco") as real estate advisor for the Debtors, nunc pro tunc to the Petition Date, in accordance with the terms and conditions of that certain engagement agreement executed on October 9, 2020, including any amendments and schedules thereto, (the "Engagement Agreement"), annexed hereto as Exhibit 1, and (ii) to waive certain reporting requirements pursuant to Local Rule 2016-2(h), all as more fully set forth in the Application; and this Court being satisfied, based on the representations made in the Application and the Baker Declaration, that Hilco is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Hilco represents no interest adverse to the Debtors' estates; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application; and the Court having held a hearing to consider the relief requested in the Application; and all objections to the Application, if any, having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

DOCS_LA:332728.3 76136/001

**IT IS HEREBY ORDERED THAT**

1.      The Application is granted to the extent set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-2(h), the Debtors are authorized to employ and retain Hilco as their real estate advisor in accordance with the terms and conditions set forth in the Engagement Agreement attached hereto as **Exhibit 1**, *nunc pro tunc* to the Petition Date as modified herein.

3.      All of Hilco's compensation as set forth in the Engagement Agreement— including, without limitation, the Initial Fee of $50,000, the Monthly Consulting Fee, the Restructured Lease Savings Fee, the Restructured Master Lease Savings Fee and Term Shortened Lease Fee—and the expense reimbursement, indemnification, and related obligations in the Engagement Agreement are approved pursuant to section 328(a) of the Bankruptcy Code and Hilco shall be compensated, reimbursed, and indemnified pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Agreement.

4.      Hilco is not required to maintain time records or file interim fee applications; provided that Hilco shall (i) file a final fee application with a summary of fees earned and expenses incurred along with a summary of what fees and expenses have been paid, and (ii) submit invoices to the Debtors, counsel for Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel to the DIP Lender, and counsel for any statutory committee appointed in these chapter 11 cases, for the payment of

compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Engagement Agreement when such compensation becomes due and owing and such expenses are incurred.

5.      Such parties shall have fifteen (15) days to review and dispute any such invoice submitted by Hilco, and if no such disputes are received, without any further of the Court, the Debtors shall be authorized to pay such Hilco invoices in accordance with the terms of the Engagement Agreement.

6.      If an objection is received, the Debtors shall withhold the payment of the portion of the payment that is objected to and promptly pay the remainder and all objections that are not resolved shall be preserved and presented to the Court for determination.

7.      The payment of all fees and reimbursement of expenses pursuant to the Engagement Agreement shall be free and clear of all liens, claims, and encumbrances.

8.      The fees payable to Hilco pursuant to the Engagement Agreement shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code; provided, however, that notwithstanding the foregoing, the U.S. Trustee may review the reasonableness of Hilco's fees requested in the final fee application under section 330 of the Bankruptcy Code.

9.      The reporting requirements set forth in Local Rule 2016-2(d) are waived, and Hilco shall not be required to maintain or submit detailed billing statements or report the time incurred by Hilco's professionals for this engagement.

DOCS_LA:332728.3 76136/001

10. The Indemnification Provisions set forth in the Engagement Agreement are approved, subject during the pendency of these chapter 11 cases to the following:

(a) subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, Hilco in accordance with the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement;

(b) notwithstanding subparagraph (a) above or any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Hilco or provide contribution or reimbursement to Hilco (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Hilco's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Hilco's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co., et al*., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which Hilco should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement, as modified by the Order; and

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Hilco believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, as modified by this Order, including without limitation the advancement of defense costs, Hilco must file an application therefore in this Court, and the Debtors may not pay any such amounts to Hilco before the entry of an order by this Court approving such payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request by Hilco for indemnification, contribution or reimbursement and is not a

provision limiting the duration of the Debtors' obligation to indemnify.

11. Any limitation of liability by Hilco under the terms of the Engagement Agreement shall have no force or effect.

12. To the extent that there may be any inconsistency between the terms of the Application, the Engagement Agreement, the Baker Declaration, and the express terms of this Order, the express terms of this Order shall govern.

13. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

14. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

# **Exhibit 1**

## **Engagement Agreement**

# REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT

This Agreement is entered into effective as of October 9, 2020, by and between Hilco Real Estate, LLC ("Hilco"), and Ruby Tuesday, Inc. (the "Company").

