# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC, *et al.*,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION TO APPROVE PROCEDURES FOR DE MINIMIS ASSET TRANSACTIONS AND ABANDONMENT OF DE MINIMIS ASSETS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state the following in support of this motion (the "Motion").

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2] A detailed description of the Debtors and their business and the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc. in Support of First Day Pleadings* [Docket No. 3] (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on October 7, 2020 (the "Petition Date").

**Relief Requested**

1.  By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the Debtors to implement expedited procedures to: (a) sell, or transfer certain assets, collections of assets, or business lines, including any rights or interests therein (collectively, the "De Minimis Assets") in any individual transaction or series of related transactions (each, a "De Minimis Asset Transaction") to a single buyer or group of related buyers with an aggregate sale price equal to or less than $1,750,000.00 as calculated within the Debtors' reasonable discretion, free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens"), without the need for further Court approval and with Liens attaching to the proceeds of such sale or transfer with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to the sale, or transfer; or (b) abandon a De Minimis Asset up to the value of $100,000.00 to the extent that a sale thereof cannot be consummated at a value greater than the cost of liquidating such De Minimis Asset and; (c) pay those reasonable and necessary fees and expenses (if any) incurred in connection with the sale or transfer of De Minimis Assets, including, but not limited to, commission fees to agents, brokers, auctioneers, and liquidators with the amount of proposed commission fees to be paid to be disclosed in the Transaction Notice (as defined herein).[3]

**Jurisdiction**

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[3] The Debtors will not pay fees and expenses of estate-retained professionals in connection with such use, or sale, transfer, however, other than in accordance with any orders entered by the Court.

*Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "<u>Amended Standing Order</u>"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363, and 554 of title 11 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6007 and 9006 of the Federal Rules of Bankruptcy Procedure, and Local Rule 6004-1.

**Background**

5. The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

6. These chapter 11 cases are procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b). No party has requested the appointment of a trustee or examiner in these chapter 11 cases and no official committee of unsecured creditors has been appointed in these cases as of this time.

3

7. As part of their ordinary course of operations, the Debtors review asset performance with respect to their properties. In situations where an asset is underperforming or where the Debtors no longer need an asset, the Debtors will seek to divest the asset to realize value where possible. In some instances, where no reasonable sale is economically feasible, the Debtors may seek to abandon an asset to relieve their estates of the expense of maintaining such asset.

8. Through this Motion, the Debtors seek to streamline the process for asset sales and asset abandonment provided the asset values do not exceed a certain threshold. The Motion also proposes certain notice requirements intended to protect parties' interests with respect to such assets.

## De Minimis Asset Transactions

9. The Debtors seek approval of certain procedures that will, to the extent necessary, authorize the Debtors to sell or transfer certain assets outside the ordinary course of business with a transaction value equal to or less than $1,750,000.00. In addition, the Debtors seek approval of certain procedures that would govern abandonment of certain assets of little or no use to the Debtors' estates.

10. In certain circumstances, the Debtors have a limited window of time in which they may enter into or take advantage of opportunities to sell, transfer, or otherwise monetize De Minimis Assets. The cost and delay and publicity associated with seeking individual Court approval of each De Minimis Asset Transaction could eliminate or substantially diminish the economic benefits of the transactions. Thus, the Debtors propose the De Minimis Asset

4

Transaction Procedures (as defined below) and the De Minimis Asset Abandonment Procedures (as defined below) to permit the Debtors to dispose of De Minimis Assets in a cost-efficient manner and to allow more expeditious and cost-effective review of certain De Minimis Asset Transactions by interested parties, while at the same time protecting the rights of creditors and other parties in interest.

**De Minimis Asset Transaction Procedures**

11. The Debtors propose to sell or transfer each of the De Minimis Assets on the best terms available, taking into consideration the exigencies and circumstances in each such transaction under the following procedures (the "<u>De Minimis Asset Transaction Procedures</u>"):

   a. With regard to the sales or transfers of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a total transaction value as calculated within the Debtors' reasonable discretion, less than or equal to $1,750,000.00:

      i. the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interest of the estates, without further order of the Court, subject to the procedures set forth herein;

      ii. any such transactions shall be, without need for any action by any party, final and fully authorized by the Court and may be, as provided in the documentation governing the applicable transaction, final and free and clear of all Liens with such Liens attaching only to the proceeds of such transactions with the same validity, extent, and priority as immediately prior to the transaction;

      iii. the Debtors shall give written notice of such transaction substantially in the form attached hereto as **Exhibit B** (each notice, a "<u>Transaction Notice</u>") to (i) counsel to Goldman Sachs Specialty Lending Group, L.P. (as administrative and collateral agent), Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq., soneal@cgsh.com);

