010803

# L E A S E

THIS LEASE, made as of the 27th day of January, 2003, by and between EVELYN W. MCDANIEL and KYLE W. MCDANIEL, hereinafter called "Lessor," whose mailing address is 808 Laurie Street, Maryville, Tennessee 37803, and RUBY TUESDAY, INC., 150 West Church Avenue, Maryville, Tennessee 37801, a Georgia corporation, hereinafter called "Ruby Tuesday."

W I T N E S S E T H :

1. **PREMISES**:

In consideration of the rents, covenants and agreements hereinafter set forth, Lessor does hereby demise and lease to Ruby Tuesday, and Ruby Tuesday does hereby take and hire from Lessor, the Real Property located at 216 Church Street, Maryville, County of Blount, and State of Tennessee, containing approximately 11,681 square feet of land, and any and all improvements which now are or which shall be situated on said real property, but specifically excluding any and all underground storage tanks which storage tanks shall remain the property of the Lessor (the "Real Property") together with all rights, easements and appurtenances thereunto belonging or appertaining (collectively referred to herein as the "Leased Premises"), said Leased Premises being those more fully described in Exhibit "A" attached hereto and made a part hereof by reference.

2. **TERM**:

The term of this Lease shall commence on that date which is thirty (30) days following the date Ruby Tuesday notifies Lessor that Ruby Tuesday has obtained the final re-zoning or zoning variance for the Property to permit Ruby Tuesday to use the Property for the purposes determined by Ruby Tuesday and Ruby Tuesday has acquired those permits (building or otherwise) which will allow Ruby Tuesday to make such improvements to the Property as determined by Ruby Tuesday

(herein Commencement Date). This Lease shall terminate twenty (20) years from the Commencement Date, provided however, Ruby Tuesday shall have the right at the expiration of each five (5) years of the term to terminate and cancel this lease upon sixty (60) days notice to the Lessor following the expiration of each five (5) year period. In the event Ruby Tuesday has not obtained the zoning or permits referred to herein within 90 days following the date of this Lease, then either party may terminate this Lease.

3. RENTAL:

Ruby Tuesday shall pay to Lessor at Lessor's address shown above, or at such other address as Lessor may from time to time designate in writing, a fixed annual rental of Twenty-One Thousand and No/100 Dollars ($21,000.00), payable in equal consecutive monthly installments of One Thousand Seven Hundred Fifty and No/100 Dollars ($1,750.00). Each such monthly installment shall be due and payable in advance on the first day of each calendar month during the original term of this Lease and any renewal term. Rent shall increase at the expiration of each five (5) years of the term by ten percent (10%).

4. TAXES AND ASSESSMENTS:

Lessor shall pay all real estate taxes, including penalties and interest for tax years preceding the Commencement Date of this Lease. Lessor shall also pay all special assessments which are a lien on the Real Property on the Commencement Date of this Lease, whether or not such assessments are past due, then due or are thereafter to become due and any assessments or charges which are for improvements then installed, or which are then known but which will be payable in whole or in part after the Commencement Date.

Ruby Tuesday agrees to pay to the appropriate governmental agencies all other real property taxes, assessments, impositions, or all other claims or charges (herein collectively called the "taxes") which may constitute or may be reduced to a lien upon the Real Property, including but not limited to, water charges and sewer charges, before the same shall become delinquent. All such payments for the first and last year of the original term or any renewal terms shall be prorated between Lessor and Ruby Tuesday so that Ruby Tuesday shall be responsible for that portion of the taxes which is attributable to the

original term and any renewal term. Ruby Tuesday's tax obligation shall commence on the Commencement Date hereof. In the event there is included in the taxes any special assessment or assessment which may be paid in installments, unless otherwise directed by written notice from Ruby Tuesday, Lessor shall advise the appropriate governmental agency of its intention to elect payments in installments thereof, and Ruby Tuesday shall pay such installments as shall be due and payable during the original term or any renewal term, regardless of when such installment was assessed.

