## AMENDMENT TO LEASE AGREEMENT

**FILED**

This Amendment to Lease Agreement ("**Agreement**") is made on October __, 2020, by and between Schlangen Properties, LLC ("**Landlord**"), and Ruby Tuesday, Inc. ("**Tenant**"), collectively referred to herein as the "**Parties**," and each, a "**Party**," with reference to the following facts:

2020 NOV -3 AM 8:56

DISTRICT OF DELAWARE

WHEREAS, Landlord and Tenant (or their respective predecessors in interest, as applicable) entered into that certain Lease Agreement dated 12/21/2017 (as amended and modified, the "**Lease**"), related to the location at 1936 N. JACKSON ST., TULLAHOMA, TN 37388 (as further described in the Lease, the "**Premises**"); and

WHEREAS, due to government regulated closures and restrictions affecting the Premises resulting from the COVID-19 pandemic beginning around March 2020, the Parties wish to amend the Lease in accordance with the terms set forth herein;

WHEREAS, Tenant filed for Chapter 11 Bankruptcy protection in the United States Bankruptcy Court for the District of Delaware on October 7, 2020, and bearing Case Number 20-12457 (the "**Chapter 11 Bankruptcy**");

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Landlord and Tenant hereby agree as follows:

1. <u>Gross Rent Abatement</u>: Landlord shall waive, forgive, and abate all base rent, all additional rent(s), and any other amounts due (including, without limitation, insurance, taxes, Tenant's Common Area Maintenance costs, etc.) under the Lease for all periods prior to Tenant's filing of the Chapter 11 Bankruptcy, through and including February 28, 2021.

    1. *Prior Rent Deferment Void.* If Landlord and Tenant, prior to this Agreement, entered into an agreement in which Tenant agreed to pay, and Landlord agreed to accept, any rents on a deferred payment schedule (the "**Rent Deferral**"), such Rent Deferral is null and void and of no further effect.

    2. <u>Gross Rent Payments</u>: Commencing on March 1, 2021 and continuing through February 28, 2023 (the "**Gross Rent Period**"), Landlord and Tenant have agreed that Tenant shall pay gross rent ("**Gross Rent**") to Landlord in an amount equal to __ percent (5.00%) of Gross Sales. Tenant shall calculate and provide a Gross Sales report to Landlord on the fifteenth (15•) of each month. To calculate Gross Rent, which shall be due on the first (1•) of each month, Landlord and Tenant shall use the Gross Sales report provided on the fifteenth (15•) of the prior month. During the Gross Rent Period, Tenant shall not be responsible for the payment of any Base Rent, Additional Rent, Percentage Rent, Tenant's pro rata share of Taxes, Common Area Maintenance Costs, Insurance, Promotional Funds Charges, or any other similar costs or expenses under the lease.

3.  **Base Rent and Payments**: Following the conclusion of the Gross Rent Period as described herein, Landlord and Tenant have agreed to adjust the Base Rent payable by Tenant to Landlord for the period described below (the **"Base Rent Modification Period"**) payable by Tenant to Landlord as follows:

| Term Period | Base/Minimum Rent (Monthly) | Base/Minimum Rent (Annually) |
|---|---|---|
| 3/1/23 thru 2/28/26 | $6,635.50 | $79,626 |

1. *Percentage Rent is Void.* To the extent the Lease contains a percentage rent clause, such clause and any obligations of payment by Tenant to Landlord thereunder shall be null and void and of no further effect during the Base Rent Modification Period described above.

4.  **Limited Scope of Amendment**. To the extent the Lease extends beyond February 28, 2026, the above-outlined provisions, including the Gross Rent Period, and Base Rent Modification Period included above, shall cease and no longer control, as of March 1, 2026. Commencing on March 1, 2026, the original terms of the Lease shall govern until the end of the Lease term, subject to any renewal options exercised by Tenant.

5.  **Renewal Terms**: Landlord agrees Tenant shall retain its existing Renewal Term(s) set forth in the Lease with the first or next (as applicable) Renewal Term to begin upon the expiration of the above-described Extended Term, and any subsequent Renewal Terms to begin upon the expiration of the immediately preceding Renewal Term. Tenant may exercise each such Renewal Term by delivering to Landlord written notice of its election to renew in accordance with the Lease.

6.  **Validity Under Chapter 11 Bankruptcy**: The Parties hereby acknowledge and agree that notwithstanding the date on which the Parties execute this Agreement, for all purposes, the Lease, as amended by this Agreement, shall be deemed to be an unexpired lease of nonresidential real property entered into before the commencement of Tenant's Chapter 11 Bankruptcy, and all of Tenant's obligations under the Lease shall be prepetition obligations and subject to all rights and defenses of Tenant as a Debtor in the Chapter 11 Bankruptcy, including all rights afforded to Tenant to assume, assume and assign, or reject the Lease under Section 365 of Chapter 11 of Title XI of the United States Code (the **"Bankruptcy Code"**), and all rights and remedies. This Agreement shall only be effective upon the entry of an order (the **"Assumption Order"**) confirming the assumption of the Lease under Sections 363 and/or 365 of the Bankruptcy Code. Tenant's execution of this Agreement is not, and shall not, be construed as an assumption of the Lease in the Chapter 11 Bankruptcy or an obligation of Tenant to assume the Lease in the Chapter 11 Bankruptcy. Notwithstanding the foregoing, the Parties agree to abide by the terms of this Agreement immediately upon execution of this Agreement unless and until the Lease is rejected. If the Lease is rejected, any administrative expense claims of Landlord under the Lease (i) shall be calculated as if this Agreement had never been entered into; and (ii) shall be reduced by any post-petition payments made by Tenant under the Lease. Landlord acknowledges that this

Agreement constitutes adequate assurance of future performance under the Lease and that no additional adequate assurance shall be required.

