## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No.: 20-12456 (JTD) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |

---

## DEBTORS' CHAPTER 11 PLAN

---

Dated:  November 6, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (DE Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:    rpachulski@pszjlaw.com
           mpagay@pszjlaw.com
           joneill@pszjlaw.com
           vnewmark@pszjlaw.com

Counsel for the Debtors and Debtors in Possession

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

# TABLE OF CONTENTS

**Page**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME,  GOVERNING LAW AND DEFINED TERMS ............................................................................ 3

    A.    Rules of Interpretation, Computation of Time and Governing Law ...................... 3

    B.    RSA; Consent Rights Required ................................................................... 3

    C.    Defined Terms ...................................................................................... 4

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS,  DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS ................................................................................. 23

    A.    Administrative Expense Claims .................................................................. 23

    B.    Professional Fee Claims ........................................................................... 24

    C.    DIP Facility Claims ................................................................................. 25

    D.    Priority Tax Claims ................................................................................. 26

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS ................................................................................. 27

    A.    Summary ............................................................................................. 27

    B.    Elimination of Vacant Classes ................................................................... 28

    C.    Classification and Treatment of Claims and Equity Interests .............................. 28

        1.    Class 1 – Non-Tax Priority Claims .................................................. 28
        2.    Class 2 – Miscellaneous Secured Claims ............................................ 28
        3.    Class 3 – Prepetition Secured Debt Claims ......................................... 29
        4.    Class 4 – General Unsecured Claims ................................................ 30
        5.    Class 5 – Preserved Intercompany Claims ......................................... 31
        6.    Class 6 – Extinguished Intercompany Claims ...................................... 31
        7.    Class 7 – Dissenters Claims .......................................................... 31
        8.    Class 8 – Equity Interests in Holding ............................................... 31
        9.    Class 9 – Intercompany Interests .................................................... 32
    D.    Special Provision Governing Claims Related to Assumed Executory Contracts or Unexpired Leases and Unimpaired Claims ...................................................... 32

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................. 32

    A.    Presumed Acceptance of Plan ................................................................... 32

ii

B.    Voting Classes ................................................................................. 32

C.    Acceptance by Impaired Classes of Claims and Equity Interests ......................... 32

D.    Cramdown; Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code  33

E.    Continuing Susceptibility to Claim Objection; Solicitation in Good Faith .......... 33

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................... 33

A.    General Settlement of Claims ................................................................. 33

B.    Corporate Existence ........................................................................... 34

C.    Vesting of Assets .............................................................................. 34

D.    Exit L/C Facility ............................................................................... 35

E.    Exit Term Loan Facility ...................................................................... 36

F.    Exit Facility .................................................................................... 36

G.    Management Incentive Plan .................................................................. 37

H.    Issuance of New Common Shares, and Related Documentation ......................... 38

I.    Substantive Consolidation for Plan Purposes ............................................. 39

J.    Release of Liens, Claims and Equity Interests ............................................ 39

K.    Amended Organizational Documents ....................................................... 40

L.    Directors and Officers of Reorganized Debtors and RT Lodge Company ........... 40

M.    Corporate Action .............................................................................. 41

N.    Cancellation of Notes, Certificates and Instruments ..................................... 42

O.    Cancellation of Existing Instruments Governing Security Interests .................... 43

P.    Preserved Intercompany Claims; Intercompany Interests; Corporate
      Reorganization; Liquidation of Certain Debtors .......................................... 44

Q.    Restructuring Transactions .................................................................. 45

R.    Consenting Lenders Fees and Expenses ................................................... 45

S.    Asset Sales Postpetition ...................................................................... 45

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................................................................................. 47

    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases ......... 47

    B.     Assignment of Executory Contracts or Unexpired Leases ................................... 48

    C.     Rejection of Executory Contracts or Unexpired Leases ...................................... 48

    D.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 49

    E.     Objections to Assumption, Assignment or Cure of Executory Contracts or Unexpired Leases ............................................................................................... 50

    F.     Post-Effective Date Management Agreements ..................................................... 50

    G.     Director and Officer Insurance Policies ............................................................... 50

    H.     Indemnification Provisions ................................................................................. 51

    I.     Compensation and Benefit Programs ................................................................... 51

    J.     Workers' Compensation Benefits ........................................................................ 51

    K.     Insurance Policies ............................................................................................... 52

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 52

    A.     Distributions for Claims Allowed as of the Effective Date ................................. 52

    B.     Distributions on Account of Claims Allowed After the Effective Date ............... 52

         1.    Payments and Distributions on Disputed Claims .................................... 52
         2.    Special Rules for Distributions to Holders of Disputed Claims. .............. 53
         3.    The Disputed General Unsecured Claims Reserve. ................................. 53

    C.     Delivery and Distributions and Undeliverable or Unclaimed Distributions ......... 53

         1.    Record Date for Distributions ................................................................. 53
         2.    Delivery of Distributions in General ....................................................... 54
         3.    Distributions by Distribution Agents ...................................................... 54
         4.    Minimum Distributions ........................................................................... 55
         5.    Undeliverable Distributions .................................................................... 55

    D.     Compliance with Tax Requirements/Allocations ................................................ 56

    E.     Timing and Calculation of Amounts to Be Distributed ....................................... 57

    F.     Setoffs ................................................................................................................ 57

    G.     Surrender of Canceled Instruments or Securities ................................................ 58

H.       Lost, Stolen, Mutilated or Destroyed Securities ................................................... 58

ARTICLE VIII. PROCEDURES CONCERNING CONTINGENT,  UNLIQUIDATED AND
          DISPUTED CLAIMS ........................................................................................ 58

A.       Rights of Reorganized Debtors with Respect to Allowance of Claims and Equity
          Interests ............................................................................................................... 58

B.       No Distributions to Holders of Disputed Claims or Equity Interests Pending
          Resolution of the Dispute..................................................................................... 59

C.       Resolving Disputed Claims and Equity Interests.................................................. 59

          1.       Generally..................................................................................................... 59
          2.       Estimation ................................................................................................... 60
D.       Distributions after Allowance of Disputed Claims or Equity Interests ................ 60

ARTICLE IX. CONDITIONS PRECEDENT TO  CONSUMMATION OF THE PLAN .......... 60

A.       Conditions Precedent to Consummation................................................................ 60

B.       Waiver of Conditions ............................................................................................ 62

C.       Notice of Effective Date ....................................................................................... 62

D.       Effect of Non-Occurrence of Conditions to Consummation ................................. 62

ARTICLE X. EFFECT OF CONFIRMATION; AND RELEASE,  INJUNCTION AND
          RELATED PROVISIONS ................................................................................ 62

A.       Compromise and Settlement .................................................................................. 62

B.       Mutual Release by the Debtors and Released Parties ........................................... 64

C.       Releases by Holders of Claims and Interests ....................................................... 65

D.       Exculpation ........................................................................................................... 66

E.       Injunctions............................................................................................................. 66

          1.       Confirmation Date Injunction ..................................................................... 66
          2.       Effective Date Injunctions .......................................................................... 66
F.       Protection against Discriminatory Treatment ....................................................... 67

G.       Reimbursement or Contribution ........................................................................... 68

H.       Recoupment .......................................................................................................... 68

I.       Waiver of Certain Avoidance Actions................................................................... 68

J. Preservation of Rights of Action.............................................................. 68

  1. Maintenance of Causes of Action ............................................ 68
  2. Preservation of All Causes of Action Not Expressly Settled or Released 69

ARTICLE XI. BINDING NATURE OF PLAN .......................................................... 69

ARTICLE XII. RETENTION OF JURISDICTION ................................................... 70

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................. 72

A. Dissolution of the Creditors' Committee ............................................ 72

B. Payment of Statutory Fees .................................................................. 72

C. Modification of Plan ........................................................................... 72

D. Revocation of Plan .............................................................................. 72

E. Entire Agreement ................................................................................ 73

F. Closing of Chapter 11 Cases ............................................................... 73

G. Successors and Assigns........................................................................ 73

H. Reservation of Rights........................................................................... 73

I. Further Assurances............................................................................... 74

J. Severability ......................................................................................... 74

K. Service of Documents ......................................................................... 74

L. Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ................................................................................ 76

M. Governing Law ................................................................................... 76

N. Immediate Binding Effect.................................................................... 76

O. Tax Reporting and Compliance ........................................................... 77

P. Plan Schedules .................................................................................... 77

Q. No Strict Construction ......................................................................... 77

R. Controlling Documents......................................................................... 77

---

## DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION

---

RTI HOLDING COMPANY, LLC, and its Subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), propose the following joint chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors.  Unless otherwise stated, capitalized terms used in this Plan have the meanings set forth in ARTICLE I.C of the Plan.

The Debtors determined in their best business judgment to commence chapter 11 proceedings based on a restructuring support agreement with their Prepetition Secured Creditors that provides for the possibility of recoveries to all of the Debtors' creditors and allows the Debtors to undertake the steps needed to restructure their affairs to provide a sustainable path forward for the Debtors' business.  The Debtors and the Prepetition Secured Creditors memorialized their agreement in the Restructuring Support Agreement ("RSA") attached as an exhibit to the Disclosure Statement.  This Plan incorporates the terms of the RSA; however the terms of the Confirmation Order (defined below) and then the Plan control if there is any inconsistency or ambiguity.

The Plan reflects the agreement reached among the Debtors and Prepetition Secured Creditors to follow a dual path whereby the Debtors will either reorganize via a consensual transaction that would provide for the Debtors to emerge from these chapter 11 proceedings under new ownership by the Prepetition Secured Creditors or sell their assets as a going concern.  The Debtors and the Prepetition Secured Creditors believe that the financial restructuring, the operational restructuring (through, among other things, focused lease rejections) and the other transactions reflected in the Plan would position the Reorganized Debtors and RT Lodge Company well to succeed post-emergence from bankruptcy. With a sustainable business plan and adequate operating liquidity, the Reorganized Debtors will be positioned to compete more effectively in the challenging casual dining industry.

Pursuant to the Plan, the operations of the Debtors will be bifurcated.  Specifically, all of RTI's operating assets other than RT Lodge (as such term is defined below) and interests in its subsidiaries shall be transferred to RT Asset Company, which shall be wholly-owned after the Effective Date by Holders of Allowed Subclass 3B Claims and, potentially, Allowed Subclass 3A Claims, subject to dilution.  Also, pursuant to ARTICLE III.C.3.c, the Debtors will transfer to each Holder of an Allowed Subclass 3A Claim its Pro Rata share of one hundred percent (100%) of the Equity Interests in RT Lodge Company, which shall retain the RT Lodge.

The Debtors, through their investment banker FocalPoint Securities, LLC ("FocalPoint"), will concurrently run a sales process through which, if an acceptable "Topping Bid" is received, the Debtors will sell the Assets (as defined below) pursuant to Court-approved bidding procedures.  If a Topping Bid is received and a Successful Bid is selected after the Auction for the Assets, then the Confirmation Hearing shall be the sale hearing and the Confirmation Order shall be the order approving such sale under sections 363 and/or 1123(a)(5)(D) of the Bankruptcy Code.  The Successful Bid at the Auction must provide for cash consideration at closing that is sufficient to pay all of the Prepetition Secured Debt Claims and DIP Facility Claims (other than any such Claims that have been credit bid in connection with a Successful

Bid) in cash in full on the closing date.  Upon payment of the DIP Facility Claims and Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) in full, the Restructuring described above and herein shall not occur, and the Reorganized Debtors (including, without limitation, RT Asset Company in its capacity as Distribution Agent under this Plan), will administer the Reorganized Debtors' assets and implement the Plan as a liquidating "pot" plan for the benefit of creditors.

The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, accomplishments leading up to the commencement of the Chapter 11 Cases, projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as Exhibits and Plan Schedules.  All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the terms set forth herein and in the RSA, and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its Consummation.

The Plan contemplates deemed substantive consolidation of the Debtors for voting and Plan Distribution purposes only with respect to the Claims.  If the Plan cannot be confirmed as to some or all of the Debtors, then, without prejudice to the respective parties' rights under the RSA and subject to the terms set forth herein and therein, (a) the Plan may be revoked as to all of the Debtors, or (b) the Debtors may revoke the Plan as to any Debtor and confirm the Plan as to the remaining Debtors to the extent required.  The Debtors reserve the right to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims as set forth in as set forth in ARTICLE IV.D hereof.

Notwithstanding any rights of approval that may exist pursuant to the RSA or otherwise as to the form or substance of the Disclosure Statement, the Plan or any other document relating to the transactions contemplated hereunder or thereunder, none of the Prepetition Agent, the Prepetition Secured Creditors, the Creditors' Committee (if one is appointed), or their respective officers, directors, employees, representatives, members, financial or legal advisors, or agents, has independently verified the information contained herein and/or in the Disclosure Statement or takes any responsibility therefor and none of the foregoing entities or persons makes any representations or warranties whatsoever concerning the information contained herein and/or in the Disclosure Statement.

# ARTICLE I.
# RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

## A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.   Wherever in this Plan there is a reference to the consent of the Prepetition Agent, the Prepetition Secured Creditors and/or any Creditors' Committee, or where it states that information will be delivered to the Prepetition Agent, the Prepetition Secured Creditors and/or any Creditors' Committee, such reference shall require that the Debtors communicate directly to the legal and financial advisors to the Prepetition Agent, the Prepetition Secured Creditors and/or any Creditors' Committee and such advisors shall communicate with the Prepetition Agent, the Prepetition Secured Creditors and/or any Creditors' Committee, as the case may be.

## B.    RSA; Consent Rights Required

Notwithstanding anything herein to the contrary (except as provided in ARTICLE IX.A.1 hereof), so long as the RSA has not been terminated in accordance with its terms, any and all consents and approval rights of the respective parties as set forth in the RSA with respect to (i) the form and substance of this Plan, (ii) the documents to be Filed as part of the Plan Supplement, (iii) the other Plan Documents, (iv) any other orders or documents referenced herein or otherwise to be executed in connection with the transactions contemplated hereunder, and/or (v) any other Definitive Documents (as defined in the RSA), including, in each case, any amendments, restatements, supplements, or other modifications thereto, and any consents, waivers, or other deviations under or from any such documents, shall be expressly incorporated

3

herein by this reference (including to the applicable definitions in ARTICLE I.C hereof) and fully enforceable as if stated in full herein; however (as stated above) the terms of the Confirmation Order and then the Plan control if there is any inconsistency or ambiguity.

## C.   <u>Defined Terms</u>

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein (and their plural or singular forms shall have correlative meanings):

1.   "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred on or after the Petition Date and prior to and including the Effective Date.  For the avoidance of doubt, Accrued Professional Compensation shall not include the Consenting Lenders Fees and Expenses.

2.   "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code or by order of the Bankruptcy Court, including, without limitation, (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) the Accrued Professional Compensation; (c) the Consenting Lenders Fees and Expenses; (d) the DIP Facility Claims, including, without limitation, the reasonable and documented fees and expenses of the DIP Facility Agent and the DIP Facility Lenders, including their respective reasonable and documented professional and advisory fees and expenses; and (e) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

3.   "*Administrative Expense Claims Bar Date*" means the Business Day which is thirty (30) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

4.   "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

5.   "*Allowed*" (this term is used both separately and in conjunction with other defined terms in the Plan (*e.g.*, Allowed Priority Tax Claim)) means, except as otherwise provided herein, (a) a Claim or Equity Interest specifically allowed under the terms of the Plan, (b) a Claim or Equity Interest that has been allowed by a Final Order or in a stipulation of amount and nature of the Claim or Equity Interest executed by the Reorganized Debtors and/or RT Lodge Company (as the case may be) on, or after, the Effective Date, (c) an Equity Interest or Claim as reflected by a Filed Proof of Claim that is not withdrawn or disallowed, or (d) if the Proof of Claim has not been Filed, the Claim as reflected in the Schedules if therein listed as undisputed, unliquidated and not contingent or the Equity Interest as reflected in the Schedules; provided that in the case of allowance under either subsections (c) or (d), any Claim's allowance is subject to any limitations imposed by section 502 of the Bankruptcy Code; and provided further that, for only the purpose of determining the timing of distributions pursuant to Plan,

4

allowance under subsections (c) and (d) only is applicable once any of the following occur (1) before the Claims Objection Bar Date, the Debtors, the Reorganized Debtors and RT Lodge Company have each determined not to object to the Claim, (2) the Claims Objection Bar Date passes without an objection being Filed, or (3) after the Debtors timely object to the Claim, the Claim is allowed as provided in subparagraph (a) above.

6.      *"Allowed Subclass 3A Claim"* means the allowed secured claim of GS under the Prepetition Credit and Guaranty Agreement for amounts outstanding under the Prepetition Term Loans.

7.      *"Allowed Subclass 3B Claim"* means the allowed secured claim of TCW under the Prepetition Credit and Guaranty Agreement for amounts outstanding under the Prepetition Term Loans.

8.      *"Allowed Subclass 3C Claim"* means the allowed secured claim of the Prepetition Secured Creditors for any amounts outstanding under the Prepetition Revolver (which shall be rolled up into the DIP Facility and then the Exit Facility).

9.      *"Alternative Exit Facility"* means any exit financing provided an Alternative Exit Facility Lender.

10.      *"Alternative Exit Facility Lender"* means any lender that provides exit financing on the Effective Date to RT Asset Company instead of TCW.

11.      *"Alternative Structures"* has the meaning ascribed thereto in ascribed thereto in ARTICLE V.B.

12.      *"Amended Organizational Documents"* means the new limited liability company agreement or other applicable organizational documents of RT Asset Company, which shall be Filed as an Exhibit with the Plan Supplement and which shall be consistent in all respects with the RSA (subject to ARTCLE I.B hereof), and shall otherwise be in form and substance acceptable to each Holder of the Allowed Subclass 3B Claims and each Holder of the Allowed Subclass 3A Claims (if any GS Adjustment Equity is distributed on account of such Claim).

13.      *"Assets"* means all of the right, title, and interest of a Debtor in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

14.      *"Asset Sales"* has the meaning ascribed thereto in the Prepetition Credit and Guaranty Agreement, and as referenced in the Consent Letter.

15.      *"Auction"* means any auction for the Debtors' Assets, as set forth in ARTICLE V.S.

16.      *"Avoidance Actions"* means any and all actual or potential avoidance, recovery, subordination or other claims, actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy

5

law, including, without limitation, claims, actions or remedies arising under sections 502, 510, 542-553 and 724(a) of the Bankruptcy Code.

17.    "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

18.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases.

