**<u>Exhibit A</u>**

**<u>Bid Procedures Order</u>**

34

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (A) APPROVING
## BID PROCEDURES FOR THE SALE
## OF THE DEBTORS' ASSETS; (B) APPROVING CERTAIN
## BIDDER INCENTIVES IN CONNECTION WITH THE DEBTORS'
## ENTRY INTO A STALKING HORSE AGREEMENT, IF ANY
## AND (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND
## ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter coming before the Court on the *Motion of Debtors for an Order (A)*

*Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Approving Certain Bidder*

*Incentives in Connection With the Debtors' Entry Into a Stalking Horse Agreement, If Any and (C)*

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

.

*Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Motion"),[2] filed by the debtors in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"), if any; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (iv) no trustee or examiner having been appointed in these chapter 11 cases and (v) notice of the Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.      This Court has jurisdiction over this Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice of the Motion was adequate and sufficient under the circumstances of this chapter 11 case, and such notice complied with all applicable requirements of title 11 of

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the applicable exhibits to the Motion, or, if not defined therein, the Bid Procedures.

the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Bankruptcy Rules.

C.    All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.  A reasonable opportunity to object or otherwise be heard was afforded to all parties in interest entitled to notice.

D.    The bid procedures attached hereto as **Exhibit 1** (the "<u>Bid Procedures</u>") are reasonable and appropriate under the circumstances of these chapter 11 cases.  The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the Bid Procedures.  The Bid Procedures represent a fair and appropriate method for maximizing the realizable value of substantially all of the Debtors' Assets.  Therefore, the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

E.    The Debtors have demonstrated a sound business justification for authorizing the payment of the Breakup Fee and Expense Reimbursement to the Stalking Horse Purchaser, if any, in the amounts and under the circumstances set forth in the Bid Procedures.

F.    The notice substantially in the form attached hereto as **Exhibit 3** to be served on counterparties to the Assumed/Assigned Executory Contracts ("<u>Cure Notice</u>") is calculated to provide adequate notice concerning the proposed assumption and assignment of the Assumed/Assigned Executory Contracts that are the property of the Debtors, and is intended to

DOCS_LA:332723.5 76136/001

provide due and adequate notice of the relief that will be sought with respect to the Assumed/Assigned Executory Contracts in connection with a Sale.

G.      The procedures for the assumption and assignment of the Assumed/Assigned Executory Contracts provided for herein and the Cure Notice are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The procedures for the assumption and assignment of the Assumed/Assigned Executory Contracts have been narrowly tailored to provide an adequate opportunity for all non-debtor counterparties to the Assumed/Assigned Executory Contracts to assert any objection.

H.      The entry of this Bid Procedures Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The relief requested in the Motion is granted as set forth in this Bid Procedures Order.

2.      The Bid Procedures attached hereto as **<u>Exhibit 1</u>** are approved in their entirety, and are incorporated into this Bid Procedures Order and shall apply to the proposed sale of the Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

3.      The deadline for the Debtors to enter into a Stalking Horse Agreement shall be December 10, 2020.

4

4.      The deadline for the Debtors to file the form Asset Purchase Agreement for the submission of Bids pursuant to the Bid Procedures shall be December 14, 2020.

5.      The deadline for submitting a Qualified Bid shall be 5:00 p.m. (Eastern Time) on January 7, 2021 (the "Bid Deadline").

6.      The proposed sale of the Assets, the proposed assumption and assignment of the Assumed/Assigned Executory Contracts, and the Auction shall be conducted in accordance with the provisions of this Bid Procedures Order and the Bid Procedures.

7.      The Auction and Bid Procedures Notice attached hereto as **Exhibit 2** provides proper notice to all parties in interest and is approved.

8.      No later than five (5) business days after entry of the Bid Procedures Order, the Bid Procedures/Auction Notice will be served on all parties required by Bankruptcy Rule 2002, including: (a) the U.S. Trustee; (b) counsel to any statutory committee appointed in these Cases; (c) counsel to Goldman Sachs Specialty Lending Group, L.P.; (d) all persons or entities that have filed proofs of claim in the Debtors' cases that have not been previously disallowed by order of this Court and have been processed by the Debtors' claims agent prior to the mailing of the Disclosure Statement Notice; (e) all persons or entities listed in the Debtors' respective Schedules of Assets and Liabilities, and any amendments thereto; (f) the Securities and Exchange Commission; (g) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; (h) any other known holders or potential holders of claims against the Debtors; (i) all entities known to have expressed an interest in bidding on the Assets; (j) all known counterparties to the Debtors' executory contracts and

5

unexpired leases; (k) the United States Attorney's office; (l) all state attorneys general in states in which the Assets are located; (h) the Internal Revenue Service; (m) for each state in which the Assets are located, the applicable taxing authorities; and (n) environmental and certain other regulatory authorities in the states or applicable jurisdictions in which the Debtors' assets are located.

9.      Pursuant to sections 105, 363, 503 and 1123 of the Bankruptcy Code, the Debtors are hereby authorized to pay the Bidder Incentives pursuant to the procedures set forth herein and in the Bid Procedures, and the Bidder Incentives are hereby approved.

