## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RTI HOLDING COMPANY, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-12456 (JTD)<br><br>Jointly administered<br><br>**Re:   Docket Nos. 138 & 337** |

### RESPONSE OF REGIONS BANK AS TRUSTEE TO OBJECTION OF THE AD HOC GROUP OF PARTICIPANTS TO (I) RUBY TUESDAY, INC.'S MOTION FOR AN ORDER AUTHORIZING RUBY TUESDAY, INC. TO EXERCISE ITS OWNERSHIP RIGHTS OVER TRUST ASSETS CURRENTLY HELD IN A "RABBI TRUST" FOR RUBY TUESDAY, INC.'S NON-QUALIFIED EXECUTIVE SUPPLEMENTAL PENSION PLAN AND MANAGEMENT RETIREMENT PLAN AND (II) RUBY TUESDAY, INC.'S MOTION FOR AN ORDER AUTHORIZING RUBY TUESDAY, INC. TO EXERCISE ITS OWNERSHIP RIGHTS OVER TRUST ASSETS CURRENTLY HELD IN A "RABBI TRUST" FOR RUBY TUESDAY, INC.'S NONQUALIFIED "DEFINED CONTRIBUTION" - DEFERRED COMPENSATION PLANS

Regions Bank, an Alabama banking corporation ("Trustee"), in its capacity as directed trustee of an irrevocable trust (the "Trust") as set out in that Ruby Tuesday, Inc. Trust Agreement

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

dated February 24, 1992 (the "Trust Agreement"), hereby responds to the Objection of the Ad Hoc Group of Participants to (i) Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise its Ownership Rights Over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Non-Qualified Executive Supplemental Pension Plan and Management Retirement Plan and (ii) Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise its Ownership Rights over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Nonqualified "Defined Contribution" - Deferred Compensation Plans [Doc. 337] (including any joinders therein, the "Objection") and submits in support hereof the Declaration of Stuart W. White attached hereto as Exhibit 1 and incorporated by reference as if fully set forth herein (the "White Declaration").

## Introduction

To be clear, the Trustee is not objecting to the Motion[2] in submitting this Response. The Trustee also does not make this filing as an advocate for, or opponent of, any party potentially having an interest in the assets of the Trust. Nor does the Trustee seek to persuade the Court to take any particular action with regard to the Trust assets. Rather, the Trustee recognizes the gravity and complexity of the issues forming the dispute between the Debtor and the participants, including those participants making up the Ad Hoc Committee, and appreciates the value of an impartial and informed adjudication of the competing claims as set forth in the Motion and Objection. It was on that basis that the Trustee initiated, prior to the October 7, 2020 petition date, an interpleader action in the United States District Court for the Northern District of Alabama regarding certain payments that – at the direction of the Debtor as the Primary Sponsor

---

[2] Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise its Ownership Rights over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc. Nonqualified Executive Supplemental Pension Plan and Management Retirement Plan [Doc. 138] (the "Motion").

of the Trust and Plan Sponsor of the MRP and ESPP,[3] but prior to the Debtor's September 2, 2020 declaration of insolvency – were not made to the participants in August and September 2020.[4]

The Trustee is, however, cognizant of the need for the Court to have accurate information in analyzing the matters before it, and for that reason felt compelled by certain statements or allegations contained in the Objection or its supporting Declarations to file this Response, in order to provide the Court with facts or explanations that may be pertinent to a proper resolution of this dispute. The Trustee reserves the right to bring other information before the Court that it believes may be beneficial to the Court's understanding of the history or context in which this dispute arises, as needed, and the Trustee's failure to address specifically herein any factual allegations or legal arguments should not be construed as their acceptance or endorsement by the Trustee.

A. <u>The Trustee was not advised about any termination of the MRP or ESPP</u>.

The Objection addresses the Debtor's termination of the MRP and ESPP and asserts that the participants should have been entitled to certain rights or benefits as a result. The only portion of this discussion that is relevant to the Trustee is paragraph 17, in which the Objection states that, "Upon information and belief, it [the Debtor] never notified Regions … of its decisions to terminate the Plans…". The Trustee confirms the accuracy of the Objection's statement: it was not notified by the Primary Sponsor of any termination of the MRP or ESPP and

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.
[4] The matter (the "<u>Interpleader</u>") is pending as *Regions Bank v. Ruby Tuesday, Inc., et al.*, Civil Action No. 2:20-CV-1437-ACA in the United States District Court for the Northern District of Alabama, but is stayed due to the Debtor's initiation of these proceedings. Copies of the Interpleader Complaint and Notice of Correction to Interpleader Complaint are attached to the Objection as part of Exhibit 2; however, the copy of the Notice of Correction of Interpleader Complaint attached at pages 72-77 of Exhibit 2 fails to include the copy of the February 24, 1992 Trust Agreement that was appended to it as part of Exhibit 1, even though submission of the 1992 Trust Agreement to the Interpleader court was the sole purpose for which the Notice of Correction was filed. The 1992 Trust Agreement is, however, attached as Exhibit C to the Debtor's Motion, to which the Objection was filed.

05652065.2                                                      3

ME1 34951043v.1

accordingly was not directed to make any lump sum payments to Participants based on any such termination. *See* White Declaration at ¶¶ 5-6.

