IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 138, 140 and 337** |
| | ) | |
| | ) | **Hearing Date: November 12, 2020 at 2:00 p.m.** |
| | ) | |

**RUBY TUESDAY, INC.'S OMNIBUS REPLY TO OBJECTION OF THE AD HOC GROUP OF PARTICIPANTS AND GERALD KAPLAN TO (I) RUBY TUESDAY, INC.'S MOTION FOR AN ORDER AUTHORIZING RUBY TUESDAY, INC. TO EXERCISE ITS OWNERSHIP RIGHTS OVER TRUST ASSETS CURRENTLY HELD IN A "RABBI TRUST" FOR RUBY TUESDAY, INC.'S NON-QUALIFIED EXECUTIVE SUPPLEMENTAL PENSION PLAN AND MANAGEMENT RETIREMENT PLAN; AND (II) RUBY TUESDAY, INC.'S MOTION FOR AN ORDER AUTHORIZING RUBY TUESDAY, INC. TO EXERCISE ITS OWNERSHIP RIGHTS OVER TRUST ASSETS CURRENTLY HELD IN A "RABBI TRUST" FOR RUBY TUESDAY, INC.'S NONQUALIFIED "DEFINED CONTRIBUTION" DEFERRED COMPENSATION PLANS**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

Ruby Tuesday, Inc. ("RTI"), one of the above-captioned debtors and debtors in possession herein (collectively, the "Debtors") hereby files this reply (the "Reply") in support of *Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise Its Ownership Rights Over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Nonqualified Executive Supplemental Pension Plan and Management Retirement Plan* [Docket No. 138] (the "ESPP/MRP Motion"),[2] and *Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise Its Ownership Rights Over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Nonqualified "Defined Contribution" Deferred Compensation Plans* [Docket No. 140] (the "DCP Motion" and together with the ESPP/MRP Motion, the "Motions"), and in response to (i) the Objection of the Ad Hoc Group of Plan Participants (the "Participants" or "Ad Hoc Plan Group") to the Motions (the "Ad Hoc Plan Group Objection" or "Objection") [Docket No. 337], and (ii) the letter objection of Gerald Kaplan to the DCP Motion (the ("Kaplan Objection") filed as [Docket No. 295].

In support of this Reply, the Debtors represent as follows:

**INTRODUCTION**

Admittedly, the use of "rabbi trusts" is always predicated on an uneasy bargain: a company may utilize a rabbi trust to support certain benefits, but company executives, management and other participants in "unfunded" plans — such as the ESPP, MRP and DCPs — know that, in exchange for their ability to defer taxes on their compensation, the rabbi trust's assets explicitly remain the property of the company, subject to claims of the company's creditors — not just the participants. In the unfortunate circumstance where, as here, the

---
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motions.

DOCS_LA:333759.8 76136/0011

company becomes insolvent, the trustees of rabbi trusts stand ready to act upon the orders of a "court of competent jurisdiction" as to how the trust assets will be utilized to satisfy creditors' claims. The trustees of the rabbi trusts that are the subject of the Motions await the orders of this Court to do so here.

RTI and the other Debtors are cognizant of the hardships facing some Participants who chose to defer and contribute portions of their compensation to the DCP Trust. However, RTI's fiduciary duties to all of its creditors dictate that it exercise control over the Rabbi Trust Assets for the benefit of its estate and all creditors, as provided under the Trust Agreements and applicable law.

**ARGUMENT**

1. It is undisputed that all of the Plans[3] are unfunded deferred "top hat" plans that (a) are not required to meet most ERISA or IRC requirements that are imposed on "qualified" (or tax-favored) plans, and (b) were created and maintained for the purpose of providing deferred compensation or retirement benefits to a select group of key executives, management or highly compensated employees. As such, the over $27 million of assets (the "Rabbi Trust Assets") currently being held in the discretionary grantor "rabbi" trusts (the "Rabbi Trusts")[4] -- created pursuant to the Trust Agreements for the Plans -- constitute assets of RTI's bankruptcy estate.

