**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC., *et al.*, | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docs. 138, 337 |

**JOINDER OF COMPASS GROUP USA, INC. TO PORTIONS OF THE OBJECTION OF THE AD HOC GROUP OF PLAN PARTICIPANTS TO RUBY TUESDAY, INC.'S MOTION FOR AN ORDER AUTHORIZING RUBY TUESDAY, INC. TO EXERCISE ITS OWNERSHIP RIGHTS OVER TRUST ASSETS CURRENTLY HELD IN A "RABBI TRUST" FOR RUBY TUESDAY, INC.'S NON-QUALIFIED EXECUTIVE SUPPLEMENTAL PENSION PLAN AND MANAGEMENT RETIREMENT PLAN**

Compass Group USA, Inc. ("Compass") submits this joinder ("Joinder") to portions of the Objection of the Ad Hoc Group of Plan Participants (Doc. 337) (the "Objection") to Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise Its Ownership Rights Over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Nonqualified Executive Supplemental Pension Plan and Management Retirement Plan (Doc. 138) (the "Motion"), and in further support of the Objection, states as follows:

1. By this Joinder, Compass joins in, and hereby incorporates by reference, the arguments made by the Ad Hoc Group of Plan Participants in paragraphs 1 through 59 of the Objection. In particular, Compass believes that, as set forth in the Objection at paragraphs 28-34, the relief requested by the Debtors can only properly be sought by adversary proceeding.

2. In 1996, Morrison Restaurants, Inc. merged with Ruby Tuesday (Georgia), Inc. to form Ruby Tuesday, Inc. ("RTI"). *See* Exhibit A, at 1. Simultaneously with the merger, RTI spun off two subsidiaries, including Compass's predecessor. *Id.*

3. Morrison Restaurants, Inc. sponsored the Executive Supplemental Pension Plan ("ESPP") and Management Retirement Plan ("MRP") at the time of the merger and spinoff. *Id.* ¶ 2. The companies entered into an Agreement Respecting Employee Benefits Matters ("Agreement") to describe their respective rights and obligations concerning employee benefits. *Id.* at 1.

4. The spun off companies created mirror ESPPs and MRPs, and liabilities and related assets were allocated among the original plans and mirror plans. *Id.* RTI assumed liability for all benefits owed to its employees under the ESPP and MRP. *Id.* ¶ 14. However, the parties agreed to indemnify each other for pre-spinoff accrued benefits under certain terms and conditions, including that "all or a portion of the assets of the grantor trust maintained . . . to provide a source for the payment of benefits . . . are paid to the . . . creditors." *Id.*

5. RTI's Motion should be denied for the reasons set forth in paragraphs 1 through 59 of the Ad Hoc Group of Plan Participants' Objection.

6. Specifically, the Trust Agreement provides that the participants have no greater rights in the Trust Fund than that of general creditors *until* such time that distributions are due. (Doc. 138-4, at § 8.) Once distributions are due though, the participants have a preferred claim on and beneficial ownership in the Trust Fund. (*Id.* ("No participant shall have a preferred claim on or any beneficial ownership in the Fund *prior to the time for distribution* to the participant under the terms of the Plan or the terms of this Trust Agreement.").)

7. According to RTI's own Motion, RTI terminated the ESPP and MRP effective March 1, 2019 by Board resolution and anticipated making lump sum final distributions under the Plan between March 1, 2020 and March 1, 2021 as required by Treasury Regulations Section 1.409A-3(j)(4)(ix). (Doc. 138, ¶ 10.)

8. Under the terms of the ESPP, the lump sum payment "shall be made at the earliest date permitted under" 409A—or on March 1, 2020. (Doc. 138-2, § 9.3(b).) Therefore, participants have a preferred claim on and beneficial ownership in the Trust Fund as of March 1, 2020. (Doc. 138-4, at § 8.)

9. Without the benefit of the Board resolution terminating the plans, it is unclear when final distributions were due under the MRP. For unknown reasons, RTI failed to notify the Trustee or the participants of the plan terminations, and chose not to make the Board resolution an exhibit to its Motion. To the extent RTI or creditors challenge the timing of final distributions, discovery is needed on that issue.

10. The Trustee admits in its own pleadings that it is unclear whether the Trust Fund is subject to RTI's obligations to general creditors or should be reserved for participants in pay status:

- "The Trust, however, does not follow the model rabbi trust form set forth in Internal Revenue Procedure 1992-64 precisely on some points that call into question whether it is in fact the more restrictive form of rabbit trust (that sets aside trust assets *as separate and apart from the Plan Sponsor's other assets* in all cases prior to insolvency), which creates some uncertainty as to its proper interpretation." (Doc. 337-2, at ¶ 122 (emphasis added).)

- "[I]t is not clear whether the Trustee's primary obligation under the Trust Agreement runs in favor of the Grantor of the Trust (RTI as Plan Sponsor) to help it meet its obligations to all general creditors, *or whether the primary obligation of the Trustee is to pay participants who are in pay status*, *i.e.* the Participants." (Doc. 337-2, at ¶ 124 (emphasis added).)

11. In addition, the Trustee acknowledges that a change of control triggers enhanced responsibilities and protections: "The Trust Indenture provides differing responsibilities for the Trustee turning on whether or not there has been a change of control." (Doc. 337-2, at ¶ 124.) Upon information and belief, a change of control occurred in 2017, which triggered or should have triggered those enhanced protections for the Trust Fund for the benefit of the participants. (Doc. 337, at ¶¶ 8-10.)

12. As acknowledged by the Trustee holding the funds, the proper ownership of the Trust Funds is a contested matter, which requires an adversary proceeding under Bankruptcy Rule 7001. Fed. R. Bankr. P. 7001. (Doc. 337, ¶¶ 28-34.)

13. Compass reserves its right to raise other or further arguments with respect to the Motion and supplement this Joinder as necessary.

Wherefore, for the reasons set forth above, Compass respectfully requests that the Court deny RTI's Motion and grant such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| Dated: November 11, 2020<br>Wilmington, Delaware | **Morris, Nichols, Arsht & Tunnell LLP**<br>*/s/*<br>Derek C. Abbott (No. 3376)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br>Email: dabbott@mnat.com<br><br>- and -<br><br>**McGuireWoods**<br>Scott P. Vaughn (*pro hac vice* pending)<br>201 North Tryon Street<br>Suite 3000<br>Charlotte, NC 28202-2146<br>Telephone: (704) 343-2000<br>Facsimile: (704) 343-2300<br>Email: svaughn@mcguirewoods.com<br><br>- and -<br><br>**McGuireWoods**<br>Summer Speight (*pro hac vice* pending)<br>Gateway Plaza<br>800 East Canal Street<br>Richmond, VA 23219-3916<br>Telephone: (804) 775-1000<br>Facsimile: (804) 775-1061<br>Email: speight@mcguirewoods.com<br><br>**COUNSEL TO COMPASS GROUP USA. INC.** |