# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related Docket No. 355 |

## ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS; (B) APPROVING CERTAIN BIDDER INCENTIVES IN CONNECTION WITH THE DEBTORS' ENTRY INTO A STALKING HORSE AGREEMENT, IF ANY AND (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter coming before the Court on the *Motion of Debtors for an Order (A)*

*Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Approving Certain Bidder*

*Incentives in Connection With the Debtors' Entry Into a Stalking Horse Agreement, If Any and (C)*

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432).  The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

.

*Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Motion"),[2] filed by the debtors in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"), if any; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (iv) no trustee or examiner having been appointed in these chapter 11 cases and (v) notice of the Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

       THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

       A.    This Court has jurisdiction over this Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

       B.    Notice of the Motion was adequate and sufficient under the circumstances of this chapter 11 case, and such notice complied with all applicable requirements of title 11 of

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the applicable exhibits to the Motion, or, if not defined therein, the Bid Procedures.

the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules.

    C.  All objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein. A reasonable opportunity to object or otherwise be heard was afforded to all parties in interest entitled to notice.

    D.  The bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") are reasonable and appropriate under the circumstances of these chapter 11 cases. The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the Bid Procedures. The Bid Procedures represent a fair and appropriate method for maximizing the realizable value of substantially all of the Debtors' Assets. Therefore, the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

    E.  The notice substantially in the form attached hereto as **Exhibit 3** to be served on counterparties to the Assumed/Assigned Executory Contracts ("Cure Notice") is calculated to provide adequate notice concerning the proposed assumption and assignment of the Assumed/Assigned Executory Contracts that are the property of the Debtors, and is intended to provide due and adequate notice of the relief that will be sought with respect to the Assumed/Assigned Executory Contracts in connection with a Sale.

    F.  The procedures for the assumption and assignment of the Assumed/Assigned Executory Contracts provided for herein and the Cure Notice are reasonable

3

and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The procedures for the assumption and assignment of the Assumed/Assigned Executory Contracts have been narrowly tailored to provide an adequate opportunity for all non-debtor counterparties to the Assumed/Assigned Executory Contracts to assert any objection.

       G.      The entry of this Bid Procedures Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

       1.      The relief requested in the Motion is granted to the extent set forth in this Bid Procedures Order.

       2.      The Bid Procedures attached hereto as **Exhibit 1** are approved in their entirety, and are incorporated into this Bid Procedures Order and shall apply to the proposed sale of the Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

       3.      The deadline for the Debtors to enter into a Stalking Horse Agreement shall be December 10, 2020.  If the Debtors, after consultation with the Consultation Parties (as such term is defined in the Bid Procedures), enter into a Stalking Horse Agreement, the Debtors shall, not later than December 11, 2020, (a) send adequate assurance of future performance information to counterparties to Assumed/Assigned Executory Contracts selected by the Stalking Horse Bidder; and (b) file with the Court a notice (the "Stalking Horse Selection Notice") that contains information regarding the Stalking Horse Bidder, the Bidder Incentives sought to be approved

pursuant to the Stalking Horse Agreement, such Stalking Horse Bidder's bid (the "Stalking Horse Bid") and attaches the proposed Stalking Horse Agreement.

4. Parties in interest may file objections to the Stalking Horse Selection Notice not later than 4:00 p.m. (Eastern Time), on December 16, 2020. Replies to any such objections must be filed not later than 4:00 p.m. (Eastern Time), on December 17, 2020. The Court will conduct a hearing regarding the Stalking Horse Selection Notice and any objections thereto on December 18, 2020, at 1:00 p.m. (prevailing Eastern Time).

5. The deadline for the Debtors to file the form Asset Purchase Agreement for the submission of Bids pursuant to the Bid Procedures shall be December 14, 2020.

6. The deadline for submitting a Qualified Bid shall be 5:00 p.m. (Eastern Time) on January 14, 2021 (the "Bid Deadline").

