# Exhibit 1

## Bid Procedures

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BID PROCEDURES FOR SALE OF
## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

The above-captioned debtors and debtors in possession (the "Debtors") filed a motion dated November 7, 2020 (the "Motion"),[2] seeking, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest and best offer for the sale of substantially all of the business assets of the Debtors (the "Assets"). On [●], the Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

The Debtors will only proceed with Sale Transaction(s) for the sale of all or substantially all of their assets (the "Sale"), if certain conditions are satisfied as set forth in greater detail below. Any Sale Transaction will be subject to the approval of the Court, which approval shall be sought in connection with the confirmation of the Debtors' Chapter 11 Plan (the "Plan"). A joint hearing by the Court on the approval of the Sale Transaction(s) and confirmation of the

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion or Purchase Agreement, as applicable.

Plan is currently scheduled for [●],at [TIME] (Eastern Time) (the "Sale and Confirmation Hearing").]

***Stalking Horse Bidder***

The Debtors, in their discretion, exercised in good faith and after consultation with the Consultation Parties, may (subject to filing a notice, opportunity for parties in interest to object and Court approval) execute, subject to higher or otherwise better offers, a purchase agreement (the "Stalking Horse Agreement") with a Qualified Bidder that submits a Qualified Bid for all or substantially all of the Debtors' assets that also satisfies the criteria of a Topping Bid. The counterparty to such Stalking Horse Agreement will serve as the stalking horse bidder (the "Stalking Horse Bidder") at the Auction, if one is held. If the Debtors choose to enter into a Stalking Horse Agreement, the Debtors, in their discretion, exercised in good faith and after consultation with the Consultation Parties, may offer the Stalking Horse Bidder the Breakup Fee of no more than 3.0% of the total cash consideration payable under such Stalking Horse Agreement plus the Expense Reimbursement for the Stalking Horse Bidder's actual out-of-pocket costs not to exceed $500,000. In the event that a Stalking Horse Agreement is entered into, the Debtors will promptly file such agreement with the Court. Neither any holder of interests in RTI Holding Company, LLC, or their affiliates (collectively, the "NRD Parties"), nor the Secured Creditors shall receive the Breakup Fee or Expense Reimbursement if they are the Stalking Horse Bidder.

***Agreement***

Prospective bidders should submit a proposed asset purchase agreement (a "Purchase Agreement"), similar in form and substance, as modified, to the asset purchase agreement to be furnished by the Debtors. Subject to the approval of the Court, the Qualified Bidder who submits the highest or best bid among the Topping Bids or any credit bids at the auction will purchase the Assets, and assume certain executory contracts and unexpired leases of the Debtors, free and clear of any Liens, Claims and Encumbrances, and other interests. The transaction contemplated is subject to competitive bidding as set forth herein, and approval by the Court pursuant to Bankruptcy Code sections 363, 365, 1123 and/or 1141, as applicable.

***Assets for Sale***

The Debtors are offering for sale the Assets, which generally consist of their restaurant leases, inventory and equipment, owned real estate, intellectual property, and associated restaurant business, substantially all of the Debtors' other business assets and property associated therewith. For the avoidance of doubt, a bidder may bid on a portion or all of the Assets, provided that such bid, either individually or in combination with other bids, must qualify as a Topping Bid. All of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, encumbrances and other interests (except as otherwise provided in the applicable Purchase Agreement) to the maximum extent permitted by sections 363 and/or 1123 of the Bankruptcy Code, with such liens, claims, encumbrances and other interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such liens, claims, encumbrances and other interests applied against the Assets.

Further information on the Assets being offered for sale pursuant to these Bid Procedures is available upon request from the Debtors' investment banker, FocalPoint Securities, LLC

2

("FocalPoint"), 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025 (Attn: Richard F. NeJame) and at rnejame@focalpointllc.com.

*Participation Requirements*

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors and their counsel, and counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"), not later than five (5) business days before the Bid Deadline (defined below), unless otherwise modified by the Debtors in their reasonable discretion after consultation with the Consultation Parties, *provided that*, without the Secured Creditors' prior written consent, the Debtors cannot waive or modify any provisions of the Bid Procedures relating to (a) the definition of a Topping Bid, (b) the requirement that the Stalking Horse Bid and any Qualified Bid, either individually or in combination with other Qualified Bids, shall be a Topping Bid, (c) the requirement that any credit bid by the Secured Creditors shall be deemed to be a Qualified Bid, (d) the Secured Creditors' right to credit bid, subject to the Challenge rights set forth in any debtor in possession financing order and the Debtors' right, pursuant to that certain Restructuring Support Agreement Term Sheet, dated September 18, 2020, by and between the Debtors and Secured Creditors (the "RSA Term Sheet") to contest the allowance and inclusion in any such credit bid of any call premium and yield maintenance premium under the Credit Agreement, or (e) any deadlines or milestones included in the Bid Procedures that constitute Sale Milestones in the RSA Term Sheet:

