## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

RTI HOLDING COMPANY, LLC,[1]

               Debtors.

Chapter 11

Case No. 20-12456 (JTD)

(Jointly Administered)

## DEBTORS' MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO APPROVE SETTLEMENT WITH AD HOC GROUP OF PLAN PARTICIPANTS

Ruby Tuesday, Inc. ("RTI" or the "Debtor"), and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move the Court (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105 and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement (the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

"Settlement") between the Debtors and the individuals constituting an ad hoc group of plan participants (the "Ad Hoc Group" and, collectively, with the Debtors, the "Parties"), including, without limitation, those listed on Exhibit A to the *Verified Statement of Gibbons P.C. and Holifield & Jannich PLLC on Behalf of Ad Hoc Group of Plan Participants Pursuant to Rule of Bankruptcy Procedure 2019* [Docket No. 224], in respect of the orders of the Court [Docket Nos. 571, 572] (collectively, the "Rabbi Trust Orders") granting *Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise its Ownership Rights Over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Nonqualified Executive Supplemental Pension Plan and Management Retirement Plan* [Docket No. 138] (the "ESPP/MRP Rabbi Trust Motion") and *Ruby Tuesday, Inc.'s Motion for an Order Authorizing Ruby Tuesday, Inc. to Exercise its Ownership Rights Over Trust Assets Currently Held in a "Rabbi Trust" for Ruby Tuesday, Inc.'s Nonqualified "Defined Contribution" Deferred Compensation Plans* [Docket No. 140] (the "DCP Rabbi Trust Motion" and, collectively, with the ESPP/MRP Rabbi Trust Motion, the "Rabbi Trust Motions"). The Debtors have been advised that the Official Committee of Unsecured Creditors (the "Committee") supports approval of the Settlement.

In support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

## **Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule

9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in

connection with this Motion to the extent that it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments in connection herewith consistent with

Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule bases for the relief sought herein are sections 105(a)

and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

4.      On October 7, 2020, the Debtors commenced these cases by filing

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The cases are being

jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors have continued in the

possession of their property and have continued to operate and manage their business as debtors

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 26,

2020, the Office of the United States Trustee appointed the Committee in these cases.

5.      The Debtors develop, operate, and franchise casual dining restaurants in

the United States, Guam, and five foreign countries under the Ruby Tuesday® brand.  The

company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the

Southeast, Northeast, Mid-Atlantic and Midwest regions of the United States.

6.      A more detailed description of the Debtors' business and operations, and

the events leading to the commencement of these chapter 11 cases, is provided in the

*Declaration of Shawn Lederman, Chief Executive Officer of Ruby Tuesday, Inc., in Support of*

3

*First Day Pleadings* [Docket No. 3] (the "First Day Declaration"), and incorporated herein by reference.[2]

**The Rabbi Trust Motions**

7.	On October 15, 2020, RTI filed the ESPP/MRP Motion, pursuant to which it requested that the Court enter its order (a) authorizing RTI to exercise its ownership rights over assets held in a "rabbi trust" (the "ESPP/MRP Trust") for two of RTI's nonqualified deferred compensation "top hat" benefit plans -- an Executive Supplemental Retirement Plan ("ESPP") and a Management Retirement Plan ("MRP"),  (b) authorizing and directing the trustee of the ESPP/MRP Trust, Regions Bank (the "ESPP/MRP Trustee"), to liquidate and transfer RTI's assets held in the ESPP/MRP Trust (the "ESPP/MRP Trust Assets") to RTI's bankruptcy estate, and (c) authorizing the termination of the ESPP/MRP Trust and the discharge of all of the ESPP/MRP Trustee's obligations to the ESPP/MRP Trust after all of the trust assets or their proceeds have been transferred to RTI.

8.	That same day, RTI filed the DCP Motion, pursuant to which it requested that the Court enter its order (a) authorizing RTI to exercise its ownership rights over assets held in the rabbi trust (the "DCP Trust") for RTI's nonqualified "defined contribution" deferred compensation plans, (b) authorizing and directing the trustee of the DCP Trust, Wells Fargo Bank, N.A. (the "DCP Trustee"), to liquidate and transfer RTI's assets held in the DCP Trust (the "DCP Trust Assets") to RTI's bankruptcy estate, and (c) authorizing RTI and the DCP Trustee to terminate the DCP Trust and authorizing the termination of the DCP Trust and the discharge of all of the DCP Trustee's obligations to the DCP Trust after all of the DCP Trust Assets or their proceeds have been transferred to RTI.

