# Exhibit A

**Sale Agreement**

## AGREEMENT FOR SALE OF LIQUOR LICENSE

Clarkston, MI – RT #7087

THIS AGREEMENT FOR SALE OF LIQUOR LICENSE (this "Agreement") is made and entered into as of the 23 day of Sept, 2020 (the "Effective Date") by and between RT MICHIGAN FRANCHISE, LLC a Delaware limited liability company ("Seller") and SBG INVESTMENTS, LLC, a Michigan limited liability company ("Buyer"). Each of the foregoing entities may hereinafter be referred to together as the "party" or "parties."

### WITNESSETH:

WHEREAS, The State of Michigan Liquor Control Commission ("MLCC") issued that certain Class C liquor license #134920 (the "License") in Seller's name at the address of 6898 Sashabaw Rd., Clarkston, MI;

WHEREAS, Seller desires to sell and assign all rights in the License issued by the MLCC and Buyer desires to purchase same from Seller; and

WHEREAS, Seller and Buyer have agreed to set forth in this Agreement the terms governing the purchase and sale of the License.

NOW, THEREFORE, for good and valuable consideration consisting of the mutual obligations of this Agreement, the parties agree as follows:

1. **Purchase and Sale**.

    1.1. Seller agrees to sell, transfer and assign to Buyer and Buyer agrees to purchase and acquire the License for use at the premises located at 29022 Stephenson Hwy., Madison Heights, MI 48071 (the "Premises").

    1.2. The parties agree that the sale or transfer of alcoholic beverages or inventory are not included in this transaction.

2. **Purchase Price**.

    2.1. Buyer shall pay to Seller the sum of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Purchase Price") payable as follows:

    2.2. Upon the Effective Date of this Agreement, Buyer shall deposit the sum of Five Thousand and No/100 Dollars ($5,000.00) by wire transfer of immediately available funds (the "Deposit") with Buyer's counsel, Peter Abbo, Esquire, 28545 Orchard Lake Road, Suite B, Farmington Hills, MI 48334-2996, ("Escrow Agent"). The Deposit shall be credited against the Purchase Price at Closing (as defined herein) unless returned to Buyer or paid to Seller in accordance with the terms hereof. In the event that Closing shall not be consummated, Escrow Agent shall disburse the Deposit as hereinafter provided. The balance of the Purchase Price, as adjusted by any prorations and credits shall be deposited with Escrow Agent on or before Closing and shall be paid to Seller at Closing by way of wire transfer of immediately available funds.

3. **Application for License Transfer**. Within ten (10) days after the Effective Date of this Agreement, Buyer shall file all necessary forms and documents with the MLCC in order to transfer said License from Seller to Buyer. Seller and Buyer agree to deliver to each other or the appropriate

1

governmental entities any documents and applications requested. Except as otherwise provided in this Agreement, all costs associated with the application to transfer the License shall be the responsibility of Buyer.

4.  **MLCC Approval**. In the event approval of such transfer has not been approved by the MLCC within one hundred fifty (150) days from the Effective Date of this Agreement (the "**Approval Deadline**"), this Agreement may be terminated by either party by giving ten (10) days written notice of such party's desire to terminate to the other party, after which time Escrow Agent shall disburse the Deposit to Buyer and the parties shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement. Buyer shall not be deemed to be in default of this Agreement so long as Buyer is diligently pursuing MLCC liquor license transfer approval. Notwithstanding the foregoing, Buyer may not terminate this Agreement as aforesaid in the event Buyer fails to diligently pursue the application with the MLCC.

5.  Closing. Provided this Agreement is not terminated as herein provided, the closing and settlement of this transaction shall be held within five (5) days after Buyer receives written approval from the MLCC for the transfer of the License to Buyer as provided herein (the "**Closing**"). Closing shall be held by escrow deliveries to the Escrow Agent or at such other place and date as the parties hereto shall mutually agree. All applicable transfer, sales, use, filing and other taxes shall be paid by Buyer.

6.  Conditional License. Upon request of Buyer, Seller shall cooperate and execute and deliver such documents as Buyer may request in obtaining a Conditional License in its name to enable the Buyer to operate and sell alcohol while the permanent MLCC license transfer process continues.

7.  Default.

   7.1.  In the event Buyer shall default under this Agreement, Buyer and Seller agree that the Deposit shall be paid over to Seller as liquidated damages and Seller agrees to accept said sum in full satisfaction and discharge of any and all claims that Seller has or may have against Buyer. Upon delivery of the Deposit to Seller, the parties shall have no further rights and obligations hereunder except those which expressly survive termination of the Agreement.

