## Exhibit A

**Sale Agreement**

## AGREEMENT FOR SALE OF LIQUOR LICENSE

**THIS AGREEMENT FOR SALE OF LIQUOR LICENSE** (this "**Agreement**") made this 25th day of June, 2020 (the "**Effective Date**"), between Ruby Tuesday, Inc., a Georgia Corporation, of 333 East Broadway Avenue, Maryville, Tennessee 37804, hereinafter referred to as "**SELLER**", and RT East, LLC, a Pennsylvania limited liability company, of 1155 Benner Pike, State College, Pennsylvania _____, hereinafter referred to as "**BUYER**". Each of the foregoing entities may hereinafter be referred to together as the "party" or "parties."

### THE BACKGROUND OF THIS AGREEMENT IS AS FOLLOWS:

Seller was previously engaged in the conduct of a bar and restaurant business at 1940 East Third Street, Williamsport, Pennsylvania, said business being known as Ruby Tuesday, Williamsport PA. Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, Seller's interest in Pennsylvania Liquor Control Board (the "**PLCB**") Liquor License No. R 20123 (LID # 50541) utilized at Ruby Tuesday, Williamsport, PA (the "**License**"). The real estate and equipment comprising the bar and restaurant business are being sold in that certain separate, related Agreement of Purchase and Sale between Ruby Tuesday, Inc., as Seller and FAMVEST III, LLC, as Buyer, effectively dated June 16, 2020, hereinafter referred to as the "**Related Transaction**".

**NOW, THEREFORE,** intending to be legally bound and to so bind their respective heirs, personal representatives and assigns, the parties hereto agree as follows:

### I.  ASSET TO BE SOLD

Subject to the terms of this Agreement, Buyer agrees to purchase and acquire from Seller and Seller agrees to sell, transfer and assign to Buyer, the License for use at the premises located at 1940 East Third Street, Williamsport, PA 17701.

This is an asset purchase with Buyer assuming no Seller liabilities, known or unknown.

### II. PURCHASE PRICE & FINANCING TERMS

The Purchase Price for the transfer of the License shall be ONE HUNDRED SEVENTY-FIVE THOUSAND DOLLARS ($175,000.00) (the "**Purchase Price**"). Simultaneous with the execution of this Agreement, Buyer shall deposit with Mathers Law Firm, PC, 416 Pine Street, Williamsport, PA 17701 ("**Escrow Agent**") SEVENTEEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($17,500.00) by wire transfer of immediately available funds (the "**Deposit**"). The Deposit shall be credited against the Purchase Price at Closing unless returned to Buyer or paid to Seller in accordance with the terms hereof. The balance of the Purchase price, as adjusted by any prorations and credits shall be deposited with Escrow Agent on or before the Closing and shall be secured by a Promissory Note in the form attached as **Exhibit A** hereto (the "**Note**") and paid to Seller at Closing in immediately available funds by wire transmittal.

## III. CLOSING

Provided this Agreement is not terminated as herein provided, the closing and settlement of this transaction shall be held within seven (7) days after Buyer receives written approval from the PLCB for the transfer of the License to Buyer as hereinafter set forth (the "**Closing**") provided, however, in no event shall Closing occur in excess of one hundred twenty (120) days from the Effective Date of this Agreement, unless Buyer has timely elected to extend the Approval Deadline (as defined herein and as set forth below) in which event Closing shall occur no later than on the Extended Approval Deadline (as defined herein and as set forth below).Closing shall be held by escrow deliveries to the Escrow Agent or at such other place and date as the parties hereto shall mutually agree. All applicable transfer, sales, use, filing and other taxes shall be paid by Buyer.

## IV. CONDITIONS PRECEDENT TO CLOSING

Buyer's obligation to close hereunder shall be conditioned upon Buyer being approved by the PLCB as the transferee of Seller's License. Within ten (10) business days after the Effective Date of this Agreement, Buyer shall prepare and submit the forms, applications and information necessary to achieve such transfer, the costs and fees for which shall be the responsibility of Buyer, and both parties hereto

