## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **RTI HOLDING COMPANY, LLC,** *et al.* | ) | **Case No. 20-12456 (JTD)** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | **Re: Docket Nos. 723 and 761** |
| | ) | **Hearing Date: February 4, 2021** |
| | ) | **Objection Deadline: January 29,** |
| | ) | **2021 at 5:00 pm** |

---

### OBJECTION OF MARYVILLE COLLEGE TO CONFIRMATION OF DEBTORS' AMENDED CHAPTER 11 PLAN, AND OBJECTION TO DEBTORS'[1] ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE REGARDING THE RT LODGE

---

Comes Maryville College, by and through counsel, and submits this *Objection to Confirmation of Debtors' Amended Chapter 11 Plan* (Docket No. 761), and *Objection to Debtors' Assumption and Assignment of Unexpired Lease* (Docket No. 723) Regarding the RT Lodge, and pursuant to 11 U.S.C. § 1128(b) objects to Debtors' Amended Chapter 11 Plan and shows as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holding, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings, II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283) RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290) RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

## I.        The Nature of the Claim and Interest of Maryville College.

1.        The objecting party is Maryville College.  Maryville College a nationally ranked liberal arts college situated near the Great Smoky Mountains National Park, which was founded in 1819, and is affiliated with the Presbyterian Church (USA).  The total enrollment of Maryville College in Fall 2020 was 1,072 students.  Maryville College is the owner of the real property and improvements known as the RT Lodge, and is a lessor to the Debtor, Ruby Tuesday, Inc. ("RTI") pursuant to a Lease between Maryville College and RTI dated September 11, 1997 (the "RT Lodge Lease").  A copy of the RT Lodge Lease is attached hereto as *Exhibit 1*.

## II.        Factual Background.

### A.        History of the RT Lodge.

2.        What is now known as the RT Lodge, and what is defined in Article I.C. Defined Terms, *paragraph 154* of the Amended Plan as "RT Lodge," began as a private home originally known as "Morningside," which was completed in 1932.  The home served several purposes through the years, including as a home for the President of Maryville College through 1997 when the RT Lodge Lease was executed between Maryville College and Debtor, RTI.  The RT Lodge is located on the campus of Maryville College and can only be accessed through and across Maryville College.  The relationship between Maryville College and Ruby Tuesday, Inc. is much more than a landlord/tenant or financial arrangement, and is more analogous to a partnership. Since the RT Lodge is located on the grounds of Maryville College, the identity of the operator of the Lodge and the manner in which the Lodge is operated, are critical to Maryville College. It is for that reason, the RT Lodge Lease (*Exhibit 1*) contains numerous provisions setting forth the unique relationship between Maryville College and the operator of the RT Lodge.

4720163.1
PHIL1 9321219v.2

**B.**     **Specific Provisions of the RT Lodge Lease**.

3.     One example of the unique relationship between Maryville College and the operator

of the RT Lodge is expressed in *paragraph 7* of the Lease which states as follows:

> 7.     RECIPROCAL USE OF FACILITIES
>
> The Lessor and Lessee will exchange reasonably limited use of each other's facilities in accordance with predetermined and mutually agreed upon annual availability schedules, fee schedules, and guidelines.
>
> After use of the Lessor's property, the Lessee shall return the premises to the Lessor in as good as condition as when taken possession of, ordinary wear and tear excepted, and shall repay the cost of any repairs made necessary by the use of said facilities by the Lessee.

4.     This non-standard lease contemplates much more than a financial arrangement, but

a working partnership between Maryville College and RTI.  That partnership was premised on

Maryville College's relationship with the former chairman of RTI, Samuel E. Beall, III.

5.     As further evidence of the importance of the identity of the operator of the RT

Lodge, *paragraph 11* of the original Lease *(Exhibit 1)* dated September 11, 1997 states as follows:

> 11.     ASSIGNMENT
>
> The Lessee shall not assign (except in the case of a name change, change of state of incorporation or statutory merger) or sublet the demised premises or any portion thereof without the prior written consent of the Lessor.  Lessor's consent shall not be unreasonably withheld.  Notwithstanding the foregoing, Lessee shall have the right, without the Lessor's approval, to assign this lease or sublet the premises to Samuel E. Beall, III, or to Blackberry Hotel Company.

