# EXHIBIT 1
# RT LODGE LEASE

## LEASE

THIS AGREEMENT made and entered into on this the 11th day of September, 1997, by and between MARYVILLE COLLEGE, a Tennessee corporation with offices in Maryville, Blount County, Tennessee, and hereinafter referred to as "Lessor," and RUBY TUESDAY, INC., a corporation organized and existing under and by virtue of the laws of the State of Georgia with an office in Maryville, Blount County, Tennessee, hereinafter referred to as "Lessee."

WITNESSETH:

THAT FOR AND IN CONSIDERATION of the rents, covenants and agreements hereinafter contained, the Lessor does hereby let, demise and lease unto the Lessee, the following described premises, to-wit:

> SITUATED in District No. 9 of Blount County, Tennessee, and being more particularly described as follows:
>
> BEGINNING at a 1/2 inch New Iron Rod along the northerly side of Wilkinson Pike and corner to the remaining property of Maryville College, said New Iron Rod lying S. 86-37-50 E. 406.82 feet from the intersection of said Wilkinson Pike and Court Street; thence departing said Wilkinson Pike N. 11-36-09 E. with the remaining property of Maryville College 552.35 feet to a 1/2 inch New Iron Rod; thence N. 40-40-47 E. continuing with the remaining property of said Maryville College, 420.28 feet to a 1/2 inch New Iron Rod; thence S. 52-18-50 E. continuing with the remaining property of said Maryville College 200.00 feet to a 1/2 inch New Iron Rod; thence S. 08-26-03 W. continuing with the remaining property of said Maryville College 783.13 feet to a 1/2 inch New Iron Rod along the northerly side of said Wilkinson Pike; thence N. 85-02-45 W. along the northerly side of said Wilkinson Pike, 430.06 feet to a 1/2 inch New Iron Rod and the point of beginning and containing 7.256 acres more or less, as surveyed by Sterling Engineering, Inc.

The Lessee is further granted an easement and the right to use all private roadways on the Lessor's campus leading to the leased premises, which right shall not be exclusive, but shall be used in common with others. The Lessee is further granted a 40 foot easement over an existing gravel road which leads to the brick guest house, and is further granted a 40 foot easement from the guest house through the woods to the Morningside Inn. The location of the 40 foot easement from the guest house to Morningside Inn shall be determined by the Lessee.

This Lease is upon the following terms and conditions:

1. TERM.

This Lease shall be for a period of fifty (50) years beginning on the later of October 1, 1997, or the date Lessee notifies Lessor that Lessee is satisfied with the state of title, survey, soils, and environmental, subject to the right of termination as hereinafter provided.

2. RENT.

The Lessee shall pay to the Lessor upon the execution of this Lease the sum of Thirty Five Thousand Dollars ($35,000.00) in addition to the rentals hereinafter provided. The Lessee shall pay the Lessor the sum of Thirty Seven Thousand, Five Hundred Dollars ($37,500.00) per year, which shall be paid annually on the 1st of October, 1997, and the 1st day of each and every succeeding October thereafter, provided, however that the rent herein provided shall be increased each five years based on the U.S. Department of Labor Consumer Price Index, All Urban Consumers, All Items, not however to exceed two and one-half percent (2.5%) per year.

3. USE OF FACILITIES.

The Lessee intends to use the property as an inn, lodge, non-public or private restaurant, and training facility and the Lessee is granted the right to close the entrance to the

property from Wilkinson Pike and shall restore the parking area and driveway to its natural state. Lessee is also granted the right to refurbish and expand Morningside Inn into a lodge and dining facility, construct cottages accommodating up to one hundred (100) people, improve the entrance and road into the area leading to the lodge, construct additional parking, add major planting and landscaping, create signage and access control system and landscape the access roads, create a recreational path system through the woods, pay for the initial improvements to all roads leading to the property. Plans for all improvements herein recited shall be subject to the approval of the Lessor which plans shall be submitted by the Lessee to the Lessor prior to the making of any improvements and which consent of the Lessor shall not be unreasonably withheld. The Lessee may demolish and remove the guest house located on the leased premises. At the end of the fifty-year lease term, all improvements on the leased premises shall become the property of the Lessor.

4. **TAXES**.

The Lessee shall pay all taxes, both city and county, which may be assessed against the leased premises.

5. **INSURANCE**.

The Lessee shall provide and pay for fire insurance with extended coverage and liability insurance on the leased premises, including all improvements thereon, and all improvements to be constructed. The fire insurance with extended coverage shall be in the full insurable value of said improvements and the liability shall be in the amount of Two Million Dollars ($2,000,000.00) and which insurance shall name the Lessor as an additional insured, and the Lessee shall provide proof of said coverage during the entire term of this Lease. Said insurance shall provide that it will not be

cancelled except on fifteen (15) days written notice to the Lessor.

6. **MAINTENANCE OF ROADWAYS.**

The Lessor, after the Lessee has improved the roadways as hereinabove provided, shall be responsible for the maintenance of all roadways.

7. **RECIPROCAL USE OF FACILITIES.**

The Lessor and Lessee will exchange reasonably limited use of each other's facilities in accordance with pre-determined and mutually agreed upon annual availability schedules, fee schedules, and guidelines.

After use of the Lessor's property, the Lessee shall return the premises to the Lessor in as good as condition as when taken possession of, ordinary wear and tear excepted, and shall repay the cost of any repairs made necessary by the use of said facilities by the Lessee.

8. **MAINTENANCE OF LEASED PREMISES.**

The Lessee shall maintain the leased premises in a good condition and shall return the same to the Lessor at the end of the term of this Lease in their original condition, ordinary wear and tear excepted.

