# EXHIBIT 4

# LEASEHOLD DEED OF TRUST

RUBY TUESDAY, INC., as trustor

(Grantor)

to

JAMES E. SPRUILL, as trustee

(Trustee)

for the benefit of

GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P., as beneficiary

(Grantee)

---

## LEASEHOLD DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

---

Dated:       as of August 11, 2020
Location:    1406 Wilkinson Pike
             Maryville, Tennessee 37803
County:      Blount

PREPARED BY AND UPON
RECORDATION RETURN TO:
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Attention: Michael E. Sievers, Esq.

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $5,252,000.00.

THIS INSTRUMENT IS ALSO A UNIFORM COMMERCIAL CODE FINANCING STATEMENT WHICH IS BEING FILED AS A FIXTURE FILING IN ACCORDANCE WITH TENNESSEE CODE ANNOTATED SECTION 47-9-502(C). THE COLLATERAL IS DESCRIBED IN THIS DEED OF TRUST, AND SOME OF THE COLLATERAL DESCRIBED HEREIN IS OR IS TO BECOME FIXTURES ON THE REAL ESTATE DESCRIBED HEREIN. THE SECURED PARTY, TO-WIT, GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P., MAY BE CONTACTED AT THE ADDRESS SET FORTH HEREIN FOR INFORMATION REGARDING THE SECURITY INTEREST.

PURSUANT TO TENNESSEE CODE ANNOTATED SECTION 47-28-104, NOTICE IS HEREBY GIVEN THAT THIS DEED OF TRUST SECURES OBLIGATORY ADVANCES AND IS FOR COMMERCIAL PURPOSES. THIS DEED OF TRUST ALSO SECURES OPTIONAL ADVANCES WHICH ARE NONOBLIGATORY.

Phyllis Lee Crisp, Register
Blount County Tennessee
Rec #: 578065    Instrument #: 881349
Rec'd:   170.00         Recorded
State:  6037.50   8/14/2020 at 3:41 PM
Clerk:     1.00      In Record Book
Other:     2.00          2604
Total:  6210.50
         Pages 2739-2772

**LEASEHOLD DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT, AND FIXTURE FILING**

THIS LEASEHOLD DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING (this "**Security Instrument**") is made as of August 11, 2020, by **RUBY TUESDAY, INC.**, a Georgia corporation, having its principal place of business at 333 East Broadway Avenue, Maryville, TN 37804, as trustor ("**Grantor**"), to **JAMES E. SPRUILL**, having an address of c/o Fidelity National Title Insurance Company, 6840 Carothers Pkwy, Suite 200, Franklin, TN 37067, as trustee ("**Trustee**"), for the benefit of **GOLDMAN SACHS SPECIALTY LENDING GROUP, L.P.**, a Delaware limited partnership, having an address at 6011 Connection Drive, Irving, Texas 75039, as beneficiary (together with its successors and assigns, collectively, "**Grantee**").

## W I T N E S S E T H:

WHEREAS, reference is made to that certain Credit and Guaranty Agreement, dated as of December 21, 2017 (as previously amended, supplemented or otherwise modified, and as further amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**"), by and among Grantor and the other Credit Parties party thereto from time to time, the Lenders party thereto from time to time, and Grantee, as Administrative Agent, Collateral Agent, and Syndication Agent;

WHEREAS, pursuant to and in accordance with the Credit Agreement, the Lenders have extended certain credit facilities to Grantor and the other Credit Parties, in an aggregate amount not to exceed ONE HUNDRED TWENTY-SEVEN MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($127,500,000.00), with a maturity date of December 21, 2022, subject to certain extension options as set forth in the Credit Agreement;

WHEREAS, subject to the terms and conditions of the Credit Agreement, Grantor and the other Credit Parties may enter into one or more Interest Rate Agreements with one or more Lender Counterparties; and

WHEREAS, in consideration of the extensions of credit and other accommodations of the Lenders and Lender Counterparties as set forth in the Credit Agreement and the Interest Rate Agreements, respectively, Grantor has agreed, subject to the terms and conditions hereof, each other Credit Document and each of the Interest Rate Agreements, to secure Grantor's obligations under the Credit Documents and the Interest Rate Agreements as set forth herein.

NOW, THEREFORE, in consideration of the premises and the agreements, provisions and covenants herein contained, and Grantor agrees as follows:

### ARTICLE I - GRANTS OF SECURITY

Section 1.1    **Property Mortgaged**.    Grantor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Trustee with power of sale for the benefit of Grantee and its successors and assigns all of Grantor's right, title, and interest in and to

the following property, rights, interests and estates now owned, or hereafter acquired by Grantor (collectively, the "**Property**"):

    (a)    <u>Intentionally Deleted</u>.

    (b)    <u>Intentionally Deleted</u>.

    (c)    <u>Master Lodge Lease</u>. That certain Lease dated September 11, 1997, by and between Maryville College, a Tennessee corporation, as lessor, and Grantor, as lessee, as amended by that certain First Amendment to Lease, having an effective date of July 1, 2001, as further supplemented by that certain Memorandum of Understanding dated May 14, 2018, and as further amended by that certain Second Amendment to Lease dated and effective as of June 26, 2020 (collectively, the "**Master Lease**"), which Master Lease is evidenced of record by that certain Amended and Restated Memorandum of Lease recorded with the Blount County, Tennessee Register's Office at Deed Book 2599, Page 2856, of the real property described in <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**"), and the leasehold estate created thereby (the "**Leasehold Estate**");

    (d)    <u>Assignments/Modifications</u>. All assignments, modifications, extensions and renewals of the Master Lease and all credits, deposits, options, privileges and rights of Grantor as tenant under the Master Lease, including, but not limited to, rights of first refusal, if any, and the right, if any, to renew or extend the Master Lease for a succeeding term or terms, and also including all right, title, claim or demand whatsoever of Grantor either in law or in equity, in possession or expectancy, of, in and to Grantor's right, as tenant under the Master Lease, to elect under Section 365(h)(1) of the Bankruptcy Code to terminate or treat the Master Lease as terminated in the event (i) of the bankruptcy, reorganization or insolvency of the landlord under the Master Lease (the "**Landlord**"), and (ii) the rejection of the Master Lease by Landlord, as debtor in possession, or by a trustee for Landlord, pursuant to Section 365 of the Bankruptcy Code.

    (e)    <u>Improvements</u>. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land and owned by Grantor (collectively, the "**Improvements**");

    (f)    <u>Easements</u>. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Leasehold Estate, including, but not limited to, those arising under and by virtue of the Master Lease, if any, and the reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Grantor of, in and to the Leasehold Estate and the Improvements, including, but not limited to, those arising under and by virtue of the Master Lease, if any, and every part and parcel thereof, with the appurtenances thereto;

GS/RT – Security Instrument (RT Lodge)

(g)    Equipment.  All "goods" and "equipment," as such terms are defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Grantor, which is used at or in connection with the Improvements or the Leasehold Estate or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Grantor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**");

(h)    Fixtures.  All fixtures and Equipment now owned, or the ownership of which is hereafter acquired, by Grantor which is so related to the Leasehold Estate and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Leasehold Estate, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Grantor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**");

(i)    Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, inventory and articles of personal property and accessions thereof and renewals and replacements thereof and substitutions therefor, if any (including, but not limited to, tables, carpeting, screens, paintings, hangings, pictures, stools, chinaware, linens, glassware, foodcarts, cookware, bars, bar fixtures, liquor and other drink dispensers, icemakers, radios, television sets, intercom and paging equipment, electric and electronic equipment, medical equipment, potted plants, heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, elevators, escalators, fittings, plants, tools, machinery, engines, dynamos, motors, boilers, incinerators, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, brackets, electrical signs, bulbs, and cabinets), licenses (including liquor licenses), certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, other than Fixtures, which are now or hereafter owned by Grantor and which are located within or about the Leasehold Estate and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Grantor in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and

GS/RT – Security Instrument (RT Lodge)

-3-

enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), and all proceeds and products of the above;

      (j)   <u>Leases and Rents</u>.  All subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) of the Leasehold Estate, pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Leasehold Estate, and every modification, amendment or other agreement relating to such subleases, subsubleases, or other agreements entered into in connection with such subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code and all right, title and interest of Grantor, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) income, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Grantor or its agents or employees from any and all sources arising from or attributable to the Leasehold Estate, including, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sublease, license, concession or other grant of the right of the use and occupancy of the Leasehold Estate or rendering of services by Grantor or any operator or manager of the commercial space located in the Improvements or acquired from others whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Obligations;

