# <u>EXHIBIT A</u>

# GROUND LEASE
**(Free Standing)**

between

## CHESTER C. FOSGATE CO,
a Florida corporation
**as Landlord**

and

## R. T. ORLANDO FRANCHISE, L.P.,
a Florida limited partnership,
**as Tenant**

**Property:**

**Highway 50 and Hancock Road**
**Clermont, Lake County, Florida**

Restaurant Type: 5400 Prototype
Site No.: HC-7182
Clermont, Florida

## GROUND LEASE
### (Free Standing)

### BASIC PROVISIONS

This Lease is between **R. T. ORLANDO FRANCHISE, L.P.**, a Florida limited partnership as Tenant, and the Landlord identified below. Defined terms are shown in boldface type when first used. Definitions are in these Basic Provisions or in the attached General Provisions.

Landlord leases the Premises to Tenant and Tenant leases the Premises from Landlord subject to all provisions of this Lease.

1.    Date of this Lease for reference purposes: April 11, 2003, ~~2002~~

2.    Landlord:    Chester C. Fosgate Company, a Florida corporation

3.    Landlord's federal tax identification number: 59-0250670

4.    Landlord's address for notices:

      908 South Delaney Ave.
      Orlando, FL. 32806

5.    Landlord's address for payment of rent:

      908 South Delaney Ave.
      Orlando, FL. 32806

6.    Landlord's telephone: 407-422-3144
      Landlord's facsimile: 407-422-3155

7.    Tenant's address for notices:

      8042 Monier Way
      Orlando, Florida  32835

      Site Number:    HC-7182

8.    Tenant's telephone: (407) 297-6568   Tenant's facsimile: (407) 297-6920

9.    Premises address:

\390009\1 - # 59664 v8                     -2-

Street:  State Road 50

County:  Lake          City:  Clermont          State:  Florida

10.     Approximate dimensions of the Premises:

See Exhibit A attached hereto.

11.     Important Dates:

11.1    **Effective Date.**
The date on which both Landlord and Tenant have signed this Lease and a signed original copy is received by Tenant's Legal Counsel.

11.2    **Rent Commencement Date.**
The earlier of  (i) the date upon which Tenant receives all permits and approvals necessary to construct 5,500 sq. ft. Ruby Tuesday Restaurant facility or (ii) that date which is 270 days from but not including the Effective Date of this Lease.

11.3    **Inspection Contingency Period** expires 120 days after the Effective Date.

11.4    **Permitting Contingency Period** expires 90 days after the Inspection Contingency Period.

12.     Initial Term of this Lease is: **20 Lease Years**.

13.     Rent

| Lease Year | Amount PerMonth | Amount Per Year |
|------------|-----------------|-----------------|
| 1-5        | $5,833.33       | $70,000.00      |
| 6-10       | $6,416.67       | $77,000.00      |
| 11-15      | $7,058.33       | $84,700.00      |
| 16-20      | $7,764.17       | $93,170.00      |

14.     Options to extend the Term for four (4) additional five (5) year periods on terms as stated in Exhibit entitled "Option to Extend the Term."

15.     Insurance coverages: Liability $2,000,000.00, Casualty one hundred percent (100%) of replacement value of Tenant Improvements.

16.    Landlord's Broker:  Maury L. Carter & Associates, Inc.

17.    Tenant's Broker: Coldwell Banker

18.    Amendments:  See Lease Rider attached hereto.

This Lease consists of the foregoing **Basic Provisions**, the following **General Provisions**, the **Exhibits** listed below, the Lease Rider attached hereto, and a **Memorandum of Lease** described at Section ~~30~~ 28(7) of the General Provisions, and attached hereto as **Exhibit "D"**, all of which are incorporated herein by this reference.  If there are any inconsistencies between Basic Provisions and the General Provisions, the General Provisions shall prevail.  If there are any inconsistencies between the Exhibits and the Basic Provisions or General Provisions, then the Exhibits shall prevail.   If there are any inconsistencies between the Basic Provisions, the General Provisions or the Exhibits and the Lease Rider, the Lease Rider shall prevail.

All rights and duties under this Lease, except the duty to pay rent and taxes, are effective on the Effective Date.  Tenant's duty to pay rent and taxes starts on the Rent Commencement Date.

**Exhibit List**

1.    *Exhibit "A"*        Plot Plan or Sketch of Premises

2.    *Exhibit "A-1"*      Tenant Exclusives/Use Restrictions

3.    *Exhibit "B"*        Option to Extend the Term

4.    *Exhibit "C"*        Permitted Exceptions

5.    *Exhibit "D"*        Memorandum of Lease

Signed, sealed and delivered
in the presence of:

**Signature of Tenant:**

R. T. ORLANDO FRANCHISE, L.P., a
Florida limited partnership

By:    R.   MANNING,   INC.,   a   Florida
corporation

Name: _____
Print or Type Name _Craig Allen_

By: _____
Ray Manning, President

Name: _____
Print or Type Name _Tammy Hudson_

Date: _____, 2002

**Signature of Landlord:**

**CHESTER C. FOSGATE CO.**, a Florida
corporation

Name: _____
Print or Type Name: _Patrick Chisholm_

By: _____
Daryl M. Carter, Vice President
Name: _____
Title: _____

Name: _____
Print or Type Name: _Preston Hage_

Date: _3/28/03_, ~~2002~~

## GENERAL PROVISIONS

1.    **General Definitions**.

(1)    ***Inspection Period***.  The Inspection Period is the period described in the Basic Provisions during which Tenant shall perform all inspections, tests**, review of restrictions set forth on Exhibit "A-1"** and investigations on the Premises that Tenant so desires in Tenant's sole discretion.

(2)    ***Lease Year.***  A Lease Year consists of twelve (12) consecutive calendar months beginning on the Rent Commencement Date and each anniversary thereof.

(3)    ***Permits.***  Permits are all authorizations and approvals issued by government agencies and necessary for Tenant to install Tenant Improvements and operate its business on the Premises such as a zoning change, variance, use permit, environmental law compliance, liquor license, site plan approval, parking approval, sign approval, curb cut and other access approval, utility connection permit, and building permit.

(4)    ***Permitting Period.***  The Permitting Period is the period described in the Basic Provisions, during which Tenant shall apply for and take reasonable steps to obtain all Permits.

(5)    **Tenant Improvements.**  Tenant Improvements shall mean all buildings, installations, structures and equipment and all their components and all identification, advertising and directional signs and media required by Tenant to be located on the Premises.  All Tenant Improvements shall be the property of Tenant.  Upon termination of this Lease the Tenant Improvements except trade fixtures shall become the property of Landlord, subject to Section 13 of this Lease. Title to the building and all other improvements on the Leased Premises and any repairs, alterations, additions or improvements to said building or improvements shall be vested in and remain in Tenant at all times during the original term of this Lease and any renewal or extension thereof.  Upon the expiration of this Lease, any extension or renewal hereof, or its termination in any way, title to the building and any improvements shall automatically pass to and become vested in the Landlord and Tenant shall, upon request of Landlord, execute such quit claim deed, bill of sale, or assignment as may be necessary to evidence the transfer of such title to Landlord.

2.    **Premises**. The Premises or "Leased Premises" are described in the Basic Provisions.  A legal description of the Premises will be determined by the survey prepared by Landlord during the Inspection Period and will be included by Tenant in the memorandum of lease to be executed by the parties.  The legal description attached to the memorandum of lease will then be the legal description for the Premises.

3.    **Use**.  Tenant agrees that it will use the Premises solely for the purpose of conducting a restaurant or food service facility, including the preparation and handling of all types of food and food products, including liquor, beer and wine for on-premises

\390009\1 - # 59664 v8                                   -6-

consumption as determined by Tenant; and the carrying on of catering service, the sale of novelties, wearables, and other merchandise reasonably related to, and being only an incidental part of the Tenant's business. Tenant acknowledges that Tenant's use and occupancy of the Premises is subject to the terms of that certain Operation and Easement Agreement between Target Corporation and Landlord, dated February 11, 2002 and recorded in Official Records Book 2069, Page 449, Public Records of Lake County, Florida (the "OEA"). Tenant agrees that Tenant's use of the Premises shall comply with the provisions of the OEA, and that Tenant shall comply with the provisions of the OEA applicable to the Premises. In addition, this Lease is subject to an access, ingress, and egress easement over the accessways and driveways as constructed upon the Premise for the benefit of adjoining outparcels and the Shopping Center of which the Premises are a part.

4.    **Assignment, Subleasing and Hypothecation.** Tenant must notify Landlord in writing with the name, address and phone number of any proposed tenant assignee, and deliver an assignment of this Lease, duly executed by the Tenant and Tenant's assignee. Tenant shall have the right to assign this Lease, sublease the Premises, or convey all or any portion of its ownership interests to a third party, provided that such assignee, sublessee or transferee agrees to comply with the terms of the Lease. In such an event, Tenant will remain liable for payment of all amounts due and for all obligations under this Lease if unpaid or not performed by the assignee or subtenant. Any other assignment or subletting shall be subject to and conditioned upon Landlord's prior written consent, which consent shall be in Landlord's sole but reasonable discretion.

Tenant may mortgage, encumber, pledge or assign as security its right, title and interest in this Lease or the Collateral (as hereinafter defined) to a Lender. Tenant shall give to Landlord a notice containing the name and address of the Lender, and promptly give Landlord notice of any change to Lender's name and/or address. Whenever Landlord gives any notice to Tenant pursuant to this Lease, Landlord shall give to Lender a duplicate copy of such notice at such address in the manner required of notices hereunder. If the notice given by Landlord is a notice of default by Tenant, Lender shall have a reasonable time of not less than twenty (20) business days to cure any default not timely cured by Tenant. If Lender timely cures any default not timely cured by Tenant, Lender shall be entitled to assume Tenant's interest and obligations under this Lease immediately upon such cure and for the remainder of the term, together with any option, renewal or extension rights set forth in this Lease; provided that Lender shall not acquire any franchise rights pertaining to the Premises. Landlord hereby consents to the collateral and conditional assignment by Tenant of its rights to use the Premises under the Lease and all of Tenant's personal property and trade fixtures located at the Premises (referred hereafter as "Collateral") to Lender. Landlord further consents to the execution and performance by Tenant of any recordable leasehold mortgage, deed of trust, collateral assignment of lease and any other documentation reasonably required by Lender. Landlord agrees that none of the Collateral located on the Premises, notwithstanding the manner in which any of the Collateral may be affixed to the Premises, shall be deemed to be fixtures or constitute part of the Premises. Landlord agrees to subordinate any statutory, consensual or other liens in favor of Landlord against the Collateral. If Tenant defaults on its obligations to Lender, and as a result, Lender undertakes

to enforce its security interest in the Collateral, Landlord will permit Lender and its agents to enter upon and remain on the Premises to remove or otherwise dispose of the Collateral; provided (a) Landlord receives the rental and other amounts due under the Lease and (b) any damages to the Premises caused by removal of the Collateral are repaired by Lender at Lender's sole cost and expense.

5.    **Inspection by Tenant.**

(1)    ***Landlord Providing Information.*** Within seven (7) days after the Effective Date, Landlord shall provide Tenant with legible copies of the following items in Landlord's possession, or available to Landlord, whether they are applicable solely to the Premises or to a larger parcel of which the Premises are a part: (a) Landlord's policy of title insurance; (b) all engineering surveys; (c) all soil tests and reports, prepared to determine compaction, soil composition, Contamination (as hereinafter defined); and (d) all other consultant third party studies related to the physical condition of the Property. If any of the foregoing items are not available during the Inspection Period but become available prior to the Rent Commencement Date, Landlord shall promptly provide them to Tenant. Landlord shall also provide Tenant with all other information Landlord may have in its possession concerning the Premises as Tenant may reasonably request.

(2)    ***Tenant Obtaining Information.*** During the Inspection Period, Tenant shall (a) obtain all information deemed necessary by Tenant to investigate the Premises and complete its review of such information; and (b) Tenant shall perform such tests and inspections of the Premises as Tenant deems necessary. Tenant may enter the Premises and conduct all tests Tenant deems necessary. Tenant shall keep the Premises free of all mechanics liens and claims resulting from Tenant's inspection and testing on the Premises. Tenant shall indemnify and hold Landlord harmless from and against any and all claims against Landlord or the Premises arising out of Tenant's inspection of the Premises and all damages, costs and expenses, including attorneys' fees and costs, incurred by Landlord related thereto. The foregoing indemnity shall survive expiration or termination of this Lease.

Notwithstanding the foregoing, Tenant shall have no duty to indemnify Landlord against pre-existing conditions discovered during Tenant's inspection of the Premises. Should Tenant encounter or discover any pre-existing Contamination on the Premises during Tenant's inspection of the Premises, Tenant shall promptly notify Landlord in writing, and provide Landlord with a copy of Tenant's report or study evidencing such pre-existing Contamination.

6.    **Notice of Inspection Results.** Within the Inspection Period, Tenant shall notify Landlord of the results of its inspections along with (a) its objections, if any, to title or access to the Premises, including all objections arising from Tenant's ALTA survey, if any, of the Premises, provided, however, that Tenant accepts and agrees that Tenant may not object to the matters set forth in **Exhibit "C"** attached hereto and by reference incorporated herein (the "Permitted Exceptions"); and (b) its objections, if any, to any other matter

concerning the Premises. Such notice with objections will not cancel this Lease and Landlord will respond to objections to title, access or soil conditions as provided below. Before Tenant's receipt of Permits, Landlord shall use diligent effort, not to exceed costs in excess of $10,000.00 in the aggregate, to correct all reasonable objections of Tenant relating to title, access or soil conditions, within fifteen (15) days after the expiration of the Inspection Period including providing: (a) Non-Disturbance Agreements from the holders of mortgages, deeds of trust or other liens encumbering the Premises assuring that Tenant's rights under this Lease shall be recognized and not disturbed upon foreclosure; and (b) consents from parties, including other tenants of Landlord, with an interest in the Premises. If Landlord fails to correct Tenant's reasonable objections or if Tenant determines for any reason in Tenants sole discretion to terminate this Lease, Tenant may as its sole remedy, within twenty (20) days after the expiration of the Inspection Period, elect to: (a) cancel this Lease or (b) waive the objection. If Tenant fails to cancel this Lease in writing within the foregoing twenty (20) day period, Tenant shall be deemed to have waived its objection.

7.     **Correcting Contamination and Soil Conditions.**

(1)     *Hazardous Materials Discovered During Inspection Period.* If conditions suggesting the presence of Hazardous Materials are discovered during the Inspection Period, Tenant may cancel this Lease as its sole remedy and the parties shall have no further obligations under this lease. If Tenant fails to cancel this Lease during the Inspection Period, then Tenant shall be deemed to have waived its right to cancel this Lease pursuant to the provisions of this paragraph.

(2)     *Hazardous Materials, Contamination and Remediation.* Hazardous Materials shall mean any hazardous or toxic substance or container therefor which is or becomes regulated by any governmental authority and includes, without limitation, underground storage tanks and any substance which is (a) defined as "Hazardous Substance," "Hazardous Waste," or "Extremely Hazardous Substance" pursuant to any provision of the United States Code, including United States Code sections commonly known as the Federal Water Pollution Control Act, the Federal Resource Conservation and Recovery Art, the Comprehensive Environmental Response Compensation and Liability Act, and the Superfund Amendments and Reauthorizations Act of 1986, (b) defined as a hazardous substance or material pursuant to any state or local law, ordinance or regulation governing the Premises, (c) petroleum or a petroleum by-product, (d) asbestos or asbestos containing material, (e) a pesticide, (f) a polychlorinated biphenyl, (g) a dry-cleaning fluid or (h) a solvent. Contamination shall mean the presence of Hazardous Materials which require Remediation. Remediation shall mean those steps required by law to eliminate, remove or otherwise mitigate the presence of Hazardous Materials.

(3)     *Ownership of Hazardous Materials.* Tenant shall not be responsible for claims, losses or liabilities arising from the presence of Hazardous Materials on the Premises, except Hazardous Materials placed by Tenant and its employees, agents and customers. Tenant is responsible for all Hazardous Materials placed, generated, stored or released on the Premises by Tenant, its employees, agents, customers and invitees. Tenant's

rights to cancel this Lease shall not apply if the Hazardous Materials were placed, generated or released on the Premises as a result from actions of Tenant, its employees, agents, customers and invitees.

(4)    **Soil Characteristics**. If Tenant determines that the characteristics of the soil will not allow construction of Tenant Improvements without extra cost Tenant shall notify Landlord of Tenant's good faith estimate of the extra costs Tenant will incur as a result of soil conditions. Tenant, as Tenant's sole remedy, shall have the right to cancel this Lease at any time before expiration of the Inspection Period. if Tenant determines that the characteristics of the soil are not satisfactory to Tenant. If Tenant fails to cancel this Lease during the Inspection Period, then Tenant shall be deemed to have waived its right to cancel this Lease pursuant to the provisions of this paragraph.

