# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RTI Holding Company, LLC, *et al.*,[1] | Case No. 20-12456 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: February 4, 2021 at 1:00 p.m. (ET)**<br>**Objection Deadline: January 29, 2021 at 4:00 p.m. (ET)**<br>Re: Docket Nos. 355, 761, 886 & 971 |

## BNA ASSOCIATES LLC'S OBJECTION TO CONFIRMATION OF PLAN AND CANCELLATION OF SALE AND JOINDER

BNA Associates LLC ("BNA"), by and through its counsel, hereby objects (the "Objection") to (a) *Debtors' Amended Chapter 11 Plan* [Docket No. 761] (as amended, the "Plan"), and (b) cancellation of the sale approved by the *Motion of Debtors for an Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Approving Certain Bidder Incentives in Connection with the Debtors' Entry into a Stalking Horse Agreement, if any, and (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Sale Motion") [Docket No. 355], and joins in the *Objection of Maryville*

---

[1] The Debtors in these chapter 11 cases and the last four digits of each of the Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise. LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

2294852v2

*College to Confirmation of Debtors' Amended Chapter 11 Plan, and Objection to Debtors Assumption and Assignment of Unexpired Lease Regarding the RT Lodge* [Docket No. 971] (the "College Objection"). In support of this Objection, BNA respectfully states as follows:[2]

## PRELIMINARY STATEMENT[3]

1. The Debtors' proposed Plan and unexplained cancellation of the sales process do not maximize the value of the Debtors' estates. In particular, BNA submitted a binding bid for the RT Lodge for $5.3 million, which such assets, ***according to the Debtors' own filings admit***, have stated value of $5.1 million (see Restructuring Support Agreement, Docket No. 354 at 140, 168) or at most $5.3 million (see Plan at 27). Importantly, however, Goldman Sachs Specialty Lending Group, L.P. ("GSSLP") purports to have a security interest in the RT Lodge ***solely in the amount of*** $5.252 million (see College Objection, Ex. 4).[4]

2. By rejecting BNA's bid for $5.3 million, which would pay off the purported (and potentially avoidable) secured debt in full and provide additional proceeds for unsecured claims, the Debtors have failed to maximize value through their sale process. Relatedly, with respect to confirmation of the proposed Plan, the Debtors, therefore, fail to satisfy the "best interests" tests of Bankruptcy Code section 1129(a)(7) because impaired creditors will not receive at least as

---

[2] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan or Sale Motion, as applicable.

[3] BNA was a bidder during the sales process that was cancelled, without explanation, on January 18, 2021 [Docket No. 886]. As such, BNA has standing to examine, test, and object to the sufficiency of the sales process and, due to the cancellation of the auction component of the proposed Plan and toggle to the component of the proposed Plan that would distribute the RT Lodge to GSSLP, by extension, the proposed Plan. See, e.g., Kambro Assocs., LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 273-74 (2d Cir. 1997) ("determination of whether an unsuccessful bidder has appellate standing and the merits of that bidder's claim 'merge,' in that disposition of both requires review of the Bankruptcy Court's hearing and decision on the propriety of the sale") (internal quotation marks and ellipsis omitted); In re Ravn Air Grp., Inc., Case No. 20-10755 (BLS) (Bankr. D. Del. Aug. 4, 2020), Hr'g Tr. 17:20-24 (Judge Shannon stating that "although the Court has generally looked at aggrieved bidders as not having standing to complain about the debtors' business judgment,…they always have standing to challenge the sufficiency or integrity of the process.") (transcript excerpt attached hereto as **Exhibit A**).

[4] Such purported security interest was created by a Leasehold Deed of Trust, which was filed on August 14, 2020, and within the 90-day preference period.

much in reorganization as it would in liquidation. See 11 U.S.C. § 1129(a)(7); see also 7 COLLIER ON BANKRUPTCY ¶ 1129.02[7] (16th ed. 2020) (Section 1129(a)(7) "is an individual guaranty to each creditor or interest holder that it will receive at least as much in reorganization as it would in liquidation.").

3. For these same reasons, it appears the Plan has not been proposed in good faith, as required by Bankruptcy Code Section 1129(a)(3). See 11 U.S.C. § 1129(a)(3) (requiring that the "proposed in good faith and not by any means forbidden by law"); see also In re Leslie Fay Cos., Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting In re Jorgensen, 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986)) (requiring a showing that the plan reflects "fundamental fairness in dealing with the creditors"). Accordingly, and as described below, the Plan cannot be confirmed as proposed.

