## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RTI HOLDING COMPANY, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-12456 (JTD)<br><br>Jointly Administered<br><br>**Related Docket No. 729, 761 and 762** |

### OBJECTION, JOINDER AND RESERVATION OF RIGHTS OF KRG EVANS MULLINS OUTLETS, LLC TO ASSUMPTION AND ASSIGNMENT NOTICE AND TO DEBTORS' AMENDED CHAPTER 11 PLAN

KRG Evans Mullins Outlets, LLC ("**KRG Evans Mullins**" or the "**Landlord**"), as successor-in-interest to Mullins Crossing, LLC, by and through undersigned counsel, hereby file this objection, joinder and reservation of rights (the "**Objection**") to the *Debtors' Amended Chapter 11 Plan* [Docket No. 761] (as modified, amended or supplemented from time to time, the "**Plan**"), and respectfully represents as follows:

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

## INTRODUCTION

1.        KRG Evans Mullins has been engaged in meaningful discussions with the Debtors in an attempt to resolve this Objection prior to the confirmation hearing currently scheduled for Thursday, February 4, 2021.  The Lease (defined below) has not been rejected and is currently scheduled on the notice of leases that may be assumed pursuant to the Plan.  To the extent that the Lease is assumed and an agreed cure amount is paid, the issues regarding the treatment and payment of administrative claims for unpaid post-petition rent addressed in paragraphs 20 through 26 become moot.

2.        At this time, however, the Debtors may still elect to reject the Lease.  Therefore, out of an overabundance of cation, KRG Evans Mullins files this Objection to preserve its rights as a potential holder of an administrative claim and as a holder of a general unsecured claim.

3.        Because the plan issues raised in this Objection potentially affect all landlords in these cases, counsel for KRG Evans Mullins first raised them with counsel for the Committee on January 16, 2021.  It is unknown at this time whether and to what extent the Committee has raised these concerns with Debtors and secured creditors as part of its discussions regarding amendments to the Plan and/or proposed order confirming the Plan.

4.        On Thursday, January 28, 2021, Debtors' counsel confirmed that the deadline for KRG Evans Mullins to file this Objection is extended through Monday, February 1, 2021.

## BACKGROUND

5.        Ruby Tuesday, Inc. ("**Ruby Tuesday**" or the "**Debtor**") is a ground lessee for a parcel of real estate at the Mullins Crossing Shopping Center, located in Evans, Georgia (the "**Premises**"), pursuant to a Lease Agreement dated July 1, 2005, as subsequently amended by the

Lease Modification Agreement dated July 9, 2020 (as amended, the "**Lease**"), a collective copy of which is attached hereto as **Exhibit 1**.

6.     The Lease expires by its own terms on March 31, 2026.

7.     The Lease is a lease "of real property in a shopping center" within the meaning of section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

8.     The Debtor and various affiliated debtors (collectively, the "**Debtors**") filed Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on October 7, 2020 (the "**Petition Date**").

9.     On December 14, 2020, the Debtors filed the *Notice to Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned* [Docket No. 723] (the "**Assumption and Assignment Notice**").  The Assumption and Assignment Notice provides that any objections to assumption must be filed on or before January 29, 2021.

10.     On December 21, 2020, the Debtors filed the Plan and the *Disclosure Statement for the Debtors' Amended Plan* [Docket No. 762] (the "**Disclosure Statement**" and together with any of the documents, other than the Plan, to be executed, delivered, filed, entered, assumed, or performed in connection with the occurrence of the Effective Date,[2] including, without limitation, the Exit Loan Documents, the solicitation materials in respect of the Plan, the Confirmation Order, the Disclosure Statement, the Disclosure Statement Order, the motion seeking approval of the Disclosure Statement, and any other documents to be included in the Plan Supplement, each as

---

[2] Capitalized terms not defined in this Objection shall have the meanings ascribed to them in the Plan and/or Plan Documents, as applicable.

may be amended, restated, amended and restated, waived, supplemented or otherwise modified, collectively, the "**Plan Documents**").

