## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| RTI HOLDING COMPANY, LLC,[1] | Case No. 20-12456 (JTD) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR PROTECTIVE ORDER AS TO BNA ASSOCIATES LLC'S DEPOSITION NOTICE AND REQUESTS FOR PRODUCTION, AND/OR MOTION TO QUASH DEPOSITION NOTICE FROM BNA ASSOCIATES LLC

Ruby Tuesday, Inc. ("RTI" or the "Debtor"), and its debtor affiliates, as debtors

and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),

hereby move the Court (this "Motion") for entry of an order, substantially in the form attached

hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 105 of title 11 of the United

States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); Rules 26, 30, and 34 of the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

Federal Rules of Civil Procedure; Rules 7026, 7030, 7034,  and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"); and Local Rules 7026-1 and 7030-1, granting

the Debtors a protective order relieving them from appearing at the deposition of Debtors noticed

(the "Deposition Notice") by BNA Associates LLC ("BNA"), and from responding and

objecting to the document requests (the "Document Requests") issued by BNA to Debtors;

and/or quashing the deposition notice issued by BNA to Debtors.

In support of the Motion, the Debtors, by and through their undersigned counsel,

state as follows:

### Introduction

1.      BNA is a disappointed potential bidder that sought to buy only a single

asset offered for sale as part of the Debtors' parallel marketing and plan efforts pursuant to the

Restructuring Support Agreement ("RSA") that has governed the Debtors' reorganization since

the October 7, 2020, petition date (the "Petition Date").  Prior to the Petition Date, BNA had

submitted a bid to purchase the Debtors' interests relating to their RT Lodge property located in

Maryville, Tennessee (the "RT Lodge"). Under the RSA and the Bid Procedures approved by

this Court, in the three months since the Petition Date, the Debtors have marketed their business,

pursued a sale and were prepared to conduct an auction of substantially all of their assets if they

received a "Topping Bid" – i.e., one or more bids sufficient to satisfy the Debtors' over $45

million in secured obligations that meet the other requirements for a Qualified Bid.  BNA's bid

for only one of the Debtors' locations -- the RT Lodge -- was in the amount of $5.3 million (the "BNA Bid") and, therefore, on its face, did not qualify as a Topping Bid.[2]

2.       Just days before this week's February 4 scheduled hearing regarding the *Debtors' Amended Chapter 11 Plan* [Docket No. 761] (the "Plan"), BNA seeks to litigate its unsuccessful bid by attempting to schedule a deposition of the Debtors' representatives and demanding the production of documents.  The Deposition Notice states that the proposed deposition is "in connection with" the Debtors' Bid Procedures Motion, Bid Procedures Order and Plan.  Deposition Notice at 1-2. Because BNA is a disappointed bidder and not a creditor, interest holder or other party in interest, BNA has no standing to object belatedly to the Debtors' Bid Procedures Motion or this Court's Bid Procedures Order, or to harass the Debtors with discovery in an apparent attempt to derail the Plan.

3.       Additionally, BNA's actions to harass the Debtors and derail the Plan through the requested discovery in the hopes that it can "shake loose" the single asset BNA seeks to purchase cannot be credibly explained as a legitimate concern about the sale process.  BNA admits in papers filed with this Court that ***BNA was aware of the Debtors' bankruptcy cases from their inception***.[3] As a result, if BNA truly were concerned about the sale and bidding process contemplated by the October 2020 RSA, memorialized in the Bid Procedures proposed

---

[2] The Debtors received another submission after the Bid Deadline that, like BNA's submission, also did not qualify as a Qualified Bid or a Topping Bid, which was withdrawn. Accordingly, the BNA Bid was the only bid received for consideration.

