# <u>EXHIBIT A</u>

G R O U N D   L E A S E

**THIS LEASE**, made by and between **Yu-Ching Hsu**, an individual resident of the State of Georgia, hereinafter called "Lessor," whose mailing address is 102 Brannen Street, Statesboro, Georgia 30458, and **Ruby Tuesday, Inc.**, a Georgia corporation, hereinafter called "Ruby Tuesday," whose mailing address is 4721 Morrison Drive, Mobile, Alabama 36609-3350, or Post Office Box 160266, Mobile, Alabama 36625-0001.

W I T N E S S E T H :

1. <u>PREMISES</u>:

In consideration of the rents, covenants and agreements hereinafter set forth, Lessor does hereby demise and lease to Ruby Tuesday, and Ruby Tuesday does hereby take and hire from Lessor, the Real Property situated in Statesboro, County of Bulloch, and State of Georgia, containing approximately 1.466 acres of land, and any and all improvements which now are or which shall be situated on said real property (the "Real Property") together with all rights, easements and appurtenances thereunto belonging or appertaining (collectively referred to herein as the "Leased Premises"), said Leased Premises being those more fully described in **Exhibit "A"** attached hereto and made a part hereof by reference.

Lessor and Ruby Tuesday mutually agree that the drawings or description attached hereto as **Exhibit "A"** constitutes the Leased Premises to the best of their knowledge, but that the same do not constitute a legal description of the Leased Premises. Lessor and Ruby Tuesday further agree that upon the completion of the survey and, if applicable, plan of subdivision, pursuant to Subsection C of Section 8 hereof, this Lease shall be amended by attaching the description of the Leased Premises from said survey as **Exhibit "A-1"** which **Exhibit "A-1"** shall be deemed to be the legal description of the Leased Premises for the purposes of this Lease.

Lessor shall also obtain, execute (or cause to be executed), delivered and recorded, all easements referred to in this Lease and easements for ingress, egress and parking over and across the land shown on **Exhibit "A"** and **Exhibit "A-1"**.  Such easements shall be paramount to any lien on the servient property, shall run with the land described as the Leased Premises and shall be in such form and content acceptable to Ruby Tuesday.

2. <u>TERM</u>:

A. <u>Original Term</u>

The original term of this Lease shall be for a period commencing on the Commencement Date as defined in Section 3 below and ending on January 31 following the twentieth (20th) full calendar year following such Commencement Date. "Lease Year" shall be defined as each successive period of twelve (12) consecutive calendar months commencing on the first day of January of each year during the term hereof and ending on December 31 of each year of the term hereof. If the Commencement Date is other than January 1 of any calendar year, the period between the Commencement Date and December 31 of that year shall be the "First Partial Lease Year." Ruby Tuesday's obligation to pay rent shall commence on the Commencement Date. Within thirty (30) days after the Commencement Date and the date the original term expires, and dates have been established, the parties shall execute and deliver an acceptable written document setting forth such dates.

B. <u>**First Renewal Term**</u>

Upon the expiration of the original term, the term of this Lease shall automatically renew for a period of five (5) years,

1  except in the event Ruby Tuesday gives Lessor a cancellation
2  notice.  Such cancellation notice may be given by Ruby Tuesday at
3  any time but in any event must be given at least ninety (90) days
4  prior to the expiration of the original term.    In the event Ruby
5  Tuesday exercises its option to cancel the renewal term of this
6  Lease, this Lease shall terminate upon the later occurrence of: (1)
7  expiration of the then ending term (not the renewal term), or (2)
8  thirty (30) days after Ruby Tuesday gives Lessor notice of the
9  cancellation of the renewal term.
10
11      In the event that Ruby Tuesday does not cancel the renewal
12  term of this Lease, this Lease shall be renewed at the rental set
13  forth in Section 4 hereof, and upon the same other terms and
14  conditions as are applicable to the original term, except that the
15  renewal shall begin on the date of expiration of the original term
16  and shall continue for a period of five (5) years thereafter.
17
18      C.   **Second and Subsequent Renewal Terms**
19
20      In the event Ruby Tuesday does not cancel the renewal term of
21  this Lease and this Lease shall renew for the first renewal term as
22  provided herein, this Lease shall renew for four (4) additional
23  periods of five (5) years each at the rental as set forth in
24  Section 4 hereof and upon the same other terms and conditions as
25  are applicable to the first renewal term except that such subse-
26  quent renewal terms shall begin on the date of expiration of the
27  previous renewal term and shall continue for a period of five (5)
28  years thereafter.   Said renewals for additional terms shall be
29  subject to the same notice provisions for both Lessor and Ruby
30  Tuesday and the same provisions regarding the cancellation of the
31  renewal by Ruby Tuesday as the first renewal term.
32
33  3.   **EARNEST MONEY AND COMMENCEMENT DATE:**
34
35      On the Effective Date of this Lease, Ruby Tuesday shall pay
36  **FIVE THOUSAND AND 00/100THS DOLLARS ($5,000.00)** into an escrow
37  account with the Title Company as earnest money and within sixty
38  (60) days following the Effective Date of this Lease, Ruby Tuesday
39  shall pay an additional **FIVE THOUSAND AND 00/100THS DOLLARS**
40  **($5,000.00)** into the escrow account with the Title Company (both
41  payments collectively, the "Earnest Money").  Upon the Commencement
42  Date, provided that Ruby Tuesday has not terminated this Lease
43  pursuant to the contingencies contained in Sections 8 and 16
44  hereof, all of the Earnest Money shall be paid over to Lessor and
45  set off against Ruby Tuesday's rent until such Earnest Money is
46  exhausted.   Ruby Tuesday shall not be required to make any rent
47  payment to Lessor until the Earnest Money has been exhausted.
48
49      In the event Ruby Tuesday terminates this Lease because it is
50  unable to satisfy one or more of its contingencies as set forth in
51  Sections 8 and 16 hereof, then the Earnest Money shall be refunded
52  to Ruby Tuesday and both parties shall have no further obligations
53  under this Lease.
54
55      In the event Ruby Tuesday terminates this Lease for any reason
56  other than being unable to satisfy those contingencies set forth in
57  Sections 8 and 16 hereof, then the Earnest Money shall be paid over
58  to Lessor and both parties shall have no further obligations under
59  this Lease.
60
61      The Commencement Date of this Lease shall be the earlier of
62  (a) Ruby Tuesday's completion of the improvements to be constructed
63  by Ruby Tuesday and the opening to the public for business of a
64  Ruby Tuesday restaurant, or (b) December 1, 1998.
65
66  4.   **RENTAL:**
67
68      A. Original Term
69
70      Commencing with the Commencement Date and for the first five
71  (5) years of the Original Term of this Lease, Ruby Tuesday shall
72  pay to Lessor at Lessor's address shown above, or at such other

address as Lessor may from time to time designate in writing, a fixed annual base rental of **TWENTY EIGHT THOUSAND AND 00/100THS DOLLARS ($28,000.00)** ("Annual Base Rent"), payable in equal consecutive monthly installments of **TWO THOUSAND THREE HUNDRED AND THIRTY-THREE AND 33/100THS DOLLARS ($2,333.33)**. Each such monthly installment shall be due and payable in advance on the first day of each calendar month during the first five (5) year period of the Original Term of this Lease. If the Commencement Date does not fall on the first day of a calendar month, then the first payment shall be for only the portion of the first month attributable to the term of the Lease prorated on a daily basis. The rental for the First Partial Lease Year shall be the product obtained by multiplying **TWENTY EIGHT THOUSAND AND 00/100THS DOLLARS ($28,000.00)** by a fraction, the numerator of which is the number of days in the First Partial Lease Year and the denominator of which is three hundred sixty-five (365).

Commencing with the first day of the sixth (6th) year of this Lease and for the second five (5) year period of the original term of this Lease, Ruby Tuesday shall pay to Lessor a minimum annual rent of **THIRTY THOUSAND EIGHT HUNDRED AND 00/100THS DOLLARS ($30,800.00)**. Said minimum annual rent shall be paid in equal monthly installments of **TWO THOUSAND FIVE HUNDRED SIXTY SIX AND 00/100THS DOLLARS ($2,566.00)** and shall be due in advance, on the first day of each and every calendar month during the second five (5) years of the original term of this Lease.

Commencing with the first day of the eleventh (11th) year of this Lease and for the next five (5) year period of the original term of this Lease, Ruby Tuesday shall pay to Lessor a minimum annual rent of **THIRTY THREE THOUSAND EIGHT HUNDRED EIGHTY AND 00/100THS DOLLARS ($33,880.00)**. Said minimum annual rent shall be paid in equal monthly installments of **TWO THOUSAND EIGHT HUNDRED TWENTY THREE AND 33/100THS DOLLARS ($2,823.33)** and shall be due in advance, on the first day of each and every calendar month during the next five (5) years of the original term of this Lease.

Commencing with the first day of the sixteenth (16th) year of this Lease and for the next five (5) year period of the original term of this Lease, Ruby Tuesday shall pay to Lessor a minimum annual rent of **THIRTY SEVEN THOUSAND TWO HUNDRED SIXTY EIGHT AND 00/100THS DOLLARS ($37,268.00)**. Said minimum annual rent shall be paid in equal monthly installments of **THREE THOUSAND ONE HUNDRED FIVE AND 67/100THS DOLLARS ($3,105.67)** and shall be due in advance, on the first day of each and every calendar month during the next five (5) years of the original term of this Lease.

B. Renewal Period(s)

If the original term of this Lease is extended for an additional five (5) years as provided in this Lease, then commencing with the first day following the end of the original term and for the remainder of such first five (5) year renewal period, Ruby Tuesday shall pay to Lessor a minimum annual rent of **FORTY THOUSAND NINE HUNDRED NINETY FOUR AND 00/100THS DOLLARS ($40,994.00)**. Said minimum annual rent shall be paid in equal monthly installments of **THREE THOUSAND FOUR HUNDRED SIXTEEN AND 17/100THS DOLLARS ($3,416.17)** and shall be due in advance, on the first day of each and every calendar month during such first five (5) year renewal period.

If the original term of the Lease is extended for a second additional five (5) years as provided in this Lease, then commencing with the first day following the end of the first renewal period and for the remainder of such second five (5) year renewal period, Ruby Tuesday shall pay to Lessor a minimum annual rent of **FORTY FIVE THOUSAND NINETY FOUR AND 00/100THS DOLLARS ($45,094.00)**. Said minimum annual rent shall be paid in equal monthly installments of **THREE THOUSAND SEVEN HUNDRED FIFTY SEVEN AND 83/100THS DOLLARS ($3,757.83)** and shall be due in advance, on the first day of each and every calendar month during such second five (5) year renewal period.

