## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No.: 20-12456 (JTD) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |

### DECLARATION OF RICHARD F. NEJAME, MANAGING DIRECTOR OF FOCALPOINT SECURITIES, LLC, IN SUPPORT OF CONFIRMATION OF DEBTORS' SECOND AMENDED CHAPTER 11 PLAN

I, Richard F. NeJame, declare under penalty of perjury:

1.      I am a Managing Director of FocalPoint Securities, LLC ("FocalPoint"),

which has its principal office at 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California

90025.  FocalPoint has been retained as the Debtors' Investment Banker in these Chapter 11

Cases.  I have personally headed this engagement for the firm.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

2.      I am authorized to execute this declaration on behalf of FocalPoint. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein. This declaration is submitted in support of the *Debtors' Second Amended Chapter 11 Plan*, filed February 10, 2021 (along with its Plan Supplement [Docket No. 920] and any amendments thereto, the "Plan").[2]

3.      Under the term of the Engagement Letter, the Debtors retained the services of FocalPoint to (among other things) evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors, determine a range of values for the Debtors and any instruments that the Debtor's offers or proposes to offer in connection with a Restructuring, assist the Debtors in evaluating, structuring, negotiating and implementing the terms (including pricing) and conditions of any proposed transaction, including any proposed Sale , any potential Restructuring or any Financing and contact potential purchasers and financiers to solicit their interest in any transaction and to provide them with the confidential information memorandum under a non-disclosure agreement, assist the Debtors with evaluating offers, indications of interest, negotiating agreements and definitive contracts.

4.      In the spring of 2020, the Debtors retained FocalPoint to assist in the exploration of a potential refinancing and/or restructuring transaction (the "Out of Court Transaction") in order to refinance its existing senior debt and fund a turnaround plan, including

---

[2] Unless otherwise defined herein, terms shall have the meaning ascribed to them in the Plan and/or the *Order:  (I) Authorizing Debtors to Employ and Retain FocalPoint Securities, LLC as Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date, (II) Approving the Terms of the Engagement Agreement, (III) Modifying Certain Time-Keeping Requirements, and (IV) Granting Related Relief*, entered November 9, 2020 [Docket No. 365] and the engagement letter ("Engagement Letter") annexed to such order as its Exhibit 1.

through seeking continued rent abatements and/or concessions from their landlords to provide relief during these unprecedented times (due to the COVID-19 pandemic and resulting governmental shut-downs and use limitations for restaurants).

5.    Prior to the Petition Date, the Debtors conducted a robust marketing process including outreach to a broad universe of 154 financial investors.  As a result, 67 parties executed nondisclosure agreements ("NDAs") and were provided with confidential evaluation materials and access to a virtual data room; 61 parties declined after initial review of the opportunity prior to executing an NDA; and 26 parties reviewed the NDA and preliminary transaction information without providing definitive indication either way.  At the initial indication of interest ("IOI") deadline of August 14, 2020, one party had submitted an IOI but ultimately withdrew the consideration after further review.  Without any interested party in the Out of Court Transaction, I understand that the Debtors determined, for among other reasons, that it was necessary to file their Chapter 11 Cases. As described below, the Debtors, with the assistance of FocalPoint, engaged in a marketing process during the Chapter 11 Cases to evaluate whether a viable Topping Bid existed.[3]

6.    To allow the Debtors to ensure the transaction contemplated by the Restructuring Support Agreement ("RSA")[4] maximized value for the benefit of their bankruptcy estates and creditors, the RSA provides for a dual process through which, as part its engagement by the Debtors, FocalPoint marketed the business and evaluate potential alternatives for exit financing, in addition to seeking bids for a potential sale of all, or substantially all, of the

---

[3] A Topping Bid is a bid or bids that provide (among other things) consideration that is sufficient to pay all DIP Facility Claims and Prepetition Secured Debt Claims in cash in full on the closing date per Article V.S. of the Plan.
[4] Annexed to the Disclosure Statement as its Exhibit B [Docket No. 762-2].

Debtors' assets in parallel with the Restructuring Transactions under the Plan.  These activities included, but were not be limited to (a) developing a list of potential investors and buyers of the Debtors, (b) drafting and distributing a short summary and NDA, (c) upon receipt of signed NDAs, distributing a confidential memorandum that will be developed, summarizing due diligence information, and (d) providing access to a virtual data room for review by interested parties.  FocalPoint requested feedback from potential buyers with regard to a Topping Bid, and fielded interest from alternative providers of the exit financing as well.

7.    In the event that one or more Topping Bids were received, the Debtors were to conduct an Auction on January 19, 2021. The parallel sale process allowed the Debtors to ensure that the disposition of their Chapter 11 Cases maximizes value, regardless of whether such cases culminate in a sale or a restructuring contemplated by the Plan.  However, despite FocalPoint's and the Debtors' best efforts to attract and negotiate with one or more parties regarding a potential Topping Bid, the Debtors did not receive one or more bids that constitute a Topping Bid.   On January 18, 2021, the Debtors filed a notice of cancellation of the Auction [Docket No. 886].

8.    FocalPoint, in conjunction with the management of the Debtors and CR3 Partners, the Debtors' financial advisors, also developed the Financial Projections.  The Financial Projections, together with management's assumptions on which they are based, are attached hereto as **Exhibit "A"**, and are intended to update the projections annexed to the Disclosure Statement as its Exhibit E [Docket No. 762-5].

9.    The Financial Projections set forth the key assumptions and methodology used.  In general, as illustrated by and with the assumptions of the Financial Projections, with the

4

capital structure provided under the Plan, minimum liquidity of $12.5 million as required under the RSA, and the added funding availability under the Exit Facility, the Reorganized Debtors should have sufficient cash flow and cash on hand to make all payments required pursuant to the Plan upon emergence while conducting ongoing business operations.  Confirmation and consummation is, therefore, not likely to be soon followed by the liquidation or further reorganization of the Reorganized Debtors.

10.      Based on the foregoing, it is my opinion and belief that the Plan is feasible and that the Reorganized Debtors can reasonably be expected to have sufficient cash flow to meet its obligations on a timely basis for the foreseeable future.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   February 10, 2021          By:  */s/ Richard F. NeJame*
                                          Richard F. NeJame