# EXHIBIT 12

**U.S. BANKRUPTCY COURT APPROVED
TRANSITION SERVICES AGREEMENT**

**BETWEEN**

**RUBY TUESDAY, INC. ("OWNER")**

**AND**

**RUBY TUESDAY OPERATIONS, LLC ("MANAGER")**

Pursuant to that certain *Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Second Amended Chapter 11 Plan* (the "Confirmation Order") [Docket No. [•]], dated [•], 2021 and entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in Case No. 20-12456 (JTD), this Transition Services Agreement (this "Agreement"), dated as of February [•], 2021, is entered into by and among Owner and Manager, on behalf of itself and its affiliates, effective as of the Effective Date (as defined in the Plan).[1]

**RECITALS:**

**WHEREAS,** Owner owns and operates that certain business known as RT Lodge located in Maryville, Tennessee ("RT Lodge");

**WHEREAS,** pursuant to the Plan, all of Owner's operating assets other than RT Lodge and interests in its subsidiaries (other than RTI) shall be transferred to Manager; and

**WHEREAS,** Owner desires that Manager provide to Owner, and Manager desires to provide to Owner, those certain management services for RT Lodge described in this Agreement during the term; and

**NOW, THEREFORE,** in consideration of the foregoing, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree to be bound by the following:

**ARTICLE I
Scope of Performance and Standards**

1.1    Transition Services. "Transition Services" means the transition services, functions and tasks to be provided by Manager described on Schedule A of this Agreement, as they may be changed or supplemented during the term of this Agreement upon the agreement of the parties hereto. Manager will provide the Transition Services to Owner for the benefit of Owner or RT Lodge commencing promptly on the Effective Date and continuing through the applicable "Termination Date" (as listed on Schedule A) with respect to such Transition Service. Manager shall perform, or shall cause one or more of its affiliates to perform, the Transition Services in good faith, at a quality level, in accordance with applicable laws in all material respects, in a reasonably timely, professional and workmanlike manner, and in a manner consistent with that provided to RT Lodge in the twelve (12)-month period prior to the Effective Date, and will exercise the same degree of care and skill as it exercises in providing similar functions for its own operations. Manager will assign sufficient resources and qualified personnel as are reasonably necessary to provide the Transition Services in accordance with this Agreement. Owner acknowledges

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the *Debtors' Second Amended Chapter 11 Plan* (the "Plan") [Docket No. [•]].

that Manager is not in the business of providing the Transition Services and that the Transition Services are being provided solely as an accommodation to Owner upon Owner's request.

## ARTICLE II
## Fees

2.1 <u>Fees</u>. The fee for all of the Transition Services to be provided hereunder shall be as set forth on <u>Schedule A</u> (the "<u>TSA Fees</u>"). Manager will provide such information and access to records as shall reasonably be requested by Owner to support the charges invoiced to Owner pursuant to this <u>Section 2.1</u>.

2.2 <u>Payment of TSA Fees</u>. Any TSA Fees shall be payable in arrears within thirty (30) days following delivery of a monthly billing statement or invoice. Each such billing statement or invoice shall include reasonable detail supporting the charges. Should Owner reasonably dispute in good faith any portion of any invoice, it shall pay in full all amounts not in dispute and notify Manager in writing of the nature and basis of the dispute within fifteen (15) days of its receipt of such billing statement or invoice. The TSA Fees shall be due and payable each month during the term of this Agreement, or at such other interval as specified on <u>Schedule A</u>, regardless of the volume of work or services performed by Manager during that month.

## ARTICLE III
## Miscellaneous

3.1 <u>Duration of Service Period</u>. This Agreement will commence on the Effective Date of this Agreement and expire at the close of business on the last "Termination Date" set forth on <u>Schedule A</u>. However, the parties may mutually agree to modify or to extend the term of this Agreement from time to time. In the event that either party violates any provision of this Agreement and such violation remains uncured for five (5) business days after written notice thereof to the violating party, the non-violating party shall have the right to terminate this Agreement immediately after five (5) business days' written notice to the violating party.

