**EXHIBIT 14**

**GS NOTE**

## UNSECURED PROMISSORY NOTE

**$[1,221,818]**                                                    **[_____ __], 2021**

FOR VALUE RECEIVED, the undersigned, [___], a [___] ("<u>Issuer</u>"), promises to pay to [_____], a [_____] ("<u>Holder</u>"), the principal sum of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000) (the "<u>Base Principal</u>"), plus interest on the unpaid principal amount hereof, on the terms and subject to the conditions set forth below.  This Unsecured Promissory Note (this "<u>Note</u>") is being issued by Issuer to the Holder pursuant to the terms of the Bankruptcy Plan.  Capitalized terms used herein but not defined in this Note shall have the meanings assigned to them in the Amended Chapter 11 Plan [Docket No.  ] and that certain Credit and Guaranty Agreement, dated as of [_____], 2021 (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Exit Facility Credit Agreement</u>"), by and among the Issuer, the lenders from time to time party thereto (the "<u>Exit Lenders</u>"), TCW Asset Management Company LLC, as administrative agent and collateral agent for the Exit Lenders (together with its successors and assigns in such capacity, the "<u>Exit Agent</u>"), and certain other parties from time to time party thereto.

1.      <u>Payments</u>.

(a)      <u>Payment at Maturity</u>.  The outstanding principal amount of this Note, plus any accrued and unpaid interest pursuant to <u>clause (c)</u>, shall be due and payable on [_____], 2023[1] (the "<u>Maturity Date</u>"); <u>provided</u> that, if such day is not a Business Day, payment shall be made on the immediately preceding Business Day.  Such payment shall be made in lawful money of the United States in immediately available funds to such account as Holder shall designate in writing to Issuer, without notice or demand.

(b)      <u>Prepayment of Principal</u>.  The Issuer may prepay any principal of this Note at any time without penalty or premium.

(c)      <u>Payment of Interest</u>.

i.      Payments of interest on this Note shall be made quarterly in arrears on the last Business Day of each of March, June, September and December of each year prior to the Maturity Date, commencing on the last Business Day of the quarter ending June 30, 2021 (each such date, an "<u>Interest Payment Date</u>").

ii.      The Issuer shall pay interest on the outstanding principal of this Note on each Interest Payment Date from the date hereof until all outstanding principal of this Note has been repaid in full, at its election (an "<u>Election</u>"), at a rate equal to either (A) five percent (5.0%) per annum payable in cash or (B) seven percent (7.0%) payable in kind (any interest so paid in-kind, "<u>PIK Interest</u>") (such rates in subclauses (A) and (B), the "<u>Interest Rates</u>").  Notice of any Election shall be provided by the Issuer to the

---

[1] **NTD** – to be the date that is two years from the date of the Note.

Holder at least one Business Day prior to each applicable Interest Payment Date; provided, that to the extent no such notice is provided to the Holder, the Issuer shall be deemed to have elected to pay PIK Interest on such Interest Payment Date.  If an Election is made, or deemed made, for any Interest Payment Date, the applicable accrued PIK Interest shall be capitalized and added automatically on such Interest Payment Date to the then outstanding principal balance of this Note and shall be treated as part of the principal amount of the Base Principal and shall be payable in accordance with the provisions of this Note.  If Issuer fails to pay the outstanding principal amount of this Note plus any accrued and unpaid interest on or before the Maturity Date, the Interest Rates will increase by one percent (1.0%) per annum each quarter after the Maturity Date.

iii.     Interest shall be calculated based on the actual number of days elapsed in a 365-day year and shall be compounded on a quarterly basis.

iv.     Default Interest.  If any amount payable by the Issuer under this Note (including principal of the Note, interest, fees and any other amount) is not paid when due, whether at stated maturity, by acceleration or otherwise, such amount shall thereafter bear interest at a rate per annum equal to the applicable Default Rate.  Upon the request of the Holder, while any Event of Default exists, the Issuer shall pay interest on the principal amount of the Note outstanding hereunder at a rate per annum equal to the applicable Default Rate.  "Default Rate" means the Interest Rate on this Note plus three percent (3.0%) per annum.