<u>Recitals</u>**:**

WHEREAS, the Company is the owner of the leasehold interests listed on Exhibit A attached hereto (each a "Lease" and collectively, the "Leases"); and

WHEREAS, the Company seeks to engage Hilco to provide certain consulting services in connection with the Leases as provided herein.

<u>Agreement</u>:

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Hilco agree as follows:

1) <u>Consulting and Advisory Services</u>.  Hilco shall provide the consulting and advisory services described below (collectively, the "Consulting and Advisory Services") to the Company with respect to the Leases:

   a) Meet with the Company to ascertain the Company's goals, objectives and financial parameters;

   b) Review the Company's Lease portfolio;

   c) Mutually agree with the Company with respect to a strategic plan for restructuring, deferring and waiving rent, shortening term, or terminating the Leases (the "Strategy"); and

   d) Provide general real estate consulting and advisory services with respect to the Leases and the implementation of the Strategy.

2) <u>Lease Restructuring Services</u>.  Hilco shall provide the Lease restructuring services described below (the "Lease Restructuring Services" and together with the Consulting and Advisory Services, the "Services")) to the Company with respect to the Leases:

   a) On the Company's behalf, negotiate the terms of restructuring, rent deferral and waiver, and term shortening agreements with the landlords under the Leases, in accordance with the Strategy;

   b) Provide written reports periodically to the Company regarding the status of such negotiations; and

   c) Assist the Company in closing the pertinent Lease restructuring, rent deferral and waiver, and term shortening agreements.

The Company may add additional leases to Exhibit A with the consent of Hilco (which consent may be provided in email) in which case such additional leases shall be considered "Leases" for purposes of this Agreement and the Company and Hilco shall mutually agree on a Strategy covering the additional leases.  Additionally, the Company is party to certain master leases with National Retail Properties, LP and Store Capital Inc. (collectively, the "Master Leases").  The locations governed by these Master Leases are set forth on Exhibit B attached hereto (the "Master Lease Locations").  Upon mutual agreement of the parties, the Master Leases and Master Lease Locations may be added to Exhibit A.  Except as otherwise indicated in Section 5, the Master Leases added to Exhibit A shall be deemed "Leases" for purposes of this Agreement and the Company and Hilco shall mutually agree on a Strategy covering the additional leases.[1]

3) <u>Term and Termination</u>.

   a) <u>Term</u>.  The term of this Agreement shall commence upon the execution hereof and shall expire on the earlier of (i) the date that the Company's plan becomes effective and (ii) the expiration of any applicable designation rights period (including any extensions thereof) during which time a purchaser may designate this Agreement for assignment and assumption subsequent to the closing of the sale of substantially all of Company's assets.

   b) <u>Termination</u>.  The Company shall have the right to terminate this Agreement for cause upon written notice to Hilco.  Termination for cause shall mean any termination as a result of Hilco's fraud, misrepresentation, gross negligence, willful misconduct or material breach by Hilco of any of the terms of this Agreement.  Either party may terminate this Agreement without cause upon thirty (30) days' advance, written notice to the other party in the event that (i) the Debtors' Bankruptcy Case (as defined herein) is converted to a chapter 7 case, or (ii) the Debtors do not consummate a sale of substantially all of their assets and file a liquidating chapter 11 plan.  As set forth in Section 3(c), Hilco shall be entitled to payment of all unpaid Expenses and fees earned hereunder through the effective date of termination.

   c) <u>Effect of Termination</u>.  Upon termination of this Agreement by the Company, Hilco shall: (i) immediately discontinue all Services; and (ii) deliver to the Company all information, reports, papers, and other materials prepared or obtained by Hilco in performing the Services, whether completed or in process.  Upon termination, the Company shall be liable only for payment of accrued and unpaid Expenses of Hilco as of the effective date of the termination; and no compensation shall be due unless such fees shall have been earned by Hilco as of the effective date of termination in accordance with Sections 5, 6, 7, and 8 below.