5

(ii) counsel to TCW Direct Lending, Paul Hastings LLP, 515 S. Flower St., 25th Floor, Los Angeles, CA 90071, Attn: Justin Rawlins, Esq., justinrawlins@paulhastings.com; (iii) counsel to any statutory committee appointed in these cases; (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer, Esq., Linda.Richenderfer@usdoj.gov; (v) any party asserting a Lien on or interest in the relevant De Minimis Assets and their counsel, if known; and (vi) those parties requesting notice pursuant to Bankruptcy Rule 2002 (each, a "<u>Transaction Notice Party</u>" and collectively, the "<u>Transaction Notice Parties</u>"), after which the Transaction Notice Parties shall have ten (10) calendar days to object to such sale (the "**Initial Objection Period**");

iv. the content of the notice sent to the Transaction Notice Parties for the applicable sale of De Minimis Assets shall consist of: (a) identification of the De Minimis Assets being sold, or transferred; (b) identification of the Debtor that directly owns the De Minimis Assets; (c) identification of the purchaser of the De Minimis Assets; and (d) any other significant terms of the sale or transfer;

v. if the terms of a proposed sale or transfer are materially amended after transmittal of the Transaction Notice but prior to the applicable deadline of any Transaction Notice Parties' right to object to such sale of the De Minimis Assets, the Debtors will send a revised Transaction Notice (the "<u>Amended Transaction Notice</u>") to the Transaction Notice Parties, after which the Transaction Notice Parties shall have (a) the number of days remaining in the Initial Objection Period plus (b) an additional five (5) calendar days, to object to such sale (the "**Amended Objection Period**");

vi. any objections to any such transaction must (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; (d) be filed electronically with the Court, and (e) be served on (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn: Richard M. Pachulski and Malhar S. Pagay, mpagay@pszjlaw.com, and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: James E. O'Neill, joneill@pszjlaw.com; (ii) counsel to Goldman Sachs Specialty Lending Group, L.P. (as administrative and collateral agent), Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq., soneal@cgsh.com);

(iii) counsel to TCW Direct Lending, Paul Hastings LLP, 515 S. Flower St., 25th Floor, Los Angeles, CA90071, Attn: Justin Rawlins, Esq., justinrawlins@paulhastings.com; (iv) counsel to any statutory committee appointed in these cases; and (v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer, Esq., Linda.Richenderfer@usdoj.gov so as to be received on or before 4:00 p.m., prevailing Eastern Time on or before 4:00 p.m., prevailing Eastern Time on the tenth (10th) calendar day after receipt of such Transaction Notice;

    vii. if no written objections are filed by the Transaction Notice Parties after the expiration of the Initial Objection Period or the Amended Objection Period, as applicable (the "Transaction Notice Period"), the Debtors are authorized to consummate such transaction immediately;

    viii. if a written objection is received from a Transaction Notice Party within the Transaction Notice Period that cannot be resolved, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be sold upon withdrawal of such written objection or further order of the Court specifically approving the sale or transfer of the De Minimis Asset(s); and

    ix. good faith purchasers of assets pursuant to these De Minimis Asset Transaction Procedures shall be entitled to the protections of section 363(m) of the Bankruptcy Code.

12. To the extent that De Minimis Assets cannot be sold at a price greater than the cost of liquidating such asset that is no longer needed for the Debtors' operations, the Debtors seek authority to abandon De Minimis Assets in accordance with the following procedures (the "De Minimis Asset Abandonment Procedures"):

    a. For Assets that the Debtors believe, as calculated within the Debtors' reasonable discretion, have a value of less than or equal to $100,000.00:

        i. the Debtors shall give written notice of the abandonment substantially in the form attached hereto as **Exhibit C** (each notice, an "Abandonment Notice") to the Transaction Notice Parties;

ii. the Abandonment Notice shall contain (a) a description in reasonable detail of the De Minimis Assets to be abandoned, including the projected book value of the assets being abandoned as reflected in the Debtors' books and records, if reasonably ascertainable; (b) the identities of parties known to the Debtors as holding Liens on the De Minimis Assets, if any; (c) the identification of the Debtor entity that directly owns the De Minimis Assets; and (d) the Debtors' reasons for such abandonment;