Lessor will notify Ruby Tuesday in writing of any taxes which Ruby Tuesday is required to pay in accordance with the provisions of this Section. Such notification shall be furnished to Ruby Tuesday not less than twenty (20) days before the date such taxes are due and shall be accompanied by a copy of the tax bill. Any taxes which Ruby Tuesday is required to pay shall be paid by it no later than the date on which such taxes are due unless the notification by Lessor is received by Ruby Tuesday less than twenty (20) days before the date on which such taxes are due, in which event Ruby Tuesday shall pay such taxes within twenty (20) days after the date of such notification, and Lessor shall be responsible for the payment of any penalties, interest or other charges imposed upon delinquent payment of taxes.

If Ruby Tuesday fails to pay any taxes which it is required to pay within the time period provided above, Lessor may, at its option, pay said taxes, together with any and all penalties and said amount shall become immediately due and payable as additional rent.

Ruby Tuesday shall have the right in its own name, or in Lessor's name where appropriate, but at its own cost and expense, to contest by appropriate proceedings the amount or legality of any taxes which it is obligated to pay hereunder and make application for the reduction thereof, or any assessment upon which the same may be based, and the Lessor agrees, at the request of Ruby Tuesday, to execute or join in the execution of any instruments or documents necessary in connection with such contest or application. If Ruby Tuesday shall contest such tax assessment, or other imposition, provided the payment of such taxes may legally be held in abeyance, the time within which Ruby Tuesday shall be required to pay the same shall be extended until such contest or application shall have been finally determined, except that Ruby Tuesday shall be responsible for any

penalty imposed by the taxing authority resulting from the late payment of taxes due to said contest.

In no event shall Ruby Tuesday be liable for payment of any income, estate or inheritance taxes imposed upon Lessor or the estate of Lessor. Ruby Tuesday shall not pay any income, franchise, excise, sales, taxes assessed by any taxing authority on the rental income received by the Lessor, or excess profits tax levied upon, required to be collected by, or assessed against Lessor.

5. INSURANCE:

Lessee hereby covenants and agrees at all times during the original term of this Lease and any renewal term to maintain and keep in force comprehensive general liability insurance against all claims for personal injury, death, or property damage occurring on the Leased Premises with minimum limits of liability of One Million Dollars ($1,000,000) per person, One Million Dollars ($1,000,000) per occurrence, and One Million Dollars ($1,000,000) property damage. In addition, Ruby Tuesday shall, during the term of this Lease, maintain all property insurance, including insurance on the building for the full replacement value. Ruby Tuesday shall provide Lessor a certificate of insurance and shall name Lessor an additional insured as Lessor's interest may appear.

6. ALTERATIONS:

During the original term or any renewal term of this Lease, Ruby Tuesday may make alterations, additions and improvements to the Leased Premises without the consent of Lessor, and Ruby Tuesday shall have the right to erect and install such other or additional improvements, and equipment on the Leased Premises as Ruby Tuesday may, in its sole judgment, deem desirable for conducting its business thereon or for such other business as Ruby Tuesday may deem advisable. Notwithstanding the foregoing, access to the underground storage tanks will not be obstructed.

7. LIENS PERMITTED:

Ruby Tuesday shall have the right at any time to grant a security interest in any goods and property of every type and description owned by Ruby Tuesday, and installed or kept on the Leased Premises. Lessor hereby consents to any such security interest and disclaims any interest of any kind in

any goods and property installed or kept on the Leased Premises. Lessor agrees that it will, within ten (10) days after any written request by Ruby Tuesday, confirm the foregoing consent and disclaimer in writing.

8.  USE AND OCCUPANCY:

Ruby Tuesday shall use and occupy the Leased Premises in a careful, safe and proper manner, and will not occupy or use said premises or permit the same to be occupied or used for any purpose or business which is unlawful and will comply with all lawful requirements of all valid laws, ordinances, rules and regulations of all governmental authorities pertaining to the use and occupancy of the Leased Premises. Nothing contained herein shall require Ruby Tuesday to continuously operate any business in the Leased Premises. Further, the parties hereby expressly waive any law or the like which would require continuous operation of a business from the Leased Premises.