7.  **Waiver of Default and Forbearance**: Landlord waives any Tenant or guarantor default or event of default under the Lease or any guaranty existing as of the date of this Agreement. Landlord agrees that no such default or event of default shall be deemed to have caused or cause the loss of any options or rights of Tenant under the Lease which may be contingent upon no prior defaults by Tenant, such as, rights to renew or extend the term of the Lease, rights to expand or reduce the premises covered by the Lease, rights of termination, rights for tenant improvement allowance for the premises, rights of first offer or rights of refusal, or any similar right. Furthermore, Landlord shall forbear from exercising its rights and remedies under the Lease as a result of Tenant's (i) failure to pay any of the sums due and owed under the Lease during the months of April through October, 2020; and (ii) the Chapter 11 Bankruptcy. Such Landlord forbearance shall include, but not be limited to any Landlord right to terminate the Lease, and any such notice of termination previously delivered by Landlord to Tenant, if any, is null and void, and of no force and effect.

8.  **Consent**: Landlord and Tenant each represents and warrants that it has duly obtained the consent of any third party required for entering into this Agreement, including, but not limited to, consent from any mortgagee. Each of Landlord and Tenant shall indemnify, defend, protect, and hold the other party harmless from and against any and all losses, liabilities, damages, claims, judgments, fines, suits, demands, costs, interest and expenses of any kind or nature (including reasonable attorneys' fees and disbursements) incurred in connection with any claim, proceeding, or judgment and the defense thereof, which the indemnified party may incur by reason of any claim of or liability in connection with the representations of such party contained in this section being false.

9.  **Commission**: Each of Landlord and Tenant represents and warrants to the other that it has not dealt with any broker in connection with this Agreement other than Hilco Real Estate, LLC, Tenant's broker, and _____, Landlord's broker, and that, to the best of its knowledge, no other broker negotiated this Agreement or is entitled to any fee or commission in connection herewith. Each party shall pay any commission due to its respective broker pursuant to a separate agreement, and subject to approval of any necessary court. Each of Landlord and Tenant shall indemnify, defend, protect, and hold the other party harmless from and against any and all losses, liabilities, damages, claims, judgments, fines, suits, demands, costs, interest and expenses of any kind or nature (including reasonable attorneys' fees and disbursements) incurred in connection with any claim, proceeding, or judgment and the defense thereof which the indemnified party may incur by reason of any claim of or liability to any broker, finder, or like agent (other than Hilco Real Estate, LLC and _____) arising out of any dealings claimed to have occurred between the indemnifying party and the claimant in connection with this Agreement, or the above representation being false. The provisions of this section shall survive the expiration or earlier termination of the term of the Lease.

10. **Conflicts**: In the event of a conflict or ambiguity between the Lease and this Agreement, the terms of this Agreement shall control.

11.     <u>Counterparts</u>: This Agreement may be: (i) executed in several counterparts, each of which when executed and delivered shall be deemed an original, and all of which together shall constitute one instrument; and (ii) delivered by original, facsimile, email, or other electronic means, and any Party delivering in such a manner shall be legally bound.

Except as expressly modified by this Agreement, all terms set forth in the Lease are hereby ratified and confirmed. This Agreement shall be binding upon and shall inure to the benefit of the Parties' respective successors and assigns.

12.     The landlord rejects Ruby Tuesday's proposal to rent abatement, deferral, and percentage rent as written above. The Landlord proposes one of three options to the tenant for their location in Tullahoma, TN as follows:
a.      The tenant continues to operate and pays agreed upon rent in original lease of $92,000 annually with 10% increases every 5 years. The tenant continues to pay all property taxes, CAM, insurance, and all costs associated with operating their business
b.      The tenant (Ruby Tuesday's) leaves the property immediately. The tenant is liable for all past due rent and full rent through the day the tenant vacates property. The tenant is liable for all property taxes, CAM, and insurance through the day the tenant vacates the property.
c.      The Landlord is willing to allow the tenant to continue to operate and will reduce the rent amount to $6,000/month. The tenant will be responsible for all property taxes, CAM, and insurance while under operation. The Landlord reserves to the right to terminate the tenant at any time with a 30 day notice and tenant is required to comply and cease operations within 30 days of Landlord notice.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS HEREOF**, the Parties have executed this Agreement effective as further described herein.

For Landlord:
**Schlangen Properties, LLC**

_____*[signature]*_____
Signature

_____Kevin Schlangen_____
Print Name

_____President_____
Title


For Tenant:
**RUBY TUESDAY, INC.**

_____
Signature

_____
Print Name

_____
Title