19.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

20.    "*Bar Date*" means the deadlines set by order of the Bankruptcy Court for Filing Proofs of Claim in the Chapter 11 Cases.

21.    "*Broker's Opinion of Value*" means the estimated value of the referenced property as determined by Hilco Real Estate, LLC.

22.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a))

23.    "*Business Plan*" means the business plan that includes the initial Rejected Executory Contract / Unexpired Lease List, which has been or will be delivered by the Debtors to the Prepetition Secured Creditors pursuant to the RSA.

24.    "*Cash*" means the legal tender of the United States of America.

25.    "*Cause of Action*" means any action, proceeding, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, reduced to judgment or not reduced to judgment, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment (except to the extent that the result of including any setoff or recoupment in this definition would result in an outcome, including, by example, an impermissible discharge of setoff or recoupment rights, prohibited by otherwise applicable bankruptcy law) and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims.

6

26.    "*Chapter 11 Cases*" means, with respect to a Debtor, such Debtor's voluntary case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code, and styled *In re RTI Holding Company, LLC, et al.*, Case No. 20-12456 (JTD).

27.    "*Claim*" means any "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

28.    "*Claims Objection Bar Date*" means the first Business Day that is 240 days after the later of (x) the Effective Date, (y) the date of Filing of the subject Proof of Claim or motion or other Filing upon which the subject Claim is based, and (z) the date of notice to the Reorganized Debtors and RT Lodge Company of any such Filing; provided that (1) if the Plan expressly sets an earlier objection deadline as to any type of Claim, such deadline instead shall apply and (2) the Bankruptcy Court may fix a later date upon a motion Filed by a Reorganized Debtor or RT Lodge Company served prior to such 240th day (or the next Business Day) only on the Bankruptcy Rule 2002 service list and those Holders of Claims or Equity Interests, as scheduled or Filed at least 30 days prior to the service of such motion, as to which the right to object is sought to be preserved (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

29.    "*Claims Register*" means the official register of Claims proposed by the Debtors to be maintained by the Distribution Agent.

30.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to sections 1122(a) and 1123(a) of the Bankruptcy Code.

31.    "*Class 4 Aggregate Cash Distribution*" has the meaning ascribed thereto in ARTICLE III.C.4.b.

32.    "*Class 4 Reserve*" has the meaning ascribed thereto in ARTICLE VII.B.3.

33.    "*Collateral*" means any property or interest in property of any Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim,

34.    "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

35.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

36.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code that is in form and substance reasonably acceptable to the Debtors and the Prepetition Agent and the Prepetition Secured Creditors.

37.     *"Consent Letter"* means that certain letter agreement dated August 14, 2020, among the Debtors, the Prepetition Agent and the Prepetition Secured Creditors, as it may be amended or supplemented in writing from time to time.

38.     *"Consenting Lenders"* mean the Prepetition Secured Creditors.

39.     *"Consenting Lenders Fees and Expenses"* means the documented fees and expenses of (a) (i) Cleary Gottlieb Steen & Hamilton LLP, Hunton Andrews Kurth LLP, or Paul Hastings LLP, as counsel to certain of the Consenting Lenders, and (ii) Grant Thornton LLP, as financial advisor to the Prepetition Agent, and (c) any consultants or other professionals retained by the Consenting Lenders represented by Cleary Gottlieb Steen & Hamilton LLP, Hunton Andrews Kurth LLP, or Paul Hastings LLP in connection with the Debtors or the Restructuring Transactions with the consent of the Debtors (not to be unreasonably withheld), in each case, in accordance with the engagement letters of such consultant or professional signed by the Consenting Lenders, including any completion fees contemplated therein, and in each case, without further order of, or application to, the Bankruptcy Court; provided that the Debtors are given a general description of services performed and summary of the timekeepers and hours expended.

40.     *"Consummation"* means the occurrence of the Effective Date.

41.     *"Creditors' Committee"* means any committee of unsecured creditors in the Chapter 11 Cases appointed pursuant to section 1102 of the Bankruptcy Code.

42.     *"Debtor(s)"* means, individually, RTI Holding Company, LLC, Ruby Tuesday, Inc., and the other debtors in possession identified in footnote 1 of the Plan, in each case, in their capacities as debtors and debtors in possession in the Chapter 11 Cases.

43.     *"DIP Facility Agent"* means the administrative agent and collateral agent under the DIP Facility, and any successors thereto.  Initially, the DIP Facility Agent shall be GS.

44.     *"DIP Facility"* means that certain $18,500,000 priming secured post-petition credit facility (with superpriority liens and superpriority administrative expense claims) made available to the Debtors pursuant to the DIP Facility Loan Documents and the DIP Orders, as more fully described in ARTICLE II.C.

45.     *"DIP Facility Claim"* means any Claim of the DIP Facility Agent or any DIP Lender arising from, under or in connection with the DIP Facility.

46.     *"DIP Facility Loan Documents"* means the credit agreement governing the DIP Facility and the related notes, guarantees, security documents, and intercreditor agreement, as the case may be, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA.

47.     *"DIP Facility Lenders"* means the lenders party to the DIP Facility Loan Documents and Holders of DIP Facility Claims.  Initially, the DIP Facility Lenders shall be the Prepetition Secured Creditors.

8

48.    "*DIP Orders*" means, collectively, the Interim DIP Order and Final DIP Order, each of which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA.

49.    "*Disclosure Statement*" means that certain *Disclosure Statement for Debtors' Chapter 11 Plan*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, and which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA.

50.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement, as containing, among other things, "adequate information" as required by section 1125 of the Bankruptcy Code and solicitation procedures related thereto, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA.

51.    "*Dissenters Claims*" means the Claims of the named respondents identified in RTI's complaint (as amended from time to time) that commenced the dissenting shareholder's appraisal action styled *Ruby Tuesday, Inc. v. Cede & Co.*, designated Case No. 2018-cv-304101, which is pending in the Georgia Superior Court (Fulton County).

52.    "*Disputed*" means, with respect to a Claim, Equity Interest or any portion thereof that is not specifically Allowed under the Plan, that such Claim, Equity Interest or portion thereof:  (a) is the subject of an objection or request for estimation Filed by any of the Debtors or any other party in interest in accordance with applicable law, which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (b) has not been otherwise Allowed and is scheduled by the Debtors as contingent, unliquidated, or disputed; or (c) is otherwise disputed in an adversary proceeding or otherwise before a court of competent jurisdiction or in a consensual private dispute resolution process by any of the Debtors or any other party in interest, which dispute has not been withdrawn, resolved, or overruled by a Final Order or other applicable final determination.

53.    "*Distribution Agent*" means RT Asset Company.

54.    "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Confirmation Date or such other date as designated by an order of the Bankruptcy Court.

55.    "*D&O Liability Insurance Policies*" means the Debtors' and Reorganized Debtors' insurance policies for directors' and officers' liability.

56.    "*Effective Date*" means the Business Day as determined by the Debtors with the consent of the Prepetition Secured Creditors (which consent shall not be unreasonably withheld or delayed) that this Plan becomes effective as provided in provided in ARTICLE IX hereof, which date shall be specified in a notice Filed by the Reorganized Debtors with the Bankruptcy Court.

57.    "*Effective Date Deadline*" means the date in the Milestones that is no later than thirty (30) days after the entry of the Confirmation Order, provided that the Prepetition Secured Creditors shall consider any reasonable request by the debtors for an extension of such deadline, which may be extended after the Confirmation Date in a writing executed by the Debtors and the Prepetition Secured Creditors without further Bankruptcy Court approval.

58.    "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

59.    "*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or limited company interests, together with (a) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to such Debtor, and all rights arising with respect thereto and (b) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include:  (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights.  The term "Equity Interest" also includes any Claim that is determined to be subordinated to the status of an Equity Security by Final Order of the Bankruptcy Court, whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

60.    "*Equity Interests in Holding*" means all Equity Interests in Holding.

61.    "*Equity Interests in RTI*" means all Equity Interests in RTI.

62.    "*Equity Parent*" means NRD RT Holding, LLC, RTI Investment Company, LLC and Strategic Financial Intermediation II, LLC (collectively or individually as the case may be in context), which own collectively 100% of the Equity Interests in Holding as of the Filing of this Plan and will continue to own such Equity Interests in Holding until the Effective Date.

63.    "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

64.    "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

65.    "*Exchange Common Shares*" means the New Common Shares to be issuable by RT Asset Company on the Effective Date that shall be distributable solely to each Holder of the Allowed Subclass 3B Claims and each Holder of the Allowed Subclass 3A Claims in respect of the GS Adjustment Equity in the percentages set forth in this Plan of the aggregate amount of such shares set forth in this Plan.  For clarity, Exchange Common Shares do not include New Common Shares that may be or become issuable under the MIP, for any exercised Warrants or as otherwise permitted pursuant to the Amended Organizational Documents.

66.    "*Excluded Party*" means, any Holder of Equity Interests in or Claims against any Debtor, or any other Person, that (a) seeks any relief materially adverse to the Restructuring, (b) opts out of being a Releasing Party to any third-party releases sought in

10

connection with the Plan, (c) objects to the Plan or supports an objection to the Plan or (iv) breaches, or otherwise fails to perform its obligations under, the RSA, in each case as shall be determined by the Debtors and the Prepetition Agent and the Prepetition Secured Creditors (regarding each of them, acting cooperatively).  To the extent that a Person is deemed an Excluded Party, and such Person objects to such characterization, the Bankruptcy Court shall have final authority to determine whether such Person is an Excluded Party.

67.    "*Exculpated Party*" means, in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) RT Lodge Company; (d) the Creditors' Committee and (e) each Person that is, as to any of (a) through (d) of the foregoing, a successor or, as of any time from the Petition Date through the Consummation, an officer, director, managing member, or estate-retained (including ordinary-course) professional.

68.    "*Executory Contract*" means a contract to which any Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

69.    "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement or contained in the Plan Supplement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

70.    "*Existing Letters of Credit*" mean the standby letters of credit issued under the Prepetition Credit and Guaranty Agreement outstanding on the Effective Date.

71.    "*Exit Agent*" means TCW Asset Management Company LLC (or an affiliate thereof), as administrative agent and collateral agent under the Exit Term Loan Facility; provided that TCW and the Debtors execute the Exit Loan Agreement in accordance with the RSA and the Exit Loan Agreement is Filed as an Exhibit to the Plan Supplement.

72.    "*Exit Facility*" means the Exit L/C Facility and Exit Term Loan Facility to be provided by the Exit Lender(s) to RT Asset Company on the Effective Date.

73.    "*Exit L/C Facility*" means a new secured revolving letter of credit facility to be provided to RT Asset Company by the Exit Lender(s) upon the Effective Date pursuant to the Exit Loan Documents.

74.    "*Exit Lender(s)*" means, collectively, the lenders party to the Exit Loan Agreement.  Initially, the Exit Lender shall be TCW; provided that TCW and the Debtors agree upon the terms of the Exit Loan Agreement and the Exit Loan Agreement is Filed as an Exhibit to the Plan Supplement.

75.    "*Exit Loan Agreement*" means the credit agreement governing the Exit Facility, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, which shall be Filed as an Exhibit with the Plan Supplement and consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA, and the approval and consent of the Exit Agent (which approval and consent shall not be unreasonably withheld or delayed).

76.     "*Exit Loan Documents*" means the Exit Loan Agreement and the notes, guarantees, security documents, intercreditor agreement(s), and other agreements, instruments, and documents entered into or delivered in connection therewith, as the case may be, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time and consistent with, and subject to the approvals and consents as to form and substance and conditions precedent set forth in, the RSA, any commitment, and Exit Loan Agreement, and the approval and consent of the Exit Agent (which approval and consent shall not be unreasonably withheld or delayed).

77.     "*Exit Term Loan*" means a new secured term loan to be issued to RT Asset Company upon the Effective Date under the Exit Term Loan Facility, as more fully described in ARTICLE V.E.

78.     "*Exit Term Loan Facility*" means a new secured term loan facility in the aggregate initial principal amount of up to the Exit Term Loan Facility Amount to be entered into by the Exit Agent and Exit Lender(s) with RT Asset Company as borrower and certain of its subsidiaries as guarantors, as provided in the Exit Loan Documents.

79.      "*Exit Term Loan Facility Amount*" means the lesser of (a) $30,000,000 less 90% of the Net Sale Proceeds, if any, in excess of $2,500,000 (excluding any proceeds from the sale of RT Lodge) and (b) 1.2 times the agreed Broker's Opinion of Value of the Debtors' real property.

80.     "*Extinguished Intercompany Claims*" Intercompany Claims that are not Preserved Intercompany Claims.

81.     "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

82.     "*Final DIP Order*" means the order approving the DIP Facility on a final basis, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA (such order need not be a Final Order unless expressly specified).

83.     "*Final Order*" means an order or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined to be in effect by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order; provided, further, that the Debtors,

12

the Reorganized Debtors and/or RT Lodge Company, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

84.     *"First Out"* has the meaning ascribed thereto in ARTICLE V.D.

85.     *"General Unsecured Claim"* means any prepetition Claim against any Debtor that is not a:  (a) DIP Facility Claim; (b) Administrative Expense Claim; (c) Priority Tax Claim; (d) Non-Tax Priority Claim; (e) Miscellaneous Secured Claim; (f) Prepetition Secured Debt Claim; or (g) Equity Interest.

86.     *"Governmental Unit"* means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

87.     *"GS"* means Goldman Sachs Specialty Lending Group, L.P.

88.     *"GS Adjustment Equity"* means a percentage of the total equity of RT Asset Company (calculated as of the Effective Date) equal to (a) the GS Share minus the sum of (i) the GS Cash Payment and (ii) the Lodge Consideration divided by (b) the sum of (i) the TCW Share minus the TCW Cash Payment plus (ii) the GS Share minus the sum of (x) the GS Cash Payment and (y) the Lodge Consideration; provided, however, if the GS Share would be less than zero, the foregoing clause (a) shall be deemed zero.

89.     *"GS Bank"* means Goldman Sachs Bank USA, a New York State-chartered bank.

90.     *"GS Cash Payment"* means an amount in cash from the proceeds of the Exit Facility equal to the lesser of (a) $8,000,000 and (b) the GS Share.

91.     *"GS Share"* means the amount of the Prepetition Secured Debt Claim (not including postpetition interest) beneficially owned by GS as of the Effective Date.

92.     *"Holder"* means an Entity holding a Claim against, or Equity Interest in, any Debtor.

93.     *"Holding"* means RTI Holding Company, LLC, a Debtor in the Chapter 11 Cases.

94.     *"Impaired"* means not Unimpaired.

95.     *"Initial Distribution Date"* means the Effective Date, or a date as soon as reasonably practicable after the Effective Date with respect to any particular distribution, for effectuating the applicable distribution under this Plan to the relevant Holder(s) of an Allowed Claim(s) or Equity Interest(s).

96.     *"Intercompany Claims"* means any Claim or Cause of Action of a Debtor or Affiliate of a Debtor against any Debtor or Affiliate of a Debtor, whether or not a Proof of Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code in any of the Chapter 11 Cases.

13

97.    "*Intercompany Interest*" means an Equity Interest held by a Debtor in a Debtor or a non-Debtor Affiliate.

98.    "Interim DIP Order" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing* (ECF No. 87) entered in the Chapter 11 Cases.

99.    "*Investor Director*" means a director, manager or managing member of any of the Debtors, Reorganized Debtors or their successors (including, without limitation, RT Asset Company) that is employed, whether as (a) an employee or (b) as a consultant, outside professional or on another similar basis and that derives a majority of their total employment income on account of such employment), by a holder of New Common Shares or such holder's Affiliates; provided that an employer for purposes of this definition shall not include any of (i) Holding, (ii) Reorganized Holding, (iii) RT Asset Company, (iv) their direct or indirect subsidiaries or downstream Affiliates, (v) any portfolio companies of such holder or such holder's Affiliates or (vi) the successors of any Person or Entity identified in clauses (i) through (v) hereof.

100.    "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

101.    "*Litigation Claims*" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including, without limitation, the Causes of Action of the Debtors.

102.    "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

103.    "*Lodge Consideration*" means one hundred percent (100%) of the equity in RT Lodge Company (which shall be valued at $5,300,000 for purposes of this Plan).

104.    "*Milestones*" shall have the meaning ascribed to such term in the RSA, as may be modified or waived from time to time by mutual written agreement among the Debtors and the Prepetition Secured Creditors.

105.    "*MIP*" means a post-Effective Date management incentive plan, pursuant to which 15% of the equity of RT Asset Company shall be reserved for the New Board to grant New Common Shares, or other interests in RT Asset Company, to directors, officers, and employees of RT Asset Company other than Investor Directors, of which 7.5% shall be allocated to RT Asset Company's management upon implementation of the MIP and 7.5% shall be reserved for future allocations, and which shall be subject to a three-year vesting period and have such other terms and conditions as determined by the New Board.

106.    "*MIP Pool*" has the meaning ascribed to it in ARTICLE V.G.

14

107. "*Miscellaneous Secured Claim*" means any Secured Claim other than a DIP Facility Claim or Prepetition Secured Debt Claim

108. "*Net Sale Proceeds*" means the net cash sale proceeds from Asset Sales received by the Debtors on or after the Petition Date.

109. "*New Board*" means the initial and any successor board of directors of RT Asset Company as described in ARTICLE V.L hereto.

110. "*New Common Shares*" means the newly issued common equity interests of RT Asset Company to be issued (a) on the Effective Date, (b) upon implementation of the MIP, (c) upon the exercise of any Warrants and/or (d) as otherwise permitted pursuant to the Amended Organizational Documents.

111. "*Non-Tax Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

112. "*Ordinary Course Professionals Order*" means any Final Order approving the motion to employ ordinary course professionals to be Filed on or after the Petition Date in the Chapter 11 Cases.

113. "*Outside Date*" means the deadline in the Milestones for confirmation of the Plan, which is the later of the date that is no later than (a) 105 days after the Petition Date if there is no Topping Bid or (b) 120 days after the Petition Date in the event that a Topping Bid is received and a Successful Bid is selected after the Auction for the Assets.

114. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

115. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

116. "*Plan*" means this *Debtors' Chapter 11 Plan of Reorganization*, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time in accordance with the terms herein and the RSA, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA.

117. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Equity Interests under this Plan.

118. "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, Filed, entered, assumed, or performed in connection with the occurrence of the Effective Date, including, without limitation, the Exit Loan Documents, the solicitation materials in respect of the Plan, the Confirmation Order, the Disclosure Statement, the

15

Disclosure Statement Order, the motion seeking approval of the Disclosure Statement, and any other documents to be included in the Plan Supplement, each as may be amended, restated, amended and restated, waived, supplemented or otherwise modified consistent with the RSA, each of which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA.