10.      The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. The following Assumption and Assignment Procedures govern the assumption and assignment of the Assumed/Assigned Executory Contracts in connection with the Sale of Assets to the Successful Bidder(s):

(a)      If a Topping Bid is received,  no later than three (3) days after the Auction, the Debtors will file a schedule (the "Cure Schedule") identifying (i) the Assumed/Assigned Executory Contracts, potentially to be assumed and assigned to a buyer in the event of a Sale and (ii) the amount, if any, the Debtors believe is necessary to cure all monetary defaults under such agreement pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").  If no Topping Bid is received, the Cure Schedule will be filed as a Plan Supplement.

(b)      Upon the filing of the Cure Schedule, the Debtors will serve the Cure Schedule and a notice of filing of the Cure Schedule (the "Cure Notice") on each of the nondebtor counterparties listed on the Cure Schedule by first class mail. The Cure Notice will state that the Debtors are or may be seeking the sale, assumption and assignment of the Assumed/Assigned Executory Contracts and include (i) a description of each executory contract and unexpired lease that may be assumed and assigned in connection with the Sale and (ii) the Assumption/Assignment Objection Deadline (as defined below).

(c)      Counterparties to proposed Assumed/Assigned Executory Contracts must file objections to the proposed assumption and assignment thereof ("Assumption/Assignment Objection") no later than five (5) days before the Confirmation Hearing (the "Assumption/Assignment Objection Deadline").

6

(d)     Each Assumption/Assignment Objection must be filed with the Court and served on the following parties so as to be received no later than the Assumption/Assignment Objection Deadline: (a) the Debtors: c/o Ruby Tuesday, Inc., 333 E. Broadway Ave., Maryville, TN 37804 (Attn: Shawn Lederman (SLederman@rubytuesdav.com)); (b) counsel to the Debtors: Pachulski, Stang, Ziehl & Jones LLP, 919 N Market St # 1700, Wilmington, DE 19801 (Attn: Malhar S. Pagay, Esq. (mpagay@pszjlaw.com) and James E. O'Neill, Esq. (joneill@pszjlaw.com)); (c) counsel to any statutory committee appointed in these cases; and (d) the Office of the United States Trustee, District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Linda Richenderfer).

(e)     If no objections are received with respect to any Assumed/Assigned Executory Contract, then the Cure Cost set forth in the Cure Schedule for such agreement will be binding upon the nondebtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment of such agreement. In addition, all counterparties to the Assumed/Assigned Executory Contracts who fail to file an objection before the Assumption/Assignment Objection Deadline, will be (i) forever barred from objecting to the Cure Costs or adequate assurance of future performance with respect to the Assumed/Assigned Executory Contracts, and the Debtors and the applicable purchaser(s) will be entitled to rely solely upon the Cure Cost set forth in the Cure Schedule; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable purchaser(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumptions or assignment of the applicable Assumed/Assigned Executory Contracts.

(f)     At any time prior to the Confirmation Hearing, the Successful Bidder(s) may amend the Cure Schedule to remove any executory contract or unexpired lease therefrom.[3]  The nondebtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within one (1) business day after such determination.

(g)     Where a nondebtor counterparty to an Assumed/Assigned Executory Contract files a Assumption/Assignment Objection asserting a cure amount higher than the proposed Cure Cost (the "Disputed Cure Amount"), then (i) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Confirmation Hearing, and subject to the applicable purchaser's consent to such resolution, the Debtors will promptly inform the Creditors' Committee of the proposed resolution or (ii) to the extent the parties are unable to consensually resolve the dispute prior to the Confirmation Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Confirmation Hearing or at such other date and time as may be fixed by the Court. The Debtors intend to cooperate

---

[3] If the conditions for the Sale are not satisfied and the Debtors pursue the Stand-Alone Reorganization, it is anticipated that all of the Debtors' executory contracts and unexpired leases will be assumed except for those executory contracts and unexpired leases set forth on a schedule (the "Plan Rejection Schedule") filed in connection with the Plan. The Plan Rejection Schedule (if necessary) will be filed with the Court in accordance with the Plan and served on the non-debtor counterparties to the executory contracts and unexpired leases.

with counterparties to Assumed/Assigned Executory Contracts to attempt to reconcile any differences with respect to a particular Cure Cost. At any time prior to or after the Court's ruling on the Disputed Cure Amount, the Debtors may remove such contract or lease from the list of Assumed/Assigned Executory Contracts.

11.     For the avoidance of doubt, the presence of an Assumed/Assigned Executory Contract on the Cure Schedule (a) does not constitute an admission that such Assumed/Assigned Executory Contract is an executory contract or unexpired lease and/or (b) shall not prevent the Debtors or any Successful Bidder(s) from subsequently withdrawing such assumption or rejecting such Assumed/Assigned Executory Contract at any time before such Assumed/Assigned Executory Contract is actually assumed and assigned pursuant to an order of the Court.

12.     The Debtors shall provide or cause to be provided adequate assurance information regarding all Successful Bidder(s) and Next Highest Bidder(s) to the nondebtor counterparties to each Assumed/Assigned Executory Contract that may be assumed and assigned to such Successful Bidder(s) or Next Highest Bidder(s) upon request. Each of the nondebtor counterparties to the Assumed/Assigned Executory Contracts who receive adequate assurance information in the form of voluntary disclosures or discovery from the Debtors or a proposed assignee regarding a proposed assignee shall keep the adequate assurance information confidential and only use or disclose the information as may be necessary to conduct due diligence on the proposed assignee and/or object to a proposed assignment of the Assumed/Assigned Executory Contract.