B.   <u>The Trustee was not told of any Change of Control[5] of the Plan Sponsor.</u>

The Objection states, in paragraph 9, that "[w]hen NRD purchased RTI, a 'change of control' occurred as defined in the trust document." The Declaration of Mitchell W. Hedstrom attached as Exhibit 5 to the Objection (the "<u>Hedstrom Declaration</u>") states, at paragraph 30, that "it appears clear that a Change of Control did in fact happen effective December 21, 2017" based on the closing of a transaction between NRD Capital and the Debtor effective as of that date. Hedstrom goes on to opine that, based on this alleged Change of Control, the role of the Trustee would have changed, and the Trustee would have taken on new obligations under the Trust Agreement. However, as set forth in Section 13(d) of the 1992 Trust Agreement, those new obligations would have arisen only upon receipt by the Trustee of written notice from the Debtor of a Change of Control, or upon the Trustee's receipt of actual knowledge of same. Furthermore, Section 13(d) mandates that the Debtor notify the Trustee of any Change of Control immediately, but Regions never received any such notification. *See* White Declaration at ¶ 4. Moreover, the Trustee has never had actual knowledge of a Change of Control. *See* White Declaration at ¶ 4, 7. Rather, to this date, the Trustee does not know whether a Change of Control occurred, whether in December 2017 or at any other time. *See* White Declaration at *id*.[6]

---

[5] "Change of Control" is defined in Section 13(d) of the 1992 Trust Agreement as "any event that pursuant to the requirements of Article X of the Primary Sponsor's Certificate of Incorporation, as amended from time to time, requires the affirmative vote of the holders of not less than eighty percent (80%) of the Voting Stock (as defined therein); provided, however, that no event shall constitute a Change of Control if approved by the Board of Directors of the Primary Sponsor a majority of whom are 'present directors' and 'new directors.'"

[6] The fact that the Trustee was never advised that a Change of Control occurred – if, in fact, one ever did – also rebuts Hedstrom's suggestion in paragraph 21 of his Declaration that the Trustee possessed "sole discretion" to take certain actions or make certain decisions, but failed to do so. Referenced Sections 3(b), 6(c) and 6(e) clearly address instances where the Trustee has an ability to exercise its discretion *after* a Change of Control, other than discretion a Trustee may exercise to invest cash held in the Trust "consistent with the normal investment goals and objectives for the Fund as determined by the Primary Sponsor and communicated in writing to the Trustee." Section 11(c) speaks to the discretion of the Trustee's Agent after a Change in Control, not the Trustee. Even assuming *arguendo* that a

C.  As relevant to the Trustee's actions, the governing 1992 Trust Agreement is identical to the 1996 Trust Agreement.

The Trustee does not dispute that the 1992 Trust Agreement is the operative agreement related to the MRP and ESPP. The Trustee also acknowledges that the complaint initiating the Interpleader instead attached a Trust Agreement dated March 7, 1996. The Objection – and specifically, the Hedstrom Declaration – seemingly suggests that the erroneous attachment of the 1996 Trust Agreement is indicative of some failing on the part of the Trustee in performing its duties, but there is no basis for that criticism. The Trustee's counsel attached the 1996 Trust Agreement to the Interpleader complaint because it was the Trust invoked by the Debtor's Chief Executive Officer Sean Lederman in the September 2, 2020 declaration of insolvency delivered to the Trustee with the directive that no further payments should be made to the participants. When the Trustee realized the error, a Notice of Correction was promptly filed in the Interpleader proceeding to attach the 1992 Trust Agreement. Significantly, however, the provisions of the 1996 Trust Agreement and the 1992 Trust Agreement that might bear on the facts before the Court are virtually identical. Notably, every provision of the Trust cited in the Objection is the same in the 1992 Trust Agreement and the 1996 Trust Agreement. Thus, even assuming for the sake of argument that the Trustee had regularly consulted the 1996 Trust Agreement rather than the 1992 Trust Agreement, which the Trustee does not acknowledge, the provisions governing the Trustee and its actions in connection with the instant facts would have been identical under either Agreement. Any suggestion in the Hedstrom Declaration or the Objection to the contrary has no basis.[7]

---

Change of Control did occur, the Trustee was never advised of such, and thus the Trustee could not have known that its authority under the 1992 Trust Agreement had changed. Accordingly, the Trustee appropriately complied at all times with those provisions of the Trust Agreement governing the actions of the Trustee prior to the occurrence of a Change of Control.

[7] In paragraph 17, the Hedstrom Declaration states, *inter alia*, that "[a] new trust agreement was drafted in 1996." The Declaration provides no other context for this comment, and no such "new trust agreement" is attached to the

**Conclusion**

As noted, the Trustee does not file this Response as an objection to the Motion, but simply to clarify certain matters raised in the Objection for the Court in advance of the November 12, 2020 hearing on the Motion.

Date: November 9, 2020
Wilmington, DE

**McCARTER & ENGLISH LLP**

*/s/ Kate Roggio Buck*
Kate Roggio Buck (DE #5140)
405 North King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
Email: kbuck@mccarter.com

*-and-*

**MAYNARD COOPER & GALE PC**
Jayna Partain Lamar (admitted *pro hac vice*)
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203
Phone: (205) 254-1000
Fax : (205) 714-6348
Email: jlamar@maynardcooper.com

*Attorneys for Regions Bank*

---

Declaration or the Objection. The Trustee has no knowledge that any new trust agreement was executed in 1996 or at any other time. *See* White Declaration at ¶¶ 2, 4, 7. Thus, the operative agreement is before the Court; that is, the 1992 Trust Agreement. Hedstrom's own Declaration acknowledges the applicability of the 1992 Trust Agreement. *See* Hedstrom Declaration at ¶25.