---

[3] The ESPP/MRP Motion relates to the rabbi trust for the ESPP and MRP and the DCP Motion relates to the rabbi trust for RTI's two deferred compensation plans (the "DCPs').

[4] The assets in the Rabbi Trust for the ESPP and MRP (the "ESPP/MRP Rabbi Trust") have an estimated value of $22.348 million as of September 15, 2020, and the assets in the Trust for RTI's two deferred compensation plans (the "DCP Rabbi Trust") have an estimated value of $5.274 million as of September 24, 2020. For purposes of this Reply, "Rabbi Trust Assets" refers to assets held in both the ESPP/MRP Rabbi Trust and DCP Rabbi Trust. The Trust Agreement for the DCPs is defined herein as the "DCP Trust Agreement" and the Trust Agreement for the ESPP and MRP is defined herein as the "ESPP/MRP Trust Agreement").

3

DOCS_LA:333759.8 76136/0011

2. By the Motions, RTI seeks orders authorizing and directing the trustee (the "Trustee") under each of the Rabbi Trusts to monetize the Rabbi Trust Assets in the respective Rabbi Trusts and provide the proceeds to RTI. The Rabbi Trust Assets are being held in the Rabbi Trusts because RTI and predecessor Plan Sponsors elected to establish a source of funds in grantor trusts to assist in meeting liabilities under the Plans. As is the case with all rabbi trusts, the Trust Agreements provide that the Rabbi Trust Assets remain the property of the Plan Sponsor and the rights of the Participants to benefits provided by the Plans and the Rabbi Trust Assets in the Rabbi Trust do not exceed those of a general creditor of the Plan Sponsor in the event of the Plan Sponsor's insolvency. The Plan Sponsor's establishment of the Rabbi Trusts or election to fund the Rabbi Trusts did not convert the Rabbi Trust Assets into funds or assets of the Participants. As the case law and plain language of the Plans and Trust Agreements provide, the Rabbi Trust Assets are and have always been assets of the Plan Sponsor – i.e., RTI, a debtor in possession in these chapter 11 cases. Accordingly, RTI is entitled to exercise its ownership rights in the Rabbi Trust Assets and, in exercising such ownership rights, obtain orders of this Court authorizing and directing the Trustees of the Rabbi Trusts to liquidate and transfer the Rabbi Trust Assets or their proceeds to RTI.

3. The Participants in the Plans were fully informed that the Plans were unfunded and the establishment of the Plans and the Rabbi Trusts did not convey rights to Participants greater than those of general creditors of the Plan Sponsor.[5] Also, the Trust Agreements are unambiguous that (a) the Rabbi Trust Assets are general assets of the Plan

---

[5] *See* ESPP § 12.5; MRP Art. III (attached to the ESPP/MRP Motion); 2005 DCP § 14.1, (attached hereto as **Exhibit "A"**); Old DCP § 15.1 (attached hereto as **Exhibit "B"**).

Sponsor subject to claims of the creditors of the Plan Sponsor and (b) in the event of the Plan Sponsor's insolvency, Participants "shall be deemed to waive any priority the [Participant] may have under law as an employee with respect to any claim against the Plan Sponsor and the Trust beyond the rights the Member would have as a general creditor of the Plan Sponsor."[6]

4. Certain Participants now raise misplaced procedural and equitable arguments as to why the Motions should be denied, including disputes relating to alleged rights to distributions prior to the September 2, 2020, written notice of insolvency RTI sent to the Trustee of the ESPP/MRP Trust, that are unrelated to the limited relief being sought and the ESPP/MRP Motion does not seek to adjudicate.[7] The Participants, like all other creditors, shall have an opportunity to assert their claims against RTI – whether on the bases alleged in the Ad Hoc Plan Group Objection or otherwise – through the normal bankruptcy claims adjudication process before this Court. The Ad Hoc Plan Group Objection also ignores the plain language of the ESPP and MRP and the ESPP/MRP Trust Agreement and misstates the law and case authority regarding rabbi trusts.