7. Any credit bids shall be subject to section 363(k) of the Bankruptcy Code and any challenge rights set forth in any final order approving debtor in possession financing in these cases.

8. The proposed sale of the Assets, the proposed assumption and assignment of the Assumed/Assigned Executory Contracts, and the Auction shall be conducted in accordance with the provisions of this Bid Procedures Order and the Bid Procedures.

9. The Auction and Bid Procedures Notice attached hereto as **Exhibit 2** provides proper notice to all parties in interest and is approved.

10. No later than five (5) business days after entry of the Bid Procedures Order, the Bid Procedures/Auction Notice will be served on all parties required by Bankruptcy Rule

2002, including: (a) the U.S. Trustee; (b) counsel to any statutory committee appointed in these Cases; (c) counsel to Goldman Sachs Specialty Lending Group, L.P.; (d) all persons or entities that have filed proofs of claim in the Debtors' cases that have not been previously disallowed by order of this Court and have been processed by the Debtors' claims agent prior to the mailing of the Disclosure Statement Notice; (e) all persons or entities listed in the Debtors' respective Schedules of Assets and Liabilities, and any amendments thereto; (f) the Securities and Exchange Commission; (g) all other parties in interest that have filed requests for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases; (h) any other known holders or potential holders of claims against the Debtors; (i) all entities known to have expressed an interest in bidding on the Assets; (j) all known counterparties to the Debtors' executory contracts and unexpired leases; (k) the United States Attorney's office; (l) all state attorneys general in states in which the Assets are located; (h) the Internal Revenue Service; (m) for each state in which the Assets are located, the applicable taxing authorities; and (n) environmental and certain other regulatory authorities in the states or applicable jurisdictions in which the Debtors' assets are located.

11.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. The following Assumption and Assignment Procedures govern the assumption and assignment of the Assumed/Assigned Executory Contracts in connection with the Sale of Assets to the Successful Bidder(s):

>   (a)     On or before December 14, 2020, the Debtors will file a schedule (the "Cure Schedule") identifying (i) the Assumed/Assigned Executory Contracts, potentially to be assumed and assigned to a buyer in the event of a Sale and (ii) the amount, if any, the Debtors believe is necessary to cure all monetary defaults under

6

such agreement pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").

(b)     Upon the filing of the Cure Schedule, the Debtors will serve the Cure Schedule and a notice of filing of the Cure Schedule (the "Cure Notice") on each of the nondebtor counterparties listed on the Cure Schedule by ECF, first class mail or by facsimile transmission, email or email to counterparties' counsel, if such contact information is known to the Debtors . The Cure Notice will state that the Debtors are or may be seeking the sale, assumption and assignment of the Assumed/Assigned Executory Contracts and include (i) a description of each executory contract and unexpired lease that may be assumed and assigned in connection with the Sale and (ii) the Assumption/Assignment Objection Deadline (as defined below).

(c)     Counterparties to proposed Assumed/Assigned Executory Contracts must file objections to the proposed assumption and assignment thereof ("Assumption/Assignment Objection") no later than five (5) days before the Confirmation Hearing (the "Assumption/Assignment Objection Deadline").

(d)     Each Assumption/Assignment Objection must be filed with the Court and served on the following parties so as to be received no later than the Assumption/Assignment Objection Deadline: (a) the Debtors: c/o Ruby Tuesday, Inc., 333 E. Broadway Ave., Maryville, TN 37804 (Attn: Shawn Lederman (SLederman@rubytuesdav.com)): (b) counsel to the Debtors: Pachulski, Stang, Ziehl & Jones LLP, 919 N Market St # 1700, Wilmington, DE 19801 (Attn: Malhar S. Pagay, Esq. (mpagay@pszjlaw.com) and James E. O'Neill, Esq. (joneill@pszjlaw.com)); (c) counsel to any statutory committee appointed in these cases; and (d) the Office of the United States Trustee, District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Linda Richenderfer).