a) Confidentiality Agreement. An executed confidentiality agreement ("Confidentiality Agreement") in form and substance acceptable to the Debtors;

b) Identification of Potential Bidder. Concurrently with its Bid, identification of the Potential Bidder (including the name of the entity that will be designated as the proposed assignee of the Assumed/Assigned Executory Contracts), its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

c) Corporate Authority. Concurrently with its Bid, written evidence satisfactory to the Debtors (in consultation with the Consultation Parties) of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

d) Disclosure. Written disclosure of any connections or agreements with the Debtors, the Stalking Horse Purchaser, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors;

e) Industry Experience. Information regarding the Potential Bidder's (and any guarantor's) experience operating restaurants and trade names used in connection with such restaurant operations; and

f) Proof of Financial Ability to Perform. Prior to or at the time of presentation of a Bid, written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated transaction. Such information should include, *inter alia*, the following:

   (1) the Potential Bidder's and any guarantor's current financial statements (audited if they exist);

   (2) contact names and numbers for verification of financing sources;

   (3) evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

   (4) any such other form of financial disclosure of credit-quality support information or enhancement acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction. Each Potential Bidder or Qualified Bidder shall comply with reasonable requests for additional information by the Debtors, Creditors' Committee or their respective advisors regarding such Potential Bidder's or Qualified Bidder's financial wherewithal to consummate and perform its obligations.

The Creditors' Committee shall maintain the confidentiality of the foregoing materials as if such materials constituted the confidential materials of the Debtors.

*Designation as Qualified Bidder*

  A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets of the Debtors constitute a Topping Bid, do not overlap and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described above and otherwise satisfies the requirements of the Bid Procedures Order and the procedures set forth herein, and that the Debtors, in their discretion (in consultation with the Creditors' Committee, Goldman Sachs Specialty Lending Group, L.P. (as "DIP Agent", "DIP Lender" and as a "Secured Creditor") and TCW Direct Lending (as a "DIP Lender" and "Secured Creditor" and, both of the foregoing, together with the Creditors' Committee, the "Consultation Parties")), determine is reasonably likely to submit a *bona fide* offer for the Assets and to be able to consummate a sale if selected as a Successful Bidder; *provided, however*, that, notwithstanding anything to the contrary herein, to the extent that the Secured Creditors submit a credit bid for any of the Assets, the Secured Creditors shall no longer be treated as a Consultation Party for purposes of these Bid Procedures; *provided, further*, that if any member of the Creditors' Committee indicates its intent to submit a Bid or is a Potential Bidder, such member shall no longer be treated as a Consultation Party for purposes of these Bid Procedures and may not participate in the deliberations of the Creditors' Committee regarding any transaction arising in connection with these Bid Procedures or have access to Bids until such time as all Qualified Bidders are provided with copies of all Qualified Bids; *provided, further*, that only the Debtors' Independent Directors and its Chief Executive Officer may participate in the deliberation and determination of which Potential Bidders shall constitute Qualified Bidders; and no NRD Party will have access to Bids (other than the Debtors' Chief Executive Officer who agrees not to share any such information with NRD Parties) until such time as all Qualified Bidders are provided with copies of all Qualified Bids. The Debtors' Chief Executive Officer shall not be involved with developing any bid by any NRD Parties.

  The Debtors, in their discretion and in consultation with the Consultation Parties, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

DOCS_LA:333923.15 76136/002

The Stalking Horse Purchaser, if any, is a Qualified Bidder and is deemed to satisfy all Bid requirements as set forth herein.

A landlord shall be deemed a Qualified Bidder and is deemed to satisfy all Bid requirements as set forth herein solely in respect of leases sought to be assumed and assigned to which it is a party; *provided, however*, that (i) to the extent such bidding landlord's proposed Purchase Price includes a cash component, such landlord must provide a Good Faith Deposit equal to ten percent (10%) of such cash component amount; and (ii) the landlord shall not be required to provide evidence of adequate assurance of future performance with respect to such leases.