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

DOCS_LA:334216.4

9.      The Court conducted hearings regarding the Rabbi Trust Motions on November 12, 2020, and announced its ruling granting such motions on November 16, 2020. Also on November 16, 2020, counsel for the Ad Hoc Group (a) advised the Debtors, the Court and all parties in interest present at the hearing of the Ad Hoc Group's intent to appeal the Court's granting of the Rabbi Trust Motions; and (b) in furtherance of such impending appeal, moved orally that the Court issue a stay pending appeal, which motion was denied.

10.     On November 19, 2020, the Court entered the Rabbi Trust Orders.

**The Settlement**

11.     Subsequent to the entry of the Rabbi Trust Orders, the Parties engaged in discussions regarding the Ad Hoc Group's impending appeals of such orders and other issues relating to the Ad Hoc Group's assertion of claims against the Debtors' bankruptcy estates.

12.     As a result of such discussions, the Parties have reached the following Settlement, subject to the approval of this Court:

a.      Neither the Ad Hoc Group nor any of its individual members shall appeal either of the Rabbi Trust Orders.

b.      Upon the Effective Date of the Settlement (as defined below), counsel for the Ad Hoc Group shall provide the Debtors' counsel with redacted statements of fees billed and costs incurred by its professionals and experts in connection with the representation of the Ad Hoc Group in connection with the ESPP/MRP Trust and the DCP Trust through the date of the hearing regarding this Motion.  The Debtors shall pay the amount of such professional fees and costs, up to the maximum aggregate amount of $275,000.

c.      From and after the Effective Date, the Debtors and the Ad Hoc Group will engage in good faith discussions regarding the allowed amounts of claims asserted by individual members of the Ad Hoc Group (the "Claims Reconciliation Process").

d.      At the conclusion of the Claims Reconciliation Process, counsel for the Ad Hoc Group shall provide the Debtors' counsel with redacted statements of fees billed and costs incurred by its professionals and experts in connection with the representation of the Ad Hoc Group in connection with the Claims Reconciliation Process.  The Debtors shall pay the amount of such professional fees and costs, up to the maximum aggregate amount of $50,000.

e.      The Settlement shall become effective on the first (1st) business day (the "Effective Date") after which, with respect to each of the Rabbi Trust Orders (i) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined to be in effect by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; and (ii) the operation or effect of which has not been reversed, stayed, modified or amended and which is in full force and effect.

## Relief Requested

13.     By this Motion, the Debtors respectfully request entry of an order, in substantially the form attached hereto as **Exhibit A**, approving the Settlement.

## Basis for Relief Requested

14.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).  Bankruptcy Rule 9019 governs the procedural prerequisites to approve a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

15.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  Bankruptcy Rule 9019 provides that on motion by the trustee (or debtor in possession) and after notice and a hearing, the court may approve a compromise or settlement.  In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates.  *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998).  The decision whether to accept or reject a compromise lies within the sound discretion of the court.  *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

16.     In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the

7

probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of

the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d)

the paramount interest of the creditors.  *Martin*, 91 F.3d at 393.  Courts generally defer to a

trustee's or debtor in possession's business judgment when there is a legitimate business

justification for the decision.  *Id.* at 395.

17.    When applying the *Martin* factors to a particular motion, "the court is not

supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the

settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety

Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations

omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health

Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  Although approval of a compromise

is within the "sound discretion" of the bankruptcy court, *World Health*, 344 B.R. at 296, the

court should not substitute its judgment for that of a trustee or debtor in possession.  *In re

Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).  The

ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the

estate." *TSIC*, 393 B.R. at 78.  A court need not be convinced that a proposed settlement is the

best possible settlement, but "must conclude that it is within the reasonable range of litigation

possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

18.    The Debtors believe the Settlement is fair and reasonable and is in the best

interests of the Debtors' estates and creditors, and should be approved pursuant to Bankruptcy

Rule 9019.  The Settlement is the product of good-faith discussions and arms' length bargaining

among the Parties.  For the reasons outlined below, the Debtors believe that the Settlement is in

the best interests of the Debtors' estates.