   7.2.  In the event Seller shall default under this Agreement, Buyer may elect, at Buyer's discretion: (a) declare Seller in default under this Agreement and terminate this Agreement by written notice to Seller in which event the Deposit shall be promptly refunded to Buyer and the parties shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement or (b) pursue specific performance of this Agreement provided Buyer institutes an action for specific performance within thirty (30) days following the default by Seller and the expiration of any cure period.

   7.3.  Prior to declaring a default and exercising the remedies described herein, the non-defaulting party shall issue written notice of default to the defaulting party pursuant to Section 13 herein describing the event or condition of default in sufficient detail to enable a reasonable person to determine the action necessary to cure the default. The defaulting party shall have five (5) business days from receipt of the notice in which to cure the default. If the default has not been cured within the foregoing five (5) business day period, the non-defaulting party may exercise the remedies described above. Notwithstanding anything contained herein to the contrary, the notice required and period to cure under this Section 7 for any failure of Buyer or Seller (as applicable) to deliver the Deposit or to complete the Closing on the contemplated timeframe herein shall be two (2) business days. The provisions of this Section 7 shall survive the Closing or termination of this Agreement.

8. **Termination Upon Denial of License Transfer.** In the event the MLCC or the City of Madison Heights shall refuse to approve the transfer of the License to Buyer (after any administrative appeal thereof, at Buyer's option and expense) for any reason other than the breach by Buyer of the express terms of this Agreement, after Buyer has complied with all the terms and provisions herein stated, then this Agreement shall become null and void and Escrow Agent shall promptly return to Buyer the Deposit and the parties shall have no further rights or obligations hereunder except those which expressly survive termination of this Agreement.

9. **Representations and Warranties of Seller.** To the best of Seller's knowledge and belief, Seller represents and warrants to Buyer as follows:

   9.1. Seller is the owner of the License with full right to sell or dispose of the same as Seller may choose (subject to applicable legal requirements) and at Closing, there shall be no outstanding violations, taxes, liens, encumbrances, pledges or claims of any nature whatsoever against the License.

   9.2. The License has been renewed by the MLCC with an expiration date of April 30, 2021.

   9.3. This Agreement has been duly and validly authorized by any and all necessary corporate action of Seller and upon due execution and delivery, will constitute a valid and binding agreement of Seller.

10. **Representations and Warranties of Buyer.** Buyer represents and warrants to Seller as follows:

    10.1. Buyer represents that the information it submits to the MLCC for the transfer of the License will be accurate and complete and that its source of funds to purchase said License is with verifiable U.S. funds. Neither Buyer nor any of the shareholders of Buyer have been convicted of any felonies; have policing powers or have an interest, directly or indirectly, in a wholesale license. Buyer acknowledges that this Agreement is not contingent on Buyer obtaining any financing.

    10.2. Buyer represents Buyer has the power, lawful right, and authority to enter into this Agreement and to perform its obligations. This Agreement is the valid and binding agreement of Buyer, enforceable in accordance with its terms.

    10.3. Buyer represents Buyer's purchase of the License will not constitute or result in a breach of default under any existing oral or written agreement or constitute or result in a violation of any order, decree or injunction under which the Buyer is bound.

    10.4. Buyer warrants that there is no litigation pending or threatened against the Buyer, the outcome of which would have material adverse effect on the Buyer's ability to perform its obligations hereunder or the ability of Buyer to obtain MLCC approval for the transfer of the License.

    10.5. This Agreement has been properly authorized by all necessary corporate actions of Buyer and, upon due execution and delivery, will constitute a valid and binding agreement of Buyer.

11. **Renewal of License and Fees.** Seller has paid all License renewal fees for the current licensing year. Buyer agrees to pay all License renewal fees for the upcoming licensing year. Buyer further agrees to pay all transfer fees to the MLCC for the transfer of the License. In the event that either Seller or Buyer advances any renewal fees, such party shall receive a credit at the time of Closing equal to the amount of such payment. If Buyer is approved for a Conditional License, then Buyer agrees to pay the

entire renewal fee for the upcoming licensing year. No escrow fee due as a result of this transaction shall be payable by Seller. Buyer shall bear all escrow fees in connection with this Agreement. Seller and Buyer shall be responsible for paying their own professional fees.