shall fully cooperate with the licensing authorities in order to expedite approval of the transfer. In the event approval of such transfer has not been approved by the PLCB within one hundred twenty (120) days from the Effective Date of this Agreement (the "**Approval Deadline**") despite Buyer's diligent efforts to obtain the same, Buyer may, by delivery of a written extension notice to Seller three (3) business days prior to the Approval Deadline, elect to extend the Approval Deadline one (1) time for up to thirty (30) days for no fee (the "**Extended Approval Deadline**"). In the event approval of such transfer has not been approved by the PLCB by the Approval Deadline or the Extended Approval Deadline, if applicable, this Agreement may be terminated by either party by giving ten (10) days written notice of such party's desire to terminate to the other party, after which time  Escrow Agent shall disburse the Deposit to Buyer, return the Note to Buyer and shall submit the letters of withdrawal to the PLCB attached hereto as **Exhibit B** unless in the interim the application for transfer has been approved and the parties shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement. Buyer shall not be deemed to be in default of this Agreement so long as Buyer is diligently pursuing PLCB liquor license transfer approval. Notwithstanding the foregoing, Buyer may not terminate this Agreement as aforesaid in the event Buyer fails to diligently pursue the application with the PLCB.

## V.  REPRESENTATIONS AND WARRANTIES BY SELLER

Seller represents and warrants to the extent of its best knowledge, information and belief, as follows:

A. Seller has good and marketable title to the License to be transferred hereunder and, at Closing, there shall be no outstanding violations, taxes, liens, encumbrances, pledges or claims of any nature whatsoever against the License.

B.  Seller shall exercise its best efforts to assist Buyer in obtaining approval for the transfer of the License; however, Seller shall not be required to incur any expenses or assume any liability in connection with the transfer.

C.  Seller has the right and authority to execute this Agreement without consent of and joinder of any other party (excepting only approval of the contemplated transfer by the PLCB).

D.  Seller warrants that there is no alcoholic beverage inventory being sold as part of this sale transaction.

## VI. BUYER REPRESENTATIONS AND WARRANTIES

A.  Buyer represents and warrants that Buyer shall exercise Buyer's best efforts to obtain approval of the transfer from the PLCB.

B.  Buyer represents and warrants that Buyer currently has all funds necessary to pay the Purchase Price and Buyer's closing costs necessary to purchase the License, subject to the terms of this Agreement.

## VII. SURVIVAL OF REPRESENTATIONS

The representations and warranties contained in and made pursuant to this Agreement shall survive the execution and delivery of this Agreement for six (6) months.

## VIII. POSSESSION

Possession and all rights and license entitlements as to the License being sold hereunder shall be transferred to Buyer at the time of Closing.

## IX. RELATED TRANSACTION

A.  In the event the Related Transaction does not close prior to the Closing of this Agreement, then Buyer may elect to terminate this Agreement by providing written notice to Seller on or before three (3) days prior to the Closing, in which case the Deposit shall be refunded to Buyer in accordance with the provisions herein, Escrow agent shall return the Note to Buyer, Escrow Agent shall submit to the PLCB the letters of withdrawal and Seller and Buyer shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement. Failure to timely notify Seller of its election to terminate this Agreement shall be deemed Buyer's election to continue to Closing without any reduction in the Purchase Price and/or other consideration from Seller. Notwithstanding anything

4

contained herein to the contrary, if at the time of the Closing of this Agreement the Related Transaction has not closed but the Scheduled Closing Date under the Related Transaction Agreement of Purchase and Sale has not yet occurred then Buyer may not elect to terminate this Agreement under the provisions of this Section IX.

B.  In the event the Related Transaction does not close due to the default of Ruby Tuesday, Inc. beyond any applicable cure period as set forth in the Related Transaction Agreement of Purchase and Sale, Buyer may elect to terminate this Agreement by providing written notice to Seller five (5) days after the uncured default of Ruby Tuesday, Inc. in which case the Deposit shall be refunded to Buyer in accordance with the provisions herein, Escrow Agent shall return the Note to Buyer, Escrow Agent shall submit to the PLCB the letters of withdrawal and Seller shall promptly reimburse Buyer up to Two Thousand Five Hundred and NO/100 Dollars ($2,500.00) for all reasonable attorney's fees and costs actually incurred under this Agreement in pursuing the subject License .