6.     Perhaps a more important document which evidences the relationship between

Maryville College and the operator of the RT Lodge is the Memorandum of Understanding for

Maryville College and RT Lodge Partnership dated May 14, 2018, a copy of which is attached

4720163.1
PHIL1 9321219v.2

as *Exhibit 2* ("Partnership Memorandum").  A review of the Partnership Memorandum evidences

a relationship more akin to a personal services contract, and not just a lease of real property.

### C.    RTI's Pre-Petition Attempt to Assign RT Lodge Lease to Oliver Hospitality, LLC.

7.    In 2020, RTI approached Maryville College proposing to sell its interest in the RT

Lodge and assign the RT Lodge Lease to Oliver Hospitality, LLC.  Central to those discussions

for Maryville College was a vetting of Oliver Hospitality, LLC and detailed discussions

regarding its philosophy of operation, its experience in operating properties similar to RT Lodge,

and its acknowledgement of the Partnership Memorandum (*Exhibit 2*).  As part of these

discussions and negotiations, RTI, Oliver Hospitality, LLC, and Maryville College negotiated a

20 year extension of the Lease and negotiated various modifications to the Lease which became

the Second Amendment to Lease which is attached hereto as *Exhibit 3*.[2]  Of significant

importance is *paragraph 7* of the Second Amended Lease which modifies *paragraph 11* of the

Lease to read as follows:

> **7.**    The third sentence of Section 11 of the Lease is modified to add the following after the phrase "to Samuel E. Beal III or to Blackberry Hotel Company," "or to BNA Associates LLC, a Tennessee limited liability company, RT Lodge LLC, a Tennessee limited liability company, Oliver Hospitality, LLC, a Tennessee limited liability company or to an entity controlling, controlled by or under common control with any of the foregoing, provided that such agreement or sublease occurs before the close of business on December 31, 2021."  In addition, Lessor agrees that Lessee may enter into a secured financing transaction which may include, without limitation, a deed of trust with respect to this Lease (provided, such secured financing transaction shall not include Lessor's fee ownership interest in the leased premises, and Lessor does not agree to subordinate or subject its fee ownership interest in any such secured financing transaction)."

---

[2] There is a First Amendment to Lease dated July 1, 2001, which is not relevant to the issues before the Court and has been supplemented by the Second Amendment.

4

8.      Maryville College, after vetting Oliver Hospitality, LLC, and understanding its desire to enter into a similar partnership with Maryville College, agreed to allow RTI to assign said Lease to Oliver Hospitality, LLC, BNA Associates, LLC, which is an affiliate of Oliver Hospitality, LLC, or "RT Lodge, LLC," an entity created by Oliver Hospitality, LLC to assume the RT Lodge Lease.

9.      As is set forth in *paragraph 11* of the Lease as amended, the Second Amendment *(Exhibit 3)* also permitted the Debtor to encumber its leasehold interest. Specifically, the Lease as amended states that, "Lessor agrees that Lessee may enter into a secured financing transaction which may include, without limitation, a Deed of Trust with respect to this Lease (provided, such secured financing transaction shall not include Lessor's fee ownership interest in the leased premises, and Lessor does not agree to subordinate or subject its fee ownership interest in any such secured transaction)." It has since been discovered that Goldman Sachs Specialty Lending Group, LP was behind the scenes negotiating with RTI. Said entity is a defined term in the Amended Plan as "GS" (*See Article I.C, paragraph 89* of Debtor's Amended Chapter 11 Plan (Doc. 761).) At no time during the negotiation of the Second Amended Lease (*Exhibit 3*) did Maryville College have discussions with GS.

10.     The Debtor, RTI, did thereafter execute a Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Financing which is of record in Book 2604, Page 237, in the Register's Office for Blount County, Tennessee. A copy of the Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Financing between RTI, James E. Spruill, Trustee, and GS, as beneficiary, is attached hereto as *Exhibit 4*.

**D.    GS Did Not Obtain Any Agreement or Consent From Maryville College at the Time of the Execution of the Leasehold Deed of Trust.**

11.    At no time has Maryville College entered into a Subordination, Nondisturbance, or Attornment Agreement with GS, and Maryville College is not a party to the Leasehold Deed of Trust.  Therefore, assuming GS exercised its rights pursuant to a Trustee's sale, Maryville College would not be required to recognize any such purchaser at the sale as tenant under the Lease.  It appears that through the bankruptcy process of RTI, GS is attempting to obtain a contractual right which it failed to negotiate with Maryville College at the time of execution of the Leasehold Deed of Trust.  The Leasehold Deed of Trust does not modify the terms of the Lease, and therefore, any assignment of the Lease, outside of bankruptcy, would require approval of Maryville College pursuant to *paragraph 11* of the Lease, as amended *(Exhibit 3)*.