9. **PERSONAL PROPERTY OF THE LESSOR.**

It is understood and agreed that there are certain items of personal property of the Lessor located in Morningside Inn, and the parties hereto agree that the parties hereto will make a list of all items of personal property which are to remain in Morningside Inn after the execution of this Lease and both shall sign said list and attach the same hereto as Exhibit A to this Lease. The Lessor agrees that it will remove all items of personal property which are not to remain in Morningside Inn.

10. **CONDITION OF PREMISES**.

It is understood by the parties hereto that the Lessor is leasing said premises in their presently existing condition and the Lessee has inspected the premises and is aware of their condition.

11. **ASSIGNMENT**.

The Lessee shall not assign (except in the case of a name change, change of state of incorporation or statutory merger) or sublet the demised premises or any portion thereof without the prior written consent of the Lessor. Lessor's consent shall not be unreasonably withheld. Notwithstanding the foregoing, Lessee shall have the right, without Lessor's approval, to assign this lease or sublet the premises to Samuel E. Beall, III, or to Blackberry Hotel Company.

12. **DESTRUCTION OF PREMISES**.

In the event of the damage or destruction of any improvements on the leased premises by fire, windstorm or other perils covered by the insurance required to be carried by the terms of this Lease, the Lessee shall immediately repair and/or rebuild said premises to their condition prior to the casualty and the Lessor shall assign to the Lessee all rights to collect the insurance proceeds because of the casualty.

13. **TERMINATION**.

Provided always that these presents are on these expressed conditions, that if the Lessee fails to perform any of the obligations imposed upon it, or fails to pay any rent when the same becomes due and payable, the Lessor shall notify the Lessee of such default, and if such default continues for a period of thirty (30) days from and after said notice, then at the option of the Lessor this Lease shall be forfeited and become void and it shall be lawful for the Lessor without any further notice or demand, which notice or demand is expressly waived to re-enter said premises and to occupy and possess them

as of its former estate without paying the Lessee for any improvements placed upon said premises by the Lessee.

In addition to the rights to terminate for the failure of the Lessee to pay rent or to perform other conditions on its part to be kept and performed, the Lessor is granted the right to cancel this Lease in the event the Lessee is sold, unless Samuel E. Beall, III, continues as Chairman of the Board or Chief Executive Officer, or both, or ceases to use the facility, which right shall be contingent upon the Lessor paying the Lessee the cost of all improvements placed on the premises by the Lessee less depreciation based on a thirty nine (39) year straight line depreciation.

The Lessor is also granted the right to cancel this Lease for any reason after twenty five (25) years contingent upon the Lessor paying to the Lessee the market value of any improvements placed on the leased premises by the Lessee as determined by an appraiser selected by the Lessor and Lessee.

14. **QUIET ENJOYMENT**.

The Lessor hereby warrants and agrees that the Lessee, performing the obligations specified and reserved herein in the manner aforesaid, and keeping all of the covenants and agreements on its part to be kept and performed, shall and may peaceably and quietly have, hold and enjoy the said premises for and during the term aforesaid without any lawful let, hindrance or molestation by or from any person or persons having or lawfully claiming any rights in said premises.

15. **WARRANTY OF TITLE**.

The Lessor warrants that it has good title to the leased premises; that the same are unencumbered and that it will warrant and defend the title thereto against the lawful claims of all persons whomsoever.

16. **BINDING EFFECT.**

It is understood that this agreement shall bind and inure to the benefit of parties and their successors and assigns except as to the limitation on assignment hereinabove provided.

17. **ENTIRE AGREEMENT.**

This is the entire agreement between the parties and shall be constructed in accordance with the laws of the state of Tennessee.

18. **MEMORANDUM OF LEASE.**

Either party may require a memorandum of lease or short form lease and the requesting party shall pay the recording fees for the document.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be signed and executed by the proper persons thereunto duly authorized on the day and date first above written.

MARYVILLE COLLEGE

BY: _[signature]_

_President_, Title

ATTEST:

_[signature]_

_Treasurer_, Title

LESSOR

RUBY TUESDAY, INC.

BY: _[signature]_

_Chrm. CEO_, Title

LESSEE

STATE OF TENNESSEE  )
                    ) SS
COUNTY OF BLOUNT    )

Before me, the undersigned authority, a Notary Public of said state and county, personally appeared

-7-

_GERALD GIBSON_, with whom I am personally acquainted, and who, upon oath, acknowledged himself to be the _PRESIDENT_ of MARYVILLE COLLEGE, the within named bargainor, a corporation, and that he, as such _PRESIDENT_, being authorized so to do, executed the within instrument for the purposes therein contained by signing the name of the corporation by himself as _PRESIDENT_.

Witness my hand and seal at office this the _16TH_ day of _SEPTEMBER_, 1997.

_____
NOTARY PUBLIC

My Commission Expires:
_02.21.2002_

STATE OF TENNESSEE     )
                       ) SS
COUNTY OF BLOUNT       )

Before me, the undersigned authority, a Notary Public of said state and county, personally appeared _SANDY BEALL_, with whom I am personally acquainted, and who, upon oath, acknowledged himself to be the _CHAIRMAN/CEO_ of RUBY TUESDAY, INC., the within named bargainor, a corporation, and that he, as such _CHAIRMAN/CEO_, being authorized so to do, executed the within instrument for the purposes therein contained by signing the name of the corporation by himself as _CHAIRMAN/CEO_.

Witness my hand and seal at office this the _11th_ day of _September_, 1997.

_____
NOTARY PUBLIC

My Commission Expires:
_02.21.2002_

-8-