      (k)   <u>Condemnation Awards</u>.  All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

      (l)   <u>Insurance Proceeds</u>.  All proceeds in respect of the Property under any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

      (m)   <u>Tax Certiorari</u>.  All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

      (n)   <u>Conversion</u>.  All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2743**

(o) <u>Rights</u>. The right, in the name and on behalf of Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Grantee in the Property;

(p) <u>Agreements</u>. All agreements, contracts, certificates, instruments, permits, licenses (including without limitation, liquor licenses), franchises, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Leasehold Estate and any part thereof and any Improvements or respecting or pertaining to any business or activity conducted on the Leasehold Estate and any part thereof and all right, title and interest of Grantor therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Grantor thereunder;

(q) <u>Trademarks</u>. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(r) <u>Accounts</u>. All deposit accounts maintained by Grantor with respect to the Property, including, without limitation, the Controlled Account, together with all deposits or wire transfers made to such accounts, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

(s) <u>Letter of Credit</u>. All letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Grantor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1;

(t) <u>Tort Claims</u>. All commercial tort claims Grantor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1;

(u) <u>Interest Rate Agreement</u>. The Interest Rate Agreement, including, but not limited to, all "accounts", "chattel paper", "general intangibles" and "investment property" (as such terms are defined in the Uniform Commercial Code as from time to time in effect) constituting or relating to the foregoing; and all products and proceeds of any of the foregoing in accordance with the terms of the Interest Rate Agreement; and

(v) <u>Other Rights</u>. Any and all other rights of Grantor in and to the items set forth in <u>Subsections (a)</u> through <u>(u)</u> above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Grantor expressly grants to Grantee, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Leasehold Estate (the Leasehold Estate, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall

GS/RT – Security Instrument (RT Lodge)

for the purposes of this Security Instrument be deemed conclusively to be real estate and mortgaged hereby.

Section 1.2    **Assignment of Leases and Rents**.    Grantor hereby absolutely and unconditionally assigns to Grantee all of Grantor's right, title and interest in and to all current and future Leases and Rents; it being intended by Grantor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of <u>Section 7.1(h)</u> of this Security Instrument, Grantee grants to Grantor a revocable license to collect, receive, use and enjoy the Rents and Grantor shall hold all Rents, or portion thereof sufficient to discharge all current sums then due and payable on the Obligations, for use in the payment of such sums, otherwise Grantor may use the balance of the Rents collected in any manner not inconsistent with the Credit Documents.

Section 1.3    **Security Agreement**.  This Security Instrument is both a leasehold deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both a leasehold estate and personal property and all other rights and interests, whether tangible or intangible in nature, of Grantor in the Property.  By executing and delivering this Security Instrument, Grantor hereby grants to Grantee, as security for the Obligations, a security interest in the Fixtures, the Equipment and the Personal Property and other property constituting the Property, whether now owned or hereafter acquired, to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**").  If an Event of Default shall occur and be continuing, Grantee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Grantee may deem reasonably necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Grantee after the occurrence and during the continuance of an Event of Default, Grantor shall, at its expense, assemble the Collateral and make it available to Grantee at a convenient place (at the Leasehold Estate if tangible property) reasonably acceptable to Grantee.  Grantor shall pay to Grantee within ten (10) days of written demand any and all out-of-pocket expenses, including legal expenses and reasonable attorneys' fees, incurred or paid by Grantee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default.  Any notice of sale, disposition or other intended action by Grantee with respect to the Collateral sent to Grantor in accordance with the provisions hereof at least ten (10) days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Grantor.  The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Grantee to the payment of the Obligations in such priority and proportions as Grantee in its discretion shall deem proper.  Grantor's (debtor's) principal place of business is as set forth on page one hereof and the address of Grantee (secured party) is as set forth on page one hereof.

Section 1.4    **Fixture Filing**.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon

GS/RT – Security Instrument (RT Lodge)

being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall, for purposes of the Uniform Commercial Code, operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures. The addresses of Grantor (the "Debtor") and Grantee (the "Secured Party") are set forth above. The Debtor is the record owner of the Collateral.

**Section 1.5    Pledges of Monies Held**.  Grantor hereby pledges to Grantee any and all monies now or hereafter held by Grantee or on behalf of Grantee.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto Trustee for the use and benefit of Grantee and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Grantor shall pay to Grantee the Obligations at the time and in the manner provided in the Credit Agreement and this Security Instrument, shall perform the Other Obligations as set forth in this Security Instrument and shall abide by and comply with each and every covenant and condition set forth herein and in the Credit Agreement and the other Credit Documents, then Grantee shall instruct Trustee to reconvey to Grantor, or the person or persons legally entitled thereto, without recourse or warranty, the Property or portions thereof then held hereunder. Grantor's obligation to indemnify and hold harmless Grantee pursuant to the provisions hereof shall survive any such reconveyance.

## ARTICLE II - DEBT AND OBLIGATIONS SECURED

**Section 2.1    Obligations**.  This Security Instrument and the grants, assignments and transfers made in Article I are given for the purpose of securing the Obligations, including but not limited to the Indebtedness evidenced by the Notes.

**Section 2.2    Other Obligations**.  This Security Instrument and the grants, assignments and transfers made in Article I are also given for the purpose of securing the performance of all other obligations of Grantor contained herein (the **"Other Obligations"**).

## ARTICLE III - GRANTOR COVENANTS

Grantor covenants and agrees that:

**Section 3.1    Payment of the Obligations**.  Grantor will pay, or cause to be paid, the Obligations at the time and in the manner provided in the Credit Agreement, the Credit Documents, and this Security Instrument.

**Section 3.2    Incorporation by Reference**.  All of the covenants, conditions and agreements contained in the Credit Agreement and all and any of the other Credit Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

GS/RT – Security Instrument (RT Lodge)

**Section 3.3**   <u>Insurance</u>. Grantor shall obtain and maintain in full force and effect at all times insurance with respect to Grantor and the Property as required pursuant to the Credit Agreement.

**Section 3.4**   <u>Maintenance of Property</u>. Grantor shall cause the Property to be maintained in a good and safe condition and repair in accordance with the terms of the Master Lease. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements or as otherwise explicitly permitted under the Credit Agreement or required under the Credit Agreement or the Master Lease) without the consent of Grantee, which shall not be unreasonably withheld, conditioned, or delayed. Except as otherwise explicitly permitted or required under the Credit Agreement, and provided that Net Insurance/Condemnation Proceeds are made available to Grantor pursuant to the Credit Agreement and that such repairs are the responsibility of the tenant under the Master Lease, Grantor shall pursuant to the terms and conditions of the Master Lease: (i) promptly repair, replace or rebuild any part of the Property which may be destroyed by any casualty or become damaged, worn or dilapidated or which may be affected by any condemnation, and (ii) complete and pay for any structure at any time in the process of construction or repair on the Leasehold Estate.

**Section 3.5**   <u>Waste; Use; Minerals</u>. Grantor shall not commit or suffer any physical waste of the Property or make any change in the use of the Property which will materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any insurance policy required under the Credit Documents, or do or permit to be done thereon anything that may materially impair the value of the Property or the security of this Security Instrument. Grantor will not, without the prior written consent of Grantee, such consent not to be unreasonably withheld, conditioned, or delayed, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof, except for any drilling or exploration rights granted pursuant to the Permitted Encumbrances (as defined below).

**Section 3.6**   <u>Payment for Labor and Materials</u>.

(a)   Grantor will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, except for Permitted Encumbrances, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof, except for Permitted Encumbrances.

(b)   After prior written notice to Grantee, Grantor, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing, subject to any

GS/RT – Security Instrument (RT Lodge)

-8-

applicable grace or cure periods under the Credit Agreement, this Security Instrument, or any of the other Credit Documents, (ii) Grantor is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Grantor and from the Property or Grantor shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Grantor is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Grantor shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Grantee to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon, if any.

(c)     Notwithstanding anything to the contrary in this Section 3.6 or in Section 6.2 of the Credit Agreement, if a mechanics' or materialman's lien shall be filed against the Property for Labor and Material Costs (each, a "**Mechanic's Lien**"), then Grantor shall (i) provide Grantee with written notice of such Mechanic's Lien within thirty (30) days of notice of the filing thereof, and (ii) at its expense, cause such Mechanic's Lien to be discharged of record by payment, bond or otherwise within sixty (60) days after notice of the filing thereof. If Grantor shall fail to cause such Mechanic's Lien to be discharged of record within such sixty (60) day period, Grantee may, in Grantee's sole discretion, cause such Mechanic's Lien to be discharged by payment, bond or otherwise without investigation as to the validity thereof or as to any offsets or defenses thereto, and Grantor shall, upon demand, reimburse Grantee for all amounts paid and costs incurred in connection therewith including, without limitation, reasonable attorneys' fees.