8.    **Tenant Obligations**.

(1)    *Application for Permits*. Before expiration of the Permitting Period, Tenant shall, at Tenant's expense, apply for, and use reasonable diligence and efforts to obtain, all Permits. If the Permits are not obtained prior to the expiration of the Permitting Period, Landlord shall grant up to two thirty (30) day extensions of the Permitting Period for Tenant to obtain the Permits. Tenant shall pay to Landlord a $5,000.00 extension fee for each thirty (30) day extension which shall be nonrefundable except in the event of Landlord's default. If an extension is exercised by Tenant, a corresponding extension shall be granted to the Rent Commencement Date. If Tenant, or Tenant's agents, after using diligent efforts is unable to obtain the Permits within the Permitting Period or extended Permitting Period, as the case may be, then Tenant may as its sole remedy cancel this Lease prior to the end of the Permitting Period or extended Permitting Period. If prior to the expiration of the Inspection Period Tenant determines that it would not be feasible or economically satisfactory for Tenant to build and operate its proposed facility, Tenant shall have the right, as Tenant's sole remedy, to cancel this Lease.

As a part of the process of seeking Permits, Landlord shall first review and approve in Landlord's reasonable discretion all of Tenant's Permit applications in a timely manner. Landlord shall remain as the identified owner of the Premises on all Permit applications, and shall sign the same prior to submittal to the reviewing authority. Tenant may also agree, after obtaining Landlord's written consent, which may be reasonably withheld, to conditions to the issuance of use permits or other Permits for Tenant's use. At Tenant's request, Landlord shall at no expense or liability to Landlord reasonably cooperate to the extent necessary to obtain Permits and shall join with Tenant in all applications and proceedings.

(2)    *Satisfaction or Waiver of Contingencies*. If Tenant fails prior to the expiration of the applicable contingency period, to give Landlord written notice that any contingency has not been satisfied or waived, the contingency shall be deemed to have been waived by Tenant.

\390009\1 - # 59664 v8                    -10-

(3)    *Payment of Rent*. Tenant shall pay to Landlord in United States dollars, the Rent provided for in the Basic Provisions, in equal monthly installments, in advance, on the first day of each calendar month of the Term. Rent for a partial month beginning on the Rent Commencement Date and at the end of the Term shall be prorated on the basis of a thirty (30) day month. If Tenant fails to make the Rent payment within ten (10) days when due, then Tenant shall pay an additional late penalty fee of five (5%) of the Rent payment then due, plus interest in the amount of ten (10%) percent per annum. Rent is payable without demand or offset. It is the intent of Landlord and Tenant hereunder that this Lease shall be triple net and that Tenant shall be fully and solely liable for all costs and expenses required for the Premises at no expense to Landlord.

(4) *Payment of Taxes*. Tenant shall pay all taxes levied against all personal property of Tenant located on the Premises plus all business, license, sales and excise taxes levied against Tenant or Tenant's occupancy of the Premises. Tenant shall also pay all sales tax due on all rent and other sums paid by Tenant hereunder. Tenant shall further pay all real property taxes and assessments levied against the Premises and the Tenant Improvements during the Term. However, real property taxes and assessments shall be prorated between Landlord and Tenant from the Rent Commencement Date to the end of the first calendar year of the Lease Term. Landlord shall provide Tenant with real property tax bills within (20) days after Landlord's receipt thereof or arrange to have such bills sent directly by the taxing authority to Tenant. With prior notification to and approval of Landlord, Tenant shall have the right but at Tenant's expense, to contest any tax or assessment, and to pay in installments where allowed by the taxing authority. Real property taxes shall be assessed in accordance with local laws and regulations, and shall not include, to the extent provided by law, business, income or profits taxes, estate, succession, inheritance, transfer, corporation, or franchise taxes assessed against Landlord or any other tax intended by the taxing authority to be a tax on Landlord's income. Tenant shall post such financial security as Landlord reasonably requests in the event that Tenant desires to contest any tax imposed to prevent Landlord's interest from being sold at a tax deed sale.

(5)    *Payment for Utilities*. Tenant shall pay for all water, electricity, gas, telephone, trash collection and other utility services furnished to the Premises.

(6)    *Maintenance*. Tenant shall at Tenant's sole expense maintain the Premises in a state of good condition and repair, ordinary wear and tear excepted consistent with the operation of a casual full service restaurant. It is the intent of Landlord and Tenant hereunder that this Lease shall be triple net and that Tenant shall be fully and solely liable for all costs and expenses required for the maintenance of the Premises at no expense to Landlord.

(7)    *General Insurance Requirements*. Tenant shall maintain at Tenant's expense the insurance described in this Lease with companies authorized to do business in the State of Florida with a minimum rating of____*_____. Tenant may provide insurance

\390009\1 - # 59664 v8                                           -11-

* "A" or better by A.M. Best Company

through a blanket policy. Tenant shall provide Landlord with certificates of insurance upon request confirming coverage and confirming that policies will not be terminated without thirty (30) days prior notice to Landlord. Landlord and Landlord's lender, if any, shall be named as additional insured parties or loss payees, as applicable, and noticed recipients on all of Tenant's insurance certificates of any cancellation, termination or non-renewal of Tenant's insurance as required under this Lease.

(8)     *Casualty Insurance*. Tenant shall maintain casualty insurance with endorsements for all perils, covering Tenant Improvements and personal property in the Premises in an amount not less than the percentage of the replacement value thereof stated in the Basic Provisions. The replacement value shall be determined by Tenant's insurer. The coverage provided shall include rent loss or business interruption insurance coverage in an amount of not less than twelve months' rent.

(9)     *Liability Insurance*. Tenant shall maintain comprehensive general liability insurance with combined single limit coverage in the amount stated in the Basic Provisions; provided, however, that the amount of liability insurance coverage shall be adjusted to reflect the increase in the cost of living every five (5) years based upon the change in the Consumer Price Index from one five year period to the next. Landlord and Landlord's mortgagee shall be named as an additional insureds and/or loss payees, as applicable. The liability insurance shall contain clauses or endorsements for cross-liability and for assumed contractual liability for liabilities assumed by Tenant under this Lease, and shall provide coverage against claims for bodily injury, personal injury, death and property damage occurring on the Premises.

9.     **Indemnity**: **Indemnification.** The Tenant agrees to indemnify and save the Landlord harmless against any and all claims, or demands of all persons whomsoever for damages, and the cost and expenses, including reasonable attorneys fees for the defense thereof, arising from the conduct or management of the business conducted by the Tenant at the Premises or from any default on the part of the Tenant in the performance of any covenant or agreement on the part of the Tenant to be performed pursuant to the terms of this Lease, or from any act of negligence of the Tenant or any agent, contractor, servant, or employee of the Tenant in or about the Premises and from any liability from any person on account of any damage to person or property arising out of any use, misuse, abuse, neglect, or failure to exercise due care in, or about the Premises, including without limitation Tenant's failure to keep said Premises in a safe condition.

The Landlord agrees to indemnify and save the Tenant harmless against any and all claims, or demands of all persons whomsoever for damages, and the cost and expenses, including reasonable attorneys fees for the defense thereof, arising from any default on the part of the Landlord in the performance of any covenant or agreement on the part of the Landlord to be performed pursuant to the terms of this Lease, or from any act of negligence

of the Landlord or any agent, contractor, servant, or employee of the Landlord in or about the Premises.

10.    **Subordination**. This Lease shall automatically be subordinate to any mortgage or deed of trust encumbering the Premises provided the mortgagee or beneficiary under such mortgage or deed of trust delivers to Tenant a customary recognition and non-disturbance agreement, or adequate provision is made in the mortgage or deed of trust, assuring that Tenant's rights under this Lease shall be recognized and not disturbed upon foreclosure, so long as Tenant is not in default under this Lease and Tenant attorns to the party acquiring title to the Premises following such foreclosure. Without limiting the foregoing but in furtherance thereof, Tenant shall execute an appropriate subordination agreement within fifteen (15) days after Tenant's receipt of the same, in connection with the foregoing as necessary to establish this Lease as subordinate to such mortgage or deed of trust. At Landlord's option, Tenant shall execute documents reasonably necessary to establish this Lease as superior to any such mortgage or deed of trust.

11.    **Tenant Construction**. If Tenant fails within twelve (12) months of the Effective Date of this Lease to commence construction, evidenced by obtaining building permits and performing physical construction of the Tenant Improvements, and continue construction with diligent efforts, Tenant shall be in default of this Lease, and Landlord shall have the option of pursuing all rights and remedies available to Landlord under this Lease.

12.    **Alterations**:  Tenant may at any time without consent of the Landlord, construct, install, change, demolish and remove any of the Tenant Improvements contained within the interior of the proposed restaurant building to be situated on the Premises, provided all of the foregoing is accomplished in compliance with all applicable laws and consistent with a casual full service restaurant. Tenant shall first obtain Landlord's written consent, which shall not be unreasonably withheld, to construct, install, change, demolish and remove any of the Tenant Improvements affecting or relating to the exterior of the proposed restaurant building to be situated on the Premises. Any exterior modifications to the building shall be made in accordance and compliance with all applicable laws and consistent with a first-class full service restaurant.

No mechanics' liens shall be placed against the Landlord's title in the Premises for or on account of the construction of any improvement upon the Premises or any repair, alterations, demolition, or removal of such improvement, or for any other purpose, by any laborer, contractor, materialman, or other person contracting with Tenant. All laborers, mechanics, materialmen, contractors, subcontractors, and others are called upon to take due notice of this clause, it being the intent of the parties hereby to expressly prohibit any such lien against the Landlord's title or interest by the use of this language as and in the manner contemplated by Section 713.10 of the Florida Statutes. Tenant agrees to promptly pay or bond any liens, and further agrees to indemnify and save harmless the Landlord from and against any loss, cost or expense occasioned by any lien prohibited hereby, including the cost and expense of defending or removing the same, whether the claim therefor be with or without merit or valid or invalid. Further, the Tenant agrees to promptly notify any contractor making any

\390009\1 - # 59664 v8                                          -13-

improvements to the Premises of the provisions of this Lease contained in this paragraph. The Landlord and the Tenant agree that a short form memorandum of this Lease shall be recorded in the Public Records of Lake County, Florida, containing the language of this clause, the name of the Landlord, and the legal description of the leased lands

13.    **Surrender of Premises; Removal of Improvements**. Upon any termination of this Lease, Tenant has the option during the thirty (30) days following termination, to remove all of Tenant's Personal Property, clear and clean up the Premises, and leave the Tenant Improvements, with the exception of the Tenant's signs and architectural features which in Tenant's reasonable judgment must be removed to prevent identification of the Premises with Tenant. Tenant shall promptly repair any damage caused by such removal.

14.    **Contamination by Tenant**. Tenant, its employees, agents, customers and invitees shall not cause any Contamination on the Premises. In the event, Tenant its employees, agents, customers and invitees causes any Contamination on the Premises, Tenant shall be solely responsible for removal and remediation of Contamination in accordance with applicable governmental law and regulations, and shall defend, indemnify and hold Landlord harmless from and against any and all actions, causes of action, suits, demands and the like, against Landlord, arising out of any Contamination caused by Tenant, its employees, agents, customers and invitees. This covenant of indemnity shall include without limitation all damages, costs and expenses, including attorneys' fees and costs, incurred by Landlord and shall further survive expiration or termination of this Lease.

15.    **Landlord Obligations**. Landlord warrants that all water, sanitary services, storm sewers, electricity, gas, oil and other required utilities (herein collectively referred to as "utilities") are available for connection and are available to the boundaries of the Leased Premises. Landlord shall pay all tap, connection, environmental and like charges necessary to bring all utilities to the Leased Premises and which are necessary for Tenant to connect to and use all utility services. However, Tenant shall pay any and all impact fees or such other charges and fees which are based wholly, or in part, upon Tenant's lease and use of the Leased Premises. Landlord shall bear all costs incurred in extending utility lines to the perimeter of the Real Property. In the event the utilities do not run directly to the Leased Premises from adjacent publicly dedicated streets, Landlord shall also obtain, deliver and record all easements necessary to permit Tenant's use, maintenance, repair and replacement of all required utilities. Such easements shall be paramount to any lien on the servient property and shall be in such form and content acceptable to Tenant and Landlord. Landlord shall provide, at its expense, all fill dirt required to elevate the Premises to the level set forth on plans prepared by Kelly, Collins & Gentry, Inc., Landlord's engineers, and shall compact such fill dirt to the specifications set forth in such plans prepared by Kelly, Collins & Gentry, Inc. The Premises shall also have available to it the Premises all off-site improvements required by applicable governmental agencies to operate the Premises and surrounding parcels, including, but not limited to, drainage, retention, ingress and egress improvements.

16.    **Quiet Enjoyment**. Provided that Tenant is not in default hereunder, Landlord shall not disturb Tenant's peaceful and quiet enjoyment of the Leased Premises.

\390009\1 - # 59664 v8                    -14-

17.    **Replatting, Rezoning or Subdividing, Zoning, Licenses and Permits**: Landlord represents and warrants that, to Landlord's actual knowledge, the use of the Leased Premises for a Tenant restaurant with adjacent parking is a permitted use under the zoning classification and local laws and ordinances applicable to the Leased Premises, and that Landlord has no knowledge of anything that would prohibit Tenant from obtaining all licenses and permits, including, but not limited to, those pertaining to building, occupancy and liquor, which are necessary to Tenant's business.

18.    **Consents**. If any mortgage or other encumbrance on the Premises requires the giving of notice or receipt of consent to effect this Lease, Landlord within fifteen (15) days after the end of the Inspection Period give such notice or obtain such consent as reasonably required. In the event Landlord is unable to obtain any consent to this Lease prior to the end of such period, Tenant shall have as its sole remedy the option to terminate this lease or waive such notice or consent by giving notice of such termination within ten (10) days after Landlord notifies Tenant that Landlord was unable to obtain such consent..

19.    **Liens and Claims**. Except for the Permitted Exceptions, Landlord and Tenant shall maintain the Premises free of all liens and other claims or encumbrances caused by their acts or omissions.    Each shall be entitled to contest such liens or other claims or encumbrances at their own expense, but must post appropriate security to protect the interests of the other.

20. **Condemnation**. Condemnation means any taking of any portion of the Premises by exercise of the power of eminent domain.. A voluntary sale by Landlord to any party having the power to effect a Condemnation either under a threat of exercise of that power, or while proceedings are pending, shall be deemed to be a Condemnation. No such sale shall be made without the prior consent of Tenant, which shall not be unreasonably withheld by Tenant. Landlord shall notify Tenant within thirty (30) days after Landlord receives written notice of any proposed or pending Condemnation. The proceeds, including any judgment and interest, arising from any Condemnation shall be deemed the Condemnation Award. Whether this Lease is canceled or not canceled upon a Condemnation, the rights of Landlord and Tenant shall be governed by this Section. Any Award shall be allocated and paid to Landlord and/or Tenant in accordance with the laws of the state of Florida. If, in Tenant's reasonable judgment, a Condemnation renders the Premises reasonably unsuitable for Tenant's continued operation, Tenant may, by notice to Landlord given within thirty (30) days after the taking authority takes possession of the portion of the Premises taken, cancel this Lease. It will be reasonable for Tenant to determine the Premises are unsuitable for Tenant's continued operation after a Condemnation if there is a material and substantial reduction in the amount of business revenue received at the Premises (i.e. at least 15%) following the Condemnation which reduction is solely attributable to the Condemnation, or if any of the Tenant Improvements such as the building, access, drive through, or parking facilities are materially and adversely altered. If Tenant fails to cancel this Lease as permitted immediately above, the Rent for the remainder of the Term, exclusive of extensions, shall be reduced in the same proportion that the square footage of the Premises is

reduced by the Condemnation.

21.    **Destruction of Tenant Improvements**. Subject to the limitations of this Section, Tenant shall promptly repair and restore all Tenant Improvements which are damaged but which have not incurred Substantial Destruction. Substantial Destruction means damage or destruction to Tenant Improvements with a value equal to fifty (50%) or more of their replacement value. Within ninety (90) days after Substantial Destruction, Tenant shall elect to either (a) repair and restore all Tenant Improvements or (b) remove all personal property and fixtures, demolish and remove all improvements on the Premises, clean up the Premises, and continue, for the remainder of the Term, to pay Basic Rent and taxes, and provide liability insurance as required in this Lease, except that if Substantial Destruction occurs during the last two (2) years of the Term, Tenant may elect to remove all Tenant Improvements, clear and clean up the Premises and cancel this Lease. If Tenant elects to demolish and remove all improvements on the Premises, then Landlord is entitled to all insurance proceeds received by Tenant as a result of the casualty. In the event Tenant elects to repair or reconstruct the buildings and/or improvements, this Lease shall continue in force and except that for so long as the business conducted on the Leased Premises is discontinued by reason of the fire or other casualty the rent payable shall abate (provided that said abatement shall not continue for more than six (6) months) and provided further that the term of the Lease then in effect shall be extended for a period equal to the period of rent abatement.