4. Additionally BNA is entitled to discovery on these points of which it has sought in advance of filing this Objection in order to provide the Debtors with as much notice as possible. See *Notice of Deposition Upon Oral Examination of Designated Representatives of Debtors Related to Debtors' Chapter 11 Plan and Sale Motion* [Docket No. 948] (the "Deposition Notice"); *Notice of Service Regarding BNA Associates LLC's First Request for Production of Documents and Electronically Stored Information to Debtors* [Docket No. 953] (the "Document Requests").

**RELEVANT BACKGROUND**

5. The RT Lodge is a historic lodge located on the campus of Maryville College (the "College") in Maryville, Tennessee. (Docket No. 3 at 9; Declaration of Bryan F. Coker ("Coker Dec.") at ¶¶ 2-4.)[5]

---

[5] The Declaration of Bryan F. Coker is Exhibit 6 to the College Objection. For convenience of the Court, a copy of the Coker Dec. is attached hereto as **Exhibit B**.

3

2294852v2

6. Maryville, Tennessee, is also the Debtors' corporate headquarters. (Docket No. 3 at 5.) In 1997, the College partnered with Debtor Ruby Tuesday, Inc. ("RTI") to improve the facility. (Coker Dec. at ¶ 4.) This decision was made because of the strong relationship between the College and Samuel E. Beall, III, who at the time was the Chairman and CEO of RTI. (Docket No. 971, Ex. 1; Coker Dec. at ¶ 4.)

7. In 2020, BNA entered into a contract with RTI to acquire assets relating to the RT Lodge. (Declaration of Philip Welker ("Welker Dec.") at ¶ 2.)[6]

8. On March 14, 2020, BNA and the RTI entered into an asset purchase and sale agreement relating to the RT Lodge. Pursuant to the agreement, BNA would pay RTI $5,250,000.00.

9. During a due diligence period, the College was provided information about BNA and its affiliate, Oliver Hospitality, LLC, and its experience in managing properties similar to the RT Lodge. (Welker Dec. at ¶ 3.) In addition, a representative of BNA met with RT Lodge staff and participated in a conference call with the President of the College. (Id.) BNA and Oliver Hospitality were provided a copy of all Leases, Contracts and Agreements, including the "Memorandum of Understanding for the Maryville College and RT Lodge Partnership," which was entered into between the College and RTI in May of 2018. (Id.) The College was clear that the Memorandum of Understanding would apply to the anticipated relationship with BNA and Oliver Hospitality. (Id.) BNA and Oliver Hospitality supported the Memorandum of Understanding and worked with the College to expand upon and specify the Mutually Beneficial Opportunities. (Id.) For example, BNA increased the job and internship opportunities for students of the College interested in hospitality business management by expanding the current

---

[6] The Declaration of Philip Welker is Exhibit 5 to the College Objection. For convenience of the Court, a copy of the Welker Dec. is attached hereto as **Exhibit C**.

operations to include more hotel operation functions such as revenue management, marketing & social media, and creating a spa program. (Id.) Working with the College BNA also made plans to partner with the College's Outdoor Studies and Tourism Program through marketing the Mountain Challenge adventure and teambuilding to retreat groups booked at the Lodge. (Id.)

10.     After satisfying the College of BNA's and Oliver Hospitality's ability to operate the RT Lodge and be the type of partner the College was looking for, and after said entities' actions to become an active partner with the College to operate the Lodge, the College agreed to permit the assignment to BNA, Oliver Hospitality or RT Lodge, LLC of the documents governing the RT Lodge. (Welker Dec. at ¶ 4.) The College's consent to the assignment is reflected in the Second Amendment to Lease dated June 26, 2020. (Id.) Through the Second Amendment, the College also consented to the extension of the term of the Lease, which was an accommodation to BNA in light of the financial commitments BNA was making to the College. (Id.)

11.     Throughout the negotiations with RTI, BNA worked with Stephanie Medley, RTI's Chief Strategy Officer. (Welker Dec. at ¶ 6.) In August and September 2020, Ms. Medley indicated that the faster the RT Lodge deal could close the better. (Id.) BNA had financing in place and was prepared to close in September 2020, with payment of $5,250,000.00 for the RT Lodge. (Id.) On September 21, 2020, counsel for BNA sent a letter to Debbie Windham, RTI's director of real estate, confirming BNA's intent to proceed with the purchase of the RT Lodge.