11.     The same day, the Court entered the *Order (I) Approving the Disclosure Statement (II) Scheduling the Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving the Form and Contents of the Solicitation Package; (B) Establishing Record Date and Approving Procedures for Distributing Solicitation Packages; (C) Approving the Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots; and (E) Approving Procedures for Vote Tabulations; (V) Establishing the Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VI) Granting Related Relief* [Docket No. 759] (the "**Confirmation Procedures Order**").

12.     The Confirmation Procedures Order sets January 29, 2021, as the deadline for objecting to the Plan.

13.     As discussed above, the deadline for KRG Evans Mullins to file this Objection was extended through and including Monday, February 1, 2021.

## CURE OBJECTION

14.     Section 365(b)(1)(A) of the Bankruptcy Code provides that a trustee may not assume an unexpired lease "unless, at the time of assumption of such . . . lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure" any monetary defaults under the lease.  Moreover, such a lease may not be assumed unless the trustee "provides adequate assurance of future performance."  *Id.* § 365(b)(1)(C).

15.     In the Assumption and Assignment Notice, the Debtors' proposed amount to cure monetary defaults under the Lease is $34,029.33 (the "**Proposed Cure Amount**").

16.    According to the books and records of KRG Evans Mullins, however, the actual total amount necessary to promptly cure monetary defaults under the Lease as of February 1, 2021 is $55,386.21 (the "**Actual Cure Amount**").    A true and correct copy of the spreadsheet evidencing the Actual Cure Amount is attached hereto as **Exhibit 2**.

17.    KRG Evans Mullins does not consent to the Proposed Cure Amount set forth above and objects to any assumption and assignment of the Lease that does not provide for and/or pay the Actual Cure Amount.

18.    With respect to the Actual Cure Amount reflected herein and any post-petition amounts due under the Lease, KRG Evans Mullins expressly reserves the right to collect all year-end adjustments or other amounts that are due and payable under the Lease, regardless of its accrual or billing date, and amounts not yet known as of the date of this Objection. Because some of these charges are payable in arrears, the amounts due cannot be calculated at this time. Nevertheless, the Debtors and/or the eventual assignee will continue to be liable for all such charges as and when they come due under the Lease.    Accordingly, the Debtors must be required to escrow and/or segregate sufficient funds to compensate KRG Evans Mullins for such charges when billed under the Lease or, in the alternative, any assignee of the Lease must be expressly held liable to pay such charges (in full and when due under the Lease) to KRG Evans Mullins, regardless of whether those charges relate to periods that pre-date any assumption and assignment of the Lease.

19.    Furthermore, KRG Evans Mullins is also entitled to recover attorneys' fees and costs incurred with respect to the enforcement of the Lease.    As a result, KRG Evans Mullins expressly reserves the right to seek payment of such fees and expenses.

## PLAN CONFIRMATION OBJECTION

20.     The Plan impermissibly allows the Debtors to postpone indefinitely the allowance

and payments of administrative claims, including without limitation post-petition rent.

21.     Section 1129(a)(9)(A) of the Bankruptcy Code provides that a plan shall be

confirmed only if administrative expenses are paid in full in cash upon the plan's effective date as

follows: "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title,

on the effective date of the plan, the holder of such claim will receive on account of such claim

cash equal to the allowed amount of such claim."  Claims under section 507(a)(2) of the

Bankruptcy Code include administrative expenses under section 503(b).

22.     With regard to the treatment of Administrative Claims, Article II.A. of the Plan

provides as follows:

> **On the later of** the Effective Date **or the date on which an Administrative Expense
> Claim becomes an Allowed Administrative Expense Claim**, **or, in each such case,
> as soon as practicable thereafter**, each Holder of an Allowed Administrative
> Expense Claim . . .  shall receive, in full satisfaction, settlement, discharge and
> release of, and in exchange for, such Claim either (i) payment in full in Cash from
> the RT Administrative Expense Claim Reserve for the unpaid portion of such
> Allowed Administrative Expense Claim; or (ii) such other less favorable treatment
> as agreed to in writing by the Debtors or RT Asset Company (as applicable) and
> such Holder.

(Plan at 24.)

23.     Although the Plan imposes a bar date for filing administrative claims (running from

the Effective Date), it is conspicuously silent as to the deadline by which the Debtors (or their

successor-in-interest) must object to such claims.  Likewise, the procedures for resolving any such

objections appear to be left for another day.