[3] *See BNA Associates LLC's Objection to Confirmation of Plan and Cancellation of Sale and Joinder* [Docket No. 998] (the "BNA Plan Objection"), Ex. C ("Declaration of Philip Welker in Support of Maryville College's Objection to Confirmation of Debtors' Amended Chapter 11 Plan and Objection to Debtors' Assumption and Assignment of Unexpired Lease Regarding the RT Lodge"), ¶8 at 3.

by the Debtors on November 7, 2020, and approved by the Court on November 20, 2020, it had ample opportunity to raise its concerns with the Court two months ago how such procedures might impede its ability to acquire one of the Debtors' assets.

4.      Finally, BNA's "11th hour" discovery efforts in the days before Plan confirmation violate various discovery rules.  For example, BNA initiated its discovery when no contested matter was pending and without any Court order permitting it to take discovery, whether under Bankruptcy Rule 2004 or otherwise. Only after the Debtors notified BNA of this defect, BNA filed the BNA Plan Objection. Also, BNA served its Deposition Notice on less than seven days' notice, as required by Local Rule 7030-1(b).  BNA also demanded production in three days of 12 categories of documents. This has caused the Debtors impermissible annoyance, undue burden, and undue expense in its rush to address the defects in BNA's discovery, meet and confer with BNA, and file this Motion. That undue burden and expense would be amplified if Debtors were required to respond to discovery on an issue that BNA lacks standing to raise.

5.      Therefore, the Debtors seek a protective order against testifying at deposition and/or an order quashing the Deposition Notice, and also a protective order providing that Debtors do not need to respond or object to the Document Requests.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule

4

9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory and rule bases for the relief sought herein are section 105(a) of the Bankruptcy Code; Rules 26, 30, and 34 of the Federal Rules of Civil Procedure; Rules 7026, 7030, 7034,  and 9014 of the Bankruptcy Rules; and Local Rules 7026-1 and 7030-1.

## Background

### A.      The Bankruptcy Cases

9.      On October 7, 2020, the Debtors commenced the above-captioned chapter 11 cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 26, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors in these Cases.

10.     The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand. The

company-owned and operated restaurants (i.e., non-franchise) are concentrated primarily in the

Southeast, Northeast, Mid-Atlantic, and Midwest regions of the United States.

**B.    The Bidding Procedures**

11.    On November 7, 2020, the Debtors filed the *Motion of Debtors for an*

*Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Approving Certain*

*Bidder Incentives in Connection with the Debtors' Entry into a Stalking Horse Agreement, if any,*

*and (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and*

*Unexpired Leases* [Docket No. 355] (the "Bid Procedures Motion").

12.    The Court approved the Bid Procedures Motion in an Order entered on

November 20, 2020 [Docket No. 585] (the "Bid Procedures Order").

13.    The Bid Procedures for Sale of Substantially All of the Debtors' Assets,

attached as Exhibit "1" to the Bid Procedures Order (the "Bid Procedures"), state that, "[i]n order

for [a] Bid to qualify as a Topping Bid, (a) it must provide for cash consideration at closing that

is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt Claims in full on the

closing date or (b) the Debtors, in consultation with the Consultation Parties, must be able to

combine such Bid with other Bids for subsets of Assets such that, collectively, such Bids meet

the criteria for a Topping Bid." Bid Procedures at 6.

14.    The Pre-Petition Secured Debt Claims and DIP Facility claims have been

estimated in excess of $45 million. *See, e.g., Disclosure Statement for Debtors' Amended*

*Chapter 11 Plan* ("Disclosure Statement") [Docket No. 762], Ex. G. The Bid Procedures also

provide that "[i]f the Debtors do not receive at least one (1) Qualified Bid from a Qualified

6

Bidder … that is, either individually or, collectively with other Qualified Bids, a Topping Bid, then no Auction shall be scheduled or conducted." *Id.* at 9.

**C.      BNA's Bid**

15.      On November 24, 2020, BNA was served with the *Notice of Sale By Auction and Bid Procedures* [Docket No. 586] (the "Notice of Sale").