If the original term of the Lease is extended for a third additional five (5) years as provided in this Lease, then commencing with the first day following the end of the second renewal period and for the remainder of such third five (5) year renewal period, Ruby Tuesday shall pay to Lessor a minimum annual rent of **FORTY NINE THOUSAND SIX HUNDRED THREE AND 00/100THS DOLLARS ($49,603.00)**.  Said minimum annual rent shall be paid in equal monthly installments of **FOUR THOUSAND ONE HUNDRED THIRTY THREE AND 58/100THS DOLLARS ($4,133.58)** and shall be due in advance, on the first day of each and every calendar month during such third five (5) year renewal period.

If the original term of the Lease is extended for a fourth additional five (5) years as provided in this Lease, then commencing with the first day following the end of the second renewal period and for the remainder of such fourth five (5) year renewal period, Ruby Tuesday shall pay to Lessor a minimum annual rent of **FIFTY FOUR THOUSAND FIVE HUNDRED SIXTY FOUR AND 00/100THS DOLLARS ($54,564.00)**.  Said minimum annual rent shall be paid in equal monthly installments of **FOUR THOUSAND FIVE HUNDRED FORTY SEVEN AND 00/100THS DOLLARS ($4,547.00)** and shall be due in advance, on the first day of each and every calendar month during such third five (5) year renewal period.

5.   <u>**TAXES AND ASSESSMENTS:**</u>

Lessor shall pay all real estate taxes, including penalties and interest for tax years preceding the Commencement Date of this Lease.  Lessor shall also pay all special assessments which are a lien on the Real Property on the Commencement Date of this Lease, whether or not such assessments are past due, then due or are thereafter to become due and any assessments or charges which are for improvements then installed, or which are then known but which will be payable in whole or in part after the Commencement Date.

Ruby Tuesday agrees to pay to the appropriate governmental agencies all other real property taxes, assessments, impositions, or all other claims or charges (herein collectively called the "taxes") which may constitute or may be reduced to a lien upon the Real Property, including but not limited to, water charges and sewer charges, before the same shall become delinquent.  All such payments for the first and last year of the original term or any renewal terms shall be prorated between Lessor and Ruby Tuesday so that Ruby Tuesday shall be responsible for that portion of the taxes which is attributable to the original term and any renewal term.   Ruby Tuesday's tax obligation shall commence on the Commencement Date hereof.  In the event there is included in the taxes any special assessment or assessment which may be paid in installments, unless otherwise directed by written notice from Ruby Tuesday, Lessor shall advise the appropriate governmental agency of its intention to elect payments in installments thereof, and Ruby Tuesday shall pay such installments as shall be due and payable during the original term or any renewal term, regardless of when such installment was assessed.

The Leased premises is designated as a separate parcel for taxing purposes so that the assessed valuation of the land and buildings shall relate only to the land constituting the Real Property and to the buildings and improvements constructed on the Real Property.

Ruby Tuesday shall have the right in its own name, or in Lessor's name where appropriate, but at its own cost and expense, to contest by appropriate proceedings the amount or legality of any taxes which it is obligated to pay hereunder and make application for the reduction thereof, or any assessment upon which the same may be based, and the Lessor agrees, at the request of Ruby Tuesday, to execute or join in the execution of any instruments or documents necessary in connection with such contest or application. If Ruby Tuesday shall contest such tax assessment, or other imposition, provided the payment of such taxes may legally be held in abeyance, the time within which Ruby Tuesday shall be required to

1  pay the same shall be extended until such contest or application
2  shall have been finally determined, except that Ruby Tuesday shall
3  be responsible for any penalty imposed by the taxing authority
4  resulting from the late payment of taxes due to said contest.
5
6      In no event shall Ruby Tuesday be liable for payment of any
7  income, estate or inheritance taxes imposed upon Lessor or the
8  estate of Lessor.   Ruby Tuesday shall not pay any income,
9  franchise, excise, sales, taxes assessed by any taxing authority on
10 the rental income received by the Lessor, or excess profits tax
11 levied upon, required to be collected by, or assessed against
12 Lessor.
13
14 6.   **INSURANCE:**
15
16     Ruby Tuesday hereby covenants and agrees at all times during
17 the original term of this Lease and any renewal term to maintain
18 and keep in force comprehensive general liability insurance against
19 all claims for personal injury, death, or property damage occurring
20 on the Leased Premises with minimum limits of liability of One
21 Million ($1,000,000) Dollars per person, One Million ($1,000,000)
22 Dollars per occurrence and One Million ($1,000,000) Dollars
23 property damage.  Ruby Tuesday shall name Lessor as an additional
24 insured on said policy and shall furnish certificates of insurance
25 evidencing payment thereof to Lessor as the same shall be requested
26 in writing from time to time by Lessor.
27
28     Ruby Tuesday will indemnify Lessor and save it harmless from
29 and against any and all claims, actions, damages, liability and
30 expense in connection with loss of life, personal injury and/or
31 damage to property arising from or out of the Leased Premises
32 occasioned wholly or in part by any act or omission of Ruby
33 Tuesday, its agents, contractors or employees.
34
35 7.   **UTILITIES AND UTILITY EASEMENTS:**
36
37     Lessor warrants that all water, sanitary services, storm
38 sewers, electricity, gas, oil and other required utilities (herein
39 collectively referred to as "utilities") are available for
40 connection, are adequate for Ruby Tuesday's needs, and are inside
41 the boundaries of the Leased Premises. Ruby Tuesday shall have the
42 right to grant easements over, upon and under the Leased Premises
43 for utilities, sewers, ingress and egress, and similar purposes to
44 service the development thereof and the improvements thereon; and
45 Lessor agrees, from time to time upon request by Ruby Tuesday,
46 without any compensation being paid therefor, to join in the
47 granting of such easements and to take any other action necessary
48 to effectuate the same. Lessor shall pay to bring all utilities to
49 the Leased Premises  which are necessary for Ruby Tuesday to
50 connect to and use all utility services.  Ruby Tuesday shall
51 thereafter pay any and all tap in, connection, environmental and
52 traffic impact fees or such other charges and fees which are based
53 wholly, or in part, upon Ruby Tuesday's lease and use of the Leased
54 Premises and associated traffic.
55
56     Notwithstanding the preceding paragraph, if gas, electric,
57 water, telephone, sanitary sewer, storm or drainage sewer or ditch
58 adequate for Ruby Tuesday's intended use of the Leased Premises are
59 not available to the perimeter of the Real Property, then within
60 thirty (30) days after written request by Ruby Tuesday, Lessor
61 shall so extend such utilities to a location on the perimeter of
62 the Real Property which Ruby Tuesday can tap into and receive ser-
63 vice.  Lessor shall bear all costs incurred in extending utility
64 lines to the perimeter of the Real Property.   In the event the
65 utilities do not run directly to the Leased Premises from adjacent
66 publicly dedicated streets, Lessor shall also obtain, deliver and
67 record all easements necessary to permit Ruby Tuesday's use,
68 maintenance, repair and replacement of all required utilities.
69 Such easements shall be paramount to any lien on the servient
70 property and shall be in such form and content acceptable to Ruby
71 Tuesday.
72

8. __CONSTRUCTION OF IMPROVEMENTS:__

A.    __Plans and Elevations__

Lessor acknowledges that it has seen and is familiar with the type of building and related improvements constructed by Ruby Tuesday, and Ruby Tuesday is not required to submit to Lessor detailed plans and elevation drawings for the building and other improvements, including signage, which Ruby Tuesday desires to construct on the Leased Premises.

B.    __Zoning, Licenses and Permits__

Ruby Tuesday will be permitted without delay to tap into and receive service from all utilities without the imposition of charges other than charges of the type and amount which are customarily and normally charged in the locality in which the Leased Premises are located, and that Lessor has no knowledge of anything that would prohibit Ruby Tuesday from obtaining all licenses and permits, including, but not limited to, those pertaining to building, occupancy and liquor, which are necessary to Ruby Tuesday's business.

Lessor acknowledges that this Lease is contingent upon Ruby Tuesday obtaining all necessary permits, licenses (including, but not limited to, liquor, beer and wine licenses for on-premises consumption), variances, easements and approvals pertaining to the building, occupancy, signs, parking, curb cuts (with the exception of any curb cut onto Highway 80), driveways (including ingress and egress to public thoroughfares), zoning, environmental controls, and any other governmental permits which, in the sole judgment of Ruby Tuesday, are necessary to permit it to construct and operate a Ruby Tuesday restaurant with adjacent parking upon the Leased Premises, all at a cost acceptable to Ruby Tuesday.  All of said permits, licenses, variances and approvals must be validly and irrevocably granted on terms and conditions and at a cost satisfactory to Ruby Tuesday without qualification, except such qualification as shall be acceptable to Ruby Tuesday, and no longer subject to appeal.  Lessor agrees to execute any applications or other documents requested by Ruby Tuesday in order to obtain any permits, licenses, variances and approvals.  Further, this Lease is contingent upon all construction and related costs being acceptable to Ruby Tuesday.

Lessor further acknowledges that this Lease is contingent upon Ruby Tuesday obtaining an acceptable amendment to the Wal-Mart REA increasing the allowable building size on the Leased Premises to 5,100 square feet in floor area and 22 feet in height.  This Lease is also contingent upon the use of the Leased Premises for a Ruby Tuesday restaurant with adjacent parking being permitted under the zoning classification and local laws and ordinances applicable to the Leased Premises.  In the event any of the contingencies contained in this Lease have not been satisfied within one hundred eighty (180) days following the effective date of this Lease (said one hundred eighty (180) day period is hereinafter referred to as the "Contingency Period"), then this Lease shall be void at the option of Ruby Tuesday and both parties shall be relieved from any obligations and/or liabilities hereunder, and all deposits and payments made hereunder by Ruby Tuesday shall be refunded to Ruby Tuesday.