3.2 <u>Relationship of Parties</u>. Each party will be deemed to be an independent contractor and not an agent, joint venturer or representative of the other party for all purposes of this Agreement. Neither party may create any obligations or responsibilities on behalf of or in the name of the other party. Neither party will hold itself out to be a partner, employee, franchisee, representative, servant or agent of the other party.

3.3 <u>Limitations on Liability</u>.

(a) Manager shall have no duties or responsibilities under this Agreement other than those specified herein and no implied obligations (other than to act in good faith) shall be read into this Agreement.

(b) Neither Manager, nor any of its Affiliates, employees, officers, directors, members, representatives, agents, attorneys, direct or indirect equity holders, successors, predecessors or assigns (collectively, the "<u>Manager Released and Indemnified Parties</u>"), will be liable to Owner for, and Owner releases and forever discharges the Manager Released and Indemnified Parties from, any and all claims, liabilities, actions, suits, judgments, losses, injuries, damages, costs or expenses arising out of or connected with any act or omission of any of the Manager Released and Indemnified Parties pursuant to this Agreement or with respect to the performance of Manager's obligations under this Agreement, except

for claims to the extent arising primarily out of such Person's gross negligence, fraud, or willful misconduct as finally determined by a court of competent jurisdiction.

    (c)    Other than for such amounts arising primarily out of the gross negligence, fraud or willful misconduct of the Manager Released and Indemnified Parties as finally determined by a court of competent jurisdiction, Owner agrees to indemnify, defend and hold harmless and discharges the Manager Released and Indemnified Parties from and against any and all claims, actions, demands, judgments, losses, costs, expenses, damages and liabilities (including attorneys' fees and other expenses of litigation) arising out of or resulting from such Manager Released and Indemnified Parties' performance of Manager's obligations under this Agreement and/or the operation of RT Lodge.

    3.4    <u>General</u>.

    (a)    This Agreement shall be construed and interpreted in accordance with the laws of the State of New York.

    (b)    This Agreement, together with the Plan and Confirmation Order, constitutes and represents the entire understanding and agreement among the parties with respect to the subject matter hereof. In the event and to the extent that there is a conflict between the provisions of this Agreement and the provisions of the Plan, the provisions of this Agreement shall control. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

    (c)    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any person or entity not a party except as otherwise expressly provided herein. No assignment of this Agreement or of any rights or obligations hereunder may be made by either Owner or Manager (by operation of law or otherwise) without the prior written consent of the other party and any attempted assignment without the required consent shall be void and without effect. No assignment of any obligations hereunder shall relieve the parties of any such obligations.

    (d)    Notwithstanding the foregoing, nothing herein is intended to waive, alter or amend any obligations of Manager or Owner under the Plan or Confirmation Order.

*[Execution page follows]*

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the Effective Date.

**OWNER:**

**RUBY TUESDAY, INC.**

By: _____
Name: _____
Title: _____

**MANAGER:**

**RUBY TUESDAY OPERATIONS, LLC**

By: _____
Name: _____
Title: _____

**Schedule A**

|   | Description of Service | Cost of Service | Termination Date |
|---|---|---|---|
| 1. | Continue to provide IT Support consistent with past practices, as well as providing data, conversions, extracts and support necessary for transition | Pass through of out of pocket costs and expenses. | 180 days following the Effective Date. |
| 3. | Accounting Services, including approvals, Infosync entries and report distribution, and payment disbursement, in each case consistent with past practices, as well as data, conversions, extracts and support necessary for transition | $800 per month | 180 days following the Effective Date. |
| 4. | Cash Management Services, including credit card summaries, data entry from sales reports and reconciliations, in each case, consistent with past practices, as well as data, conversions, extracts and support necessary for transition | $400 per month | 180 days following the Effective Date. |
| 5. | POS licensing | $0 per month | 180 days following the Effective Date. |
| 6. | Gift Cards, including data entry and reporting, in each case, consistent with past practices, as well as data, conversions, extracts and support necessary for transition | $80 per month | 180 days following the Effective Date. |
| 7. | Payroll and Benefits Services payroll processing, new hire paperwork, insurance/incident reporting support, in each case, consistent with past practices, as well as data, conversions, extracts and support necessary for transition | $320 per month | 180 days following the Effective Date. |