v.     All payments to be made by the Issuer hereunder shall be made without condition or deduction for any counterclaim, defense, recoupment or setoff. Except as otherwise expressly provided herein, all such payments shall be made to the Holder, to such account as it shall specify, in immediately available funds not later than 12:00 noon (New York City time) on the applicable dates specified herein.  All amounts received by the Holder after such time on any date shall be deemed to have been received on the next succeeding Business Day and any applicable interest or fees shall continue to accrue at the Default Rate.

vi.     The Issuer agrees that the provisions of this Note and its payment obligations hereunder shall continue to be effective or be reinstated, as the case may be, if at any time any payment made by the Issuer on this Note is rescinded, avoided, or  must otherwise be returned by the Holder, as though such payment had not been made.

(d)     Application of Insufficient Payments.  If at any time insufficient funds are received by and available to the Holder to pay fully all amounts of principal, interest, fees and other amounts then due hereunder, such funds shall be applied (i) first, to pay interest, fees and other amounts then due hereunder, and (ii) second, to pay principal then due hereunder.

(e)     Payments Free of Taxes.  Any and all payments by or on account of any obligation of the Issuer hereunder shall be made without deduction or withholding for any taxes.

2.      Representations and Warranties.  To induce the Holder to accept this Note, the Issuer represents and warrants to the Holder on the date hereof as set forth in the following clauses (a) through (e) as follows:

(a)      The Issuer is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has the requisite power and authority to execute, deliver and perform under this Note.

(b)      The execution and delivery of this Note, the borrowing hereunder and the performance by the Issuer of its obligations hereunder have been duly authorized by all necessary corporate action on the part of the Issuer.

(c)      This Note, when duly executed and delivered will be, the legal, valid and binding obligation of the Issuer, enforceable against the Issuer in accordance with its terms, subject to applicable bankruptcy and insolvency laws and other laws affecting creditors' rights generally, concepts of reasonableness and general principles of equity.

(d)      The Issuer's execution, delivery and performance of this Note do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets.

(e)      All governmental and other consents that are required to have been obtained by the Issuer with respect to this Note have been obtained and are in full force and effect and all conditions of any such consents have been complied with.

3.      Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" under this Note:

(a)      the failure of the Issuer to pay (i) the principal amount of this Note when due, whether at stated maturity, by acceleration or otherwise or (ii) within three (3) Business Days of when due, any interest on this Note;

(b)      a Change of Control;

(c)      the refinancing in full in cash of the Exit Facility Credit Agreement;

(d)      the acceleration of the Exit Facility Credit Agreement or any other indebtedness of the Issuer having a principal amount in excess of $7,500,000 (excluding any "PPP Loans") and which is senior to this Note;

(e)      the issuance of additional indebtedness for borrowed money in a principal amount in excess of $7,500,000 (excluding any "PPP Loans") after the date hereof;

(f)      a sale of all or substantially all of the assets the Issuer and its Subsidiaries, taken as a whole; or

(g)    the occurrence of any Event of Default (as defined in the Exit Facility Credit Agreement) pursuant to Section 8.1(f) or (g) of the Exit Facility Credit Agreement.

4.    Remedies.

(a)    Upon the occurrence and during the continuance of an Event of Default, notwithstanding any other provision of this Note (unless such Event of Default has been waived by the Holder), the Holder shall be entitled to:

> i.    declare the entire amount of unpaid principal under this Note, together with any accrued interest thereon and all other amounts due and payable hereunder, immediately due and payable (and the same shall forthwith become due and payable without presentment, demand, protest or notice of any kind, all of which the Issuer hereby expressly waives to the extent permitted by applicable law); and

> ii.    exercise any right or combination of rights which may be available to the Holder at law or in equity or to which the Holder is entitled under this Note.