4) <u>Authority</u>.  Hilco shall be the Company's exclusive provider of the Services in connection with all of the Company's leased real property locations set forth on Exhibit A.  All communications and inquiries regarding restructuring, deferring and waiving rent, or shortening the term of the Leases, including those directed to the Company (including (without limitation) its officers, agents and employees), shall be redirected to Hilco, unless

---

[1]    Section 5 contains specific compensation provisions pertaining to the Master Leases in the event such Master Leases are added to Exhibit A during the Term of this Agreement.

otherwise agreed to by Hilco and the Company.  Hilco shall promptly advise the Company of all offers made with respect to the Leases.  Hilco is authorized only to negotiate the terms of agreements with respect to restructuring, deferring and waiving rent, or shortening the term of the Leases in accordance with the Strategy at the direction and on the behalf of the Company, but not to commit the Company to any such agreement or arrangement or to sign any instrument on behalf of the Company.  Company has the right, in its sole discretion, to accept or reject any offers with respect to the Leases, and, in the event of such rejection, the Company shall not be liable to Hilco for any fee or compensation, except as provided in Sections 5, 6, 7, and 8 below.

5) <u>Compensation</u>. As compensation for Hilco's Services, the Company will pay to Hilco compensation in accordance with the following; <u>provided</u>, that for any Restructured Lease or Restructured Master Lease that is rejected during a pending Chapter 11 bankruptcy case, fees shall be due and payable with respect to such Restructured Lease or Restructured Master Lease solely to the extent that (i) the Company realizes the benefit of any Restructured Lease Savings resulting from an agreement negotiated by Hilco prior to rejection of such Restructured Lease or Restructured Master Lease, in which case Hilco's compensation shall be calculated solely based on the Restructured Lease Savings realized by the Company on a post-petition basis prior to rejection, or (ii) the Company realizes the benefit of Restructured Lease Savings resulting from a Restructured Lease or Restructured Master Lease that is designated for rejection but ultimately reinstated with improved terms for the Company pursuant to an agreement negotiated by Hilco, in which case Hilco's compensation shall be based solely on the Restructured Lease Savings realized by the Company on a post-petition basis.

   a) <u>Certain Definitions</u>.

      i) "Monthly Consulting Fee" means, with respect to the Consulting and Advisory Services provided by Hilco hereunder, four (4) equal monthly payments in the amount of $62,500 each, which payments shall be due and payable upon the first day of each calendar month during the first four (4) months of the Term, except with respect to the first payment of the Monthly Consulting Fee, which shall be due and payable within three (3) business days after entry of the Retention Order.  Each installment of the Monthly Consulting Fee shall be earned in full when due and is non-refundable; provided, however, Hilco shall offset the Monthly Consulting Fees against earned Restructured Lease Savings Fees, Restructured Master Lease Savings Fees (to the extent applicable), and Term Shortening Fees on a dollar for dollar basis; provided, further, however, in no event shall Hilco have any obligation to refund any portion of the Monthly Consulting Fee.

      ii) "Restructured Lease" means any Lease for which the Company, or any assignee or designee thereof (including, if applicable, any purchaser in a Bankruptcy Sale Process, as such term is defined below), enters into a written agreement with the applicable landlord that has the effect of modifying the terms of such Lease.

iii) "Restructured Lease Savings Fee" means, for any Restructured Lease, an amount equal to a base fee of $1,000 plus the aggregate Restructured Lease Savings multiplied by four percent (4.0%) (the "Restructured Lease Savings Percentage").

    (1) With respect to a Restructured Lease, in the event Restructured Lease Savings are attributable to the time period prior to the filing of a bankruptcy case by the Company (the "Bankruptcy Case"), which Restructured Lease Savings were not memorialized in any amendment to the Lease prior to Hilco's retention herein ("Pre-Petition Restructured Lease Savings"), for purposes of calculating the Restructured Lease Savings Fee attributable to such Pre-Petition Restructured Lease Savings, the applicable Restructured Lease Savings Percentage shall be five percent (5.0%).