iii. any objections to the abandonment of any De Minimis Asset must (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; (d) be filed electronically with the Court, and (e) be served on (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn: Richard M. Pachulski and Malhar S. Pagay, mpagay@pszjlaw.com, and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn: James E. O'Neill, joneill@pszjlaw.com; (ii) counsel to Goldman Sachs Specialty Lending Group, L.P. (as administrative and collateral agent), Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal, Esq., soneal@cgsh.com); (iii) counsel to TCW Direct Lending, Paul Hastings LLP, 515 S. Flower St., 25th Floor, Los Angeles, CA 90071, Attn: Justin Rawlins, Esq., justinrawlins@paulhastings.com; (iv) counsel to any statutory committee appointed in these cases; and (v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Richenderfer, Esq., Linda.Richenderfer@usdoj.gov , so as to be received on or before 4:00 p.m., prevailing Eastern Time on the tenth (10th) calendar day after receipt of such Abandonment Notice;

iv. if no written objections from any of the Transaction Notice Parties are filed with the Court within ten (10) calendar days after the date of receipt of such Abandonment Notice, then the Debtors are authorized to immediately proceed with the abandonment; and

v. if a written objection from any Transaction Notice Party is filed with the Court within ten (10) calendar days after receipt of such Abandonment Notice, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be abandoned upon withdrawal of such written objection

or further order of the Court specifically approving the abandonment or transfer of the De Minimis Asset(s).

13. Additionally, upon request, the Debtors will provide a written report to the Court, the U.S. Trustee, counsel to any statutory committee appointed in these cases, the agent under the post-petition debtor in possession financing facility, and those parties requesting notice pursuant to Bankruptcy Rule 2002, beginning with the calendar quarter ending on December 31, 2020, and each calendar quarter thereafter, no later than 30 days after the end of each such calendar quarter, concerning any De Minimis Asset Transactions consummated during the preceding calendar quarter pursuant hereto, including the names of the purchasing parties and the types and amounts of the transactions.

14. The Debtors submit that the establishment of the foregoing procedures is desirable and in the best interests of the Debtors' estates, their creditors, and other parties in interest in these chapter 11 cases. The sale of the De Minimis Assets will generate additional value and help preserve existing value for the benefit of the Debtors' estates and all parties in interest. These procedures will promote an efficient administration of these chapter 11 cases, make De Minimis Asset Transactions cost effective, and expedite the sale or transfer of more valuable assets in a manner that will provide the most benefit to the Debtors' estates and creditors.

DOCS_LA:331905.4 76136/001

**Basis for Relief**

I. **The De Minimis Asset Transaction Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code.**

15. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir.1992) (approval of section 363(b) sale is appropriate if good business reasons exist for such sale); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991); *In re Trans World Airlines, Inc.*, Case No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001).

16. The Debtors submit that the De Minimis Asset Transaction Procedures reflect a reasonable exercise of their business judgment. Courts generally will accord significant deference to a debtor's business judgment to use or sell assets outside the ordinary course of business. *See In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for

10

that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law."). Requiring the Debtors to file a motion with the Court each time the Debtors seek to dispose of relatively insignificant, non-core assets would distract from their restructuring efforts and force the Debtors to incur unnecessary costs that would reduce whatever value might be realized from the sale of De Minimis Assets. In addition, the De Minimis Asset Transaction Procedures afford those creditors with an interest in the De Minimis Assets the opportunity to object to their sale or transfer and obtain a hearing if necessary, and the relief requested will not apply to sales of De Minimis Assets to "insiders," as that term is described in section 101(31) of the Bankruptcy Code.

## II. The De Minimis Asset Transaction Procedures Are Appropriate Under Section 363(f) of the Bankruptcy Code.

17. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f).

18. The Debtors propose to sell or transfer the De Minimis Assets in a commercially reasonable manner and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the property sold. The Debtors further propose that any party with a Lien on De Minimis Assets sold or transferred pursuant to this Motion shall have a corresponding security interest in the proceeds of such sale or transfer; provided, however, that

11

the sales of De Minimis Assets shall be subject to any rights of approval or procedures as may be required pursuant to any debtor in possession financing approved through the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of the Bankruptcy Code and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing* [Docket No. 51] (the "DIP Financing Motion"). Moreover, the Debtors propose that the absence of objection to the entry of the Order approving this Motion along with the absence of objection under the De Minimis Asset Transaction Procedures, as applicable, in each case following the provision of notice, be deemed "consent" to any sales or transfers pursuant to the Order within the meaning of section 363(f)(2) of the Bankruptcy Code. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of Liens.