9.  SURRENDER OF PREMISES:

Ruby Tuesday will deliver up and surrender possession of the Leased Premises to Lessor upon the expiration of this Lease, any renewal or extension hereof, or its termination in any way in the condition and state of repair then existing, provided, however, that Ruby Tuesday shall have the right to remove all trade fixtures and equipment therefrom.

10. DEFAULT BY RUBY TUESDAY:

If Ruby Tuesday shall fail to pay any installment of rent promptly on the day the same shall become due and payable hereunder, and such failure shall continue for a period of forty-five (45) days after receipt by Ruby Tuesday of written notice thereof from Lessor, or if Ruby Tuesday shall fail to keep and perform promptly any other affirmative covenant of this Lease, in accordance with the terms of this Lease and such failure shall continue for a period of sixty (60) days after receipt by Ruby Tuesday of written notice thereof from Lessor, the Lessor may, at its sole option: (a) declare this Lease to be terminated, and enter into the Leased Premises or any part thereof, with process of law, and expel Ruby Tuesday or any person occupying the same in or upon said premises, and repossess and enjoy the Leased Premises as in Lessor's former estate

in which event Ruby Tuesday may remove from the Leased Premises all of the personal property, and all of Ruby Tuesday's obligations hereunder shall be terminated; or (b) relet the Leased Premises, applying the rent collected from the new tenant to the rent due under this Lease, provided, however, Ruby Tuesday shall at all times for the term of this Lease remain responsible for the difference between the rent actually collected from the new tenant and the rent due under this Lease. However, if the default cannot, with due diligence, be cured prior to the expiration of sixty (60) days from the date of receipt of the notice provided for above, and if Ruby Tuesday commences within sixty (60) days after the date to eliminate the cause of such default and proceeds diligently and with reasonable dispatch to take all steps and do all work required to cure such default, then Lessor shall not have the right to declare this Lease terminated by reason of such default.

11. **WARRANTY OF TITLE BY LESSOR:**

Lessor hereby warrants, represents and covenants to Ruby Tuesday that: (a) at the time of the execution by Lessor of this Lease and until this Lease or other instrument giving constructive notice of this Lease is recorded, Lessor is the sole owner in fee simple absolute of the Leased Premises and has the right to grant any easements referred to in this Lease; (b) at the time of the execution by Lessor of this Lease and until this Lease or other instrument giving constructive notice of this Lease is recorded, Lessor has good and marketable fee simple title to the Leased Premises free and clear of all liens and encumbrances except taxes not yet due and payable and other exceptions to title which have been approved in writing by Ruby Tuesday; (c) Lessor does warrant and will defend the title to the Leased Premises and any easements referred to in this Lease, and will indemnify Ruby Tuesday against any damage and expense which Ruby Tuesday may suffer by reason of any lien, encumbrance, restriction or defect in the title or description herein of the premises; and (d) Lessor has full right and power to execute this Lease and to lease the Leased Premises and to deliver the easements referred to in this Lease for the term provided in this Lease. In case Lessor does not have the title and rights aforesaid, then in such event, in addition to any other rights of Ruby Tuesday, this Lease shall, at the option of Ruby Tuesday, become null and void, and no rent for the remainder of the term aforesaid shall become due to the Lessor, its legal

representatives or assigns, and all advance rents and other payments shall be returned by the Lessor to Ruby Tuesday, or Ruby Tuesday may withhold rent thereafter accruing until Ruby Tuesday is furnished proof satisfactory to Ruby Tuesday as to the parties entitled to receive rent.

12. QUIET ENJOYMENT:

Lessor hereby covenants and agrees that if Ruby Tuesday shall not then be in default beyond any period for the cure thereof, Ruby Tuesday shall, at all times during the original term of this Lease and any renewal term, have peaceable and quiet enjoyment and possession of the Leased Premises without any manner of let or hindrance from the Lessor or any other person, firm or corporation.

13. ENVIRONMENTAL MATTERS:

A. Definitions

For the purposes hereof, the following definitions shall apply:

(1) "Law or Regulation" means and includes the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA" or the Federal Superfund Act) as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA") 42 U.S.C., Sections 9601-9675; the Federal Resource Conservation and Recovery Act of 1876 ("RCRA"); the Clean Water Act, 33 U.S.C., Section 1321, et seq.; the Clean Air Act, 42 U.S.C., Section 7401, et seq., all as the same may be from time to time amended and any other federal, state, county, municipal, local or other statute, law, ordinance or regulation which may relate to or deal with human health or the environment, including, without limitation, all regulations promulgated by a regulatory body pursuant to any such statute, law or ordinance.