119.    "*Plan Schedule*" means a schedule annexed to or made a part of either Plan Supplement or the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

120.    "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, (a) the Amended Organizational Documents, (b) the Exit Loan Agreement, (c) any Schedule of Assumed Compensation and Benefit Programs, (d) the Rejected Executory Contract / Unexpired Lease List, (e) a description of the Restructuring Transactions/Alternative Structures (if necessary), and (f) the identity of the members of the New Board and the nature of any compensation for any member of the New Board who is an "insider" under the Bankruptcy Code, each of which is incorporated by reference into, and is an integral part of, this Plan, as each of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court on or before five (5) Business Days prior to the Confirmation Hearing (unless otherwise ordered by the Bankruptcy Court without further notice).  The documents that comprise the Plan Supplement shall be subject to any consent or approval rights provided hereunder, thereunder, or in the RSA, including as provided in the definitions of the relevant documents.

121.    "*Postpetition*" means the time period beginning immediately upon the filing of the Chapter 11 Cases and ending on the Effective Date.

122.    "*Prepetition Agent*" means GS, in its capacity as administrative agent, collateral agent and syndication agent under the Prepetition Credit and Guaranty Agreement, and its successors and assigns.

123.    "*Prepetition Credit and Guaranty Agreement*" means the Credit and Guaranty Agreement dated December 21, 2017 (as amended, restated, amended and restated, waived, supplemented, or as otherwise modified from time to time) between Holding and certain of its subsidiaries and Prepetition Agent and the Prepetition Secured Creditors, which provided a term loan in the original principal amount of $115,000,000 that was drawn in full on December 21, 2017, and up to $12,500,000 of revolving commitments used for the issuance of standby letters of credit.

124.    "*Prepetition Secured Creditors*" means, collectively, the lenders party to the Prepetition Credit and Guaranty Agreement (as of the Petition Date, such lenders consisted of GS and TCW); however, for certain consent and other rights specified for the Requisite Lenders (as defined in the RSA) in the RSA, the term "Prepetition Secured Creditors" shall mean the Requisite Lenders (as defined in the RSA).

16

125.    "*Prepetition Secured Debt Claim*" means any Claim arising under the Prepetition Credit and Guaranty Agreement, which Claim shall be an Allowed Claim under the Plan in the aggregate principal amount of $37,912,018.87 as of the Petition Date, plus accrued and unpaid interest, fees, expenses and other obligations (other than as excluded immediately below) arising under the Prepetition Credit and Guaranty Agreement; provided that, if the Prepetition Secured Debt Claims receive the treatment set forth in Article III of this Plan for Subclass 3A Claims and Subclass 3B Claims, as applicable, then the Prepetition Secured Debt Claims shall, by the agreement of the Prepetition Secured Creditors effective as of the Effective Date, exclude the call premium and yield maintenance (in the aggregate approximate amount of $4,500,000 as of the Petition Date).

126.    "*Prepetition Term Loans*" means the term loans issued pursuant to the Prepetition Credit and Guaranty Agreement.

127.    "*Prepetition Revolver*" means the up to $12,500,000 revolving standby letter of credit facility in the Prepetition Credit and Guaranty Agreement.

128.    "*Preserved Intercompany Claims*" shall mean Intercompany Claims that are listed as preserved post-Effective Date in a schedule to the Plan Supplement.

129.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

130.    "*Pro Rata*" means, proportionately, so that the ratio of (a) (1) the amount of property to be waived, distributed or otherwise on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (b) (1) the amount of property to be waived, distributed or otherwise on account of all Claims of the Class, Classes or group sharing in such waiver, distribution or otherwise to (2) the amount of all Claims in such Class, Classes or group.

131.    "*Professional*" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code; provided, however, that the term "Professional" shall not include any Entity retained pursuant to the Ordinary Course Professionals Order or any of the professionals of the Prepetition Agent, Prepetition Secured Creditors or Equity Parent.

132.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.  For the avoidance of doubt, the Consenting Lenders Fees and Expenses do not constitute Professional Fee Claims.

133.    "*Proof of Claim*" means a proof of Claim or Equity Interest Filed against any Debtor in the Chapter 11 Cases.

134.    "*Reinstated" and "Reinstatement*" mean, with respect to any Claim, (a) in accordance with section 1124(1) of the Bankruptcy Code, leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or (b) in accordance

17

with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

135.    "*Rejected  Executory  Contract/Unexpired Lease List*" means the list, if any, of executory contracts and unexpired leases of the Debtors, as determined by the Debtors, with the consent of the Prepetition Secured Creditors (which consent shall not be unreasonably withheld or delayed), identifying Executory Contracts and/or Unexpired Leases that shall be rejected by the Debtors pursuant to the Plan, as either Filed with the Plan Supplement or, if not Filed with the Plan Supplement, as included in or as an exhibit to the Business Plan.

136.    "*Rejection Claim Bar Date*" has the meaning set in ARTICLE VI.C herein.

137.    "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns, managed accounts or funds, and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), partners, agents, managers, managing members, advisory board members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, management companies, fund advisors, and other professionals, and any Person claiming by or through any of them, in each case acting in such capacity as such relates to the Debtors, the Reorganized Debtors and/or RT Lodge Company and not as it relates to any other matter or capacity.

138.    "*Released Party*" means, in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) RT Lodge Company; (d) the Prepetition Agent; (e) each of the Prepetition Secured Creditors; (f) the DIP Facility Agent; (g) each of the DIP Facility Lenders; and (h) each Related Person of any of (a) through (g) of the foregoing; provided that,

18

notwithstanding the foregoing, a person is not a "*Released Party*" if such Person is an Excluded Party.

139.    "*Releasing Party*" means, in its capacity as such: (a) each Holder of a Claim that votes to accept this Plan; (b) each Holder of a Claim that is Unimpaired under this Plan; (c) each Holder of a Claim that is solicited to vote to accept or reject this Plan but that does not vote either to accept or reject the Plan and does not elect on their ballot to opt out of granting the releases set forth in ARTICLE X.C; (d) each Holder of a Claim that votes to reject this Plan and does not elect on their ballot to opt out of granting the releases set forth in ARTICLE X.C; (e) the Prepetition Agent; (f) each of the Prepetition Secured Creditors; (g) the DIP Facility Agent; (h) each of the DIP Lenders; and (i) each Related Person of each of (a) through (h) of the foregoing.

140.    "*Reorganized Debtors*" means any Debtor, as reorganized pursuant to this Plan, as well as RT Asset Company if it is not otherwise a Reorganized Debtor, on or after the Effective Date.  Notwithstanding anything to the contrary herein, RT Lodge Company (and, if Reorganized Holding is selected to be RT Lodge Company, Reorganized RTI) shall not constitute a Reorganized Debtor.

141.    "*Reorganized Holding*" means RTI Holding Company, LLC, as reorganized pursuant to this Plan on or after the Effective Date.

142.    "*Reorganized Subsidiaries*" means, on and after the Effective Date, the Subsidiaries other than RTI.

143.    "*Reorganized RTI*" means RTI, as reorganized pursuant to this Plan on or after the Effective Date.

144.    "*Restructuring*" means the financial restructuring of the Debtors, the principal terms of which are set forth in this Plan, the Disclosure Statement, the Plan Supplement, and the RSA, which, if the Plan is confirmed by the Outside Date and the Effective Date occurs by the Effective Date Deadline, includes (without limitation):  (1) if the Assets have not been sold by the Effective Date, then concurrently on the Effective Date, (a) the Equity Interests in RT Asset Company would be distributed to (x) each Holder of the Allowed Subclass 3A Claims (if any GS Adjustment Equity would be distributed on account of such Claim) and (y) each Holder of the Allowed Subclass 3B Claims; (b) RTI would transfer the Equity Interests in the Reorganized Subsidiaries (as well as any non-Debtor subsidiaries of RTI or the Reorganized Subsidiaries) to RT Asset Company; (2) if the RT Lodge has not been sold by the Effective Date, then concurrently on the Effective Date, each Holder of the Allowed Subclass 3A Claims would receive its Pro Rata share of one hundred percent (100%) of the Equity Interests in RT Lodge Company; and (3) if GS does not select Reorganized Holding to be RT Lodge Company, the Equity Interests in Holding would be extinguished.

145.    "*Restructuring Transactions*" means the transfers constituting the Restructuring and one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or

19

necessary to effectuate the Plan, including (a) the consummation of the transactions provided for under or contemplated by the RSA; (b) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of this Plan and the RSA and that satisfy the requirements of applicable law; (c) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, the Plan Documents and the RSA; and (d) all other actions that the Debtors (after consultation with the Prepetition Agent), Reorganized Debtors and/or RT Lodge Company, as applicable, determine are necessary or appropriate and consistent with the Plan, the Plan Documents and the RSA.

146.    "*RSA*" means that certain Restructuring Support Agreement, dated as of October 8, 2020, by and among the Debtors and the Prepetition Secured Creditors (including, without limitation, any and all schedules, annexes, or exhibits thereto), as amended, restated, amended and restated, modified, waived, or supplemented from time to time in accordance with its terms, attached to the Disclosure Statement as an exhibit.

147.    "*RT Administrative Expense Claim Reserve Amount*" means the aggregate amount of unpaid Allowed Administrative Expense Claims through the Effective Date as estimated by the Debtors in consultation with the Prepetition Secured Creditors.

148.    "*RT Administrative Expense Claim Reserve*" means a segregated account to be (a) established and funded in Cash by the Debtors on or prior to the Effective Date in an amount equal to the RT Administrative Expense Claim Reserve Amount and (b) maintained by RT Asset Company after the Effective Date.

149.    "*RT Assets*" means all operating assets of Holding and its Subsidiaries (other than the RT Lodge), subject to Asset Sales, including related assumed contracts and leases, operating and dark fee real estate, headquarters and Ruby Tuesday intellectual property.

150.    "*RT Asset Company*" means the entity that shall own the RT Assets and assume the RT Asset Obligations as of the Effective Date, which shall be, at TCW's option, either (a) Ruby Tuesday, LLC, as reorganized pursuant to this Plan, or (b) a Reorganized Debtor selected by TCW, with the consent of GS.

151.    "*RT Asset Obligations*" means the obligations related to the RT Assets that are assumed by RT Asset Company as of the Effective Date.

152.    "*RT Lodge*" means the assets of RTI to the extent such assets are useful to the operations of the event facility and restaurant operated by RTI commonly known as "RT Lodge" and located at 1406 Wilkinson Pike, Maryville, Tennessee, which assets include a perpetual royalty free trademark license and leasehold interests. For purposes of the Plan, the RT Lodge shall be valued at $5,300,000.

153.    "*RT Lodge Company*" means, at GS's option, either (a) Reorganized RTI or (b) Reorganized Holding, which shall own one hundred percent (100%) of the Equity Interests in Reorganized RTI.

154.     *"RT Lodge Obligations"* means the obligations related to the RT Lodge that are assumed by RT Lodge Company as of the Effective Date.

155.     *"RTI"* means Ruby Tuesday, Inc., a Debtor in the Chapter 11 Cases and a wholly-owned subsidiary of Holding.

156.     *"RT Professional Fee Claim Reserve Amount"* means the aggregate amount of unpaid Allowed Professional Fee Claims through the Effective Date as estimated by the Debtors in consultation with the Prepetition Secured Creditors.

157.     *"RT Professional Fee Claim Reserve"* means a segregated account to be (a) established and funded in Cash by the Debtors on or prior to the Effective Date in an amount equal to the RT Professional Fee Claim Reserve Amount and (b) maintained by RT Asset Company after the Effective Date.

158.     *"RT Priority Claim Reserve Amount"* means the aggregate amount of unpaid Allowed Priority Tax Claims and Allowed Non-Tax Priority Claims (but not Allowed Administrative Expense Claims) through the Effective Date as estimated by the Debtors in consultation with the Prepetition Secured Creditors.

159.     *"RT Priority Claim Reserve"* means a segregated account to be (a) established and funded in Cash by the Debtors on or prior to the Effective Date in an amount equal to the RT Priority Claim Reserve Amount and (b) maintained by RT Asset Company after the Effective Date.

160.     *"Sale Milestones"* shall mean the milestones designated as sale milestones in the RSA, as referenced in ARTICLE V.S.

161.     *"Schedule of Assumed Compensation and Benefit Programs"* means the schedule of all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans to be assumed by the Debtors on the Effective Date, as set forth in ARTICLE VI.I hereof.

162.     *"Schedules"* means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto, including any global notes, statement of limitations, methodology and disclaimers incorporated by reference therein, Filed by the Debtors with the Bankruptcy Court (as may be amended, modified or supplemented from time to time) to the extent such Filing is not waived pursuant to an order of the Bankruptcy Court.

163.     *"SEC"* means the Securities and Exchange Commission, or any successor agency.

164.     *"Secured Claim"* means a Claim that is secured by a Lien on property in which any Debtor's Estate has an interest or that is subject to a valid right of setoff under

21

section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

165.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

166.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

167.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

168.    "*Stamp or Similar Tax*" means any stamp tax, document recording tax, personal property tax, conveyance fee, intangibles or similar tax, mortgage tax, mortgage recording tax, real estate transfer tax, sales tax, use tax, Uniform Commercial Code filing or recording fee, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), regulatory filing or recording fee, and other similar taxes or other assessments imposed or assessed by any Governmental Unit.

169.    "*Subsidiaries*" mean the Debtors other than RTI Holding Company, LLC.

170.    "*Subsidiary Structure Maintenance*" has the meaning as defined in ARTICLE V.P.

171.    "*Successful Bid*" means the highest and best Topping Bid and/or credit bid for Assets.

172.    "*Successful Bidder*" means a bidder that has made a Successful Bid.

173.    "*TCW*" means collectively or individually, as the case may be in context, TCW Direct Lending LLC, TCW Skyline Lending, L.P., TCW Bravos Fund LLC or any affiliates thereof.

174.    "*TCW Cash Payment*" means an amount in cash from the proceeds of the Exit Facility equal to the lesser of (a) $9,500,000 and (b) the TCW Share.

175.    "*TCW Share*" means the amount of the Prepetition Secured Debt Claim (not including postpetition interest) beneficially owned by TCW as of the Effective Date.

176.    "*Topping Bid*" means a bid (or bids) for Assets; provided that such bid (or bids) must meet the requirements set forth in ARTICLE V.S.

177.   *"Topping Bidder"* means any bidder that has made a Topping Bid to the Debtors.

178.   *"Transfer"* means, with respect to any security or the right to receive a security or to participate in any offering of any security (and other than when used in an otherwise defined term), (a) the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in, or other disposition of such security or right or the beneficial ownership thereof, (b) the offer to make such a sale, transfer, constructive sale, or other disposition, and (c) each option, agreement, arrangement, or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing.  The term "constructive sale" for purposes of this definition means (a) a short sale with respect to such security or right, (b) entering into or acquiring an offsetting derivative contract with respect to such security or right, (c) entering into or acquiring a futures or forward contract to deliver such security or right, or (d) entering into any transaction that has substantially the same effect as any of the foregoing.  The term "beneficially owned" or "beneficial ownership" as used in this definition shall include, with respect to any security or right, the beneficial ownership of such security or right by a Person and by any direct or indirect subsidiary of such Person.

179.   *"Unexpired Lease"* means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

180.   *"Unimpaired"* means, when used with reference to a Claim, subclass or Class, the circumstance where such Claim, subclass or Class is treated in a manner comporting with the requirements of Bankruptcy Code section 1124, providing, with certain exceptions, that the treatment has left unaltered the legal, equitable, and contractual rights to which a particular Claim (or all of the Claims in a Class) entitles the Holder of such Claim(s).  In accordance with, by example, Bankruptcy Code sections 365 or 1123(a)(5)(G), unless expressly specified otherwise, such treatment includes the waiver or curing of defaults and the reinstatement of maturity of such Claim, without payment of penalties or other default-related amounts.

181.   *"Vacant Class"* has the meaning ascribed thereto in ARTICLE III.B.

182.   *"Voting Classes"* means Class 3 and Class 4 under this Plan.

183.   *"Warrants"* means warrants for New Common Shares with an exercise price of $0.01 per share issuable to the Exit Lenders, as set forth in ARTICLE IV.F.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS,
## DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS

### A.   Administrative Expense Claims

On or before the Effective Date, the Debtors shall establish the RT Administrative Expense Claim Reserve and fund the RT Administrative Expense Claim Reserve with Cash in an amount equal to the RT Administrative Expense Claim Reserve Amount.  The Cash transferred to the RT Administrative Expense Claim Reserve shall not be used for any purpose other than to

pay Allowed Administrative Expense Claims, and no payments on account of such Claims shall be made from any source other than the RT Administrative Expense Claim Reserve; provided, that RT Asset Company may release funds from the RT Administrative Expense Claim Reserve to RT Asset Company on a rolling basis solely to the extent that the funds held in the RT Administrative Expense Claim Reserve exceed the then-current aggregate amount of outstanding and unpaid Allowed Administrative Expense Claims (as estimated in good faith by RT Asset Company in consultation with the Prepetition Secured Creditors).

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim, subject to the following ARTICLE II.B and ARTICLE II.C, shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash from the RT Administrative Expense Claim Reserve for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtors or RT Asset Company (as applicable) and such Holder; provided, however, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or RT Asset Company (as applicable) in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court; provided, further, however, that other than Holders of (i) DIP Facility Claims, (ii) Professional Fee Claims, (iii) Administrative Expense Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, (iv) Administrative Expense Claims of the Prepetition Agent and its professionals, which, to the extent reasonable and documented, are Allowed Administrative Expense Claims, or (v) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Expense Claim, the Holder of any Administrative Expense Claim shall have Filed a Proof of Claim by no later than the Administrative Expense Claims Bar Date.

After the Effective Date, RT Asset Company (on behalf itself, the Debtors, the Reorganized Debtors or RT Lodge Company, as applicable) shall evaluate, settle and pay Allowed Administrative Expense Claims out of the RT Administrative Expense Claim Reserve without further Bankruptcy Court approval. In the event that RT Asset Company (on behalf itself, the Debtors, the Reorganized Debtors or RT Lodge Company, as applicable) objects to an Administrative Expense Claim (other than any Allowed Administrative Expense Claim) and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim. All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due (without the necessity of the United States trustee filing a proof of Claim or obtaining a Bankruptcy Court order allowing such amounts).