13.     The Debtors, after consultation with the Consultation Parties, shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify Qualified Bidders

8

whether their bids have been recognized as such as promptly as practicable after a Qualified

Bidder delivers all of the materials required by the Bid Procedures.

14.     If the Debtors receive one or more Qualified Bids (as defined in the Bid

Procedures) that, either individually or collectively with other Qualified Bids, constitute a

Topping Bid, an auction (the "Auction") will be held no later than **[January 19, 2021], at 10:00**

**a.m. (Eastern Time)**, at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market

Street, 17th Floor, Wilmington, Delaware 19801, or at any such other location as the Debtors may

hereafter designate.  The Stalking Horse Purchaser, if any, is deemed a Qualified Bidder for all

purposes, including for purposes of participating in the Auction, should it wish to do so.

15.     Promptly after the conclusion of the Auction, but no later than before the

Confirmation Hearing, the Debtors shall file the Confirmation Order, which shall include

approval of the Sale as agreed upon between the Debtors and the Successful Bidder(s).  The

Auction will be conducted openly and will be transcribed. The requirement of Local Rule 6004-

1(ii)(B) that all creditors be permitted to attend the Auction is hereby waived. Only Qualified

Bidders and the Consultation Parties and their professionals and/or representatives may attend the

Auction.  In the Debtors' discretion, the Auction may be held virtually, by telephonic or video

conference.

16.     Counsel to the Debtors is authorized to hold and conduct the Auction in

accordance with the Bid Procedures.  At such Auction, each Qualified Bidder shall be required to

confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the

Auction shall be conducted openly and transcribed.  Within twenty-four (24) hours following the

conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder with the Court and shall serve such notice by fax, email, or if neither is available, by overnight mail to all counterparties whose contracts are to be assumed and assigned.

17.     As contemplated by the RSA between the Debtors and their Secured Lenders, the Court will conduct a hearing to approve the Successful Bid on January 22, 2021, at **[__:__ __.m.]** (prevailing Eastern Time).

18.     If a Topping Bid is received, the following deadlines shall apply:

a.     **January 29, 2021**:  Deadline for objections to (1) proposed assumption/assignment of contracts and leases in connection with Sale; and (2) Plan confirmation;

b.     **February 3, 2021**:  Deadline for replies to any objections to (1) proposed assumption/assignment of contracts and leases in connection with Sale; and (2) Plan confirmation; and

c.     **February 4, 2021, at [_:__ _.m.] (Eastern Time)**: Hearing regarding Confirmation of the Plan (the "Confirmation Hearing").

19.     Final approval of the Sale shall be considered by the Court as part of the Confirmation Hearing.

20.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) and 7062 or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

10

21.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Bid Procedures Order.


Dated: _____, 2020

_____

Honorable John T. Dorsey
United States Bankruptcy Judge

## Exhibit 1

**Bid Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BID PROCEDURES FOR SALE OF
## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

The above-captioned debtors and debtors in possession (the "Debtors") filed a motion dated November [_], 2020 (the "Motion"),[2] seeking, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest and best offer for the sale of substantially all of the business assets of the Debtors (the "Assets"). On [●], the Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

The Debtors will only proceed with Sale Transaction(s) for the sale of all or substantially all of their assets (the "Sale"), if certain conditions are satisfied as set forth in greater detail below. Any Sale Transaction will be subject to the approval of the Court, which approval shall be sought in connection with the confirmation of the Debtors' Chapter 11 Plan (the "Plan"). A joint hearing by the Court on the approval of the Sale Transaction(s) and confirmation of the

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion or Purchase Agreement, as applicable.

Plan is currently scheduled for [●],at [TIME] (Eastern Time) (the "Sale and Confirmation Hearing").]

### Stalking Horse Bidder

The Debtors, in their discretion, exercised in good faith and in consultation with the Consultation Parties, may execute, subject to higher or otherwise better offers, a purchase agreement (the "Stalking Horse Agreement") with a Qualified Bidder that submits a Qualified Bid for all or substantially all of the Debtors' assets that also satisfies the criteria of a Topping Bid. The counterparty to such Stalking Horse Agreement will serve as the stalking horse bidder (the "Stalking Horse Bidder") at the Auction, if one is held. If the Debtors choose to enter into a Stalking Horse Agreement, the Debtors, in their discretion, exercised in good faith and after consultation with the Consultation Parties, may offer the Stalking Horse Bidder the Breakup Fee of no more than 3.0% of the total cash consideration payable under such Stalking Horse Agreement plus the Expense Reimbursement for the Stalking Horse Bidder's actual out-of-pocket costs not to exceed $500,000. In the event that a Stalking Horse Agreement is entered into, the Debtors will promptly file such agreement with the Court.