5. For the reasons set forth below, the arguments of the Ad Hoc Plan Group must be rejected. It is black letter law that the recipients of "rabbi trusts" are unsecured creditors and that rabbi trusts are property of a debtor's estate. *See Gallone v. Flaherty*, 70 F. 3d 724, 725 (2d Cir. 1995) (being exempt from the funding requirements of title 1 of ERISA, the assets of a top hat plan are part of "the general assets of the employer."); *In re Silicon Graphics, Inc.*, 363

---

[6] *See* ESPP/MRP Trust Agreement § 8(a); DCP Trust Agreement § XI.A.

[7] The Ad Hoc Plan Group Objection purports to object to both Motions, however most of the arguments appear to relate solely to the ESPP/MRP Motion. The argument of the Ad Hoc Plan Group that "deferred compensation funds that the Debtors deposited into the Plans were or are not assets of bankruptcy estates" under sections 541(b)(7)(A) and (B) of the Bankruptcy Code appears to relate solely to the DCP Motion.

B.R. 690, 700 (Bankr. S.D.N.Y. 2007) citing *Goodman v. RTC*, 7 F.3d 1123, 1129 (4th Cir. 1993) ("The recipients of grantor or 'rabbi' trusts are unsecured creditors, who took the risks of being subject to the claims of general creditors for the benefits of favorable tax treatment . . . ."); *In re IT Group, Inc.*, 448 F.3d 661, 669-70 (3d Cir. 2006) (recognizing that funds held in deferred compensation plans that qualified as a rabbi trust were subject to claims of the company's general creditors after company filed for bankruptcy); *In re Bill Heard Enterprises, Inc.*, 419 B.R. 858, 866 (Bankr. N.D. Ala. 2009) (finding that assets held in a rabbi trust were property of the estate). *In re Lehman Bros.*, 617 B.R. 231, 241-42 (Bankr. S.D. N.Y. 2020) ("[I]ncome deferred under an unfunded top hat plan…is not held in a 'constructive trust' for the benefit of participant ….").

      6.      The Ad Hoc Plan Group's equitable arguments are also unavailing. Contrary to the misinterpretation of its ruling set forth in the Ad Hoc Plan Group Objection, the bankruptcy court in *In re Washington Mutual*, *Inc.*, 450 B.R. 490, 504 (Bankr. D. Del. 2011) flatly rejected the argument for imposition of a constructive trust on plan assets being held in a rabbi trust, stating: "[B]ecause of the essential requirement that the top hat plans be unfunded**,** there is no nexus or property identifiably belonging to the Plan Participants on which a constructive trust can be placed to remedy the refusal of the Debtors to pay their benefits."

**A.**    <u>**The Ad Hoc Plan Group's "Pre-insolvency Claims" against RTI Are Not Relevant to the Limited Relief in the Motions Relating to the Use of Rabbi Trust Assets**</u>

      7.      RTI's ability to use the Rabbi Trust Assets outside the ordinary course of business depends solely on the resolution of one issue: if RTI is insolvent, as defined in the

Trust Agreements,[8] then the Rabbi Trust Assets are subject to the claims of RTI's creditors. Questions and disputes pertaining to the claims of the Participants and the treatment of their claims in RTI's bankruptcy case will be decided by this Court at a later date. This includes whether the Participants have contractual or common law claims against RTI for alleged conduct surrounding the Plans and Rabbi Trusts prior to RTI's insolvency. If the Participants bring such claims against RTI and are successful, then they may hold allowed claims against RTI's bankruptcy estate (which include the Rabbi Trust Assets) as general unsecured creditors.

8. The Participants simply ignore the law governing rabbi trusts and the limited nature of the relief being sought through the Motions. Instead, they argue that they are entitled to the Rabbi Trust Assets, not as general unsecured creditors of RTI, but instead as vested owners of the Rabbi Trust Assets based upon RTI's alleged "pre-insolvency" conduct. The Participants' claim of Rabbi Trust Asset entitlement is contrary to the Trust Agreements, the Plans, and the settled law regarding unfunded top hat deferred compensation plans.