(e)     If no objections are received with respect to any Assumed/Assigned Executory Contract, then the Cure Cost set forth in the Cure Schedule for such agreement will be binding upon the nondebtor counterparty to such agreement for all purposes and will constitute a final determination of the Cure Cost required to be paid by the applicable Debtor in connection with the assumption and assignment of such agreement. In addition, all counterparties to the Assumed/Assigned Executory Contracts who fail to file an objection before the Assumption/Assignment Objection Deadline, will be (i) forever barred from objecting to the Cure Costs or adequate assurance of future performance with respect to the Assumed/Assigned Executory Contracts, and the Debtors and the applicable purchaser(s) will be entitled to rely solely upon the Cure Cost set forth in the Cure Schedule; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable purchaser(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumptions or assignment of the applicable Assumed/Assigned Executory Contracts.

(f)     At any time prior to the Confirmation Hearing, the Successful Bidder(s) may amend the Cure Schedule to remove any executory contract or

unexpired lease therefrom.[3] The nondebtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice by fax, email (to the counterparty or its counsel of record, if any, if such email address is known by the Debtors) or, if neither such method is available, overnight mail, within one (1) business day after such determination.

        (g)      Where a nondebtor counterparty to an Assumed/Assigned Executory Contract files an Assumption/Assignment Objection asserting a cure amount higher than the proposed Cure Cost (the "<u>Disputed Cure Amount</u>"), then (i) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Confirmation Hearing, and subject to the applicable purchaser's consent to such resolution, the Debtors will promptly inform the Official Committee of Unsecured Creditors that may be appointed (the "Creditors' <u>Committee</u>") of the proposed resolution or (ii) to the extent the parties are unable to consensually resolve the dispute prior to the Confirmation Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Confirmation Hearing or at such other date and time as may be fixed by the Court. The Debtors intend to cooperate with counterparties to Assumed/Assigned Executory Contracts to attempt to reconcile any differences with respect to a particular Cure Cost. At any time prior to the Confirmation Date of the Plan, the Debtors may remove such contract or lease from the list of Assumed/Assigned Executory Contracts. With respect to any Assumption/Assignment Objection regarding Cure Costs, either the Debtors or the proposed assignee shall pay all undisputed Cure Costs pending resolution of the Assumption/Assignment Objection and the amount of disputed Cure Costs shall be reserved pending resolution. If the parties are unable to agree on the amount of disputed Cure Costs to be reserved, such amount will be fixed by the Court. Upon resolution of the disputed portion of the Cure Costs, either the Debtors or the proposed assignee, as applicable, shall pay the amount due to the relevant counterparty within seven (7) calendar days.

        12.      For the avoidance of doubt, the presence of an Assumed/Assigned Executory Contract on the Cure Schedule (a) does not constitute an admission that such Assumed/Assigned Executory Contract is an executory contract or unexpired lease and/or (b) shall not prevent the Debtors or any Successful Bidder(s) from subsequently withdrawing such assumption or rejecting such Assumed/Assigned Executory Contract at any time before such Assumed/Assigned Executory Contract is actually assumed and assigned pursuant to an order of the Court.

---

[3] If the conditions for the Sale are not satisfied and the Debtors pursue the Stand-Alone Reorganization, it is anticipated that all of the Debtors' executory contracts and unexpired leases will be assumed except for those executory contracts and unexpired leases set forth on a schedule (the "<u>Plan Rejection Schedule</u>") filed in connection with the Plan. The Plan Rejection Schedule (if necessary) will be filed with the Court in accordance with the Plan and served on the non-debtor counterparties to the executory contracts and unexpired leases.