*Access to Due Diligence Materials*

Only Potential Bidders that execute and deliver a confidentiality agreement satisfactory to the Debtors, in consultation with the Consultation Parties, are eligible to receive due diligence access or access to additional non-public information. The Debtors shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtors believe that such disclosure would be detrimental to the interests of the Debtors. If the Debtors determine that a Potential Bidder who has satisfied all requirements to become a Qualified Bidder and yet does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or access to additional non-public information shall terminate. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

*Due Diligence from Bidders*

Each Potential Bidder and Qualified Bidder (each, a "Bidder") (and, collectively, "Bidders") shall comply with all requests for additional information and due diligence access by the Debtors or its advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

**Bidding Process**

The Debtors and their advisors, shall (in consultation with the Consultation Parties): (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets. The Debtors (in consultation with the Consultation Parties) shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order that will better promote the goals of such process.

*Bid Deadline*

On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written and electronic copies of its Bid to the Debtors, Ruby Tuesday, Inc., 333 E. Broadway Ave., Maryville, TN 37804 (Attn: Shawn Lederman (SLederman@rubytuesday.com), with copies to (a) the Debtors' investment banker,

5

FocalPoint Securities, LLC, FocalPoint Securities, LLC ("FocalPoint"), 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025 (Attn: Richard F. NeJame), and at rnejame@focalpointllc.com; (b) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: Malhar S. Pagay and James E. O'Neill, and at mpagay@pszjlaw.com and joneill@pszjlaw.com; and (c) counsel to the Creditors Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn.: Robert T. Schmidt and Adam C. Rogoff, and at rschmidt@kramerlevin.com and arogoff@kramerlevin.com, not later than 4:00 p.m. (prevailing Eastern time) on January 14, 2021 (the "Bid Deadline").  The Debtors shall promptly provide copies of all Bids to counsel for the Consultation Parties.  Additionally, the Debtors shall promptly provide copies of all Bids proposing to assume all or any portion of the Morrison Restaurants, Inc. Retirement Plan ("Pension Plan") to counsel for the Pension Benefit Guaranty Corporation.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors (in consultation with the Consultation Parties) to satisfy each of the following conditions), unless otherwise modified by the Debtors in their reasonable discretion after consultation with the Consultation Parties; *provided that*, without the Secured Creditors' prior written consent, the Debtors cannot waive or modify any provisions of the Bid Procedures relating to (a) the definition of a Topping Bid, (b) the requirement that the Stalking Horse Bid and any Qualified Bid, either individually or in combination with other Qualified Bids, shall be a Topping Bid, (c) the requirement that any credit bid by the Secured Creditors shall be deemed to be a Qualified Bid, (d) the Secured Creditors' right to credit bid, subject to the Challenge rights set forth in any debtor in possession financing order entered in these cases and the Debtors' right, pursuant to that certain Restructuring Support Agreement Term Sheet, dated September 18, 2020, by and between the Debtors and Secured Creditors (the "RSA Term Sheet")  to contest the allowance and inclusion in any such credit bid of any call premium and yield maintenance premium under the Credit Agreement, or (e) any deadlines or milestones included in the Bid Procedures that constitute Sale Milestones in the RSA Term Sheet:

1. Good Faith Deposit.  Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of Ruby Tuesday, Inc.  in an amount to be determined by the Debtors, in consultation with the Consultation Parties, but in any event no less than 10% of the Bidder's offer.

2. Purchase Price.  The Bid, on its own or when combined with other Bids in accordance with the Bid Procedures, must be a Topping Bid.  The consideration proposed by such Bid may include only cash and/or other consideration acceptable to the Debtors (in consultation with the Consultation Parties).  If a Stalking Horse Bidder has been selected by the Debtors, the cash component of the Bid must be no less than an amount necessary to satisfy the Breakup Fee and Expense Reimbursement, as defined below.  In order for the Bid to qualify as a Topping Bid, (a) it must provide for cash consideration at closing that is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt Claims in full on the closing date or (b) the Debtors, in consultation with the Consultation Parties, must be able to combine such Bid with other Bids for subsets of Assets such that, collectively, such Bids meet the criteria for a Topping Bid.  The Bid must clearly set forth the purchase price and identify any non-cash components including, without limitation, which liabilities of the Debtors the bidder is agreeing to assume (the "Purchase Price").

6

For the avoidance of doubt, each Bid must expressly state whether it will assume all or any portion of the liabilities relating to the Pension Plan.

3. <u>Irrevocable</u>. The Bid must include a signed writing stating that it is irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-up Bidder, its offer shall remain irrevocable until the earlier of (a) the closing of the Sale with the Successful Bidder or the Back-up Bidder, and (b) March 23, 2021 (the earlier of the dates being the "<u>Termination Date</u>").