19.    First, the Settlement permanently resolves potentially costly appellate litigation over the disposition of the ESPP/MRP Trust Assets and DCP Trust Assets, the proceeds of which represent critical liquidity for the Debtors during the pendency of these chapter 11 cases.  The uncertainty caused by such appeals would negatively affect the Debtors' reorganization efforts.  Indeed, in various proceedings before the Court, the Debtors and other parties in interest have noted the central role the rabbi trust proceeds have in supporting the Debtors' operations during and emerging from chapter 11, particularly in light of the continuing unpredictable impact of the COVID-19 pandemic.

20.    For example, the Debtors noted in the ESPP/MRP Motion that

> the [ESPP/MRP] Trust holds Company-Owned Life Insurance …
> policies with an estimated cash surrender value of $22,347,955.67
> and approximately $111,730.07 of cash on hand.  Thus the
> liquidation and return of the Trust Assets to RTI's bankruptcy
> estate will provide RTI with substantial funds and liquidity for the
> benefit of its bankruptcy estate and creditors, including the
> Participants.  Specifically, under the terms of the RSA, in order to
> secure Exit Financing contemplated therein and successfully
> emerge from these chapter 11 cases, the Debtors must have
> minimum liquidity of $12.5 million after satisfying their
> obligations to creditors under the Plan.

ESPP/MRP Motion ¶ 18 at 9.  They also stated in the DCP Motion that "transferring the [DCP] Trust to RTI's control will lead to a cash inflow of over $5 million, thereby providing RTI's bankruptcy estate with significant liquidity."  DCP Motion ¶ 24 at 12-13.  The Settlement, which eliminates the risk of the Ad Hoc Group's appeal of the Rabbi Trust Orders, removes uncertainty regarding the Debtors' receipt of the rabbi trust proceeds contemplated therein.

21.    Additionally, as revealed by the arguments raised by the Ad Hoc Group in its objection to the Rabbi Trust Motions and the Court's extensive ruling granting such motions, any appeals of the Rabbi Trust Orders are likely to involve provisions of ERISA, the Internal Revenue Code, the interplay between those statutes and the Bankruptcy Code and potentially

other complex issues of trust and tax law.  The Settlement eliminates the need for appellate litigation regarding these complex issues.

22.    The Settlement also contemplates that the Parties will work together to address discrepancies in the claim amounts asserted by individual pension participants in the Ad Hoc Group, which will assist the Debtors in developing an estimate of the pool of unsecured claims.

23.    Aside from the standards under Bankruptcy Rule 9019, a settlement involving the payment of amounts in resolution of disputes constitutes a use of property of the estate outside the ordinary course of business.  *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999).  A settlement outside of the ordinary course of business of a debtor requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See id.; see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").  Courts normally defer to the trustee's or debtor in possession's business judgment so long as there is a legitimate business justification.  *See id.; see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

24.    Here, the Debtors submit that approval under section 363(b) of the Bankruptcy Court is overwhelmingly in the best interests of creditors.  The Settlement contemplates the use of a maximum of $325,000 in order to assure the estates' access to approximately $27 million in proceeds from the rabbi trusts.  Therefore, Debtors' decision to

expend the amounts to be paid under the Settlement furthers a sound business purpose in eliminating uncertainty surrounding their access to substantial funds.   The Debtors have been advised that the Settlement also has the support of the Committee.

25.    For all the reasons set forth above, the Debtors, in an exercise of their sound business judgment, submits that the Settlement is fair, reasonable, and appropriate and should be approved by this Court.

## Notice

26.    Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Goldman Sachs Specialty Lending Group, LP (as administrative and collateral agent); (c) the Committee; (d) the trustees of the rabbi trusts that are the subject of the Rabbi Trust Motions; (e) the individual members of the Ad Hoc Group; and (f) any party requesting special notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion, approve the Settlement, enter the proposed order, and grant the Debtors such other relief as is just and proper.

DOCS_LA:334216.4

Dated:    December 1, 2020          PACHULSKI STANG ZIEHL & JONES LLP

                                    */s/ James E. O'Neill*
                                    Richard M. Pachulski (CA Bar No. 90073)
                                    Malhar S. Pagay (CA Bar No. 189289)
                                    James E. O'Neill (Bar No. 4042)
                                    919 North Market Street, 17th Floor
                                    P.O. Box 8705
                                    Wilmington, DE  19899-8705 (Courier 19801)
                                    Telephone:  302-652-4100
                                    Facsimile:  302-652-4400
                                    Email: rpachulski@pszjlaw.com
                                          mpagay@pszjlaw.com
                                          joneill@pszjlaw.com

                                    Counsel to the Debtors and Debtors in Possession