12. **Broker**. The parties acknowledge and agree that Broker's Network USA, Inc. has been retained by Buyer as **Buyer's Broker** and any fee due as a result of this sale shall be paid exclusively by Buyer pursuant to a separate fee agreement between Buyer and its broker. Seller's broker is Licensing Solutions ("Seller's Broker"). At Closing, a commission fee of ten percent (10%) of the Purchase Price shall be paid to Seller's Broker by Seller from Seller's proceeds only upon a successful Closing of the transaction contemplated by this Agreement, which Escrow Agent is hereby authorized to pay from the proceeds at Closing. Each party (i) represents to the other that it has taken no action that would entitle any other third party or person to any claim a commission or other fee as a result of the Closing contemplated hereunder and (ii) shall defend, indemnify and hold harmless the other party from and against any and all claims for such commissions and fees made as a result of their actions. This provisions of this Section 12 shall survive Closing or termination of this Agreement.

13. Notices. Any notices, consent, or other communication under this Agreement shall be in writing and shall be considered given when (i) hand delivered (and receipt acknowledged), (ii) sent by email (with written confirmation of receipt), (iii) delivered or mailed by certified or registered mail, postage prepaid and return receipt requested, or (iv) delivered by a reputable overnight delivery service for next business day delivery to the parties, in any case to the appropriate email addresses or addresses indicated below or at such other address as a party may specify by written notice to the other pursuant hereto. Any communication when sent by e-mail must promptly be followed by a copy delivered by one (1) of the other approved methods of delivery set forth above for the delivery by e-mail to be effective unless otherwise waived by e-mail reply from the recipient to the sender of such communication. Attorneys may provide notices and other communications on behalf of their clients.

**TO SELLER:**
Ruby Tuesday, Inc.
Attn: Debbie Windham, Director of Real Estate
333 East Broadway Ave.
Maryville, TN 37804
Phone: 407-241-3418
Email: dwindham@rubytuesday.com

**TO BUYER:**
SBG Investments, LLC
Attn: Peter Abbo, Esquire
28545 Orchard Lake Road, Suite B
Farmington Hills, MI 48334-2996
Phone: 248-489-1880
Email: peterabboattorney@gmail.com

**TO SELLER'S BROKER:**
Licensing Solutions, Inc.
Attn: Mary Anne Ferrell
118 W. McKey St.
Ocoee, FL 34761
Phone: 407-476-0525
maryanne@liquorlicensepros.com

TO ESCROW AGENT:
Peter Abbo, Esquire
28545 Orchard Lake Road, Suite B
Farmington Hills, MI 48334-2996
Phone: 248-489-1880
Email: peterabboattorney@gmail.com

14. **Indemnification**. Seller agrees to indemnify, defend and hold harmless Buyer from and against any and all liabilities which may arise after the date of Closing from Seller's use of the License prior to the date of transfer of the License, out of any misrepresentation of Seller herein, or from any breach of any of Seller's obligations hereunder. Buyer agrees to indemnify, defend and hold harmless Seller from and against any liabilities which may arise after the date of Closing from Buyer's use of the License after the date of transfer of the License, out of any misrepresentation of Buyer herein, or from a breach of any of Buyer's obligations hereunder. The obligations in this Agreement to indemnify, defend and/or hold harmless either party hereunder shall survive the Closing for a period equal to one day after the statute of limitations for any claims that may be brought against Seller or Buyer, as applicable, has expired

15. **Successors and Assigns**. This Agreement shall extend to and be binding upon the respective heirs, executors, administrators, successors and assigns of each of the parties hereto.

16. **Survival**. The covenants, representations and warranties of all parties to this Agreement shall be effective as of the Effective Date and shall survive Closing for six (6) months.

17. **Governing Law**. This Agreement shall be governed in all respects by the laws of the State of Michigan.

18. **Time**. Time is of the essence of this Agreement.

19. **Amendments**. This is the entire Agreement between the parties to this Agreement. Any amendment or modification of this Agreement shall be in writing and signed by both Seller and Buyer.

20. **Assignment**. Buyer may not assign this Agreement without the prior written consent of Seller, which consent shall not be unreasonably withheld. Buyer shall remain liable for the performance of any assignee of its rights hereunder.

21. **Counterparts Signatures**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. For purposes of this Agreement, an electronic signature shall be deemed the same as an original. Moreover, delivery of said counterparts of this Agreement may be effectuated electronically for the purposes of this Agreement.

22. **Tax Clearance**. Prior to closing, Seller shall provide to the Buyer tax clearance certificates issued by Michigan Department of Treasury and the Michigan Unemployment Insurance Agency

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties have entered into this Agreement for Sale of Liquor License as of the Effective Date.