## X.  BROKERS

Buyer and Seller acknowledge and agree that no agent or broker is involved in this transaction other than Licensing Solutions, Inc ("**Seller's Broker**").  At Closing, a commission fee of Five Thousand and No/100 Dollars ($5,000.00) shall be paid to Seller's Broker by Seller from Seller's proceeds only upon a successful Closing of the transaction contemplated by this Agreement.  Each party (i) represents to the other that it has taken no action that would entitle any other third party or person to any claim to a commission or other fee as a result of the Closing contemplated hereunder and, (ii) shall defend, indemnify and hold harmless the other party from and against any and all claims for such commissions and fees made as a result of their actions.  This provisions of this Section X shall survive Closing or termination of this Agreement.

## XI.  DEFAULT

In the event Buyer shall default under this Agreement, Buyer and Seller agree that the Deposit shall be paid over to Seller as liquidated damages and Seller agrees to accept said sum in full satisfaction

and discharge of any and all claims that Seller has or may have against Buyer. Upon delivery of the Deposit to Seller, Escrow Agent shall return the Note to Buyer, Escrow Agent shall submit to the PLCB the letters of withdrawal and the parties shall have no further duty, obligation or liability under this Agreement. In the event Seller shall default under this Agreement, Buyer may elect, at Buyer's discretion: (a) declare Seller in default under this Agreement and terminate this Agreement by written notice to Seller in which event, the Deposit shall be promptly refunded to Buyer, Escrow Agent shall return the Note to Buyer, Escrow Agent shall submit to the PLCB the letters of withdrawal and Seller and Buyer shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement or (b) pursue specific performance of this Agreement provided Buyer institutes an action for specific performance within thirty (30) days following the default by Seller and the expiration of any cure period. Prior to declaring a default and exercising the remedies described herein, the non-defaulting party shall issue written notice of default to the defaulting party pursuant to Section XII herein describing the event or condition of default in sufficient detail to enable a reasonable person to determine the action necessary to cure the default. The defaulting party shall have five (5) business days from receipt of the notice in which to cure the default. If the default has not been cured within the foregoing five (5) business day period, the non-defaulting party may exercise the remedies described above. Notwithstanding anything contained herein to the contrary, the notice required and period to cure under this Section XI for any failure of Buyer or Seller (as applicable) to deliver the Deposit or to complete the Closing on the contemplated timeframe herein shall be two (2) business days.  The provisions of this <u>Section XI</u> shall survive the Closing or termination of this Agreement.

## XII.  MISCELLANEOUS

 A.  This Agreement shall not be assignable by Seller or Buyer without the express written consent of the other, which consent shall be in the sole discretion of the consenting party.

 B.  Buyer shall pay Buyer's customary attorney's fees and costs in connection with this

Agreement, in the transfer of the License contemplated hereby, and in preparation of all documents necessary therefor to include the transfer of said License.

C.  The parties agree to execute such further documents as may be reasonably necessary to effectuate the purpose of this Agreement.

D. This Agreement may be amended or modified only by an instrument, in writing, signed by the parties.

E.  Any notice provided for herein shall be given by hand delivery, commercial courier or by registered or certified United States mail (postage prepaid) or transmitted by e-mail to the respective addresses written below or at such other address as the parties have theretofore specified by written notice delivered in accordance herewith. Notice is considered given and received: (i) on the date of hand or courier delivery or refusal of acceptance; (ii) the next business day after deposit with overnight courier for next business day delivery; (iii) two (2) business days after deposit in the United States mail; or (iv) the same day (or next-following business day if sent after 5:00 P.M. on a business day or at any time on a day that is not a business day) when sent by confirmed e-mail. Any communication when sent by confirmed e-mail must promptly be followed by a copy delivered by one (1) of the other approved methods of delivery set forth above for the delivery by e-mail to be effective unless otherwise waived by e-mail reply from the recipient to the sender of such communication. Attorneys may provide notices and other communications on behalf of their clients.

TO BUYER:

RT East, LLC, a Pennsylvania limited liability company
Attn:  Jon M. Jahanshahi
1155 Benner Pike
State College, PA
Phone:  570-279-0111
Email: mehrdad22@aol.com

WITH A COPY TO:

Dan Mathers
Mathers Law Firm, PC
416 Pine Street
Williamsport, PA 17701
Phone:  570-326-5171
Email: dmathers@mathersfirm.com

TO SELLER:

Ruby Tuesday, Inc.