**E.    Pre-Petition Modification to Buy-Back Provisions**.

12.    Oliver Hospitality, LLC, RTI and Maryville College also negotiated changes to *paragraph 13* of the original Lease *(Exhibit 1)* with regard to the termination provision contained in the original Lease.  The relevant portion of *paragraph 13* of the original Lease regarding termination (*Exhibit 1*) is stated as follows:

. . .

> In addition to the rights to terminate for the failure of the Lessee to pay rent or to perform other conditions on its part to be kept and performed; the Lessor is granted the right to cancel this Lease in the event the Lessee is sold, unless Samuel E. Beall, III, continues as Chairman of the Board or Chief Executive Officer, or both, or ceases to use the facility, which right shall be contingent upon the Lessor paying the Lessee the cost of all improvements placed in the premises by the Lessee less depreciation based on a thirty nine (39) year straight line depreciation.

> The Lessor is also granted the right to cancel this Lease for any reason after twenty five (25) years contingent upon the Lessor paying to the Lessee the market value of any improvements placed

6

on the leased premises by the Lessee as determined by an appraiser selected by the Lessor and Lessee.

However, the Second Amendment to Lease *(Exhibit 3)* modifies *paragraph 13* to now read as follows:

> In addition to the rights to terminate for the failure of the Lessee to pay rent or to perform other conditions on its part to be kept and performed, the Lessor is granted the right to cancel this Lease, (a) except with respect to a permitted assignment or unless otherwise approved by Lessor, in the event the Lessee is sold, unless such sale is to an entity controlling, controlled by or under common control with Lessee or (b) a "Change of Control" occurs without the prior written consent of Landlord (such consent not to be unreasonably withheld) with respect to Lessee, or (c) if Lessee ceases to use the facility as permitted in this Lease. Such right to terminate shall be contingent upon the Lessor paying the Lessee the cost of all improvements placed on the premises by the Lessee less depreciation based on a thirty-nine (39) year straight line depreciation. For purposes hereof, "Change of Control" shall mean any of the following events: (i) the sale of all or substantially all of the assets of the Lessee; (ii) any merger, consolidation share exchange or recapitalization in which Lessee is not the surviving entity or (iii) any merger, consolidation, share exchange, recapitalization or issuance, sale or transfer of stock or other ownership interests of Lessee in each case as a result of which voting control of the stock or ownership interests of Lessee changes from the current owners of such stock or their immediate families.

13.     The net result of the modifications to *paragraph 13* of the original Lease is that when read in conjunction with Section 11 of the Amended Lease, the termination clause can be exercised by Maryville College if there is an assignment to an entity other than a permitted assignee, or due to a change of control without the prior written consent of Maryville College. The termination provision is more of a "buy-back provision," and is not an "ipso facto termination clause" forbidden by 11 U.S.C. § 365(e)(1) and 11 U.S.C. § 365(f)(3). The modifications to *paragraphs 11 and 13* of the Lease were negotiated by Maryville College in good faith believing that a transaction was imminent wherein RTI would assign its Lease to Oliver Hospitality, LLC or its assigns as described in the Lease.