Section 3.7     **Performance of Other Agreements**.  Grantor shall observe and perform each and every term, covenant and provision to be observed or performed by Grantor pursuant to the Credit Agreement and any other Credit Document and any amendments, modifications or changes thereto. Grantor shall observe and perform each and every material term, covenant and provision to be observed or performed by Grantor pursuant to any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

Section 3.8     **Change of Name, Identity or Structure**.  No Grantor shall change its name, identity (including its trade name or names) or, if not an individual, its corporate, partnership or other structure without notifying Grantee of such change in writing at least thirty (30) days prior to the effective date of such change and, in the case of a change in Grantor's structure, without first obtaining the prior written consent of Grantee. If requested by Grantee, Grantor shall execute and deliver to Grantee, prior to or contemporaneously with the effective date of any such change, any reasonable documentation (including, without limitation, financing statements) necessary and required by Grantee to establish or maintain the validity, perfection and priority of the security interest granted herein. At the request of Grantee, Grantor shall execute a certificate in form satisfactory to Grantee listing the trade names under which Grantor intends to operate the Property, and representing and warranting that Grantor does business under no other trade name with respect to the Property.

GS/RT – Security Instrument (RT Lodge)

**Section 3.9**    Title. Grantor has good, marketable and insurable leasehold title to the real property comprising part of the Property and Grantor, as applicable, has good title to the balance of such Property, free and clear all Liens whatsoever, except the Permitted Encumbrances and the Liens created by the Credit Documents.  Grantor has legal power and authority to mortgage, convey, and hypothecate its interest in the Property, and this Security Instrument constitutes a valid first lien on Grantor's interest in the Property all in accordance with the terms hereof, subject only to the Permitted Encumbrances, the Landlord's fee interest in the Land, and the Liens created by the Credit Documents.  To Grantor's knowledge, there are no claims for payment for work, labor or materials affecting the Property which are past due and are or may become a lien prior to, or of equal priority with, the Liens created by the Credit Documents unless such claims for payments are being contested in accordance with the terms and conditions of this Security Instrument.

"**Permitted Encumbrances**" shall mean, with respect to the Property, (a) the Liens and security interests created by the Credit Documents, (b) all Liens, encumbrances and other matters disclosed in the mortgagee title insurance policy issued with respect to the Property and insuring the lien of this Security Instrument (the "**Title Insurance Policy**"), (c) Liens, if any, for Taxes with respect to the Property imposed by any Governmental Authority not yet delinquent or which are being contested in good faith and for which adequate reserves have been established in accordance with the Credit Agreement if Grantor is required to pay such Taxes under the Master Lease or the Credit Agreement, (d) mechanics', materialmen's or similar Liens, if any, that are being contested in good faith and by appropriate proceedings in accordance with the applicable provisions of this Security Instrument and the other Credit Documents, (e) such other title and survey exceptions as are covered in the Title Insurance Policy or that Grantee has approved or may approve in writing in its reasonable discretion, and (f) any Permitted Liens.

**Section 3.10**    Letter of Credit Rights.  If Grantor is at any time a beneficiary under a letter of credit relating to the properties, rights, titles and interests referenced in Section 1.1 of this Security Instrument now or hereafter issued in favor of Grantor, Grantor shall promptly notify Grantee thereof and, at the request and option of Grantee, Grantor shall, pursuant to an agreement in form and substance satisfactory to Grantee, either (a) arrange for the issuer and any confirmer of such letter of credit to consent to an assignment to Grantee of the proceeds of any drawing under the letter of credit or (b) arrange for Grantee to become the transferee beneficiary of the letter of credit, and Grantee agrees, in each case that the proceeds of any drawing under the letter of credit are to be applied as provided in Section 7.2 of this Security Instrument.

## ARTICLE IV - OBLIGATIONS AND RELIANCES

**Section 4.1**    Relationship of Grantor and Grantee. The relationship between Grantor and Grantee is solely that of debtor and creditor, and Grantee has no fiduciary or other special relationship with Grantor, and no term or condition of any of the Credit Agreement, this Security Instrument and the other Credit Documents shall be construed so as to deem the relationship between Grantor and Grantee to be other than that of debtor and creditor.

**Section 4.2**    No Reliance on Grantee. The general partners, members, principals and (if Grantor is a trust) beneficial owners of Grantor are experienced in the ownership and operation of properties similar to the Property, and Grantor and Grantee are relying solely upon such

GS/RT – Security Instrument (RT Lodge)

Record Book 2604 Page 2749

expertise and business plan in connection with the ownership and operation of the Property. Grantor is not relying on Grantee's expertise, business acumen or advice in connection with the Property.

Section 4.3    No Grantee Obligations.

(a)    Notwithstanding the provisions of Subsections 1.1(j) and (p) or Section 1.2, Grantee is not undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Grantee pursuant to this Security Instrument, the Credit Agreement, or the other Credit Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Grantee shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Grantee.

Section 4.4    Reliance.    Grantor recognizes and acknowledges that in accepting the Credit Agreement, this Security Instrument and the other Credit Documents, Grantee is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 4.13 of the Credit Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Grantee; that such reliance existed on the part of Grantee prior to the date hereof; that the warranties and representations are a material inducement to Grantee in making the Loan; and that Grantor would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in Section 4.13 of the Credit Agreement.

ARTICLE V - FURTHER ASSURANCES

Section 5.1    Recording of Security Instrument, Etc.    Grantor forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time upon Grantee's reasonable request, will cause this Security Instrument and any of the other Credit Documents, if Grantor is a party thereto, creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Grantee in, the Property. Grantor will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of this Security Instrument, the other Credit Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance,

GS/RT – Security Instrument (RT Lodge)

-11-

and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

**Section 5.2    Further Acts, Etc.**   Grantor will, at the cost of Grantor, and without expense to Grantee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Grantee shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Grantee the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Grantor may be or may hereafter become bound to convey or assign to Grantee, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements (as defined below). Grantor, upon reasonable request of Grantee, shall execute and deliver, and in the event it shall fail to so execute and deliver such reasonable documentation necessary for Grantee to obtain and maintain perfection of its security interests in the Property, hereby authorizes Grantee to file one or more financing statements to evidence more effectively the security interest of Grantee in the Property. Such financing statements may describe as the collateral covered thereby as "all assets of the debtor, whether now owned or hereafter acquired" or words to that effect.  Grantor grants to Grantee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Grantee at law and in equity, including without limitation, the right (a) to execute and/or record any notices of completion, cessation of labor or any other notices that Grantee deems appropriate to protect Grantee's interest, if Grantor shall fail to do so within three (3) Business Days after written request by Grantee, (b) upon the issuance of a deed or assignment of lease pursuant to the foreclosure of this Security Instrument or the delivery of a deed or assignment of lease in lieu of foreclosure, to execute all instruments of assignment, conveyance or further assurance with respect to the Leases, Rents, personalty, Fixtures, plans and property agreements in favor of the grantee of any such deed or the assignee of any such assignment of lease and as may be necessary or desirable for such purpose, (c) to prepare, execute and file or record financing statements, continuation statements, applications for registration and like papers necessary to create, perfect or preserve Grantee's security interests and rights in or to any of the Collateral, and (d) to perform any obligation of Grantor hereunder; however: (1) Grantee shall not under any circumstances be obligated to perform any obligation of Grantor; (2) any sums advanced by Grantee in such performance shall be included in the Obligations and shall bear interest at the Default Rate; (3) Grantee as such attorney-in-fact shall only be accountable for such funds as are actually received by Grantee; and (4) Grantee shall not be liable to Grantor or any other person or entity for any failure to take any action that it is empowered to take under this Section 5.2.

"**Legal Requirements**" shall mean all federal, state, county, municipal and other governmental statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions of Governmental Authorities affecting the Property or any part thereof, or the construction, use, alteration or operation thereof, or any part thereof, whether now or hereafter enacted and in force, and all permits, licenses and authorizations and regulations relating thereto (including, without limitation, all licenses), and all covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Grantor, at any time in

GS/RT – Security Instrument (RT Lodge)

-12-

force affecting Grantor, the Property or any part thereof, including, without limitation, any which may (a) require repairs, modifications or alterations in or to the Property or any part thereof, or (b) in any way limit the use and enjoyment thereof.