22.    **Default by Tenant**. Tenant will be in default under this Lease (a) if Tenant fails to pay any amount due within ten (10) days after receipt of notice from Landlord stating the amount due and demanding payment; or (b) if Tenant fails to commence performance of any other obligation of Tenant within thirty (30) days after receipt of notice from Landlord stating the obligation which Tenant has failed to perform and demanding performance and diligently pursue completion of the required performance. Tenant shall have thirty (30) days to cure a nonmonetary default, provided that if such default is not reasonably susceptible of cure within such thirty (30) days, then such cure period may be extended not to exceed a total of ninety (90) days in the event that Tenant commences to cure such default within thirty (30) days and diligently prosecutes such to completion. Should Tenant fail to timely pay any amount under this Lease when due, Tenant shall pay to Landlord a default penalty fee equal to five (5%) percent of the amount then due, in addition to the amount then due. No notice from Landlord shall be deemed to be a termination of this Lease unless Landlord states in the notice that this Lease is terminated.

Upon an uncured default by Tenant, Landlord may, in addition to all other remedies provided by law, exercise any one or more of the following options:

(i)    Declare the entire remaining unpaid rental (whether monthly, additional, percentage or otherwise) for the balance of the term of this Lease immediately due and payable forthwith and take action to recover and collect the same either by distress or otherwise.

(ii)    Terminate Tenant's right to possession under this Lease and re-enter and take possession of the Premises, and relet or attempt to relet the Premises, or any part thereof, on behalf of and as the agent of Tenant, at such rental and under such terms and conditions as Landlord may, in the exercise of Landlord's sole and absolute discretion, deem best under the circumstances for the purpose of reducing Tenant's liability, and Landlord shall not be deemed to have thereby accepted a surrender of the Premises, and Tenant shall remain liable for all rental, additional rent and all other sums due under this Lease and for all damages suffered by Landlord because of Tenant's breach of any of the covenants of this Lease. Landlord shall apply any rentals received from such reletting first to the expenses of Landlord, if any, incurred by re-entering and placing the Premises in condition for reletting, and then to the payment of rentals due hereunder and other obligations of Tenant to Landlord arising under this Lease. In the event Landlord is successful in reletting the Premises at a rental in excess of that agreed to be paid by Tenant, Landlord and Tenant each mutually agree that Tenant shall not be entitled, under any circumstances, to such excess rental, and Tenant does hereby waive any claim to such excess rental. At any time during such repossession or reletting, Landlord may, by delivering written notice to Tenant, elect to exercise its option under the following subparagraph to accept a surrender of the Premises, terminate and cancel this Lease, and retake possession and occupancy of the Premises on behalf of the Landlord.

(iii)    Declare this Lease terminated, whereupon the term herein granted and all right, title, and interest of Tenant in and to the Premises shall end. Such termination shall be without prejudice to Landlord's right to enforce the collection of any rental, additional rental or other sums due or accrued at the termination thereof, and for such time as shall be required to evict Tenant, together with all other damages suffered by Landlord as a result of Tenant's default. Upon such termination Landlord shall have the right immediately to re-enter the Premises and take possession thereof, and Tenant shall thereupon be deemed to have surrendered the Premises to Landlord.

(iv)    Pay or perform any obligation of Tenant for Tenant's account, without prejudice to any other right or remedy of Landlord. All damages, costs and expenses so incurred by Landlord, including any interest, penalties and attorneys' fees, shall be due and payable to Landlord on demand.

The parties hereto shall, and they hereby do, waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of, or in any way connected with, this Lease, the Premises and/or any claim of injury or damage. In the event either party commences any proceeding to enforce this Lease or the landlord/tenant relationship between the parties, or for nonpayment of rent, additional rent or any other sums due Landlord from Tenant under this Lease, neither party will interpose any counter claim of whatever nature or description in any such

proceedings. In the event either party must, because of applicable court rules, interpose any counterclaim or other claim against the other party in such proceedings, Landlord and Tenant covenant and agree that, in addition to any other lawful remedy of Landlord or Tenant, upon motion of Landlord or Tenant, such counterclaim or other claim asserted by either party shall be severed out of the proceedings instituted by the other party (and, if necessary, transfer to a court of different jurisdiction), and the proceedings instituted by Landlord or Tenant may proceed to final judgment separately and apart from and without consolidation with or reference to the status of each counterclaim or any other claim asserted by Landlord/Tenant. Tenant and Landlord hereby consents to the jurisdiction of any state court whose jurisdiction includes the county in which the Premises are located.

The receipt and acceptance by Landlord of delinquent rent shall not constitute a waiver of any other default, it shall constitute only waiver of timely payment for the particular rent payment involved. No payment by Tenant or receipt by Landlord of a lesser amount than the rent, additional rent or other sums due shall be deemed to be other than on account of the earliest stipulated amounts so due, nor shall any endorsement or statement on any check or any letter or other writing accompanying any check or payment as rent be deemed in accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's rights to recover the balance of such rent or to pursue any other right or remedy provided herein or at law or in equity.

23.    **Default by Landlord**. Landlord will be in default under this Lease if Landlord fails to perform any obligation specified under this Lease. If Landlord fails to (a) commence performance of any obligation of Landlord within thirty (30) days after receipt of notice from Tenant stating the obligation which Landlord has failed to perform and demanding performance and (b) diligently pursue completion of the required performance, then Tenant shall have the right to pay, perform or discharge any such obligation. Landlord shall have thirty (30) days to cure a nonmonetary default, provided that if such default is not reasonably susceptible of cure within such thirty (30) days, then such cure period may be extended not to exceed a total of ninety (90) days in the event that Landlord commences to cure such default within thirty (30) days and diligently prosecutes such- cure to completion.
Should Tenant elect to pay or perform any such obligation, Landlord shall, within thirty (30) days from the date of Tenant's demand, reimburse Tenant in the full amount expended by Tenant in connection therewith. If Landlord fails to reimburse Tenant within such time, Tenant shall seek its remedies against Landlord under Florida law. Should Tenant obtain a final, non-appealable judgment against Landlord for a default under this Lease, Tenant may offset the amount of such judgment against Rent.

24.    **Attorneys' Fees**. If an action is commenced to enforce any provision of this Lease, the prevailing party as determined by a final court judgment shall be entitled to recover from the other party such reasonable attorneys' fees and costs incurred in the action as the court may award.

25.    **Representations and Warranties**.

(1)    ***Landlord Representations and Warranties***. The following representations and warranties are made for the benefit of Tenant:

(1)    If Landlord is a corporation, Landlord represents and warrants that Landlord is duly organized, validly existing, in good standing in the state of its incorporation, and has all requisite power and authority to own and lease property and conduct business in the state where the Premises are located, and each individual executing this Lease on behalf of Landlord represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of Landlord;

(2)    If Landlord is a partnership, each individual executing this Lease represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of the partnership, and that the persons who have executed this Lease on behalf of the partnership are all of the partners whose signatures are necessary to bind the partnership;

(3)    If Landlord is a limited liability company, Landlord represents and warrants that Landlord is duly organized, validly existing, and in good standing in the state of its formation, and has all requisite power and authority to own and lease property and conduct business in the state where the Premises are located, and each individual executing this Lease on behalf of Landlord represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of Landlord;

(4)    If Landlord is an individual or individuals, each individual executing this Lease represents and warrants that he or she is duly authorized to execute and deliver this Lease;

(5)    If more than one person is Landlord, they represent and warrant that the obligations of such persons as Landlord are joint and several;

(6)    Landlord represents and warrants that this Lease is binding on Landlord in accordance with its terms;

(7)    Landlord represents and warrants that Landlord is the fee owner of the Premises; and

(8)    Landlord represents and warrants that Landlord has no knowledge of (i) enacted, pending or proposed condemnation proceedings or other governmental action, (ii) pending or threatened litigation, (iii) pending or proposed plans to alter access to the Premises, or (iv) the presence on the Premises of anything dangerous to humans such as Hazardous Materials, which would adversely affect the construction of Tenant Improvements or the operation of Tenant's permitted uses of the Premises.

(2)    ***Tenant Representations and Warranties***. The following representations and warranties are made for the benefit of Landlord:

(1)    Tenant represents and warrants that Tenant is duly organized, validly existing, in good standing in the state of its incorporation, and has all requisite power and authority to own and lease property and conduct business in the state where the Premises are located, and each individual executing this Lease on behalf of Tenant represents and warrants that he or she is duly authorized to execute and deliver this Lease on behalf of Tenant; and Tenant represents and warrants that this Lease is binding on Tenant in accordance with its terms.

26.    **Brokers**. Landlord and Tenant represent and warrant to each other that they have not engaged or dealt with any broker or agent with respect to the Premises except the Landlord's Broker and Tenant's Broker identified in the Basic Provisions. Landlord shall pay a commission in the total sum of 4% of the rent (not including sales tax) to be received by Landlord during the first ten (10) years of the lease. Said fee shall be paid at rent commencement to Coldwell Banker. Landlord and Tenant shall each defend, indemnify and hold the other harmless from and against all claims, losses and liabilities incurred by the indemnified party in connection with any claim or demand by any person or entity for any broker's, finder's or other fee or compensation in connection with the indemnifying party's entry into this Lease.

27.    **Release of Landlord on Sale**. If Landlord transfers the Premises by sale or exchange, such sale or exchange shall be expressly made subject to this Lease. Upon such transfer, the transferring Landlord shall be released by Tenant from all its responsibilities as Landlord which accrue after the date of such transfer. Tenant shall attorn to the successor Landlord if the successor agrees in writing that Tenant's rights under this Lease shall be recognized and not disturbed so long as Tenant is not in default.

28.    **Miscellaneous Provisions**.

(1)    *Amendment*. This Lease may be changed only by a written amendment executed by Landlord and Tenant.

(2)    *Consents*. Whenever a party is asked to provide consent under this Lease, such party shall not unreasonably withhold or delay giving the consent requested unless otherwise stated in such requirement.

(3)    *Disclaimer of Partnership*. Nothing in this Lease shall be deemed or construed to create a relationship of principal and agent, partnership, or joint venture between Landlord and Tenant.

(4)    *Estoppel Certificates*. Landlord and Tenant shall each execute and deliver to the other, within fifteen (15) days after request, an estoppel certificate addressing such matters as may be reasonably requested by an existing or prospective mortgagee, a prospective transferee of the Premises, or a prospective transferee of Tenant's leasehold interest.

(5)    *Holding Over*. Any holding over after the expiration of the Term shall be as a tenancy from month to month subject to all provisions of this Lease, except that Rent during the holdover period shall be an amount equal to two hundred percent (200%) of the

Rent which was in effect at the expiration of the Term.

(6)     *Interpretation of Lease*. This Lease shall be interpreted to give effect to its fair meaning and shall be construed as though it was prepared by both parties. This Lease contains the entire agreement of Landlord and Tenant, and all prior negotiations, documents, and discussions are superseded by this Lease. The invalidity of any provision of this Lease shall not affect the validity of any other provision of this Lease. Section headings in this Lease are for convenience only and shall not be used in interpreting its provisions. This Lease shall be interpreted in accordance with the laws of the state in which the Premises are located.

(7)     *Memorandum of Lease*. Landlord shall execute, acknowledge and deliver to Tenant, a memorandum of this Lease, the form of which is attached hereto and made a part hereof as **Exhibit "BD"**, which shall be recorded in the official records of the jurisdiction in which the Premises are located.

(8)     *Notices*. All notices required or allowed in this Lease shall be in writing and shall be sent to the addresses shown in the Basic Provisions. A party may change its address for notice by giving notice to the other party. Notice may be delivered by personal delivery, facsimile transmission, an overnight delivery service, or U.S. Mail sent certified with return receipt requested. Notices are effective on the earlier of the date received, the date of the delivery receipt, or the third day after postmark, as applicable.

(9)     *References*. All, references to this Lease include reference to all amendments to this Lease. All references to the Term in this Lease include reference to all extensions of this Lease by exercise of options to extend or by agreement between Landlord and Tenant. References to the Premises include reference to all or a part of the Premises. References to Landlord or Tenant include, bind, and inure to the benefit of, their officers, agents, employees, successors in interest and assignees.

(10)     *Time and Excusable Delays*. Reference to days in this Lease means consecutive calendar days including weekends and holidays. Time is of the essence of this Lease. As to Tenant's Inspection Period and Permitting Period, the time for performance of or the satisfaction of any contingency under such Periods shall be extended a day for each day which a party is prevented from performing its obligation due to the act or omission of the other party.

(11)     *Waiver*. No right or remedy under this Lease will be waived unless the waiver is in writing and signed by the party claimed to have made the waiver. One waiver will not be interpreted as a continuing waiver.

(12)     *Indemnification*. A party entitled to indemnity shall promptly notify the indemnifying party of its claim for indemnity. The indemnifying party shall have the right to defend, prosecute and settle the matter for which indemnity is sought, using counsel reasonably satisfactory to the indemnified party and its insurer.

29.     **Liability of Landlord**. Landlord shall not be liable to Tenant or to any person, firm, corporation, or other business association claiming by, through or under Tenant for failure to furnish or for delay in furnishing any utility service provided for in this Lease, and no such failure or delay by Landlord shall be an actual or constructive eviction of Tenant nor shall any such failure or delay operate to relieve Tenant from the prompt and punctual performance of each and all the covenants to be performed herein by Tenant.

30.    **Limitation of Liability.** Landlord's obligations and liability with respect to this Lease shall be limited solely to Landlord's interest in the Premises, as such interest is constituted from time to time, and neither Landlord nor any officer, director, shareholder, or partner of Landlord, shall have any personal liability whatsoever with respect to this Lease.

31.    **No Recordation of Lease.** This Lease is not in recordable form, and Tenant agrees not to record or permit the recording of this Lease. However, Landlord and Tenant agree to record a Memorandum of this Lease in the form attached hereto.

32.    The Landlord shall have the right to enter the Premises upon reasonable notice to the Lessee during normal business hours. In addition, in the case of an emergency, the Landlord shall have the right to enter at any time. The Landlord shall have the right to enter during the last six (6) months of the Lease term during business hours to show the property to prospective tenants.

33.    The parties desire that the Premises shall have access, along the north line of the Premise, to the Target Parcel immediately to the north of the Premises, but acknowledge that such access is subject to approval by Target Corporation under the OEA and by the City of Clermont. In the event that either of such approvals are not obtained prior to the end of the Permitting Period or extended Permitting Period if applicable, the Tenant may as its sole remedy cancel this Lease prior to the end of the Permitting Period or extended Permitting Period. If Tenant does not so cancel this Lease prior to the end of the Permitting Period or extended Permitting Period, then the Premises shall be developed with no access along the north line of the Premises.

[Exhibits "A" through "D" follow]

## Exhibit "A"

## LEGAL DESCRIPTION AND PLOT PLAN OR SKETCH OF PREMISES

## Legal Description of the Premises

## Plot Plan or Sketch of the Premises

(See photo reduced copy of Plat attached hereto)

Exhibit "A"

# SKETCH OF DESCRIPTION
# LOT 5

## LEGAL DESCRIPTION

A PARCEL OF LAND LOCATED IN THE NW 1/4 OF SECTION 27, TOWNSHIP 22 SOUTH,   RANGE  26  EAST,  LAKE  COUNTY,  FLORIDA,   BEING   MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF THE NW 1/4 OF SAID  SECTION 27;   THENCE S89°11'05"E, ALONG THE NORTH LINE OF THE  NW  1/4  OF SAID  SECTION  27, A DISTANCE OF 50.00 FEET TO  A  POINT  ON  THE EASTERLY  RIGHT-OF-WAY LINE OF HANCOCK ROAD (100-FOOT  RIGHT  OF WAY); THENCE LEAVING THE NORTH LINE OF THE NW 1/4 OF SAID SECTION 27,  S0°50'10"W,  ALONG THE EASTERLY RIGHT-OF-WAY LINE OF  SAID HANCOCK  ROAD,  A  DISTANCE OF 1166.38 FEET TO  A  POINT  ON  THE NORTHERLY  RIGHT-OF-WAY  LINE OF STATE ROAD 50 (VARIABLE  WIDTH RIGHT  OF WAY); THENCE LEAVING THE EASTERLY RIGHT-OF-WAY LINE  OF SAID  HANCOCK  ROAD, S89°21'23"E, ALONG THE NORTHERLY RIGHT-OF-WAY LINE  OF  SAID STATE ROAD 50, A DISTANCE OF 490.00  FEET  TO  THE POINT OF BEGINNING;

THENCE LEAVING THE NORTHERLY RIGHT-OF-WAY LINE OF SAID STATE ROAD 50,  N0°50'10"E,  A DISTANCE OF 235.00 FEET TO A  POINT;   THENCE S89°21'22"E,  A  DISTANCE  OF 219.94 FEET  TO  A  POINT;   THENCE SOUTHEASTERLY ALONG THE ARC OF A CURVE TO THE RIGHT  (SAID  CURVE HAVING A RADIUS OF 20.00 FEET, A DELTA ANGLE OF 90°11'33"  AND  A CHORD BEARING AND DISTANCE OF S44°15'36"E, 28.33 FEET) FOR AN ARC DISTANCE  OF 31.48 FEET TO A POINT; THENCE S0°50'10"W, A DISTANCE OF  214.93 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE  OF SAID STATE ROAD 50; THENCE N89°21'23"W, A DISTANCE OF 240.00 FEET TO THE POINT OF BEGINNING.