12.     Unbeknownst to BNA, RTI's lender, GSSLP, had contacted the College in July 2020 expressing a strong interest in acquiring the RT Lodge lease and seeking the College's approval for the assignment. (Coker Dec. at ¶ 6.) After conducting its due diligence, the College declined GSSLP as a partner in the operation of the RT Lodge. (Id.) At the same time, the

2294852v2

College expressed to GSSLP its strong desire for the planned acquisition by BNA and Oliver Hospitality to move forward and be finalized. (Id.)

13. Also unbeknownst to BNA, on August 14, 2020, GSSLP recorded with the Blount County, Tennessee, Register of Deeds a Leasehold Deed of Trust relating to the RT Lodge. (Docket No. 971, Ex. 4.) The Leasehold Deed of Trust was signed by RTI on August 11, 2020. The Leasehold Deed of Trust purports to secure obligations under the Credit Agreement with a maturity date of December 21, 2022. (Id.) On information and belief, this is the credit facility dated as of December 21, 2017. (Docket No. 3 at ¶ 20.) The Leasehold Deed of Trust further states that its maximum principal indebtedness is $5,252,000.00. (Docket No. 971, Ex. 4.) BNA did not learn of the Leasehold Deed of Trust until after the Leasehold Deed of Trust had been recorded and the final title report was provided before the scheduled closing in September 2020. (Welker Dec. at ¶ 5.)

14. Although BNA was prepared to close the transaction for the RT Lodge in September 2020, Ms. Medley informed BNA that the closing could not occur because GSSLP had not consented to the transaction. (Welker Dec. at ¶ 6.) BNA continued working with Ms. Medley to close the transaction. (Welker Dec. at ¶ 9.) Ms. Medley informed BNA, without a given reason, that GSSLP was not giving a timeline of approval of the sale even though the sales price satisfied the Leasehold Deed of Trust. (Id.) Ultimately, BNA received a letter dated October 30, 2020, from RTI's lawyer stating "that Seller's Lender has not consented to the proposed transaction" and that the purchase agreement relating to the RT Lodge was being terminated. (Id.) BNA understands of no reason why the transaction with RTI would not close other than GSSLP's refusal to release its Leasehold Deed of Trust. (Id.) GSSLP blocked the transaction between BNA and RTI that the College had approved. (Coker Dec. at ¶ 6.)

15. While GSSLP was refusing to approve BNA's payment of $5,250,000.00 for the RT Lodge, GSSLP and RTI were entering into an agreement that valued the RT Lodge at less than the amount BNA was ready, willing and able to pay. On September 18, 2020, GSSLP signed a Restructuring Support Agreement Term Sheet stating that the value of the RT Lodge is $5,100,000.00. (Docket No. 354 at 140, 168.) This is $150,000.00 less than BNA was ready, willing and able to pay for the RT Lodge.

16. The Debtors' Plan, filed December 21, 2020, states that the value of the RT Lodge is $5,300,000.00. (Docket No. 761 at 27.) The Plan provides for the RT Lodge to be sold, with the confirmation hearing being the sale hearing and the confirmation order being the order approving sale under Sections 363 and/or 1123(a)(5)(D) of the Bankruptcy Code. (Docket No. 761 at 7.) If the RT Lodge is not sold, the Plan provides for GSSLP to own the RT Lodge Company, which will own the RT Lodge. (Docket No. 761 at 26.) However, the Plan Supplement states that "new GS entity" will own RTI Holding Company, LLC which will own RTI. (Docket No. 920 at 206.) The Plan Supplement is not clear as to which entity will own the RT Lodge. (Id.)

17. On January 14, 2021, BNA submitted a bid of $5,300,000.00 for the purchase of the RT Lodge. (Welker Dec. at ¶ 10.) The bidding procedures permitted a bidder to bid for a portion of the RTI assets or all the assets. (Docket No. 585 at 15.) The bidding procedures also permitted the auction to be conducted in the manner designed to maximize value based on the nature and extent of the bids. (Docket No. 585 at 22.) Prior to BNA submitting its bid, the Debtors' investment banker, FocalPoint Securities, LLC ("FocalPoint"), informed BNA that another bidder existed who was interested in the RTI assets other than the RT Lodge and that the bids of BNA and this other bidder could be considered together for purposes of the auction. On

2294852v2

January 18, 2021, FocalPoint informed BNA that there was an unidentified problem with another unidentified bidder that would likely result in the cancellation of the auction. (Welker Dec. at ¶ 10.) On January 18, 2021, the Debtors filed a notice of cancellation of the auction. (Docket No. 886.)