24.     The timing for payment after the date that an administrative claim becomes an

"Allowed Administrative Expense Claim" is also unclear and potentially open-ended.  This

potential payment limbo flows from the qualification that administrative claims shall be paid "as soon as practicable" after either the Effective Date or the date that such claims are allowed.

25.     An additional layer of uncertainty as to the prompt payment of administrative claims results from the threat of ongoing abatement litigation.  The Disclosure Statement refers to the Debtors commencing "***the 'first round' of proceedings*** against certain landlord defendants." (Disclosure Statement at 33 (emphasis added).)  By implication, the Debtors are contemplating additional waves of abatement litigation and provide no hint as to when such litigation will be completed.   As such, the Debtors unilaterally reserve the ability to delay resolution of administrative claims for unpaid post-petition in perpetuity.[3]

26.     Separate and apart from the delay of payment discussed above is the risk of the Debtors' inability to fund administrative expenses fully.  The Plan contemplates the creation of the RT Administrative Expense Claim Reserve; however, no detail is supplied in either the Plan or any of the Plan Documents as to the amount of this reserve or as to the methodology for its calculation.  (*See* Disclosure Statement, at 34-35 & Plan, Art. I.C.149, at 20.)[4]  In the absence of disclosure on these issues, it is entirely possible that the Debtors are overestimating their probability of success in ongoing rent abatement litigation and are therefore underfunding the RT Administrative Expense Claim Reserve.  If that is indeed true, then the risk of administrative insolvency is being solely borne by landlords, including KRG Evans Mullins.

---

[3] It is unclear whether the threat of future abatement litigation could be used to delay payment of proposed cure amounts for leases that are to be assumed under the Plan.  If so, the assumption of the leases does not comply with section 365(b)(1)(A) of the Bankruptcy Code.

[4] Under the Plan, the "*RT Administrative Expense Claim Reserve Amount*" means the aggregate amount of unpaid Allowed Administrative Expense Claims through the Effective Date as estimated by the Debtors in consultation with the Prepetition Secured Creditors and the Creditors' Committee.

**JOINDER**

27.    KRG Evans Mullins joins in the objections to the Debtors' requested relief filed by other landlords and parties-in-interest to the extent they are not inconsistent with the Objection.

**RESERVATION OF RIGHTS**

28.    KRG Evans Mullins expressly reserves all of its rights to supplement, modify, or amend this Objection and make such other and further objections to the confirmation of the Plan or any assumption and assignment of the Lease until such time as a final order is entered approving the Actual Cure Amount with respect to the Lease. Nothing set forth herein shall constitute a waiver, discharge, or disallowance of any and all rights, claims, causes of action, and defenses that KRG Evans Mullins has asserted, or may assert, with respect to any of proof of claim against the Debtors.  In addition, nothing set forth herein shall be construed as a waiver, release, discharge, or disallowance of any and all administrative claims of KRG Evans Mullins against the Debtors.

**[THE REMAINDER OF THIS PAGE WAS INTENTIONALLY LEFT BLANK –
SIGNATURE TO FOLLOW]**

## CONCLUSION

29.    Based on the foregoing, KRG Evans Mullins respectfully requests that the Court deny the confirmation of the Plan as set forth herein; grant relief consistent with the foregoing objections; and grant such other and further relief as may be just and proper under all of the circumstances.

Dated: February 1, 2021
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Mark L. Desgrosseilliers*

Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Email:         desgross@chipmanbrown.com

—and—

Mark A. Bogdanowicz
**HOWARD & HOWARD ATTORNEYS PLLC**
211 Fulton Street, Suite 600
Peoria, Illinois 61602
Telephone:    (309) 999-6320
Email: mbogdanowicz@howardandhoward.com

—and—

James E. Morgan
**HOWARD & HOWARD ATTORNEYS PLLC**
200 South Michigan Avenue
Suite 1100
Chicago, Illinois 60604-2461
Telephone:    (312) 456-3414
Email: jmorgan@howardandhoward.com

*Counsel for KRG Evans Mullins Outlets, LLC*