16.      Pursuant to the Bid Procedures, BNA submitted its BNA Bid, a binding bid of $5.3 million for the RT Lodge. *See* BNA Plan Objection, ¶1. BNA did not bid for any other of the estates' assets. *See id.*

17.      Another Potential Bidder withdrew its belated submission initially seeking to assert a Qualfied Bid, leaving only BNA's Bid for the Debtors' consideration. *See Declaration of Malhar S. Pagay* ("Pagay Decl."), filed concurrently herewith, at ¶3.  On its its face, BNA's Bid was insufficient to constitute a Topping Bid under the terms of the Bidding Procedures. *See id.* Pursuant to the Bid Procedures, the Auction was cancelled due to the absence of a Topping Bid. *See* Disclosure Statement at 9.

**D.      The Proposed Plan of Reorganization**

18.      On December 21, 2020, the Debtors filed the *Debtors' Amended Chapter 11 Pla*n [Docket No. 761] (the "Plan") and their Disclosure Statement. On December 21, 2020, the Court entered an order approving the Disclosure Statement and certain related solicitation materials. *See* Docket No. 759.

19.    The deadline to object to Plan confirmation was January 29, 2021, at 5:00 p.m. (ET). *See* Docket No. 763. A hearing on confirmation of the Plan is currently scheduled for February 4, 2021 at 1:00 p.m. (ET). *See id.*

**E.    BNA's De Minimis Connection to these Bankruptcy Cases**

20.    BNA was aware of these Cases since their commencement in October 2020. *See* BNA Plan Objection, Ex. C, ¶8 at 3.

21.    However, BNA did not appear in these Cases until January 27, 2021 per its counsel's *Notice of Appearance and Request for Service of Papers* [Docket No. 945].

22.    BNA's only connection to these Cases is as an unsuccessful bidder for the RT Lodge property. *See* Pagay Decl., ¶4.

23.    BNA is not a creditor in these Cases; it is neither scheduled as a creditor by any of the Debtors nor has it filed a Proof of Claim asserting any claim in the Cases against any of the Debtors. *See id.*, ¶4.

24.    BNA is not a direct or indirect interest holder in any of the Debtors. *See id.*

25.    BNA has no asserted or actual ownership or security interest in, and is not an insurer of, any property of the Debtors' bankruptcy estates. *See id.*

**F.    BNA's Deposition Notice and Document Requests**

26.    On January 27, 2021, the same day it appeared in these Cases, BNA served Debtors' counsel with the Deposition Notice seeking to take a deposition on February 2, 2021, of the Debtors' persons most knowledgeable regarding the Bid Procedures Motion, the Bid

8

Procedures Order, and the facts surrounding the auction. See *Notice of Deposition Upon Oral Examination of Designated Representatives of Debtors Relating to Debtors' Chapter 11 Plan and Sale Motion* [Docket No. 948]. A true and correct copy of the Deposition Notice is appended as Exhibit 1 to the Pagay Decl. The Deposition Notice seeks to ask Debtors' representatives about the following topics, among others: the Plan; the Bid Procedures Motion; the Bid Procedures Order; bidding procedures; all potential bidders, their contact information, and their bids; criteria for bids; deliberations over bids; cancellation of the auction; and value of the RT Lodge.

27.     On January 28, 2021, BNA served Debtors' counsel with the Discovery Requests, captioned as *BNA Associates LLC's First Requests for Production of Documents and Electronically Stored Information to Debtors.* A true and correct copy of the Document Requests is appended as Exhibit 2 to the Pagay Decl. These Document Requests seek production, by February 1, 2021, of 12 categories of documents relating to the Bid Procedures Motion, the Bid Procedures Order, and the bids. *See Notice of Service* [Docket No. 953].

28.     BNA had not filed an objection to the Plan as of the time it served the Deposition Notice and the Document Requests (together, the "Discovery"). *See* Pagay Decl., ¶7.

29.     On January 28, 2021, Debtors' counsel responded in writing to BNA's Discovery and requested a withdrawal of the Discovery Documents. *See* Pagay Decl., Exhibit 3. The following day, counsel for the Debtors and counsel for BNA met and conferred telephonically with regard to the Discovery and Debtors' intent to file this Motion. *See Declaration of James E. O'Neill* (the "O'Neill Decl."), filed concurrently herewith, at ¶2.