C.    __Survey, Soil Tests and Environmental Tests__

i.    Following the effective date of this Lease, Ruby Tuesday, at its own expense, shall order a current certified survey of the Leased Premises, bearing a legal description of the Leased Premises, made and prepared by a reputable and competent licensed surveyor showing: (i) the area, dimension and locations of the Real Property to the nearest monuments, streets and alleys on all sides; (ii) spot elevations and bench marks; (iii) the location of all available utilities in adjoining streets, alleys or properties with invert elevations of basins, manholes, etc.; (iv) the location and

description of all existing and/or proposed easements referred to in this Lease, and against or appurtenant to the Leased Premises and the Real Property; and (v) the location of all improvements and encroachments.  In addition to the foregoing, if deemed necessary by Ruby Tuesday, Ruby Tuesday, at its own expense, shall order a plan of subdivision for the Leased Premises made and prepared by a reputable and competent licensed surveyor in the jurisdiction in which the Leased Premises are located showing the Real Property and any and all easements and restricted property set forth in this Lease.

ii.  At Ruby Tuesday's expense, Ruby Tuesday may obtain borings and/or soil bearing tests and other tests to determine the suitability of the Leased Premises for building foundations and other improvements which Ruby Tuesday may wish to make, provided, however, that said tests shall be so conducted as not to damage the Leased Premises.  If the survey, borings and/or soil bearing tests disclose any condition which, in Ruby Tuesday's judgment, would render the Leased Premises unusable by Ruby Tuesday for the construction and operation of a Ruby Tuesday restaurant with adjacent parking, then by written notice given to Lessor prior to the expiration of the Contingency Period, Ruby Tuesday may terminate this Lease, and both parties shall be relieved from any obligations and/or liabilities hereunder, and all deposits and payments made hereunder by Ruby Tuesday to Lessor shall be refunded to Ruby Tuesday.

iii. Following the effective date of this Lease, Ruby Tuesday, at its own expense, shall order an initial environmental audit (generally referred to as a "Phase I" audit) of the Leased Premises and of any property over which Ruby Tuesday will have rights, such as easement, parking or the like. Should the initial audit disclose adverse conditions then a more specific and definitive audit (generally referred to as a "Phase II" audit) shall be ordered at Ruby Tuesday's expense.  In the event the foregoing environmental audits are not acceptable to Ruby Tuesday, then Ruby Tuesday may terminate this Lease, and both parties shall be relieved from any obligations and/or liabilities hereunder, and all deposits and payments made hereunder by Ruby Tuesday to Lessor shall be refunded to Ruby Tuesday.

9.   **ALTERATIONS:**

During the original term or any renewal term of this Lease, Ruby Tuesday may make alterations, additions and improvements to the Leased Premises without the consent of Lessor, and Ruby Tuesday shall have the right to erect and install such other or additional improvements, and equipment on the Leased Premises as Ruby Tuesday may, in its sole judgment, deem desirable for conducting its business thereon or for such other business as Ruby Tuesday may deem advisable, so long as such alterations, additions and improvements comply with all governmental laws and any applicable restrictive covenants.

10.  **CASUALTY LOSS:**

If the building or other improvements located on the Leased Premises should be damaged by fire or other casualty so that in the reasonable judgment of Ruby Tuesday the business conducted on the Leased Premises could not be conducted in a normal manner until the buildings and/or improvements are repaired or reconstructed, then Ruby Tuesday may, at its option, either (i) repair or reconstruct the buildings and/or improvements, or (ii) within ninety (90) days after the date of the fire or other casualty return possession of the Leased Premises to Lessor with all buildings, unnecessary sub-surface items and debris removed from the surface of the Leased Premises.  After such return of possession of the Leased Premises to the Lessor, all obligations of Ruby Tuesday under this Lease shall terminate.

If the buildings or other improvements located on the Leased Premises should be damaged by fire or other casualty but the damage

is sufficiently limited that in the reasonable judgment of Ruby Tuesday the business conducted on the Leased Premises can continue to be conducted in a normal manner while the buildings and improvements are being repaired, then Ruby Tuesday shall repair the buildings and/or improvements and this Lease shall continue in force and effect.

In any event Ruby Tuesday shall be entitled to receive the entire insurance proceeds payable as a result of any damage to the buildings or improvements on the Leased Premises occurring during the term of this Lease or any renewal term.

## 11.  LIENS PERMITTED:

### A.  Security Interest in Fixtures Permitted

Ruby Tuesday shall have the right at any time to grant a security interest in any goods and property of every type and description owned by Ruby Tuesday, and installed or kept on the Leased Premises.  Lessor hereby consents to any such security interest and disclaims any interest of any kind in any goods and property installed or kept on the Leased Premises.  Lessor agrees that it will, within ten (10) days after any written request by Ruby Tuesday, confirm the foregoing consent and disclaimer in writing.

### B.  Leasehold Mortgages Permitted

Ruby Tuesday may at any time mortgage, encumber, pledge or assign as security its right, title and interest in and to the leasehold estate created hereby.  Ruby Tuesday may, at any time, give to Lessor a notice (hereinafter referred to as a "Mortgage Notice") containing the name and address of a lender (hereinafter referred to as a "Mortgage Lender") to which the leasehold estate created hereby has been or will be mortgaged, encumbered, pledged or assigned as security.  Upon written request from Ruby Tuesday or any Mortgage Lender identified in a Mortgage Notice, Lessor will acknowledge, in writing, the receipt of any Mortgage Notice which it has received.

Whenever Lessor shall give any notice to Ruby Tuesday pursuant to the Lease, Lessor shall also give to any Mortgage Lender at the address of such Mortgage Lender, a duplicate copy of such notice.  The address of the Mortgage Lender shall be the address specified in the Mortgage Notice unless changed by subsequent written notice given by the Mortgage Lender to Lessor.  No notice shall be effective unless it is given to all Mortgage Lenders.  If at any time a Mortgage Lender shall give to Lessor a written notice that it has released its lien on the leasehold estate created hereby, such lender shall cease to be a Mortgage Lender for purposes hereof and no further notices need be given to it.

If Ruby Tuesday shall not cure or remedy any default or breach of covenant by Ruby Tuesday under this Lease within the period provided for such cure or remedy, Lessor shall thereupon give notice to that effect to all Mortgage Lenders, which shall thereupon be entitled to exercise any one or more of the following rights:

i.    to cure or remedy, or cause to be cured or remedied, within a period of time equal to the period of time allowed by Ruby Tuesday, such default or breach of covenant and Lessor shall accept such cure or remedy; and/or

ii.   to acquire by foreclosure or otherwise the leasehold estate created hereby and assume the obligations of Ruby Tuesday under this Lease, including those in default, and, in such event, Lessor shall not exercise its right of termination with respect to such default; and/or

iii. to require Lessor to terminate this Lease by reason of such default and enter into a new lease with the Mortgage Lender for the balance of the lease term at the same rental and upon the same terms, covenants and conditions as contained in this Lease.

In addition to the foregoing rights, a Mortgage Lender may, at any time permitted under its loan documents, foreclose or otherwise realize upon its lien on the leasehold estate created hereby and Lessor will recognize the person, firm or corporation acquiring the leasehold estate created hereby as the lessee hereunder with all of the rights and estate of Ruby Tuesday, provided such person, firm or corporation agrees to assume and be bound by all of the terms, covenants and conditions hereof.

Lessor further agrees that any Mortgage Lender, in order to protect its interest in the leasehold estate created hereby, may exercise any right of renewal granted in Section 2 hereof to Ruby Tuesday and if such right of renewal is not also exercised by Ruby Tuesday, then during such renewal term as exercised by Mortgage Lender, Lessor will recognize the Mortgage Lender as the lessee hereunder with all of the rights and obligations of Ruby Tuesday.

## 12.  LIENS NOT PERMITTED:

Ruby Tuesday shall not, at any time, suffer or permit the attachment to the Leased Premises of any lien for work done or materials furnished in connection with the improvement, maintenance, repair and/or alteration of the premises by Ruby Tuesday. If any such lien attaches to the premises and is not discharged or released within sixty (60) days from the date of receipt by Ruby Tuesday of written notice of same from Lessor, Lessor may, at its option, pay to the lien claimant the amount of such lien and notify Ruby Tuesday of such payment, in which event such amount shall be immediately due and payable by Ruby Tuesday and shall bear interest at the rate of twelve percent (12%) per annum; provided, however, that if Ruby Tuesday desires to contest said lien, Ruby Tuesday shall furnish to Lessor a bond written by a surety company licensed to do business in the state in which the Leased Premises are located or other security satisfactory to Lessor for an amount at least equal to the amount of the lien for the Lessor's protection against all loss or expense on account of such asserted lien during the period of contest.

Notwithstanding the above provisions, upon termination of the Lease, all leasehold security interests shall be satisfied and cancelled.

## 13.  USE AND OCCUPANCY:

Ruby Tuesday shall use and occupy the Leased Premises in a careful, safe and proper manner, and will not occupy or use said premises or permit the same to be occupied or used for any purpose or business which is unlawful and will comply with all lawful requirements of all valid laws, ordinances, rules and regulations of all governmental authorities pertaining to the use and occupancy of the Leased Premises.  Nothing contained herein shall require Ruby Tuesday to continuously operate any business in the Leased Premises.  Further, the parties hereby expressly waive any law or the like which would require continuous operation of a business from the Leased Premises.

## 14.  SURRENDER OF PREMISES:

Ruby Tuesday will deliver up and surrender possession of the Leased Premises to Lessor upon the expiration of this Lease, any renewal or extension hereof, or its termination in any way in the condition and state of repair then existing, provided, however, that Ruby Tuesday shall have the right to remove all trade fixtures and equipment therefrom, as further provided in Section 22 hereof.

Ruby Tuesday shall also have the right, at Ruby Tuesday's

expense, to make changes in the appearance of the improvements located on the Leased Premises, so as to alter the appearance from the appearance of the standard Ruby Tuesday restaurant. Such changes may include painting all or part of the improvements so as to change the scheme and changing the slope and appearance of the fascia on the building.

15. <u>DEFAULT BY RUBY TUESDAY</u>:

If Ruby Tuesday shall fail to pay any installment of rent promptly on the day the same shall become due and payable hereunder, and such failure shall continue for a period of thirty (30) days after receipt by Ruby Tuesday of written notice thereof from Lessor, or if Ruby Tuesday shall fail to keep and perform promptly any other affirmative covenant of this Lease, in accordance with the terms of this Lease and such failure shall continue for a period of sixty (60) days after receipt by Ruby Tuesday of written notice thereof from Lessor, the Lessor may, at its sole option, and subject only to the provisions of Section 11 hereof: (a) declare this Lease to be terminated, and enter into the Leased Premises or any part thereof, with process of law, and expel Ruby Tuesday or any person occupying the same in or upon said premises, and repossess and enjoy the Leased Premises as in Lessor's former estate in which event Ruby Tuesday may remove from the Leased Premises all of the personal property as set forth in Section 22 hereof, and all of Ruby Tuesday's obligations hereunder shall be terminated; or (b) relet the Leased Premises, applying said rent from the new tenant on this Lease, and Ruby Tuesday shall be responsible for no more than the balance that may be due, should a balance exist. However, if the default cannot, with due diligence, be cured prior to the expiration of sixty (60) days from the date of receipt of the notice provided for above, and if Ruby Tuesday commences within sixty (60) days after the date to eliminate the cause of such default and proceeds diligently and with reasonable dispatch to take all steps and do all work required to cure such default, then Lessor shall not have the right to declare this Lease terminated by reason of such default until a period of one hundred and eighty (180) days has expired since the cause of such default began.