(b)    The Holder's failure to exercise the remedies set forth in Section 4(a) shall not constitute a waiver of the right to exercise same in the event of any subsequent Event of Default. The Holder shall not, by any act of omission or commission, be deemed to waive any of its rights, remedies or powers hereunder or otherwise unless such waiver is in writing and signed by the Holder hereof, and then only to the extent specifically set forth therein.  After the occurrence and during the continuance of an Event of Default, the rights, remedies and powers of the Holder, as provided in this Note, are cumulative and concurrent, and may be pursued singly, successively or together against the Issuer to secure the repayment hereof, all at the sole discretion of the Holder.

5.    Unsecured.  For the avoidance of doubt, the Issuer and Holder acknowledge that this Note and all obligations, liabilities and indebtedness evidenced hereby and/or incurred by the Issuer hereunder are not secured by any collateral and represent general unsecured obligations of the Issuer ranking at least pari passu with the claims of all its other unsecured and unsubordinated creditors.  However, if any amounts owed under or in respect of this Note shall remain unpaid after midnight on the day following the Maturity Date, to secure the payment of such amounts, the Issuer grants, effective at such time automatically and without further action, a security interest in all of its right, title, and interest in and to all Collateral under the Exit Facility Credit Agreement and all other agreements, documents, and instruments related thereto (as in effect in the date hereof). Such lien shall be junior in priority only to the lien granted to the lenders under the Exit Facility Credit Agreement.  The Holder shall have all the rights and remedies of a secured party under the Uniform Commercial Code as in effect from time to time in the State of New York (including the right to reasonable attorney's fees).

6.    Maximum Rate.  Notwithstanding anything to the contrary herein, the Issuer's obligations to the Holder with respect to the payment of interest hereunder are subject to the limitation that payments of interest and late charges to Holder shall not be required to the extent

that receipt of any such payment by the Holder would be contrary to provisions of applicable law limiting the maximum rate of interest that may be charged or collected by the Holder. The portion of any such payment received by the Holder that is in excess of the maximum interest permitted by applicable law shall be credited against the then outstanding amount of the principal of this Note, or if such excess portion exceeds the then outstanding amount of the principal of this Note, then such excess portion shall be refunded to the Issuer. In determining whether the interest contracted for, charged or received by Holder exceeds such maximum rate, Holder may, to the extent permitted by applicable law, (a) characterize any payment that is not principal as an expense, fee or premium rather than interest, (b) exclude voluntary prepayments and the effects thereof, and (c) amortize, prorate, allocate and spread in equal or unequal parts the total amount of interest throughout the contemplated term of the obligations hereunder.

7.    Automatic Cancellation. In the event that the outstanding principal amount due hereunder, including the Base Principal and any PIK Interest, has been reduced to zero dollars ($0.00), whether by prepayment, set-off or otherwise, then this Note shall automatically be canceled and of no further force and/or effect. Upon such cancellation of this Note, neither the Issuer nor any of its affiliates shall have any liabilities hereunder to the Holder (or its affiliates) or any other Person.

8.    Registered Form. Notwithstanding any other provision of this Note, the parties intend that this Note be issued in "registered form" within the meaning of Sections 163(f) and 881(c)(2)(B) of the Code.

9.    The Issuer hereby waives presentment, demand, protest or notice of any kind in connection with this Note.

10.    Amendment; Waiver. The provisions of this Note may be amended, modified or waived, if such amendment, modification or waiver is in writing and executed by the parties hereto.

11.    Notices. Any notice, request, instruction or other document to be given hereunder by any party hereto to any other party shall be in writing to such address as the party to whom notice is to be given may have furnished to the other parties hereto in writing in accordance herewith.

12.    Severability. Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction.

13.    Expenses; Indemnity; Damage Waiver

(a)    Costs and Expenses. The Issuer shall pay (i) all reasonable out-of-pocket expenses incurred by the Holder (including the reasonable fees, charges and disbursements of any counsel for the Holder) in connection with any amendments, modifications or waivers of the provisions hereof (whether or not the transactions contemplated hereby shall be consummated), and (ii) all out-of-pocket expenses incurred by the Holder (including the fees, charges and

disbursements of any counsel for the Holder), in connection with the enforcement or protection of its rights (A) in connection with this Note, including its rights under this Section, or (B) in connection with the Note issued hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Note.