    (2) In the event the Company commences the Bankruptcy Case, the Company may file one or more motions to defer post-petition rent. If, as a result of such motion(s), an order is entered into deferring post-petition rent (collectively, a "Rent Deferral Order") with respect to a particular Lease ("Deferred Rent"), and such Lease later becomes a Restructured Lease, the Restructured Lease Savings Percentage shall be five percent (5.0%) for any Deferred Rent that is subsequently waived and/or reduced pursuant to a Restructured Lease. For the avoidance of doubt, Hilco shall not be entitled to a Restructured Lease Savings Fee solely on account of the deferral of rent pursuant to a Rent Deferral Order.

    (3) In the event the Company commences the Bankruptcy Case, the Company may file one or more motions to abate or modify post-petition rent. If, as a result of such motion(s), an order is entered into abating post-petition rent (collectively, a "Rent Modification Order") with respect to a particular Lease ("Modified Rent"), and such Lease later becomes a Restructured Lease, the Restructured Lease Savings Percentage shall be five percent (5.0%) of the difference between the Restructured Lease Savings of such Restructured Lease and the Modified Rent, provided that such amount is a positive number. For the avoidance of doubt, Hilco shall not be entitled to a Restructured Lease Savings Fee solely on account of the rent modified pursuant to a Rent Modification Order.

iv) "Restructured Master Lease" means any Master Lease for which the Company, or any assignee or designee thereof (including, if applicable, any purchaser in a Bankruptcy Sale Process), enters into a written agreement with the applicable landlord that has the effect of modifying the terms of such Master Lease.

v) "Restructured Master Lease Savings Fee" means, for any Restructured Master Lease, an amount equal to a base fee of $1,000 plus the aggregate Restructured Lease Savings multiplied by two percent (2.0%) (the "Restructured Master Lease Savings Percentage").

    (1) With respect to a Restructured Master Lease, in the event Restructured Lease Savings are attributable to the time period prior to the filing a Bankruptcy Case, which Restructured Lease Savings were not memorialized in any amendment to

the Master Lease prior to Hilco's retention herein, for purposes of calculating the Restructured Master Lease Savings Fee attributable to such Pre-Petition Restructured Lease Savings, the applicable Restructured Master Lease Savings Percentage shall be two and one-half percent (2.5%).

(2) In the event there is Deferred Rent under a Master Lease as a result of a Rent Modification Order, and such Master Lease later becomes a Restructured Master Lease, the Restructured Master Lease Savings Percentage shall be two and one-half percent (2.5%) for any Deferred Rent that is subsequently waived and/or reduced pursuant to a Restructured Master Lease. For the avoidance of doubt, Hilco shall not be entitled to a Restructured Master Lease Savings Fee solely on account of the deferral of rent pursuant to a Rent Deferral Order.

(3) In the event there is Modified Rent under a Master Lease as a result of a Rent Modification Order, and such Master Lease later becomes a Restructured Master Lease, the Restructured Master Lease Savings Percentage shall be two and one-half percent (2.5%) of the difference between the Restructured Lease Savings of such Restructured Master Lease and the Modified Rent, provided that such amount is a positive number. For the avoidance of doubt, Hilco shall not be entitled to a Restructured Master Lease Savings Fee solely on account of the rent modified pursuant to a Rent Modification Order.

vi) "Restructured Lease Savings" means an amount equal to the net savings created by a Restructured Lease or Restructured Master Lease, including (without limitation) the sum of (x) the aggregate reduction of base rent, percentage rent, CAM, real estate taxes, insurance, and deferred maintenance or maintenance obligations (including clean up) payable under a lease (exclusive of term shortening), and (y) the aggregate amount of any tenant improvement allowance dollars secured, minus any restructuring, termination or similar fees paid by the Company to the counterparty to the leased property, or any other party, in connection with the Restructured Lease or Restructured Master Lease. Where term is extended and the rent during such extended period is not specifically fixed or calculable within a leased property, Restructured Lease Savings shall be based on the last year's rent immediately prior to the extended period under a leased property. The Company and Hilco shall mutually agree upon which Leases Hilco shall attempt to negotiate Lease extension arrangements prior to any such extension arrangements being deemed Restructured Lease Savings. For the avoidance of doubt, lease options are not included in Restructured Lease Savings.