**III.    Sales or Other Divestitures of De Minimis Assets Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

19. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). "Although the Bankruptcy Code does not define the meaning of 'good-faith

12

purchaser,' most courts have adopted a traditional equitable definition: one who purchases the assets for value, in good faith and without notice of adverse claims." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal citations omitted). The Third Circuit has held that"[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of [purchaser's] conduct in the course of the sale proceedings." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal citations omitted). Typically, the misconduct that would destroy a purchaser's good faith status involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 56 (7th Cir. 1983) (emphasis omitted) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m)). The Debtors submit that any agreement that results in the sale or divestiture of De Minimis Assets will be an arm's-length transaction entitled to the protections of section 363(m).

**IV. The De Minimis Asset Abandonment Procedures Are Appropriate Under Section 554(a).**

20. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The Debtors expect to take all reasonable steps to sell De Minimis Assets not needed in their operations. The costs associated with sales of certain De Minimis Assets, however, may exceed any possible proceeds thereof. The inability to consummate a commercially reasonable sale of De Minimis Assets

13

would indicate that these Assets have no meaningful monetary value to the Debtors' estates. Further, the costs of storing and maintaining such De Minimis Assets may burden the Debtors' estates so abandonment of such De Minimis Assets pursuant to the Abandonment Procedures is in the best interest of the Debtors' estates. Accordingly, the Debtors contend that, in such circumstances, the abandonment of De Minimis Assets pursuant to the Abandonment Procedures is in the best interest of the Debtors' estates.

**V.       This Court and Others Have Approved Similar Procedures.**

21.     In light of the demonstrable benefits of streamlined procedures to sell and abandon De Minimis Assets and the legal justifications described above, courts in this Circuit and others have approved procedures similar to the De Minimis Asset Transaction Procedures in large chapter 11 cases. *See, e.g.*, *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Dec. 6, 2019) (authorizing sales up to $2 million); *In re Quicksilver Res. Inc.*, No. 15-10585 (Bankr. D. Del. Apr. 14, 2015) (authorizing sales up to $2.5 million); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. Jun. 3, 2014) (authorizing sales up to $5 million); *In re Flying J, Inc.*, No. 08-13384 (Bankr. D. Del. Feb. 19, 2009) (authorizing sales up to $5 million); *In re Sears Holdings Corporation*, Case No. 18-23538 (RDD) (authorizing the abandonment of assets with a book value less than $15 million on seven days' notice); *In re iHeartMedia, Inc*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. June 21, 2018) (authorizing procedures for the sale and abandonment of assets with a book value less than $15 million on ten days' notice); *In re Cenveo, Inc*, Case No. 18-22178 (RDD) (Bankr. S.D.N.Y. March 8, 2018) (authorizing procedures for the abandonment of assets with a book value less than $300,000 on

seven days' notice and no advance notice if book value is less than $500,000); *In re NII Holdings, Inc.*, Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2014) (authorizing abandonment of assets with a book value less than $250,000 and no advance notice if book value is less than $50,000); *In re Lehman Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.NY. Jun. 17, 2009) (authorizing abandonment of assets (without a cap) that, in debtors' business judgment, are not necessary to their winding down, are of inconsequential value to their estates, or for which the costs associated with a sale exceed the proceeds that would be generated from such sale, on five days' notice).[4]

22. As this Court and other courts have recognized, the usual process of obtaining Court approval of each De Minimis Asset Transaction: (a) would impose unnecessary administrative burdens on the Court and usurp valuable Court time at hearings; (b) would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions; and (c) in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time. On the other hand, the De Minimis Asset Transaction Procedures and the De Minimis Asset Abandonment Procedures will monetize otherwise unusable assets, protect the Debtors against the possible declining value of certain De Minimis Assets, save the Debtors interim holding or storage costs, eliminate certain administrative costs, and expedite the sale of De Minimis Assets for the benefit of the Debtors' estates. Accordingly, the Court should approve the proposed De Minimis Asset Transaction Procedures and the De Minimis Asset Abandonment Procedures.

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

## Waiver of Bankruptcy Rule 6004(a) and 6006(h)

23. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

24. Nothing contained in this motion or any actions taken pursuant to any order granting the relief requested by this motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law, or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

25. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); (c) the Debtors' fifty largest unsecured creditors on a consolidated basis; (d) the United States Attorney's Office for the District of Delaware; and (e) any party requesting notice pursuant to Bankruptcy Rule 2002(a). The Debtors respectfully submit that no other or further notice is necessary.

**No Prior Request**

26. No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully requests that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: October 23, 2020  */s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email: rpachulski@pszjlaw.com
mpagay@pszjlaw.com
joneill@pszjlaw.com

[Proposed] Counsel to the Debtors and Debtors in Possession