(2) "Hazardous Substance or Materials" means asbestos, ureaformaldehyde, polychlorinated biphenyls, nuclear fuel or materials, chemical waste, radioactive materials, explosives, known carcinogens, petroleum products or other dangerous, toxic, or hazardous pollutant, contaminant, chemical, material or substance defined as hazardous or as a pollutant or contaminant in, or the release or disposal of which is regulated by, any Law or Regulation.

B. Representations and Warranties

(1) To the best of Lessor's knowledge, Lessor represents and warrants that:

(A) The Leased Premises presently are not and never have been utilized for the storage, manufacture, disposal, handling, transportation or use of any Hazardous Substances, or as a landfill.

(B) There are no past or present investigations, administrative proceedings, litigation, regulatory hearings or other action proposed, threatened or pending, alleging non-compliance with or violation of any Law or Regulation or relating to any required environmental permits. Lessor has not, nor has any third party, violated any Law or Regulation.

(C) The Leased Premises are not listed in the United States Environmental Protection Agency's National Priorities List of Hazardous Waste Sites nor any other list, schedule, log, inventory or record of hazardous waste sites maintained by any state, federal or local agency.

(D) Lessor has disclosed to Ruby Tuesday all reports and investigations commissioned by Lessor and relating to Hazardous Substances and the Leased Premises.

(E) There exists no natural conditions or restrictions of any type that restrict the full potential development of the property by Ruby Tuesday, including, but not limited to, wetlands; flood plain; coastal zone designation or otherwise "environmentally sensitive areas"; radon, naturally occurring radioactivity; availability of public water and/or sewer; storm water management; moratorium on building; or any other natural condition or restriction.

(2) All representations and warranties herein contained shall be deemed to be continuing and shall survive the expiration or early termination of the Lease.

14. BROKERS:

Lessor represents and warrants that all brokerage charges, if any, in connection with this Lease shall be paid by Lessor. Lessor shall indemnify and hold Ruby Tuesday harmless for any claims made against Ruby Tuesday by any broker acting or claiming to act on behalf of Lessor. The indemnifications and hold harmless provisions of this paragraph include, but are not limited to, court costs, reasonable attorney fees and other professional fees and

expenses, including the cost of any appeals.

15. APPROPRIATION:

If all or any part of the Leased Premises shall be appropriated or condemned by any public or quasi-public authority in the exercise of its right of condemnation or eminent domain, both Ruby Tuesday and Lessor shall have the right to prosecute a claim for an award as state law may provide.

16. ESTOPPEL INSTRUMENTS:

At any time and from time to time upon the written request of either of the parties hereto or any Mortgage Lender, Lessor or Ruby Tuesday, as the case may be, shall deliver to the party requesting the same a certificate executed in recordable form stating (i) whether or not this Lease is in full force and effect, (ii) whether or not any rights to renew the term of this Lease have been exercised and the date on which this Lease will terminate, (iii) whether or not this Lease has been modified or amended in any way and attaching a copy of such modification or amendment, (iv) whether or not there are any existing defaults under this Lease to the knowledge of the party executing the certificate, and specifying the nature of such defaults, if any, (v) the status of rent payments and (vi) any other facts regarding the operation of the Lease which the Mortgage Lender may reasonably request.

17. ASSIGNMENT; SUBLETTING AND FRANCHISING BY RUBY TUESDAY:

Ruby Tuesday shall have the right to assign this Lease or let or underlet the whole or any part of the Leased Premises without the consent of Lessor, provided that Ruby Tuesday remains liable on this Lease. Notwithstanding any provision to the contrary, Ruby Tuesday shall be released from its obligations under this Lease if the assignee of this Lease has a net worth of at least $25 Million Dollars based upon a recent audited financial statement.