## B.    Professional Fee Claims

On or before the Effective Date, the Debtors shall establish the RT Professional Fee Claim Reserve and fund the RT Professional Fee Claim Reserve with Cash in an amount equal to the RT Professional Fee Claim Reserve Amount. The Cash transferred to the RT Professional Fee Claim Reserve shall not be used for any purpose other than to pay Allowed Professional Fee Claims, and no payments on account of such Claims shall be made from any source other than

the RT Professional Fee Claim Reserve; provided, that RT Asset Company may release funds from the RT Professional Fee Claim Reserve to RT Asset Company, held with respect to each Professional, after payment in full of all amounts Allowed with respect to such Professional's final fee application by a Final Order.

Professionals or other Entities asserting Professional Fee Claims for services rendered through the Effective Date must File, within thirty (30) days after the Effective Date, and serve on RT Asset Company and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; provided that the Reorganized Debtors shall pay professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash; provided, further, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on RT Asset Company and the requesting party by thirty (30) days after the Filing of the applicable request for payment of the Professional Fee Claim. Within five (5) Business Days of the entry of an order approving an Allowed Professional Fee Claim, RT Asset Company shall pay the Allowed Professional Fee Claim in full with Cash from the RT Professional Fee Claim Reserve.

Upon the Effective Date, except as otherwise set forth herein with respect to Professional Fee Claims, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and RT Asset Company shall employ and pay its professionals in the ordinary course of business. Professionals retained by any Creditors' Committee may be paid only for services rendered on or after the Effective Date if such services are permitted pursuant to ARTICLE XIII.A of this Plan.

For the avoidance of doubt, the Consenting Lenders Fees and Expenses, or estimated to be incurred, through the Effective Date shall be paid in full in Cash without the requirement to file a Proof of Claim, Administrative Expense Claim form, retention or fee applications or any other pleading or request for payment and without any requirement for notice to or action, order or approval of the Bankruptcy Court.

## C.    **DIP Facility Claims**

The DIP Facility shall be an up to $18,500,000 new money loan facility (including a $9,600,000 subfacility for any draws under Existing Letters of Credit) provided by the Prepetition Secured Creditors to the Debtors, which facility shall constitute a superpriority administrative claim against the Debtors secured by a superpriority priming Lien on substantially all of the assets of their Estates.

The amount advanced or to be advanced under the Interim DIP Order shall be in the aggregate principal amount of up to $12,600,000 (inclusive of the Existing Letters of Credit), which includes up to $3,000,000 of new money advances.

Unless otherwise agreed to by the DIP Facility Lenders, on the Effective Date, in full satisfaction, settlement, discharge and release of, and in exchange for, such DIP Facility Claims (in an amount outstanding determined as of the Effective Date), all DIP Facility Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) shall be indefeasibly paid and satisfied in full in Cash from available Cash.  For the avoidance of doubt, the DIP Facility Claims shall not be paid with Cash from the Exit Facility.

Except as otherwise expressly provided in the DIP Facility, upon indefeasible payment and/or satisfaction in full of all DIP Facility Claims, the DIP Facility Loan Documents and all related loan documents, and all Liens and security interests granted to secure the DIP Facility Claims, shall be immediately terminated, extinguished and released, and the DIP Facility Agent shall promptly execute and deliver to RT Asset Company and/or RT Lodge Company, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by RT Asset Company and/or RT Lodge Company (as the case may be) to effectuate the foregoing.  Notwithstanding the foregoing, the DIP Facility Loan Documents and all related loan documents shall continue in effect solely for the purpose of preserving the DIP Facility Agent's, the DIP Facility Lenders', Prepetition Agent's, the Prepetition Secured Creditors' right to any contingent or indemnification obligations of the Debtors pursuant and subject to the terms of the DIP Facility Loan Documents or DIP Orders.

Notwithstanding anything to the contrary herein (including, but not limited to, the description of the DIP Facility as priming), the proceeds of all Asset Sales by the Debtors made prior to the Effective Date shall first be applied to the repayment of the Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid), and following their repayment in full, repayment of the DIP Facility Claims (other than any such Claims that have been credit bid in connection with a Successful Bid).

D.    **Priority Tax Claims**

On or before the Effective Date, the Debtors shall establish the RT Priority Claim Reserve and fund the RT Priority Claim Reserve with Cash in an amount equal to the RT Priority Claim Reserve Amount.  The Cash transferred to the RT Priority Claim Reserve Amount shall not be used for any purpose other than to pay Allowed Priority Tax Claims and Allowed Non-Tax Priority Claims (but not Allowed Administrative Expense Claims), and no payments on account of such Claims shall be made from any source other than the RT Priority Claim Reserve; provided, that RT Asset Company may release funds from the RT Priority Claim Reserve to RT Asset Company on a rolling basis solely to the extent that the funds held in the RT Priority Claim Reserve exceed the then-current aggregate amount of outstanding and unpaid Allowed Priority Tax Claims and Allowed Non-Tax Priority Claims (as estimated in good faith by RT Asset Company in consultation with the Prepetition Secured Creditors).

Unless a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of such Allowed Priority Tax Claim, on the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the election of the Debtors or RT Asset Company (as applicable):  (1) Cash from the RT Priority Claim Reserve in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash from the RT Priority Claim Reserve in an amount agreed to by such Holder and the Debtors or the Reorganized Debtors, as applicable; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) Cash from the RT Priority Claim Reserve in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) shall be made at all appropriate times until the entry of a final decree; provided, however, that the Debtors or the Reorganized Debtors, as applicable, may prepay any or all such Claims at any time, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.    Summary

All Claims and Equity Interests, except Administrative Expense Claims (including DIP Facility Claims and Professional Fee Claims) and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.  Additionally, for voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Miscellaneous Secured Claim shall be deemed to be in its own subclass.

### Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Non-Tax Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Miscellaneous Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Secured Debt Claims | Impaired | Entitled to Vote |

27

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Preserved Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Extinguished Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Dissenters Claims | Impaired | Deemed to Reject |
| 8 | Equity Interests in Holding | Impaired | Deemed to Reject |
| 9 | Intercompany Interests | Unimpaired | Deemed to Accept |

### B.    Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed, or Claims or Equity Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018(a), in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class (each, a "Vacant Class").

### C.    Classification and Treatment of Claims and Equity Interests

#### 1.    Class 1 – Non-Tax Priority Claims

a.    Classification:  Class 1 consists of the Non-Tax Priority Claims.

b.    Treatment:  Each Holder of an Allowed Class 1 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 1 Claim:

(1)    Cash from the RT Priority Claim Reserve equal to the amount of such Allowed Class 1 Claim on the later of, or, in each case, as soon as reasonably practicable thereafter, (x) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date, (y) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim or (z) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 1 Claim; or

(2)    At the election of the Debtors (after consultation with the Prepetition Agent), such other less favorable treatment as to which the Holder of such Allowed Class 1 Claim and the Debtors or the Reorganized Debtors, as applicable, agree in writing.

c.    Impairment and Voting:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and may not receive Ballots.

#### 2.    Class 2 – Miscellaneous Secured Claims

a.    Classification:  Class 2 consists of the Miscellaneous Secured Claims.

28

b.     <u>Treatment</u>:  Each Holder of an Allowed Class 2 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 2 Claim:

(1)     Cash equal to the amount of such Allowed Class 2 Claim on the later of, or, in each case, as soon as reasonably practicable thereafter, (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim; or

(2)     At the election of the Debtors (after consultation with the Prepetition Agent) or the Reorganized Debtors, as applicable, either: (x) Reinstatement (with the Holder, as applicable, retaining the Liens securing its Allowed Miscellaneous Secured Claim as of the Effective Date until full and final payment thereof); (y) return of the Collateral securing such Allowed Class 2 Claim by the Initial Distribution Date; or (z) such other less favorable treatment as to which the Holder of such Allowed Class 2 Claim and the Debtors or the Reorganized Debtors, as applicable, shall have agreed upon in writing.

c.     <u>Impairment and Voting</u>:  Class 2 is Unimpaired, and the Holders of such Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan and may not receive Ballots.

**3.     Class 3 – Prepetition Secured Debt Claims**

a.     <u>Classification</u>:  Class 3 consists of the Prepetition Secured Debt Claims. The Allowed Subclass 3A Claim and Allowed Subclass 3B Claim shall be classified in subclass 3A and subclass 3B, respectively.  As contemplated by ARTICLE II.C hereof, any Allowed Subclass 3C Claim shall be paid by or rolled up into the DIP Facility, so is not expected to be outstanding as of the Effective Date.

b.     <u>Allowance</u>:  Notwithstanding any provisions of the Plan to the contrary, unless the Holders of the Prepetition Secured Debt Claims (other than with respect to any such Claims that have been credit bid in connection with a Successful Bid) have been paid in full previously from Net Sale Proceeds, the Prepetition Secured Debt Claims shall be deemed Allowed Claims in the aggregate principal amount of $37,912,018.87 as of the Petition Date, plus accrued and unpaid interest, fees, expenses and other obligations arising under the Prepetition Credit and Guaranty Agreement but not including any draws or any repayment of obligations related to letters of credit issued pursuant to the Prepetition Credit and Guaranty Agreement or postpetition interest accrued under such agreement.

c.     <u>Treatment</u>:  On the Effective Date, (1) unless the Holders of the DIP Facility Claims and Prepetition Secured Debt Claims (other than with respect to any such Claims that have been credit bid in connection with a Successful Bid) have been paid in full previously from Net Sale Proceeds, each Holder of an Allowed Subclass 3A Claim shall receive, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its Pro Rata share of (i) the GS Cash Payment, (ii) any GS Adjustment Equity, and (iii) one hundred percent (100%) of the equity in RT Lodge Company; and (2) unless it has been paid in full previously from Net Sale Proceeds, each Holder of an Allowed Subclass 3B Claim shall receive, in full

satisfaction, settlement, discharge and release of, and in exchange for such claim, its Pro Rata share of (i) the TCW Cash Payment and (ii) one hundred percent (100%) of the equity in RT Asset Company less any GS Adjustment Equity, subject to dilution on account of the Warrants and MIP, with all such entities, distributions and transfers subject to ARTICLE V.P and the definition of Restructuring in ARTICLE I.C hereof.  If a Successful Bid is selected after the Auction, notwithstanding anything to the contrary herein (including, but not limited to, the description of the DIP Facility as priming), the proceeds of all Asset Sales by the Debtors made prior to the Effective Date shall first be applied to the repayment of the Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) on the Effective Date, and following their repayment in full, repayment of the DIP Facility Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) as set forth in ARTICLE II.C on the Effective Date.  For avoidance of doubt, Class 3 shall be a Vacant Class if the Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) have been paid in full from Net Sale Proceeds before the Effective Date, and the subsections a – e of this ARTICLE III.C.3 (other than the immediately preceding sentence and this sentence) shall no longer be operative.  If Class 3 shall be come a Vacant Class, then in addition all of the provisions of the Plan related to ARTICLE III.C.3.c shall not be operative, including (without limitation) provisions that implement or reference exit financing or the assumption of executory contracts and unexpired leases of the Debtors, unless such contracts and/or leases are listed on a schedule to the Plan Supplement.

        d.    <u>Impairment and Voting</u>:  Unless the Holders of the Prepetition Secured Debt Claims (other than with respect to any such Claims that have been credit bid in connection with a Successful Bid) have been paid in full previously from Net Sale Proceeds, Subclasses 3A and 3B are Impaired, and Holders of Allowed Class 3A Claims and Allowed Class 3B Claims are entitled to vote in their respective subclasses to accept or reject the Plan and shall receive Ballots. If the Holders of the Prepetition Secured Debt Claims (other than with respect to any such Claims that have been credit bid in connection with a Successful Bid) have been paid in full prior to the Effective Date from Net Sale Proceeds, then Class 3 shall be come a Vacant Class.  If the Prepetition Secured Debt Claims (other than with respect to any such Claims that have been credit bid in connection with a Successful Bid) will be paid in full from Net Sale Proceeds on the Effective Date, then their Prepetition Secured Debt Claims are unimpaired, they are not entitled to vote, and they are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

        e.    For the avoidance of doubt, on the Effective Date, the Debtors shall pay all Consenting Lenders Fees and Expenses in accordance with ARTICLE V.R hereof and all fees and expenses of the Prepetition Agent in accordance with ARTICLE V.S hereof.

    **4.**    **Class 4 – General Unsecured Claims**

        a.    <u>Classification</u>:  Class 4 consists of the General Unsecured Claims.

        b.    <u>Treatment</u>:  Subject to ARTICLE VII.B.3, each Holder of an Allowed General Unsecured Claim, in full satisfaction, settlement, discharge and release of, and in

exchange for, such Allowed General Unsecured Claims shall receive its Pro Rata share of [___] (the "<u>Class 4 Aggregate Cash Distribution</u>").

      c.     <u>Impairment and Voting</u>:  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan and shall receive Ballots.

    **5.**     **Class 5 – Preserved Intercompany Claims**

      a.     <u>Classification</u>:  Class 5 consists of the Preserved Intercompany Claims.

      b.     <u>Treatment</u>: On the Effective Date, the Preserved Intercompany Claims shall be Reinstated, as set forth in ARTICLE V.P.

      c.     <u>Impairment and Voting</u>:  Class 5 is Unimpaired, and the Holders of Preserved Intercompany Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan and shall not receive Ballots.

    **6.**     **Class 6 – Extinguished Intercompany Claims**

      a.     <u>Classification</u>:  Class 6 consists of the Extinguished Intercompany Claims.

      b.     <u>Treatment</u>: On the Effective Date, the Extinguished Intercompany Claims shall be extinguished.

      c.     <u>Impairment and Voting</u>:  Class 6 is Impaired, and Holders of Extinguished Intercompany Claims are deemed to have rejected the Plan and shall not receive Ballots.

    **7.**     **Class 7 – Dissenters Claims**

      a.     <u>Classification</u>:  Class 7 consists of Dissenters Claims.

      b.     <u>Treatment</u>: On the Effective Date, pursuant to section 510(b) of the Bankruptcy Code, the Dissenters Claims shall be subordinated to the same priority as Equity Interests in RTI and shall be extinguished.

      c.     <u>Impairment and Voting</u>:  Class 7 is Impaired, and Holders of Dissenters Claims are deemed to have rejected the Plan and shall not receive Ballots.

    **8.**     **Class 8 – Equity Interests in Holding**

      a.     <u>Classification</u>:  Class 8 consists of the Equity Interests in Holding.

      b.     <u>Treatment</u>: On the Effective Date, the Equity Interests in Holding shall be either (1) if GS selects Reorganized Holding to be RT Lodge Company, preserved and distributed in accordance with this Plan or (2) extinguished.

      c.     <u>Impairment and Voting</u>:  Class 8 is Impaired, and Holders of Equity Interests in Holding are deemed to have rejected the Plan and shall not receive Ballots.

9. **Class 9 – Intercompany Interests**

a. <u>Classification</u>:  Class 9 consists of the Intercompany Interests.

b. <u>Treatment</u>:  Each Allowed Intercompany Interest in each of the Reorganized Subsidiaries shall be Reinstated for purposes of the Subsidiary Structure Maintenance, as set forth in ARTICLE V.P.

c. <u>Impairment and Voting</u>:  Class 9 is Unimpaired, and Holders of Intercompany Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Thus, the Holders of the Intercompany Interests are not entitled to vote to accept or reject the Plan and shall not receive Ballots.

## D. **Special Provision Governing Claims Related to Assumed Executory Contracts or Unexpired Leases and Unimpaired Claims**

Obligations with respect to assumed Executory Contracts and Unexpired Leases are separately addressed in ARTICLE VI.  Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, cure obligations as to any arrears or defaults that may exist with respect to contracts to be assumed under the Plan, or the performance of assumed obligations under such Executory Contracts or Unexpired Leases, including, without limitation, all rights in respect of legal and equitable defenses thereto, or setoffs or recoupments there against.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

## A. **Presumed Acceptance of Plan**

Class 1, Class 2, Class 5 and Class 9 are Unimpaired under the Plan, and, therefore, are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 1, Class 2, Class 5 and Class 9 are not entitled to vote to accept or reject the Plan and shall not receive Ballots.

## B. **Voting Classes**

Each Holder of an Allowed Claim as of the applicable voting record date in the Voting Classes shall be entitled to vote to accept or reject the Plan and shall receive ballots containing detailed voting instructions.

## C. **Acceptance by Impaired Classes of Claims and Equity Interests**

Except as otherwise provided in section 1126(e) of the Bankruptcy Code, (i) pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if (x) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (y) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) pursuant to section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests

32

has accepted the Plan if Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

**D.      Cramdown; Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

If any Class of Claims or Equity Interests is deemed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Debtors may, subject to any consent that may be required herein or under the RSA, (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan, or any Exhibit, Plan Schedule or Plan Document, in accordance with the terms hereof and the Bankruptcy Code, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**E.      Continuing Susceptibility to Claim Objection; Solicitation in Good Faith**

The Debtors have, and upon the Effective Date the Reorganized Debtors and RT Lodge Company shall be deemed to have, solicited votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Accordingly, the Debtors, the Reorganized Debtors and RT Lodge Company and each of their respective Related Persons shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of section 1125(e) of the Bankruptcy Code.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, no Claim or Equity Interest shall become an Allowed Claim or Allowed Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest.  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors and/or RT Lodge Company, as applicable, shall have and shall retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim, except with respect to any Claim Allowed by order of the Bankruptcy Court.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith and integrated compromise and global settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

33

## B.    Corporate Existence

The Debtors all shall continue to exist after the Effective Date as separate legal entities, with all of the powers of corporations, limited liability companies, memberships and partnerships pursuant to the applicable law in their states of incorporation or organization subject to the terms of, and except as otherwise provided in or by, the Plan and the Alternative Structures.  The respective limited liability company agreements, articles or certificate of incorporation and by-laws (or other applicable formation documents) in effect prior to the Effective Date for each Debtor shall continue to be in effect after the Effective Date, except (i) with respect to RT Asset Company, as to which there shall be amended and restated limited liability company agreement or other applicable organizational documents as set forth in the Amended Organization Documents Filed as an Exhibit with the Plan Supplement without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date and (ii) as any other Debtor's limited liability company agreements, articles or certificate of incorporation or by-laws (or other formation documents) may be amended or amended and restated pursuant to this Plan without any further notice to or action, order, or approval of the Bankruptcy Court or any other court of competent jurisdiction (other than the requisite filings required under applicable state, provincial, or federal law).