### Agreement

Prospective bidders should submit a proposed asset purchase agreement (a "Purchase Agreement"), similar in form and substance, as modified, to the asset purchase agreement to be furnished by the Debtors. Subject to the approval of the Court, the Qualified Bidder who submits the highest or best bid among the Topping Bids or any credit bids at the auction will purchase the Assets, and assume certain executory contracts and unexpired leases of the Debtors, free and clear of any Liens, Claims and Encumbrances, and other interests.  The transaction contemplated is subject to competitive bidding as set forth herein, and approval by the Court pursuant to Bankruptcy Code sections 363, 365, 1123 and/or 1141, as applicable.

### Assets for Sale

The Debtors are offering for sale the Assets, which generally consist of their restaurant leases, inventory and equipment, owned real estate, intellectual property, and associated restaurant business, substantially all of the Debtors' other business assets and property associated therewith.  All of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, encumbrances and other interests (except as otherwise provided in the applicable Purchase Agreement) to the maximum extent permitted by sections 363 and/or 1123 of the Bankruptcy Code, with such liens, claims, encumbrances and other interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such liens, claims, encumbrances and other interests applied against the Assets.

 Further information on the Assets being offered for sale pursuant to these Bid Procedures is available upon request from the Debtors' investment banker, FocalPoint Securities, LLC ("FocalPoint"), 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025 (Attn: Richard F. NeJame) and at rnejame@focalpointllc.com.

### Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors and their counsel, not later than five (5) business days before the Bid Deadline (defined below), unless otherwise modified by the Debtors in their reasonable discretion after consultation with the Consultation Parties, *provided that*, without the Secured Creditors' prior written consent, the Debtors cannot waive or modify

2

any provisions of the Bid Procedures relating to (a) the definition of a Topping Bid, (b) the requirement that the Stalking Horse Bid and any Qualified Bid, either individually or in combination with other Qualified Bids, shall be a Topping Bid, (c) the requirement that any credit bid by the Secured Creditors shall be deemed to be a Qualified Bid, (d) the Secured Creditors' right to credit bid, subject to the Debtors' right, pursuant to that certain Restructuring Support Agreement Term Sheet, dated September 18, 2020, by and between the Debtors and Secured Creditors (the "RSA Term Sheet") to contest the allowance and inclusion in any such credit bid of any call premium and yield maintenance premium under the Credit Agreement, or (e) any deadlines or milestones included in the Bid Procedures that constitute Sale Milestones in the RSA Term Sheet:

    a)    <u>Confidentiality Agreement</u>.  An executed confidentiality agreement ("<u>Confidentiality Agreement</u>") in form and substance acceptable to the Debtors;

    b)    <u>Identification of Potential Bidder</u>.  Concurrently with its Bid, identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

    c)    <u>Corporate Authority</u>.  Concurrently with its Bid, written evidence satisfactory to Debtors of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

    d)    <u>Disclosure</u>.  Written disclosure of any connections or agreements with the Debtors, the Stalking Horse Purchaser, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors; and

    e)    <u>Proof of Financial Ability to Perform</u>.  Prior to or at the time of presentation of a Bid, written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction.  Such information should include, *inter alia*, the following:

        (1)    the Potential Bidder's current financial statements (audited if they exist);

        (2)    contact names and numbers for verification of financing sources;

        (3)    evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

        (4)    any such other form of financial disclosure of credit-quality support information or enhancement acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

### *Designation as Qualified Bidder*

A "<u>Qualified Bidder</u>" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets of the Debtors constitute a Topping Bid, do not overlap and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described above and otherwise satisfies the requirements of the Bid Procedures Order and the procedures set forth

herein, and that the Debtors, in their discretion (in consultation with any Official Committee of Unsecured Creditors that may be appointed (the "<u>Committee</u>"), Goldman Sachs Specialty Lending Group, L.P. (as "<u>DIP Agent</u>", "<u>DIP Lender</u>" and as a "<u>Secured Creditor</u>") and TCW Direct Lending (as a "<u>DIP Lender</u>" and "<u>Secured Creditor</u>" and, both of the foregoing, together with the Committee, the "<u>Consultation Parties</u>")), determine is reasonably likely to submit a *bona fide* offer for the Assets and to be able to consummate a sale if selected as a Successful Bidder; *provided, however*, that, notwithstanding anything to the contrary herein, to the extent that the Secured Creditors submit a credit bid for any of the Assets, the Secured Creditors shall no longer be treated as a Consultation Party for purposes of these Bid Procedures.

The Debtors, in their sole discretion and in consultation with the Consultation Parties, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Stalking Horse Purchaser, if any, is a Qualified Bidder and is deemed to satisfy all Bid requirements as set forth herein.

### *Access to Due Diligence Materials*

Only Potential Bidders that execute and deliver a confidentiality agreement satisfactory to the Debtors, in their sole discretion, are eligible to receive due diligence access or access to additional non-public information. The Debtors shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtors believe that such disclosure would be detrimental to the interests of the Debtors. If the Debtors determine that a Potential Bidder who has satisfied all requirements to become a Qualified Bidder and yet does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or access to additional non-public information shall terminate. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

### *Due Diligence From Bidders*

Each Potential Bidder and Qualified Bidder (each, a "<u>Bidder</u>") (and, collectively, "<u>Bidders</u>") shall comply with all requests for additional information and due diligence access by the Debtors or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### **Bidding Process**

The Debtors and their advisors, shall (in consultation with the Consultation Parties): (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets. The Debtors (in consultation with the Consultation Parties) shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order that will better promote the goals of such process.