9. In their Objection, the Ad Hoc Plan Group makes several allegations of impropriety by RTI prior to RTI becoming insolvent.[9] These allegations include: (a) Participants in the ESPP and MRP were entitled to distributions and had preferred claims prior to the Notice of Insolvency based on an alleged change of control in December 2017 and the termination of the Plans in March 2019, (b) RTI failed to make required contributions to the ESPP/MRP Rabbi Trust, (c) Participants in the ESPP and MRP were misled by RTI about their payment status and

---

[8] As set forth in the Motions, "insolvency" is defined in both Trust Agreements to mean: "the inability of the Plan Sponsor to pay its debts as they become due in the ordinary course of business or that the liabilities of the Plan Sponsor are in excess of its assets."
[9] The Debtors reserve the right to object to all claims that may be asserted by the Ad Hoc Plan Group, including, without limitation, the claims alleged in their Objection.

7

right to lump sum payments, and (d) RTI improperly ordered the Trustee of the ESPP/MRP Rabbi Trust to cease monthly payments to Participants as of August 1, 2020. None of these allegations are relevant to the threshold issue presented in the Motions -- whether the Rabbi Trust Assets are subject to the claims of RTI's creditors. The facts and issues in *Washington Mutual* are strikingly similar to the allegations of the Ad Hoc Member Group and the legal issue before the Court. The *Washington Mutual* court identified the issue as "who is entitled to assets held in [rabbi] trusts created in connection with deferred employee compensation plans created by the predecessor to Washington Mutual, Inc. ("WMI")." *Id*. at 492.

10. Plan participants in WMI's rabbi trusts claimed entitlement to the assets held in trust because of WMI's alleged wrongful conduct which included: WMI's refusal prior to the bankruptcy filing to give the participants "their" funds despite a purported absolute right to receive them, that there was a change in control that allowed the participants to receive lump sum distributions, and that WMI erroneously advised them that they had no right to an early distribution. *Id*. at 497, 502. The *Washington Mutual* court agreed with plan participants that WMI engaged in inequitable conduct. *Id*. at 502.

11. However, despite such findings, the court ruled that the plan assets belonged to WMI, *not* the plan participants. In reaching its ruling, the court found that the subject plans were unfunded top hat plans and therefore, the assets did not belong to the plan participants. Instead, the plan participants' claims would be allowed as general unsecured claims because their claims to the rabbi trust assets were not superior to the rights of other general unsecured creditors. *Id.* at 504.

12. The present matter involves that same issue, virtually the same allegations (if proven), the same law, and warrants the same ruling. The Participants are general unsecured creditors of RTI, and have no entitlement to the Rabbi Trust Assets that are superior to any other of RTI's general unsecured creditors.

B. **The Motion is Not Procedurally Defective and Need Not be Refiled as an Adversary Proceeding**

13. The Ad Hoc Plan Group alleges that the Motions seek to recover property or obtain a mandatory injunction and that such relief must be sought by adversary proceeding (and not by motion). This argument is premised on mischaracterizations of the limited nature of the relief being sought and applicable law regarding rabbi trusts and is wholly without merit.[10]

14. RTI agrees that, pursuant to Federal Rule of Bankruptcy Procedure 7001, "a proceeding to recover money or property" or "to obtain an injunction" must generally be brought in an adversary proceeding. However, RTI is not seeking to recover money or property or obtain an injunction. RTI is simply seeking a court order allowing it to use property of its bankruptcy estate outside the ordinary course of business by authorizing and directing the Trustees of the respective Rabbi Trusts to liquidate and remit the proceeds of its Rabbi Trust Assets. The Trustees do not assert any claim in the Trust Assets other than their fees and expenses as provided under the Trust Agreements, have indicated that they have no objection to the relief being sought in the Motion, and will voluntarily remit the Rabbi Trust Assets proceeds to RTI subject to an order of this court authorizing and directing them to do so as required by the contractual terms of the Trust Agreements. No injunctive relief is being sought in the Motions

---

[10] The case authority cited by the Ad Hoc Plan Group that an adversary proceeding is required involve requests for injunctive relief or a breach of contract action that are completely inapposite to the relief being sought in the Motions.