DOCS_LA:333923.15 76136/002

13. The Debtors shall provide or cause to be provided adequate assurance information regarding all Successful Bidder(s) and Back-up Bidder(s) to the nondebtor counterparties to each Assumed/Assigned Executory Contract that may be assumed and assigned to such Successful Bidder(s) or Back-up Bidder(s). Each of the nondebtor counterparties to the Assumed/Assigned Executory Contracts who receive adequate assurance information in the form of voluntary disclosures or discovery from the Debtors or a proposed assignee regarding a proposed assignee shall keep the adequate assurance information confidential and only use or disclose the information as may be necessary to conduct due diligence on the proposed assignee and/or object to a proposed assignment of the Assumed/Assigned Executory Contract. To the extent any such confidential information must be filed, it shall be redacted in any public document and accompanied by a motion to seal.

14. The Debtors, after consultation with the Consultation Parties, shall determine whether a bid is a Qualified Bid and shall notify Qualified Bidders whether their bids have been recognized as such as promptly as practicable after a Qualified Bidder delivers all of the materials required by the Bid Procedures.

15. If the Debtors receive one or more Qualified Bids (as defined in the Bid Procedures) that, either individually or collectively with other Qualified Bids, constitute a Topping Bid, an auction (the "Auction") will be held no later than **January 19, 2021, at 10:00 a.m. (Eastern Time)**, virtually, by telephonic or video conference. The Stalking Horse Purchaser, if any, is deemed a Qualified Bidder for all purposes, including for purposes of participating in the Auction, should it wish to do so.

DOCS_LA:333923.15 76136/002

16.     Promptly after the conclusion of the Auction, but no later than before the Confirmation Hearing, the Debtors shall file the Confirmation Order, which shall include approval of the Sale as agreed upon between the Debtors and the Successful Bidder(s).  The Auction will be conducted openly and will be transcribed. Pursuant to Local Rule 6004-1(c)(ii)(C) and (D), all creditors shall be permitted to view and/or listen to the Auction live, which will be transcribed or otherwise recorded.

17.     Counsel to the Debtors is authorized to hold and conduct the Auction in accordance with the Bid Procedures.  At such Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, and the Auction shall be conducted openly and transcribed.  Within twenty-four (24) hours following the conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder and Back-up Bidder with the Court and shall serve such notice by fax, email, or if neither is available, by overnight mail to all counterparties whose contracts are to be assumed and assigned and, if a counterparty's counsel has filed a Notice of Appearance in these bankruptcy cases, by email to such counterparty's counsel.

18.     The Court will conduct a hearing to approve the Successful Bid on January 22, 2021, at 1:00 p.m. (prevailing Eastern Time).

19.     If a Topping Bid is received, the following deadlines shall apply:

a.     **January 20, 2021:** Deadline for the Debtors to send adequate assurance of future performance information regarding the Successful Bidder and Back-up Bidder to counterparties to Assumed/Assigned Executory Contracts;

    b.    **January 29, 2021**: Deadline for objections to (1) proposed assumption/assignment of contracts and leases in connection with Sale; and (2) Plan confirmation; and

    c.    **February 3, 2021**: Deadline for replies to any objections to (1) proposed assumption/assignment of contracts and leases in connection with Sale; and (2) Plan confirmation.

20.    Final approval of the Sale shall be considered by the Court as part of the Confirmation Hearing.[4]

21.    Nothing in this Order shall (i) relieve the Debtors from compliance with any obligations under any leases of non-residential real property through and including the date any such leases are assumed or rejected unless otherwise ordered by the Court or as agreed between the parties, or (ii) limit the rights of any lessor to file a motion to compel assumption or rejection of any such leases if warranted under applicable law.

22.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) and 7062 or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

---

[4] If a Topping Bid is received the Debtors will seek to schedule a hearing regarding confirmation of the Plan (the "Confirmation Hearing") on February 4, 2021, pursuant to a subsequent Order Approving Disclosure Statement and Solicitation Procedures.

23. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Bid Procedures Order.

**Dated: November 20th, 2020**
**Wilmington, Delaware**

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

DOCS_LA:333923.15 76136/002