4. <u>Principal Terms</u>. A Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "<u>Contemplated Transaction Documents</u>") and a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Stalking Horse Agreement, if any, including specification of the proposed purchase price and any changes to any exhibits or schedules to the Purchase Agreement. The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtors than the provisions contained in the Stalking Horse Agreement, if any. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Contemplated Transaction Documents. The Contemplated Transaction Documents must include a commitment to close by no later than March 23, 2021.

5. <u>Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions. A Bid must disclose any governmental approvals identified by the Qualified Bidder other than as set forth in the Purchase Agreement that may impact the evaluation of such Bid.

6. <u>Authorization to Bid and Identity of Bidder</u>. A Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of such entity that is submitting the Bid, including the identity of each equity holder or other financial backer of the bidder if such bidder is formed for the purpose of submitting the bid.

7. <u>Financing Sources</u>. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtors (in consultation with the Consultation Parties) with appropriate contact information for such financing sources.

8. <u>No Fees Payable to Qualified Bidder</u>. Other than the Stalking Horse Bid, a Bid may not request or entitle the Qualified Bidder to any breakup fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bid Procedures.

9. <u>Immediate Payment of the Breakup Fee and Expense Reimbursement</u>. A Bid must allow for the immediate payment of the Breakup Fee and Expense Reimbursement to the

Stalking Horse Purchaser from the first proceeds of the cash portion of the Purchase Price of such Bid.

10. <u>Non-Reliance.</u>  A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and assumed liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtors believe, in their discretion (in consultation with the Consultation Parties), that such Bid would be consummated if selected as the Successful Bid.  The Debtors shall have the right to reject any and all Bids that they believe, in their discretion (in consultation with the Consultation Parties), do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.  Any credit bid submitted by the Agent shall be deemed to be a Qualified Bid.

For the avoidance of doubt, any bid submitted by the members of the Creditors' Committee or NRD Parties must be submitted by the Bid Deadline and must qualify as a Qualified Bid, and any Bid submitted by the Agent and Secured Creditors must be submitted by the Bid Deadline..

## **Auction**

After the receipt and review of all Qualified Bids, the Debtors shall make a determination, in consultation with the Consultation Parties, whether to proceed with the selection of a Baseline Bid (defined below) and the Auction for a Sale. The Debtors will only proceed with the Auction if the following conditions are satisfied, or if there is a reasonable likelihood that the such conditions will be satisfied at the conclusion of the Auction: (1) the Debtors' Board of Directors (subject to the other conditions set forth herein) concludes that acceptance of one or more Qualified Bids for all of the Assets is value-maximizing for the Debtors' estates; and (2) the Debtors will proceed with the Auction only if a bid (or bids) is received which provides for cash deposits of no less than ten percent (10%) of the purchase price and for cash consideration that is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt Claims in full on the closing date.  For the avoidance of doubt, confirmation of the Plan is not a requirement for the Debtors to proceed with the Auction for a Sale.

The Debtors shall provide the Stalking Horse Purchaser, all Qualified Bidders and the Consultation Parties with copies of all Qualified Bids in advance of the Auction, but may exclude any confidential financial information, as reasonably designated by the applicable Qualified Bidder.

Unless otherwise designated by the Debtors (in consultation with the Consultation Parties), the Auction shall commence at **10:00 a.m. (Eastern time) on a date no later than January 19, 2021,** and be conducted virtually, by telephonic or video conference.

8

In advance of the Auction, the Debtors will notify all Qualified Bidders in writing of (i) the highest or otherwise best Qualified Bid that, either individually or collectively with other Qualified Bids, constitutes a Topping Bid, as determined by the Debtors in their discretion in consultation with the Consultation Parties (the "<u>Baseline Bid</u>") and (ii) the time and place of the Auction.

If the Debtors do not receive at least one (1) Qualified Bid from a Qualified Bidder (inclusive of the Stalking Horse Purchaser Bid) that is, either individually or, collectively with other Qualified Bids, a Topping Bid, then no Auction shall be scheduled or conducted.

If the Auction is necessary, such Auction shall be conducted according to the following procedures:

**1.    Participation at the Auction**

Only the Stalking Horse Purchaser and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Purchaser, the Debtors, the Consultation Parties and the U.S. Trustee shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtors (in consultation with the Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or best offer for the Assets in accordance with the Bid Procedures.

In the Debtors' discretion in consultation with the Consultation Parties, after the conclusion of the Auction, the Debtors may resume an auction for the sale of discrete assets and/or discrete groups of assets, if any, which are not included in the Successful Bid, on such bidding procedures as may be implemented by the Debtors in their discretion.