SELLER:
RT Michigan Franchise, LLC

By: _____
Aziz Hashim
President/VP/Secretary

BUYER:
SBG Investments, LLC

By: _____
Name: SOKOL NDREJAJ
Its: Sole Member

## ACKNOWLEDGEMENT OF ESCROW

Peter Abbo, Esquire, the Escrow Agent named, does hereby consent to act as Escrow Agent under the terms of this Agreement, and does hereby acknowledge receipt of the sum of Five Thousand and No/100 Dollars ($5,000.00) from Buyer, and agrees to hold same in escrow as provided in this Agreement and to deliver same to the persons entitled thereto upon the performance or nonperformance of the terms and conditions of this Agreement.

_____
Peter Abbo, Esquire
Title: Attorney

PA\Docs\LicPurAgr\RT7087Clarkston



### FIRST AMENDMENT TO AGREEMENT FOR SALE OF LIQUOR LICENSE

#### Clarkston, MI – RT #7087

**THIS FIRST AMENDMENT TO AGREEMENT FOR SALE OF LIQUOR LICENSE** (this "**First Amendment**") is made and entered into as of the _3rd_ day of _December_, 2020 (the "**Effective Date**") by and between **RT MICHIGAN FRANCHISE, LLC** a Delaware limited liability company ("**Seller**") and **SBG INVESTMENTS, LLC**, a Michigan limited liability company ("**Buyer**"). Each of the foregoing parties are referred to herein sometimes as a "**Party**" or the "**Parties**".

#### RECITALS

**WHEREAS**, Seller and Buyer entered into that certain Agreement for Sale of Liquor License with an Effective Date of September 23, 2020 (the "**Agreement**");

**WHEREAS**, Seller has filed a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware under Case No. 20-12456 (JTD) (the "**Case**").

**WHEREAS**, the Parties are desirous of amending the Agreement upon such terms as more specifically provided herein; and

**WHEREAS**, any capitalized term not otherwise defined herein shall have the meaning ascribed to it under the Agreement.

**NOW THEREFORE**, for and in consideration of the premises hereof, the sums of money to be paid hereunder, the mutual covenants herein contained and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby covenant, stipulate and agree as follows:

1. **Recitals**. The foregoing recitals are true and correct and are incorporated herein by this reference.

2. **MLCC Approval**. Section 4 is amended by adding the following after the last sentence thereof:

    "For purposes of this Agreement, if Seller requests and receives a Conditional License from the MLCC, then receipt of the Conditional License shall be considered MLCC liquor license transfer approval."

3. **Closing**. The first sentence of Section 5 is deleted in its entirety and replaced with the following in lieu thereof:

    "Provided this Agreement is not terminated as herein provided, Closing shall take place on the later of (i) the earlier of five (5) days after (a) Buyer receives written approval written approval from the MLCC for the transfer of the License to Buyer as provided herein and (b) Buyer receives written approval written approval from the MLCC for the Conditional License: (ii) Buyer receives written approval from the City of Madison Heights for the transfer of the License to Buyer and (iii) as soon as practicable after (a) the expiration of

the Objection Period (as defined herein) expires without any objections filed or (b) all filed objections have been withdrawn or resolved and Seller has received Lender Approval (as defined herein) (the "**Closing**"); provided, however, in no event shall Closing occur later than February 19, 2021. Notwithstanding anything contained herein to the contrary, provided Seller is using good faith efforts to resolve any objections filed during the Objection Period, Seller may, upon written notice provided to Buyer no later than three (3) business days prior to the Closing, elect to extend the Closing to resolve all such objections filed during the Objection Period, in which event Closing shall occur as soon as practicable after (a) the expiration of the Objection Period expires without any objections filed or (b) all filed objections have been withdrawn or resolved. Notwithstanding anything contained herein to the contrary, Seller's failure to obtain Lender's Approval, the expiration of the Objection Period without objection and/or Seller's failure to resolve all objections filed during the Objection Period shall not be a Seller's default hereunder or a breach of this Agreement but shall entitle Buyer to a return of the Deposit and the parties shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement."

4. **Representations and Warranties.**  Section 9 is hereby deleted in its entirety and replaced with the following in lieu thereof:

"**9.  Representations and Warranties of Seller**.  To the best of Seller's knowledge and belief, Seller represents and warrants to Buyer as follows:

**9.1.**  Seller is the owner of the License with full right to sell or dispose of the same as Seller may choose (subject to applicable legal requirements, any requirements or restrictions of the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy or approval of Seller's lender ) and at Closing, there shall be no outstanding violations, taxes, liens, encumbrances, pledges or claims of any nature whatsoever against the License.

**9.2.**  The License has been renewed by the MLCC with an expiration date of April 30, 2021.

**9.3.**  This Agreement has been duly and validly authorized by any and all necessary corporate action of Seller and upon due execution and delivery, will constitute a valid and binding agreement of Seller (subject to Bankruptcy Court Approval, any requirements or restrictions of the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy and Lender Approval)."