WITH A COPY TO:

Stuart Kramer

Attn:  Debra K. Windham                               Milgrim Law Group
333 East Broadway Avenue                              3216 Corrine Drive
Maryville, TN 37804                                   Orlando, FL 32803
Phone: 407-241-3418                                   Phone: 407-790-4966
Email:  dwindham@rubytuesday.com                      Email:  stuartkramer@milgrimlaw.com

TO SELLER'S BROKER:

Licensing Solutions
Attn:  Mary Anne Ferrell
118 West McKey Street
Ocoee, FL 34761
Phone:  407-476-0525
Email:  maryanne@liquorlicensepros.com

  F. Seller agrees to indemnify, defend and hold harmless Buyer from and against any and all liabilities which may arise after the date of Closing from Seller's use of the License prior to the date of transfer of the License, out of any misrepresentation of Seller herein, or from any breach of any of Seller's obligations hereunder. Buyer agrees to indemnify, defend and hold harmless Seller from and against any liabilities which may arise after the date of Closing from Buyer's use of the License after the date of transfer of the License, out of any misrepresentation of Buyer herein, or from a breach of any of Buyer's obligations hereunder. The obligations in this Agreement to indemnify, defend and/or hold harmless either party hereunder shall survive the Closing for a period equal to one day after the statute of limitations for any claims that may be brought against Seller or Buyer, as applicable, has expired..

  G. This Agreement is executed, delivered and intended to be performed in the Commonwealth of Pennsylvania and shall be construed and enforced in accordance with and shall be governed by the laws of such Commonwealth.

  H. Time is of the essence of this Agreement.

  I. Articles, paragraphs and other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

  J. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument. This Agreement

may be executed by digital signatures or by digital transmission of signed signature pages which shall be binding as originals.

K.  This Agreement constitutes the entire Agreement of the contemplated License transfer between the parties hereto and there are no agreements, understandings, restrictions, warranties or representations between the parties other than those set forth herein.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF,** and intending to be legally bound, the parties hereto have set their hands and seals the day and year first above written.

WITNESS:

SELLER:

Ruby Tuesday, Inc., a Georgia corporation

By: _____

Name: __Aziz A. Hashim__

Title: ____President and Secretary____

WITNESS:

BUYER:

RT East, LLC, a Pennsylvania limited liability company

By: _____

Name: __Mehrdad Jon Jahanshahi__

Title: __Member__

## ACKNOWLEDGEMENT OF ESCROW AGENT

The undersigned hereby acknowledges receipt of the sum of Seventeen Thousand Five Hundred and No/100 Dollars ($17,500.00) to which reference is made in Section II of the foregoing Agreement and agrees to hold and disburse same in accordance with the provisions of this Agreement.

ESCROW AGENT:

_____

Daniel K. Mathers

Date: __7/6/2020__

10

## EXHIBIT A
## PROMISSORY NOTE

## <u>EXHIBIT B</u>
## LETTERS OF WITHDRAWAL

[TO BE INSERTED]

## FIRST AMENDMENT TO AGREEMENT FOR SALE OF LIQUOR LICENSE

**THIS FIRST AMENDMENT TO AGREEMENT FOR SALE OF LIQUOR LICENSE** (this "**Amendment**") is made this _28_ day of December 2020 (the "**Effective Date**"), by and between RT East, LLC, a Pennsylvania limited liability company ("**Buyer**"), and Ruby Tuesday, Inc., a Georgia corporation ("**Seller**").

### RECITALS

**WHEREAS**, Buyer and Seller are parties to that certain Agreement For Sale of Liquor License dated June 25, 2020 (the "**Agreement**");

**WHEREAS**, Buyer has received written approval from the Pennsylvania Liquor Control Board (the "**PLCB**") for the transfer of the License to Buyer;

**WHEREAS**, Seller has filed a voluntary case under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware under Case No. 20-12456 (JTD) (the "**Case**");

**WHEREAS**, Buyer and Seller desire to amend the Agreement upon the terms and conditions set forth herein;

**WHEREAS**, any capitalized term not otherwise defined herein shall have the meaning ascribed to it under the Agreement.

**NOW THEREFORE**, for and in consideration of the foregoing and the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Recitals.** The foregoing recitals are true and correct and are incorporated herein by this reference.