7

**F.      Prepetition Interference by GS**.

14.      In July 2020, Maryville College was approached by GS expressing a strong interest in acquiring the RT Lodge and sought Maryville College's approval for an assignment of the RT Lodge Lease.  This was the first time that Maryville College was aware of GS's involvement.  Maryville College politely advised GS that it was not interested in partnering with GS and strongly expressed its desire for the finalization of the planned acquisition by Oliver Hospitality, LLC.  RTI and Oliver Hospitality, LLC moved forward to consummate the proposed sale of the RT Lodge and the assignment of the RT Lodge Lease in September, 2020.  However, GS, now holding a Leasehold Deed of Trust on the RT Lodge, blocked the sale and would not agree to release its Leasehold Deed of Trust for the agreed upon maximum principal indebtedness for Tennessee recording tax purposes of $5,252,000, as shown on the first page of *Exhibit 4*.  GS paid Tennessee recording tax on said amount indicating the value of the asset, but refused to release said lien when offered said amount.  The second Whereas clause of the Leasehold Deed of Trust refers to a Credit Agreement in the amount of $127,500,000.00, with a maturity date of December 21, 2022.  Further, said Leasehold Deed of Trust (*Exhibit 4*) essentially provides in *Section 6.2* that RTI may not sell or convey the RT Lodge Lease "except as expressly permitted pursuant to the terms of the Credit Agreement."  For some unknown reason, GS would not agree to release the Leasehold Deed of Trust, even when Oliver Hospitality, LLC was willing to pay $5,252,000 for the asset.  It is not clear whether GS advanced new money to RTI in exchange for the Leasehold Deed of Trust *(Exhibit 4)*.  If GS simply used this Leasehold Deed of Trust to secure antecedent debt, then the lien of the Leasehold Deed of Trust could very well be a preferential transfer pursuant to 11 U.S.C. § 547(c).

4720163.1
PHIL1 9321219v.2

15.    It is apparent from the Amended Chapter 11 Plan that GS, as a secured creditor, is attempting to obtain a remedy through the manipulation of the Debtor that it would not have been able to obtain through state law or by exercising its rights pursuant to the Leasehold Deed of Trust *(Exhibit 4)*.  This desire and goal is evidenced by the specific language found in *Article V.C*, Means for Implementation of the Plan, Vesting of Assets as follows:

. . .

> For clarity, the Executory Contracts and Unexpired Leases assumed by a Debtor and/or a Reorganized Debtor (other than RTI or Reorganized RTI) that are not related to RT Lodge shall be, at the written direction of TCW, assigned to RT Asset Company on the Effective Date without the need for a further authorization by the Bankruptcy Court as set forth in ARTICLE VI.B <u>and the Executory Contracts and Unexpired Leases assumed by a Debtor and/or a Reorganized Debtor that are related to RT Lodge shall be, at the written direction of GS, assigned to RT Lodge Company on the Effective Date, without the need for a further authorization by the Bankruptcy Court as set forth in ARTICLE VI.B.</u>   (Emphasis added.)

The desired result is for GS to now obtain control of the RT Lodge, even though the Debtor RTI could have transferred the Lodge pre-petition, for fair market value.

16.    Notwithstanding GS's interference in the proposed pre-petition transaction between Oliver Hospitality, LLC and RTI, Oliver Hospitality, LLC continues to desire to obtain the RT Lodge.  Maryville College supports these efforts.  Oliver Hospitality, LLC submitted a bid to Focal Point Securities, LLC as part of the dual path "whereby the Debtors will either reorganize via consensual transaction that will provide for the Debtors to emerge from these Chapter 11 proceedings under new ownership by the pre-petition secured creditors, or sell their assets as an ongoing concern."  (Amended Plan [Doc 761], page 1.)  Oliver Hospitality, LLC submitted a bid in the amount of $5.3 million, which is the stated value of the RT Lodge, as suggested in the Amended Chapter 11 Plan.  *Article 1.C, Defined Terms, Section 154* defines RT Lodge as follows:

154.    *"RT Lodge"* means the assets of RTI to the extent such assets are useful to the operations of the event facility and restaurant operated by RTI Commonly known as "RT Lodge" and located at 1406 Wilkinson Pike, Maryville, Tennessee, which assets include a perpetual royalty free trademark license and leasehold interests.  For purposes of the Plan, the RT Lodge shall be valued at $5,300,000.

17.    For some reason, GS would rather obtain the RT Lodge than allow the Debtor to sell the RT Lodge for the stated value of $5.3 million.  Maryville College desires that the bid of Oliver Hospitality, LLC be accepted and that RTI transfer the RT Lodge Lease to Oliver Hospitality, LLC.  As additional factual basis for this objection, the Declaration of Phillip Welker is attached as *Exhibit 5*, and the Declaration of Bryan Coker, Ph.D., is attached as *Exhibit 6*.