Section 5.3    **Changes in Tax, Obligations, Credit and Documentary Stamp Laws**.

(a)    If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Obligations from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Obligations or Grantee's interest in the Property, Grantor will pay the tax, with interest and penalties thereon, if any. If Grantee is advised by counsel chosen by it that the payment of tax by Grantor would be unlawful or taxable to Grantee or unenforceable or provide the basis for a defense of usury then Grantee shall have the option by written notice of not less than thirty (30) days to require a mandatory prepayment of the Obligations in an amount not to exceed 100% of the appraised value of the Property and release this Security Instrument, pursuant to and in accordance with the terms of the Credit Documents.

(b)    Grantor will not claim or demand or be entitled to any credit or credits on account of the Obligations for any part of the Taxes or other maintenance charges or impositions assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Obligations. If such claim, credit or deduction shall be required by law, Grantee shall have the option, by written notice of not less than thirty (30) days, to require a mandatory prepayment of the Obligations in an amount not to exceed 100% of the appraised value of the Property and release this Security Instrument, pursuant to and in accordance with the terms of the Credit Documents.

(c)    If at any time the United States of America, any state thereof or any subdivision of any such state shall require revenue or other stamps to be affixed to this Security Instrument, or any of the other Credit Documents or impose any other tax or charge on the same, Grantor will pay for the same, with interest and penalties thereon, if any, except for any interest or penalties caused by Grantee's willful misconduct or gross negligence.

Section 5.4    **Replacement Documents**.  Upon receipt of an affidavit of an officer of Grantee as to the loss, theft, destruction or mutilation of any Credit Document to which Grantor is a party which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Credit Document, Grantor will issue in lieu thereof, a replacement Credit Document, dated the date of such lost, stolen, destroyed or mutilated Credit Document in the same principal amount thereof and otherwise in the same form as such lost, stolen, destroyed or mutilated Credit Document.

## ARTICLE VI - DUE ON SALE/ENCUMBRANCE

Section 6.1    **Grantee Reliance**.  Grantor acknowledges that Grantee has examined and relied on the experience of Grantor and their respective members in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Grantor's interest in the Property as a means of maintaining the value of the Property as security for

GS/RT – Security Instrument (RT Lodge)

-13-

repayment of the Obligations and the performance of the Other Obligations. Grantor acknowledges that Grantee has a valid interest in maintaining the value of the Property so as to ensure that, should Grantor default in the repayment of the Obligations or the performance of the Other Obligations, Grantee can recover the Obligations, or part thereof, by a sale of the Property.

**Section 6.2    No Sale/Encumbrance.** Except as expressly permitted under any Permitted Encumbrances, Grantor shall not sell, convey, mortgage, grant, bargain, encumber, pledge, assign, grant options with respect to, or otherwise transfer or dispose of (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record) (collectively, a "**Transfer**") the Property or any part thereof or any interest therein or permit or suffer the Property or any part thereof or any interest therein to be Transferred except as expressly permitted pursuant to the terms of the Credit Agreement.

## ARTICLE VII - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1    Remedies.** Upon the occurrence and during the continuance of any Event of Default, subject to any applicable grace or cure periods in any Credit Document, Grantor agrees that Grantee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Grantor and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Grantee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Grantee:

(a)    declare the Obligations to be immediately due and payable;

(b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Obligations then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Obligations not then due, unimpaired and without loss of priority;

(d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Grantor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Credit Agreement or in the other Credit Documents;

(f)    recover judgment on the Notes either before, during or after any proceedings for the enforcement of this Security Instrument or the other Credit Documents;

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2753**

(g)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, which Grantor hereby irrevocably consents to and waives any right to object to or otherwise contest such appointment during the continuance of an Event of Default to the extent permitted by applicable law, and without regard for the adequacy of the security for the Obligations and without regard for the solvency of Grantor, any guarantor or any indemnitor with respect to the Loan or of any Person liable for the payment of the Obligations;

(h)    the license granted to Grantor under Section 1.2 hereof shall automatically be revoked and Grantee may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Grantor and its agents and servants therefrom, subject to the terms of the Master Lease, without liability for trespass, damages or otherwise and exclude Grantor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Grantor agrees to surrender possession of the Property and of such books, records and accounts to Grantee upon demand, and thereupon Grantee may (i) use, operate, manage, control, insure, maintain, repair, and restore all and every part of the Property and conduct the business thereat, subject to the terms of the Master Lease; (ii) to notify any tenant or other person that the Leases have been assigned to Grantee and that all Rents are to be paid directly to Grantee, whether or not Grantee has commenced or completed foreclosure or taken possession of the Property; (iii) subject to the terms of the Master Lease, complete any construction on the Property in such manner and form as Grantee deems advisable; (iv) subject to the terms of the Master Lease, make alterations, additions, renewals, replacements and improvements to or on the Property (provided Grantor shall not be responsible for costs incurred by Grantee in connection with such alterations, additions, renewals, replacements and improvements unless the same are reasonably necessary to maintain the Property in good and safe condition and repair and in compliance with applicable laws); (v) exercise all rights and powers of Grantor with respect to the Property, whether in the name of Grantor or otherwise, including, without limitation, the right to make, cancel, enforce or modify the Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (vi) require Grantor to pay monthly in advance to Grantee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Grantor; (vii) require Grantor to vacate and surrender possession of the Property to Grantee or to such receiver and, in default thereof, Grantor may be evicted by summary proceedings or otherwise; and (viii) apply the receipts from the Property to the payment of the Obligations, in such order, priority and proportions as Grantee shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes (if Grantor is required to pay Taxes under the Master Lease), maintenance charges, impositions other than Taxes (if Grantor is required to pay such impositions under the Master Lease) and any other charges, insurance and other expenses in connection with the Property, as well as just compensation for the services of Grantee, its counsel, agents and employees. Notwithstanding the generality of the foregoing, the license granted under Section 1.2 hereof shall be reinstated immediately within one (1) day following the cure of the Event of Default which caused the suspension of such license pursuant to this Section 7.1(h);

(i)    exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the

GS/RT – Security Instrument (RT Lodge)

-15-

foregoing: (i) the right to take possession of the Fixtures, the Equipment, the Personal Property or any part thereof, and to take such other measures as Grantee may deem necessary for the care, protection and preservation of the Fixtures, the Equipment, the Personal Property, and (ii) request Grantor at its expense to assemble the Fixtures, the Equipment, the Personal Property and make it available to Grantee at a convenient place acceptable to Grantee. Any notice of sale, disposition or other intended action by Grantee with respect to the Fixtures, the Equipment and/or the Personal Property sent to Grantor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Grantor;

(j)    apply any sums then deposited or held in escrow or otherwise by or on behalf of Grantee in accordance with the terms of the Credit Agreement, this Security Instrument or any other Credit Document to the payment of the following items in any order in its sole discretion: (i) Taxes and maintenance charges, impositions other than Taxes and any other charges, provided that Grantor is required to pay such Taxes and other impositions under the Master Lease; (ii) insurance premiums; (iii) interest on the unpaid principal balance of the Notes; (iv) the unpaid principal balance of the Notes and (v) all other sums payable pursuant to the Notes, the Credit Agreement, this Security Instrument and the other Credit Documents, including without limitation advances made by Grantee pursuant to the terms of this Security Instrument;

(k)    subject to the terms of the Master Lease, surrender the insurance policies maintained pursuant to the Credit Documents, collect the unearned insurance premiums for such insurance policies and apply such sums as a credit on the Obligations in such priority and proportion as Grantee in its discretion shall deem proper, and in connection therewith, Grantor hereby appoints Grantee as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Grantee to collect such insurance premiums; or

(l)    pursue such other remedies as Grantee may have under applicable law.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 7.2    **Application of Proceeds**. Upon the occurrence and during the continuance of an Event of Default, subject to any applicable grace or cure periods in any Credit Document, the purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Grantee pursuant to this Security Instrument or the other Credit Documents, shall be applied by Grantee to the payment of the Obligations in such priority and proportions as Grantee in its discretion shall deem proper.

Section 7.3    **Right to Cure Defaults**. Upon the occurrence and during the continuance of any Event of Default, subject to any applicable grace or cure periods in any Credit Document, or if Grantor fails to make any payment or to do any act as herein provided, Grantee may, but without any obligation to do so and without notice to or demand on Grantor and without releasing Grantor from any obligation hereunder, make any payment or do any act required of Grantor hereunder in such manner and to such extent as Grantee may deem necessary to protect the security hereof. Grantee is authorized to enter upon the Property for such purposes, or appear in, defend,

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2755**

or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Obligations, and all cost and expense thereof (including attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Obligations and shall be due and payable to Grantee upon demand. All such costs and expenses incurred by Grantee in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Grantee that such cost or expense was incurred to the date of payment to Grantee. All such costs and expenses incurred by Grantee together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Obligations and be secured by this Security Instrument and the other Credit Documents and shall be immediately due and payable upon demand by Grantee therefor.