SAID PARCEL CONTAINS 1.2928 ACRES OF LAND, MORE OR LESS.



P.O.C.
NW CORNER - NW 1/4
SECTION 27, T22S, R26E
LAKE COUNTY, FLORIDA

NORTH LINE - NW 1/4 - SECTION 27, T22S, R26E

S89°11'05"E
50.00'

EASTERLY RW LINE

S0°50'10"W 1166.38'

WEST LINE - NW 1/4 - SECTION 27, T22S, R26E

HANCOCK ROAD
(100' RIGHT OF WAY)

S89°21'22"E 219.94'

RADIUS = 20.00'
ARC = 31.48'
DELTA = 90°11'33"
BEARING = S44°15'36"E
CHORD = 28.33'

N0°50'10"E 235.00'

S0°50'10"W 214.93'

LOT 5
1.2928 ACRES

## Exhibit "A-1"

## USE RESTRICTIONS

1.      Use of the Premises as a branch banking facility or related type of financial institution.

2.      Use of the Premises for a McDonald's, Burger King, Wendy's, or Sonics restaurant.

3.      The use restrictions set forth in the OEA.

**Exhibit "B"**

**OPTION TO EXTEND THE TERM**
**(Fixed Rent)**

---

1.    ***Grant of Option***. Landlord grants to Tenant the **Option** to extend the Term of this Lease for up to four (4) additional periods of five (5) years each. Each such additional period is referred to as an **Extension Period**.

2.    ***Exercising Options***. Each Option shall be deemed automatically exercised without further action by Landlord or Tenant unless Tenant shall give notice to Landlord at least six (6) months ~~ninety (90) days prior~~ to the end of the Term or the current Extension Period (the **Exercise Date**) stating that Tenant elects to not extend the Term.

3.    ***Rent for the Extension Period***. Upon the commencement of each Extension Period, all provisions of this Lease shall remain in effect, except for Options already exercised, and Rent. Rent for each Extension Period shall be as follows:

| Option | Years of Extension Periods | Annual Rent | Monthly Rent |
|---|---|---|---|
| 1. | 21-25 | $102,487.00 | $8,540.59 |
| 2. | 26-30 | $112,735.70 | $9,394.64 |
| 3. | 31-35 | $124,009.27 | $10,334.11 |
| 4. | 36-40 | $136,410.20 | $11,367.52 |

\390009\1 - # 59664 v8                    -25-

## Exhibit "C"

## PERMITTED EXCEPTIONS

1.     Taxes and assessments for the year 2003 and subsequent years which are not yet due and payable.

2.     Operation and Easement Agreement between Target Corporation and Chester C Fosgate Company dated February 11, 2002 and recorded in Official Records Book 2069, Page 449, Public Records of Lake County, Florida.

## Exhibit "D"

## MEMORANDUM OF LEASE

_____

_____

(See attachment)
## MEMORANDUM OF LEASE

**THIS MEMORANDUM OF LEASE** is dated this _____ day of
_____, 2002 by and among CHESTER C. FOSGATE COMPANY, a Florida
limited partnership ("**Landlord**"), whose mailing address is 908 S. Delaney Avenue,
Orlando, Florida 32806, and R. T. ORLANDO FRANCHISE, L.P., a Florida limited
partnership ("**Tenant**"), whose mailing address is 8042 Monier Way, Orlando, Florida
32835.

Landlord hereby grants, demises and leases the premises ("**Premises**") described
below to Tenant upon the following terms:

1.     Date of Lease: _____, 2002

2.     Description of Premises:

See Exhibit A attached hereto

3.     Date of Term commencement: _____, 2002

4.     Term:  twenty (20) Lease Years;

5.     Renewal Options:  Tenant shall have the option to extend the Term of the
Lease for  four (4) additional periods of five (5) years each.

6.     The Lease provides that mechanics' liens shall be placed against the
Landlord's title in the Premises for or on account of the construction of any improvement
upon the Premises or any repair, alterations, demolition, or removal of such improvement, or
for any other purpose, by any laborer, contractor, materialman, or other person contracting
with Tenant.  All laborers, mechanics, materialmen, contractors, subcontractors, and others
are called upon to take due notice of this clause, it being the intent of the parties hereby to
expressly prohibit any such lien against the Landlord's title or interest by the use of this
language as and in the manner contemplated by Section 713.10 of the Florida Statutes.

7.    The Lease is subject to that certain Operation and Easement Agreement between Target Corporation and Chester C. Fosgate Company dated February 11, 2002 and recorded in Official Records Book 2069, Page 449, Public Records of Lake County, Florida.

The purpose of this Memorandum of Lease is to give notice of the Lease and of the rights created thereby, all of which are hereby confirmed.

**IN WITNESS WHEREOF,** the parties hereto have executed this Memorandum of Lease as of the dates set forth in their respective acknowledgments.

Signed, sealed and delivered
in the presence of:

**Signature of Tenant:**

R. T. ORLANDO FRANCHISE, L.P., a
Florida limited partnership

By:    R. MANNING, INC., a Florida
      corporation

By:_____

    Ray Manning, President

_____
Name:_____
    (Print or Type Name)

Date:_____, 2002

_____
Name:_____
    (Print or Type Name)

**Signature of Landlord:**

CHESTER C. FOSGATE COMPANY, a
Florida corporation

By:_____

_____
Name:_____
    (Print or Type Name)

Name: _____
Title: _____

Date: _____, 2002

_____
Name:_____
    (Print or Type Name)

[Acknowledgments on following pages]

STATE OF FLORIDA)

COUNTY OF_____)

     The foregoing instrument was acknowledged before me this _____ day of _____, 2002 by **Ray Manning**, as President of R. Manning, Inc., a Florida corporation, the general partner of R.T. Orlando Franchise, L.P., a Florida limited partnership, on behalf of the partnership. He is (___) personally known to me or (___) has produced a current _____ driver's license as identification.

 

                             _____
                             Notary Public, State of Florida
                             Notary Print name:_____
                             Commission No._____
                             My Commission expires:_____
                             (Affix Notary Stamp or Seal)

STATE OF FLORIDA)

COUNTY OF_____)

     The foregoing instrument was acknowledged before me this _____ day of _____, 2002 by _____, as _____ of CHESTER C. FOSGATE CO., a Florida corporation, on behalf of the corporation. He is (___) personally known to me or (___) has produced a current _____ driver's license as identification.

 

                             _____
                             Notary Public, State of _____
                             Notary print name:_____
                             Commission No._____
                             My Commission expires:_____
                             (Affix Notary Stamp or Seal)

# <u>EXHIBIT B</u>

**FIRST AMENDMENT TO LEASE AGREEMENT**

This **FIRST AMENDMENT TO LEASE AGREEMENT ("First Amendment")** is made and entered into by and between **CHESTER C. FOSGATE COMPANY, LLC,** a Florida limited liability company ("**Landlord**") and **R.T. ORLANDO FRANCHISE, L.P.,** a Florida limited partnership ("**Tenant**") as of August ____, 2020 (the "Effective Date").

## RECITALS

**WHEREAS,** Landlord's successor in interest and Tenant entered into that certain Ground Lease dated April 11, 2003 (together with this First Amendment, the "Lease") whereby Tenant leased the property known as Store 7432, 2650 E. Highway 50, Clermont, Florida 34711 (the "Premises"); and

**WHEREAS,** it is the desire of the parties to amend the Lease to provide for certain matters as provided for herein.

**NOW THEREFORE,** these parties for the consideration hereinafter mentioned covenant and agree that the said Lease is amended as follows:

1. The above recitations are true and correct and are incorporated herein by reference. Capitalized terms used in this First Amendment that are not otherwise defined herein shall have the respective meanings assigned to such terms in the Lease.

2. Notwithstanding anything herein to the contrary, Tenant's monetary obligations in accordance with the Lease shall continue to be in effect through the remainder of the Lease Initial Term and any subsequent options to extend.

3. Tenant shall pay Landlord SIXTY THOUSAND THREE HUNDRED EIGHTY-ONE AND 88/100 DOLLARS ($60,381.88) (the "Amounts Due") on or before ten (10) days following the Effective Date of this First Amendment.

4. Tenant shall pay Landlord TWO THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($2,500.00) (the "Fees Due") for fees and costs on or before ten (10) days following the Effective Date of this First Amendment.

5. Subject to Tenant's compliance with all other terms and conditions of the Lease, Tenant shall pay Landlord EIGHTEEN THOUSAND NINE HUNDRED SEVENTY-SEVEN AND 05/100 DOLLARS ($18,977.05) (the "Deferred Amounts Due") on or before December 31, 2020.  In the event Tenant fails to timely pay the Deferred Amounts Due, such failure shall be treated as a default under the Lease, and Landlord shall be entitled to pursue any and all rights and remedies set forth under the Lease and under Florida law against the Tenant.

6. <u>Miscellaneous</u>.

    (a)    <u>Ratification of Lease</u>.  Except as expressly set forth herein, the Lease as amended by this First Amendment remains in full force and effect in accordance with its provisions, and Landlord and Tenant do hereby ratify, adopt and confirm its provisions and its provisions shall remain in full force and effect.

- 1 -

(b)     No Claims Against Landlord.  Tenant acknowledges and agrees that through the date hereof Landlord, its predecessors in interest, and their respective members, managers, partners, officers, directors, employees and agents have fully and completely performed all obligations on their part to be performed under the Lease as amended by this First Amendment, and thus Tenant has no claim or cause of action, or right to payment or offset, against any of them under the Lease as amended by this First Amendment or otherwise.

(c)     No Claims Against Tenant.  Landlord acknowledges and agrees, to the extent that Landlord has asserted any claims of monetary default by Tenant prior to the effective date of this First Amendment, that any such default claims and causes of action are hereby waived in consideration of Tenant's acceptance of this First Amendment.  Landlord further agrees to file, within 7 (seven) days of the effective date of this First Amendment, a Voluntary Dismissal with Prejudice of certain lawsuit styled as *Chester C. Fosgate Company, LLC, f/k/a Chester C. Fosgate Company v. R.T. Orlando Franchise, Ltd., f/k/a R.T. Orlando Franchise LP*, Case Number 35-2020-CA-001136-AXXX-XX in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida.

(d)     Representations of Landlord.  Landlord represents and warrants that Landlord is duly formed and in good standing in the state or commonwealth of its organization, has full power and authority to enter into this First Amendment, and has taken all actions necessary to carry out the transactions contemplated in the Lease as amended by this First Amendment, so that when executed this First Amendment constitutes a valid and binding obligation enforceable in accordance with its terms.

(e)     Representations of Tenant.  Tenant represents and warrants that Tenant is duly formed and in good standing in the state or commonwealth of its organization, has full power and authority to enter into this First Amendment, and has taken all actions necessary to carry out the transactions contemplated in the Lease as amended by this First Amendment, so that when executed this First Amendment constitutes a valid and binding obligation enforceable in accordance with its terms.

(f)     Entire Agreement.  The Lease as amended by this First Amendment is intended by the parties as the final expression of their agreement and as a complete and exclusive statement of the terms thereof, all negotiations, considerations and representations between the parties having been incorporated therein.  No course of prior dealings between the parties, their members, managers, partners, officers, directors, employees, agents or affiliates shall be deemed relevant or admissible to supplement, explain or vary any of the provisions of the Lease as amended by this First Amendment.  No representations, understandings or agreements have been made or relied upon in the making of this First Amendment other than set forth herein.

(g)     Conflicts.  The parties agree that should any provisions in this First Amendment disagree with or conflict with any provisions in the Lease, the provisions in this First Amendment will control.

(h)     No Construction Against Drafting Party.  The parties acknowledge that each of them and their counsel have had an opportunity to review this First Amendment and that this First Amendment will not be construed against Landlord merely because Landlord caused this First Amendment to be prepared.

(i)      <u>No Waiver</u>.  Tenant hereby expressly acknowledges and agrees that Landlord's execution of this First Amendment shall not: (1) constitute a waiver of any of Landlord's rights and remedies under the Lease as amended by this First Amendment, at law or in equity with respect to Tenant's obligations under the Lease as amended by this First Amendment; or (2) be construed as a bar to any subsequent enforcement of any of Landlord's rights or remedies against Tenant.

(j)      <u>PDF Execution</u>.  This First Amendment may be executed in counterparts, each which shall constitute an original and all of which, when First Amendment together, shall constitute one and the same instrument.  A signed copy of this First Amendment (or any document executed in connection therewith) transmitted electronically by PDF to the other party hereto shall be treated as an original and binding upon the signatory thereto.

IN WITNESS WHEREOF, Landlord and Tenant have executed this First Amendment as of the date and year first written above.

**LANDLORD:**

CHESTER C. FOSGATE COMPANY, LLC, a
Florida limited lability company

_____          _____
Witness for Landlord                                  By: _____
                                                                   Its: _____
_____          Date: _____
Witness for Landlord


**TENANT:**

R.T. ORLANDO FRANCHISE, L.P., a Florida
limited partnership

_____          _____
Witness for Tenant                                     By: _____
                                                                   Its: _____
_____          Date: _____
Witness for Tenant

# EXHIBIT C

# STATE OF FLORIDA

## OFFICE OF THE GOVERNOR
## EXECUTIVE ORDER NUMBER 20-244

(Phase 3; Right to Work; Business Certainty; Suspension of Fines.)

**WHEREAS,** on March 9, 2020, I issued Executive Order 20-52 declaring a state of emergency for the entire State of Florida as a result of COVID-19; and

**WHEREAS,** on April 29, 2020, I issued Executive Order 20-112 initiating Phase 1 of the Safe. Smart. Step-by-Step. Plan for Florida's Recovery; and

**WHEREAS,** on May 14, 2020, I issued Executive Order 20-123 for Full Phase 1; and

**WHEREAS,** on June 3, 2020, I issued Executive Order 20-139 initiating Phase 2 of the Safe. Smart. Step-by-Step. Plan for Florida's Recovery.

**WHEREAS,** the State of Florida has suffered economic harm as a result of COVID-19-related closures, exacerbating the impacts of the State of Emergency, and Floridians should not be prohibited by local governments from working or operating a business.

**NOW, THEREFORE, I, RON DESANTIS,** as Governor of Florida, by virtue of the authority vested in me by Article IV, Section (l)(a) of the Florida Constitution and Chapter 252, Florida Statutes, and all other applicable laws, promulgate the following Executive Order:

<u>Section 1.</u>    Phase 3

This order supersedes and eliminates any and all restrictions of Executive Orders 20-112, 20-123 and 20-139, as well as Executive Orders 20-192, 20-214 and 20-223, except as modified herein.



Section 2.    Right to Work and Operate a Business

No COVID-19 emergency ordinance may prevent an individual from working or from operating a business. This preemption is consistent with Executive Order 20-92.

Section 3.    Restaurants

Pursuant to Chapter 252, including sections 252.36(5)(b), (g) and (h), Florida Statutes, and in order to safeguard the economic vitality of this state, any restaurant may operate as set forth below.

A. Restaurants, including any establishment with a food service license, may not be limited by a COVID-19 emergency order by any local government to less than fifty percent (50%) of their indoor capacity. If a restaurant is limited to less than one hundred percent (100%) of its indoor capacity, such COVID-19 emergency order must on its face satisfy the following:

  i.    quantify the economic impact of each limitation or requirement on those restaurants; and

  ii.   explain why each limitation or requirement is necessary for public health.

B. Nothing in this order preempts or supersedes a non-COVID-19 municipal or county order.

Section 4.    Suspension of COVID-19-related Individual Fines and Penalties

This order, consistent with Executive Order 20-92, suspends the collection of fines and penalties associated with COVID-19 enforced upon individuals.

2

<u>Section. 5</u>        Effective Date

This order is effective immediately.