18. Thereafter, on January 25, 2021, BNA reached out to the Debtors informally to request information related to the sales process and unexplained cancellation of the auction. On January 26, 2021, BNA emailed the Debtors to informally request the production of documents and information and to advise of the forthcoming filing of the Deposition Notice in order to comply with Local Rule 7030-1(b). On January 27, 2021, having received no response from the Debtors, BNA filed the Deposition Notice, seeking a deposition of the Debtors' 30(b)(6) witness on February 2, 2021 at 9:00 a.m. (ET). On January 28, 2021, still having received no response from the Debtors, BNA filed the Document Requests, attached hereto as **Exhibit D**, seeking production of documents no later than February 1, 2021 at 9:00 a.m. (ET). Throughout BNA's correspondence with the Debtors, BNA requested to meet and confer on the Deposition Notice and Document Requests. In the evening of January 28, 2021, the Debtors, for the first time, responded to BNA with a letter, attached hereto as **Exhibit E**, raising a number of issues and requesting to meet and confer. As of the time of this filing, the parties have a meet and confer conference scheduled.

## **OBJECTION**

19. "When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." Matter of Embrace Systems Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995). "If there is any degree of fraud, unfairness, or mistake, the bankruptcy court should assess the impact of those factors on

the sale at issue when the offer is compared to the court's finding of valuation of the assets to be sold." Id. Indeed, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See, e.g., In re Integrated Resources, Inc., 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997); In re Cybergenics Corp., 330 F.3d 548, 573 (3d Cir. 2003) (en banc) (explaining debtor has a fiduciary duty to maximize the value of the bankruptcy estate).

20.    BNA's pre-petition contract to purchase the RT Lodge for $5,250,000.00 was greater than the $5,100,000.00 value of the RT Lodge as agreed-upon by RTI and GSSLP. Even so, GSSLP blocked BNA's purchase of the assets. GSSLP blocked the purchase using a Leasehold Deed of Trust recorded on the eve of closing and nearly three years after GSSLP had loaned funds to RTI.

21.    As part of these jointly administered cases, RTI and GSSLP increased their agreed upon value of the RT Lodge to $5,300,000.00 and initiated a sale process. BNA likewise increased the purchase price it would pay for the RT Lodge. Although BNA was willing to bid at least the stated value of the RT Lodge, the Debtors cancelled the auction without explanation. Importantly, the purported maximum principal indebtedness secured by the RT Lodge is *less than* BNA's bid.[7]

22.    The Debtors have a fiduciary duty to maximize the value of their assets when they run a sale process. See, e.g., Cybergenics, 330 F.3d at 573. Even though BNA has repeatedly

---

[7] BNA still desires to acquire the RT Lodge and stands ready, willing and able to close the transaction regarding the RT Lodge.

offered to pay an amount equal to or greater than the Debtors' stated value of the RT Lodge (***and more than the stated maximum principal indebtedness secured by the RT Lodge***), the Debtors have been unwilling to move forward with the sale of these assets or to provide BNA with any justification for their refusal.  Given that the purported maximum principal indebtedness secured by the RT Lodge is less than BNA's initial bid, the Debtors have failed to maximize the value of their assets through the sales process.

23.     The apparent failure to maximize the value of assets combined with the lack of justification for the decision to cancel the sale leads to only one result—the Court cannot confirm the components of the Plan that purport to convey the RT Lodge to GSSLP because the proposed Plan fails to satisfy the requirements of Bankruptcy Code section 1129(a)(7).  A plan of reorganization "may not be confirmed where the evidence is not sufficient on which to base an independent factual determination that the proposed plan is in the best interests of the creditors pursuant to section 1129(a)(7)."  In re MCorp Fin., Inc., 137 B.R. 219, 228 (Bankr. S.D. Tex. 1992); see also In re Cantu, 784 F.3d 253, 262 (5th Cir. 2015) ("A reorganization plan must either be accepted by each creditor or satisfy the Code's 'best interests of the creditor' rule, which requires that the holder of a claim receive under the reorganization plan at least as much as the holder would receive in the event of a chapter 7 liquidation"); 7 Collier, *supra*, ¶ 1129.02[7] (Section 1129(a)(7) provides "an individual guaranty to each creditor or interest holder that it will receive at least as much in reorganization as it would in liquidation.").  Moreover, the best interests test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan. See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999).