Because that meet and confer did not resolve the Discovery issues, the Debtors have filed this

Motion. *See id.*

**G.    BNA Plan Objection**

30.    On January 29, 2021, BNA filed its BNA Associates LLC's *Objection to*

*Confirmation of Plan and Cancellation of Sale and Joinder* [Docket No. 998] ("BNA Plan

Objection"), in which it "requests that the Court direct the continuation of the sale of the assets,

including the RT Lodge" and "deny confirmation of the Plan to the extent it vests ownership of

the RT Lodge" in one of the Debtors' secured lenders, Goldman Sachs Specialty Lending Group.

BNA Plan Objection at 13.  Curiously, BNA suggests that its $5.3 million bid somehow would

be sufficient to satisfy the Debtors' secured debts (which are nearly ten times the amount of

BNA's bid) and that, by the Debtors' failure to sell the single Lodge property to BNA, the Plan

fails to satisfy the "best interests" test under section 1129(a)(7) of the Bankruptcy Code. *See*

BNA Plan Objection ¶2 at 2-3.

**Relief Requested**

31.    By this Motion, the Debtors respectfully request entry of an order, in

substantially the form attached hereto as **Exhibit A**, granting the Debtors a protective order

relieving them from attending the deposition sought pursuant to the Deposition Notice and from

responding and objecting to the Document Requests; and/or quashing the Deposition Notice.

DOCS_LA:335633.5 76136/002

**Basis for Relief Requested**

32.     Section 105(a) of the Bankruptcy Code provides in relevant part that

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to

expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies

that, while not expressly authorized by the Code, effect the result the Code was designed to

obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.

v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).

**A.     BNA Lacks Standing as an Unsuccessful Bidder to Take Discovery of Debtors**

33.     "'[U]nsuccessful bidders' generally lack standing to challenge bankruptcy

auction results." 12 Pratt's Journal of Bankruptcy Law 12-7-VII (2021); *Calpine Corp. v.

O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 531 (3d Cir. 1999)

("Courts that have considered appellate standing in the context of the sale . . . of estate assets

have generally held that *creditors* have standing to appeal, but *disappointed prospective

purchasers* do not.") (emphasis added). BNA is not a creditor in these Cases. Rather, BNA is a

disappointed prospective purchaser without standing to challenge the RT Lodge sale. *See also

Delancey Inv. Grp. v. Mail at One Assocs., L.P. (In re Mail at One Assocs. L.P.)*, 1995 LEXIS

716 *21 (Bankr. E.D. Pa., May 23, 1995) (providing string cite of numerous authorities finding

unsuccessful bidder at bankruptcy sale to lack standing to challenge sale).

34.     BNA asserts that it has standing to contest the sales process because the

Auction was cancelled. *See* BNA Plan Objection at 2 n.3. That assertion fails. The Bid

Procedures – which BNA did not contest until January 29, well after the Bid Order approving

them in November 2020 (see Pagay Decl., ¶4) – expressly provided that the Auction was to be

cancelled in the absence of a Topping Bid. See Disclosure Statement, Ex. G at 9. Because no

Topping Bid was received, the Auction was legitimately cancelled.

   35. BNA may contend that it can show the other exception to the general rule

against disappointed purchaser standing because the RT Lodge transaction "failed to maximize

value" for creditors. BNA Plan Objection at ¶2. However, that argument would be unavailing.