16. <u>WARRANTY OF TITLE BY LESSOR</u>:

A. <u>Warranty</u>

Lessor hereby warrants, represents and covenants to Ruby Tuesday that: (a) at the time of the execution by Lessor of this Lease and until this Lease or other instrument giving constructive notice of this Lease is recorded, Lessor is the sole owner in fee simple absolute of the Leased Premises and has the right to grant any easements referred to in this Lease; (b) at the time of the execution by Lessor of this Lease and until this Lease or other instrument giving constructive notice of this Lease is recorded, Lessor has good and marketable fee simple title to the Leased Premises free and clear of all liens and encumbrances except taxes not yet due and payable and other exceptions to title which have been approved in writing by Ruby Tuesday; (c) Lessor does warrant and will defend the title to the Leased Premises and any easements referred to in this Lease, and will indemnify Ruby Tuesday against any damage and expense which Ruby Tuesday may suffer by reason of any lien, encumbrance, restriction or defect in the title or description herein of the premises; and (d) Lessor has full right and power to execute this Lease and to lease the Leased Premises and to deliver the easements referred to in this Lease for the term provided in this Lease. In case Lessor does not have the title and rights aforesaid, then in such event, in addition to any other rights of Ruby Tuesday, this Lease shall, at the option of Ruby Tuesday, become null and void, and no rent for the remainder of the term aforesaid shall become due to the Lessor, its legal representatives or assigns, and all advance rents and other payments shall be returned by the Lessor to Ruby Tuesday, or Ruby Tuesday may withhold rent thereafter accruing until Ruby Tuesday is

furnished proof satisfactory to Ruby Tuesday as to the parties entitled to receive rent.

Ruby Tuesday acknowledges that Eagle Bank and Trust has a first mortgage on the Leased Premises and pursuant to Section 25 of this Lease will execute a Subordination and Non-Disturbance Agreement.

B.    Title Searches/Investigations

Ruby Tuesday may elect to carry-out such title searches and other investigations as it deems appropriate to ascertain the state of the Lessor's title and the accuracy of the warranty set out in Section 16 A. hereinabove. In pursuance of same, Ruby Tuesday may obtain, at its own expense, a title insurance policy, with endorsements, issued by a title insurance company ("title insurance company") acceptable to Ruby Tuesday. In addition to paying the costs of said title insurance policy and endorsements required by Ruby Tuesday, Lessor agrees to cooperate with Ruby Tuesday in obtaining said policy by delivering, within seven (7) days after notification by Ruby Tuesday or its agent of the name and address of the title insurance company which will furnish the policy, to said title insurance company at such address all title information in Lessor's possession relating to the Leased Premises and thereafter any additional documents as may be required by the title insurance company to issue its policy of title insurance. Said title insurance policy must insure Ruby Tuesday in the amount of Two Million ($2,000,000.00) Dollars that good and marketable title to the Leased Premises is vested in the Lessor, without exception for any matters including matters which would be disclosed by a survey and inspection and is vested in the Lessor free and clear of all liens and encumbrances except taxes not yet due and payable and other exceptions to title which have been approved in writing by Ruby Tuesday and insure that the leasehold estate created by this Lease is vested in Ruby Tuesday, without exceptions and free and clear of all liens and encumbrances except as aforesaid. In the event that such searches and investigations reveal any liens, encumbrances or exceptions to title other than those specified above or any state of title other than that specified above, or in the event said title insurance policy is not obtainable or shows, or if issued would show, any liens, encumbrances or exceptions to title other than those specified above or any state of title other than that specified above, Ruby Tuesday and/or the title insurance company shall provide Lessor with written notice of those title matters which Ruby Tuesday finds objectionable. In the event Lessor fails to satisfy Ruby Tuesday's title objections on or before the expiration of the Contingency Period, then Ruby Tuesday, at its sole option, may: (a) at Lessor's expense, take any steps necessary to cure such defects in or exceptions to title, and/or (b) by written notice to Lessor, give Lessor additional time to satisfy said title objections, and/or (c) by notice to Lessor, terminate this Lease, in which event this Lease shall be null and void and of no further force and effect, and any monies paid by Ruby Tuesday, whether for rent or otherwise, shall be forthwith refunded to Ruby Tuesday and Ruby Tuesday shall be released from any obligations under the terms of this Lease.

17.  QUIET ENJOYMENT:

Lessor hereby covenants and agrees that if Ruby Tuesday shall not then be in default beyond any period for the cure thereof, Ruby Tuesday shall, at all times during the original term of this Lease and any renewal term, have peaceable and quiet enjoyment and possession of the Leased Premises without any manner of let or hindrance from the Lessor or any other person, firm or corporation.

18.  ENVIRONMENTAL MATTERS:

A.    Definitions

For the purposes hereof, the following definitions shall apply:

i.    "Law or Regulation" means and includes the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA" or the Federal Superfund Act) as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA") 42 U.S.C., Sections 9601-9675; the Federal Resource Conservation and Recovery Act of 1876 ("RCRA"); the Clean Water Act, 33 U.S.C., Section 1321, et seq.; the Clean Air Act, 42 U.S.C., Section 7401, et seq., all as the same may be from time to time amended and any other federal, state, county, municipal, local or other statute, law, ordinance or regulation which may relate to or deal with human health or the environment, including, without limitation, all regulations promulgated by a regulatory body pursuant to any such statute, law or ordinance.

ii.    "Hazardous Substance or Materials" means asbestos, ureaformaldehyde, polychlorinated biphenyls, nuclear fuel or materials, chemical waste, radioactive materials, explosives, known carcinogens, petroleum products or other dangerous, toxic, or hazardous pollutant, contaminant, chemical, material or substance defined as hazardous or as a pollutant or contaminant in, or the release or disposal of which is regulated by, any Law or Regulation.

B.    **Representations and Warranties**

i.    To the best of Lessor's knowledge, Lessor represents and warrants that:

(1)    Other than that certain Reciprocal Easement Agreement by and between Wal-mart Stores, Inc. and Gabby's Statesboro Partnership, dated November 20, 1991 recorded in the Office of the Clerk of Superior Court of Bulloch County at Deed Book 560, Page 131 (the "Wal-Mart REA"), at the time of the execution of this Lease during the term hereof, or any extensions hereof, that no cross-easement and/or reciprocal construction operating and easement agreements and/or the Lessor's Certificate of Occupancy and/or any other operating agreement.

(2)    There is not located on, in, about, or under the Leased Premises any Hazardous Substance.    Any permits or licenses necessary or required to store, use or manufacture on the Premises any Hazardous Substances have been obtained, are being complied with, and are in full force and effect.

(3)    The Leased Premises presently are not and never have been utilized for the storage, manufacture, disposal, handling, transportation or use of any Hazardous Substances, or as a landfill.

(4)    There are no past or present investigations, administrative proceedings, litigation, regulatory hearings or other action proposed, threatened or pending, alleging non-compliance with or violation of any Law or Regulation or relating to any required environmental permits.    Lessor has not, nor has any third party, violated any Law or Regulation.

(5)    The Leased Premises are not listed in the United States Environmental Protection Agency's National Priorities List of Hazardous Waste Sites nor any other list, schedule, log, inventory or record of hazardous waste sites maintained by any state, federal or local agency.

(6)    Lessor has disclosed to Ruby Tuesday all reports and investigations commissioned by Lessor and relating to Hazardous Substances and the Leased Premises.

(7)    There are not now, nor have there ever been, any above ground or underground storage tanks located in or under the Leased Premises.    The Leased Premises have never been used as a landfill.

(8)    There exists no natural conditions or re-

strictions of any type that restrict the full potential development of the property by Ruby Tuesday, including, but not limited to, wetlands; flood plain; coastal zone designation or otherwise "environmentally sensitive areas"; radon, naturally occurring radioactivity; availability of public water and/or sewer; storm water management; moratorium on building; or any other natural condition or restriction.

ii. All representations and warranties herein contained shall be deemed to be continuing and shall survive the expiration or early termination of the Lease.

iii. If any representation or warranty herein contained shall be, or be found to be, false, inaccurate or misleading, then Ruby Tuesday shall be entitled to terminate this Lease, or to recover as damages, in addition to all other damages legally recoverable, actual costs and expenses incurred in correcting or remedying such error including all costs of defending any regulatory or governmental action resulting from such error including, without limitation, attorneys and experts fees and disbursements.

**19.**    **PAYMENTS:**

Lessor hereby covenants and agrees that, in the event Lessor shall fail to make the payments on any taxes or other payments on the Leased Premises which Lessor is required to pay, Ruby Tuesday may, but shall not be required to, make such tax payments or such other payments or do such acts and things as may be necessary to keep the taxes on the Leased Premises from being in default, and all such sums expended by Ruby Tuesday shall become immediately due and payable to Ruby Tuesday by Lessor. When due, said sums shall bear interest at the rate of twelve (12%) percent per annum and may be offset by Ruby Tuesday against future rentals.

**20.**    **DEFAULT BY LESSOR:**

If Lessor shall breach any warranty or fail to perform any covenant required to be performed by Lessor under the terms of this Lease and such breach or failure shall continue for a period of thirty (30) days after receipt by Lessor of written notice thereof from Ruby Tuesday or if Lessor shall fail to pay any sums due to Ruby Tuesday ·hereunder, and such failure shall continue for a period of thirty (30) days after receipt by Lessor of written notice thereof from Ruby Tuesday, then Ruby Tuesday may, in addition to any of Ruby Tuesday's other rights set forth elsewhere in this Lease, (a) cure any default or breach of warranty of Lessor hereunder, and perform any covenants which Lessor has failed to perform, and any sums expended by Ruby Tuesday in curing such default or breach of warranty and performing such covenants shall be paid by Lessor to Ruby Tuesday immediately upon demand, shall bear interest at the rate of twelve (12%) percent per annum from the date of demand, and may be offset by Ruby Tuesday against future rentals; (b) bring suit to recover from Lessor all sums due Ruby Tuesday from Lessor together with interest at the rate of twelve (12%) percent per annum thereon; and/or (c) declare this Lease to be terminated, in which event Ruby Tuesday shall have no further liability hereunder.