(b)  <u>Indemnification by the Issuer</u>.  The Issuer shall indemnify the Holder and each of its affiliates, their employees, directors and agents (each such person being called an "<u>Indemnitee</u>") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities, obligations, penalties, fines, settlements, judgments, disbursements and related costs and expenses (including the fees, charges and disbursements of any counsel for any Indemnitee) arising out of, in connection with, or as a result of (i) the execution, delivery and performance of this Note, (ii) the Note or the use or proposed use of the proceeds therefrom, or (iii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by the Issuer, and regardless of whether any Indemnitee is a party thereto.

(c)  <u>Waiver of Consequential Damages, Etc</u>.  The Issuer shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Note.

14.  <u>USA PATRIOT Act</u>.  Holder hereby notifies Issuer that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify and record information that identifies Issuer, which information includes the name and address of Issuer and other information that will allow Holder to identify Issuer in accordance with the USA PATRIOT Act, and Issuer hereby agrees to provide such information to Issuer promptly upon request.

15.  <u>Successors; Assignment</u>.  This Note shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.  The Issuer may not assign, delegate or otherwise transfer this Note or any of such party's rights, interests or obligations hereunder without the prior written consent of the other parties hereto, and any attempt to do so will be null and void *ab initio*.

16.  <u>Replacement of Note</u>.  Upon the Issuer's receipt of evidence reasonably satisfactory to it of the loss, theft, destruction or mutilation of this Note and, in case of loss, theft or destruction, of a customary form of indemnity reasonably satisfactory to the Issuer, or, in the case of mutilation, upon surrender and cancellation of this Note, and in all cases upon reimbursement by the Holder of all reasonable out-of-pocket expenses incurred by Issuer in connection therewith, Issuer will make and deliver a new Note of like tenor in lieu of this Note.

17.  <u>Governing Law; Jurisdiction</u>. All matters relating to or arising out of this Note or the transactions contemplated hereby (whether sounding in contract, tort or otherwise) will be governed by and construed in accordance with the laws of the State of New York, without giving effect to any choice of law or conflicts of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York. THE ISSUER AND THE HOLDER, BY ITS ACCEPTANCE OF THIS NOTE, CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR

FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE, COUNTY AND CITY OF NEW YORK AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE LITIGATED ONLY IN SUCH COURTS.   THE ISSUER AND THE HOLDER, BY ACCEPTANCE OF THIS NOTE, ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS RESPECTIVE PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF SUCH COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS, AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. THE ISSUER AND THE HOLDER, BY ITS ACCEPTANCE OF THIS NOTE, IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO SUCH PARTY AT THE ADDRESS SPECIFIED IN WRITING HEREIN, WITH SUCH SERVICE TO BECOME EFFECTIVE FIFTEEN (15) CALENDAR DAYS AFTER SUCH MAILING. NOTHING HEREIN SHALL IN ANY WAY BE DEEMED TO LIMIT THE ABILITY OF EITHER PARTY HERETO TO SERVE ANY SUCH LEGAL PROCESS, SUMMONS, NOTICES AND DOCUMENTS IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW.

18.    Waiver of Jury Trial.  THE ISSUER, AND, BY ITS ACCEPTANCE OF THIS NOTE, THE HOLDER EACH HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS NOTE OR THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE AND ENFORCEMENT THEREOF.

[*Signature page follows*]

IN WITNESS WHEREOF, Issuer has executed this Note under seal as of the date first above written.

**ISSUER**:

[_____]


By:_____
Name:
Its:


Notice Address:

[_____]

Accepted and agreed as of the date first set forth above.

**HOLDER**:

[_____]


By:_____
Name:
Its:


Notice Address:

[_____]