vii) Percentage of sales calculation. To the extent the Company's rents under certain Restructured Leases or Restructured Master Leases are converted to a percentage of sales or revenue, the Company and Hilco shall agree in good faith to an appropriate sales projection on a portfolio basis for the period of such savings to determine Hilco's Restructured Lease Savings Fee and/or Restructured Master Lease Savings Fee. By way of example, the Company and its advisors reasonably project 2020 sales from September-December equal to 50% of 2019 sales, 2021 sales to be 70% of 2019 sales and 2022 sales to be 90% of 2019 sales. These aforementioned projections will

be used to calculate Hilco's Restructured Lease Savings when compared to the scheduled lease rents for each such Restructured Lease and/or Restructured Master Lease converted to a variable or percentage of sales structure.

viii)    "Term Shortened Lease" means any Lease for which the Company, or any assignee or designee thereof (including, if applicable, any purchaser in a Bankruptcy Sale Process), enters into a written agreement with the applicable landlord, which agreement shall provide the Company with an early termination right or have the effect of shortening the term of such Lease. The Company and Hilco shall mutually agree upon which Leases Hilco shall attempt to negotiate Lease termination and/or term shortening agreements prior to any such Leases being deemed Term Shortened Leases.

ix)  "Term Shortened Lease Fee" means for any Term Shortened Lease an amount equal to one-half (1/2) of one (1) month of gross rent under such Term Shortened Lease. To the extent a Lease is both a Restructured Lease and/or a Restructured Master Lease and a Term Shortened Lease, any lease savings attributable to the shortening of a Restructured Lease or Restructured Master Lease term shall be excluded from the calculation of the applicable Restructured Lease Savings Fee or Restructured Master Lease Savings Fee, and Hilco shall only be entitled to receive the applicable Term Shortened Lease Fee on account of such Restructured Lease or Restructured Master Lease term shortening.

b) <u>Restructuring</u>.  For each Lease that becomes a Restructured Lease or Restructured Master Lease, Hilco shall earn a fee equal to the Restructured Lease Savings Fee or Restructured Master Lease Savings Fee, as applicable, which shall be earned and payable in a lump sum upon the entry of an order of the Bankruptcy Court approving the assumption or rejection of such Lease or Master Lease pursuant to section 365 of the Bankruptcy Code, which order may be (i) an order approving an assignment to any acquirer of the applicable Leases or Master Leases (or any portion thereof), including through a purchase of the Company's or a portion of the Company's assets to such acquirer (whether through a credit bid, plan of reorganization, 363 sale, or otherwise), directly or indirectly through designation rights (collectively, a "Bankruptcy Sale Process") or (ii) an order confirming a chapter 11 plan of reorganization.

c) <u>Term Shortening</u>.  For each Lease that becomes a Term Shortened Lease, Hilco shall earn a fee equal to the Term Shortening Fee, which shall be earned and payable in a lump sum upon the entry of an order of the Bankruptcy Court approving the assumption of such Lease pursuant to section 365 of the Bankruptcy Code, which order may be (i) an order of the Bankruptcy Court approving the assignment to any acquirer of the applicable Leases (or any portion thereof), including through a purchase of the Company's or a portion of the Company's assets to such acquirer, whether through a Bankruptcy Sale Process or otherwise, or (ii) an order confirming a chapter 11 plan of reorganization.

d) <u>Free and Clear</u>.  All fees payable to Hilco hereunder shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties.

6) <u>Initial Fee</u>. The Company shall pay Hilco an initial fee of $50,000, which shall be due and payable within three (3) business days of entry of the Retention Order (the "Initial Fee"). The Initial Fee shall be offset against earned Restructured Lease Savings Fees, Restructured Master Lease Savings Fee (to the extent applicable), and Term Shortening Fees at a rate of $.25 on the dollar; <u>provided</u>, <u>further</u>, <u>however</u>, in no event shall Hilco have any obligation to refund any portion of the Initial Fee.

7) <u>Expenses</u>. All Expenses (defined below) shall be borne by the Company, and Hilco shall be entitled to reimbursement from the Company for all Expenses. Billing shall be monthly and invoices are due not later than thirty (30) days after the date of invoice. "Expenses" means all reasonable, documented (through receipts or invoices) out-of-pocket expenses incurred by Hilco in connection with its performance of its Services hereunder, including, without limitation: reasonable expenses of advertising, marketing, coach travel and transportation, including, the cost of out-of-town travel and postage and courier/overnight express fees and other mutually agreed upon expenses incurred in connection with performing the services required by this Agreement.