18. RIGHT OF FIRST REFUSAL:

From and after the effective date and during the term of this Lease hereof, Ruby Tuesday shall have the right of first refusal and Lessor shall not sell, transfer or

otherwise dispose of all or part of Lessor's interest in the Leased Premises until and unless Lessor shall have: (a) obtained a bona fide offer therefor; (b) given notice to Ruby Tuesday, which notice shall contain (i) the name of the offeror, (ii) the address of the offeror, (iii) all of the terms and conditions of such bona fide offer, and (iv) a true and accurate copy of the actual bona fide offer ("Lessor's Notice"); and (c) offered to sell, transfer or otherwise dispose of such interest to Ruby Tuesday at the same price and, except as hereinafter provided, upon the same terms and conditions contained in said bona fide offer.

If Ruby Tuesday shall either give notice of rejection of said offer to it or fail to give notice of acceptance of the same within thirty (30) days after the date of receipt of Lessor's Notice, Lessor's interest in the Leased Premises may, during the ninety (90) days thereafter, be sold, transferred or otherwise disposed of to the original offeror at the same price and upon the same terms and conditions contained in said bona fide offer as disclosed in writing to Ruby Tuesday.

In the event Ruby Tuesday rejects said offer or fails to accept the same, this Lease and all of its terms and conditions (including this right of first refusal and including the right of first refusal set forth in Section 30) shall nevertheless remain in full force and effect and Lessor and any purchaser or purchasers of the Leased Premises shall be bound thereby.

Failure of Ruby Tuesday to exercise this right of first refusal on one or more occasions shall not affect Ruby Tuesday's right to exercise it on any subsequent occasion. Any sale or transfer of the Leased Premises, or any part thereof, other than in strict compliance with the terms of this section shall be absolutely null and void and of no effect as to Ruby Tuesday, and Ruby Tuesday shall be entitled to purchase the Leased Premises from the purchaser upon the same terms and conditions and at the same price specified in said bona fide offer, provided Ruby Tuesday notifies Lessor of its election thirty (30) days after receipt of Lessor's Notice which complies with the requirements hereof. Payment of rental to such purchaser or otherwise treating such purchaser as the Lessor shall not be deemed to be a waiver of any right of first refusal or any other right or privilege of Ruby Tuesday and shall not create an estoppel with respect thereto.

Any sale or transfer of Lessor's interest in the Leased Premises, or any part thereof, or of any larger parcel of which the Leased Premises may be a part, shall be expressly made subject to all of the terms, covenants and conditions of this Lease. Notwithstanding anything contained herein to the contrary, in the event said offer provides for the sale and purchase of Lessor's interest in the Leased Premises and other property, Ruby Tuesday shall be required to purchase all of the property contained in said offer, in the event it desires to exercise its right of first refusal hereunder.

In the event Ruby Tuesday exercises its right of first refusal then, notwithstanding the terms of the offer (a) Lessor shall convey title by general warranty deed approved by Ruby Tuesday and the title company; (b) title to the Leased Premises shall be free and clear of any liens and encumbrances except the lien for current taxes which are not delinquent at the time of closing and such other exceptions to title as have been agreed to in writing by Ruby Tuesday, (c) title to the Leased Premises shall otherwise comply with the terms of this Lease as they pertain to condition of title, and (d) any easements or other rights benefiting the Leased Premises at the time of closing shall be made perpetual and shall be included in the deed or in a separate recordable instrument approved by Ruby Tuesday and the title insurance company insuring its interest.

19. **ATTORNEY'S FEES:**

In the event of any suit, action or proceeding at law or in equity, by either of the parties hereto against the other by reason of any manner or thing arising out of this Lease, the prevailing party shall recover, not only its legal costs, but a reasonable attorney's fee (to be figured by the Court) for the maintenance or defense of said action or suit, as the case may be.

20. **FORCE MAJEURE:**

Lessor and/or Ruby Tuesday shall be excused for the period of any delay and shall not be deemed in default with respect to the performance of any of the terms, covenants, and conditions of this Lease when prevented from so doing by cause or causes beyond the Lessor's and/or Ruby Tuesday's control, which shall include, without limitation, all labor disputes, governmental regulations or controls, fire or other casualty, inability to obtain any material, services, acts of God, or any other cause, whether similar or

dissimilar to the foregoing, not within the control of the Lessor and/or Ruby Tuesday.