On or after the Confirmation Date or as soon thereafter as is reasonably practicable, the Debtors, Reorganized Debtors or RT Lodge Company, as applicable, may undertake the Restructuring Transactions and, to the extent determined necessary or appropriate by the Debtors, with the consent of the Prepetition Agent, Prepetition Secured Creditors and any Committee (which consent shall not be unreasonably withheld or delayed), the Reorganized Debtors, as applicable or their successors, or RT Lodge Company may take all other actions to effect any transaction described in, approved by, or necessary or appropriate to effectuate this Plan and that is consistent with the RSA, including, without limitation:  (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, name change, Chapter 11 Case closing, plans of reorganization, transfer or extinguishment of Intercompany Interests among RT Lodge Company, the Reorganized Debtors or other successors to, or Affiliates of, the Debtors, or liquidation, containing terms that are consistent with the terms of this Plan and the Plan Documents and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree (the "Alternative Structures"); (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of formation or incorporation and amendments thereto, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; (iv) the Restructuring Transactions; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, without limitation, making filings or recordings that may be required by applicable law in connection with such transactions.

## C.    Vesting of Assets

Also on the Effective Date:  (i) if the RT Lodge has not been sold by the Effective Date, the RT Lodge shall vest in RT Lodge Company, one hundred percent (100%) of the Equity

Interests in RT Lodge Company shall vest in the Holders of the Allowed Subclass 3A Claims on a Pro Rata basis, and RT Lodge Company shall, at the direction of the Prepetition Secured Creditors, designate any assets of RTI that have not been sold prior to the Effective Date and are not directly related to and directly useful to the operations of RT Lodge to RT Asset Company, and (ii) to the extent any Assets (other than the RT Lodge) remain unsold as of the Effective Date, such Assets (other than the RT Lodge) shall vest in RT Asset Company.  Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action, Litigation Claims, and, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or the Plan, Avoidance Actions) and any property and Assets acquired by the Debtors pursuant to the Plan shall vest in RT Lodge Company or the Reorganized Debtors or their successor, including under the Alternative Structures, free and clear of all Liens, Claims, charges or other encumbrances.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors and RT Lodge Company with regard to their respective Assets may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors and RT Lodge Company with regard to their respective Assets shall pay the charges that they incur after the Effective Date for reasonable and documented Professionals' fees, disbursements, expenses or related support services (including reasonable and documented fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

For clarity, the Executory Contracts and Unexpired Leases assumed by a Debtor and/or a Reorganized Debtor (other than RTI or Reorganized RTI) that are not related to RT Lodge shall be, at the written direction of TCW, assigned to RT Asset Company on the Effective Date without the need for a further authorization by the Bankruptcy Court as set forth in ARTICLE VI.B and the Executory Contracts and Unexpired Leases assumed by a Debtor and/or a Reorganized Debtor that are related to RT Lodge shall be, at the written direction of GS, assigned to RT Lodge Company on the Effective Date, without the need for a further authorization by the Bankruptcy Court as set forth in ARTICLE VI.B.

## D.    <u>Exit L/C Facility</u>

Unless an Alternative Exit Lender is providing an Alternative Exit Facility under alternative terms, the Exit L/C Facility shall be an up to $10,000,000 (or such lesser amount agreed to by the parties) standby letter of credit facility provided by the Exit Lender as a new facility to RT Asset Company on the Effective Date, which facility shall be First Out and secured by a first Lien (which is *pari passu* with the Lien of the Exit Term Loan Facility) on substantially all of the assets of RT Asset Company and which shall have GS Bank or its affiliate as issuing bank.  GS Bank or its affiliate shall serve as the initial issuer of all replacement and re-issued standby letters of credit under the Exit L/C Facility, including, without limitation, the roll up of $9,600,000 of outstanding letters of credit under the DIP Facility; provided, that in no event shall any letter of credit issued by GS Bank or its affiliate under the Exit L/C Facility have an expiration date later than one (1) year from the Effective Date; provided further that the Exit Loan Documents shall provide GS Bank or its affiliate, as applicable, with all of the rights

35

related to cash collateralization that GS Bank possesses in its capacity as "Issuing Bank" under the DIP Credit Agreement, which cash collateralization rights shall be acceptable to GS Bank or its affiliate, as applicable, in its sole discretion.

RT Asset Company shall be authorized to enter into the Exit L/C Facility on or before the Effective Date, subject to the occurrence of the Effective Date. The Confirmation Order shall be deemed approval of the Exit L/C Facility, and the Exit L/C Facility shall be governed by the Exit Loan Documents. The obligations of RT Asset Company (and any Subsidiaries that are parties to the Exit L/C Facility) under the Exit L/C Facility shall be secured by substantially all of its assets, whether now existing or hereinafter acquired on a pari passu basis with the Lien of the Exit Term Loan Facility. The Exit L/C Facility shall be repaid in full from the proceeds of the liquidation of the collateral that is subject to the Lien securing the Exit Facility on a first-out ("First Out") basis before any proceeds of the liquidation of such collateral is repaid under the Exit Term Loan Facility.

## E.    Exit Term Loan Facility

Unless an Alternative Exit Lender is providing an Alternative Exit Facility under alternative terms, the Exit Term Loan Facility shall be a new money loan facility provided by the Exit Lender to RT Asset Company on the Effective Date, which facility shall be available up to the Exit Term Loan Facility Amount and secured by a first Lien (which is pari passu with the Lien of the Exit L/C Facility but subject to its First Out right) on substantially all of the assets of the Reorganized Debtors, which shall be used to fund (a) the Cash part of the distribution to each Holder of the Allowed Subclass 3A Claims as set forth in ARTICLE III.C.3.c; and (b) the Cash part of the distribution to each Holder of the Allowed Subclass 3B Claims as set forth in ARTICLE III.C.3.c.

RT Asset Company shall be authorized to enter into the Exit Term Loan Facility on or before the Effective Date, subject to the occurrence of the Effective Date, and the Confirmation Order shall be deemed approval of the Exit Term Loan Facility, which shall be governed by the Exit Loan Documents.

In establishing the register of lenders and Exit Lenders under the Exit Loan Documents, the Exit Agent shall be entitled to conclusively rely upon (without further inquiry) any certificate, schedule, register, list, or other document provided by the Debtors, the Reorganized Debtors and/or the Distribution Agent.

## F.    Exit Facility

If TCW is the Exit Lender, on the Effective Date it shall receive Warrants exercisable for New Common Shares equal to 25% of the total amount of Exchange Common Shares distributed on the Effective Date (subject to dilution by any New Common Shares issued from time to time pursuant to the MIP). In the event there is more than one Exit Lender, such Warrant shall instead be provided to each of them on a Pro Rata basis.

RT Asset Company shall be authorized to enter into the Exit Facility on or before the Effective Date, subject to the occurrence of the Effective Date. The Confirmation Order shall be deemed approval of the Exit Facility, the Exit Loan Documents and all transactions contemplated

thereby, and authorization of all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including, without limitation, the payment of all reasonable and documented fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Loan Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility.

On the Effective Date, RT Asset Company shall be and is authorized to execute and deliver the Exit Loan Documents and any related loan documents, and shall be and is authorized to execute, deliver, file, record and issue any other notes, guarantees, deeds of trust, security agreements, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, subject to any lien limitations set forth herein. The obligations of RT Asset Company (and any Subsidiaries that are parties to the Exit Facility) under the Exit Facility shall be secured by substantially all of its assets, whether now existing or hereinafter acquired.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Loan Documents (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Loan Documents, (c) shall be deemed automatically perfected on the Effective Date and have a first priority, subject only to such Liens and security interests as may be permitted under the Exit Loan Documents, and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan shall be obtained from the Exit Facility and the Reorganized Debtors' Cash balances, including Cash from operations; provided, however, that the Reorganized Debtors' Cash balances – and not Cash from the Exit Facility – shall be used to pay the DIP Facility Claims and all cure costs in connection with any assumed Executory Contract or Unexpired Lease.

If an Alternative Exit Facility will be provided by an Alternative Exit Lender, provisions similar the authorization provisions above shall be included in the Plan Supplement.

## G.    **Management Incentive Plan**

On the Effective Date, 15% of the equity of RT Asset Company shall be reserved for the issuance by the New Board of stock, warrants, options, or other Equity Securities in connection with RT Asset Company's MIP (such reserve, the "MIP Pool"), and issuances of the New Common Shares in respect thereof will dilute the Exchange Common Shares issued on the Effective Date.  Of such equity of RT Asset Company in the MIP Pool, all of which shall be subject to a three-year vesting period, 7.5% shall be allocated to RT Asset Company's

management upon implementation of the MIP and 7.5% shall be reserved for future allocations. The remaining terms of the MIP shall be determined by the New Board.

## H.    **Issuance of New Common Shares, and Related Documentation**

On and after the Effective Date, RT Asset Company shall be authorized to and shall issue the New Common Shares to the Holders of Claims and Equity Interests, as applicable, as set forth in this Plan without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  On the Effective Date, the Exchange Common Shares are to be distributed (or issuable under the Amended Organizational Documents), as provided in the Plan, to each Holder of Allowed Subclass 3B Claims and each Holder of Allowed Subclass 3A Claims with regard to the GS Adjustment Equity as set forth in ARTICLE III.C.3.c.  The issuance of New Common Shares by RT Asset Company is authorized without the need for any further corporate action or without any further action by the Debtors or the Reorganized Debtors, as applicable.  All of the shares of New Common Shares issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.

On the Effective Date, RT Asset Company and all the holders of the Exchange Common Shares shall be deemed to be parties to the Amended Organizational Documents, substantially in the form contained in the Plan Supplement, without the need for execution by any such holder. The Amended Organizational Documents shall be binding on RT Asset Company and all parties receiving, and all holders of, New Common Shares; provided, that regardless of whether such parties execute the Amended Organizational Documents, such parties shall be deemed to have signed the Amended Organizational Documents which shall be binding on such parties as if they had actually signed it.  To the extent that RT Asset Company elects to be organized as a limited liability company, each Holder receiving New Common Shares may be required to execute a signature page to the applicable limited liability company agreement or Amended Organizational Documents as a condition precedent to such distribution, to the extent that such Holder is not deemed to accept any and all of such terms as a condition to receiving such distribution.

As of the Petition Date, no class of Equity Securities of Holding was registered under the Securities Exchange Act, and Holding was not subject to any of the periodic reporting obligations of such Act.  Except as otherwise provided under the Amended Organizational Documents, in each case consistent with the RSA, or unless otherwise determined by the New Board in accordance with applicable non-bankruptcy law, it is intended that, from or after the Effective Date, neither RT Asset Company nor RT Lodge Company will have any class of its Equity Securities registered under or become subject to any of the periodic reporting obligations of such Act.

To the extent that any such instruments constitute "securities" under applicable securities laws, the offer and sale of Exit Term Loans, Exchange Common Shares pursuant to the Plan shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon the exemption from such registration requirements afforded by section 1145 of the Bankruptcy Code.

The offer and sale of Equity Securities to officers and other key employees of the Reorganized Debtors pursuant to the MIP shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon available exemptions from such registration requirements afforded by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

The New Common Shares of RT Asset Company shall constitute a single class of Equity Security in RT Asset Company and, other than as contemplated under the MIP or by issuance of New Common Stock upon any exercise of Warrants as set forth in the Plan, there shall exist no other Equity Securities, warrants, options, or other agreements to acquire any equity interest in RT Asset Company. From and after the Effective Date, after giving effect to the transactions contemplated hereby, the authorized capital stock or other equity securities of RT Asset Company shall be that number of shares of New Common Shares as may be designated in the Amended Organizational Documents.

## I.  Substantive Consolidation for Plan Purposes

The Plan serves as a motion by the Debtors seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Estates of all of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes only. Substantive consolidation shall not (i) alter the state of incorporation of any Debtor for purposes of determining applicable law of any of the Causes of Action, Litigation Claim or Avoidance Action (ii) alter or impair the legal and equitable rights of the Debtors to enforce any of the Causes of Action, Litigation Claims or Avoidance Actions or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action, Litigation Claims or Avoidance Actions, or issues raised as a part of any thereof.

If substantive consolidation is ordered, then on and after the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate solely for purposes of treatment of and distributions on Claims. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

## J.  Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates shall be fully released, terminated, extinguished and discharged, in each

case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  Any Entity holding such Liens or Equity Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors and/or RT Lodge Company (as the case may be), such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors and/or RT Lodge Company.

## K.    Amended Organizational Documents

The Amended Organizational Documents shall satisfy the provisions of the Plan and the Bankruptcy Code, and shall (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Common Shares in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan; (iii) to the extent necessary or appropriate as determined by the Debtors (after consultation with each Holder of an Allowed Subclass 3B Claim and each Holder of an Allowed Subclass 3A Claim if any GS Adjustment Equity is distributed to such Holder), include restrictions on the Transfer of New Common Shares; and (iv) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.

Also, after the Effective Date, the Reorganized Debtors and/or RT Lodge Company, as the case may be, may amend and restate their limited liability company agreements, certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law and their respective charters, by-laws and other organizational documents.

## L.    Directors and Officers of Reorganized Debtors and RT Lodge Company

The New Board shall be comprised initially of five (5) directors, who shall consist of:  (i) the Chief Executive Officer of RT Asset Company (ii) two (2) directors selected by the Holders of a majority of the Allowed Subclass 3B Claims and (iii) two (2) independent directors (with an initial term of one year, after which the members of the New Board shall be appointed as provided in the Amended Organizational Documents.  Any directors designated pursuant to this section shall be subject to approval of the Bankruptcy Court pursuant to section 1129(a)(5) of the Bankruptcy Code.  The New Board shall have authorized or ratified any proposed transaction or transfer relating to any matters.

The board of directors of RT Lodge Company as of the Effective Date shall be selected by the Holders of a majority of the Allowed Subclass 3A Claims, each such Holder acting in its respective sole discretion.

Except as set forth in the Plan, any other directors or officers of the Debtors shall be deemed removed as of the Effective Date.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors shall disclose, in a Plan Supplement or on the record at the Confirmation Hearing, the identity and affiliations of

any Person proposed to serve on the initial board of directors or as an officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director or officer, the nature of any compensation for such Person.  Each such director and each officer shall serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors.  The existing board of directors of Holding shall be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

## M.    **Corporate Action**

Each of the Debtors and the Reorganized Debtors and/or RT Lodge Company, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan or to effectuate the Alternative Structures, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of RT Asset Company and/or RT Lodge Company, and, in each case, except as expressly required pursuant to the Plan or the RSA, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors, as applicable, or by any other Person.

Other actions necessary to effect the Alternative Structures may include:  (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Debtors or Reorganized Debtors (or RT Lodge Company, as applicable) may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance or dissolution pursuant to applicable state or provincial law; and (iv) all other actions that the applicable Debtors or Reorganized Debtors (or RT Lodge Company, as applicable) determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Alternative Structures.  If and to the extent necessary, any controlling organization or formation documents or agreements for the Reorganized Debtors and/or RT Lodge Company shall be deemed amended to authorize the foregoing.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors,

41

managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person (except as expressly required pursuant to the RSA).

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable (or RT Lodge Company, as applicable) in connection with the Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), or by any other Person (except as expressly required pursuant to the RSA).  On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person (except as expressly required pursuant to the RSA).  The secretary and any assistant secretary or managing member of each Debtor and each Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), shall be authorized to certify or attest to any of the foregoing actions.

## N.    Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim against the Debtors (or, solely in the event that GS does not select Reorganized Holding to be RT Lodge Company, Equity Interests in Holding) and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect (including, solely in the event that GS does not select Reorganized Holding to be RT Lodge Company, any relating to the Equity Interests in Holding).  Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, the holders of or parties to such cancelled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  Notwithstanding such cancellation and discharge or anything to the contrary in the Plan or the Confirmation Order, the Prepetition Credit and Guaranty Agreement and any other agreement, instrument, or document related to each of the foregoing shall continue in full force and effect to the extent necessary to: (1) allow Holders of Claims and Equity Interests to receive Plan Distributions; (2) allow the Reorganized Debtors or the Distribution Agent (or RT Lodge Company, as applicable), as the case may be, to make

42

distributions pursuant to the Plan; (3) allow the Prepetition Agent to receive distributions under the Plan on account of the Prepetition Secured Debt Claims, respectively, for further distribution in accordance with the Plan and the Prepetition Credit and Guaranty Agreement; (4) allow the Prepetition Agent to seek and/or receive compensation and/or reimbursement of fees and expenses in accordance with the Plan or any order of the Bankruptcy Court; (5) preserve all rights, remedies, indemnities, powers, and protections of the Prepetition Agent (including all rights to payment of fees and expenses) as against any person or entity other than the Debtors or Reorganized Debtors (or RT Lodge Company, as applicable), and any money or property distributable to the beneficial holders under the relevant instrument (including any rights to priority of payment) and any exculpations of the Prepetition Agent (which rights, remedies, indemnities, powers and protections against all persons and entities other than the Debtors or Reorganized Debtors (or RT Lodge Company, as applicable) and against such distributable money or property and which exculpations shall survive and remain in full force and effect, and not be released, discharged or affected in any way by the terms of the Plan or the Confirmation Order, notwithstanding anything to the contrary contained in the Plan or the Confirmation Order); (6) allow the Prepetition Agent to enforce any rights and obligations owed to each of them under this Plan or the Confirmation Order; (7) permit the Prepetition Agent to appear and be heard in the Chapter 11 Cases, or in any proceeding in the Bankruptcy Court or any other court; (8) permit the Prepetition Agent to exercise rights and obligations relating to the interests of the Prepetition Secured Creditors, to the extent consistent with this Plan and the Confirmation Order, and (9) permit the Prepetition Agent to perform any functions that are necessary to effectuate any of the foregoing.  Except as expressly provided pursuant to this Plan, each of the Prepetition Agent, and their respective agents, successors, and assigns shall be fully relieved and discharged from all of their duties and obligations associated with the Prepetition Credit and Guaranty Agreement.  The commitments and obligations (if any) of the Prepetition Secured Creditors to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries or any of their respective successors or assigns under the Prepetition Credit and Guaranty Agreement, shall fully terminate and be of no further force or effect on the Effective Date.