*Bid Deadline*

On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "<u>Bid</u>") shall deliver written and electronic copies of its Bid to the Debtors, Ruby Tuesday, Inc., 333 E. Broadway Ave., Maryville, TN 37804 (Attn: Shawn Lederman (SLederman@rubytuesday.com), with copies to FocalPoint Securities, LLC, FocalPoint Securities, LLC ("<u>FocalPoint</u>"), 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025 (Attn: Richard F. NeJame) and at rnejame@focalpointllc.com), with a copy to counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Malhar S. Pagay and James E. O'Neill, not later than 4:00 p.m. (prevailing Eastern time) on January 7, 2021 (the "<u>Bid Deadline</u>").  The Debtors shall promptly provide copies of all Bids to counsel for the Consultation Parties.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors (in consultation with the Consultation Parties) to satisfy each of the following conditions, unless otherwise modified by the Debtors in their reasonable discretion after consultation with the Consultation Parties; *provided that*, without the Secured Creditors' prior written consent, the Debtors cannot waive or modify any provisions of the Bid Procedures relating to (a) the definition of a Topping Bid, (b) the requirement that the Stalking Horse Bid and any Qualified Bid, either individually or in combination with other Qualified Bids, shall be a Topping Bid, (c) the requirement that any credit bid by the Secured Creditors shall be deemed to be a Qualified Bid, (d) the Secured Creditors' right to credit bid, subject to the Debtors' right, pursuant to that certain Restructuring Support Agreement Term Sheet, dated September 18, 2020, by and between the Debtors and Secured Creditors (the "<u>RSA Term Sheet</u>")  to contest the allowance and inclusion in any such credit bid of any call premium and yield maintenance premium under the Credit Agreement, or (e) any deadlines or milestones included in the Bid Procedures that constitute Sale Milestones in the RSA Term Sheet:

1.   <u>Good Faith Deposit</u>.  Each Bid must be accompanied by a deposit (the "<u>Good Faith Deposit</u>") in the form of a certified check or cash payable to the order of Ruby Tuesday, Inc.  in an amount to be determined by the Debtors, but in any event no less than 10% of the Bidder's offer.

2.   <u>Purchase Price</u>.  The Bid, on its own or when combined with other Bids in accordance with the Bid Procedures, must be a Topping Bid.  The consideration proposed by such Bid may include only cash and/or other consideration acceptable to the Debtors (in consultation with the Consultation Parties).  If a Stalking Horse Bidder has been selected by the Debtors, the cash component of the Bid must be no less than an amount necessary to satisfy the Breakup Fee and Expense Reimbursement, as defined below.  In order for the Bid to qualify as a Topping Bid, (a) it must provide for cash consideration at closing that is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt Claims in full on the closing date or (b) the Debtors, in consultation with the Consultation Parties, must be able to combine such Bid with other Bids for subsets of Assets such that, collectively, such Bids meet the criteria for a Topping Bid .  The Bid must clearly set forth the purchase price and identify any non-cash components including, without limitation, which liabilities of the Debtors the bidder is agreeing to assume (the "<u>Purchase Price</u>").

3.   Irrevocable.  The Bid must include a signed writing stating that it is irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the earlier of (a) the closing of the Sale with the Successful Bidder or the Back-Up Bidder, and (b) March 24, 2021 (the earlier of the dates being the "Termination Date").

4.   Principal Terms.  A Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents") and a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Stalking Horse Agreement, if any, including specification of the proposed purchase price and any changes to any exhibits or schedules to the Purchase Agreement.  The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtors than the provisions contained in the Stalking Horse Agreement, if any.  A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Contemplated Transaction Documents.  The Contemplated Transaction Documents must include a commitment to close by no later than March 24, 2021.

5.   Contingencies.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions.  A Bid must disclose any governmental approvals identified by the Qualified Bidder other than as set forth in the Purchase Agreement that may impact the evaluation of such Bid.

6.   Authorization to Bid and Identity of Bidder.  A Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery and closing of the Contemplated Transaction Documents.  A Bid must also fully disclose the identity of such entity that is submitting the Bid, including the identity of each equity holder or other financial backer of the bidder if such bidder is formed for the purpose of submitting the bid.

7.   Financing Sources.  A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtors (in consultation with the Consultation Parties) with appropriate contact information for such financing sources.

8.   No Fees Payable to Qualified Bidder.  Other than the Stalking Horse Bid, a Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

9.   Immediate Payment of the Breakup Fee and Expense Reimbursement.  A Bid must allow for the immediate payment of the Breakup Fee and Expense Reimbursement to the Stalking Horse Purchaser from the first proceeds of the cash portion of the Purchase Price of such Bid.

10.    <u>Non-Reliance.</u>  A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and assumed liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtors believe, in their sole discretion (in consultation with the Consultation Parties), that such Bid would be consummated if selected as the Successful Bid.  The Debtors shall have the right to reject any and all Bids that they believe, in their sole discretion (in consultation with the Consultation Parties), do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.  Any credit bid submitted by the Agent shall be deemed to be a Qualified Bid.