9

and, as the Trustees are not refusing to remit the Rabbi Trust Assets to RTI, there is no need for a turnover proceeding. The court in *In re Alpha Natural Resources, Inc.*, 554 B.R 787, 799-800 (Bankr. E.D. Va. 2016), held that "[a]n adversary proceeding to 'recover money or property' is only required when the party holding the property contests the estate's entitlement to the property and refuses to return it." *Alpha Natural Resources* involved a request for turnover of monies in a rabbi trust pursuant to sections 541 and 542 of the Bankruptcy Code, in conjunction with a motion under sections 363 and 365 of the Bankruptcy Code to reject three non-qualified deferred compensation plans and two executive retirement plans. Thus, the relief sought by the debtors in *Alpha Natural Resources* that the court determined was properly sought by motion is similar to the relief RTI seeks herein.

15. There is also substantial precedent for seeking access to a chapter 11 debtor's assets held in a rabbi trust by motion. Such authorization by motion (as RTI is seeking) has been granted by a number of other courts, including courts in this District. *See, e.g. In re Creative Hairdresser's Inc.,* Case Nos. 20-14583, 20-14584 (TJC) (Bankr. D. Maryland), [Docket Nos. 694 and 722]; *In re Southern Foods Group, LLC,* Case No. 19-36313 (DRJ) [Docket Nos. 1964 and 2107]*; In re The PMI Group, Inc.*, Case No. 11-13730 (BLS) (Bankr. D. Del. 2013) [Docket Nos. 721 and 760]; *In re BearingPoint, Inc.*, Case No. 09-10691 (REG) (Bankr. S.D.N.Y. 2010) [Docket Nos. 1749 and 1825]; *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (Bankr. D. Del. 2007) [Docket Nos. 493 and 1840].

16. Under the express terms of the Plans and Trust Agreements, Participants are unsecured creditors and the notices of the Motions that provided them with 21 days after the filing of the Motions to file any objections did not deprive the Ad Hoc Plan Group or any other

10

parties in interest of due process.[11] The Rabbi Trust Assets are held by the Trustees who do not object to the relief requested in the Motions and the Participants have received the due process to which they are entitled under the law.

C. **No Rabbi Trust Assets Are Excluded from RTI's Bankruptcy Estate Under Section 541(b)(7)**

17. The Ad Hoc Plan Group argues that, under sections 541(b)(7)(A) and (B) of the Bankruptcy Code, "deferred compensation funds that the Debtors deposited into the Plans [sic] were and are not assets of the bankruptcy estates and cannot be used to satisfy the Debtors' obligations to their creditors." Objection ¶ 36 at 14. In a footnote, the Ad Hoc Plan Group Objection acknowledges authority contrary to this contention that is characterized as "a handful of decisions" that are not discussed or even identified by the Ad Hoc Plan Group. *Id.* n. 6

18. As a threshold matter, the Ad Hoc Plan Group Objection fails to specify which Plans its argument that section 541(b)(7) excludes Plan assets from RTI's bankruptcy estate relates to, in addition to stating erroneously that funds paid into the Rabbi Trusts by the Plan Sponsor under the Plans were taken from "employee benefit plan accounts." *Id.* ¶ 36 at 14. In fact, the only Plans and Rabbi Trusts involving any funding from the deferral of compensation are the DCPs and the DCP Rabbi Trust. And, as set forth in the DCP Motion and this Reply, the DCPs and the DCP Rabbi Trust expressly provide that such funding is the property of RTI.

19. The Ad Hoc Group does not dispute that (a) the Plans are unfunded nonqualified deferred compensation top hat plans, or (ii) the Rabbi Trusts are grantor trusts

---

[11] Indeed, in response to counsel for the Ad Hoc Plan Group's request to provide him with additional time to prepare his response to the Motions, although the Motions were filed on October 15, 2020, the Debtors scheduled the Motions for hearing on November 12, 2020, twenty-eight (28) days after they were filed, and indicated an objection deadline of November 5, 2020, twenty-one (21) days after the Motions were filed.