**2.    The Debtors Shall Conduct the Auction**

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtors in their discretion (in consultation with the Consultation Parties), and may take into account any factors the Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estates. All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors reserve the right to conduct the Auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Bid Procedures, the Auction or the proposed transaction.

**3.      Terms of Overbids**

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

**(a)      Minimum Overbid Increment**

During the Auction, bidding shall begin initially with the Baseline Bid. Any Overbid after the Baseline Bid shall be made in increments of at least $100,000 in cash or other consideration acceptable to the Debtors; *provided, however*, that any Overbids by the Stalking Horse Purchaser thereafter shall only be required to be equal to the sum of (1) the then existing lead Bid plus (2) the $100,000 Overbid less (3) the sum of the amount of the Breakup Fee and Expense Reimbursement; *provided, further*, that the Debtors shall not increase the Overbid increment to an amount greater than $100,000 without the consent of the Creditors' Committee.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors (in consultation with the Consultation Parties) accept a higher Qualified Bid as an Overbid.

**(b)      Consideration of Overbids**

The Debtors reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

**4.      Additional Procedures**

The Debtors may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion (in consultation with the Consultation Parties), will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Bankruptcy Code. All such rules will provide that all Bids shall be made and received on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction. The Auction shall be held virtually, by telephonic or video conference.

The Debtors (in consultation with the Consultation Parties) may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Court approving the sale of the Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures; or (iii) contrary to the best interest of the Debtors, their estates and their creditors. Notwithstanding the foregoing, the Debtors (in consultation with the Consultation Parties) shall take into account any proposed assumption of liabilities relating to the Pension Plan when considering the highest and best offer.

5.  **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

6.  **Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors (in consultation with the Consultation Parties) shall identify the highest or best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) from among the Topping Bids or any credit bid(s) for the Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest or best offer will provide the greatest amount of net value to the Debtors, and the next highest or best offers among the Topping Bids or any credit bid(s) after the Successful Bid (the "Back-up Bid") and the entity or entities submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon three (3) days' prior notice by the Debtors, the Back-up Bidder selected by the Debtors must immediately proceed with the closing of the transaction contemplated under the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

In the event that a Successful Bidder does not consummate the Sale and a Back-up Bidder(s) has been previously identified, the Debtors shall (a) file and serve a Notice of Intent to Proceed with Back-up Bid, and (b) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than five (5) days), at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory contracts that do not consent to a proposed assumption and assignment to the Back-up Bidder. Assumption and assignment to the Back-up Bidder, as identified in the Notice of Successful Bidder, shall not be considered or approved at the Sale Hearing nor shall affected landlords or counterparties be required to object to assumption and assignment to the Back-up Bidder prior to the filing and service of the Notice of Intent to Proceed with Back-up Bid.

As stated above, the Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the Termination Date.

7.  **Review and Selection of Bidders**

If any NRD Party is a Qualified Bidder, only the Debtors' independent directors may participate in the deliberation and determination of who may participate in the Auction and who is the Successful Bidder and Back-up Bidder.

**Acceptance of Successful Bid**

The Debtors shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Court after the Confirmation Hearing. The Debtors' presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Court at the Confirmation Hearing.

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the Purchase Agreement of the Successful Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or the Purchase Agreement of the Successful Bidder.

### Free of Any and All Interests

Except as otherwise provided in the Successful Bidder's Purchase Agreement and subject to the approval of the Court, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, encumbrances, and other interests to the maximum extent permitted by sections 363 and/or 1141 of the Bankruptcy Code, as applicable, with such liens, claims, encumbrances, and other interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such liens, claims, encumbrances and other interests applied against the Assets.

### Sale and Confirmation Hearing

At the Sale and Confirmation Hearing, the Debtors may seek the entry of an order (the "Confirmation Order") confirming the Plan and authorizing and approving one or more Sale Transactions to the Successful Bidder(s). The Sale and Confirmation Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (i) an announcement of such adjournment at the Sale and Confirmation Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale and Confirmation Hearing

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated, the Debtors, in consultation with the Consultation Parties, shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale and Confirmation Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the next highest such Bid without further order of the Court.

### Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder (or the Back-up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such transaction at Closing. The Debtors will hold the Good Faith Deposits of the Successful Bidder and the next highest Qualified Bidder in a segregated account until the closing of the sale with the Successful Bidder; Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of the Debtors' damages resulting from such Successful Bidder's breach or failure to perform.