5. **Broker.**  The third sentence of Section 12 is deleted in its entirety and replaced with the following in lieu thereof:

"Subject to Bankruptcy Court Approval and any requirements imposed by the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy, at Closing, a commission fee of ten percent (10%) of the Purchase Price shall

be paid to Seller's Broker by Seller from Seller's proceeds only upon a successful Closing of the transaction contemplated by this Agreement, which Escrow Agent is hereby authorized to pay from the proceeds at Closing."

6. **Survival.** Section 16 is hereby deleted in its entirety and replaced with the following in lieu thereof:

"16. **Survival.** The covenants, representations and warranties of Buyer shall be effective as of the Effective Date and shall survive Closing for six (6) months. Notwithstanding anything contained herein to the contrary, the representations and warranties of Seller contained in this Agreement shall be effective as of the Effective Date but shall not survive Closing."

7. **Governing Law.** Section 17 is hereby deleted in its entirety and replaced with the following in lieu thereof:

"17. **Governing Law.** THE PARTIES AGREE THAT THE BANKRUPTCY COURT PRESIDING OVER THE COURT CASE REFERENCED HEREIN SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; AND/OR (ii) THE LICENSE, AND THE PARTIES EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION."

8. **Seller's Conditions of Sale.** A new Section 23 is hereby added to the Agreement as follows:

"23. **Seller's Conditions of Sale**. Notwithstanding anything contained in this Agreement, this Agreement is also conditioned upon the occurrence of the following events:

a. Seller shall have filed a notice of this Agreement in the Bankruptcy Court in accordance with the Process Order (as defined herein) and either (i) no objections to this Agreement shall have been filed in the Case during the ten (10) calendar day period immediately following the filing of such notice (the "**Objection Period**") as evidenced by a copy of the docket in the Case, or (ii) any objections filed within the Objection Period shall have been resolved and withdrawn (the "**Bankruptcy Court Approval**").

b. Seller shall have received Lender Approval."

9. **Seller's Approvals.** A new Section 24 is hereby added to the Agreement as follows:

"24. <u>Seller's Approvals:</u>

a. Seller has filed a voluntary case (the "**Case**") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") under Case No. 20-12456(JTD). The Bankruptcy Court has approved Seller's motion seeking approval of the procedure applicable to Seller's disposition of assets in individual transactions and has entered an order establishing such process and manner of dispositions (the "**Process Order**"). Within twenty (20) days after the Effective Date of the First Amendment to Agreement for Sale of Liquor License, Seller shall file a notice of this Agreement in the Bankruptcy Court in accordance with the Process Order.

b. In addition to the Bankruptcy Court Approval, Buyer acknowledges that Seller must obtain approval from its lender for the transaction contemplated herein (the "**Lender Approval**"). Promptly following receipt of Lender Approval, Seller shall provide Buyer notice thereof. If Seller fails to deliver such notice within fourteen (14) days after the execution of the First Amendment to Agreement for Sale of Liquor License by the parties, either party shall have the right to terminate this Agreement by delivering written notice thereof to the other. In the event of such termination, Escrow Agent shall disburse the Deposit to Buyer in accordance with the provisions herein and the parties shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement."

10. <u>Ratification/Signatures</u>. Except as modified by this First Amendment, the terms of the Agreement are ratified and confirmed. This First Amendment may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. Delivery of said counterparts of this First Amendment may be effectuated electronically for the purposes of this First Amendment. This First Amendment shall be binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected in this First Amendment as the signatories. Signatures transmitted electronically or by PDF shall be deemed to be original signatures.

11. <u>Successors and Assigns</u>. This First Amendment shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

12. <u>Conflicts.</u> In the event that any provision of this First Amendment conflicts with a provision of the Agreement, such provision of this First Amendment shall govern and control for all purposes and in all respects.

13. <u>Entire Agreement.</u> This First Amendment contains the entire agreement between the parties pertaining to the subject matter hereof and fully supersedes all prior written and oral agreements and understandings between the parties pertaining to such subject matter and may not be amended except in writing, signed by both Seller and Buyer.

[REMAINDER OF PAGE LEFT BLANK; SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties have entered into this Agreement for Sale of Liquor License as of the Effective Date.

| | |
|---|---|
| **SELLER:**<br>RT Michigan Franchise, LLC<br><br>By: _____<br>Name: Aziz Hashim<br>Title: President/VP/Secretary | **BUYER:**<br>SBG Investments, LLC<br><br>By: _____<br>Name: Sokol Ndrejaj<br>Its: Sole Member |