2. **Purchase Price.** The first sentence of Section II of the Agreement is hereby deleted in its entirety and replaced with the following in lieu thereof:

> "The Purchase Price for the transfer of the License shall be ONE HUNDRED THIRTY THOUSAND NO/100 DOLLARS ($130,000.00) (the "**Purchase Price**")."

3. **Closing.** Section III of the Agreement is deleted in its entirety and replaced with the following in lieu thereof:

> "Provided this Agreement is not terminated as herein provided, Closing shall take place five (5) days after the expiration of the Objection Period (as defined herein) without any objections filed or (b) all filed objections have been withdrawn or resolved or overruled by the Bankruptcy Court (as defined herein) and Seller has received Lenders' Approval (as defined

herein) (the "**Closing**"); provided, however, in no event shall Closing occur later than January 25, 2021 (the "**Approval Deadline**"), unless Buyer has timely elected to extend the Approval Deadline or Seller has timely elected to extend the Closing (as set forth below). If Seller has timely elected to extend the Closing (as set forth below) then Closing shall occur no later than five (5) days after all filed objections have been withdrawn or resolved or overruled by the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, Closing shall be held by escrow deliveries to the Escrow Agent or at such other place and date as the parties hereto shall mutually agree. All applicable transfer, sales, use, filing and other taxes shall be paid by Buyer.

4.  **Conditions Precedent to Closing**. Section IV of the Agreement is amended by adding the following at the end thereof:

"In addition to Buyer's obligation to close, Seller's obligation to close hereunder is conditioned upon Seller having filed a notice of this Agreement in the Bankruptcy Court in accordance with the Process Order (as defined herein) and either (i) no objections to this Agreement shall have been filed in the Case during the ten (10) calendar day period immediately following the filing of such notice (the "**Objection Period**") as evidenced by a copy of the docket in the Case, or (ii) any objections filed within the Objection Period shall have been resolved and withdrawn or overruled by the Bankruptcy Court (the "**Bankruptcy Court Approval**"). Moreover, Seller's obligations to consummate the transaction contemplated herein shall also be conditioned upon Seller obtaining the Lenders' Approval.

Notwithstanding anything contained herein to the contrary, provided Seller is using good faith efforts to resolve any objections filed during the Objection Period, Seller may, upon written notice provided to Buyer no later than three (3) business days prior to the Closing, elect to extend the Closing to resolve all such objections filed during the Objection Period, in which event Closing shall occur as soon as practicable after all filed objections have been withdrawn or resolved or overruled by the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, Seller's failure to obtain Lenders' Approval, the expiration of the Objection Period without objection, Seller's failure to resolve all objections filed during the Objection Period and/or the objections not having been withdrawn or overruled by the Bankruptcy Court shall not be a Seller's default hereunder or a breach of this Agreement but shall entitle Buyer to a return of the Deposit and upon delivery of the Deposit to Buyer, Escrow Agent shall return the Note to Buyer and shall submit to the letters of withdrawal to the PLCB and the parties shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement."

5. **Representations and Warranties by Seller.** Sections V.A. and C. of the Agreement are deleted in their entirety and the following are inserted in lieu thereof:

"A. Subject to any requirements or restrictions of the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy, Seller has good and marketable title to the License to be transferred hereunder and, subject to any requirements or restrictions of the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy, at Closing there shall be no outstanding violations, taxes, liens, encumbrances, pledges or claims of any nature whatsoever against the License.

C. Seller has the right and authority to execute this Agreement without consent of and joinder of any other party (excepting approval of the contemplated transfer by the PLCB, Bankruptcy Court Approval and Lenders' Approval)."

6. **Buyer Representations and Warranties.** The following paragraphs are added as new subsections C. and D. to Section VI:

"C. Neither Buyer nor its respective affiliates, present or contemplated members officers, directors, partners, shareholders or any of their respective heirs, successors and assigns is an "insider" of the Seller or of any of its affiliates.

D. The Purchase Agreement was negotiated in good faith, and entered into by the Buyer without collusion or fraud of any kind, in good faith and at arm's length. Buyer has not acted in a collusive manner with any person or entity and the Purchase Price was not controlled by any agreement among any bidders."