### III.    Basis for Objection.

**A.    Standard for Confirmation of Plan**.

18.    A Chapter 11 bankruptcy plan may only be confirmed if all of the requirements of 11 U.S.C. § 1129 are met.  As will be set forth in detail below, Maryville College contends that the Amended Plan does not comply with 11 U.S.C. § 1129(a)(1), because the Plan does not comply with the applicable provisions of Title 11, specifically, 11 U.S.C. § 365(a), (c), and (f).  "Section 365 of the Bankruptcy Code generally permits the trustee to assume or reject any executory contract of the debtor.  This allows 'the trustee to maximize the value of the debtor's estate by assuming executory contracts . . . that benefit the estate and rejecting those that do not.'"  *In re Fleming Companies, Inc*., 499 F.3d 300, 304 (3rd Cir. 2007) (citation omitted).  The assumption or rejection of an executory contract or unexpired lease is generally based on the business judgment of a debtor in possession.  *See In re Extraction Oil & Gas,* 622 B.R. 608 (Bankr. D. Del. 2020).  Here, Maryville College questions, and the Court should question, the business judgment of the Debtor with regard to the RT Lodge Lease.  Specifically, the Debtor has rejected an offer from Oliver Hospitality, LLC to purchase the RT Lodge for $5.3 million,

which is the stated value amount listed in the Plan (*Article I.C, Section 154*).  Rather than

obtaining the agreed value of the asset through an Assumption and Assignment to an entity which

was vetted and approved by Maryville College pre-petition, the Debtor proposes to give GS the

power to assign the RT Lodge Lease to the RT Lodge Company, over the objection of Maryville

College.  Perhaps the judgment of GS is being substituted for that of the Debtor-in-Possession.

19.    Notwithstanding the business judgment of the Debtor or GS, the Debtor has also

failed to comply with 11 U.S.C. § 365(c) and 11 U.S.C. § 365(f), and the Plan should not be

confirmed.  Further, Maryville College is aware of no provision of 11 U.S.C. § 365, or any other

section of the Title 11 which permits a Trustee or Debtor-in-Possession to delegate its right to

assign an executory contract or unexpired lease to a third party.  Additionally, Maryville College

avers that the Plan has not been proposed in good faith as required by 11 U.S.C. § 1129(a)(3).  It

appears that GS has coerced this Plan to obtain an asset of the Debtors which it could not

otherwise obtain.  It appears that GS has used a possible preferential Leasehold Deed of Trust to

block a pre-petition sale to Oliver Group and then use the bankruptcy process to obtain the asset

for itself.

**B.    The Plan Should Not be Confirmed and the Debtor Should Not be Entitled to Assume and Assign the RT Lodge Lease, because the Debtor has Failed to Provide Adequate Assurance of Future Performance by the Assignee, as Required by 11 U.S.C. § 365(f)(2)(B).**

20.    Even if 11 U.S.C. § 365(c)(1) is inapplicable to the unexpired RT Lodge Lease

between Maryville College and RTI, the Debtor has not provided adequate assurance of future

performance of the proposed Assignee, and therefore, Maryville College objects to assumption

and assignment of the RT Lodge Lease and prays the Court disallow said assumption and

assignment as part of the confirmation of the Amended Plan.  While Maryville College does not

concede that the relationship between Maryville College and RTI is outside the context of 11

U.S.C. § 365(c)(1), the Debtor, RTI, has provided no adequate assurance of future performance by the Assignee, as required in Section 365(f)(2)(B).

21.     As set forth in *Section II – Factual Background*, above, there is a unique relationship between Maryville College and the Debtor, RTI.  Specifically, the Lease, as amended *(Exhibits 1 and 3)*, and the Partnership Memorandum *(Exhibit 2)* establishes a unique partnership like relationship between the parties.  The provisions of the Lease and the Partnership Memorandum cannot be written out of the RT Lodge Lease or ignored.  The Debtor proposes to assume the Lease and assign the RT Lodge Lease "and assign said Lease at GS's option" to an entity which is not now in possession of the RT Lodge.  The Plan contemplates a change of control, as is defined in *paragraph 13* of the Lease *(Exhibits 1 and 3)*, and the ultimate assignment to a GS controlled entity.  GS could not have accomplished this feat through the existing Leasehold Deed of Trust *(Exhibit 4)*, without the consent of Maryville College.  Notwithstanding all of these facts, no party in interest has provided any adequate assurance of the performance to Maryville College as of the filing of this Objection.