**Section 7.4    Actions and Proceedings.**  Grantee has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Grantor, which Grantee, in its discretion, decides should be brought to protect its interest in the Property.

**Section 7.5    Recovery of Sums Required To Be Paid.**  Grantee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Obligations as the same become due, without regard to whether or not the balance of the Obligations shall be due, and without prejudice to the right of Grantee thereafter to bring an action of foreclosure, or any other action, for any Event of Default existing at the time such earlier action was commenced.

**Section 7.6    Examination of Books and Records.**  At reasonable times and upon reasonable notice to Grantor, Grantee, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Grantor which reflect upon their financial condition, at the Property or at any office regularly maintained by Grantor where the books and records are located. Grantee and its agents shall have the right to make copies and extracts from the foregoing records and other papers. In addition, Grantee, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Grantor pertaining to the income, expenses and operation of the Property during business hours at any office of Grantor where the books and records are located. This Section 7.6 shall apply throughout the term of the Loans and without regard to whether an Event of Default has occurred. Notwithstanding the foregoing, Grantee shall use commercially reasonable efforts not to unreasonably interfere with or interrupt Grantor's business operations when exercising its rights under this Section 7.6.

**Section 7.7    Other Rights, Etc.**

(a)    The failure of Grantee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Grantor shall not be relieved of Grantor's obligations hereunder by reason of (i) the failure of Grantee to comply with any request of Grantor or any guarantor or any indemnitor with respect to the Loans to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the other Credit Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Obligations or any portion thereof, or (iii) any

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2756**

agreement or stipulation by Grantee extending the time of payment or otherwise modifying or supplementing the terms of this Security Instrument or the other Credit Documents.

        (b)    It is agreed that the risk of loss or damage to the Property is on Grantor, and Grantee shall have no liability whatsoever for decline in value of the Property, for failure to maintain the insurance policies required to be maintained pursuant to the Credit Documents, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Grantee shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Grantee's possession.

        (c)    Grantee may resort for the payment of the Obligations to any other security held by Grantee in such order and manner as Grantee, in its discretion, may elect. Grantee may take action to recover the Obligations, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Grantee thereafter to foreclose this Security Instrument. The rights of Grantee under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Grantee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Grantee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

    **Section 7.8**    <u>Right to Release Any Portion of the Property</u>. Grantee may release any portion of the Property for such consideration as Grantee may require, without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Grantee for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Grantee may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

    **Section 7.9**    <u>Violation of Laws</u>. If the Property is not in material compliance with Legal Requirements, Grantee may impose additional reasonable requirements upon Grantor in connection therewith.

    **Section 7.10**    <u>Recourse and Choice of Remedies</u>. Notwithstanding any other provision of this Security Instrument or the Credit Agreement, including, without limitation, Section 10.14 of the Credit Agreement, to the fullest extent permitted by applicable law, Grantee and other Indemnitees (as hereinafter defined) are entitled to enforce the obligations of Grantor contained in <u>Sections 9.1, 9.2</u> and <u>9.3</u> herein and Section 10.14 of the Credit Agreement without first resorting to or exhausting any security or collateral and without first having recourse to the Notes or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Grantee commences a foreclosure action against the Property, Grantee is entitled to pursue a deficiency judgment with respect to such obligations against Grantor. The provisions of <u>Sections 9.1, 9.2</u> and <u>9.3</u> herein and Section 10.14 of the Credit Agreement are exceptions to any non-recourse or exculpation provisions in the Credit Agreement, the Notes, this Security Instrument or the other Credit Documents, and Grantor is fully and personally liable for the

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2757**

obligations pursuant to <u>Sections 9.1, 9.2</u> and <u>9.3</u> herein and Section 10.14 of the Credit Agreement. The liability of Grantor pursuant to <u>Sections 9.1, 9.2</u> and <u>9.3</u> herein and Section 10.14 of the Credit Agreement is not limited to the original principal amount of the Notes. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Grantee from foreclosing or exercising any other rights and remedies pursuant to the Credit Agreement, the Notes, this Security Instrument and the other Credit Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Grantor pursuant to <u>Sections 9.1, 9.2</u> and <u>9.3</u> herein and Section 10.14 of the Credit Agreement whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions. In addition, Grantee shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in <u>Article 9</u> herein.

Section 7.11  <u>**Right of Entry**</u>. Upon reasonable notice to Grantor, Grantee and its agents shall have the right to enter and inspect the Property at all reasonable times, subject to the terms and conditions of the Master Lease. Notwithstanding the foregoing, Grantee and its agents shall use commercially reasonable efforts not to unreasonably interfere with or interrupt Grantor's business operations when exercising its rights under this <u>Section 7.11</u>.

## ARTICLE VIII - PREPAYMENT

Section 8.1  <u>**Prepayment**</u>. The Obligations may not be prepaid in whole or in part except in accordance with the express terms and conditions of the Credit Agreement.

## ARTICLE IX - INDEMNIFICATION

Section 9.1  <u>**General Indemnification**</u>. Grantor shall, at its sole cost and expense, protect (with legal counsel reasonably acceptable to Grantee), defend, indemnify, release and hold harmless the Indemnitees from and against any and all claims, suits, liabilities, actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, damages, of whatever kind or nature (including but not limited to reasonable attorneys' fees and other costs of defense) (collectively, the "**Losses**") imposed upon or incurred by or asserted against any Indemnitees and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) ownership of this Security Instrument, the security interest in the Property or any interest therein or receipt of any Rents; (b) any amendment to, or restructuring of, the Obligations, the Credit Agreement, this Security Instrument, or any other Credit Document; (c) any and all lawful action that may be taken by Grantee in connection with the enforcement of the provisions of this Security Instrument, the Credit Agreement, or any of the other Credit Documents, whether or not suit is filed in connection with same, or in connection with Grantor, any guarantor or any indemnitor and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on, or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, nonuse or condition in, on, or about the Property or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2758**

or ways; (f) any failure on the part of Grantor to perform or be in compliance with any of the terms of this Security Instrument, the Credit Agreement or any of the other Credit Documents; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (h) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Security Instrument, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Security Instrument is made; (i) any failure of the Property to be in compliance with any Legal Requirements; (j) the enforcement by any Indemnitee of the provisions of this Article 9; (k) any and all claims and demands whatsoever which may be asserted against Grantee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (l) the payment of any commission, charge or brokerage fee to anyone claiming through Grantor which may be payable in connection with the funding of the Loan; or (m) any misrepresentation made by Grantor in this Security Instrument or the other Credit Documents; provided, in each case, that Grantor shall not have any obligation to any Indemnitee hereunder with respect to any Losses to the extent that such Losses arise from the bad faith, gross negligence or willful misconduct of Grantee, as determined by a court of competent jurisdiction in a final, non-appealable order, of that Indemnitee. Any losses incurred by Grantee by reason of the application of this Section 9.1 shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Grantee until paid. Notwithstanding the foregoing, Grantor shall not be liable for the payment of Losses to the extent the same arise as a result of the Indemnitee's gross negligence or willful misconduct.

Section 9.2    **Mortgage and/or Intangible Tax**.  Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnitees from and against any and all Losses imposed upon or incurred by or asserted against any Indemnitees and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument or any of the other Credit Documents, but excluding any income, franchise or other similar taxes.  Grantor hereby agrees that, in the event that it is determined that any documentary stamp taxes or intangible personal property taxes are due hereon or on any mortgage or promissory note executed in connection herewith (including, without limitation, the Notes), Grantor shall indemnify and hold harmless the Indemnitees for all such documentary stamp and/or intangible taxes, including all penalties and interest assessed or charged in connection therewith, if any, except for any penalties and interest that are caused by the willful misconduct or gross negligence of the Indemnitees.

Section 9.3    **Intentionally Deleted**.