IN TESTIMONY WHEREOF, I have hereunto
set my hand and caused the Great Seal of the
State of Florida to be affixed, at Tallahassee, this
25th day of September, 2020.

RON DESANTIS, GOVERNOR

ATTEST:

SECRETARY OF STATE

FILED
2020 SEP 25  PM 4: 06
DEPARTMENT OF STATE
TALLAHASSEE, FLORIDA

3

# EXHIBIT D

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 06/01/2007 | Base Rent (06/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-8746 | No |
| 06/01/2007 | Sales Tax (06/2007) | | 408.33 | 0.00 | 6,241.66 | C-8747 | No |
| 06/04/2007 | Chk# 2194849 June Rent | | 0.00 | 6,241.66 | 0.00 | R-2939 | |
| 07/01/2007 | Base Rent (07/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-9867 | No |
| 07/01/2007 | Sales Tax (07/2007) | | 408.33 | 0.00 | 6,241.66 | C-9868 | No |
| 07/05/2007 | Chk# 2209026 July Rent | | 0.00 | 6,241.66 | 0.00 | R-3437 | |
| 08/01/2007 | Base Rent (08/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-10711 | No |
| 08/01/2007 | Sales Tax (08/2007) | | 408.33 | 0.00 | 6,241.66 | C-10712 | No |
| 08/08/2007 | Chk# 2223953 Aug Rent | | 0.00 | 6,241.66 | 0.00 | R-4179 | |
| 09/01/2007 | Base Rent (09/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-12816 | No |
| 09/01/2007 | Sales Tax (09/2007) | | 408.33 | 0.00 | 6,241.66 | C-12817 | No |
| 09/06/2007 | Chk# 2239440 Sept Rent | | 0.00 | 6,241.66 | 0.00 | R-4825 | |
| 10/01/2007 | Base Rent (10/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-15067 | No |
| 10/01/2007 | Sales Tax (10/2007) | | 408.33 | 0.00 | 6,241.66 | C-15068 | No |
| 10/01/2007 | Chk# 2254219 Oct Rent | | 0.00 | 6,241.66 | 0.00 | R-5183 | |
| 11/01/2007 | Base Rent (11/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-16731 | No |
| 11/01/2007 | Sales Tax (11/2007) | | 408.33 | 0.00 | 6,241.66 | C-16732 | No |
| 11/05/2007 | Chk# 2268653 Nov. Rent | | 0.00 | 6,241.66 | 0.00 | R-5995 | |
| 12/01/2007 | Base Rent (12/2007) | | 5,833.33 | 0.00 | 5,833.33 | C-19744 | No |
| 12/01/2007 | Sales Tax (12/2007) | | 408.33 | 0.00 | 6,241.66 | C-19745 | No |
| 12/07/2007 | Chk# 2282326 Dec Rent | | 0.00 | 6,241.66 | 0.00 | R-6941 | |
| 01/01/2008 | Outparcel Ground Rent (01/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-20992 | No |
| 01/01/2008 | Sales Tax (01/2008) | | 408.33 | 0.00 | 6,241.66 | C-20993 | No |
| 01/03/2008 | Chk# 2296764 January Rent | | 0.00 | 6,241.66 | 0.00 | R-7734 | |
| 02/01/2008 | Outparcel Ground Rent (02/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-24059 | No |
| 02/01/2008 | Sales Tax (02/2008) | | 408.33 | 0.00 | 6,241.66 | C-24060 | No |
| 02/05/2008 | Chk# 2310921 Feb Rent | | 0.00 | 6,241.66 | 0.00 | R-8558 | |
| 03/01/2008 | Outparcel Ground Rent (03/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-26833 | No |
| 03/01/2008 | Sales Tax (03/2008) | | 408.33 | 0.00 | 6,241.66 | C-26834 | No |
| 03/04/2008 | Chk# 2324435 March rent | | 0.00 | 6,241.66 | 0.00 | R-9443 | |
| 04/01/2008 | Outparcel Ground Rent (04/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-30147 | No |
| 04/01/2008 | Sales Tax (04/2008) | | 408.33 | 0.00 | 6,241.66 | C-30148 | No |
| 04/07/2008 | Chk# 2338102 April rent | | 0.00 | 6,241.66 | 0.00 | R-10511 | |
| 05/01/2008 | Outparcel Ground Rent (05/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-33298 | No |
| 05/01/2008 | Sales Tax (05/2008) | | 408.33 | 0.00 | 6,241.66 | C-33299 | No |
| 05/06/2008 | Chk# 2352136 May rent | | 0.00 | 6,241.66 | 0.00 | R-11404 | |
| 06/01/2008 | Outparcel Ground Rent (06/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-36017 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|---|---|---|---|---|---|---|---|
| 06/01/2008 | Sales Tax (06/2008) | | 408.33 | 0.00 | 6,241.66 | C-36018 | No |
| 06/03/2008 | Chk# 2365206 June rent | | 0.00 | 6,241.66 | 0.00 | R-12369 | |
| 07/01/2008 | Outparcel Ground Rent (07/2008) | | 5,833.33 | 0.00 | 5,833.33 | C-39699 | No |
| 07/01/2008 | Sales Tax (07/2008) | | 408.33 | 0.00 | 6,241.66 | C-39700 | No |
| 07/08/2008 | Chk# 2378552 July rent | | 0.00 | 6,241.66 | 0.00 | R-13485 | |
| 08/01/2008 | Outparcel Ground Rent (08/2008) | | 6,416.67 | 0.00 | 6,416.67 | C-41574 | No |
| 08/01/2008 | Sales Tax (08/2008) | | 449.17 | 0.00 | 6,865.84 | C-41575 | No |
| 08/05/2008 | Chk# 2392454 August rent | | 0.00 | 6,865.84 | 0.00 | R-14455 | |
| 09/01/2008 | Outparcel Ground Rent (09/2008) | | 6,416.67 | 0.00 | 6,416.67 | C-44771 | No |
| 09/01/2008 | Sales Tax (09/2008) | | 449.17 | 0.00 | 6,865.84 | C-44772 | No |
| 09/03/2008 | Chk# 2404834 Sept rent | | 0.00 | 6,865.84 | 0.00 | R-15177 | |
| 10/01/2008 | Outparcel Ground Rent (10/2008) | | 6,416.67 | 0.00 | 6,416.67 | C-47601 | No |
| 10/01/2008 | Sales Tax (10/2008) | | 449.17 | 0.00 | 6,865.84 | C-47602 | No |
| 10/06/2008 | Chk# 2417826 Oct rent | | 0.00 | 6,865.84 | 0.00 | R-16137 | |
| 11/01/2008 | Outparcel Ground Rent (11/2008) | | 6,416.67 | 0.00 | 6,416.67 | C-50205 | No |
| 11/01/2008 | Sales Tax (11/2008) | | 449.17 | 0.00 | 6,865.84 | C-50206 | No |
| 11/04/2008 | Chk# 2430037 Nov rent | | 0.00 | 6,865.84 | 0.00 | R-16870 | |
| 12/01/2008 | Outparcel Ground Rent (12/2008) | | 6,416.67 | 0.00 | 6,416.67 | C-52937 | No |
| 12/01/2008 | Sales Tax (12/2008) | | 449.17 | 0.00 | 6,865.84 | C-52938 | No |
| 12/05/2008 | Chk# 2441580 Dec rent | | 0.00 | 6,865.84 | 0.00 | R-17709 | |
| 01/01/2009 | Outparcel Ground Rent (01/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-54458 | No |
| 01/01/2009 | Sales Tax (01/2009) | | 449.17 | 0.00 | 6,865.84 | C-54459 | No |
| 01/06/2009 | Chk# 2452641 Jan rent | | 0.00 | 6,865.84 | 0.00 | R-18264 | |
| 02/01/2009 | Outparcel Ground Rent (02/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-56131 | No |
| 02/01/2009 | Sales Tax (02/2009) | | 449.17 | 0.00 | 6,865.84 | C-56132 | No |
| 02/03/2009 | Chk# 2464377 Feb rent | | 0.00 | 6,865.84 | 0.00 | R-18731 | |
| 03/01/2009 | Outparcel Ground Rent (03/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-57514 | No |
| 03/01/2009 | Sales Tax (03/2009) | | 449.17 | 0.00 | 6,865.84 | C-57515 | No |
| 03/09/2009 | Chk# 2476661 March rent | | 0.00 | 6,865.84 | 0.00 | R-19343 | |
| 04/01/2009 | Outparcel Ground Rent (04/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-59541 | No |
| 04/01/2009 | Sales Tax (04/2009) | | 449.17 | 0.00 | 6,865.84 | C-59542 | No |
| 04/07/2009 | Chk# 2487354 April rent | | 0.00 | 6,865.84 | 0.00 | R-20051 | |
| 05/01/2009 | Outparcel Ground Rent (05/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-61758 | No |
| 05/01/2009 | Sales Tax (05/2009) | | 449.17 | 0.00 | 6,865.84 | C-61759 | No |
| 05/11/2009 | Chk# 2499807 May rent | | 0.00 | 6,865.84 | 0.00 | R-21023 | |
| 06/01/2009 | Outparcel Ground Rent (06/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-64390 | No |
| 06/01/2009 | Sales Tax (06/2009) | | 449.17 | 0.00 | 6,865.84 | C-64391 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 06/08/2009 | Chk# 2510118 June rent | | 0.00 | 6,865.84 | 0.00 | R-21516 | |
| 07/01/2009 | Outparcel Ground Rent (07/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-66168 | No |
| 07/01/2009 | Sales Tax (07/2009) | | 449.17 | 0.00 | 6,865.84 | C-66169 | No |
| 07/07/2009 | Chk# 2522589 July rent | | 0.00 | 6,865.84 | 0.00 | R-22073 | |
| 08/01/2009 | Outparcel Ground Rent (08/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-68339 | No |
| 08/01/2009 | Sales Tax (08/2009) | | 449.17 | 0.00 | 6,865.84 | C-68340 | No |
| 08/10/2009 | Chk# 2533689 August rent | | 0.00 | 6,865.84 | 0.00 | R-22656 | |
| 09/01/2009 | Outparcel Ground Rent (09/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-70169 | No |
| 09/01/2009 | Sales Tax (09/2009) | | 449.17 | 0.00 | 6,865.84 | C-70170 | No |
| 09/09/2009 | Chk# 2544807 Sept rent | | 0.00 | 6,865.84 | 0.00 | R-23185 | |
| 10/01/2009 | Outparcel Ground Rent (10/2009) | | 6,416.67 | 0.00 | 6,416.67 | C-72421 | No |
| 10/01/2009 | Sales Tax (10/2009) | | 449.17 | 0.00 | 6,865.84 | C-72422 | No |
| 10/05/2009 | Chk# 2556090 Oct rent | | 0.00 | 6,865.84 | 0.00 | R-23616 | |
| 10/29/2009 | Chk# 2566344 Nov rent | | 0.00 | 6,865.84 | (6,865.84) | R-23973 | |
| 11/01/2009 | Outparcel Ground Rent (11/2009) | | 6,416.67 | 0.00 | (449.17) | C-74871 | No |
| 11/01/2009 | Sales Tax (11/2009) | | 449.17 | 0.00 | 0.00 | C-74872 | No |
| 11/30/2009 | Chk# 2578161 Dec rent | | 0.00 | 6,865.84 | (6,865.84) | R-24408 | |
| 12/01/2009 | Outparcel Ground Rent (12/2009) | | 6,416.67 | 0.00 | (449.17) | C-76715 | No |
| 12/01/2009 | Sales Tax (12/2009) | | 449.17 | 0.00 | 0.00 | C-76716 | No |
| 01/01/2010 | Outparcel Ground Rent (01/2010) | | 6,416.67 | 0.00 | 6,416.67 | C-78578 | No |
| 01/01/2010 | Sales Tax (01/2010) | | 449.17 | 0.00 | 6,865.84 | C-78579 | No |
| 01/05/2010 | Chk# 2589072 Jan rent | | 0.00 | 6,865.84 | 0.00 | R-25055 | |
| 01/28/2010 | Chk# 2599533 Feb rent | | 0.00 | 6,865.84 | (6,865.84) | R-25801 | |
| 02/01/2010 | Outparcel Ground Rent (02/2010) | | 6,416.67 | 0.00 | (449.17) | C-81566 | No |
| 02/01/2010 | Sales Tax (02/2010) | | 449.17 | 0.00 | 0.00 | C-81567 | No |
| 03/01/2010 | Outparcel Ground Rent (03/2010) | | 6,416.67 | 0.00 | 6,416.67 | C-82678 | No |
| 03/01/2010 | Sales Tax (03/2010) | | 449.17 | 0.00 | 6,865.84 | C-82679 | No |
| 03/01/2010 | Chk# 2612104 March rent | | 0.00 | 6,865.84 | 0.00 | R-26350 | |
| 03/29/2010 | Chk# 2623164 April rent | | 0.00 | 6,865.84 | (6,865.84) | R-27071 | |
| 04/01/2010 | Outparcel Ground Rent (04/2010) | | 6,416.67 | 0.00 | (449.17) | C-84071 | No |
| 04/01/2010 | Sales Tax (04/2010) | | 449.17 | 0.00 | 0.00 | C-84072 | No |
| 04/30/2010 | Chk# 2634608 May rent | | 0.00 | 6,865.84 | (6,865.84) | R-27625 | |
| 05/01/2010 | Outparcel Ground Rent (05/2010) | | 6,416.67 | 0.00 | (449.17) | C-86526 | No |
| 05/01/2010 | Sales Tax (05/2010) | | 449.17 | 0.00 | 0.00 | C-86527 | No |
| 05/27/2010 | Chk# 2646732 June rent | | 0.00 | 6,865.84 | (6,865.84) | R-28101 | |
| 06/01/2010 | Outparcel Ground Rent (06/2010) | | 6,416.67 | 0.00 | (449.17) | C-88973 | No |
| 06/01/2010 | Sales Tax (06/2010) | | 449.17 | 0.00 | 0.00 | C-88974 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 06/28/2010 | Chk# 2658202 July rent | | 0.00 | 6,865.84 | (6,865.84) | R-28609 | |
| 07/01/2010 | Outparcel Ground Rent (07/2010) | | 6,416.67 | 0.00 | (449.17) | C-91019 | No |
| 07/01/2010 | Sales Tax (07/2010) | | 449.17 | 0.00 | 0.00 | C-91020 | No |
| 07/28/2010 | Chk# 2668801 Aug rent | | 0.00 | 6,865.84 | (6,865.84) | R-29119 | |
| 08/01/2010 | Outparcel Ground Rent (08/2010) | | 6,416.67 | 0.00 | (449.17) | C-92071 | No |
| 08/01/2010 | Sales Tax (08/2010) | | 449.17 | 0.00 | 0.00 | C-92072 | No |
| 08/30/2010 | Chk# 2680565 Sept rent | | 0.00 | 6,865.84 | (6,865.84) | R-29666 | |
| 09/01/2010 | Outparcel Ground Rent (09/2010) | | 6,416.67 | 0.00 | (449.17) | C-93979 | No |
| 09/01/2010 | Sales Tax (09/2010) | | 449.17 | 0.00 | 0.00 | C-93980 | No |
| 09/29/2010 | Chk# 2691530 Oct rent | | 0.00 | 6,865.84 | (6,865.84) | R-30188 | |
| 10/01/2010 | Outparcel Ground Rent (10/2010) | | 6,416.67 | 0.00 | (449.17) | C-95952 | No |
| 10/01/2010 | Sales Tax (10/2010) | | 449.17 | 0.00 | 0.00 | C-95953 | No |
| 10/27/2010 | Chk# 2701757 Nov rent | | 0.00 | 6,865.84 | (6,865.84) | R-31050 | |
| 11/01/2010 | Outparcel Ground Rent (11/2010) | | 6,416.67 | 0.00 | (449.17) | C-97398 | No |
| 11/01/2010 | Sales Tax (11/2010) | | 449.17 | 0.00 | 0.00 | C-97399 | No |
| 11/29/2010 | Chk# 2713266 Dec rent | | 0.00 | 6,865.84 | (6,865.84) | R-31619 | |
| 12/01/2010 | Outparcel Ground Rent (12/2010) | | 6,416.67 | 0.00 | (449.17) | C-99348 | No |
| 12/01/2010 | Sales Tax (12/2010) | | 449.17 | 0.00 | 0.00 | C-99349 | No |
| 12/24/2010 | Chk# 2724061 Jan rent | | 0.00 | 6,865.84 | (6,865.84) | R-32114 | |
| 01/01/2011 | Outparcel Ground Rent (01/2011) | | 6,416.67 | 0.00 | (449.17) | C-101859 | No |
| 01/01/2011 | Sales Tax (01/2011) | | 449.17 | 0.00 | 0.00 | C-101860 | No |
| 01/28/2011 | Chk# 2736296 Feb rent | | 0.00 | 6,865.84 | (6,865.84) | R-33054 | |
| 02/01/2011 | Outparcel Ground Rent (02/2011) | | 6,416.67 | 0.00 | (449.17) | C-103812 | No |
| 02/01/2011 | Sales Tax (02/2011) | | 449.17 | 0.00 | 0.00 | C-103813 | No |
| 03/01/2011 | Outparcel Ground Rent (03/2011) | | 6,416.67 | 0.00 | 6,416.67 | C-105526 | No |
| 03/01/2011 | Sales Tax (03/2011) | | 449.17 | 0.00 | 6,865.84 | C-105527 | No |
| 03/01/2011 | Chk# 2748541 March rent | | 0.00 | 6,865.84 | 0.00 | R-33816 | |
| 03/29/2011 | Chk# 0002760419 April rent | | 0.00 | 6,865.84 | (6,865.84) | R-34344 | |
| 04/01/2011 | Outparcel Ground Rent (04/2011) | | 6,416.67 | 0.00 | (449.17) | C-107991 | No |
| 04/01/2011 | Sales Tax for Outparcel Ground Rent (04/2011) | | 449.17 | 0.00 | 0.00 | C-107992 | No |
| 04/28/2011 | Chk# 2772717 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-35119 | |
| 05/01/2011 | Outparcel Ground Rent (05/2011) | | 6,416.67 | 0.00 | (449.17) | C-111626 | No |
| 05/01/2011 | Sales Tax for Outparcel Ground Rent (05/2011) | | 449.17 | 0.00 | 0.00 | C-111627 | No |
| 05/31/2011 | Chk# 0002785951 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-35769 | |
| 06/01/2011 | Outparcel Ground Rent (06/2011) | | 6,416.67 | 0.00 | (449.17) | C-113135 | No |
| 06/01/2011 | Sales Tax for Outparcel Ground Rent (06/2011) | | 449.17 | 0.00 | 0.00 | C-113136 | No |
| 06/29/2011 | Chk# 0002798231 Prepayment. Thank you. | | 0.00 | 6,865.84 | (6,865.84) | R-36537 | |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 07/01/2011 | Outparcel Ground Rent (07/2011) | | 6,416.67 | 0.00 | (449.17) | C-114527 | No |
| 07/01/2011 | Sales Tax for Outparcel Ground Rent (07/2011) | | 449.17 | 0.00 | 0.00 | C-114528 | No |
| 08/01/2011 | Outparcel Ground Rent (08/2011) | | 6,416.67 | 0.00 | 6,416.67 | C-116665 | No |
| 08/01/2011 | Sales Tax for Outparcel Ground Rent (08/2011) | | 449.17 | 0.00 | 6,865.84 | C-116666 | No |
| 08/01/2011 | Chk# 0002809725 Aug rent | | 0.00 | 6,865.84 | 0.00 | R-37319 | |
| 08/29/2011 | Chk# 0002822575 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-38192 | |
| 09/01/2011 | Outparcel Ground Rent (09/2011) | | 6,416.67 | 0.00 | (449.17) | C-119463 | No |
| 09/01/2011 | Sales Tax for Outparcel Ground Rent (09/2011) | | 449.17 | 0.00 | 0.00 | C-119464 | No |
| 09/28/2011 | Chk# 0002834727 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-39342 | |
| 10/01/2011 | Outparcel Ground Rent (10/2011) | | 6,416.67 | 0.00 | (449.17) | C-121743 | No |
| 10/01/2011 | Sales Tax for Outparcel Ground Rent (10/2011) | | 449.17 | 0.00 | 0.00 | C-121744 | No |
| 10/27/2011 | Chk# 0002848667 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-40065 | |
| 11/01/2011 | Outparcel Ground Rent (11/2011) | | 6,416.67 | 0.00 | (449.17) | C-123748 | No |
| 11/01/2011 | Sales Tax for Outparcel Ground Rent (11/2011) | | 449.17 | 0.00 | 0.00 | C-123749 | No |
| 11/28/2011 | Chk# 2860870 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-41104 | |
| 12/01/2011 | Outparcel Ground Rent (12/2011) | | 6,416.67 | 0.00 | (449.17) | C-126219 | No |
| 12/01/2011 | Sales Tax for Outparcel Ground Rent (12/2011) | | 449.17 | 0.00 | 0.00 | C-126220 | No |
| 12/24/2011 | Chk# 0002872702 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-41801 | |
| 01/01/2012 | Outparcel Ground Rent (01/2012) | | 6,416.67 | 0.00 | (449.17) | C-128413 | No |