24. As described above, the sale of the RT Lodge to BNA for $5.3 million will satisfy in full the maximum principal indebtedness of GSSLP's Leasehold Deed of Trust in the RT Lodge and provide additional unencumbered proceeds to the Debtors' estate. The proposed Plan does not provide the same value with respect to the RT Lodge. Therefore, the proposed Plan is not in the best interests of creditors and should be denied on this ground alone.

25. For these same reasons, it does not appear that the Plan has been proposed in good faith, as required by Bankruptcy Code section 1129(a)(3). To be confirmable, a plan of reorganization must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In determining whether a chapter 11 plan has been proposed in good faith, courts look to whether the plan is proposed "with 'honesty and good intentions' and with 'a basis for expecting that a reorganization can be effected.'" Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988) (quoting Koelbl v. Glessing (In re Koelbl), 751 F.2d 137, 139 (2d Cir. 1984)). "Whether a reorganization plan has been proposed in good faith must be viewed in the totality of the circumstances, and the requirement of section 1129(a)(3) 'speaks more to the process of plan development than to the content of the plan.'" In re Chemtura, Corp., 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (citations omitted). Good faith also requires a showing that the plan reflects "fundamental fairness in dealing with the creditors." See In re Leslie Fay Cos., Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting In re Jorgensen, 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986)). At least with respect to the RT Lodge, the Debtors fail to demonstrate that section 1129(a)(3) is satisfied, given BNA's binding bid, cancellation of the auction without explanation, and proposed conveyance of those assets to GSSLP through the proposed Plan. The proposed Plan should be denied for this separate reason as well.

2294852v2

26. The Debtors describe themselves as developing, operating and franchising 250 casual dining restaurants. (Docket No. 3 at ¶¶ 5, 8.) Aside from the RT Lodge, the Debtors do not operate any other lodging businesses or assets. As part of these jointly administered cases, the Debtors have sold certain "non-core assets." (Docket No. 722, 870.) Although the RT Lodge is like these other assets in that it is not a part of the Debtors' core business and despite BNA's binding offers to purchase the RT Lodge at or above its value, the Debtors and GSSLP have refused to sell it. Moreover, under the proposed Plan, the RT Lodge is divorced from the Debtors' core restaurant assets (which are being conveyed to TCW Direct Lending LLC). Therefore, the Debtors cannot argue that the RT Lodge is critical to the overall restructuring proposed in the Plan. As the Debtors have done with other non-core assets in these cases, the Debtors can, and should, sell the RT Lodge, which should be excluded from confirmation of the Plan in the event the Court is inclined to otherwise confirm the proposed Plan.

27. As described above, BNA has requested discovery from the Debtors on these issues. Although such discovery has not been provided as of this time, BNA hopes to receive such discovery in advance of the confirmation hearing and will supplement this objection as appropriate.

### JOINDER

28. By this Objection, BNA incorporates by reference, and hereby joins in, all arguments set forth in the College Objection as fully set forth herein. Additionally, BNA joins in the objections filed by the Debtors' Plan, to the extent not inconsistent herewith.

### RESERVATION OF RIGHTS

29. BNA reserves all rights to supplement this objection in advance of the confirmation hearing and make any arguments at the hearing as may be appropriate. BNA

2294852v2

further reserves all rights to bid at any sale of the RT Lodge, and does not waive and hereby preserves all of its rights, remedies, and arguments under the Bankruptcy Code.

WHEREFORE, BNA Associates, LLC respectfully requests that the Court direct the continuation of the sale of the assets, including the RT Lodge; deny confirmation of the Plan to the extent it vests ownership of the RT Lodge in GSSLP or any affiliate or subsidiary; and grant such other relief as the Court deems just and proper.

Dated: January 29, 2021
       Wilmington, Delaware

Respectfully submitted,

*/s/ Aaron H. Stulman*
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: kgood@potteranderson.com
      astulman@potteranderson.com

– and –

Austin L. McMullen, Esq. (admitted *pro hac vice*)
**BRADLEY ARANT BOULT CUMMINGS LLP**
Roundabout Plaza
1600 Division Street, Suite 700
Nashville, TN 37203
Telephone: (615) 244-2582
Facsimile: (615) 252-6380
Email: amcmullen@bradley.com

*Counsel to BNA Associates LLC*

2294852v2

IMPAC - 7021153v.1  01/29/2021 3:43 PM