Where a sale price earned the estate an amount "that is grossly below the actual value of the

property", a frustrated bidder may have standing to contest the sale. *In re Hart's Mfg. Co., Inc.*,

383 B.R. 720 (Bankr. W.D. Tenn. 2008). A grossly inadequate price was evidenced in *In re

Hart's* where the property at issue was appraised for a value of between $2 million to $3 million,

it was marked for $1.6 million, the unsuccessful bidder offered $1 million, but the auction

accepted only $250,000 – a disparity in which the winning bid was 25% of the disappointed

bidder's offer, and the ultimate sale price was approximately 10% of the property's appraised

value. *See id.* In contrast, here, BNA's own recitation of the facts evidence no gross inadequacy

in the sale of RT Lodge. BNA cites to the Debtors' assertion of RT Lodge value at $5.1 million

(*see* BNA Plan Objection, ¶1) and BNA's offer of $5.3 million for the RT Lodge (*see* BNA Plan

Objection, ¶1). However, BNA ignores that the Plan itself values the RT Lodge (or rather, the

equity in RT Lodge Company, which is to own RT Lodge) as $5.3 million. *See* Plan at 14

(defining "*Lodge Consideration*") and Plan at 1 ("RT Lodge Company, which shall retain the RT

Lodge"). There simply is no disparity in price whatsoever between the value ascribed to the

Lodge in the Plan and BNA's Bid. Thus, there can be, and in fact, is no "grossly inadequate" recovery to the estate as would be required to permit BNA to argue that it may have standing to challenge the treatment of the RT Lodge under the Bid Procedures Motion, the Bid Procedures Order, or the Plan.

36.     Federal Rule of Civil Procedure 26(b)(1)[4] provides that discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense. . . ."  BNA has neither a claim nor a defense in these Cases because it lacks standing to challenge the Plan. The Deposition Notice and the Document Requests all relate to the RT Lodge sale, and BNA has no standing to contest the RT Lodge sale.   BNA therefore lacks any basis to take discovery of the Debtors.

B.     **A Protective Order Should Issue Because the Discovery Will Cause Debtors Impermissible Annoyance, Undue Burden, and Undue Expense**

37.     Federal Rule of Civil Procedure 26(c)(1), made applicable pursuant to Federal Rules of Bankruptcy Procedure 7026 and 9014, provides that a protective order may issue to any party "from whom discovery is sought. . . ." In addition, the Court may, for good cause, issue an order to protect Debtors from annoyance, oppression, or undue burden or expense by, inter alia, forbidding the discovery. See Fed. R. Civ. P. 26(c)(1)(A). The following factors

---

[4] Federal Rules of Civil Procedure 26, 30, and 34, which are made applicable to contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014(c) do not apply to BNA's Deposition Notice and Document Requests because no contested matter existed on January 27 and 28, 2021 when BNA served the Deposition Notice and Document Requests. BNA filed the BNA Plan Objection on January 29, 2021, thus commencing a contested matter *after* service of the Discovery. For this reason alone, the protective order should issue as to both the Deposition Notice and the Document Requests. In the event the Court considers the Discovery as part of the contested matter that BNA subsequently commenced by filing its BNA Plan Objection on January 29, the Debtors refer to the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure applicable to discovery in a contested matter.

may be relevant in determining the existence of good cause: (i) whether the information is sought for a legitimate purpose; (ii) whether disclosure will violate any privacy interest; (iii) whether disclosure will cause a party embarrassment; (iv) whether disclosure is important to public health and safety; (v) whether information will promote fairness and efficiency in the litigation; (vi) whether the party seeking the protective order is a public entity; and (vii) whether the case involves issues of public importance. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994).

38.     Factors (i), (iv), (v), (vi), and (vii) indicate the good cause for a protective order to issue as to BNA's Discovery. As discussed above, BNA lacks standing to challenge the RT Lodge sale and therefore BNA's Discovery, all of which relates to the RT Lodge sale, has no legitimate purpose (factor (i)) and will bog down the efficiency of the Plan confirmation process by diverting the Debtors from preparation for the hearing on the Plan (factor (v)). Further, these Cases do not involve matters of public health and safety, or public entities, thus factors (iv), (vi), and (vii) militate in favor of issuance of the protective order.