**21.**    **TITLE TO BUILDINGS, IMPROVEMENTS, FIXTURES AND EQUIPMENT:**

Trade fixtures shall be defined in this Lease to include, without limitation, and by way of illustration only, kitchen plumbing fixtures (except sanitary plumbing fixtures), counters, stainless steel equipment, kitchen equipment, such as ranges, display cases, refrigeration equipment, including the machinery installed in the walk-in cooler built into the Leased Premises, Ruby Tuesday's decorative items, boilers, cashiers' stands, tables, chairs, benches, booths, lighting fixtures, pictures, mirrors, decorative wall items, room partitions, Ruby Tuesday's decorative items in the dining areas, such as chandeliers, wall ornaments, stained, beveled and leaded glass, special doors and special lighting fixtures, and all such other fixtures or equipment as Ruby

Tuesday may, from time to time, place in or upon the Leased Premises. Any or all of Ruby Tuesday's trade fixtures may, at Ruby Tuesday's option, be removed from the Leased Premises from time to time and may, at Ruby Tuesday's option, be removed upon the expiration of this Lease.

Title to the building and all other improvements on the Leased Premises and any repairs, alterations, additions or improvements to said building or improvements shall be vested in and remain in Ruby Tuesday's at all times during the original term of this Lease and any renewal or extension thereof. Upon the expiration of this Lease, any extension or renewal hereof, or its termination in any way, title to the building and any improvements shall automatically pass to and become vested in the Lessor and Ruby Tuesday shall, upon request of Lessor, execute such quit claim deed, bill of sale, or assignment as may be necessary to evidence the transfer of such title to Lessor.

**22. DELIVERY OF POSSESSION:**

On or before the date seven (7) days following the earlier of (i) the expiration of the Contingency Period or (ii) the date Ruby Tuesday provides written notice to Lessor that it is satisfied with all of its contingencies, Lessor shall deliver the Leased Premises to Ruby Tuesday. In the event Lessor fails to remove the existing building from the Leased Premises during such seven (7) day period, the Ruby Tuesday shall have the right to dispose of such building at its sole discretion.

**23. BROKERS:**

Ruby Tuesday under a separate commission agreement, shall be solely responsible for payment of a real estate commission to Fidelity Properties, Inc. Lessor shall indemnify and hold Ruby Tuesday harmless for any claims made against Ruby Tuesday by any broker acting or claiming to act on behalf of Lessor. The indemnifications and hold harmless provisions of this paragraph include, but are not limited to, court costs, reasonable attorney fees and other professional fees and expenses, including the cost of any appeals.

**24. APPROPRIATION:**

If all or any part of the Leased Premises shall be appropriated or condemned by any public or quasi-public authority in the exercise of its right of condemnation or eminent domain, both Ruby Tuesday and Lessor shall have the right to prosecute a claim for an award and to share in the proceeds of any and all awards based upon their respective interests as hereafter set forth. If all the Leased Premises shall be appropriated or condemned, this Lease shall terminate as of the time when possession shall be required by such public or quasi-public authority. Lessor shall be entitled to receive that portion of any and all awards necessary to compensate it for the present value of the rents which it would have received in the future and for the present value of its reversionary interest, and notwithstanding the termination of this Lease, Ruby Tuesday shall be entitled to that portion of any and all awards necessary to compensate it for the value of its improvements to the Leased Premises, the value of its leasehold estate and the damages which it may sustain as a result of termination of the Lease prior to the end of the term, including any renewal terms.

In the event that a part of the Leased Premises shall be taken or condemned and that: (a) the part so taken includes the building on the Leased Premises or any part thereof, or (b) the part so taken shall remove from the Leased Premises twenty-five (25%) percent or more of the total parking area thereof or more than five (5) parking spaces for automobiles, whichever is greater, or (c) such partial taking shall limit access to the Leased Premises in any way, or (d) such partial taking shall result in cutting off direct access from the Leased Premises to any adjacent public street or highway, or the permanent closing or relocation of any

street adjoining the Leased Premises to which there is direct
access to and from the Leased Premises materially impairs or
adversely affects Ruby Tuesday's use of the Leased Premises and the
Lessor is unable to promptly provide Ruby Tuesday with a suitable
alternate means of access, in Ruby Tuesday's sole opinion, then and
in any such event, Ruby Tuesday may, at any time either prior to or
within a period of sixty (60) days after the date when the
condemning authority shall require possession of the part of the
Leased Premises taken or condemned, elect to terminate this Lease.
In the event Ruby Tuesday elects to terminate this Lease, Lessor
shall be entitled to receive that portion of any and all awards
necessary to compensate it for the present value of the rents which
it would have received in the future and for the present value of
its reversionary interest, and notwithstanding the termination of
this Lease, Ruby Tuesday shall be entitled to that portion of any
and all awards necessary to compensate it for the value of its
improvements to the Leased Premises, the value of its leasehold
estate and the damages which it may sustain as a result of
termination of the Lease prior to the end of the term, including
any renewal terms.  In the event that Ruby Tuesday shall not elect
to terminate this Lease or in the event that a part of the Leased
Premises shall be taken or condemned under circumstances under
which Ruby Tuesday will have no such election, then and in either
event, Ruby Tuesday shall receive so much of any and all awards as
is necessary to pay for repairs to and alterations of the
improvements on the Leased Premises for the purpose of restoring
the same to an economic architectural unit, susceptible to the same
use as that which was in effect immediately prior to such taking,
and Lessor shall receive the balance, if any, of any awards.  In
the event that this Lease shall not terminate after any part of the
Leased Premises is taken or condemned, there shall be a reduction
in rental equal to the lesser of (a) the percentage to the ground
area of the Leased Premises which is taken or condemned or (b) the
percentage by which the gross sales made by Ruby Tuesday at the
Leased Premises during the one year following the date on which the
condemning authority takes possession of part of the premises are
less than the gross sales during the one year immediately preceding
the date of possession by the condemning authority.

        In the event that ingress to and/or egress from the Leased
Premises are in any way blocked or partially blocked as a result of
any road construction or other improvements, Lessor agrees to waive
all of Ruby Tuesday's obligations during such period of con-
struction or improvement, provided that Ruby Tuesday shall not be
relieved from its obligation to pay taxes and other charges and to
keep the premises insured.

25.   <u>SUBORDINATION AND NON-DISTURBANCE</u>:

    A.   <u>Future Mortgages/Deeds of Trust</u>

        This Lease shall, at the election of the Lessor, be superior
or be subject and subordinate to the lien of any mortgage and/or
deed of trust which Lessor may hereafter place upon the premises
provided that (1) if there are no defaults hereunder on the part of
Ruby Tuesday the right of possession of Ruby Tuesday to the Leased
Premises and Ruby Tuesday's rights arising out of this Lease shall
not be affected or disturbed by the mortgagee or trustee or
beneficiary under the mortgage and/or deed of trust in the exercise
of any of its rights under the mortgage, deed of trust or the notes
secured thereby; (2) Ruby Tuesday shall not in any foreclosure or
other proceeding under the mortgage or deed of trust nor in any
other way be deprived of its rights under this Lease, nor shall
this Lease be terminated or affected by any foreclosure or sale or
any proceeding under any mortgage or deed of trust; and (3) the
mortgagee, trustee and/or beneficiary execute and deliver to Ruby
Tuesday an Agreement of Attornment and Non-Disturbance in form
acceptable to Ruby Tuesday prior to the execution of the mortgage
or deed of trust.   Lessor agrees that in the event of any
foreclosure of the mortgage or deed of trust, Ruby Tuesday shall
have the right to withhold the payment of any rentals due hereunder
and pay the same directly to the mortgagee or trustee in satis-

faction of said indebtedness.

**B.    Presently Existing Mortgages/Deeds of Trust**

Prior to the expiration of the Contingency Period, Lessor, at Lessor's sole cost and expense, shall provide Ruby Tuesday with non-disturbance and attornment agreements in a form which is acceptable to Ruby Tuesday, executed by all entities or parties presently holding mortgages, deeds of trust or other liens upon the Leased Premises.

**26.  ESTOPPEL INSTRUMENTS:**

At any time and from time to time upon the written request of either of the parties hereto or any Mortgage Lender, Lessor or Ruby Tuesday, as the case may be, shall deliver to the party requesting the same a certificate executed in recordable form stating (i) whether or not this Lease is in full force and effect, (ii) whether or not any rights to renew the term of this Lease have been exercised and the date on which this Lease will terminate, (iii) whether or not this Lease has been modified or amended in any way and attaching a copy of such modification or amendment, (iv) whether or not there are any existing defaults under this Lease to the knowledge of the party executing the certificate, and specifying the nature of such defaults, if any, (v) the status of rent payments and (vi) any other facts regarding the operation of the Lease which the Mortgage Lender may reasonably request.

**27.  ASSIGNMENT, SUBLETTING AND FRANCHISING BY RUBY TUESDAY:**

Ruby Tuesday shall have the right to assign this Lease or let or underlet the whole or any part of the Leased Premises, except to or for an oriental restaurant, without the consent of Lessor, provided that Ruby Tuesday remains liable on this Lease. Notwithstanding any provision to the contrary, Ruby Tuesday shall be released from its obligations under this Lease if the assignee of this Lease has a net worth of at least $25 Million Dollars based upon a recent audited financial statement.

Notwithstanding anything contained in this Lease, Ruby Tuesday is expressly authorized, without the consent of the Lessor, to sublet the Leased Premises to an authorized franchisee, provided such subletting is specifically subject to the terms of this Lease and further provided Ruby Tuesday remains liable for the performance of the terms of this Lease and provided the franchisee expressly assumes all obligations of the Lease.  Ruby Tuesday agrees to notify Lessor as to the name of the franchisee within ten (10) days after any such subletting.

**28.  RIGHT OF FIRST REFUSAL:**

From and after the effective date and during the term of this Lease hereof, Ruby Tuesday shall have the right of first refusal and Lessor shall not sell, transfer or otherwise dispose of all or part of Lessor's interest in the Leased premises until and unless Lessor shall have: (a) obtained a bona fide offer therefor; (b) given notice to Ruby Tuesday, which notice shall contain (i) the name of the offeror, (ii) the address of the offeror, (iii) all of the terms and conditions of such bona fide offer, and (iv) a true and accurate copy of the actual bona fide offer ("Lessor's Notice"); and (c) offered to sell, transfer or otherwise dispose of such interest to Ruby Tuesday at the same price and, except as hereinafter provided, upon the same terms and conditions contained in said bona fide offer.