8) <u>Survival</u>. Within fifteen (15) calendar days after termination of this Agreement, Hilco shall provide the Company with a list of all third parties, including landlords (each, a "Prospect") that Hilco has engaged in negotiations with respect to the Leases covered hereunder. If within one hundred twenty (120) days after the expiration of the Term of this Agreement, or any extension thereof agreed to in writing by the Company and Hilco, the Company, or any assignee or designee thereof (including any purchaser in a Bankruptcy Sale Process), and any Prospect should enter into a written agreement covered by this Agreement, incorporating deal terms that are identical or reasonably similar to terms that were negotiated and/or proposed by Hilco in connection with the Leases, Hilco shall be entitled to a fee calculated in accordance with the terms of this Agreement.

9) <u>Hilco and Company Covenants</u>. In consideration of this Agreement, Hilco agrees to utilize commercially reasonable efforts and diligence to achieve the purpose of this Agreement. Hilco shall conduct all negotiations on behalf of the Company in a professional and businesslike manner and in accordance with the Company's and its officers', representatives' and counsel's reasonable instructions. The Company agrees to cooperate reasonably with Hilco and to make available to Hilco such information as Hilco reasonably requests, including true and correct copies of the Leases, all information relating to occupancy-related expenses for the Leases and related correspondence.

10) <u>Confidentiality</u>. Hilco acknowledges that information furnished or made available by the Company, its employees or representatives to Hilco and its employees or representatives relating to the Leases and the business or affairs of the Company is confidential and is the property of the Company. During and after the term of this Agreement, Hilco will not disclose any such information to any person or use any such information for any purpose other than the performance of its obligations hereunder, in each case, without the prior written consent of the Company.

11) <u>Assignment; Successors and Assigns.</u>   Neither party may assign its rights or delegate any of its obligations hereunder without the prior written consent of the other party; provided, however, if the Company is the subject of a bankruptcy process, the Company shall use its commercially reasonable best efforts to assign its rights and obligations hereunder to an assignee or purchaser of the Leases(s) pursuant to section 363 and/or 365 of the Bankruptcy Code (as defined herein) or otherwise. For the avoidance of doubt, if a purchaser of the Company's or a portion of the Company's assets (whether through a Bankruptcy Sale Process or otherwise) acquires the Leases (or any portion thereof), directly or through designation rights, and enters into an agreement (in connection with such purchase) for a Lease that incorporates deal terms that are identical or reasonably similar to terms that were negotiated and/or proposed by Hilco in connection with such Lease, then Hilco shall be entitled to the Restructured Lease Savings Fee, Restructured Master Lease Savings Fee (as applicable), Term Shortening Fee, and any other fees due under this Agreement with respect to such Leases, and such fee shall be paid by the Company, or, in the event such assignee or purchaser assumes this Agreement and the Company's obligations hereunder, by the assignee or purchaser.  Subject to that limitation, this Agreement shall be binding upon and shall inure to the benefit of each party and its successors and assigns.

12) <u>Indemnification.</u>

   a) The Company shall indemnify Hilco and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) the Company's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement and (ii) the fraud, negligence (including omissions) or willful misconduct of the Company, its officers, directors, employees, agents or representatives; provided, however, upon the Company's commencement of a Bankruptcy Case:

      i.   subject to the provisions of subparagraphs (ii) and (iii) below, the Company is authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, Hilco in accordance with this Agreement for any claim arising from, related to, or in connection with the services provided for in this Agreement;

      ii.  notwithstanding subparagraph (i) above or any provisions of this Agreement to the contrary, the Company shall have no obligation to indemnify Hilco or provide contribution or reimbursement to Hilco (A) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Hilco's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (B) for a contractual

dispute in which the Company alleges the breach of Hilco's contractual obligations if the Bankruptcy Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003), or (C) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clause (a) above, but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which Hilco should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement, as modified by an order of the Bankruptcy Court authorizing Hilco's employment in the Bankruptcy Case; and

iii. if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Bankruptcy Case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Bankruptcy Case, Hilco believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution and/or reimbursement obligations under this Agreement, as modified by an order of the Bankruptcy Court approving Hilco's employment pursuant to this Agreement, including without limitation the advancement of defense costs, Hilco must file an application therefore in the Bankruptcy Court, and the Company may not pay any such amounts to Hilco before the entry of an order by the Bankruptcy Court approving such payment. This subparagraph (iii) is intended only to specify the period during which the Bankruptcy Court shall have jurisdiction over any request by Hilco for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Company's obligation to indemnify.