21. <u>NON-MERGER</u>:

During the term of this Lease, the leasehold estate of Ruby Tuesday shall not merge with the fee simple or other estate in the Leased Premises but shall always remain separate and distinct, notwithstanding the union of all or any part of said estate either in the Lessor or Ruby Tuesday, or in a third party by purchase or otherwise, unless and until all persons having an interest therein, including a leasehold mortgagee, shall join in a written instrument consenting to or effecting such merger.

22. <u>RECORDABLE LEASE</u>:

Lessor agrees that upon request from Ruby Tuesday, Lessor will promptly execute and deliver to Ruby Tuesday a memorandum or short form lease (hereinafter "Memorandum of Lease"), prepared by Ruby Tuesday, to be recorded in the public office in which records relating to the Leased Premises are kept and take such other and further action as may be necessary to give all persons now or hereafter interested in title to the Leased Premises notice of the existence of this Lease, including such terms and provisions as Ruby Tuesday deems appropriate, provided, however, that unless specifically requested by Ruby Tuesday, no copy of this Lease or other instrument shall be filed for record which sets forth the rental provisions contained herein. Specifically, the Lessor agrees to execute such further documentation which may be required to insure that the renewal rights and rights of first refusal granted hereunder are recorded on title. Ruby Tuesday shall pay all costs charged by the state and county to record this Memorandum of Lease.

23. <u>CONSTRUCTION OF LEASE</u>:

Words of any gender used in this Lease shall be held to include any other gender, and words in the singular number shall be held to include the plural, when the sense requires. Wherever used herein, the words "Lessor" and "Ruby Tuesday" shall be deemed to include the heirs, personal representatives, legal representatives, successors, sublessees and assigns of said parties, unless the context

excludes such construction.

24. **INVALIDITY OF PROVISIONS:**

If any term or provision of this Lease or the application thereof to any person or circumstances shall to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

25. **SERVICE OF NOTICE:**

Notices hereunder shall be in writing signed by the party serving the same and shall be sent by Registered or Certified U. S. Mail, Return Receipt Requested, postage prepaid, or by
private express mail service, and (a) if intended for Lessor, shall be addressed to:

> ~~Evelyn W. McDaniel and~~
> ~~Kyle W. McDaniel~~
> ~~808 Laurie Street~~
> ~~Maryville, Tennessee 37803~~
>
> [handwritten: Maggie Knight / 3144 Fairoaks Dr. / Maryville, TN 37803]

and (b) if intended for Ruby Tuesday, shall be addressed to:

> Ruby Tuesday, Inc.
> Attention: Legal-Real Estate Department
> 150 West Church Avenue
> Maryville, Tennessee 37801

or to such other addresses as either party may have furnished to the other from time to time as a place for the service of Notice. Any Notice so mailed shall be deemed to have been "given" as of the time said Notice is received or refused.

26. **ESTATE IN LAND:**

It is the intention of the Lessor to create, in favor of Ruby Tuesday, a leasehold estate in land, which estate shall be vested in Ruby Tuesday from the date of execution hereof and shall continue for the full original term and all renewal terms of this Lease. Said estate in land shall be subject to divestment only by reason of Ruby Tuesday's election not to exercise its right of renewal or by reason

of the earlier termination of this Lease by one of the parties hereto in accordance with the provisions of this Lease.

27. SURVIVAL OF LEASE COVENANTS:

The terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, legal representatives, successors or assigns, and shall run with the land.

28. HEADINGS:

It is understood and agreed that the headings are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this Lease, nor in any way affect this Lease.

29. ENTIRE AGREEMENT:

This Lease contains the entire agreement between the parties and any agreement hereafter made shall be ineffective to change, modify or discharge it in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought.

30. COUNTERPARTS:

This Lease may be executed simultaneously in several counterparts, each of which will be deemed an original, but all of which together will constitute one in the same instrument.