## O.    <u>Cancellation of Existing Instruments Governing Security Interests</u>

Upon the full payment or other satisfaction of an Allowed Miscellaneous Secured Claim, or promptly thereafter, the Holder of such Allowed Miscellaneous Secured Claim shall deliver to the Debtors, Reorganized Debtors or RT Lodge Company, as applicable, any Collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Miscellaneous Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

On the Effective Date, any Lien in Collateral of any Debtor or Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), held for the DIP Facility Claims and/or the Prepetition Secured Debt Claims shall be cancelled and of no further force or effect. Notwithstanding any other provision hereof, as a condition of any distribution for the benefit of Holders of DIP Facility Claims and/or Prepetition Secured Debt Claims, the respective collateral agents therefore shall deliver to the Debtors or Reorganized Debtors, as applicable (or RT Lodge Company, as applicable), at the Debtors' or Reorganized Debtors' (or RT Lodge Company's, as

applicable) expense, any Collateral or other property of a Debtor or Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), held for DIP Facility Claims and/or Prepetition Secured Debt Claims, together with any termination statements, instruments of satisfaction, or releases of all Liens that may be reasonably requested by the Debtors or the Reorganized Debtors (or RT Lodge Company, as applicable) to terminate any related financing statements, mortgages, or similar interests or documents.

**P.      Preserved Intercompany Claims; Intercompany Interests; Corporate Reorganization; Liquidation of Certain Debtors**

As stated above in the definition of the term Restructuring in ARTICLE I.C hereof:  (1) if the Assets have not been sold by the Effective Date, then concurrently on the Effective Date, (a) the Equity Interests in RT Asset Company would be distributed to (x) each Holder of the Allowed Subclass 3A Claims (if any GS Adjustment Equity would be distributed on account of such Claim) and (y) each Holder of the Allowed Subclass 3B Claims; (b) RTI would transfer its Assets, other than RT Lodge, and the Equity Interests in the Reorganized Subsidiaries (as well as any non-Debtor subsidiaries of RTI or the Reorganized Subsidiaries) to RT Asset Company; (2) if the RT Lodge has not been sold by the Effective Date, then concurrently on the Effective Date, each Holder of the Allowed Subclass 3A Claims would receive its Pro Rata share of one hundred percent (100%) of the Equity Interests in RT Lodge Company; and (3) if GS does not select Reorganized Holding to be RT Lodge Company, the Equity Interests in Holding would be extinguished.  Consistent with ARTICLE III.C.4, ARTICLE V.C and ARTICLE V.Q hereof, the Debtors (with the written consent of each of the Prepetition Secured Creditors, which may not be unreasonably denied or delayed) may designate and allocate Assets of the Estates and related obligations (including, without limitation, the RT Asset Obligations and RT Lodge Obligations) of the Debtors among the Reorganized Debtors and RT Lodge Company pursuant to one or more exhibits to the Plan Supplement, as such allocation may be amended, modified and/or supplemented on or before the Effective Date.

On the Effective Date, or as soon thereafter as is practicable, without the need for any further corporate action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable (or RT Lodge Company, as applicable), (a) the certificates and all other documents, as well as any uncertificated interests, representing the Intercompany Interests shall be deemed to be in full force and effect (and shall be retained by the Holders thereof prior to the Effective Date) and (b) all Preserved Intercompany Claims and Intercompany Interests shall be reinstated in full or in part (collectively, the "Subsidiary Structure Maintenance") except, to the extent that the Debtors, Reorganized Debtors, their Affiliates or their successors, as applicable, as they determine necessary (after consultation with the Prepetition Secured Creditors), may effectuate Alternative Structures, which may include, without limitation, merger or dissolution of certain Debtors or Reorganized Debtors (and/or RT Lodge Company, as the case may be) and the cancellation of certain Intercompany Interests, the transfer of Intercompany Interests among Reorganized Debtors, their successors, RT Lodge Company or their Affiliates (other than any Equity Parent), or cancellation or discharge in full or in part of, or contribution, distribution or other transfer between and among the Debtors or their Affiliates (other than any Equity Parent) in full or in part of Preserved Intercompany Claims.

44

On the Effective Date, or as soon thereafter as is practicable, the Debtors listed on Exhibit A to this Plan will be liquidated pursuant to this Plan and a certificate of cancellation or dissolution, as applicable for each such Debtor, will be filed with Delaware's Secretary of State or the appropriate authority immediately after the Effective Date. Each such liquidation shall be effective as of the Effective Date pursuant to this Plan and the Confirmation Order.

## Q.    Restructuring Transactions

On or after the Confirmation Date, the Debtors, Reorganized Debtors or RT Lodge Company, as applicable, may undertake the Restructuring Transactions and take all other actions consistent with this Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with this Plan, including effectuation of the Alternative Structures and all Asset Sales (including, without limitation, the sale of RT Assets and/or RT Lodge in one or more sale transactions).

Consistent with ARTICLE III.C.4 and ARTICLE V.P hereof, the Debtors (with the written consent of each of the Prepetition Secured Creditors) may designate and allocate Assets of the Estates and related Allowed Claims against and obligations of the Debtors (including, without limitation, the RT Asset Obligations and RT Lodge Obligations) among the Reorganized Debtors and RT Lodge Company pursuant to one or more exhibits to the Plan Supplement, as such allocation may be amended, modified and/or supplemented on or before the Effective Date.

## R.    Consenting Lenders Fees and Expenses

Prior to the Effective Date, to the extent not previously paid pursuant to the DIP Orders, the Debtors shall pay in full in Cash all outstanding Consenting Lenders Fees and Expenses incurred, or estimated to be incurred, through the Effective Date, in accordance with the terms of the applicable orders (including the DIP Orders), engagement letters, or other applicable contractual arrangements, but without regard to any notice or objection period as may be contained in such applicable orders, engagement letters, or other applicable contractual arrangements, subject to adjustment, if necessary, for the actual Consenting Lenders Fees and Expenses incurred.

## S.    Asset Sales Postpetition

The Debtors shall have commenced a sale process for the Assets in accordance with the Sale Milestones, which require that the Debtors file with the Bankruptcy Court a motion to approve marketing and bidding procedures for the Assets. The requested bidding procedures shall require that (i) an Auction be held (if a Topping Bid is received by the Debtors) no earlier than 60 days and no later than 105 days after such order is entered; (ii) a Successful Bidder be selected no later than three days after such Auction; and (iii) the closing of the sale occur within 60 days after the Bankruptcy Court approves the sale to the Successful Bidder. If a Topping Bid is received and a Successful Bid is selected after the Auction for the Assets, then the Confirmation Hearing shall be the sale hearing and the Confirmation Order shall be the order approving such sale under section 363 and/or 1123(a)(5)(D) of the Bankruptcy Code. The Successful Bid at the Auction must provide for cash consideration at closing that is sufficient to

pay all of the Prepetition Secured Debt Claims and DIP Facility Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) in cash in full on the closing date.

Any Topping Bid (or Topping Bids) must provide for cash deposits of no less than 10% of the purchase price and provide for cash consideration at closing that is sufficient to pay all DIP Facility Claims and Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) in cash in full on the closing date.

The DIP Facility Lenders and the Prepetition Secured Creditors reserve the right to credit bid the entire amount of all obligations under the DIP Credit Agreement and Prepetition Credit and Guaranty Agreement, as applicable, including without limitation, all principal interest, fees, expenses, call premiums, yield maintenance and other fees and charges; provided, however, the Debtors expressly preserve their rights to contest the allowance of any call premium and yield maintenance premium under the Prepetition Credit and Guaranty Agreement and shall not be required under the DIP Facility to stipulate the allowance of such premiums.  Any credit bid by the DIP Facility Lenders or the Prepetition Secured Creditors may include the principal amount of obligations under the DIP Credit Agreement and Prepetition Credit and Guaranty Agreement, as applicable, plus all accrued interest.

The sale of the Assets to any Successful Bidder shall be on an "as is, where is and with all faults" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates except to the extent set forth in the Successful Bidder's asset purchase agreement.  If a Successful Bid is selected after the Auction for the Assets, at the Confirmation Hearing, the Debtor shall seek Bankruptcy Court approval of the sale of the Assets to the Successful Bidder(s), free and clear of all liens, claims and encumbrances, and other interests pursuant to section 363(f) and/or 1141(c) of the Bankruptcy Code with all such liens, claims and encumbrances, and other interests attaching to the proceeds of the sale, except as otherwise provided with the same validity and in the same order of priority as they attached to the Assets prior to the sale.  The Debtor shall submit and present additional evidence, as necessary, at the Confirmation Hearing demonstrating that such sale is fair, reasonable, and in the best interest of the Debtors' estates and all interested parties, and satisfies the standards necessary to approve a sale of substantially all of a debtor's assets articulated by the Court of Appeals for the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), as applicable.  The closing of the sale to a Successful Bidder shall take place in accordance with the terms of the Successful Bidder's asset purchase agreement, as approved by the Bankruptcy Court at the Confirmation Hearing and the approved bidding procedures.

Notwithstanding anything to the contrary herein, all Asset Sales shall be subject to the prior consent of the Prepetition Secured Creditors unless such sale (1) does not require the consent of the Prepetition Secured Creditors because it satisfies the standards set forth in section 6.9(e) of the DIP Credit Agreement or (2) provides for the binding commitment to pay and pays the Prepetition Secured Creditors in at or above an agreed-upon release price in Cash at closing.

Upon payment in full from Net Sale Proceeds of the DIP Facility Claims and the Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid), the Prepetition Secured Debt Claims shall no longer be

46

classified or treated under the Plan, the Restructuring described herein shall not occur, and the Reorganized Debtors (including, without limitation, RT Asset Company in its capacity as Distribution Agent under this Plan) shall administer the Reorganized Debtors' assets and implement the Plan as a liquidating "pot" plan for the benefit of its constituencies in accordance with the terms of this Plan and the Confirmation Order.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed assumed by the applicable Debtor in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) and Unexpired Leases that:

- have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

- have been rejected by order of the Bankruptcy Court;

- are the subject of a motion to reject pending on the Effective Date;

- are identified in the Rejected Executory Contract/Unexpired Lease List; or

- are rejected pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned to a successor pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption or assumption and assignment to a successor (including, but not limited to, RT Asset Company or RT Lodge Company, as applicable) of such Executory Contract or Unexpired Lease, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan shall revest in and be fully enforceable by the Debtors or the applicable successor (including, but not limited to, RT Asset Company or RT Lodge Company, as the case may be) in accordance with its terms, except as modified by agreement of the counterparty to the Executory Contract or Unexpired Lease, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

**B.**     **Assignment of Executory Contracts or Unexpired Leases**

As of the Effective Date, unless the DIP Facility Claims and Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) shall have been paid in full from Net Sale Proceeds on or before the Effective Date, all Executory Contracts and Unexpired Leases not identified in the Rejected Executory Contract/Unexpired Lease List shall be deemed assumed and, to the extent applicable, assigned to the designated Reorganized Debtor; *provided, however*, that such Executory Contracts and Unexpired Leases relating to RT Lodge shall be assumed and assigned to RT Lodge Company. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions identified in this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**C.**     **Rejection of Executory Contracts or Unexpired Leases**

All Executory Contracts and Unexpired Leases identified in the Rejected Executory Contract/Unexpired Lease List shall be deemed rejected as of the Effective Date. In addition, if the DIP Facility Claims and Prepetition Secured Debt Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) shall have been paid in full from Net Sale Proceeds on or before the Effective Date, then all Executory Contracts and Unexpired Leases that have not been (a) assumed and assigned to the Successful Bidder(s) as of the closing of the sale or (b) identified in a schedule of assumed Executory Contracts and Unexpired Leases that may be included in the Plan Supplement shall be deemed rejected as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections identified in the Rejected Executory Contract/Unexpired Lease List and this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court: (a) within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or such other date as may be set by such order, other than for Unexpired Leases of non-residential real property; and (b) by the later of thirty (30) days (x) after the date the Debtors relinquish control of the premises to the affected landlord counterparty by notifying the affected landlord counterparty in writing of the Debtors' unequivocal and irreversible surrender of the leased property to the affected landlord counterparty and either (i) turning over keys to the affected landlord or its property manager, or (ii) notifying the affected landlord or its property manager in writing that the keys are not available but that the landlord may rekey the leased premises, and (y) the effective date of the rejection, for Unexpired Leases of non-residential real property ((a) and (b) together, the "Rejection Claim Bar Date"). The Debtors or Reorganized Debtors, as the case may be, shall provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim. The deadline for filing a Proof of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to a prior order of the Bankruptcy Court shall be as set forth in such order; provided, however if such order does not set such a deadline, the deadline shall be the Rejection Claim Bar Date. Each Claim arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General

Unsecured Claim subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in ARTICLE X.E.2 of the Plan. If such Claim is untimely Filed, it shall not be Allowed for distribution purposes pursuant to Plan, unless the Claims Objection Bar Date passes without an objection or other proceeding to disallow, or otherwise eliminate or reduce such Claim having been initiated.

Notwithstanding anything to the contrary herein, all rights of the Debtors, the Reorganized Debtors, RT Lodge Company and any counterparty to any Executory Contract or Unexpired Lease are reserved in the event that the Debtors, the Reorganized Debtors or RT Lodge Company, as applicable, amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease.

**D.**     **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon the earlier of assumption thereof and the Effective Date, by payment of the undisputed default amount in Cash or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree, subject to ARTICLE VI.E. The Debtors may serve a notice on parties to Executory Contracts and Unexpired Leases to be assumed reflecting the Debtors' intention to assume the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure (if any). If a counterparty to any Executory Contract or Unexpired Lease that the Debtors intend to assume does not receive such a notice, the proposed cure for such Executory Contract or Unexpired Lease shall be deemed to be zero dollars ($0).

Notwithstanding anything to the contrary in the Plan, with respect to any assumed Unexpired Lease of non-residential real property, the Debtors (or, if after the Effective Date, the applicable Reorganized Debtor or, solely in the case of any Unexpired Lease that relates to the RT Lodge and has been assumed and assigned to RT Lodge Company, RT Lodge Company), shall remain liable for all obligations arising under the Unexpired Lease that were not otherwise required to be asserted as a cure cost, including: (1) for amounts owed or accruing under such Unexpired Lease that are unbilled or not yet due as of the Confirmation Hearing regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, and similar charges; (2) any regular or periodic adjustment or reconciliation of charges under such Unexpired Lease that are not due or have not been determined as of the Confirmation Hearing; (3) any percentage rent that comes due under such Unexpired Lease; (4) post-assumption obligations under such Unexpired Lease; and (5) any obligations to indemnify the

49

non-Debtor counterparty under such Unexpired Lease for any claims of third parties pursuant to the terms of the Unexpired Lease, which are not known or liquidated by the time of the Confirmation Hearing (and therefore not payable as a cure cost pursuant to Bankruptcy Code § 365(b)(1)(a)).  Other than with respect to cure amounts fixed in connection with this Plan, all rights of the parties to any assumed Unexpired Lease of non-residential real property to dispute amounts due thereunder are preserved.

E.     **Objections to Assumption, Assignment or Cure of Executory Contracts or Unexpired Leases**

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assignment to a successor or any related monetary cure amount must be Filed, served and actually received by the Debtors at least five (5) Business Days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption, assignment or cure amount shall be deemed to have consented to such assumption or assumption and assignment, and to such cure, of its Executory Contract or Unexpired Lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  In the event of a dispute regarding assumption, assumption and assignment, or cure of any Executory Contract or Unexpired Lease, any applicable disputed cure payments shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment to a successor, and cure.  The Debtors  reserve the right to reject any Executory Contract or Unexpired Lease at any time in lieu of assuming or assuming and assigning it to a successor.  Should the parties be unable to resolve a dispute regarding the amount of any payments required to cure a default with respect to an Unexpired Lease being assumed by the Debtors within thirty (30) days following the Confirmation Date, such parties may request a hearing before the Bankruptcy Court to resolve such dispute upon fourteen (14) days' notice.

F.     **Post-Effective Date Management Agreements**

Subject to the prior written consent of the Prepetition Secured Creditors (or either of them as applicable to RT Asset Company or RT Lodge Company), nothing herein shall prevent or prohibit the Debtors, the Reorganized Debtors and/or RT Lodge Company from entering into new management employment agreements with their key management to be effective as of the Effective Date, covering, without limitation, base salary, incentives, and executive benefits.

G.     **Director and Officer Insurance Policies**

Upon the Effective Date, the Reorganized Debtors will have similar insurance coverage to the D&O Liability Insurance Policies in effect upon the Petition Date.  Any such policy in effect, including any coverage for an extended discovery period (or "tail policy"), as of the Effective Date, shall be deemed an assumed contract to the extent executory.  For the avoidance of doubt, any new D&O Liability Insurance Policies that are to be purchased and effective as of the Effective Date shall be in form and substance reasonably satisfactory to the Debtors and the Prepetition Secured Creditors.

## H.    Indemnification Provisions

The Debtors may file (subject to the consent of the Prepetition Secured Creditors), as part of the Plan Supplement, a Schedule of Assumed Compensation and Benefit Programs in form and substance acceptable to the Prepetition Secured Creditors.  To the extent included in such Schedule of Assumed Compensation and Benefit Programs, indemnification provisions in place immediately prior to the Effective Date (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the current and former directors, officers and employees of the Debtors who served in such capacity with respect to the Debtors, or based upon any act or omission taken or omitted in such capacities for or on behalf of the Debtors, shall be assumed by the Reorganized Debtors, and shall survive effectiveness of the Plan unless rejected pursuant to ARTICLE VI.C.  No such assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable; provided, further, that the Reorganized Debtors shall have no indemnification obligations for any losses, liabilities, or expenses arising out of conduct determined by a Final Order to have constituted actual fraud, gross negligence, bad faith, or willful misconduct.

## I.    Compensation and Benefit Programs

As stated in the subsection immediately above, the Debtors may file (subject to the consent of the Prepetition Secured Creditors, which consent shall not be unreasonably withheld), as part of the Plan Supplement, a Schedule of Assumed Compensation and Benefit Programs in form and substance acceptable to the Prepetition Secured Creditors.  Except as otherwise provided in the Confirmation Order, the Plan and/or Plan Supplement, as identified in the Schedule of Assumed Compensation and Benefit Programs, unless rejected pursuant to ARTICLE VI.C, all such identified employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, vacation and paid time off programs, severance benefit plans, incentive plans ((x) with the terms and payouts under such, and (y) other than equity incentive plans providing for the distribution of equity in the Debtors, which shall be replaced by the MIP), life, and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date shall be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, in each case to the extent listed on the Schedule of Assumed Compensation and Benefit Programs.

Notwithstanding anything to the contrary herein, the Debtors may not adopt any new executive compensation or retention plans or bonuses, or make any related payments without the prior written consent of the Prepetition Secured Creditors, which consent shall not be unreasonably withheld.