## <u>Auction</u>

After the receipt and review of all Qualified Bids, the Debtors shall make a determination, in consultation with the Consultation Parties, whether to proceed with the selection of a Baseline Bid (defined below) and the Auction for a Sale. The Debtors will only proceed with the Auction if the following conditions are satisfied, or if there is a reasonable likelihood that the such conditions will be satisfied at the conclusion of the Auction: (1) the Debtors' Board of Directors concludes that acceptance of one or more Qualified Bids for all of the Assets is value-maximizing for the Debtors' estates; and (2) the Debtors will proceed with the Auction only if a bid (or bids) is received which provides for cash deposits of no less than ten percent (10%) of the purchase price and for cash consideration that is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt Claims in full on the closing date.  For the avoidance of doubt, confirmation of the Plan is not a requirement for the Debtors to proceed with the Auction for a Sale.

At least forty-eight (48) hours prior to the Auction, the Debtors shall provide the Stalking Horse Purchaser, all Qualified Bidders and the Consultation Parties with copies of all Qualified Bids in advance of the Auction, but may exclude any confidential financial information, as reasonably designated by the applicable Qualified Bidder.

Unless otherwise designated by the Debtors (in consultation with the Consultation Parties), the Auction shall commence at **10:00 a.m. (Eastern time) on a date no later than January 19, 2021,** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19899, or at such other place designated by the Debtors.  In the Debtors' discretion, the Auction may be held virtually, by telephonic or video conference.

In advance of the Auction, the Debtors will notify all Qualified Bidders in writing of (i) the highest or otherwise best Qualified Bid that, either individually or collectively with other Qualified Bids, constitutes a Topping Bid, as determined by the Debtors in their discretion in consultation with the Consultation Parties (the "<u>Baseline Bid</u>") and (ii) the time and place of the Auction.

7

If the Debtors do not receive at least one (1) Qualified Bid from a Qualified Bidder (inclusive of the Stalking Horse Purchaser Bid) that is, either individually or, collectively with other Qualified Bids, a Topping Bid, then no Auction shall be scheduled or conducted.

If the Auction is necessary, such Auction shall be conducted according to the following procedures:

**1.      Participation at the Auction**

Only the Stalking Horse Purchaser and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction.  Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Purchaser, the Debtors, the Consultation Parties and the U.S. Trustee shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtors (in consultation with the Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or best offer for the Assets in accordance with the Bid Procedures.

In the Debtors' sole discretion, after the conclusion of the Auction, the Debtors may resume an auction for the sale of discrete assets and/or discrete groups of assets, if any, which are not included in the Successful Bid, on such bidding procedures as may be implemented by the Debtors in their discretion.

**2.      The Debtors Shall Conduct the Auction**

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid.  The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtors in their discretion (in consultation with the Consultation Parties), and may take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates.  All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  The Debtors reserve the right to conduct the Auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures.  The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.  Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Bid Procedures, the Auction or the proposed transaction.

3.      **Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid.  To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(a)      **Minimum Overbid Increment**

During the Auction, bidding shall begin initially with the Baseline Bid.  Any Overbid after the Baseline Bid shall be made in increments of at least $100,000 in cash or other consideration acceptable to the Debtors; *provided, however*, that any Overbids by the Stalking Horse Purchaser thereafter shall only be required to be equal to the sum of (1) the then existing lead Bid plus (2) the $100,000 Overbid less (3) the sum of the amount of the Breakup Fee and Expense Reimbursement.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors (in consultation with the Consultation Parties) accept a higher Qualified Bid as an Overbid.

(b)      **Consideration of Overbids**

The Debtors reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things:  facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

4.      **Additional Procedures**

The Debtors may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion (in consultation with the Consultation Parties), will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Bankruptcy Code.  All such rules will provide that all Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.  Notwithstanding the foregoing, the Auction may be held virtually, by telephonic or video conference.

The Debtors (in consultation with the Consultation Parties) may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Court approving the sale of the Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures; or (iii) contrary to the best interest of the Debtors, their estates and their creditors.

5.      **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

6.      **Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors (in consultation with the Consultation Parties) shall immediately identify the highest or best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) from among the Topping Bids or any credit bid(s) for the Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest or best offer will provide the greatest amount of net value to the Debtors, and the next highest or best offers among the Topping Bids or any credit bid(s) after the Successful Bid (the "Back-up Bid") and the entity or entities submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination.  Upon three (3) days' prior notice by the Debtors, the Back-up Bidder selected by the Debtors must immediately proceed with the closing of the transaction contemplated under the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

As stated above, the Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the Termination Date.

## Acceptance of Successful Bid

The Debtors shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Court after the Confirmation Hearing.  The Debtors' presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of such Qualified Bid.  The Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Court at the Confirmation Hearing.

## "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the Purchase Agreement of the Successful Bidder.  Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or the Purchase Agreement of the Successful Bidder.

## Free of Any and All Interests

Except as otherwise provided in the Successful Bidder's Purchase Agreement and subject to the approval of the Court, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, encumbrances, and other interests to the maximum extent permitted by sections 363 and/or 1141 of the Bankruptcy Code, as applicable, with such liens, claims, encumbrances, and other interests to attach to the net proceeds of the sale

of the Assets with the same validity and priority as such liens, claims, encumbrances and other interests applied against the Assets.