11

intended to be "rabbi trusts" as provided under applicable Internal Revenue Code regulations and guidance. ERISA does not define "unfunded" to assist in the determination of whether a plan qualifies as a top hat plan. However, case law has established that to be a "funded" plan under ERISA, the plan assets must be "segregated from the general assets of the employer [such that the assets] are not available to general creditors if the employer becomes insolvent."' *Northwestern Mut. Life Ins. Co. v. Resolution Trust Corp.*, 848 F. Supp. 1515, 1517 (N.D. Ala. 1994). In a much-quoted ERISA funding case, *Dependahl v. Falstaff Brewing Corp.*, the United States Court of Appeals for the Eighth Circuit stated: "funding implies the existence of a res separate from the ordinary assets of the corporation." Since *Dependahl*, the existence of a separate res or corpus has been significant to courts' determination of "funding." Thus, participants of unfunded plans have no preferred claim or ownership interest in plan assets because there are no designated plan assets. The rights of an unfunded plan participant are equivalent to those of an unsecured creditor of the employer's general assets. *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000).

20. A top hat plan is "unfunded" when, "[t]he employer promises to pay the employee the deferred compensation at a specified time, but does not set the funds in an escrow, trust fund, or otherwise. The assets used to pay the deferred compensation are the general assets of the employer and are subject to the claims of the employer's creditors." *In re IT Group,* 448 F.3d at 665. In *IT Group, Inc.*, the United States Court of Appeals for the Third Circuit explained that **the employee is not subject to tax on the deferred compensation "until he or she actually receives the deferred amount because 'the employee may never receive the money if the company becomes insolvent**." *Id*.at 664 (emphasis added).

12

21. A rabbi trust, "an irrevocable trust for deferred compensation," is one mechanism commonly used to set aside deferred compensation amounts without jeopardizing the "unfunded status" of a top hat plan. *Id.* Funds held in a rabbi trust "are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency." *Id.*

22. The U.S. Department of Labor (DOL) determines whether a plan is funded based on the tax consequences of the employer's plan arrangement. The DOL considers a plan to be unfunded when plan participants "do not incur tax liability during the year that the contributions to the plan are made." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984-85 (6th Cit. 1991); 915 F. Supp. at 659 (discussing DOL Opinion Letters). The tax treatment of pension plans is determined based on whether the plans meet requirements of the Internal Revenue Code of 1986, as amended ("IRC"), resulting in the distinction between "qualified" and "non-qualified" plans. *See* IRC § 401(a).

23. The trust agreements entered in conjunction with the Plans each provide that the Participants "and their beneficiaries shall have no preferred claim on, or any beneficial ownership in, any assets of the Trust." Furthermore, they provide that "any rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Plan Participants and their beneficiaries against company."

24. Because the trust funds are subject to the claims of RTI's creditors in the event of RTI's insolvency, the underlying trust is deemed to be a rabbi trust. *See In re IT Group*, 448 F.3d at 665 (concluding that through a rabbi trust "funds held by the trust are out of the reach of the employer but are subject to the claims of the employer's creditors in the event of

13

bankruptcy or insolvency . . . the employee is not taxed until receipt of benefits as long as the trust funds are subject to the claims of the employer's creditors. The employer is treated as the owner of the funds and taxed on all fund earnings until the date of distribution.").

25. The recent opinion of the bankruptcy court in *In re Lehman Bros.*, 617 B.R. 231 (Bankr. S.D. N.Y. 2020) flatly rejects the wholly unsupported and inaccurate contention in the Ad Hoc Plan Group Objection that section 541(b)(7) of the Bankruptcy Code excludes deferred compensation paid into a rabbi trust from the debtor's bankruptcy estate. In addition to citing to and discussing the extensive body of case law holding to contrary, the court in *Lehman Bros* explained:

> As discussed *supra*, a central feature of a top hat plan such as the ESEP is its unfunded status, which, by being exempt from the substantive provisions of *ERISA*, is distinct from a "funded" plan, in which the plan's assets must be segregated from the general assets of the employer. [Footnote 8][12] With an unfunded top hat plan, at the time of income deferral, the participant is not considered to have received any money or property; the Internal Revenue Code explicitly excludes from the definition of property for purposes of assessing taxable income "an unfunded and unsecured promise to pay money or property in the future." *See 26 C.F.R. § 1.83-3(e)*; *Miller v. Heller, 915 F. Supp. 651, 659 (S.D.N.Y. 1996)*. Accordingly, income deferred under an unfunded top hat plan, unlike funds paid into a plan covered by the substantive provisions of title I of ERISA, is not held in a "constructive trust" for the benefit of participants, because "there is no nexus or property identifiably belonging to the [p]lan [p]articipants on which a constructive trust can be placed. . . ." *In re Wash. Mut., Inc.*, 450 B.R. 490, 504 (Bankr. D. Del. 2011)
>
> **If section 541(b)(7) did in fact remove the contributions to unfunded top hat plans from the reach of creditors, it would effectively undo the tax-exempt status of such contributions, upsetting the function and tax structure of top hat plans. The purpose of unfunded top hat plans - income tax deferral -**

---

[12] In contrast to an "unfunded" plan, a plan that is subject to both the procedural and substantive rights and protections of *ERISA* is a "funded" plan, and the plan assets must be "segregated from the general assets of the employer [such that the assets] are not available to general creditors if the employer becomes insolvent." *Northwestern Mut. Life Ins. Co. v. Resolution Tr. Corp., 848 F. Supp. 1515, 1517 (N.D. Ala. 1994)*; *see also Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1214 (8th Cir. 1981)* ("Funding implies the existence of a res separate from the ordinary assets of the corporation.").

14

> **depends on the deferred compensation remaining subject to the claims of unsecured creditors. Nothing in the language of the statute or the legislative history of BAPCPA supports the conclusion that section 541(b)(7) was intended to treat top hat plans in bankruptcy in a manner inconsistent with the requirements of the Internal Revenue Code for deferred taxation, and the Court declines to do so here.**

*In re Lehman Bros.,* 617 B.R. at 241-42 (emphasis added).

D. **RTI Does Not Hold the Trust Assets "Only In Trust" and There is No Legal Basis for the Participants to Assert Constructive Claims in the Trust Assets**

26. In Sections III and IV of the Ad Hoc Plan Group Objection, the Ad Hoc Plan Group makes conflicting arguments that RTI holds the Rabbi Trust Assets only in trust for the benefit of the plan participants and that the Rabbi Trust Assets for the ESPP and MRP "are being held in a constructive trust for the benefit of the Plan Participants." Objection § IV at 15. As discussed *supra,* the arguments that the Rabbi Trust Assets are held in trust for the Participants or that this court is authorized under section 105(a) of the Bankruptcy Code to exercise its equitable powers and impose a constructive trust for the Rabbi Trust Assets in the ESPP/MRP Trust are contrary to the express provisions of the Plans, Trust Agreements, ERISA and bankruptcy law.

27. In support of its constructive trust argument, the Ad Hoc Plan Group seeks to distinguish the contrary holding of the bankruptcy court in *Washington Mutual*, the only opinion the Objection cites addressing whether a constructive trust claim can be imposed on assets held in a rabbi trust. The Objection argues that the court in *Washington Mutual* "determined that the constructive trust in that matter must fail because there was no identifiable trust *res* separate from the general assets of the debtor on which to impose the constructive trust," and that contrary to *Washington Mutual* the COLI Policies in the ESPP/MRP Trust are a distinguishable separate res segregated from the general assets of the RTI, and also became the

15

sole property of the Participants based on RTI's alleged obligation to pay distributions "by March 1, 2020." Objection ¶¶ 47-49.