7. **Survival of Representations.** Section VII of the Agreement is deleted in its entirety and the following is inserted in lieu thereof:

"The representations and warranties of Buyer shall be effective as of the Effective Date and shall survive Closing for six (6) months. Notwithstanding anything contained herein to the contrary, the representations and warranties of Seller contained in this Agreement shall be effective as of the Effective Date but shall not survive Closing."

8. **Possession.** Section VIII of the Agreement is deleted in its entirety and the following is inserted in lieu thereof:

"Subject to any requirements or restrictions of the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy, possession and all rights and license entitlements as to the License being sold hereunder shall be transferred to Buyer at the time of Closing."

9. **Brokers.** Section X of the Agreement is amended by deleting the second sentence and inserting the following in lieu thereof:

"Subject to Bankruptcy Court Approval and any requirements imposed by

the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy, at Closing, a commission fee of Five Thousand and no/100 Dollars ($5,000.00) shall be paid to Seller's Broker by Seller from Seller's proceeds only upon a successful Closing of the transaction contemplated by this Agreement."

10.  **Miscellaneous.** Section XII. of the Agreement is amended as follows:

a. Section XII.G. is deleted in its entirety and the following is inserted in lieu thereof:

"G. THE PARTIES AGREE THAT THE BANKRUPTCY COURT PRESIDING OVER THE COURT CASE REFERENCED HEREIN SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; AND/OR (ii) THE LICENSE, AND THE PARTIES EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION."

b. The following paragraphs are added as new subsections L. and M. to Section XII:

"L. Seller has filed a voluntary case (the "**Case**") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") under Case No. 20-12456(JTD). The Bankruptcy Court has approved Seller's motion seeking approval of the procedure applicable to Seller's disposition of assets in individual transactions and has entered an order establishing such process and manner of dispositions (the "**Process Order**"). Within twenty (20) days after the Effective Date of the First Amendment to Agreement for Sale of Liquor License, Seller shall file a notice of this Agreement in the Bankruptcy Court in accordance with the Process Order.

M.  In addition to the Bankruptcy Court Approval, Buyer acknowledges that Seller must obtain approval from its lenders for the transaction contemplated herein (the "**Lenders' Approval**"). Promptly following receipt of Lenders' Approval, Seller shall provide Buyer notice thereof. If Seller fails to deliver such notice within fourteen (14) days after the execution of the First Amendment to Agreement for Sale of Liquor License by the parties, either party shall have the right to terminate this Agreement by delivering written notice thereof to the other. In the event of such termination, Escrow Agent shall disburse the Deposit to Buyer in accordance with the provisions herein and upon delivery of the Deposit to Buyer, Escrow Agent shall return the Note to Buyer and shall submit to the letters of withdrawal to the PLCB and the parties shall have no further rights and obligations hereunder except those which expressly survive

4

termination of this Agreement."

11.    **Ratification/Signatures.** Except as modified by this Amendment, the terms of the Agreement are ratified and confirmed. This Amendment may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. Delivery of said counterparts of this Amendment may be effectuated electronically for the purposes of this Amendment. This Amendment shall be binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected in this Amendment as the signatories. Signatures transmitted electronically or by PDF shall be deemed to be original signatures.

12.    **Successors and Assigns.** This Amendment shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

13.    **Conflicts.** In the event that any provision of this Amendment conflicts with a provision of the Agreement, such provision of this Amendment shall govern and control for all purposes and in all respects.

14.    **Entire Agreement.** This Amendment contains the entire agreement between the parties pertaining to the subject matter hereof and fully supersedes all prior written and oral agreements and understandings between the parties pertaining to such subject matter and may not be amended except in writing, signed by both Seller and Buyer.

[BALANCE OF PAGE LEFT BLANK]

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties have caused this First Amendment to Agreement for Sale of Liquor License to be executed as of the Effective Date.

                                    **SELLER:**

                                    **RUBY TUESDAY, INC.,**
                                    a Georgia corporation

                                    By: _____
                                    Name: ___ALIE HASHIM_____
                                    Title: ___President/VP/Secretary___
                                    Date: ___12|30_____, 2020

                                    **BUYER:**

                                    **RT EAST, LLC**
                                    a Pennsylvania limited liability company

                                    By: _____
                                    Name: ___Mohamad Jon Jahanshahi___
                                    Title: ___member_____
                                    Date: ___12/28/_____, 2020

6