22.     No parties have provided any indication that any of said entities intend to comply with the Partnership Memorandum *(Exhibit 2)*.  Further, there have been no discussions or assurance of said entities' intent to comply with *paragraph 7* of the Lease regarding reciprocal use of facilities.  Unlike Oliver Hospitality, LLC, which has provided such adequate assurance of future performance to Maryville College, the Debtor, RT Lodge Company and Reorganized Holding, have provided no such assurance.  Maryville College has no idea as to the identity of the principals, officers, or directors of the proposed assignee, RT Lodge Company.  There has been no indication if such principals have any experience in hotel management, particularly in the

4720163.1
PHIL1 9321219v.2

unique location and situation of RT Lodge.  GS is a bank and financial services company, and not

a hotel manager.

23.     Maryville College has many unanswered questions.  Will RT Lodge Company have

sufficient funds to operate the facility?  Will GS or RT Lodge Company be able to comply with

numerous state and local requirements for the operation of a restaurant and lodge?  Will RT Lodge

Company have sufficient expertise in maintaining or preserving hotel permits, or permits to serve

alcoholic beverages?  Does anyone affiliated with RT Lodge Company have experience working

with the Tennessee Alcoholic Beverage Commission, or the Blount County, Tennessee Beer

Board?  There are many other such questions which remain unanswered.  None of these issues

have been addressed in the Plan, or by GS or the Debtor.

> If the trustee meets the assumption requirements under § 365, it must assume the
> contract entirely.  Once the trustee assumes an executory contract, § 365 also
> authorizes assignment.  Generally, the Bankruptcy Code supports this right and
> allows a trustee to assume and assign executory contracts regardless of applicable
> laws or contractual provisions restricting assignment.

> *In re Cinicola*, 248 F.3d 110, 119-120 (3rd Cir. 2001) (footnote and citations omitted).

However, after acknowledging the above general statement of the law, the Third Circuit Court of

Appeals limited the general statement above by stating,

> Before an executory contract may be assigned, the trustee must first assume the
> contract and "adequate assurance of future performance" of the contract must be
> provided.  This requirement provides needed protection to the non-debtor party
> because the assignment relieves the trustee and the bankruptcy estate from liability
> for breaches arising after the assignment.

> *Id*. at 120 (footnote and citation omitted).  Here, the actual identity of the Assignee is, for

all practical purposes, unknown.  Although the Plan speaks of an RT Lodge Company and a

Reorganized Holding Company, the identity of the decision makers and operators involved are yet

unknown.  The Court in *Cinicola* also stated in footnote 10 that "adequate assurance of future

performance" is not defined in the Bankruptcy Code, and are not words of art, but that the

legislative history of the Bankruptcy Code shows that they were intended to be given a practical, pragmatic construction. At this juncture, the Debtor, GS, RTI Lodge Company, and Reorganized Holding (RTI Holding Company, LLC), have provided no information to Maryville College upon which the Court could practically and pragmatically determine whether any of said entities can perform the provisions of the RT Lodge Lease and the Partnership Memorandum. There is no separate motion pending to assume the RT Lodge Lease. The only vehicle for the RT Lodge Lease to be assumed and assigned is pursuant to *Articles V and VI* of the Amended Plan (Doc 761). For the reasons set forth above, the Debtor has failed to provide adequate assurance of future performance and fails the test set forth in 11 U.S.C. § 365(f)(2)(B), and therefore, the Plan should not be confirmed, and the Debtor shall not be permitted to assume and assign the RT Lodge Lease, or delegate such authority to GS.

> **C.  The Relationship Between Maryville College and the Debtor RTI is More Akin to a Partnership or Personal Services Contract, and Therefore, 11 U.S.C. § 365(c) Applies**.

24.     Maryville College is fully aware of case law which stands for the proposition that a lease for improved real property does not usually constitute a contract for non-delegable personal services and therefore, ordinarily would not fall under the exceptions contained in 11 U.S.C. § 365(c)(1). Tennessee case law is similar. However, the RT Lodge Lease *(Exhibits 1 and 3)* and the RT Lodge Partnership Memorandum *(Exhibit 2)* create a relationship well beyond an ordinary lease for improved real property. Judge Walrath in *In re ANC Rental Corp., Inc*., 277 B.R. 226 (Bankr. D. Del. 2002) stated as follows with regard to this issue:

> Consequently, the majority of courts have found section 365(c)(1) applicable only where the identity of the contracting party is crucial under the applicable law because it is a personal services contract or for public safety reasons.