Section 9.4    **Duty to Defend; Reasonable Attorneys' Fees and Other Fees and Expenses**.  Upon written request by any Indemnitee, Grantor shall defend such Indemnitee (if requested by any Indemnitee, in the name of the Indemnitee) by attorneys and other professionals approved by the Indemnitees, from and against any Losses.  Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Grantor and any Indemnitee and Grantor and such Indemnitee shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnitees that are different from or additional to those available to Grantor,

GS/RT – Security Instrument (RT Lodge)

such Indemnitee shall have the right, at Grantor's sole expense, to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnitee, provided that no compromise or settlement shall be entered without Grantor's consent, which consent shall not be unreasonably withheld. Upon demand, Grantor shall pay or, in the sole and absolute discretion of the Indemnitees, reimburse, the Indemnitees for the payment of reasonable fees and out-of-pocket expenses of attorneys, engineers, environmental consultants, and other professionals in connection therewith.

## ARTICLE X - WAIVERS

**Section 10.1   Waiver of Counterclaim.**  To the fullest extent permitted by applicable law, Grantor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Grantee arising out of or in any way connected with this Security Instrument, the Credit Agreement, any of the other Credit Documents, or the Obligations.

**Section 10.2   Marshalling and Other Matters.**  To the fullest extent permitted by applicable law, Grantor hereby waives the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Grantor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Grantor, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons.

**Section 10.3   Waiver of Notice.**  To the extent permitted by applicable law, Grantor shall not be entitled to any notices of any nature whatsoever from Grantee except with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Grantee to Grantor and except with respect to matters for which Grantee is required by applicable law to give notice, and Grantor hereby expressly waives the right to receive any notice from Grantee with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Grantee to Grantor.

**Section 10.4   Waiver of Statute of Limitations.**  To the fullest extent permitted by applicable law, Grantor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Obligations or performance of its Other Obligations.

**Section 10.5   Survival.**  The indemnifications made pursuant to Sections 9.1, 9.2 and 9.3 herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by any of the following: any satisfaction or other termination of this Security Instrument, any assignment or other transfer of all or any portion of this Security Instrument or Grantee's interest in the Property (but, in such case, shall benefit both Indemnitees and any assignee or transferee), any exercise of Grantee's rights and remedies pursuant hereto including, but not limited to, foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Credit Agreement or any of the other Credit Documents, any transfer of

GS/RT – Security Instrument (RT Lodge)

all or any portion of the Property (whether by Grantor or by Grantee following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Security Instrument, the Credit Agreement or the other Credit Documents, and any act or omission that might otherwise be construed as a release or discharge of Grantor from the obligations pursuant hereto.

## ARTICLE XI - EXCULPATION

The provisions of Section 10.3 of the Credit Agreement are hereby incorporated by reference into this Security Instrument to the same extent and with the same force as if fully set forth herein.

## ARTICLE XII - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 10.1 of the Credit Agreement; provided that any notice or other written communication to Trustee shall be delivered to Trustee at the address set forth on page 1 hereof.

## ARTICLE XIII - APPLICABLE LAW

Section 13.1   Governing Law. This Security Instrument shall be governed in accordance with the terms and provisions of Section 10.14 of the Credit Agreement; provided that the provisions of this Security Instrument regarding the creation, perfection and enforcement of the Liens and security interests herein granted shall be governed by and construed under the laws of the state in which the Property is located.

Section 13.2   Usury Laws. Notwithstanding anything to the contrary, (a) all agreements and communications between Grantor and Grantee are hereby and shall automatically be limited so that, after taking into account all amounts deemed interest, the interest contracted for, charged or received by Grantee shall never exceed the maximum lawful rate or amount, (b) in calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Grantor to Grantee, and (c) if through any contingency or event, Grantee receives or is deemed to receive interest in excess of the lawful maximum, any such excess shall be deemed to have been applied toward payment of the principal of any and all then outstanding indebtedness of Grantor to Grantee, or if there is no such indebtedness, shall immediately be returned to Grantor.

Section 13.3   Provisions Subject to Applicable Law. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

GS/RT – Security Instrument (RT Lodge)

Record Book 2604 Page 2761

## ARTICLE XIV - DEFINITIONS

All capitalized terms not defined herein shall have the respective meanings set forth in the Credit Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "**Grantor**" shall mean "the Grantor and any subsequent owner or owners of the Property or any part thereof or any interest therein (other than Grantee, its designee or any Person that acquires title to all or any portion of the Property from Grantee or such designee)", the word "**Grantor**" shall mean "the Grantor" together with its successors and assigns, the word "**Grantee**" shall mean "Grantee and any of Grantee's successors and assigns," the word "**Note**" shall mean "the Notes and any other evidence of indebtedness secured by this Security Instrument," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**legal fees**" and "**counsel fees**" shall include any and all attorneys', paralegal fees and out-of-pocket expenses, including, but not limited to, fees and out-of-pocket expenses at the pre-trial, trial and appellate levels incurred or paid by Grantee in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE XV - MISCELLANEOUS PROVISIONS

**Section 15.1    No Oral Change**.  This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Grantor or Grantee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 15.2    Successors and Assigns**.  This Security Instrument shall be binding upon and inure to the benefit of Grantor and Grantee and their respective successors and assigns forever.

**Section 15.3    Inapplicable Provisions**.  If any term, covenant or condition of the Credit Agreement, this Security Instrument, or any of the other Credit Documents is held to be invalid, illegal or unenforceable in any respect, the Credit Agreement, this Security Instrument, and the other Credit Documents shall be construed without such provision.

**Section 15.4    Headings, Etc.**  The headings and captions of various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5    Number and Gender**.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6    Subrogation**.  If any or all of the proceeds of the Notes have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Grantee shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but

GS/RT – Security Instrument (RT Lodge)

rather are continued in full force and effect in favor of Grantee and are merged with the lien and security interest created herein as cumulative security for the repayment of the Obligations, the performance and discharge of Grantor's obligations hereunder, under the Credit Agreement, the Notes and the other Credit Documents and the performance and discharge of the Other Obligations.

**Section 15.7    Entire Agreement.** The Credit Agreement, this Security Instrument and the other Credit Documents constitute the entire understanding and agreement between Grantor and Grantee with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Grantor and Grantee with respect thereto. Grantor hereby acknowledges that, except as incorporated in writing in the Credit Agreement, this Security Instrument and the other Credit Documents, there are not, and were not, and no persons are or were authorized by Grantee to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Credit Agreement, this Security Instrument and the other Credit Documents.

**Section 15.8    Lien Absolute.** Grantor acknowledges that this Security Instrument and a number of other Credit Documents and those documents required by the Credit Documents together secure the Obligations. Grantor agrees that, to the extent permitted by law, the lien of this Security Instrument and all obligations of Grantor hereunder shall be absolute and unconditional and shall not in any manner be affected or impaired by:

(i)    any lack of validity or enforceability of the Credit Agreement or any other Credit Document, any agreement with respect to any of the Obligations or any other agreement or instrument relating to any of the foregoing;

(ii)    any acceptance by Grantee of any security for or guarantees of any of the Obligations;

(iii)    any failure, neglect or omission on the part of Grantee to realize upon or protect any of the Obligations or any of the collateral security therefor, including the Credit Documents, or due to any other circumstance that might otherwise constitute a defense available to, or a discharge of, Grantor in respect of the Obligations and Obligations hereby secured or any collateral security therefor, including the Credit Documents, or due to any other circumstance that might otherwise constitute a defense available to, or a discharge of, Grantor in respect of the Obligations or this Security Instrument (other than the indefeasible payment in full in cash of all the Obligations hereby secured);

(iv)    any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations;

(v)    any release (except as to the property released), sale, pledge, surrender, compromise, settlement, nonperfection, renewal, extension, indulgence, alteration, exchange, modification or disposition of any of Obligations hereby secured or of any of the collateral security therefor;

GS/RT – Security Instrument (RT Lodge)

(vi)    any amendment or waiver of or any consent to any departure from the Credit Agreement or any other Credit Documents or of any guaranty thereof, if any, and Grantee may in its discretion foreclose, exercise any power of sale, or exercise any other remedy available to it under any or all of the Credit Documents without first exercising or enforcing any of its rights and remedies hereunder; and

(vii)    any exercise of the rights or remedies of Grantee hereunder or under any or all of the Credit Documents.

Section 15.9    **Release of Security Instrument.** Notwithstanding anything to the contrary contained herein, Grantee shall promptly deliver to Grantor, in proper recordable form and otherwise in form and substance reasonably acceptable to Grantor, a full satisfaction and release of this Security Instrument and any other security documents affecting the Property upon a permitted sale of the Property or a mandatory prepayment pursuant to Section 5.3 and application of the proceeds of such permitted sale of the Property or such mandatory prepayment in accordance with and pursuant to the terms of the Credit Agreement.

Section 15.10    **Limitation on Grantee's Responsibility.**  No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Grantee, nor shall it operate to make Grantee responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Grantee a "mortgagee in possession."