| 01/01/2012 | Sales Tax for Outparcel Ground Rent (01/2012) | | 449.17 | 0.00 | 0.00 | C-128414 | No |
| 01/27/2012 | Chk# 2886298 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-42664 | |
| 02/01/2012 | Outparcel Ground Rent (02/2012) | | 6,416.67 | 0.00 | (449.17) | C-129713 | No |
| 02/01/2012 | Sales Tax for Outparcel Ground Rent (02/2012) | | 449.17 | 0.00 | 0.00 | C-129714 | No |
| 03/01/2012 | Outparcel Ground Rent (03/2012) | | 6,416.67 | 0.00 | 6,416.67 | C-132156 | No |
| 03/01/2012 | Sales Tax for Outparcel Ground Rent (03/2012) | | 449.17 | 0.00 | 6,865.84 | C-132157 | No |
| 03/05/2012 | Chk# 2899264 Mar rent | | 0.00 | 6,865.84 | 0.00 | R-43889 | |
| 03/28/2012 | Chk# 2910802 Prepay | | 0.00 | 6,865.84 | (6,865.84) | R-44250 | |
| 04/01/2012 | Outparcel Ground Rent (04/2012) | | 6,416.67 | 0.00 | (449.17) | C-135580 | No |
| 04/01/2012 | Sales Tax for Outparcel Ground Rent (04/2012) | | 449.17 | 0.00 | 0.00 | C-135581 | No |
| 04/27/2012 | Chk# 2923575 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-45277 | |
| 05/01/2012 | Outparcel Ground Rent (05/2012) | | 6,416.67 | 0.00 | (449.17) | C-136751 | No |
| 05/01/2012 | Sales Tax for Outparcel Ground Rent (05/2012) | | 449.17 | 0.00 | 0.00 | C-136752 | No |
| 05/29/2012 | Chk# 2935621 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-46189 | |
| 06/01/2012 | Outparcel Ground Rent (06/2012) | | 6,416.67 | 0.00 | (449.17) | C-139325 | No |
| 06/01/2012 | Sales Tax for Outparcel Ground Rent (06/2012) | | 449.17 | 0.00 | 0.00 | C-139326 | No |
| 06/27/2012 | Chk# 2946182 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-46846 | |
| 07/01/2012 | Outparcel Ground Rent (07/2012) | | 6,416.67 | 0.00 | (449.17) | C-140701 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 07/01/2012 | Sales Tax for Outparcel Ground Rent (07/2012) | | 449.17 | 0.00 | 0.00 | C-140702 | No |
| 07/30/2012 | Chk# 2955382 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-47793 | |
| 08/01/2012 | Outparcel Ground Rent (08/2012) | | 6,416.67 | 0.00 | (449.17) | C-143974 | No |
| 08/01/2012 | Sales Tax for Outparcel Ground Rent (08/2012) | | 449.17 | 0.00 | 0.00 | C-143975 | No |
| 08/30/2012 | Chk# 2964297 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-48642 | |
| 09/01/2012 | Outparcel Ground Rent (09/2012) | | 6,416.67 | 0.00 | (449.17) | C-145279 | No |
| 09/01/2012 | Sales Tax for Outparcel Ground Rent (09/2012) | | 449.17 | 0.00 | 0.00 | C-145280 | No |
| 10/01/2012 | Outparcel Ground Rent (10/2012) | | 6,416.67 | 0.00 | 6,416.67 | C-146652 | No |
| 10/01/2012 | Sales Tax for Outparcel Ground Rent (10/2012) | | 449.17 | 0.00 | 6,865.84 | C-146653 | No |
| 10/01/2012 | Chk# 2971931 October Rent | | 0.00 | 6,865.84 | 0.00 | R-49431 | |
| 10/29/2012 | Chk# 2980127 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-50120 | |
| 11/01/2012 | Outparcel Ground Rent (11/2012) | | 6,416.67 | 0.00 | (449.17) | C-149388 | No |
| 11/01/2012 | Sales Tax for Outparcel Ground Rent (11/2012) | | 449.17 | 0.00 | 0.00 | C-149389 | No |
| 11/28/2012 | Chk# 2987279 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-50929 | |
| 12/01/2012 | Outparcel Ground Rent (12/2012) | | 6,416.67 | 0.00 | (449.17) | C-151674 | No |
| 12/01/2012 | Sales Tax for Outparcel Ground Rent (12/2012) | | 449.17 | 0.00 | 0.00 | C-151675 | No |
| 12/28/2012 | Chk# 2995717 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-51663 | |
| 01/01/2013 | Outparcel Ground Rent (01/2013) | | 6,416.67 | 0.00 | (449.17) | C-153061 | No |
| 01/01/2013 | Sales Tax for Outparcel Ground Rent (01/2013) | | 449.17 | 0.00 | 0.00 | C-153062 | No |
| 02/01/2013 | Outparcel Ground Rent (02/2013) | | 6,416.67 | 0.00 | 6,416.67 | C-155595 | No |
| 02/01/2013 | Sales Tax for Outparcel Ground Rent (02/2013) | | 449.17 | 0.00 | 6,865.84 | C-155596 | No |
| 02/04/2013 | Chk# 3003466 Feb rent | | 0.00 | 6,865.84 | 0.00 | R-52568 | |
| 03/01/2013 | Outparcel Ground Rent (03/2013) | | 6,416.67 | 0.00 | 6,416.67 | C-156935 | No |
| 03/01/2013 | Sales Tax for Outparcel Ground Rent (03/2013) | | 449.17 | 0.00 | 6,865.84 | C-156936 | No |
| 03/01/2013 | Chk# 3011871 Mar rent | | 0.00 | 6,865.84 | 0.00 | R-53020 | |
| 03/28/2013 | Chk# 0003021260 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-53935 | |
| 04/01/2013 | Outparcel Ground Rent (04/2013) | | 6,416.67 | 0.00 | (449.17) | C-159951 | No |
| 04/01/2013 | Sales Tax for Outparcel Ground Rent (04/2013) | | 449.17 | 0.00 | 0.00 | C-159952 | No |
| 04/29/2013 | Chk# 3030801 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-54704 | |
| 05/01/2013 | Outparcel Ground Rent (05/2013) | | 6,416.67 | 0.00 | (449.17) | C-162254 | No |
| 05/01/2013 | Sales Tax for Outparcel Ground Rent (05/2013) | | 449.17 | 0.00 | 0.00 | C-162255 | No |
| 05/28/2013 | Chk# 3040058 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-55498 | |
| 06/01/2013 | Outparcel Ground Rent (06/2013) | | 6,416.67 | 0.00 | (449.17) | C-163809 | No |
| 06/01/2013 | Sales Tax for Outparcel Ground Rent (06/2013) | | 449.17 | 0.00 | 0.00 | C-163810 | No |
| 06/27/2013 | Chk# 3049141 Prepayment. Thank you | | 0.00 | 6,865.84 | (6,865.84) | R-56449 | |
| 07/01/2013 | Outparcel Ground Rent (07/2013) | | 6,416.67 | 0.00 | (449.17) | C-165836 | No |
| 07/01/2013 | Sales Tax for Outparcel Ground Rent (07/2013) | | 449.17 | 0.00 | 0.00 | C-165837 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 07/29/2013 | Chk# 3056299 Prepayment. Thank you | | 0.00 | 7,552.41 | (7,552.41) | R-57281 | |
| 08/01/2013 | Outparcel Ground Rent (08/2013) | | 7,058.33 | 0.00 | (494.08) | C-169921 | No |
| 08/01/2013 | Sales Tax for Outparcel Ground Rent (08/2013) | | 494.08 | 0.00 | 0.00 | C-169922 | No |
| 09/01/2013 | Outparcel Ground Rent (09/2013) | | 7,058.33 | 0.00 | 7,058.33 | C-171523 | No |
| 09/01/2013 | Sales Tax for Outparcel Ground Rent (09/2013) | | 494.08 | 0.00 | 7,552.41 | C-171524 | No |
| 09/03/2013 | Chk# 3063671 Sept. Rent | | 0.00 | 7,552.41 | 0.00 | R-58319 | |
| 10/01/2013 | Outparcel Ground Rent (10/2013) | | 7,058.33 | 0.00 | 7,058.33 | C-173748 | No |
| 10/01/2013 | Sales Tax for Outparcel Ground Rent (10/2013) | | 494.08 | 0.00 | 7,552.41 | C-173749 | No |
| 10/01/2013 | Chk# 3071042 October Rent | | 0.00 | 7,552.41 | 0.00 | R-59155 | |
| 10/29/2013 | Chk# 3078665 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-59977 | |
| 11/01/2013 | Outparcel Ground Rent (11/2013) | | 7,058.33 | 0.00 | (494.08) | C-177447 | No |
| 11/01/2013 | Sales Tax for Outparcel Ground Rent (11/2013) | | 494.08 | 0.00 | 0.00 | C-177448 | No |
| 12/01/2013 | Outparcel Ground Rent (12/2013) | | 7,058.33 | 0.00 | 7,058.33 | C-180459 | No |
| 12/01/2013 | Sales Tax for Outparcel Ground Rent (12/2013) | | 494.08 | 0.00 | 7,552.41 | C-180460 | No |
| 12/02/2013 | Chk# 003086050 Dec13 Rent | | 0.00 | 7,552.41 | 0.00 | R-60924 | |
| 12/26/2013 | Chk# 3092866 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-61759 | |
| 12/31/2013 | Assoc. Fee received in error by Mgmt Company | | 1,219.23 | 0.00 | (6,333.18) | C-184088 | No |
| 12/31/2013 | :Prog Gen Reverse for chg# 184088 | | (1,219.23) | 0.00 | (7,552.41) | C-184089 | No |
| 01/01/2014 | Outparcel Ground Rent (01/2014) | | 7,058.33 | 0.00 | (494.08) | C-181760 | No |
| 01/01/2014 | Sales Tax for Outparcel Ground Rent (01/2014) | | 494.08 | 0.00 | 0.00 | C-181761 | No |
| 01/30/2014 | Chk# 3100574 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-62929 | |
| 02/01/2014 | Outparcel Ground Rent (02/2014) | | 7,058.33 | 0.00 | (494.08) | C-184626 | No |
| 02/01/2014 | Sales Tax for Outparcel Ground Rent (02/2014) | | 494.08 | 0.00 | 0.00 | C-184627 | No |
| 03/01/2014 | Outparcel Ground Rent (03/2014) | | 7,058.33 | 0.00 | 7,058.33 | C-187719 | No |
| 03/01/2014 | Sales Tax for Outparcel Ground Rent (03/2014) | | 494.08 | 0.00 | 7,552.41 | C-187720 | No |
| 03/03/2014 | Chk# 0003107253 Mar14 Rent | | 0.00 | 7,552.41 | 0.00 | R-64101 | |
| 04/01/2014 | Outparcel Ground Rent (04/2014) | | 7,058.33 | 0.00 | 7,058.33 | C-191407 | No |
| 04/01/2014 | Sales Tax for Outparcel Ground Rent (04/2014) | | 494.08 | 0.00 | 7,552.41 | C-191408 | No |
| 04/01/2014 | Chk# 31138441 APR14 RENT | | 0.00 | 7,552.41 | 0.00 | R-65124 | |
| 04/28/2014 | Chk# 3120980 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-65956 | |
| 05/01/2014 | Outparcel Ground Rent (05/2014) | | 7,058.33 | 0.00 | (494.08) | C-193438 | No |
| 05/01/2014 | Sales Tax for Outparcel Ground Rent (05/2014) | | 494.08 | 0.00 | 0.00 | C-193439 | No |
| 05/27/2014 | Chk# 3127311 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-66918 | |
| 06/01/2014 | Outparcel Ground Rent (06/2014) | | 7,058.33 | 0.00 | (494.08) | C-197313 | No |
| 06/01/2014 | Sales Tax for Outparcel Ground Rent (06/2014) | | 494.08 | 0.00 | 0.00 | C-197314 | No |
| 07/01/2014 | Outparcel Ground Rent (07/2014) | | 7,058.33 | 0.00 | 7,058.33 | C-199376 | No |
| 07/01/2014 | Sales Tax for Outparcel Ground Rent (07/2014) | | 494.08 | 0.00 | 7,552.41 | C-199377 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 07/01/2014 | Chk# 3134352 Jul14 Rent | | 0.00 | 7,552.41 | 0.00 | R-68080 | |
| 07/28/2014 | Chk# 3140478 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-68904 | |
| 08/01/2014 | Outparcel Ground Rent (08/2014) | | 7,058.33 | 0.00 | (494.08) | C-202579 | No |
| 08/01/2014 | Sales Tax for Outparcel Ground Rent (08/2014) | | 494.08 | 0.00 | 0.00 | C-202580 | No |
| 08/28/2014 | Chk# 3147065 Prepayment. Thank you. Reversed by ctrl#70033 | | 0.00 | 7,552.41 | (7,552.41) | R-69932 | |
| 08/28/2014 | Chk# 3147065 :Prog Gen Reverses receipt Ctrl# 69932 | | 0.00 | (7,552.41) | 0.00 | R-70033 | |
| 09/01/2014 | Outparcel Ground Rent (09/2014) | | 7,058.33 | 0.00 | 7,058.33 | C-205016 | No |
| 09/01/2014 | Sales Tax for Outparcel Ground Rent (09/2014) | | 494.08 | 0.00 | 7,552.41 | C-205017 | No |
| 09/02/2014 | Chk# 3147065 Sept14 Rent | | 0.00 | 7,552.41 | 0.00 | R-70032 | |
| 10/01/2014 | Outparcel Ground Rent (10/2014) | | 7,058.33 | 0.00 | 7,058.33 | C-207899 | No |
| 10/01/2014 | Sales Tax for Outparcel Ground Rent (10/2014) | | 494.08 | 0.00 | 7,552.41 | C-207900 | No |
| 10/01/2014 | Chk# 3156791 Oct14 Rent | | 0.00 | 7,552.41 | 0.00 | R-70935 | |
| 10/27/2014 | Chk# 3159589 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-71656 | |
| 11/01/2014 | Outparcel Ground Rent (11/2014) | | 7,058.33 | 0.00 | (494.08) | C-210735 | No |
| 11/01/2014 | Sales Tax for Outparcel Ground Rent (11/2014) | | 494.08 | 0.00 | 0.00 | C-210736 | No |
| 12/01/2014 | Outparcel Ground Rent (12/2014) | | 7,058.33 | 0.00 | 7,058.33 | C-213563 | No |
| 12/01/2014 | Sales Tax for Outparcel Ground Rent (12/2014) | | 494.08 | 0.00 | 7,552.41 | C-213564 | No |
| 12/01/2014 | Chk# 3166261 Dec14 Rent | | 0.00 | 7,552.41 | 0.00 | R-72867 | |
| 01/01/2015 | Outparcel Ground Rent (01/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-216401 | No |
| 01/01/2015 | Sales Tax for Outparcel Ground Rent (01/2015) | | 494.08 | 0.00 | 7,552.41 | C-216402 | No |
| 01/02/2015 | Chk# 3172499 Jan15 Rent | | 0.00 | 7,552.41 | 0.00 | R-73673 | |
| 01/30/2015 | Chk# 3177083 Prepayment. Thank you. Reversed by ctrl#74509 | | 0.00 | 7,552.41 | (7,552.41) | R-74500 | |
| 01/30/2015 | Chk# 3177083 :Prog Gen Reverses receipt Ctrl# 74500 | | 0.00 | (7,552.41) | 0.00 | R-74509 | |
| 02/01/2015 | Outparcel Ground Rent (02/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-218342 | No |
| 02/01/2015 | Sales Tax for Outparcel Ground Rent (02/2015) | | 494.08 | 0.00 | 7,552.41 | C-218343 | No |
| 02/02/2015 | Chk# 3177083 Feb15 Rent | | 0.00 | 7,552.41 | 0.00 | R-74559 | |
| 03/01/2015 | Outparcel Ground Rent (03/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-221727 | No |
| 03/01/2015 | Sales Tax for Outparcel Ground Rent (03/2015) | | 494.08 | 0.00 | 7,552.41 | C-221728 | No |
| 03/02/2015 | Chk# 3181829 Mar15 Rent | | 0.00 | 7,552.41 | 0.00 | R-75994 | |
| 04/01/2015 | Outparcel Ground Rent (04/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-224947 | No |
| 04/01/2015 | Sales Tax for Outparcel Ground Rent (04/2015) | | 494.08 | 0.00 | 7,552.41 | C-224948 | No |
| 04/01/2015 | Chk# 3185786 Apr15 Rent | | 0.00 | 7,552.41 | 0.00 | R-76960 | |
| 04/27/2015 | Chk# 3190134 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-77846 | |
| 05/01/2015 | Outparcel Ground Rent (05/2015) | | 7,058.33 | 0.00 | (494.08) | C-228762 | No |
| 05/01/2015 | Sales Tax for Outparcel Ground Rent (05/2015) | | 494.08 | 0.00 | 0.00 | C-228763 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 05/27/2015 | Chk# 3194222 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-78738 | |
| 06/01/2015 | Outparcel Ground Rent (06/2015) | | 7,058.33 | 0.00 | (494.08) | C-231843 | No |
| 06/01/2015 | Sales Tax for Outparcel Ground Rent (06/2015) | | 494.08 | 0.00 | 0.00 | C-231844 | No |
| 07/01/2015 | Outparcel Ground Rent (07/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-234903 | No |
| 07/01/2015 | Sales Tax for Outparcel Ground Rent (07/2015) | | 494.08 | 0.00 | 7,552.41 | C-234904 | No |
| 07/01/2015 | Chk# 3198628 Jul15 Rent | | 0.00 | 7,552.41 | 0.00 | R-79905 | |
| 08/01/2015 | Outparcel Ground Rent (08/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-236573 | No |
| 08/01/2015 | Sales Tax for Outparcel Ground Rent (08/2015) | | 494.08 | 0.00 | 7,552.41 | C-236574 | No |
| 08/03/2015 | Chk# 3202311 Aug15 Rent | | 0.00 | 7,552.41 | 0.00 | R-81050 | |
| 09/01/2015 | Outparcel Ground Rent (09/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-240026 | No |
| 09/01/2015 | Sales Tax for Outparcel Ground Rent (09/2015) | | 494.08 | 0.00 | 7,552.41 | C-240027 | No |
| 09/01/2015 | Chk# 32064084 Sept15 Rent | | 0.00 | 7,552.41 | 0.00 | R-81937 | |
| 09/29/2015 | Chk# 3210420 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-82822 | |
| 10/01/2015 | Outparcel Ground Rent (10/2015) | | 7,058.33 | 0.00 | (494.08) | C-242079 | No |
| 10/01/2015 | Sales Tax for Outparcel Ground Rent (10/2015) | | 494.08 | 0.00 | 0.00 | C-242080 | No |
| 11/01/2015 | Outparcel Ground Rent (11/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-245244 | No |
| 11/01/2015 | Sales Tax for Outparcel Ground Rent (11/2015) | | 494.08 | 0.00 | 7,552.41 | C-245245 | No |
| 11/02/2015 | Chk# 3213869 Nov15 Rent | | 0.00 | 7,552.41 | 0.00 | R-83797 | |
| 12/01/2015 | Outparcel Ground Rent (12/2015) | | 7,058.33 | 0.00 | 7,058.33 | C-248082 | No |
| 12/01/2015 | Sales Tax for Outparcel Ground Rent (12/2015) | | 494.08 | 0.00 | 7,552.41 | C-248083 | No |
| 12/02/2015 | Chk# 3217758 Dec15 Rent | | 0.00 | 7,552.41 | 0.00 | R-84714 | |
| 12/29/2015 | Chk# 3221198 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-85519 | |
| 01/01/2016 | Outparcel Ground Rent (01/2016) | | 7,058.33 | 0.00 | (494.08) | C-250411 | No |
| 01/01/2016 | Sales Tax for Outparcel Ground Rent (01/2016) | | 494.08 | 0.00 | 0.00 | C-250412 | No |
| 02/01/2016 | Outparcel Ground Rent (02/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-253067 | No |
| 02/01/2016 | Sales Tax for Outparcel Ground Rent (02/2016) | | 494.08 | 0.00 | 7,552.41 | C-253068 | No |
| 02/01/2016 | Chk# 3224429 Feb rent | | 0.00 | 7,552.41 | 0.00 | R-86395 | |
| 03/01/2016 | Outparcel Ground Rent (03/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-255304 | No |