39.     Debtors certify that they have, in good faith, conferred with BNA to resolve this dispute without Court action. *See* O'Neill Decl., (averring under Local Rule 7026-1(d) that reasonable effort was made via writing on January 28, 2021 and during a telephone call on January 29, 2021, to reach agreement with the opposing party on the matters set forth in the Motion. Because Debtors and BNA did not reach any agreement as to the Discovery, Debtors have filed this Motion).

DOCS_LA:335633.5 76136/002

**C.**   **Debtors Have No Obligation Under this Court's Local Rules to Appear at BNA's Unilaterally Scheduled Deposition on February 1, 2021**

40.   This Court's Local Rule 7030-1(c) provides that where a party files a motion to quash a deposition, "[i]f such motion is filed at least one (1) business day before the scheduled deposition, neither the objecting party, witness, nor any attorney is required to appear at a deposition to which a motion is directed until the motion is resolved." On January 27, BNA noticed its deposition of Debtors to go forward on February 2. Debtors file this Motion on February 1, one business day before the scheduled deposition. Therefore, as Debtors have notified BNA, and as provided in Local Rule 7030-1(c), Debtors and their representatives will not attend the noticed February 2 deposition.

**D.**   **Additional Defects With the Discovery Warranting a Protective Order and/or Order to Quash**

41.   Assuming, without conceding, that BNA has standing to take Discovery of the Debtors, that Discovery should still be foreclosed by a protective order and/or an order to quash. First, the Deposition Notice violated Local Rule 7030-1(b), made applicable pursuant to Federal Rules of Bankruptcy Procedure 7030 and 9014,[5] which requires that the "reasonable notice" for taking a deposition "shall not be less than seven (7) days." BNA provided only six (6) days' notice of its deposition.

42.   Second, the Deposition Notice violates Federal Rule of Civil Procedure 30(d)(1), made applicable pursuant to Federal Rules of Bankruptcy Procedure 7030 and 9014,[6]

---

[5] *See id.*

[6] *See id.*

DOCS_LA:335633.5 76136/002

which limits a deposition "to 1 day of 7 hours" in the absence of intervening factors not present

here. Fed. R. Civ. P. 30(d)(1). The Deposition Notice impermissibly notices the deposition to

"continue until completed, day to day if needed." In the event the Court declines to prohibit BNA

from taking Debtors' deposition, Debtors request that a protective order issue, at minimum,

limiting the deposition to one day of no more than seven hours.

43.     Third, BNA's Document Requests violate the requirement that BNA

"specify a reasonable time" for production of documents. Fed. R. Civ. P. 34(b)(1)(B), made

applicable pursuant to Federal Rules of Bankruptcy Procedure 7030 and 9014.[7] On Thursday,

January 28, BNA issued Document Requests seeking production on Monday, February 1, a

period of just 3 calendar days. This is impracticable and unreasonable.

### Notice

44.     Notice of this Motion shall be given to the following parties or, in lieu

thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) the Official

Committee of Unsecured Creditors; (c) counsel to BNA Associates LLC; (d) Goldman Sachs

Specialty Lending Group; and (e) any party requesting special notice pursuant to Bankruptcy

Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other

or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion,

enter the proposed order, and grant the Debtors such other relief as is just and proper.

---

[7] *See id.*

Dated:   February 1, 2021                    PACHULSKI STANG ZIEHL & JONES LLP

                                             */s/ James E. O'Neill*
                                             Richard M. Pachulski (CA Bar No. 90073)
                                             Malhar S. Pagay (CA Bar No. 189289)
                                             James E. O'Neill (Bar No. 4042)
                                             919 North Market Street, 17th Floor
                                             P.O. Box 8705
                                             Wilmington, DE  19899-8705 (Courier 19801)
                                             Telephone:  302-652-4100
                                             Facsimile:  302-652-4400
                                             Email: rpachulski@pszjlaw.com
                                             mpagay@pszjlaw.com
                                             joneill@pszjlaw.com

                                             Counsel to the Debtors and Debtors in Possession