If Ruby Tuesday shall either give notice of rejection of said offer to it or fail to give notice of acceptance of the same within thirty (30) days after the date of receipt of Lessor's Notice, Lessor's interest in the Leased Premises may, during the ninety (90) days thereafter, be sold, transferred or otherwise disposed of to the original offeror at the same price and upon the same terms and conditions contained in said bona fide offer as disclosed in

1 writing to Ruby Tuesday.
2
3      In the event Ruby Tuesday rejects said offer or fails to
4 accept the same, this Lease and all of its terms and conditions
5 (including this right of first refusal and including the right of
6 first refusal set forth in Section 30) shall nevertheless remain in
7 full force and effect and Lessor and any purchaser or purchasers of
8 the Leased Premises shall be bound thereby.
9
10     Failure of Ruby Tuesday to exercise this right of first
11 refusal on one or more occasions shall not affect Ruby Tuesday's
12 right to exercise it on any subsequent occasion.  Any sale or
13 transfer of the Leased Premises, or any part thereof, other than in
14 strict compliance with the terms of this section shall be
15 absolutely null and void and of no effect as to Ruby Tuesday, and
16 Ruby Tuesday shall be entitled to purchase the Leased Premises from
17 the purchaser upon the same terms and conditions and at the same
18 price specified in said bona fide offer, provided Ruby Tuesday
19 notifies Lessor of its election thirty (30) days after receipt of
20 Lessor's Notice which complies with the requirements hereof.
21 Payment of rental to such purchaser or otherwise treating such
22 purchaser as the Lessor shall not be deemed to be a waiver of any
23 right of first refusal or any other right or privilege of Ruby
24 Tuesday and shall not create an estoppel with respect thereto.
25
26     Any sale or transfer of Lessor's interest in the Leased
27 Premises, or any part thereof, shall be expressly made subject to
28 all of the terms, covenants and conditions of this Lease.
29 Notwithstanding anything contained herein to the contrary, in the
30 event said offer provides for the sale and purchase of Lessor's
31 interest in the Leased Premises and other property, Ruby Tuesday
32 shall be required to purchase all of the property contained in said
33 offer, in the event it desires to exercise its right of first
34 refusal hereunder.
35
36     In the event Ruby Tuesday exercises its right of first refusal
37 then, notwithstanding the terms of the offer (a) Lessor shall
38 convey title by general warranty deed approved by Ruby Tuesday and
39 the title company; (b) title to the Leased Premises shall be free
40 and clear of any liens and encumbrances except the lien for current
41 taxes which are not delinquent at the time of closing and such
42 other exceptions to title as have been agreed to in writing by Ruby
43 Tuesday, (c) title to the Leased Premises shall otherwise comply
44 with the terms of this Lease as they pertain to condition of title,
45 and (d) any easements or other rights benefiting the Leased
46 Premises at the time of closing shall be made perpetual and shall
47 be included in the deed or in a separate recordable instrument
48 approved by Ruby Tuesday and the title insurance company insuring
49 its interest.
50
51 29.  <u>RIGHT OF FIRST REFUSAL – LEASE</u>:
52
53     If, at any time during the term of this Lease, Lessor receives
54 a bona fide offer to lease the Leased Premises for a term beginning
55 after the termination of this Lease, which offer Lessor desires to
56 accept, Lessor shall give Ruby Tuesday notice thereof, which notice
57 shall specify in detail the name and address of a prospective
58 tenant and the term, rent, and other covenants and conditions of
59 the proposed lease, accompanied by Lessor's affidavit that such
60 proposed lease is in good faith and that all terms and conditions
61 affecting the proposed lease have been accurately disclosed
62 ("Lessor's Notice Of Lease").  Ruby Tuesday shall thereupon have
63 the prior option to lease the Leased Premises for the term of the
64 proposed lease, at the rent, and upon the other covenants and
65 conditions specified in said Lessor's Notice Of Lease, which option
66 Ruby Tuesday may exercise by giving notice to Lessor within thirty
67 (30) days after receipt of the Lessor's Notice Of Lease from
68 Lessor.
69
70     Promptly upon Ruby Tuesday's submission to Lessor of a written
71 lease containing such term, rent and other covenants and conditions
72 of the proposed lease, Lessor shall execute, acknowledge and

deliver to Ruby Tuesday such written lease in duplicate, and shall be entitled to receive one of such duplicates executed by Ruby Tuesday.

Ruby Tuesday's failure, at any time, to exercise its option under this Section shall not affect this Lease or any of Ruby Tuesday's rights or options under this Section or any other Section of this Lease.

**30.  INJUNCTION:**

In addition to all other remedies, Lessor and Ruby Tuesday are entitled to the restraint by injunction of all violations, actual, attempted or threatened of any covenant, condition or provision of this Lease.

**31.  ATTORNEY'S FEES:**

In the event of any suit, action or proceeding at law or in equity, by either of the parties hereto against the other by reason of any manner or thing arising out of this Lease, the prevailing party shall recover, not only its legal costs, but a reasonable attorney's fee (to be figured by the Court) for the maintenance or defense of said action or suit, as the case may be.

**32.  FORCE MAJEURE:**

Lessor and/or Ruby Tuesday shall be excused for the period of any delay and shall not be deemed in default with respect to the performance of any of the terms, covenants, and conditions of this Lease when prevented from so doing by cause or causes beyond the Lessor's and/or Ruby Tuesday's control, which shall include, without limitation, all labor disputes, governmental regulations or controls, fire or other casualty, inability to obtain any material, services, acts of God, or any other cause, whether similar or dissimilar to the foregoing, not within the control of the Lessor and/or Ruby Tuesday.

**33.  NON-MERGER:**

During the term of this Lease, the leasehold estate of Ruby Tuesday shall not merge with the fee simple or other estate in the Leased Premises but shall always remain separate and distinct, notwithstanding the union of all or any part of said estate either in the Lessor or Ruby Tuesday, or in a third party by purchase or otherwise, unless and until all persons having an interest therein, including a leasehold mortgagee, shall join in a written instrument consenting to or effecting such merger.

**34.  INTENTIONALLY DELETED:**

**35.  RUBY TUESDAY'S RIGHT TO TERMINATE:**

Notwithstanding anything in this Lease to the contrary, during the term of this Lease, should the use of the Leased Premises as a food service establishment with liquor service and associated parking areas, be, in any way, prohibited, limited, or restricted by the terms of any restriction, covenant, regulation, ordinance, zoning resolution, or in any other way, affecting the Leased Premises, or in the event Ruby Tuesday is unable to obtain or loses its liquor license(s), Ruby Tuesday, at its option, may terminate this Lease, in which event, Ruby Tuesday shall stand released from any further obligations under this Lease or to the Lessor upon the date of termination.

Upon such termination, Ruby Tuesday shall execute a quitclaim deed or other such release of any recorded Memorandum of Lease pertaining to the Leased Premises.

**36.  NON-WAIVER:**

The failure of the Lessor or Ruby Tuesday to enforce any of

the right given to it under this Lease by reason of the violation of any of the covenants in this Lease to be performed by Ruby Tuesday or Lessor shall not be construed as a waiver of the rights of the Lessor or Ruby Tuesday to exercise any such rights as to any subsequent violations of such covenants, or as a waiver of any of the rights given to the Lessor or Ruby Tuesday by reason of the violation of any of the other covenants of this Lease.

## 37.  HOLDING OVER:

In the event Ruby Tuesday remains in possession of the Leased Premises after the expiration of this Lease and without the execution of a new Lease, Ruby Tuesday shall be deemed to be occupying the Leased Premises as a tenant from month to month at a rental equal to the monthly rental provided for herein and otherwise subject to all the conditions, provisions and obligations of this Lease insofar as they are applicable to month to month tenancy.

## 38.  RECORDABLE LEASE:

Lessor agrees that upon request from Ruby Tuesday and prior to the expiration of the Contingency Period, Lessor will promptly execute and deliver to Ruby Tuesday a memorandum or short form lease (hereinafter "Memorandum of Lease"), prepared by Ruby Tuesday, to be recorded in the public office in which records relating to the Leased Premises are kept and take such other and further action as may be necessary to give all persons now or hereafter interested in title to the Leased Premises notice of the existence of this Lease, including such terms and provisions as Ruby Tuesday deems appropriate, provided, however, that unless specifically requested by Ruby Tuesday, no copy of this Lease or other instrument shall be filed for record which sets forth the rental provisions contained herein.    Specifically, the Lessor agrees to execute such further documentation which may be required to insure that the renewal rights and rights of first refusal granted hereunder are recorded on title.    The parties hereto agree that the legal descriptions used in this Memorandum of Lease shall, at the option of Ruby Tuesday, be those prepared by the surveyor pursuant to Section 8(C) hereinabove.    Lessor shall pay all costs charged by the state and county to record this Memorandum of Lease.

## 39.  CONSTRUCTION OF LEASE:

Words of any gender used in this Lease shall be held to include any other gender, and words in the singular number shall be held to include the plural, when the sense requires.  Wherever used herein, the words "Lessor" and "Ruby Tuesday" shall be deemed to include the heirs, personal representatives, legal representatives, successors, sublessees and assigns of said parties, unless the context excludes such construction.

## 40.  INVALIDITY OF PROVISIONS:

If any term or provision of this Lease or the application thereof to any person or circumstances shall to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

## 41.  SERVICE OF NOTICE:

Notices hereunder shall be in writing signed by the party serving the same and shall be sent by Registered or Certified U. S. Mail, Return Receipt Requested, postage prepaid, or by private express mail service, and (a) if intended for Lessor, shall be addressed to:

          Yu-Ching Hsu
          102 Brannen Street
          Statesboro, Georgia 30458

and (b) if intended for Ruby Tuesday, shall be addressed to:

              Ruby Tuesday, Inc.
              Attention: Legal Department
              4721 Morrison Drive
              Mobile, Alabama 36609-3350
              OR
              Ruby Tuesday, Inc.
              Attention: Legal Department
              Post Office Box 160266
              Mobile, Alabama  36625-0001

or to such other addresses as either party may have furnished to the other from time to time as a place for the service of Notice. Any Notice so mailed shall be deemed to have been "given" as of the time said Notice is received or refused.

42.  <u>LESSOR REPRESENTATIONS</u>:

     The Lessor hereby warrants, represents and acknowledges the following:

     A.    Lessor is an individual resident of the State of Georgia and has the full power to carry out the transactions contemplated by this Lease.

     B.    No consent or approval by any governmental authority, except for the issuance of the building permit and necessary business licenses will be required on the part of Ruby Tuesday in order to transact its business under the terms of this Lease.

     C.    The execution, delivery and performance of the Lease will not conflict or result in a breach or default under any note, lease, mortgage, indenture, contract or commitment to which Lessor is a party or by which Lessor may be bound.

     D.    The title to the real property upon which the Lessor's the Leased Premises are located are vested in the Lessor and the Leased Premises as described in the Lease are properly zoned for the construction and operation of the business contemplated by Ruby Tuesday under this Lease.

     E.    The Leased Premises are not located in a flood hazard zone or wetland area.

     F.    There are no documents of record superior to the Lease other than the Wal-Mart REA described in Section 18-B of this Lease.