b) Hilco shall indemnify the Company and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by the Company, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) Hilco's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement and (ii) the fraud, negligence (including omissions) or willful misconduct of Hilco, its officers, directors, employees, agents or representatives.

12) <u>General Provisions</u>.

a) The Company and Hilco shall deal with each other fairly and in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

b)  In the event the Company commences a Bankruptcy Case under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with the Bankruptcy Court, the Company shall promptly file an application under section 327 and 328 of the Bankruptcy Code, in form and substance reasonably acceptable to Hilco, authorizing the Company's entry into this Agreement, which the Company agrees to use its reasonable efforts to obtain (the "Retention Order").  The Company will use its reasonable efforts to ensure that such order shall specifically provide that: (i) Hilco is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by the Company; (ii) the payment of all fees and reimbursement of expenses hereunder to Hilco shall be free and clear of all liens, claims and encumbrances; (iii) all such payments of fees and reimbursement of expenses hereunder shall be the Company's responsibility and be made without further order of the Bankruptcy Court; and (iv) Hilco is not required to maintain time records or file interim fee applications.

c)  The Company recognizes and acknowledges that the services to be provided by Hilco pursuant to this Agreement are, in general, transactional in nature, and Hilco will not be billing the Company by the hour or maintaining time records. It is agreed that Hilco is not requested or required to maintain such time records and that its compensation will be fixed on the percentages set forth herein.

d)  Any correspondence or required notice shall be addressed as follows:

|  |  |
|---|---|
| If to Hilco: | Hilco Real Estate, LLC |
| | 5 Revere Drive |
| | Suite 206 |
| | Northbrook, Illinois 60062 |
| | Tel.     (847) 504-2462 |
| | Email: sbaker@hilcoglobal.com |
| | Attn:   Sarah Baker |
| | |
| If to the Company: | Ruby Tuesday, Inc. |
| | 333 East Broadway Avenue |
| | Maryville, Tennessee  37804 |
| | Tel.     (   )   - |
| | Email: slederman@rubytuesday.com |
| | Attn:   Shawn Lederman |
| | |
| with a copy to: | Pachulski Stang Ziehl & Jones LLP |
| | 10100 Santa Monica Blvd. |
| | 13th Floor |
| | Los Angeles, California  90067 |
| | Tel.     (310) 277-6910 |
| | Email:  mpagay@pszjlaw.com |
| | Attn:   Malhar S. Pagay |

e) This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

f) By executing or otherwise accepting this Agreement, the Company and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

g) The construction, validity and interpretation of this Agreement will be governed by the internal law of the State of Illinois, without regard to any choice of law principle that might otherwise result in the application of the law of any other jurisdiction. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other in respect of any matter arising out of or in connection with this Agreement.

h) This Agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

i) The parties hereto agree, and the Company hereby expressly acknowledges, that Hilco has not guaranteed the Company any return or results with respect to the services to be provided.

j) This Agreement constitutes the entire agreement between the Company and Hilco and supersedes all prior discussions, negotiations, understandings, representations, and agreements, whether oral or written. This Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of the parties to this Agreement.

k) If either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs actually incurred.

l) After the commencement of the Bankruptcy Case, Hilco may use the Company's name on Hilco's representative client lists, in any advertisements, publications or as a reference.

\*       \*       \*

IN WITNESS WHEREOF, the Company and Hilco have executed and delivered this Agreement as of the date first above written.

**RUBY TUESDAY, INC.**

By: _____

Title  CEO

Date  October 9, 2020

**HILCO REAL ESTATE, LLC**

By:    Sarah Baker

Title: VP & AGC, Managing Member

Date:    October 9, 2020

**EXHIBITS REDACTED**