31. HOLIDAY; NON-BUSINESS DAY; OR BUSINESS DAY:

If any date set forth in this Lease is to occur on a holiday or other non-business day, or if any period of time set forth in this Lease expires on a holiday or non-business day, then such expiration date shall be extended to the next business day thereafter. As used in this paragraph and in this Lease, the terms "holiday," "non-business day," and "business day" shall have the following meanings:

(a) "holiday" shall mean those dates upon which nationally chartered banks of the United States of America are not open for business;

(b) "non-business day" shall mean holidays and Saturday and Sunday; and

(c) "business day" shall mean any day that is not either a holiday or a non-business day.

IN WITNESS WHEREOF, the parties have caused this Lease to be executed on the date appearing together with their signatures below, but effective on the date first appearing above in this Lease.

WITNESSES:         LESSOR:

_Gretchen Prisch_         _Robert McDaniel_
                          _Evelyn W. McDaniel_

                          Date: 1-27-03

                          RUBY TUESDAY:

WITNESS:                  RUBY TUESDAY, INC.

_Frances Bailey_          By: _____

                          As Its: Chief Executive Officer

                          Date: February 12, 2003

(Acknowledgments on Following Page)

STATE OF TENNESSEE
COUNTY OF _Blount_

Personally appeared before me, _Gretchen Prigah_, a Notary Public of the above named county, Evelyn W. McDaniel and Kyle W. McDaniel, the within named bargainors with whom I am personally acquainted or proved to me on the basis of satisfactory evidence, and who acknowledged that they executed the within instrument for the purposes therein contained.

Witness my hand, at office, this _27th_ day of _January_, 200_3_.

[SEAL]

_Gretchen Prigah_
Notary Public

My Commission Expires: _8-16-04_


STATE OF TENNESSEE

COUNTY OF BLOUNT

Before me, _Sue B. Coley_, a Notary Public, of the state and county above mentioned, personally appeared _Samuel E. Beall, III_, with whom I am personally acquainted, and who, on oath, acknowledged himself to be _Chief Executive Officer_ of Ruby Tuesday, Inc., the within named bargainor, a Georgia corporation, and that he, as such _Chief Executive Officer_, executed the foregoing agreement for the purposes therein contained, by signing the name of the corporation by himself as _Chief Executive Officer_.

Witness my hand and seal, at office in Blount County, Tennessee, this _12th_ day of _February_, 200_3_.

[SEAL]

_Sue B. Coley_
Notary Public

My Commission Expires: _11-01-04_

EXHIBIT A

## DRAWING OR DESCRIPTION OF LEASED PREMISES

## EXHIBIT A

SITUATE in District No. 9 of Blount County, Tennessee, and in the Third Ward of the City of Maryville, and being located on the south corner of the intersection of Church Street and College Avenue in said City, and more particularly described as follows, to-wit:

BEGINNING on a marble monument on the southeast side of Church Street near the north corner of the old livery stable building; thence with Church Street, South 38-½ deg. West 132.6 feet to an iron pin on Church Street, corner to Irma Gamble which point is 57 feet from the inside of the rock wall on Court Street; thence with Irma Gamble, South 50-½ deg. East 170 feet to an iron pin on the line of the Old Town Commons; thence with the Old town Commons, North 38-½ deg. East 140.5 feet to a point on the inside of the rock and concrete retaining wall on College Avenue; thence with said wall, North 50-½ deg. West 123 feet to a point on college Avenue at a slight turn in the sidewalk; thence with said sidewalk along College Avenue in a northwesterly direction 47.5 feet to a point on the Southeast edge of Church Street opposite the beginning point, thence South 38-½ deg. West 5 feet to the BEGINNING.

THE ABOVE DESCRIBED description embraces Lot NO. 7 and Lot No. 8 of the Original Plan of the City of Maryville, and also two narrow strips of land, one lying on the Northeast of Lot No. 7 and the other lying on the Southeast of Lots Nos. 7 and 8.

THERE is excepted from the above described property a certain tract of land described in the Declaration of Taking by Maryville Housing Authority (No. 9225 in the Circuit Court for Blount County, Tennessee) and recorded in Misc. Book Record Book 36, Page 82 in the Register's Office for Blount County, Tennessee.