## J.    Workers' Compensation Benefits

Except as otherwise provided in the Plan, as of the Effective Date, the applicable Reorganized Debtor (or, solely to the extent related to the RT Lodge and assumed by RT Lodge Company, RT Lodge Company) shall continue to honor its obligations under:  (i) all applicable workers' compensation laws in states in which the applicable Reorganized Debtor (or, as

51

applicable, RT Lodge Company) operates; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance.  All such contracts and agreements are treated as Executory Contracts under the Plan and, unless rejected pursuant to ARTICLE VI.C, on the Effective Date shall be assumed and assigned to the applicable Reorganized Debtor (or, solely to the extent related to the RT Lodge and assumed by RT Lodge Company, RT Lodge Company) pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not impair or otherwise modify any rights of the Reorganized Debtors or RT Lodge Company (as applicable) under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

**K.**     **Insurance Policies**

Other than the insurance policies otherwise discussed herein, all other insurance policies to which any Debtor is a party as of the Effective Date shall be deemed to be and treated as Executory Contracts and shall, unless rejected pursuant to ARTICLE VI.C, be assumed by the applicable Reorganized Debtor (as applicable) and shall continue in full force and effect thereafter in accordance with their respective terms.  RT Lodge Company shall enter into insurance policies in form and substance acceptable to GS in its sole discretion, which insurance policies shall be in full force and effect as of the Effective Date or as soon as practicable thereafter.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**     **Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Distribution Agent shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date.  To the extent reasonably practicable, the Reorganized Debtors or the Distribution Agent shall make distributions no less frequently than annually following the Effective Date.

**B.**     **Distributions on Account of Claims Allowed After the Effective Date**

**1.**     **Payments and Distributions on Disputed Claims.**

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, if a Disputed Claim becomes an Allowed Claim after the Effective Date, distributions that would be past due under the Plan on account of such Disputed Claim if it had previously been an Allowed Claim shall be made within thirty (30) days after the Disputed Claim becomes an Allowed Claim, or as soon as practicable thereafter, without any interest to be paid on account of such Claim unless it is a Secured Clam and such payment is required under applicable bankruptcy law.

2.      **Special Rules for Distributions to Holders of Disputed Claims.**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and such Claim has become an Allowed Claim.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims pursuant to ARTICLE VII.B.3 hereof.

3.      **The Disputed General Unsecured Claims Reserve.**

On the Effective Date, the Reorganized Debtors shall establish from available Cash of the Debtors and withhold from distributions as a reserve for Class 4 a portion of the Class 4 Aggregate Cash Distribution (the "Class 4 Reserve"), which amount to be withheld shall be determined prior to the Effective Date by the Debtors (in consultation with the Prepetition Secured Creditors and any Creditors' Committee) subject to the following.  The amount of Cash to be withheld as a part of the Class 4 Reserve for the benefit of a Holder of a Disputed Claim in Class 4 shall be equal to the lesser of the amount set forth in the following clause (a) and the amount set forth in the following clause (b): (a) (i) if no estimation is made by the Bankruptcy Court pursuant to ARTICLE VIII herein, the amount of Cash necessary to satisfy the distributions required to be made pursuant to the Plan based on the asserted amount of the Disputed Claim or, if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Debtors elect to withhold on account of such Claim in the Class 4 Reserve; or (b) Cash necessary to satisfy the distributions required to be made pursuant to the Plan based on an amount as may be agreed upon by the Holder of such Disputed Claim and the Reorganized Debtors.  As Disputed Claims are Allowed, the Distribution Agent shall distribute, in accordance with this section and the other terms of the Plan, Cash to Holders of Allowed General Unsecured Claims, and the Class 4 Reserve shall be adjusted accordingly.  To the extent reasonably practicable, any such distributions payable from the Class 4 Reserve to the holders of Allowed General Unsecured Claims shall be made no less frequently than annually following the Effective Date.

C.      **Delivery and Distributions and Undeliverable or Unclaimed Distributions**

1.      **Record Date for Distributions**

At the close of business on the Distribution Record Date, the Claims Register and any register maintained by the Prepetition Agent or its agents (each, a "Register," and collectively the "Registers"), shall be closed and the Debtors or the Reorganized Debtors (as the case may be), the Distribution Agent, the Prepetition Agent, and their respective agents shall not be required to make any further changes in the record holders of any of the Claims.  The Debtors or the Reorganized Debtors (as the case may be), the Distribution Agent and the Prepetition Agent shall have no obligation to recognize any transfer of the Claims occurring on or after the Distribution Record Date.  Any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Registers as of the close of business on the Distribution Record Date.  If a Claim, other than one based on a publicly traded

security, is transferred 20 or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Equity Interests in Holding shall be closed until the Effective Date, and there shall be no further changes in the record holders of such Equity Interests until the Effective Date.

The Reorganized Debtors, the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfers of Claims or Equity Interests not occurring timely in accordance herewith and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders on the Claims Register, the Registers or the transfer ledgers, as applicable, as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions. The Prepetition Agent shall be authorized to provide its Register, if any, to the Reorganized Debtors or the Distribution Agent for purposes of making distributions under the Plan.

### 2.        Delivery of Distributions in General

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that, permissively, Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

Except as otherwise provided herein, Plan Distributions to Holders of Allowed Claims shall be delivered to the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution or on the Registers with respect to Holders of Prepetition Secured Debt Claims; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtors or the Reorganized Debtors, as applicable; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder or in each of the Registers with respect to Holders of Prepetition Secured Debt Claims.

Notwithstanding any provisions herein to the contrary, the Prepetition Credit and Guaranty Agreement shall continue in effect to the extent necessary to allow the Debtors or Reorganized Debtors, as applicable, either directly or through the Distribution Agent to make Plan Distributions pursuant to this Plan on account of the Prepetition Secured Debt Claims. The Prepetition Agent shall not act as Distribution Agent with respect to any distributions of Exit Term Loan, New Common Stock, or, except as expressly provided herein or in the Confirmation Order, any other distributions under the Plan and shall have no responsibility or liability for such distributions.

### 3.        Distributions by Distribution Agents

Except as otherwise set forth in this ARTICLE VII.B, all or a portion of the Plan Distributions shall be made by the Reorganized Debtors as Distribution Agent, or by such other

Entity or Entities designated by the Debtors as Distribution Agent(s) on or before the Effective Date or thereafter, unless the Plan or the Confirmation Order specifically provides otherwise. The Reorganized Debtors, or such other Entity or Entities designated by the Debtors to be Distribution Agent(s), shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Plan Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

**4.      Minimum Distributions**

Notwithstanding anything herein to the contrary, the Reorganized Debtors or the Distribution Agent shall not be required to make distributions or payments of less than $100 and shall not be required to make partial distributions or payments of fractions of dollars, shares or warrants.  Whenever any payment or distribution of a fraction of a dollar, fraction of a share of New Common Shares under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding down of such fraction to the nearest whole dollar or whole share.

**5.      Undeliverable Distributions**

a.      Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent(s)) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder within thirty (30) days following such notification or as soon as practicable thereafter. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to the following subsection hereof, until such time as any such distributions become deliverable.  Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind.

b.      Failure to Claim Undeliverable Distributions

Except as otherwise provided in the Plan, any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.  In such cases, (i) any Exchange Common Shares, or Cash held for distribution on account of Allowed Claims in

55

Class 4  shall be redistributed to Holders of Allowed Claims in such Class and as may be limited by the Plan, within seventy-five (75) days thereafter and (ii) any Cash held for distribution to any other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto.  Nothing contained herein shall require the Reorganized Debtors or any Distribution Agent(s) to attempt to locate any Holder of an Allowed Claim.

        c.        Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 120 days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property.  In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto.  Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

## D.      **Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, and related liens and encumbrances. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Government Unit, including income, withholding and other tax obligations, on account of such distribution.  The Reorganized Debtors and the Distribution Agent(s) have the right, but not the obligation, not to make a distribution until such Holder has made arrangements satisfactory to the Reorganized Debtors and the Distribution Agent(s) for payment of any such tax obligations.  The Reorganized Debtors and the Distribution Agent(s) may require, as a condition to the receipt of a distribution, that the Holder of an Allowed Claim complete the appropriate Form W-8 or Form  W-9, as applicable to each Holder.  If such Holder fails to comply with such request within one year, such distribution shall be deemed an unclaimed distribution.

In connection with the distribution of New Common Shares to current or former employees of the Debtors, RT Asset Company shall take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations, including, when applicable, withholding from distributions a portion of the New Common Shares, selling such securities or requiring Holders of such securities to contribute the Cash necessary to satisfy tax withholding obligations including, without limitation, income, social security and Medicare taxes, and RT Asset Company shall pay such withheld taxes to the appropriate Governmental Unit.

To the extent that any Allowed Claim entitled to distribution under the Plan consists of indebtedness and accrued but unpaid interest thereon, such distributions shall, for all income tax purposes, be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### E.    Timing and Calculation of Amounts to Be Distributed

On the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or at such other time as may be specified in the Plan, each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class, provided that, in the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in ARTICLE VII hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### F.    Setoffs

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim, other than the Allowed Claim of a Prepetition Secured Creditor and other than from distributions consisting of payments to be made under an assumed Executory Contract or assumed Unexpired Lease to the extent such withholding is precluded thereunder by enforceable provisions thereof, an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, other than the Allowed Claim of a Prepetition Secured Creditor, are adjudicated by Final Order or otherwise resolved, the Reorganized Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, other than the Allowed Claim of a Prepetition Secured Creditor, and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such

Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount (and except as such set off may be precluded by an assumed Executory Contract or assumed Unexpired Lease to the extent precluded thereunder by enforceable provisions thereof). Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

### G.      Surrender of Canceled Instruments or Securities

As a condition precedent to receiving any distribution on account of its Allowed Claim, each record Holder of a Prepetition Secured Debt Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentations shall be deemed to be canceled pursuant to ARTICLE V.N and ARTICLE V.O hereto, except to the extent otherwise provided herein.

### H.      Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Distribution Agent:  (x) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest.  Upon compliance with this Article of the Plan as determined by the Distribution Agent by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the applicable Distribution Agents.

### ARTICLE VIII.
### PROCEDURES CONCERNING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A.      Rights of Reorganized Debtors with Respect to Allowance of Claims and Equity Interests

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors shall have and shall retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed under the Plan (including the Prepetition Secured Debt Claims) or by orders of the Bankruptcy Court.

B.    **No Distributions to Holders of Disputed Claims or Equity Interests Pending Resolution of the Dispute**

Under no circumstances shall any distributions be made on account of any Claim or Equity Interest that is not an Allowed Claim or Equity Interest.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order and the DIP Orders), no Claim or Equity Interest shall  become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.  No payment or other distribution or treatment shall be made on account of a Disputed Claim or Equity Interest, even if a portion of the Claim or Equity Interest is not disputed, unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest and the amount of such Allowed Claim or Equity Interest is determined by a Final Order, provided, however, that the Reorganized Debtors and the subject Holder, may determine allowance of a Disputed Claim or Equity Interest after the Effective Date without further order of the Bankruptcy Court. Notwithstanding any other provision of the Plan, the Reorganized Debtors and any Distribution Agent shall have no obligation to make any distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

C.    **Resolving Disputed Claims and Equity Interests**

All of the following objection, estimation and resolution procedures are cumulative and not exclusive of one another.

1.    **Generally**

The Debtors and Reorganized Debtors intend to attempt to resolve Disputed Claims and Equity Interests consensually or through judicial means outside the Bankruptcy Court. Nevertheless, from and after the Confirmation Date but before the Effective Date, the Debtors, and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to Claims and Equity Interests and resolve such objections pending as of the Confirmation Date and, may, in their discretion, file with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Equity Interest or any other appropriate motion or adversary proceeding with respect thereto until the Claims Objection Bar Date and prosecute all such pending objections, motions or adversary proceedings.  All such matters pending as of the Confirmation Date shall be litigated to Final Order, provided, however, that, except to the extent otherwise provided in the Confirmation Order, the Reorganized Debtors are authorized to settle, or withdraw any such matters with respect to any Disputed Claim or Equity Interest following the Effective Date without further notice or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of the Plan.  The Reorganized Debtors shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

2.      **Estimation**

After the Confirmation Date but before the Effective Date, the Debtors and, after the Effective Date, the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Equity Interest pursuant to applicable law and (b) any contingent or unliquidated Claim or Equity Interest pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Equity Interest, contingent Claim or Equity Interest or unliquidated Claim or Equity Interest, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

D.      **Distributions after Allowance of Disputed Claims or Equity Interests**

Following the date on which a Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest after the Initial Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim or Equity Interest the amount or consideration provided for under the Plan, as applicable, and in accordance therewith.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO**
**CONSUMMATION OF THE PLAN**

The failure to satisfy or waive a condition to Consummation may be asserted, as applicable, by the Debtors, the Prepetition Agent and/or the Prepetition Secured Creditors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

A.      **Conditions Precedent to Consummation**

Consummation of the Plan shall occur on the Business Day as determined by the Debtors with the consent of the Prepetition Agent and the Prepetition Secured Creditors (not to be unreasonably withheld or delayed) after they reasonably determine that the following conditions have been met or waived pursuant to the provisions of ARTICLE IX of the Plan:

1.      The Bankruptcy Court has entered the Confirmation Order not later than 90 days after the Petition Date (unless waived or extended as set forth in ARTICLE IX.B), and such order is in form and substance reasonably acceptable to the Debtors, the Prepetition Agent, and the Prepetition Secured Creditors.

2.      The Confirmation Order provides that, among other things, the Debtors, the Reorganized Debtors or RT Lodge Company, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents or Alternative Structures created in connection with or described in the Plan.

DOCS_LA:331184.26 76136/001

3.      All actions, documents, certificates and agreements necessary to implement this Plan have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

4.      The Plan Documents are consistent with, and in form and substance as required by the approvals and consents set forth in, the RSA; provided, however, for the avoidance of doubt, any Plan Documents regarding organizational and governance matters of the Reorganized Debtors, including, without limitation, the Amended Organizational Documents, shall be acceptable to the Debtors, each Holder of the Allowed Subclass 3B Claims and each Holder of the Allowed Subclass 3A Claims (if any GS Adjustment Equity is distributed on account of such Claim) each in their respective reasonable discretion.

5.      The Debtors shall have established the RT Professional Fee Claim Reserve and funded the RT Professional Fee Claim Reserve with Cash in an amount equal to the RT Professional Fee Claim Reserve Amount.

6.      The Debtors shall have established the RT Priority Claim Reserve and funded the RT Priority Claim Reserve with Cash in an amount equal to the RT Professional Fee Claim Reserve Amount.

7.      The Debtors shall have established the RT Administrative Expense Claim Reserve and funded the RT Administrative Expense Claim Reserve with Cash in an amount equal to the RT Administrative Expense Claim Reserve Amount.

8.      The DIP Facility Claims (other than any such Claims that have been credit bid in connection with a Successful Bid) shall have been repaid in cash in full.

9.      The Debtors shall have paid the cure costs on account of all Assumed Contracts and Unexpired Leases.

10.     All documents and agreements necessary to implement the Plan, including, without limitation, the Exit Loan Documents, the Amended Organizational Documents have (a) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery and/or (c) been effected or executed, as applicable.

11.     The RSA is in full force and effect.

12.     All Consenting Lenders Fees and Expenses have been paid in accordance with ARTICLE V.R hereof.

13.     The New Board and senior management shall have been selected as contemplated by this Plan.

14.     All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in this Plan have been obtained, are not subject to unfulfilled conditions, and are in full force and effect,

61

and all applicable waiting periods have expired without any action having been taken by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

15.     All statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

## B.     Waiver of Conditions

The conditions to Consummation of the Plan set forth in this Article, other than the condition that the Bankruptcy Court has entered a Confirmation Order in form and substance reasonably acceptable to the Debtors, the Prepetition Agent and the Prepetition Secured Creditors, may be waived (or, with respect to the condition in ARTICLE IX.A.1 that the Confirmation Order be entered within 120 days after the Petition Date, extended), in whole or in part, by the Debtors with the consent of the Prepetition Agent and the Prepetition Secured Creditors (which consent shall not be unreasonably withheld or delayed), in each case without further notice, leave, hearing or order of the Bankruptcy Court or any formal action and, thereupon, Consummation may occur.

## C.     Notice of Effective Date

The Debtors or Reorganized Debtors, as the case may be, shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in ARTICLE IX.A of this Plan have been satisfied or waived pursuant to ARTICLE IX.B of this Plan.

## D.     Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE X.
## EFFECT OF CONFIRMATION; AND RELEASE,
## INJUNCTION AND RELATED PROVISIONS

## A.     Compromise and Settlement

1.     Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims

and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims against the Debtors and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors, the Reorganized Debtors or RT Lodge Company or any of their respective assets, property and estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Equity Interests or other rights of a holder of an Equity Security or other ownership interest, and upon the Effective Date, the Debtors, the Reorganized Debtors and the RT Lodge Company shall (i) be deemed to have received a discharge under section 1141(d)(1)(A) of the Bankruptcy Code and release from any and all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Security or other ownership interest, of any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate and cancel all rights of any Equity Security holder in any of the Debtors and all Equity Interests, subject to the Subsidiary Structure Maintenance or Alternative Structures.

2.    Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.

3.    The Confirmation Order shall constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (i) in the best interests of the Debtors, their estates and all Holders of Claims, (ii) fair, equitable and reasonable, (iii) made in good faith and (iv) approved by the Bankruptcy Court pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  In addition, the allowance, classification and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist:  (a) between the Debtors, Reorganized Debtors and Estates, on the one hand, and the Released Parties, on the other hand (to the extent set forth in the release contained in ARTICLE X.B); and (b) as between the Releasing Parties and the Released Parties (to the extent set forth in the release contained in

ARTICLE X.C); and, as of the Effective Date, any and all such Causes of Action are settled, compromised and released pursuant hereto. The Confirmation Order shall approve the releases in the Plan of all contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

4.     Except as expressly provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against each of the Debtors, the Debtors' respective assets, property and Estates, the Reorganized Debtors and RT Lodge Company any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a holder of an Equity Interest, relating to any of the Debtors, Reorganized Debtors or RT Lodge Company or any of their respective assets, property and estates based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Interest and termination of all rights of any such holder in any of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, RT Lodge Company or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtors or terminated Equity Interest.