## Sale and Confirmation Hearing

At the Sale and Confirmation Hearing, the Debtors may seek the entry of an order (the "Confirmation Order") confirming the Plan and authorizing and approving one or more Sale Transactions to the Successful Bidder(s).  The Sale and Confirmation Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (i) an announcement of such adjournment at the Sale and Confirmation Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale and Confirmation Hearing

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated, the Debtors shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale and Confirmation Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the next highest such Bid without further order of the Court.

## Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder (or the Back-up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such transaction at Closing.  The Debtors will hold the Good Faith Deposits of the Successful Bidder and the next highest Qualified Bidder in a segregated account until the closing of the sale with the Successful Bidder; Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective bidders following the conclusion of the Auction.  If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of the Debtors' damages resulting from such Successful Bidder's breach or failure to perform.

**EXHIBIT 2**

**<u>Auction / Bid Procedures Notice</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF SALE BY AUCTION AND BID PROCEDURES

**PLEASE TAKE NOTICE** that on November [__], 2020, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Motion of Debtors for an Order (a) Approving Bid Procedures for the Sale of the Debtors' Assets, (b) Approving Certain Bidder Incentives in Connection with the Debtors' Entry Into a Stalking Horse Agreement, If Any and (c) Approving Procedures for the Assumption and Assignment of Executory Contract and Unexpired Leases* [Docket No. [●]] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court") seeking, among other things, entry of an order (the "Bid Procedures Order") (a) establishing bid procedures for the sale of substantially all of the Debtors' assets (the "Assets"); (b) approving certain bidding incentives in connection with the Debtors' entry into a stalking horse agreement, if any, and (c) procedures for the assumption, assignment and sale of executory contracts and unexpired leases (collectively, the "Assumed/Assigned Executory Contracts"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Bid Procedures Motion.

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Assets consistent with the bidding procedures (the "Bid Procedures") approved by the Court by entry of an order on [●], 2020 [Docket No. [●]] (the "Bid Procedures Order"). **All interested bidders should carefully read the Bid Procedures and Bid Procedures Order.** Any interested bidder should contact Richard F. NeJame at FocalPoint Securities, LLC, FocalPoint Securities, LLC ("FocalPoint"), 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025 (Attn: Richard F. NeJame) and at rnejame@focalpointllc.com), the Debtor's investment banking advisor. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed, assigned and sold in connection with the Sale. To the extent that there are any inconsistencies between this notice and the Bid Procedures or Bid Procedures Order, the Bid Procedures or the Bid Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified bids within the requirements and time frame specified by the Bid Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on January 19, 2021, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (or at any other location as the Debtors may hereafter designate on proper notice).[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale at a hearing scheduled to commence on or before **February 4, 2021, at ___:___ .m. (prevailing Eastern Time)]** (the "Sale and Confirmation Hearing") before the Honorable John T. Dorsey, United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware, at 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bid Procedures Order with respect to any objections to proposed cure amounts or the assumption, assignment and sale of Assumed/Assigned Executory Contracts, objections to the relief requested in the Sale Motion ***must***:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received* on or before January 29, 2021, at 4:00 p.m. (prevailing Eastern Time)** by the following parties:

| Counsel to the Debtors | The United States Trustee |
|---|---|
| Pachulski Stang Ziehl & Jones LLP | Office of the United States Trustee |
| 919 Market St., 17th Floor | For the District of Delaware |
| Wilmington, Delaware 19801 | 844 King Street, Suite 2207, Lockbox 35 |
| Attn: Malhar S. Pagay and James E. O'Neill | Wilmington, Delaware, 19801 |
| mpagay@pszjlaw.com, joneill@pszjlaw.com | Attn: Linda Richenderfer |

---

[2] The Auction may be held telephonically or via video conferencing.

| Proposed Counsel to the Official Committee of Unsecured Creditors | Counsel to the Stalking Horse Bidder |
|---|---|
| Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Attn:  Robert T. Schmidt and Adam Rogoff<br>RSchmidt@KRAMERLEVIN.com and<br>ARogoff@KRAMERLEVIN.com | |
| **Counsel to the DIP Lender Agent** | |
| Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Attn: Sean A. O'Neal and Jane VanLare<br>soneal@cgsh.com, jvanlare@cgsh.com | |

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION:**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT.**

**PLEASE TAKE FURTHER NOTICE** that copies of the Bid Procedures Motion, the Bid Procedures, and the Bid Procedures Order, as well as all related exhibits, including the Stalking Horse Purchase Agreement and the proposed Sale Order, are available:  (a) free of charge upon request to the Debtors' claims agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/rubytuesday , or by calling 1-888-490-0613; or (b) for a fee via PACER by visiting http://www.deb.uscourts.gov.

Dated:  [●]                **PACHULSKI STANG ZIEHL & JONES LLP**

_____
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
Email: rpachulski@pszjlaw.com
      mpagay@pszjlaw.com
      joneill@pszjlaw.com
      vnewmark@pszjlaw.com

[Proposed] Counsel for Debtors and Debtors in Possession

## Exhibit 3

**Form of Cure Notice**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**Deadline for Submitting Bids: [To be determined] (Eastern Time)**
**Deadline for Objections to Sale: [To be determined] (Eastern Time)**
**Auction Date: [To be determined] (Eastern Time)**
**Confirmation Hearing Date: [To be determined] (Eastern Time)**

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED

      **You are receiving this notice because you may be a counterparty to a contract or lease with Ruby Tuesday, Inc. or one or more of its affiliated debtors. Please read this notice carefully as your rights may be affected by the transactions described herein.**

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

.