28. To the contrary, the court in *Washington Mutual* held that plan participants' claims for a constructive trust must fail "because of the essential requirement that the top hat plans be unfunded," citing to the Third Circuit's opinion in *In IT Group* and also the United States Court of Appeals for the Fourth Circuit's opinion in *Goodman v. Resolution Trust Corp.*, 7 F. 3d 1123, 1127 (4th Cir. 1993) (holding that "the favorable tax treatment afforded to grantor trusts . . . is not extended without certain strings attached. Federal tax law conditions the beneficial tax treatment of a grantor trust on the requirement that the trust fund remains subject to the claims of the employer's creditors as if the assets were the general assets of the employer."). *See Washington Mutual*, 450 B.R. at 494, 504. As discussed *supra*, the bankruptcy court in *Lehman Bros* cited to the holding and reasoning of the bankruptcy court in *Washington Mutual* in rejecting the argument of the ESEP Committee in that case that the funds held in a rabbi trust for a deferred compensation plan were not property of the estate under section 541(b)(7) of the Bankruptcy Code. As with the top hat plans in *Washington Mutual,* RTI's ESPP and MRP are unfunded and both the Plans and the ESPP/MRP Trust Agreement provide that the Participants do not have a right to the assets in the ESPP/MRP Rabbi Trust that is superior to the rights of other general unsecured creditors. RTI is therefore entitled to such assets, which may be used to pay creditors in accordance with the priorities of the Bankruptcy Code and terms of any plan of reorganization that may be confirmed.

E. **The Ad Hoc Plan Group's Alleged ERISA Claims Have Nothing to Do with RTI's Right to Exercise its Ownership Rights in the Trust Assets**

29. The Ad Hoc Plan Group Objection alleges they are entitled to recover benefits due them under the Plans under ERISA. This allegation is also irrelevant to the relief being sought in the Motions as the requests for orders authorizing and directing the Trustees to liquidate and transfer the proceeds of Rabbi Trust Assets to RTI is without prejudice to the unsecured claims of the Participants against RTI or other Debtors.

F. **Additional Discovery is Not Needed to Determine if the DCPs Have Been Terminated.**

30. The Ad Hoc Plan Group Objection also raises the need for discovery to determine if the DCPs have been terminated. For the reasons set forth above, whether the DCPs have been terminated is irrelevant to the relief being sought by RTI in the DCP Motion. However, RTI hereby advises the Ad Hoc Participant Group and this Court that the DCPs have not been terminated.

G. **The Issues Raised in the Kaplan Objection Do Not Impact the Disposition of the Rabbi Trust Assets Under the Trust Agreements and Applicable Law.**

31. In a letter submitted to the court and filed as Docket No. 295, Gerald (Jerry) Kaplan, a Participant in one of RTI's DCPs states: "over 98% of the money in MY Deferred Compensation Plan is money that I earned (along with interest earned from the money that I put into the plan) working hard for Ruby Tuesday for nearly 10 years helping to build their business and making profits for them." Mr. Kaplan further states he is "angry, frustrated, sad, and scared for my future" and 'was counting on this money for my retirement." He also criticizes RTI for its current financial plight and contends it would be unfair to take the money he earned away from him.

17

32. As previously noted, RTI is cognizant of the hardship to Participants in the DCPs if they do not end up receiving benefits under the Plans that they were expecting. However, the Participants in the DCPs were informed that the DCP Plans are unfunded top-hat plans, and that the DCP Rabbi Trust established to aid the Plan Sponsor in providing benefits under the DCPs is a grantor trust subject to the claims of the Plan Sponsor's creditors in the event of the insolvency of the Plan Sponsor, as set forth in the DCPs and the DCP Trust Agreement. As stated by the Fourth Circuit in *Goodman v. RTC*, 7 F.3d at 1129: "the favorable tax treatment afforded to grantor trusts . . . is not extended without certain strings attached. Federal tax law conditions the beneficial tax treatment of a grantor trust on the requirement that the trust fund remains subject to the claims of the employer's creditors as if the assets were the general assets of the employer."

33. As with the ESPP/MRP Rabbi Trust, RTI's fiduciary duty to all of its creditors dictates that it exercises control over the Rabbi Trust Assets in the DCP Trust for the benefit of its estate and all creditors as provided under the DCP Trust Agreement.

## CONCLUSION

Based on the foregoing, the Debtors respectfully request that the Court enter orders (i) granting the ESPP/MRP Motion; (ii) granting the DCP Motion; and (iii) granting such other and further relief as the Court deems appropriate.

18

DOCS_LA:333759.8 76136/0011

Dated: November 9, 2020	PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: rpachulski@pszjlaw.com
	mpagay@pszjlaw.com
	joneill@pszjlaw.com

Counsel for Debtors and Debtors in Possession

19
DOCS_LA:333759.8 76136/0011