. . .

14

> Consequently, we follow the majority of courts addressing the issue and conclude that, for section 365(c)(1) to apply, the applicable law must specifically state that the contracting party is excused from accepting performance from a third party <u>under circumstances where it is clear from the statute that the identity of the contracting party is crucial to the contract or public safety is at issue</u>.

*In re ANC Rental Corp., Inc.*, 277 B.R. 226, 235-236 (Bankr. D. Del. 2002) (internal citations omitted) (emphasis added).

25.     The original RT Lodge Lease, the Partnership Memoranda, and the Second Amendment to Lease clearly evidence the unique relationship between the Parties to those agreements, and the importance to Maryville College of the identity of the operator of the RT Lodge.  This is precisely why in 2020, and prior to the filing of the pending Bankruptcy Petition, detailed discussions occurred between the Debtor, Maryville College, and Oliver Hospitality, LLC regarding a possible assignment and assumption of the RT Lodge Lease.  GS was not involved in those discussions and made no attempt to become involved in those discussions. After thoroughly reviewing Oliver Hospitality, LLC's practices, expertise, and understanding its philosophy of operations, Maryville College consented to the assignment of the RT Lodge Lease. Maryville College determined that Oliver Hospitality Group, LLC was an adequate partner with Maryville College to operate the RT Lodge.  The Debtor has provided no such information for Maryville College to determine if "RT Lodge Company" or GS are adequate partners to essentially form a partnership with Maryville College regarding the operation of the RT Lodge. In fact, Maryville College previously rejected GS's advances and advised that it preferred Oliver Hospitality, LLC as its partner going forward.  Again, while real property leases do not ordinarily fit within the confines of 11 U.S.C. § 365(c)(1), Maryville College avers that the RT Lodge Partnership Memorandum and provisions of the RT Lodge Lease create an exception to the general rule, and therefore, Maryville College avers that it may object to the assumption and assignment of the RT Lodge Lease in this instance.

15

**D.  Notwithstanding Assumption and Assignment, the Termination Buy-Back Clause in *paragraph 13* of the Lease, as Amended, Should Survive and Remain Enforceable**.

26.     Maryville College is fully aware of the dictates of 11 U.S.C. § 365(e)(1) and 11 U.S.C. § 365(f)(3).  Section 13 of the RT Lodge Lease is not an "ipso facto" clause, as is proscribed by § 365(e) or 365(f)(3).  In fact, there is no such ipso facto clause in the RT Lodge Lease, as amended.  Additionally, the clause found in *paragraph 13* of the Lease, as amended, is not a bare termination clause which is otherwise unenforceable, pursuant to 11 U.S.C. § 365(f)(3).

27.     Specifically, the clause in *Section 13* of the Lease allows termination when a change of control occurs, and requires Lessor to "buy back" the assets of the Lessee.  As stated above, *Section 13* of the Lease was amended by Maryville College, the Debtor, and Oliver Hospitality, LLC in June 2020, shortly before RTI filed the pending Bankruptcy Petition.  GS was not involved.  Further, even if GS exercised its right pursuant to the Leasehold Deed of Trust, and Maryville College agreed to permit it to become the tenant, GS would still be subject to Section 13 of the Lease as to future changes in control.  As stated above, Maryville College objects to GS as its tenant and partner in operating the RT Lodge.  Pre-petition, the Debtor, Maryville College, and Oliver Hospitality, LLC negotiated an amendment to the Lease and modified the termination provision to permit Oliver Hospitality, LLC to become the assignee of the Lease and the operator of the RT Lodge, but at the same time, preserve Maryville College's right to terminate if there was a future change in control of the Debtor, or Oliver Hospitality, LLC. *Paragraph 13* of the Lease does not leave a lessee undergoing a change of control with no remedy, as the lessee is entitled to the cost of its improvements, as set forth in the Lease if lessor chooses to terminate the lease.