Section 15.11    **Last Dollars Secured.**  The parties agree that any payments or repayments of the Obligations shall be and be deemed to be applied first to the portion of the Obligations that is not secured by a mortgage, if any, it being the parties' intent that the portion of the Obligations last remaining unpaid shall be secured by this Security Instrument and the other mortgages contained within the Credit Documents.

Section 15.12    **Multiple Exercise of Remedies.**  To the extent permitted by law, Grantor specifically consents and agrees that Grantee may exercise rights and remedies hereunder and under the other Credit Documents separately or concurrently and in any order that Grantee may deem appropriate.

Section 15.13    **Counterparts.**  This Security Instrument may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

Section 15.14    **Conflict of Terms.**  In the event of any conflict between the terms of this Security Instrument and the terms of the Credit Agreement, the terms of the Credit Agreement shall control.

GS/RT – Security Instrument (RT Lodge)

Record Book 2604 Page 2764

## ARTICLE XVI - MASTER LEASE PROVISIONS

**Section 16.1    No Merger of Fee and Leasehold Estates; Releases.**  So long as any portion of the Indebtedness shall remain unpaid, unless Grantee shall otherwise consent, the fee title to the Land and the Leasehold Estate shall not merge but shall always be kept separate and distinct, notwithstanding the union of such estates in Grantor, Landlord or in any other Person by purchase, operation of law or otherwise. Grantee reserves the right, at any time, to release portions of the Property, including, but not limited to, the Leasehold Estate, with or without consideration, at Grantee's election, without waiving or affecting any of its rights hereunder or under the Credit Documents and any such release shall not affect Grantee's rights in connection with the portion of the Property not so released.

**Section 16.2    Grantor's Acquisition of Fee Estate.**  In the event that Grantor, so long as any portion of the Indebtedness remains unpaid and this Security Instrument has not been released pursuant to the terms of Section 15.9, shall become the owner and holder of Landlord's fee interest in the portion of the Property demised pursuant to the Master Lease, the lien of this Security Instrument shall be spread to cover such interest and such interest shall be deemed to be included in the Property. Grantor agrees that it will, upon Grantee's request, but at Grantor's sole cost and expense, including without limitation, Grantee's reasonable attorney's fees, (i) execute any and all documents or instruments necessary to subject the foregoing interest to the lien of this Security Instrument; and (ii) provide a title insurance policy which shall insure that the lien of this Security Instrument is a first lien on such interest. The foregoing shall not be construed to permit Grantor to acquire the aforesaid fee interest and Grantor rights to acquire additional property shall remain subject to the restrictions relating thereto, if any, contained in the Credit Agreement and the other Credit Documents.

**Section 16.3    Rejection of the Master Lease.**

(a)    If the Master Lease is terminated by Landlord for any reason in the event of the rejection or disaffirmance of the Master Lease by Landlord pursuant to the Bankruptcy Code or any other law affecting creditor's rights, (i) Grantor, immediately after obtaining notice thereof, shall give notice thereof to Grantee, (ii) Grantor, without the prior written consent of Grantee, not to be unreasonably withheld or delayed, shall not elect to treat the Master Lease as terminated pursuant to Section 365(h) of the Bankruptcy Code or any comparable federal or state statute or law, and any election by Grantor made without such consent shall be void, and (iii) this Security Instrument and all the liens, terms, covenants and conditions of this Security Instrument shall extend to and cover Grantor's possessory rights under Section 365(h) of the Bankruptcy Code and to any claim for damages due to the rejection of the Master Lease or other termination of the Master Lease. In addition, Grantor hereby assigns irrevocably to Grantee Grantor's rights to treat the Master Lease as terminated pursuant to Section 365(h) of the Bankruptcy Code and to offset rents under the Master Lease in the event any case, proceeding or other action is commenced by or against Landlord under the Bankruptcy Code or any comparable federal or state statute or law, provided that Grantee shall not exercise such rights and shall permit Grantor to exercise such rights with the prior written consent of Grantee, not to be unreasonably withheld or delayed, unless an Event of Default shall have occurred and be continuing, subject to any grace or cure periods in any Credit Document.

GS/RT – Security Instrument (RT Lodge)

Record Book 2604 Page 2765

(b)     Grantor hereby assigns to Grantee Grantor's right to reject the Master Lease under Section 365 of the Bankruptcy Code or any comparable federal or state statute or law with respect to any case, proceeding or other action commenced by or against Grantor under the Bankruptcy Code or comparable federal or state statute or law, provided Grantee shall not exercise such right, and shall permit Grantor to exercise such right with the prior written consent of Grantee, not to be unreasonably withheld or delayed, unless an Event of Default shall have occurred and be continuing, subject to any grace or cure periods in any Credit Document. Further, if Grantor shall desire to so reject the Master Lease, at Grantee's request, to the extent not prohibited by the terms of the Master Lease and applicable law, Grantor shall assign its interest in the Master Lease to Grantee in lieu of rejecting the Master Lease as described above and Grantee shall assume Grantor's obligations in the Master Lease, upon receipt by Grantor of written notice from Grantee of such request together with Grantee's agreement to cure any existing defaults of Grantor under the Master Lease and to provide adequate assurance of future performance of Grantor's obligations thereunder.

(c)     Grantor hereby assigns to Grantee Grantor's right to seek an extension of the 60-day period within which Grantor must accept or reject the Master Lease under Section 365 of the Bankruptcy Code or any comparable federal or state statute or law with respect to any case, proceeding or other action commenced by or against Grantor under the Bankruptcy Code or comparable federal or state statute or law, provided Grantee shall not exercise such right, and shall permit Grantor to exercise such right with the prior written consent of Grantee, not to be unreasonably withheld or delayed, unless an Event of Default shall have occurred and be continuing, subject to any grace or cure periods in any Credit Document.

(d)     Grantor hereby agrees that if the Master Lease is terminated for any reason in the event of the rejection or disaffirmance of the Master Lease pursuant to the Bankruptcy Code or any other law affecting creditor's rights, any Personal Property of Grantor not removed from the Property by Grantor as permitted or required by the Master Lease, shall at the option of Grantee be deemed abandoned by Grantor, provided that Grantee may remove any such Personal Property required to be removed by Grantor pursuant to the Master Lease and all reasonable out-of-pocket costs and expenses associated with such removal shall be paid by Grantor within fifteen (15) days of receipt by Grantor of an invoice for such removal costs and expenses.

## ARTICLE XVII - DEED OF TRUST PROVISIONS

**Section 17.1    Concerning the Trustee**. Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for bad faith, gross negligence or willful misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof. Trustee may resign at any time upon giving thirty (30) days' notice to Grantor and to Grantee. Grantee may remove Trustee at any time or from time to time and select a successor trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever Grantee may, without

GS/RT – Security Instrument (RT Lodge)

Record Book 2604 Page 2766

notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Grantee. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.

Section 17.2    Trustee's Fees.  Grantor shall pay all reasonable costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

Section 17.3    Certain Rights.  With the approval of Grantee, Trustee shall have the right to take any and all of the following actions:  (a) to select, employ, and advise with counsel (who may be, but need not be, counsel for Grantee) upon any matters arising hereunder, including the preparation, execution, and interpretation of the this Security Instrument or the other Credit Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (b) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his/her agents or attorneys, (c) to select and employ, in and about the execution of his/her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable for any act, default, negligence, or misconduct of any accountant, engineer or other expert, agent or attorney-in-fact under any circumstances whatsoever, except for Trustee's gross negligence, willful misconduct, or bad faith and (d) any and all other lawful action as Grantee may instruct Trustee to take to protect or enforce Grantee's rights hereunder.  Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property, except for Trustee's bad faith, gross negligence or willful misconduct.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting an action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for actual reasonable expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.

Section 17.4    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law) and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

Section 17.5    Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be reasonably required from Grantor by any Trustee or substitute trustee to more

GS/RT – Security Instrument (RT Lodge)

-28-

fully and certainly vest in and confirm to the Trustee or substitute trustee such estates rights, powers, and duties granted hereunder, then, upon request by the Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Grantor.

**Section 17.6   Succession Instruments**. Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his/her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Grantee or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in the Trustee's place.

## ARTICLE XVIII - STATE-SPECIFIC PROVISIONS

**Section 18.1   Principles of Construction**. In the event of any inconsistencies between the terms and conditions of this Article 18 and the terms and conditions of this Security Instrument, the terms and conditions of this Article 18 shall control and be binding.