| 03/01/2016 | Sales Tax for Outparcel Ground Rent (03/2016) | | 494.08 | 0.00 | 7,552.41 | C-255305 | No |
| 03/01/2016 | Chk# 3228481 Mar16 Rent | | 0.00 | 7,552.41 | 0.00 | R-87322 | |
| 03/28/2016 | Chk# 3231852 Prepayment. Thank you. | | 0.00 | 7,552.41 | (7,552.41) | R-88158 | |
| 04/01/2016 | Outparcel Ground Rent (04/2016) | | 7,058.33 | 0.00 | (494.08) | C-257961 | No |
| 04/01/2016 | Sales Tax for Outparcel Ground Rent (04/2016) | | 494.08 | 0.00 | 0.00 | C-257962 | No |
| 05/01/2016 | Outparcel Ground Rent (05/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-261482 | No |
| 05/01/2016 | Sales Tax for Outparcel Ground Rent (05/2016) | | 494.08 | 0.00 | 7,552.41 | C-261483 | No |
| 05/02/2016 | Chk# 3234966 May Rent | | 0.00 | 7,552.41 | 0.00 | R-89315 | |
| 06/01/2016 | Chk# 3238294 June Rent | | 0.00 | 7,552.41 | (7,552.41) | R-90353 | |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 06/10/2016 | Outparcel Ground Rent (06/2016) | | 7,058.33 | 0.00 | (494.08) | C-264187 | No |
| 06/10/2016 | Sales Tax for Outparcel Ground Rent (06/2016) | | 494.08 | 0.00 | 0.00 | C-264188 | No |
| 07/01/2016 | Outparcel Ground Rent (07/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-267240 | No |
| 07/01/2016 | Sales Tax for Outparcel Ground Rent (07/2016) | | 494.08 | 0.00 | 7,552.41 | C-267241 | No |
| 07/01/2016 | Chk# 3241420 July Rent | | 0.00 | 7,552.41 | 0.00 | R-91136 | |
| 08/01/2016 | Outparcel Ground Rent (08/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-270087 | No |
| 08/01/2016 | Sales Tax for Outparcel Ground Rent (08/2016) | | 494.08 | 0.00 | 7,552.41 | C-270088 | No |
| 08/02/2016 | Chk# 3244229 Aug Rent | | 0.00 | 7,552.41 | 0.00 | R-91949 | |
| 09/01/2016 | Outparcel Ground Rent (09/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-272225 | No |
| 09/01/2016 | Sales Tax for Outparcel Ground Rent (09/2016) | | 494.08 | 0.00 | 7,552.41 | C-272226 | No |
| 09/01/2016 | Chk# 3247605 Sept Rent | | 0.00 | 7,552.41 | 0.00 | R-92757 | |
| 09/26/2016 | Chk# 3250924 Prepayment | | 0.00 | 7,552.41 | (7,552.41) | R-93594 | |
| 10/01/2016 | Outparcel Ground Rent (10/2016) | | 7,058.33 | 0.00 | (494.08) | C-273857 | No |
| 10/01/2016 | Sales Tax for Outparcel Ground Rent (10/2016) | | 494.08 | 0.00 | 0.00 | C-273858 | No |
| 10/31/2016 | Chk# 3254020 Prepayment | | 0.00 | 7,552.41 | (7,552.41) | R-94462 | |
| 11/01/2016 | Outparcel Ground Rent (11/2016) | | 7,058.33 | 0.00 | (494.08) | C-276973 | No |
| 11/01/2016 | Sales Tax for Outparcel Ground Rent (11/2016) | | 494.08 | 0.00 | 0.00 | C-276974 | No |
| 12/01/2016 | Outparcel Ground Rent (12/2016) | | 7,058.33 | 0.00 | 7,058.33 | C-278771 | No |
| 12/01/2016 | Sales Tax for Outparcel Ground Rent (12/2016) | | 494.08 | 0.00 | 7,552.41 | C-278772 | No |
| 12/02/2016 | Chk# 3256693 Dec16 Rent | | 0.00 | 7,552.41 | 0.00 | R-95361 | |
| 12/28/2016 | Chk# 3259473 Prepayment | | 0.00 | 7,552.41 | (7,552.41) | R-96083 | |
| 01/01/2017 | Outparcel Ground Rent (01/2017) | | 7,058.33 | 0.00 | (494.08) | C-281380 | No |
| 01/01/2017 | Sales Tax for Outparcel Ground Rent (01/2017) | | 494.08 | 0.00 | 0.00 | C-281381 | No |
| 02/01/2017 | Outparcel Ground Rent (02/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-283710 | No |
| 02/01/2017 | Sales Tax for Outparcel Ground Rent (02/2017) | | 494.08 | 0.00 | 7,552.41 | C-283711 | No |
| 02/01/2017 | Chk# 3262497 Feb Rent | | 0.00 | 7,552.41 | 0.00 | R-97131 | |
| 03/01/2017 | Outparcel Ground Rent (03/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-286529 | No |
| 03/01/2017 | Sales Tax for Outparcel Ground Rent (03/2017) | | 494.08 | 0.00 | 7,552.41 | C-286530 | No |
| 03/02/2017 | Chk# 3265419 March Rent | | 0.00 | 7,552.41 | 0.00 | R-98205 | |
| 04/01/2017 | Outparcel Ground Rent (04/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-289067 | No |
| 04/01/2017 | Sales Tax for Outparcel Ground Rent (04/2017) | | 494.08 | 0.00 | 7,552.41 | C-289068 | No |
| 04/03/2017 | Chk# 3267969 April Rent | | 0.00 | 7,552.41 | 0.00 | R-98964 | |
| 05/01/2017 | Outparcel Ground Rent (05/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-291936 | No |
| 05/01/2017 | Sales Tax for Outparcel Ground Rent (05/2017) | | 494.08 | 0.00 | 7,552.41 | C-291937 | No |
| 05/01/2017 | Chk# 3270795 May Rent | | 0.00 | 7,552.41 | 0.00 | R-99925 | |
| 06/01/2017 | Outparcel Ground Rent (06/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-294757 | No |
| 06/01/2017 | Sales Tax for Outparcel Ground Rent (06/2017) | | 494.08 | 0.00 | 7,552.41 | C-294758 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 06/05/2017 | Chk# 3273353 June Rent | | 0.00 | 7,552.41 | 0.00 | R-101007 | |
| 07/01/2017 | Outparcel Ground Rent (07/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-299024 | No |
| 07/01/2017 | Sales Tax for Outparcel Ground Rent (07/2017) | | 494.08 | 0.00 | 7,552.41 | C-299025 | No |
| 07/03/2017 | Chk# 3275675 July Rent | | 0.00 | 7,552.41 | 0.00 | R-101845 | |
| 08/01/2017 | Outparcel Ground Rent (08/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-300580 | No |
| 08/01/2017 | Sales Tax for Outparcel Ground Rent (08/2017) | | 494.08 | 0.00 | 7,552.41 | C-300581 | No |
| 08/02/2017 | Chk# 3278237 Aug Rent | | 0.00 | 7,552.41 | 0.00 | R-102913 | |
| 09/01/2017 | Outparcel Ground Rent (09/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-303211 | No |
| 09/01/2017 | Sales Tax for Outparcel Ground Rent (09/2017) | | 494.08 | 0.00 | 7,552.41 | C-303212 | No |
| 09/01/2017 | Chk# 3280737 Sept Rent | | 0.00 | 7,552.41 | 0.00 | R-103937 | |
| 10/01/2017 | Outparcel Ground Rent (10/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-306954 | No |
| 10/01/2017 | Sales Tax for Outparcel Ground Rent (10/2017) | | 494.08 | 0.00 | 7,552.41 | C-306955 | No |
| 10/02/2017 | Chk# 3283057 Oct Rent | | 0.00 | 7,552.41 | 0.00 | R-104921 | |
| 10/30/2017 | Chk# 3285766 Prepayment | | 0.00 | 7,552.41 | (7,552.41) | R-105865 | |
| 11/01/2017 | Outparcel Ground Rent (11/2017) | | 7,058.33 | 0.00 | (494.08) | C-309518 | No |
| 11/01/2017 | Sales Tax for Outparcel Ground Rent (11/2017) | | 494.08 | 0.00 | 0.00 | C-309519 | No |
| 12/01/2017 | Outparcel Ground Rent (12/2017) | | 7,058.33 | 0.00 | 7,058.33 | C-312290 | No |
| 12/01/2017 | Sales Tax for Outparcel Ground Rent (12/2017) | | 494.08 | 0.00 | 7,552.41 | C-312291 | No |
| 12/01/2017 | Chk# 3287979 Dec Rent | | 0.00 | 7,552.41 | 0.00 | R-106905 | |
| 01/01/2018 | Outparcel Ground Rent (01/2018) | | 7,058.33 | 0.00 | 7,058.33 | C-315086 | No |
| 01/01/2018 | Sales Tax for Outparcel Ground Rent (01/2018) | | 479.97 | 0.00 | 7,538.30 | C-315087 | No |
| 01/02/2018 | Chk# 3290354 Jan Rent | | 0.00 | 7,552.41 | (14.11) | R-107948 | |
| 02/01/2018 | Outparcel Ground Rent (02/2018) | | 7,058.33 | 0.00 | 7,044.22 | C-318124 | No |
| 02/01/2018 | Sales Tax for Outparcel Ground Rent (02/2018) | | 479.97 | 0.00 | 7,524.19 | C-318125 | No |
| 02/01/2018 | Chk# 3293047 Feb Rent | | 0.00 | 7,524.19 | 0.00 | R-108992 | |
| 03/01/2018 | Outparcel Ground Rent (03/2018) | | 7,058.33 | 0.00 | 7,058.33 | C-321242 | No |
| 03/01/2018 | Sales Tax for Outparcel Ground Rent (03/2018) | | 479.97 | 0.00 | 7,538.30 | C-321243 | No |
| 03/02/2018 | Chk# 3295618 March Rent | | 0.00 | 7,538.30 | 0.00 | R-110219 | |
| 03/28/2018 | Chk# 3297599 Prepayment | | 0.00 | 7,538.30 | (7,538.30) | R-111168 | |
| 04/01/2018 | Outparcel Ground Rent (04/2018) | | 7,058.33 | 0.00 | (479.97) | C-325087 | No |
| 04/01/2018 | Sales Tax for Outparcel Ground Rent (04/2018) | | 479.97 | 0.00 | 0.00 | C-325088 | No |
| 05/01/2018 | Outparcel Ground Rent (05/2018) | | 7,058.33 | 0.00 | 7,058.33 | C-328344 | No |
| 05/01/2018 | Sales Tax for Outparcel Ground Rent (05/2018) | | 479.97 | 0.00 | 7,538.30 | C-328345 | No |
| 05/01/2018 | Chk# 3300304 May Rent | | 0.00 | 7,538.30 | 0.00 | R-112516 | |
| 05/30/2018 | Chk# 3302409 Prepayment | | 0.00 | 7,538.30 | (7,538.30) | R-113778 | |
| 06/01/2018 | Outparcel Ground Rent (06/2018) | | 7,058.33 | 0.00 | (479.97) | C-332532 | No |
| 06/01/2018 | Sales Tax for Outparcel Ground Rent (06/2018) | | 479.97 | 0.00 | 0.00 | C-332533 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|---|---|---|---|---|---|---|---|
| 07/01/2018 | Outparcel Ground Rent (07/2018) | | 7,058.33 | 0.00 | 7,058.33 | C-335796 | No |
| 07/01/2018 | Sales Tax for Outparcel Ground Rent (07/2018) | | 479.97 | 0.00 | 7,538.30 | C-335797 | No |
| 07/02/2018 | Chk# 3304458 July Rent | | 0.00 | 7,538.30 | 0.00 | R-115103 | |
| 07/30/2018 | Chk# 3306536 Prepayment | | 0.00 | 8,292.13 | (8,292.13) | R-116572 | |
| 08/01/2018 | Outparcel Ground Rent (08/2018) | | 7,764.17 | 0.00 | (527.96) | C-340555 | No |
| 08/01/2018 | Sales Tax for Outparcel Ground Rent (08/2018) | | 527.96 | 0.00 | 0.00 | C-340556 | No |
| 08/27/2018 | Chk# 3308242 Prepayment | | 0.00 | 8,292.13 | (8,292.13) | R-118083 | |
| 09/01/2018 | Outparcel Ground Rent (09/2018) | | 7,764.17 | 0.00 | (527.96) | C-344851 | No |
| 09/01/2018 | Sales Tax for Outparcel Ground Rent (09/2018) | | 527.96 | 0.00 | 0.00 | C-344852 | No |
| 10/01/2018 | Outparcel Ground Rent (10/2018) | | 7,764.17 | 0.00 | 7,764.17 | C-350920 | No |
| 10/01/2018 | Sales Tax for Outparcel Ground Rent (10/2018) | | 527.96 | 0.00 | 8,292.13 | C-350921 | No |
| 10/02/2018 | Chk# 0003310066 October Rent | | 0.00 | 8,292.13 | 0.00 | R-119833 | |
| 10/31/2018 | Chk# 0003311920 Prepayment | | 0.00 | 8,292.13 | (8,292.13) | R-120886 | |
| 11/01/2018 | Outparcel Ground Rent (11/2018) | | 7,764.17 | 0.00 | (527.96) | C-354583 | No |
| 11/01/2018 | Sales Tax for Outparcel Ground Rent (11/2018) | | 527.96 | 0.00 | 0.00 | C-354584 | No |
| 11/30/2018 | Chk# 0003313215 Prepayment | | 0.00 | 8,292.13 | (8,292.13) | R-122110 | |
| 12/01/2018 | Outparcel Ground Rent (12/2018) | | 7,764.17 | 0.00 | (527.96) | C-356927 | No |
| 12/01/2018 | Sales Tax for Outparcel Ground Rent (12/2018) | | 527.96 | 0.00 | 0.00 | C-356928 | No |
| 12/31/2018 | Chk# 0003314753 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-123352 | |
| 01/01/2019 | Outparcel Ground Rent (01/2019) | | 7,764.17 | 0.00 | (520.20) | C-359340 | No |
| 01/01/2019 | Sales Tax for Outparcel Ground Rent (01/2019) | | 520.20 | 0.00 | 0.00 | C-359341 | No |
| 01/29/2019 | Chk# 0003316513 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-124712 | |
| 02/01/2019 | Outparcel Ground Rent (02/2019) | | 7,764.17 | 0.00 | (520.20) | C-365186 | No |
| 02/01/2019 | Sales Tax for Outparcel Ground Rent (02/2019) | | 520.20 | 0.00 | 0.00 | C-365187 | No |
| 03/01/2019 | Outparcel Ground Rent (03/2019) | | 7,764.17 | 0.00 | 7,764.17 | C-369549 | No |
| 03/01/2019 | Sales Tax for Outparcel Ground Rent (03/2019) | | 520.20 | 0.00 | 8,284.37 | C-369550 | No |
| 03/01/2019 | Chk# 0033172141 March Rent | | 0.00 | 8,284.37 | 0.00 | R-126445 | |
| 03/28/2019 | Chk# 0033173404 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-127787 | |
| 04/01/2019 | Outparcel Ground Rent (04/2019) | | 7,764.17 | 0.00 | (520.20) | C-371129 | No |
| 04/01/2019 | Sales Tax for Outparcel Ground Rent (04/2019) | | 520.20 | 0.00 | 0.00 | C-371130 | No |
| 05/01/2019 | Outparcel Ground Rent (05/2019) | | 7,764.17 | 0.00 | 7,764.17 | C-377188 | No |
| 05/01/2019 | Sales Tax for Outparcel Ground Rent (05/2019) | | 520.20 | 0.00 | 8,284.37 | C-377189 | No |
| 05/02/2019 | Chk# 10305 APR19 Rent | | 0.00 | 8,284.37 | 0.00 | R-129587 | |
| 05/29/2019 | Chk# 11505 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-131110 | |
| 06/01/2019 | Outparcel Ground Rent (06/2019) | | 7,764.17 | 0.00 | (520.20) | C-383005 | No |
| 06/01/2019 | Sales Tax for Outparcel Ground Rent (06/2019) | | 520.20 | 0.00 | 0.00 | C-383006 | No |
| 07/01/2019 | Outparcel Ground Rent (07/2019) | | 7,764.17 | 0.00 | 7,764.17 | C-386726 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 07/01/2019 | Sales Tax for Outparcel Ground Rent (07/2019) | | 520.20 | 0.00 | 8,284.37 | C-386727 | No |
| 07/01/2019 | Chk# 12626 July Rent | | 0.00 | 8,284.37 | 0.00 | R-132786 | |
| 07/29/2019 | Chk# 13686 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-133840 | |
| 08/01/2019 | Outparcel Ground Rent (08/2019) | | 7,764.17 | 0.00 | (520.20) | C-390937 | No |
| 08/01/2019 | Sales Tax for Outparcel Ground Rent (08/2019) | | 520.20 | 0.00 | 0.00 | C-390938 | No |
| 08/30/2019 | Chk# 14858 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-135147 | |
| 09/01/2019 | Outparcel Ground Rent (09/2019) | | 7,764.17 | 0.00 | (520.20) | C-393681 | No |
| 09/01/2019 | Sales Tax for Outparcel Ground Rent (09/2019) | | 520.20 | 0.00 | 0.00 | C-393682 | No |
| 09/20/2019 | 2018 RET | | 1,486.18 | 0.00 | 1,486.18 | C-397542 | No |
| 09/20/2019 | Chk# 13616 2018 RET Payment | | 0.00 | 1,486.18 | 0.00 | R-136108 | |
| 09/30/2019 | Chk# 15950 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-136554 | |
| 10/01/2019 | Outparcel Ground Rent (10/2019) | | 7,764.17 | 0.00 | (520.20) | C-398073 | No |
| 10/01/2019 | Sales Tax for Outparcel Ground Rent (10/2019) | | 520.20 | 0.00 | 0.00 | C-398074 | No |
| 10/29/2019 | Chk# 17054 Prepayment | | 0.00 | 8,284.37 | (8,284.37) | R-137999 | |
| 11/01/2019 | Outparcel Ground Rent (11/2019) | | 7,764.17 | 0.00 | (520.20) | C-403317 | No |
| 11/01/2019 | Sales Tax for Outparcel Ground Rent (11/2019) | | 520.20 | 0.00 | 0.00 | C-403318 | No |
| 12/01/2019 | Outparcel Ground Rent (12/2019) | | 7,764.17 | 0.00 | 7,764.17 | C-407546 | No |
| 12/01/2019 | Sales Tax for Outparcel Ground Rent (12/2019) | | 520.20 | 0.00 | 8,284.37 | C-407547 | No |
| 12/03/2019 | Chk# 18090 December Rent | | 0.00 | 8,284.37 | 0.00 | R-139533 | |
| 12/30/2019 | Chk# 19597 Prepayment | | 0.00 | 8,268.84 | (8,268.84) | R-140596 | |
| 01/01/2020 | Outparcel Ground Rent (01/2020) | | 7,764.17 | 0.00 | (504.67) | C-412245 | No |
| 01/01/2020 | Sales Tax for Outparcel Ground Rent (01/2020) | | 504.67 | 0.00 | 0.00 | C-412246 | No |
| 01/31/2020 | Chk# 21820 Prepayment | | 0.00 | 8,268.84 | (8,268.84) | R-141900 | |
| 02/01/2020 | Outparcel Ground Rent (02/2020) | | 7,764.17 | 0.00 | (504.67) | C-420964 | No |
| 02/01/2020 | Sales Tax for Outparcel Ground Rent (02/2020) | | 504.67 | 0.00 | 0.00 | C-420965 | No |
| 03/01/2020 | Base Rent (03/2020) | | 7,764.17 | 0.00 | 7,764.17 | C-426244 | No |
| 03/01/2020 | Sales Tax for Base Rent (03/2020) | | 504.67 | 0.00 | 8,268.84 | C-426245 | No |
| 03/02/2020 | Chk# 23609 Mar20 Rent | | 0.00 | 8,268.84 | 0.00 | R-143114 | |
| 04/01/2020 | Base Rent (04/2020) | | 7,764.17 | 0.00 | 7,764.17 | C-430633 | No |
| 04/01/2020 | Sales Tax for Base Rent (04/2020) | | 504.67 | 0.00 | 8,268.84 | C-430634 | No |
| 04/06/2020 | Late Charges, 10% of $7764.17 | | 776.42 | 0.00 | 9,045.26 | C-435875 | No |
| 04/28/2020 | 2019 Real Estate taxes not paid by tenant | | 26,710.28 | 0.00 | 35,755.54 | C-437816 | No |
| 05/01/2020 | Base Rent (05/2020) | | 7,764.17 | 0.00 | 43,519.71 | C-438425 | No |
| 05/01/2020 | Sales Tax for Base Rent (05/2020) | | 504.67 | 0.00 | 44,024.38 | C-438426 | No |
| 05/28/2020 | May Late Fees | | 504.67 | 0.00 | 44,529.05 | C-446693 | No |
| 06/01/2020 | Base Rent (06/2020) | | 7,764.17 | 0.00 | 52,293.22 | C-446696 | No |
| 06/01/2020 | Sales Tax for Base Rent (06/2020) | | 504.67 | 0.00 | 52,797.89 | C-446697 | No |