     G.    There are no pending or threatened lawsuits of any nature which in any way affect title to the real property upon which the Leased Premises are located, affect in any way the solvency of the Lessor, or in any way affect the validity and enforceability of this Lease, or in any way affect the rights of Ruby Tuesday under the terms of this Lease.

     H.    It is not necessary, under applicable law, that the Lease and/or a Short Form Lease be recorded for the Lease to be effective.

     I.    Other than the Wal-Mart REA, this Lease does not violate or conflict in any material way with (such as, but not limited to, provisions relating to exclusives, sale of food, sale of alcoholic beverages, exterior signage, hours of operation, or the like) the terms of any reciprocal operating agreement, cross easement agreement, restrictive covenants, or any other document.

     J.    There are presently none and there will be no additional leasehold charges, impact fees, or occupancy costs or expenses payable by or charged to Ruby Tuesday by any private party, governmental or quasi-government agencies, other than those identified in this Lease.

**43.  INTENTIONALLY DELETED:**

**44.  ESTATE IN LAND:**

It is the intention of the Lessor to create, in favor of Ruby Tuesday, a leasehold estate in land, which estate shall be vested in Ruby Tuesday from the date of execution hereof and shall continue for the full original term and all renewal terms of this Lease.  Said estate in land shall be subject to divestment only by reason of Ruby Tuesday's election not to exercise its right of renewal or by reason of the earlier termination of this Lease by one of the parties hereto in accordance with the provisions of this Lease.

**45.  SURVIVAL OF LEASE COVENANTS:**

The terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, legal representatives, successors or assigns, and shall run with the land.

**46.  HEADINGS:**

It is understood and agreed that the headings are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope or intent of this Lease, nor in any way affect this Lease.

**47.  ENTIRE AGREEMENT:**

This Lease contains the entire agreement between the parties and any agreement hereafter made shall be ineffective to change, modify or discharge it in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modification or discharge is sought.

**48.  COUNTERPARTS:**

This Lease may be executed simultaneously in several coun-terparts, each of which will be deemed an original, but all of which together will constitute one in the same instrument.

**49.  EFFECTIVE DATE OF LEASE:**

The effective date of this Lease shall be considered to be the date of the last execution hereof as shown with the signatures below.

**50.  HOLIDAY; NON-BUSINESS DAY; OR BUSINESS DAY:**

If any date set forth in this Lease is to occur on a holiday or other non-business day, or if any period of time set forth in this Lease expires on a holiday or non-business day, then such expiration date shall be extended to the next business day thereafter.  As used in this paragraph and in this Lease, the terms "holiday," "non-business day," and "business day" shall have the following meanings:

i.  "holiday" shall mean those dates upon which nationally chartered banks of the United States of America are not open for business;

ii.  "non-business day" shall mean holidays and Saturday and Sunday; and

iii. "business day" shall mean any day that is not either a holiday or a non-business day.

**51.  LESSOR'S REMOVAL OF PRESENT BUILDING:**

Following the expiration of the Contingency Period, Lessor



shall have a period not to exceed seven (7) days in which to remove
the building currently located on the Leased Premises.  After the
expiration of such seven (7) day period, if such building has not
been removed from the Leased Premises, then Ruby Tuesday may
dispose of such building.

52.  <u>CONSTRUCTION TRAILERS</u>:

     Lessor covenants and agrees that Ruby Tuesday can place up to
two (2) construction trailers on the Leased Premises during the
time that the restaurant is being constructed on the Leased
Premises.

53.  <u>RUBY TUESDAY SIGNS</u>:

     Subject to the Wal-Mart REA, Ruby Tuesday shall have the
option to erect a pylon-type sign on the Leased Premises.  Ruby
Tuesday shall also have the option to install wall graphics, and if
required, pedestrian and vehicular traffic directional signs.

                    SIGNATURES ON PAGES _____

IN WITNESS WHEREOF, the parties have caused this Lease to be executed on the date appearing together with their signatures below.

WITNESSES:

_Tina Wood_

LESSOR: _Yu-Ching Hsu_

By: _YU-CHING HSU_

Its: _____

ATTEST:

By: _____

Its: _____

Date: _____


WITNESSES:

_Sharon K. Marshall_

_Sue B. Coley_

RUBY TUESDAY:

RUBY TUESDAY, INC.,
a Georgia corporation

By: _____

Its: Chief Executive  Officer

ATTEST:

By: _____

Its: Assistant Secretary

Date: _May 8, 1998_

(Acknowledgments on Following Page)

**ACKNOWLEDGMENTS**

STATE OF _Georgia_

COUNTY OF _Bulloch_

    The undersigned, a Notary Public in and for the above state and county, hereby certifies that on the 24th day of _April_, 19 98, before me personally appeared **Yu-Ching Hsu**, an individual resident of the State of Georgia, who is known to me as the person described in and who executed the foregoing instrument.

    **IN WITNESS WHEREOF,** I have hereunto set my hand and affixed my official seal on the day and year last aforesaid.
[SEAL]

                         _____
                         Notary Public

My Commission Expires: _1-09-01_

> LORNA G. HYNKO
> Notary Public
> STATE OF GEORGIA
> My Comm. Exp. 01/09/01
> SEAL

STATE OF ALABAMA

COUNTY OF MOBILE

    I, the undersigned Notary Public, in and for said county and said state, hereby certify that _Samuel E. Beall, III_ and _Pfilip G. Hunt_, whose names as _Chief Executive Officer_ and _Assistant Secretary_, respectively, of **RUBY TUESDAY, INC.**, a Georgia corporation, are signed to the foregoing instrument and who are known to me, acknowledged before me on this day, that being informed of the contents of said instrument, they, as such officers and with full authority, executed the same voluntarily for and as the act of said corporation on the day the same bears date.

    Given under my hand and official seal, this the _8th_ day of _May_, 19 98.

                         _____
                         Notary Public

My Commission Expires: _10/31/2001_

SURVEY OF 1.466 ACRES IN THE 1209th G.M.D., BULLOCH COUNTY, STATESBORO, GEORGIA.

SURVEY FOR GEORGE D. COPELAND

PRECISION DATA

E.O.C. FIELD 1/18058
ANGULAR ERROR 07"/4
ADJ. METHOD LEAST SQUARES
E.O.C. PLAT 1/320765

FIELD EQUIPMENT

STEEL TAPE
T-16 THEODOLITE
MAG. LOCATOR ;
E.D.M.
TOTAL STATION

SCALE 1" = 60'

DATE OCT. 7, 1991

LAMAR O. REDDICK & ASSOCIATES
LAND SURVEYORS
208 SOUTH MAIN STREET
STATESBORO, GEORGIA
912-764-4814

FILE NO. 10-91-236 RE

EXHIBIT "A"

(PAGE 2 OF 2)

All that certain lot, tract or parcel of land situate, lying and being in the City of Statesboro, County of Bulloch , consisting of 1.466 acres as shown upon a plat prepared by Lamar Olliff Reddick, Georgia Registered Land Surveyor No. 1387, dated October 7, 1991, and recorded in the Office of the Clerk of the Superior Court of Bulloch County, Georgia in Plat Book 39, Folio 146.  Said map or plat is incorporated herein by specific reference  for a more particular description of the property herein conveyed.

# <u>EXHIBIT B</u>

**Tenant Ledger**
**Tenants:** Ruby Tuesday
**Phone:** (316) 681-4957
**Fax:** (844) 866-4284
**Unit:** 001
**Property:** 195 Northside Dr E(1) - 195 Northside Dr E Statesboro, GA 30458
**Status:** Current
**Move in date:** 12/01/1998
**Move out date:** --
**Lease Expiration:** 11/30/2038
**Rent:** 3,416.17
**Deposit Paid:** 0.00

| Date | Payer | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| Starting Balance | | | | | 0.00 |
| 02/01/2016 | | Rent - February 2016 | 3,105.67 | | 3,105.67 |
| 02/04/2016 | Ruby Tuesday | Payment (Reference #4734) RENT | | 3,105.67 | 0.00 |
| 03/01/2016 | | Rent - March 2016 | 3,105.67 | | 3,105.67 |
| 03/06/2016 | | Late Fee - Late Fee for Mar 2016 | 35.00 | | 3,140.67 |
| 03/07/2016 | Ruby Tuesday | Payment (Reference #8673) RENT | | 3,105.67 | 35.00 |
| 03/12/2016 | | Rent - adj late fee cct | -35.00 | | 0.00 |
| 04/01/2016 | | Rent - April 2016 | 3,105.67 | | 3,105.67 |
| 04/06/2016 | Ruby Tuesday | Payment (Reference #2032) RENT | | 3,105.67 | 0.00 |
| 05/01/2016 | | Rent - May 2016 | 3,105.67 | | 3,105.67 |
| 05/04/2016 | Ruby Tuesday | Payment (Reference #5141) RENT | | 3,105.67 | 0.00 |
| 06/01/2016 | | Rent - June 2016 | 3,105.67 | | 3,105.67 |
| 06/11/2016 | | Late Fee - Late Fee for Jun 2016 | 155.29 | | 3,260.96 |
| 06/11/2016 | Ruby Tuesday | Payment (Reference #check 8441) rent | | 3,105.67 | 155.29 |
| 06/30/2016 | | Late Fee - Late Fee $5.00 per day | 95.00 | | 250.29 |
| 07/01/2016 | | Rent - July 2016 | 3,105.67 | | 3,355.96 |
| 07/07/2016 | Ruby Tuesday | Payment (Reference #check 1596) rent | | 3,105.67 | 250.29 |
| 07/11/2016 | | Late Fee - Late Fee for Jul 2016 | 12.52 | | 262.81 |
| 07/23/2016 | | Late Fee - Late Fee $5.00 per day | 60.00 | | 322.81 |
| 07/23/2016 | | Rent - cct adj latefee | -322.81 | | 0.00 |
| 08/01/2016 | | Rent - August 2016 | 3,105.67 | | 3,105.67 |
| 08/04/2016 | Ruby Tuesday | Payment (Reference #4406) Rent | | 3,105.67 | 0.00 |
| 09/01/2016 | | Rent - September 2016 | 3,105.67 | | 3,105.67 |