**B.     <u>Mutual Release by the Debtors and Released Parties</u>**

Except as otherwise provided in this Plan, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Debtors, the Reorganized Debtors, RT Lodge Company and the Estates, on the one hand, and the Released Parties, on the other hand, to the fullest extent permissible under applicable law, the Debtors, the Reorganized Debtors, RT Lodge Company and the Estates, on the one hand, and the Released Parties, on the other hand, shall, and shall be deemed to, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void, extinguish and discharge each other, their Related Persons, and their respective property from any and all Claims, Equity Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies, judgments, defenses, counterclaims, and liabilities of any nature whatsoever, including any derivative Claims asserted or which could be asserted on behalf of a Debtor, a Reorganized Debtor and/or RT Lodge Company, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, RT Lodge Company and the Estates, on the one hand, and Released Parties, on the other hand, would have been legally entitled to assert against the other, their Related Persons or their property in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, RT Lodge Company, any

64

transactions contemplated by the Plan, the Chapter 11 Cases, the DIP Facility, the DIP Facility Loan Documents, the Prepetition Credit and Guaranty Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the Reorganized Debtors or RT Lodge Company, any payments, distributions, or dividends any Debtor or Affiliate paid to or received from any Released Party, fraudulent or preferential transfer or conveyance, tort, contract, breach of fiduciary duty, violation of state or federal laws, including securities laws, negligence, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the RSA, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents; provided, however, that the foregoing release shall not operate to waive or release any Claims, obligations, debts, rights, suits, damages, remedies, Causes of Action, and liabilities in respect of RT Lodge Company or any Debtor, Reorganized Debtor or Estate, on the one hand, or any Released Party, on the other hand, solely to the extent: (1) arising out of or relating to any act or omission of such purportedly released Entity that constitutes actual fraud, gross negligence, bad faith, or willful misconduct as determined by Final Order of a court of competent jurisdiction; or (2) arising under the Plan, the Confirmation Order, or the Plan Documents.

**C.**     **Releases by Holders of Claims and Interests**

Except as otherwise provided in this Plan, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Releasing Parties shall, and shall be deemed to, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void, extinguish, and discharge each Released Party (and each such Released Party so discharged and released shall be deemed discharged and released by the Releasing Parties) and their respective property from any and all Claims, Equity Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies, judgments, defenses, counterclaims, and liabilities of any nature whatsoever, including any derivative Claims asserted or which could be asserted on behalf of a Debtor and/or a Reorganized Debtor, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, any transactions contemplated by the Plan, the Chapter 11 Cases, the Prepetition Credit and Guaranty Agreement, the DIP Facility, the DIP Facility Loan Documents, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, any payments, distributions, or dividends any Debtor or Affiliate paid to or received from any Released Party, fraudulent or preferential transfer or conveyance, tort, contract, breach of fiduciary duty, violation of state or federal laws, including securities laws, negligence, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the RSA, the Plan, the Disclosure Statement, the Plan Supplement,

or related agreements, instruments, or other documents; provided, however, that the foregoing release shall not operate to waive or release any Claims, obligations, debts, rights, suits, damages, remedies, Causes of Action, and liabilities in respect of any Released Party, solely to the extent: (1) arising out of or relating to any act or omission of such Released Party that constitutes actual fraud, gross negligence, bad faith, or willful misconduct as determined by Final Order of a court of competent jurisdiction or (2) arising under the Plan, the Confirmation Order, or the Plan Documents.

### D.    Exculpation

Notwithstanding anything contained herein to the contrary, the Exculpated Parties shall neither have, nor incur any liability to any Entity for any act on or after the Petition Date and on or before the Effective Date taken or omitted to be taken in connection with, or related to, the Chapter 11 Cases, the formulation, negotiation, solicitation, preparation, dissemination, confirmation, or implementation of the Plan, or consummation of the Plan, the RSA, the Disclosure Statement, the Plan Supplement, the Amended Organizational Documents, or other new corporate governance documents, any transactions contemplated by the Plan, the MIP, the Exit L/C Facility, the Exit Term Loan Facility, the issuance, distribution, and/or sale of any shares of the New Common Shares, or any other Security offered, issued, or distributed in connection with the Plan, the Chapter 11 Cases, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or Alternative Structures or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; provided, however, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, further, that the foregoing "Exculpation" shall have no effect on the liability of any Entity solely to the extent resulting from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, bad faith or willful misconduct.

### E.    Injunctions

#### 1.    Confirmation Date Injunction

ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

#### 2.    Effective Date Injunctions

##### a.    Injunction Against All Entities

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY,

66

OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY
RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR
DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE
CONFIRMATION ORDER.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE
PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST SHALL  BE
DEEMED TO HAVE SPECIFICALLY CONFIRMED ITS CONSENT TO THIS
INJUNCTION.

        b.       **Injunction Against Holders of Released, Discharged or Exculpated
Claims**

       Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities
that have held, hold, or may hold Claims or Equity Interests that have been released pursuant to
ARTICLE X.B or ARTICLE X.C, discharged pursuant to ARTICLE X.A, or are subject to
exculpation pursuant to ARTICLE X.D, are permanently enjoined, from and after the Effective
Date, from taking any of the following actions against, as applicable, the Debtors, the
Reorganized Debtors, RT Lodge Company, the Released Parties, or the Exculpated Parties: (a)
commencing or continuing in any manner any action or other proceeding of any kind on account
of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing,
attaching, collecting, or recovering by any manner or means any judgment, award, decree, or
order against such Entities on account of or in connection with or with respect to any such
Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind
against such Entities or the property or Estates of such Entities on account of or in connection
with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff
(except for setoffs asserted prior to the Petition Date), subrogation, or of any kind against any
obligation due from such Entities or against the property or Estates of such Entities on account of
or in connection with or with respect to any such Claims or Equity Interests; and (e) commencing
or continuing in any manner any action or other proceeding of any kind on account of or in
connection with or with respect to any such Claims or Equity Interests released, exculpated, or
settled pursuant to the Plan.  Notwithstanding anything to the contrary herein, nothing in the
Confirmation Order or in the Plan shall in any way limit, reduce, or otherwise bar an otherwise
valid and enforceable right of setoff, subrogation, or recoupment against the Debtors to the
extent that such right is based upon a non-residential real property lease or applicable bankruptcy
law.

**F.**      **Protection against Discriminatory Treatment**

       In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2
of Article VI of the United States Constitution, no Governmental Unit shall discriminate against
RT Lodge Company or any Reorganized Debtor, or any Entity with which RT Lodge Company
or a Reorganized Debtor has been or is associated, solely because RT Lodge Company or such
Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the
commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor
was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11
Cases.

## G.    Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim, and a Final Order has been entered determining such Claim as no longer contingent.

## H.    Recoupment

In no event shall any Holder of Claims or Equity Interests be entitled to recoup any Claim or Equity Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment; provided that (1) the foregoing provisions of this subsection shall be inapplicable to the extent prohibited by otherwise applicable bankruptcy law and as to assumed Executory Contracts and assumed Unexpired Leases and (2) all defenses of the Debtors and Reorganized Debtors to recoupment are preserved; and provided further that the provisions of this subsection are subject to any express, contrary provisions of the Plan.

## I.    Waiver of Certain Avoidance Actions

As set forth with regard to each person or entity listed in an exhibit to the Plan Supplement, on the Effective Date, the Reorganized Debtors shall be deemed to waive and release all Avoidance Actions against such persons and entities of the Reorganized Debtors as of the Effective Date that shall continue to provide goods, services and/or financing to RT Asset Company on and after the Effective Date on terms that, with respect to the provision of goods and/or services, are no less favorable than the terms offered to the Debtors on the Petition Date and, with respect to the provision of financing, are satisfactory, in each case as determined by the Debtors and the Prepetition Secured Creditors (or just TCW (and, if any, its assigns) if there will be no GS Adjustment Equity issued on the Effective Date pursuant to ARTICLE III.C.3.c(1) hereof) in the exercise of their reasonable business judgment.

## J.    Preservation of Rights of Action

### 1.    Maintenance of Causes of Action

Except as otherwise provided in this ARTICLE X or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors and RT Lodge Company, as applicable, shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, and Avoidance Actions, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.  The Reorganized Debtors and RT Lodge Company (as applicable), as the successors in interest to the Debtors and the Estates, may, and shall have the exclusive right to, enforce, sue on, settle, compromise, transfer

or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court. In accordance with the provisions of this Plan, and pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors and RT Lodge Company (as applicable) may compromise and settle Litigation Claims.

### 2.    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action, Litigation Claim or Avoidance Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action, Litigation Claim or Avoidance Action for later adjudication by the Debtors, the Reorganized Debtors or, as applicable, RT Lodge Company (including, without limitation, Causes of Action, Litigation Claims and Avoidance Actions not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action, Litigation Claims or Avoidance Actions have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in ARTICLE X of the Plan) or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtors, the Reorganized Debtors and RT Lodge Company expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff or an interested party against any Entity.

As stated in ARTICLE V.S, the Debtors preserve their rights to contest the allowance of any call premium or yield maintenance premium under the Prepetition Credit and Guaranty Agreement.

### ARTICLE XI.
### BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN SHALL  BIND, AND SHALL  BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) SHALL  RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM OR EQUITY INTEREST IN THE CHAPTER 11 CASES OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities (including, without limitation, RT Asset Company and RT Lodge Company) with respect to all matters related to the Chapter 11 Cases, the Debtors, the Plan, Plan Supplement and Confirmation Order as legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date, as well as with respect to any claims and/or disputes regarding the RT Professional Fee Claim Reserve; provided, however, that, from and after the Effective Date, the Reorganized Debtors and/or RT Lodge Company, as applicable, shall pay Professionals retained by such Entity after the Effective Date in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to which any Debtor or Reorganized Debtor (or, in the case of any Executory Contract or Unexpired Lease relating to RT Lodge that has been assumed and assigned to RT Lodge Company, RT Lodge Company) may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, (a) those matters related to any amendment to this Plan after the Effective Date, e.g., to add or delete Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be rejected and not assumed; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of this Plan;

6.      hear, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors and/or RT Lodge Company after the Effective Date, provided that the Reorganized Debtors and RT Lodge

70

Company each shall reserve the right to commence actions in all appropriate forums and jurisdictions;

> 7.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

> 8.     resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

> 9.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

> 10.     enforce the terms and condition of this Plan and the Confirmation Order;

> 11.     resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification and other provisions contained in ARTICLE X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

> 12.     hear and determine the Litigation Claims by or on behalf of the Debtors, Reorganized Debtors and/or RT Lodge Company;

> 13.     enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

> 14.     resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

> 15.     enter an order concluding or closing the Chapter 11 Cases.

> 16.     All of the foregoing applies following the Effective Date; provided, that from the Confirmation Date through the Effective Date, in addition to the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to all other matters of this Plan that were subject to its jurisdiction prior to the Confirmation Date; provided, further, that the Bankruptcy Court shall not have nor retain exclusive jurisdiction over any post-Effective Date agreement. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### A.    Dissolution of the Creditors' Committee

On the Effective Date, any Creditors' Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases; provided, however, that the Creditors' Committee shall continue to exist and its Professionals shall continue to be retained and entitled to reasonable and documented compensation, without further order of the Court, with respect to: (1) the preparation and prosecution of any final fee applications of the Creditors' Committee's Professionals and (2) all final fee applications Filed with the Bankruptcy Court.

### B.    Payment of Statutory Fees

All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date.  All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

### C.    Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan and in the RSA:  (a) the Debtors reserve the right, with the consent of the Prepetition Agent and the Prepetition Secured Creditors (which consent shall not be unreasonably withheld or delayed) and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors, with the consent of the Prepetition Agent and the Prepetition Secured Creditors (which consent shall not be unreasonably withheld or delayed), or the Reorganized Debtors and/or RT Lodge Company, as applicable, may, and after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

### D.    Revocation of Plan

Subject to the terms of the RSA, including the consent and approval rights contained therein, the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained

in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## E.    <u>Entire Agreement</u>

Except as otherwise described herein, and without limiting the effectiveness of the RSA and any related agreements thereto, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## F.    <u>Closing of Chapter 11 Cases</u>

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## G.    <u>Successors and Assigns</u>

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including, without limitation, the Reorganized Debtors and RT Lodge Company. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

## H.    <u>Reservation of Rights</u>

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that any of the Debtors, the Reorganized Debtors, RT Lodge Company or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, Avoidance Actions, Litigation Claims or other rights of the Debtors, the Reorganized Debtors or RT Lodge Company under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Reorganized Debtors or RT Lodge Company, as applicable, under any executory or non-executory contract or unexpired or expired lease.

## I.      Further Assurances

The Debtors the Reorganized Debtors and/or RT Lodge Company, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Debtors shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## J.      Severability

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted, provided, however, that any such altered form must be consistent with, and subject to the approvals and consents as to form and substance set forth in, the RSA. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## K.      Service of Documents

All notices, requests, and demands to or upon the Debtors, the Reorganized Debtors or RT Lodge Company to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)      *If to the Debtors or Reorganized Debtors:*

Ruby Tuesday, Inc.
333 East Broadway Avenue
Maryville, Tennessee 37804

With a copy (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd. 13th Floor

Los Angeles, California 90067-4003
Attention:  Richard Pachulski and Malhar S. Pagay
Email: rpachulski@pszjlaw.com and mpagay@pszjlaw.com

(b)      *If to RT Asset Company:*

TCW Direct Lending LLC
200 Clarendon Street, 51st Floor
Boston, Massachusetts  02116
Attention: Michael Anello, Ruby Tuesday Account Manager
Email:  michael.anello@tcw.com

With a copy (which shall not constitute notice) to:

Paul Hastings LLP
515 South Flower Street Twenty-Fifth Floor
Los Angeles, California 90071
Attention:  Justin Rawlins
Email: justinrawlins@paulhastings.com

(c)      *If to RT Lodge Company:*

Goldman Sachs Specialty Lending Group, L.P.
2001 Ross Avenue, Suite 2800
Dallas, Texas  75201
Attention: Ruby Tuesday Account Manager
Email:  gs-slg-notices@gs.com

With a copy (which shall not constitute notice) to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attention:  Sean O'Neal and Jane VanLare
Email: soneal@cgsh.com and jvanlare@cgsh.com

Hunton Andrews Kurth LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
Attention:  Greta T. Griffith
Email: ggriffith@HuntonAK.com

**L.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any entity pursuant to, in contemplation of, or in connection with this Plan (including, without limitation, RT Asset Company and RT Lodge Company) or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest (including the New Common Shares) in the Debtors, the Reorganized Debtors or RT Lodge Company; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the issuance of the Exit L/C Facility, Exit Term Loans, the New Common Shares; (iii) the maintenance or creation of security or any Lien as contemplated by the Exit Loan Documents; and (iv) assignments executed in connection with any transaction occurring under the Plan.

**M.    Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction; provided that corporate governance matters relating to the Debtors, Reorganized Debtors or RT Lodge Company, as applicable, shall be governed by the laws of the state of organization of the applicable Debtor, the applicable Reorganized Debtor or RT Lodge Company, as applicable.

**N.    Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, RT Lodge Company, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

O.  **Tax Reporting and Compliance**

The Reorganized Debtors and/or RT Lodge Company, as the case may be, are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

P.  **Plan Schedules**

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

Q.  **No Strict Construction**

This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Debtors, Prepetition Agent, Prepetition Secured Creditors and their respective professionals. Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" or other rules of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the documents ancillary and related thereto.

R.  **Controlling Documents**

The provisions of the Confirmation Order, the Plan and the RSA shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, however, that if there is determined to be any inconsistency and/or ambiguity between any provision of the Confirmation Order, the Plan or the RSA that cannot be so reconciled, then, solely to the extent of such inconsistency or ambiguity, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, and if the Confirmation Order does not resolve the inconsistency and/or ambiguity in whole, then the Plan shall govern to the extent of any remaining inconsistency or ambiguity.

[Remainder of Page Intentionally Blank]

77

Respectfully submitted as of November __, 2020 by:

RTI HOLDING COMPANY, LLC
RUBY TUESDAY, INC.
RUBY TUESDAY, LLC
RTBD, LLC
RT OF CARROLL COUNTY, LLC
RT DENVER FRANCHISE, LP
RT DETROIT FRANCHISE, LLC
RT DISTRIBUTING, LLC
RT FINANCE, LLC
RT FL GIFT CARDS, INC.
RT FLORIDA EQUITY, LLC
RT FRANCHISE ACQUISITION, LLC
RT OF FRUITLAND, INC.
RT INDIANAPOLIS FRANCHISE, LLC
RT JONESBORO CLUB
RT KCMO FRANCHISE, LLC
RT KENTUCKY RESTAURANT HOLDINGS, LLC
RT LAS VEGAS FRANCHISE, LLC
RT LONG ISLAND FRANCHISE, LLC
RT OF MARYLAND, LLC
RT MICHIANA FRANCHISE, LLC
RT MICHIGAN FRANCHISE, LLC
RT MINNEAPOLIS FRANCHISE, LLC
RT MINNEAPOLIS HOLDINGS, LLC
RT NEW ENGLAND FRANCHISE, LLC
RT NEW HAMPSHIRE RESTAURANT HOLDINGS, LLC
RT NEW YORK FRANCHISE, LLC
RT OMAHA FRANCHISE, LLC
RT OMAHA HOLDINGS, LLC
RT ONE PERCENT HOLDINGS, LLC
RT ONE PERCENT HOLDINGS II, LLC
RT ORLANDO FRANCHISE, LP
RT RESTAURANT SERVICES, LLC
RT SOUTH FLORIDA FRANCHISE, LP
RT SOUTHWEST FRANCHISE, LLC
RT ST. LOUIS FRANCHISE, LLC
RT TAMPA FRANCHISE, LP
RE WESTERN MISSOURI FRANCHISE, LLC
RT WEST PALM BEACH FRANCHISE, LP
RTTA, LP
RTT TEXAS, INC.,
RTTT, LLC
RUBY TUESDAY OF ALLEGANY COUNTY, INC.
RUBY TUESDAY OF BRYANT, INC.

RUBY TUESDAY OF COLUMBIA, INC.
RUBY TUESDAY OF FREDERICK, INC.
RUBY TUESDAY OF LINTHICUM, INC.
RUBY TUESDAY OF MARLEY STATION, INC.
RUBY TUESDAY OF POCOMOKE CITY, INC.
RUBY TUESDAY OF RUSSELLVILLE, INC.
RUBY TUESDAY OF SALISBURY, INC.


By: _____
Name:
Title:


Submitted by:


/s/ James E. O'Neill_____
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
Email:  rpachulski@pszjlaw.com
        mpagay@pszjlaw.com
        joneill@pszjlaw.com

Counsel for Debtors and Debtors in Possession


**[Signature Page to Debtors' Chapter 11 Plan of Reorganization]**