**PLEASE TAKE NOTICE** that on October 7, 2020 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on [●], 2020, the Debtors filed a chapter 11 plan of reorganization [Dkt. No. [●]] (as it may be amended, modified or supplemented, the "Plan") and a related disclosure statement [Dkt. No. [●]] (as it may be amended, modified or supplemented, the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that on November [___], 2020, the Debtors filed the *Motion of Debtors for an Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Approving Certain Bidder Incentives in Connection With the Debtors' Entry Into a Stalking Horse Agreement, If Any and (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Motion").[2]  On [●], 2020, the Court entered an order (the "Bid Procedures Order") granting the Motion and approving the bid procedures annexed hereto (the "Bid Procedures") to be used in connection with for the sale or sales (the "Sale") of the Debtors' assets (the "Assets") pursuant to an auction (the "Auction").  Approval of the Sale will take place in connection with the Court's consideration of whether to confirm the Plan, which will begin on **[February 4, 2021 at __:__ _.m. (Eastern Time)]** before the Honorable John T. Dorsey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

PLEASE TAKE FURTHER NOTICE that you are a party to an executory contract(s) or unexpired lease(s) that has been designated for assumption by the Debtors and assignment to the Successful Bidder (each an "Assumed/Assigned Executory Contract").  A list of the Assumed Executory Contracts is set forth on **Exhibit A** hereto, along with the amount that must be paid to cure any defaults existing under such executory contracts (the "Cure Amount"), based upon the Debtors' books and records, which the Debtors assert is owed to cure any defaults existing under the Assumed/Assigned Executory Contract as of the Petition Date.[3]

PLEASE TAKE FURTHER NOTICE that a Successful Bidder, as applicable, may subsequently elect to exclude any agreement or agreements from the list of Assumed/Assigned Executory Contracts at any time prior to confirmation of the Plan or the closing of the sale of the Assets, including the potential exclusion of the Assumed/Assigned Executory Contract listed on **Annex 1** hereto.  Cure Amounts, if any, shall only be paid with respect to Assumed/Assigned Executory Contracts that are actually assumed pursuant to the confirmation of the Plan or closing of the sale of the assets in accordance with the purchase agreement of the Successful Bidder.  In the event that a Successful Bidder elects to exclude any Assumed/Assigned Executory Contracts, the affected counterparties will be separately notified of any such election.

PLEASE TAKE FURTHER NOTICE that if you disagree with the Cure Amount shown for the Assumed/Assigned Executory Contract on **Annex 1**, or if you object to

---

[3] Your receipt of this notice does not constitute an admission by the Debtors that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement.

the assumption and assignment of your Assumed/Assigned Executory Contract on any grounds,

you must file an objection in writing with the United States Bankruptcy Court for the District of

Delaware, 824 Market Street, Wilmington, Delaware 19801, on or before **January 29, 2020, at**

**4:00 p.m. (Eastern Time)**.  In addition, any objection must set forth the specific default or

defaults alleged, set forth any such other ground for objection, and set forth any Cure Amount as

alleged by you, including such documentation and records as supports your asserted cure

amount.

   **PLEASE TAKE FURTHER NOTICE** that any objection to any of the relief to

be requested at the Sale and Confirmation Hearing must be in writing, state the basis of such

objection with specificity, and shall be filed with the Court, with a courtesy copy to Chambers,

and shall be served on:  (i) the Debtors: c/o Ruby Tuesday, Inc., 333 E. Broadway Ave.,

Maryville, TN 37804 (Attn: Shawn Lederman (SLederman@rubytuesday.com)); (ii) proposed

counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor,

P.O. Box 8705, Wilmington, DE  19899-8705 (Courier 19801), Attn:  Malhar S. Pagay, Esq. and

James E. O'Neill, Esq.; (iii) counsel to the Official Committee of Unsecured Creditors: [●]; and

(iv) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street,

Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Linda Richenderfer, so as to be received

by **January 29, 2020, at 4:00 p.m. (Eastern Time)**.

   **PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY**

**FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE**

**COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT**

FURTHER NOTICE.  ANY NON-DEBTOR PARTY TO ANY ASSUMED/ASSIGNED

EXECUTORY CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE

CURE AMOUNTS FOR SUCH ASSUMED/ASSIGNED EXECUTORY CONTRACT IS

DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNTS, AND ANY NON-

DEBTOR PARTY TO ANY ASSUMED/ASSIGNED CONTRACT WHO DOES NOT

FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE

CONSENTED TO SUCH ASSIGNMENT AND ASSUMPTION.


Dated:  [●]                                    PACHULSKI STANG ZIEHL & JONES LLP


Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
Email: rpachulski@pszjlaw.com
        mpagay@pszjlaw.com
        joneill@pszjlaw.com
        vnewmark@pszjlaw.com

[Proposed] Counsel for Debtors and Debtors in Possession

**Annex 1**

**Cure Schedule**