4720163.1
PHIL1 9321219v.2

28.     It is apparent that the language of *Article VI* of the Plan includes language which is a clear attempt to avoid *paragraph 13* of the RT Lodge Lease.  Specifically, said section states in part as follows:  "To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed or assumed or assigned to a successor pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtor's assumption or assumption and assignment to a successor (including, but not limited to, RT Asset Company or RT Lodge Company, as applicable) of such executory contract or unexpired Lease, then such provision shall be deemed modified, such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to terminate such executory contract or unexpired Lease or to exercise any other default-related rights with respect thereto."  Maryville College also avers that *Article X* of the Plan, which includes mutual releases and third party releases is an attempt to restrict or eliminate Maryville College's rights pursuant to *paragraph 13* of the Lease.

29.     Courts have recognized that "Congress has suggested that the modification of a contracting party's rights is not to be taken lightly."  *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3rd Cir. 1990).  Although the *Joshua Slocum* case involved an analysis in light of 11 U.S.C. § 365(b)(3) involving a shopping center lease, the case is instructive on the rights of non-debtor parties.  In *Joshua Slocum*, the Bankruptcy Court excised a particular section of the lease which allowed either party to terminate the lease if the debtor's gross sales did not average a particular amount.  In overruling the Bankruptcy Court, the Third Circuit Court of Appeals found that the clause at issue was a bargained for element in the contract and the Bankruptcy Court should not have excised it from the contract.  The Court stated, "Rather, a bankruptcy court in authorizing assumptions and assignment of unexpired leases must be sensitive to the rights of

the non-debtor contracting party (here, George Denney) and the policy requiring that the non-debtor receive the full benefit of his or her bargain." *Id.* (citations omitted).

30.     Here, Maryville College negotiated a right to terminate in *paragraph 13* of the original Lease, and in *paragraph 13* of the Second Amendment *(Exhibit 3)*, when Oliver Hospitality, LLC was approved as a permitted assignee.   The termination or "buy back provision" should not be excised from the contract, even if the Court finds adequate assurance of future performance by the assignee.  The buy-back provision was negotiated to give Maryville College the right to terminate and buy back the assets of any lessee it believed would not be a desired partner with Maryville College to operate the RT Lodge.  Confirmation of the Amended Plan will result in GS as lessee.  GS is not a desired partner of Maryville College.  Said termination provision does not become active due to the assumption or assignment of such contract by the debtor in possession thereof. *See 11 U.S.C. § 365*.  The right of termination in *paragraph 13* of the Lease instead, arises due to a change of control.  Therefore, it is the position of Maryville College that it has the right to terminate the Lease upon the ownership of the Debtor changing through confirmation of the Plan, so that Maryville College must purchase the improvements located on RT Lodge Lease property.  Maryville College is prepared to take that action.

### IV.     Summary.

31.     In summary, Maryville College objects to confirmation of the Amended Plan and to the assumption and assignment of the RT Lodge Lease to GS or RT Lodge Company as defined in the Plan.  For the reasons set forth above, Maryville College prays that confirmation be denied, or in the alternative, that the Debtor not be permitted to assume and assign the RT Lodge Lease as set forth in the Plan.  It is clear the Debtors have been manipulated by GS so that GS can acquire

18

the RT Lodge when it could not have done so through the use of the potentially preferential Leasehold Deed of Trust it acquired within 90 days of the petition date.

32.    This objection could easily have been avoided had the Debtor simply moved to assume the RT Lodge Lease and assign it to Oliver Hospitality, LLC.  An assumption or assignment to Oliver Hospitality, LLC would render the same result which could have occurred pre-petition had GS not used the Leasehold Deed of Trust to block the sale.

WHEREFORE, Maryville College requests that the Court deny confirmation of the Debtors' Amended Chapter 11 Plan and preclude assignment of the RT Lodge Lease to GS and for any additional relief the Court deems proper under the circumstances.

Dated:  January 29, 2021
Wilmington, Delaware

/s/ Sally E. Veghte
Sally E. Veghte (DE Bar No. 4762)
**KLEHR HARRISON HARVEY**
**BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:  (302) 552-5503
Email:  sveghte@klehr.com

-And-

Gregory C. Logue (TN Bar No. 102157)
*Pro Hac Vice Admission Pending*
**WOOLF, MCCLANE, BRIGHT, ALLEN &**
    **CARPENTER, PLLC**
P.O. Box 900
Knoxville, Tennessee  37901
Telephone:  (865) 215-1000
Email:  glogue@wmbac.com

*Attorneys for Maryville College*

4720163.1
PHIL1 9321219v.2