**Section 18.2**   The words "the statutory right of redemption under Tennessee Code Annotated Section 66-8-101, and" are hereby inserted after the words "Grantor hereby expressly waives" in Section 10.2 of this Security Instrument.

**Section 18.3   Foreclosure.** Upon the occurrence and during the continuance of any Event of Default, subject to any applicable grace or cure periods in any Credit Document, Grantee may require Trustee (a) to advertise the sale of the Property or any part thereof once each week for three (3) consecutive weeks, giving notice of time, place and date of sale, which shall be not less than twenty-one (21) days after the publication of the first notice in some newspaper published in the County where the Property is located, (b) to give written notice to Grantor and to any co-debtor prior to such publication, and (c) to sell all or part of the Property, at public auction, to the highest bidder for cash (or for credit against the Obligations if Grantee is the highest bidder) or upon such other terms that are satisfactory to Trustee and Grantee, free from the equity of redemption and any statutory or common law right of redemption, including, without limitation, those rights of redemption contained in Tennessee Code Annotated Section 66-8-101 et seq., homestead, dower, elective share and rights of appraisement or valuation and all other rights and exemptions of every kind (all of which are hereby expressly waived), at the front door of the County Courthouse of the County where the Property is located, between the hours of 10:00 A.M. and 4:00 P.M. of the day fixed in the notices. Trustee may sell all or any portion of the Property, together or in lots or parcels, and may execute and deliver to the purchaser or purchasers of such property good and sufficient deeds of conveyance of fee simple title as provided herein below.  In no event shall Trustee be required to exhibit, present or display at any such sale any of the personalty described herein to be sold at such sale.  Notwithstanding the foregoing, the real property and personalty described herein may, at Grantee's sole option, be sold together or separately, in whole or in part,

GS/RT – Security Instrument (RT Lodge)

-29-

in bulk or individually, or in any combination thereof. Payment of the purchase price to Trustee shall satisfy the obligation of the purchaser at such sale therefor, and such purchaser shall not be responsible for the application thereof. The sale or sales by Trustee of less than the whole of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make a successive sale or sales under such power until the whole of the Property shall be sold; and if the proceeds of such sale or sales of less than the whole of the Property shall be less than the aggregate of the Obligations and the expenses thereof, this Security Instrument and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale or sales had been made. Upon the occurrence and during the continuance of any Event of Default, subject to any applicable grace or cure periods in any Credit Document, the holder of the Obligations shall have the option to proceed with satisfaction of such Event of Default either through judicial proceedings or by directing Trustee to proceed to foreclose pursuant to the power of sale, conducting the sale as herein provided. At any such sale Trustee shall deliver to the purchaser a trustee's deed conveying the property so sold without any covenant or warranty expressed or implied. Grantor hereby agrees, in its behalf and in behalf of its successors and assigns, that any and all recitals made in any deed of conveyance given by trustee with respect to the identity of Grantee, the occurrence or existence of any default, the acceleration of the maturity of any of the Obligations, the request to sell, the notice of sale, the giving of notice to all debtors legally entitled thereto, the time, place, terms, and manner of sale, receipt, distribution and application of the money realized therefrom, or the due and proper appointment of a substitute Trustee and, without being limited by the foregoing, with respect to any other act or thing having been duly done by Grantee or by Trustee hereunder, shall be taken by all courts of law and equity as prima facie evidence of the truth of such statements and that the statements or recitals state facts and are without further question to be so accepted, and Grantor hereby ratifies and confirms every act that Trustee or any substitute Trustee hereunder may lawfully do in the Property by virtue hereof, Grantee or Grantee's designee may bid and become the purchaser of all or any part of the Property at any trustee's or foreclosure sale hereunder, and the amount of Grantee's successful bid may be credited on the Obligations. In the event Grantee purchases the Property at any such sale, to the extent Grantee's bid price exceeds the Obligations, Grantee shall pay the Trustee cash equal to such excess, to be applied as set forth herein. In addition, Grantee may pursue such other remedies as Grantee may have under applicable law.

   **Section 18.4**   Section 10.4 of the Security Instrument entitled "**Waiver of Statute of Limitations**" shall be renamed "**Waivers**" and the following shall be added at the end of the paragraph after the word "Obligations":

"and all rights of exemption or redemption, including the statutory right of redemption in Tennessee".

**[NO FURTHER TEXT ON THIS PAGE]**

GS/RT – Security Instrument (RT Lodge)

**Record Book 2604 Page 2769**

**IN WITNESS WHEREOF**, this Security Instrument has been executed by Grantor as of the day and year first above written.

RUBY TUESDAY, INC., a Georgia
corporation

By: _____

Name: Shawn Lederman
Title: Chief Executive Officer

## ACKNOWLEDGMENT

STATE OF _Tennessee_          §
                              §
COUNTY OF _Blount_            §

Before me the undersigned, a Notary Public in and for said County and State, on this day personally appeared Shawn Lederman, the Chief Executive Officer of Ruby Tuesday, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, and thereupon he acknowledged that he was authorized to execute the within instrument on behalf of said corporation, and that he executed said instrument as the voluntary act of the said corporation, and for the purposes and consideration expressed therein and in the capacity stated therein.

Given under my hand and seal of office this _11_ day of August, 2020.

(Seal)

CLARA K. HEATON
STATE
OF
TENNESSEE
NOTARY
PUBLIC

_____, Notary Public

_Clara K Heaton_
(signature of Notary Public)

My Commission Expires: _Jan. 30, 2021_

EXHIBIT A

LEGAL DESCRIPTION

SITUATED in District No. 9 of Blount County, Tennessee, and being more particularly described as follows:

BEGINNING at a 1/2 inch New Iron Rod along the northerly side of Wilkinson Pike and corner to the remaining property of Maryville College, said New Iron Rod lying S. 86-37-50 E. 406.82 feet from the intersection of said Wilkinson Pike and Court Street; thence departing said Wilkinson Pike N. 11-36-09 E. with the remaining property of Maryville College 552.35 feet to a 1/2 inch New Iron Rod; thence N. 40-40-47 E. continuing with the remaining property of said Maryville College, 420.28 feet to a 1/2 inch New Iron Rod; thence S. 52-18-50 E. continuing with the remaining property of said Maryville College 200.00 feet to a 1/2 inch New Iron Rod; thence S. 08-26-03 W. continuing with the remaining property of said Maryville College 783.13 feet to a 1/2 inch New Iron Rod along the northerly side of said Wilkinson Pike; thence N. 85-02-45 W. along the northerly side of said Wilkinson Pike, 430.06 feet to a 1/2 inch New Iron Rod and the point of beginning and containing 7.256 acres more or less, as surveyed by Sterling Engineering, Inc.

TOGETHER WITH easements further described in said lease.

Being the same property in Memorandum of Lease between Maryville College, a Tennessee corporation (Lessor) and Ruby Tuesday, Inc., a Georgia corporation (Lessee) of record in Book 147, Page 560, in the Register's Office for Blount County, Tennessee, as amended by the Amended and Restated Memorandum of Lease of record in Record Book 2599, Page 2856, in the Register's Office for Blount County, Tennessee.

Being a portion of the same property conveyed to Maryville College by Deeds in Book 456, Page 820; Book BB, Page 471; Book II, Page 281; Book 99, Page 128; Book 113, Page 156, and Book 461, Page 825, in the Register's Office for Blount County, Tennessee.

GS/RT – Security Instrument (RT Lodge)

Record Book 2604 Page 2771

## Tennessee Certification of Electronic Document

I, _____Jana Vernese fka Morris_____ , do hereby make oath that I am a licensed attorney and/or the
*Signer's Name*

custodian of the electronic version of the attached document tendered for registration herewith and that this

is a true and correct copy of the original document executed and authenticated according to law.

_____
*Signature*

State of _____Florida_____

County of _____Palm Beach_____

Personally appeared before me, _____Jessica Heard_____ , a notary public for this county and
*Notary's Name*

state, _____Jana Hutchins_____ , who acknowledges that this certification of an electronic
*Signer's Name*

document is true and correct and whose signature I have witnessed.

_____
*Notary Signature*

MY COMMISSION EXPIRES: _____12.18.20_____

NOTARY'S SEAL

```
JESSICA LEE HEARD
MY COMMISSION # GG 033304
EXPIRES: December 18, 2020
Bonded Thru Notary Public Underwriters
```

(3) All electronic documents eligible for registration pursuant to this subsection are validly registered when

accepted for recording by the county register. Electronic documents registered by county registrars prior to

July 1, 2007 shall be considered validly registered with or without the certification provided in subsection (2).

Record Book 2604 Page 2772