# Lease Ledger

Date: 01/14/2021

Property: hci

Tenant: cf-rt   Ruby Tuesday Store #7432

From Date: 08/01/2003  To Date: 07/31/2023

Move In Date: 04/11/2003

| Date | Description | Unit | Charge | Payment | Balance | Chg/Rec | Hold |
|------|-------------|------|--------|---------|---------|---------|------|
| 07/01/2020 | Base Rent (07/2020) | | 7,764.17 | 0.00 | 60,562.06 | C-450501 | No |
| 07/01/2020 | Sales Tax for Base Rent (07/2020) | | 504.67 | 0.00 | 61,066.73 | C-450502 | No |
| 07/27/2020 | Winderweedle invoice 378741 | | 1,685.00 | 0.00 | 62,751.73 | C-455851 | No |
| 08/01/2020 | Base Rent (08/2020) | | 7,764.17 | 0.00 | 70,515.90 | C-455008 | No |
| 08/01/2020 | Sales Tax for Base Rent (08/2020) | | 504.67 | 0.00 | 71,020.57 | C-455009 | No |
| 08/03/2020 | Winderweedle legal inv 379333 | | 69.52 | 0.00 | 71,090.09 | C-458684 | No |
| 08/31/2020 | WHWW July 2020 Prof Svcs Matter ID: 88424 | | 2,096.00 | 0.00 | 73,186.09 | C-462849 | No |
| 09/01/2020 | Base Rent (09/2020) | | 7,764.17 | 0.00 | 80,950.26 | C-460298 | No |
| 09/01/2020 | Sales Tax for Base Rent (09/2020) | | 504.67 | 0.00 | 81,454.93 | C-460299 | No |
| 09/08/2020 | Negotiate Balance due approved by MB | | (2,096.00) | 0.00 | 79,358.93 | C-463413 | No |
| 09/29/2020 | Chk# 28956 Aug 2020 sales tax | | 0.00 | 504.67 | 78,854.26 | R-151517 | |
| 09/30/2020 | Chk# 28352 rent for april to sept & balance prepay oct rent | | 0.00 | 60,381.88 | 18,472.38 | R-151538 | |
| 10/01/2020 | Base Rent (10/2020) | | 7,764.17 | 0.00 | 26,236.55 | C-464553 | No |
| 10/01/2020 | Sales Tax for Base Rent (10/2020) | | 504.67 | 0.00 | 26,741.22 | C-464554 | No |
| 10/01/2020 | Per Amendment, Atty Fees | | 2,500.00 | 0.00 | 29,241.22 | C-467881 | No |
| 10/06/2020 | Chk# 29425 Oct rent NSFed by ctrl# 152351 Check Returned | | 0.00 | 8,268.84 | 20,972.38 | R-151971 | |
| 10/10/2020 | Returned check charge | | 35.00 | 0.00 | 21,007.38 | C-467925 | No |
| 10/10/2020 | Chk# 29425 NSF receipt Ctrl# 151971 Check Returned | | 0.00 | (8,268.84) | 29,276.22 | R-152351 | |
| 11/01/2020 | Base Rent (11/2020) | | 7,764.17 | 0.00 | 37,040.39 | C-468440 | No |
| 11/01/2020 | Sales Tax for Base Rent (11/2020) | | 504.67 | 0.00 | 37,545.06 | C-468441 | No |
| 12/01/2020 | Base Rent (12/2020) | | 7,764.17 | 0.00 | 45,309.23 | C-472733 | No |
| 12/01/2020 | Sales Tax for Base Rent (12/2020) | | 504.67 | 0.00 | 45,813.90 | C-472734 | No |
| 12/16/2020 | 2020 Real Estate Tax | | 25,098.60 | 0.00 | 70,912.50 | C-476833 | No |
| 01/01/2021 | Base Rent (01/2021) | | 7,764.17 | 0.00 | 78,676.67 | C-477480 | No |
| 01/01/2021 | Sales Tax for Base Rent (01/2021) | | 504.67 | 0.00 | 79,181.34 | C-477481 | No |
| 01/11/2021 | Chk# 102127 Jan rent & partial 2020 real estate tax | | 0.00 | 12,056.69 | 67,124.65 | R-155474 | |