Created on 01/20/2021

| Date | Payer | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 09/06/2016 | Ruby Tuesday | Payment (Reference #7872) rent | | 3,105.67 | 0.00 |
| 10/01/2016 | | Rent - October 2016 | 3,105.67 | | 3,105.67 |
| 10/04/2016 | Ruby Tuesday | Payment (Reference #1116) rent | | 3,105.67 | 0.00 |
| 11/01/2016 | | Rent - November 2016 | 3,105.67 | | 3,105.67 |
| 11/03/2016 | Ruby Tuesday | Payment (Reference #4187) rent | | 3,105.67 | 0.00 |
| 12/01/2016 | | Rent - December 2016 | 3,105.67 | | 3,105.67 |
| 12/05/2016 | Ruby Tuesday | Payment (Reference #6877) rent | | 3,105.67 | 0.00 |
| 01/01/2017 | | Rent - January 2017 | 3,105.67 | | 3,105.67 |
| 01/03/2017 | Ruby Tuesday | Payment (Reference #9666) rent | | 3,105.67 | 0.00 |
| 02/01/2017 | | Rent - February 2017 | 3,105.67 | | 3,105.67 |
| 02/06/2017 | Ruby Tuesday | Payment (Reference #2679) rent | | 3,105.67 | 0.00 |
| 03/01/2017 | | Rent - March 2017 | 3,105.67 | | 3,105.67 |
| 03/06/2017 | Ruby Tuesday | Payment (Reference #5584) rent | | 3,105.67 | 0.00 |
| 04/01/2017 | | Rent - April 2017 | 3,105.67 | | 3,105.67 |
| 04/04/2017 | Ruby Tuesday | Payment (Reference #8195) rent | | 3,105.67 | 0.00 |
| 05/01/2017 | | Rent - May 2017 | 3,105.67 | | 3,105.67 |
| 05/04/2017 | Ruby Tuesday | Payment (Reference #0964) rent | | 3,105.67 | 0.00 |
| 06/01/2017 | | Rent - June 2017 | 3,105.67 | | 3,105.67 |
| 06/12/2017 | Ruby Tuesday | Payment (Reference #3536) rent | | 3,105.67 | 0.00 |
| 07/01/2017 | | Rent - July 2017 | 3,105.67 | | 3,105.67 |
| 07/06/2017 | Ruby Tuesday | Payment (Reference #5812) rent | | 3,105.67 | 0.00 |
| 08/01/2017 | | Rent - August 2017 | 3,105.67 | | 3,105.67 |
| 08/04/2017 | Ruby Tuesday | Payment (Reference #8365) rent | | 3,105.67 | 0.00 |
| 09/01/2017 | | Rent - September 2017 | 3,105.67 | | 3,105.67 |
| 09/12/2017 | Ruby Tuesday | Payment (Reference #0864) rent | | 3,105.67 | 0.00 |
| 10/01/2017 | | Rent - October 2017 | 3,105.67 | | 3,105.67 |
| 10/05/2017 | Ruby Tuesday | Payment (Reference #3227) rent | | 3,105.67 | 0.00 |
| 11/01/2017 | | Rent - November 2017 | 3,105.67 | | 3,105.67 |
| 11/06/2017 | Ruby Tuesday | Payment (Reference #5920) 3105.67 | | 3,105.67 | 0.00 |
| 12/01/2017 | | Rent - December 2017 | 3,105.67 | | 3,105.67 |
| 12/04/2017 | Ruby Tuesday | Payment (Reference #8124) Rent | | 3,105.67 | 0.00 |
| 01/01/2018 | | Rent - January 2018 | 3,105.67 | | 3,105.67 |
| 01/04/2018 | Ruby Tuesday | Payment (Reference #0519) rent | | 3,105.67 | 0.00 |
| 02/01/2018 | | Rent - February 2018 | 3,105.67 | | 3,105.67 |

| Date | Payer | Description | Charges | Payments | Balance |
|------|-------|-------------|--------:|---------:|--------:|
| 02/05/2018 | Ruby Tuesday | Payment (Reference #3190) Rent | | 3,105.67 | 0.00 |
| 03/01/2018 | | Rent - March 2018 | 3,105.67 | | 3,105.67 |
| 03/05/2018 | Ruby Tuesday | Payment (Reference #5777) Rent | | 3,105.67 | 0.00 |
| 04/01/2018 | | Rent - April 2018 | 3,105.67 | | 3,105.67 |
| 04/03/2018 | Ruby Tuesday | Payment (Reference #7732) rent | | 3,105.67 | 0.00 |
| 05/01/2018 | | Rent - May 2018 | 3,105.67 | | 3,105.67 |
| 05/03/2018 | Ruby Tuesday | Payment (Reference #0443) Rent | | 3,105.67 | 0.00 |
| 06/01/2018 | | Rent - June 2018 | 3,105.67 | | 3,105.67 |
| 06/05/2018 | Ruby Tuesday | Payment (Reference #2519) Rent | | 3,105.67 | 0.00 |
| 07/01/2018 | | Rent - July 2018 | 3,105.67 | | 3,105.67 |
| 07/16/2018 | Ruby Tuesday | Payment (Reference #4585) Rent | | 3,105.67 | 0.00 |
| 08/01/2018 | | Rent - August 2018 | 3,105.67 | | 3,105.67 |
| 08/04/2018 | Ruby Tuesday | Payment (Reference #6654) rent | | 3,105.67 | 0.00 |
| 09/01/2018 | | Rent - September 2018 | 3,105.67 | | 3,105.67 |
| 09/05/2018 | Ruby Tuesday | Payment (Reference #8361) Rent | | 3,105.67 | 0.00 |
| 10/01/2018 | | Rent - October 2018 | 3,105.67 | | 3,105.67 |
| 10/04/2018 | Ruby Tuesday | Payment (Reference #0199) Rent | | 3,105.67 | 0.00 |
| 11/01/2018 | | Rent - November 2018 | 3,105.67 | | 3,105.67 |
| 11/06/2018 | Ruby Tuesday | Payment (Reference #1918) Rent | | 3,105.67 | 0.00 |
| 12/01/2018 | | Rent - December 2018 | 3,105.67 | | 3,105.67 |
| 12/04/2018 | Ruby Tuesday | Payment (Reference #3360) rent | | 3,105.67 | 0.00 |
| 01/01/2019 | | Rent - January 2019 | 3,105.67 | | 3,105.67 |
| 01/04/2019 | Ruby Tuesday | Payment (Reference #4956) Rent | | 3,105.67 | 0.00 |
| 02/01/2019 | | Rent - February 2019 | 3,416.17 | | 3,416.17 |
| 02/04/2019 | Ruby Tuesday | Payment (Reference #6621) Rent | | 3,416.17 | 0.00 |
| 03/01/2019 | | Rent - March 2019 | 3,416.17 | | 3,416.17 |
| 03/05/2019 | Ruby Tuesday | Payment (Reference #2259) rent | | 3,416.17 | 0.00 |
| 04/01/2019 | | Rent - April 2019 | 3,416.17 | | 3,416.17 |
| 04/05/2019 | Ruby Tuesday | Payment (Reference #3607) Rent | | 3,416.17 | 0.00 |
| 05/01/2019 | | Rent - May 2019 | 3,416.17 | | 3,416.17 |
| 05/06/2019 | Ruby Tuesday | Payment (Reference #0695) Rent | | 3,416.17 | 0.00 |
| 06/01/2019 | | Rent - June 2019 | 3,416.17 | | 3,416.17 |
| 06/16/2019 | | Late Fee - Late Fee for Jun 2019 | 170.81 | | 3,586.98 |
| 06/30/2019 | | Late Fee - Late Fee $5.00 per day | 70.00 | | 3,656.98 |

| Date | Payer | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 07/01/2019 | | Rent - July 2019 | 3,416.17 | | 7,073.15 |
| 07/02/2019 | Ruby Tuesday | Payment (Reference #2899) rent | | 3,416.17 | 3,656.98 |
| 07/02/2019 | | Rent - Credit back late fee and payment on 06/21/2019 | -3,656.98 | | 0.00 |
| 08/01/2019 | | Rent - August 2019 | 3,416.17 | | 3,416.17 |
| 08/05/2019 | Ruby Tuesday | Payment (Reference #4079) rent | | 3,416.17 | 0.00 |
| 09/01/2019 | | Rent - September 2019 | 3,416.17 | | 3,416.17 |
| 09/04/2019 | Ruby Tuesday | Payment (Reference #5114) rent | | 3,416.17 | 0.00 |
| 10/01/2019 | | Rent - October 2019 | 3,416.17 | | 3,416.17 |
| 10/07/2019 | Ruby Tuesday | Payment (Reference #6195) Rent | | 3,416.17 | 0.00 |
| 11/01/2019 | | Rent - November 2019 | 3,416.17 | | 3,416.17 |
| 11/05/2019 | Ruby Tuesday | Payment (Reference #7298) rent | | 3,416.17 | 0.00 |
| 12/01/2019 | | Rent - December 2019 | 3,416.17 | | 3,416.17 |
| 12/06/2019 | Ruby Tuesday | Payment (Reference #8357) rent | | 3,416.17 | 0.00 |
| 01/01/2020 | | Rent - January 2020 | 3,416.17 | | 3,416.17 |
| 01/07/2020 | Ruby Tuesday | Payment (Reference #0344) Rent | | 3,416.17 | 0.00 |
| 02/01/2020 | | Rent - February 2020 | 3,416.17 | | 3,416.17 |
| 02/06/2020 | Ruby Tuesday | Payment (Reference #2290) Rent | | 3,416.17 | 0.00 |
| 03/01/2020 | | Rent - March 2020 | 3,416.17 | | 3,416.17 |
| 03/09/2020 | Ruby Tuesday | Payment (Reference #4036) Rent | | 3,416.17 | 0.00 |
| 04/01/2020 | | Rent - April 2020 | 3,416.17 | | 3,416.17 |
| 05/01/2020 | | Rent - May 2020 | 3,416.17 | | 6,832.34 |
| 06/01/2020 | | Rent - June 2020 | 3,416.17 | | 10,248.51 |
| 07/01/2020 | | Rent - July 2020 | 3,416.17 | | 13,664.68 |
| 08/01/2020 | | Rent - August 2020 | 3,416.17 | | 17,080.85 |
| 09/01/2020 | | Rent - September 2020 | 3,416.17 | | 20,497.02 |
| 10/01/2020 | | Rent - October 2020 | 3,416.17 | | 23,913.19 |
| 11/01/2020 | | Rent - November 2020 | 3,416.17 | | 27,329.36 |
| 12/01/2020 | | Rent - December 2020 | 3,416.17 | | 30,745.53 |
| 12/09/2020 | | Rent - Property tax county | 9,266.27 | | 40,011.80 |
| 12/09/2020 | | Rent - Property tax city | 3,242.41 | | 43,254.21 |
| 01/26/2021 | | Reasonable Attorney's Fees and Costs | 13,723.00 | | 56,977.21 |

| | | | | | |
|---|---|---|---|---|---|
| **Total** | | | | | **$56,977.21** |