# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No.: 20-12456 (JTD) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTORS' SECOND AMENDED CHAPTER 11 PLAN, AS MODIFIED

The Bankruptcy Court having considered the *Debtors' Second Amended Chapter 11 Plan, as Modified*, dated February 10, 2021 [Docket No. 1093] (together with the *Plan Supplement* [Docket No. 920], as such plan, Plan Supplement and Amended Plan Supplement may be amended, supplemented or otherwise modified from time to time, the "Plan") filed by the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

"Chapter 11 Cases"); [2] and the Court having further considered the following in further support

of confirmation of the Plan and entry of this order (this "Confirmation Order"):

(i)  *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 365(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 365*, entered November 18, 2020 [Docket No. 558] (the "Final DIP Order");

(ii)  *Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets; (B) Approving Certain Bidder Incentives in Connection with the Debtors' Entry into a Stalking Horse Agreement, if Any and (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases*, entered November 20, 2020 [Docket No. 585] (the "Bid Procedures Order");

(iii)  *Notice to Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned*, filed December 14, 2020 [Docket No. 723] (the "Cure Notice");

(iv)  *Order (I) Approving Disclosure Statement; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Contents of Solicitation Package, (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (C) Approving Forms of Ballots, (D) Establishing Voting Deadline for Receipt of Ballots, and (E) Approving Procedures for Vote Tabulations; (V) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (VI) Granting Related Relief*, entered December 21, 2020 [Docket No. 759] (the "Solicitation Procedures Order");

(v)  *Disclosure Statement for Debtors' Amended Chapter 11 Plan*, filed December 21, 2020 [Docket No. 762] (the "Disclosure Statement");

(vi)  *Notice of Filing of Proof of Publication of the New York Times With Respect to Notice of (A) Hearing to Consider Confirmation of Debtors' Amended Chapter 11 Plan; (B) Deadline for Voting to Accept or Reject Plan; and (C) Related Matters*, filed January 13, 2021 [Docket No. 857] (the "Proof of Publication");

(vii)  *Notice of Non-Receipt of Topping Bid and Cancellation of Auction*, filed January 18, 2021 [Docket No. 886];

---

[2] Capitalized terms not defined herein shall have the meanings set forth in the Plan.

(viii)    *Plan Supplement to Debtors' Amended Chapter 11 Plan*, filed January 22, 2021 [Docket No. 920] (the "Plan Supplement");

(ix)    *Notice of Filing of Amended Exhibit 4 to Plan Supplement* filed February 4, 2021 [Docket No. 1069];

(x)    *Amended Plan Supplement*, filed February 11, 2021 [Docket No. 1108] (the "Amended Plan Supplement");]

(xi)    *Affidavit of Emily Young of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on Debtors' Amended Chapter 11 Plan*, filed February 9, 2021 [Docket No. 1090] (the "Tabulation Affidavit");

(xii)    *Debtor's Second Amended Chapter 11 Plan, as Modified*,  filed February 10, 2021 [Docket No. 1093] (i.e., with the Plan Supplement, the "Plan");

(xiii)    *Declaration of Shawn Lederman, Chief Executive Officer of the Debtors,  in Support of Confirmation of the Debtors' Second Amended Chapter 11 Plan*, filed February 10, 2021 [Docket No. 1095] (the "Lederman Declaration");

(xiv)    *Declaration of Sugi Hadiwijaya, Partner of CR3 Partners LLC, in Support of Confirmation of Debtor's Second Amended Chapter 11 Plan*, filed February 10, 2021 [Docket No. 1096] (the "Hadiwijaya Declaration");

(xv)    *Declaration of Richard F. NeJame, Managing Director of FocalPoint Securities, LLC, in Support of Confirmation of Debtor's Second Amended Chapter 11 Plan*, filed on February 10, 2021 [Docket No. 1097] (the "NeJame Declaration"); and

(xvi)    *Memorandum of Law in Support of Confirmation of Debtors' Chapter 11 Plan, and in Reply to Plan-Related Objections*, filed February 11, 2021 [Docket No. 1109] (the "Confirmation Memorandum");

(xvii)    *Notice of Filing of Blackline of Debtors' Second Amended Chapter 11 Plan*, filed February 10, 2021 [Docket No. 1094]; and

(xviii)    *Amended Notice to Counterparties to Executory Contracts and Unexpired Leases That May Be Assumed and Assigned*, filed February 10, 2021 [Docket No. 1092] (the "Amended Cure Notice")];

(xix)    The affidavits or other proofs of service of notices with respect to the Confirmation Hearing, cure amounts (the "Cure Amounts") of Executory Contracts and Unexpired Leases to be assumed, and solicitation of voting on the Plan (the "Solicitation Service Filings").

The Bankruptcy Court having: (i) conducted a hearing commencing on

February 11, 2021, at 2:30 p.m. prevailing Eastern Time (the "Confirmation Hearing") to

3

consider confirmation of the Plan, pursuant to Bankruptcy Rule 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Solicitation Procedures Order; (ii) reviewed the Plan, Disclosure Statement, all of the other documents listed above, and all other filed pleadings, exhibits, affidavits, hearing transcripts, documents, filings and other evidence regarding confirmation of the Plan, including all objections, statements and reservations of rights; (iii) heard the statements, oral representations and arguments made by counsel in respect of confirmation of the Plan and the objections thereto; and (iv) taken judicial notice of all pleadings and other documents filed, all orders, entered, and all evidence and arguments presented in these Chapter 11 Cases and other relevant proceedings,

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, it hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

4

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.     The Bankruptcy Cases.  On October 7, 2020, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Chapter 11 Cases.  On October 8, 2020, the Bankruptcy Court entered an order authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 68].  On October 26, 2020, the Office of United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these Chapter 11 Cases [Docket No. 192].  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

B.     Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter a final order consistent with Article III of the United States

---

[3]  The determinations, findings, judgments, decrees, and orders set forth and incorporated in this Confirmation Order constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this contested matter pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

5

Constitution.  The Bankruptcy Court has jurisdiction to determine whether the Plan complies

with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.      Judicial Notice.  The Bankruptcy Court takes judicial notice of (and deems

admitted into evidence for purposes of confirmation of the Plan) the docket of the Chapter 11

Cases maintained by the Clerk of the Bankruptcy Court or its duly appointed agent, including,

without limitation, all pleadings and other documents filed and orders entered thereon.

Additionally, the Bankruptcy Court takes judicial notice of all evidence proffered or adduced and

all arguments made at the hearings held before the Bankruptcy Court during the pendency of the

Chapter 11 Cases.

## Filing of Disclosure Statement and Plan

D.      Second Amended Plan.  Subsequent to solicitation, the Debtors made additional

changes to the Plan to reflect resolutions to formal and informal responses and objections to

confirmation.  A blackline of the *Second Amended Chapter 11 Plan* [Docket No. 1094] was filed

with the Bankruptcy Court on February 10, 2020, along with the Debtor's *Memorandum of Law*

*in Support of Confirmation of Debtors' Chapter 11 Plan, and Reply to Plan-Related Objections*

[Docket No. 1109] (the "Confirmation Memorandum").

E.      Modifications to Plan. All modifications of the Plan since the entry of the

Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code,

including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code.  The modifications do

not adversely affect the proposed treatment of any Holder of a Claim or Equity Interest.

Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications

require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of

6

votes under section 1126 of the Bankruptcy Code, in accordance with Bankruptcy Rule 3019. The filing of the Second Amended Plan, and the disclosure of such modifications on the record at or prior to the Confirmation Hearing, constitute due and sufficient notice of any and all such modifications.  No additional solicitation or disclosure is required on account of such modifications, and such modifications are deemed accepted by all Holders of Claims and Equity Interests who voted to accept the Plan or who are deemed to have accepted the Plan.  Therefore, the Second Amended Plan shall constitute the Plan submitted for confirmation.

### Plan Supplement

F.      The filing and notice of the Plan Supplement and the Amended Plan Supplement were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and in compliance with the provisions of the Plan, the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules and applicable nonbankruptcy law, rules and regulations, and no other or further notice is or shall be required.

G.      The final versions of all documents included in the Plan Supplement and Amended Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan and the terms of the documents included in the Plan Supplement and Amended Plan Supplement (collectively, the "Plan Supplement Documents"), the Debtors' rights to alter, amend, update or modify any of the Plan Supplement Documents before the Effective Date are reserved.

### Solicitation of the Plan and Voting Results

H.    <u>Publication of Confirmation Hearing Notice</u>.  On December 24, 2020, the

Debtors, as evidenced by the Proof of Publication, caused the Confirmation Hearing Notice (in a

form suitable for publishing in a newspaper) to be published in the *New York Times*.

I.    <u>Service of Solicitation Package, including Confirmation Hearing Notice</u>.  The

Debtors, through the Solicitation Agent, caused the Solicitation Package, including the

Confirmation Hearing Notice and applicable ballot(s) (the "<u>Ballots</u>") or Non-Voting Class

Notice (as such term is used in such motion), to be served and distributed as required by the

Solicitation Procedures Order, Bankruptcy Code section 1125, Bankruptcy Rules 3017 and 3018,

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for

the District of Delaware (the "<u>Local Rules</u>"), all other applicable provisions of the Bankruptcy

Code and the Bankruptcy Rules, and all other applicable rules, laws and regulations applicable to

such solicitation.  The Solicitation Packages were transmitted to all creditors entitled to vote on

the Plan and sufficient time was prescribed for creditors to accept or reject the Plan.  The

transmittal of the Solicitation Packages and Ballots was adequate and sufficient under the

circumstances and no other or further notice is or shall be required.

J.    <u>Notice of Cure Objection Deadline.</u>  On December 15, 2020, as evidenced by the

*Affidavit of Service of Angharad Bowdler*, dated January 4, 2021 [Docket No. 806 ¶ 2(d) and (v)

at PDF 2 of 32], certain counterparties to Executory Contracts and Unexpired Leases were

served by the Solicitation Agent with the *Notice to Counterparties to Executory Contracts and

Unexpired Leases that May Be Assumed and Assigned* [Docket No. 723], which constituted

notice of the Debtors' potential assumption or assumption and assignment of the identified

Executory Contracts and Unexpired Leases, proposed prepetition Cure Amounts relating thereto,

and the deadline to object to assumption/assignment or the proposed Cure Amounts of January

29, 2021 at 4:00 p.m. (Prevailing Eastern Time).

K.      Adequate and sufficient notice of the Confirmation Hearing was provided in

compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures

Order.  All parties required to be given notice of the Confirmation Hearing (including the

deadline for filing and serving objections to confirmation) have been provided due, proper,

timely, and adequate notice and have had an opportunity to appear and be heard with respect

thereto.  No other or further notice is required.

L.      <u>Solicitation</u>.  Votes on the Plan were solicited in good faith and in compliance

with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure

Statement, the Solicitation Procedures Order, the Local Rules, all other applicable provisions of

the Bankruptcy Code and Bankruptcy Rules, and all other applicable rules, laws, and regulations

applicable to such solicitation.  Pursuant to the Solicitation Procedures Order, the Debtors

transmitted Solicitation Packages to those Holders of Claims and Equity Interests entitled to vote

on the Plan as of the Record Date (as defined in the Solicitation Procedures Order).

M.      <u>Voting</u>.  On February 10, 2021, the Solicitation Agent filed the Tabulation

Affidavit.  The Tabulation Affidavit provides complete transparency as to the voting and

tabulation procedures and reflects compliance by the Debtors, in reaching the determinations

reflected therein, with the requirements of Bankruptcy Code sections 1126(c) and (d) and

Bankruptcy Rule 3018(a) and (c).

9

**Confirmation**

N.      Bankruptcy Rule 3016.  The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

O.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with all applicable provisions of the Bankruptcy Code as required by Bankruptcy Code section 1129(a)(l), including Bankruptcy Code sections 1122 and 1123.

(i)      Bankruptcy Code section 1122 – Proper Classification.  The Plan properly classifies claims and equity interests in satisfaction of Bankruptcy Code section 1122.  Article III of the Plan sets forth seven classes of claims and two classes of interests: (1) Non-Tax Priority Claims; (2) Miscellaneous Secured Claims; (3) Prepetition Secured Debt Claims; (4) General Unsecured Claims; (5) Preserved Intercompany Claims; (6) Extinguished Intercompany Claims; (7) Dissenters Claims; (8) Equity Interests in Holding; and (9) Intercompany Interests.  Valid reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and, accordingly, the Plan properly classifies claims and equity interests, satisfying the requirements of Bankruptcy Code section 1122.

(ii)      Bankruptcy Code section 1123(a)(1) - Designation of Classes of Non-Priority Claims and Equity Interests.  Article III of the Plan satisfies Bankruptcy Code section 1123(a)(1) by designating classes of Claims and Equity Interests, and by not classifying Administrative Expense Claims (entitled to priority under Bankruptcy Code section 507(a)(2)) or Priority Tax Claims (entitled to priority under Bankruptcy Code section 507(a)(8)).  Article II of the Plan separately specifies the statutorily required treatment for Administrative Expense Claims and Priority Tax Claims.

10

(iii)      Bankruptcy Code section 1123(a)(2) and (3) – Specified Classes of Unimpaired and Treatment of Impaired Claims and Equity Interests.  Article III of the Plan satisfies Bankruptcy Code section 1123(a)(2) and (3) by specifying that Classes 1, 2, 5, and 9 are Unimpaired and specifying the treatment of the Impaired Claims and Equity Interests in Classes 3, 4, 6, 7 and 8.

(iv)      Bankruptcy Code section 1123(a)(4) – No Discrimination.  Article III of the Plan satisfies Bankruptcy Code section 1123(a)(4) by providing identical treatment for all Holders of Claims or Equity Interests within each Class unless a Holder of a Claim or Equity Interest in that Class agrees or agreed to less favorable treatment for such Claim or Equity Interest.

(v)      Bankruptcy Code section 1123(a)(5) – Adequate Means for Plan Implementation.  The Plan satisfies Bankruptcy Code section 1123(a)(5) by setting forth the means of its implementation in, among other provisions, Article V of the Plan, as well as in the various documents and agreements set forth in the Plan Supplement.

(vi)      Bankruptcy Code section 1123(a)(6) – Non-Voting Equity Securities.  Section V.K. of the Plan expressly provides for compliance with such section, thereby satisfying Bankruptcy Code section 1123(a)(6).

(vii)      Bankruptcy Code section 1123(a)(7) – Directors and Officers.  The Debtors have properly and adequately disclosed the identity and affiliations of the individuals proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors, Reorganized RTI and RT Lodge Company, as set forth in section V.L of the Plan, in the Plan Supplement (at Exhibit 5) and the Amended Plan Supplement, thereby satisfying

11

Bankruptcy Code section 1123(a)(7).  The identification, appointment, employment, or manner of selection of such individuals or entities and the proposed compensation and indemnification arrangements for officers and directors are consistent with the interests of Holders of Claims and Equity Interests and with public policy.

(viii)    Bankruptcy Code section 1123(b)(1)-(2) – Claims, Executory Contracts and Unexpired Leases.  The Plan is consistent with Bankruptcy Code section 1123(b)(1) because, under Article III of the Plan, Classes 1, 2, 5 and 9 are Unimpaired and treated as required under the Bankruptcy Code while Classes 3, 4, 6, 7 and 8 are Impaired based on the Plan's modification of the rights of the Holders of Claims and Equity Interests within such Classes.  The Plan also is consistent with Bankruptcy Code section 1123(b)(2) because section VI.A. of the Plan addresses the assumption and rejection of Executory Contracts and Unexpired Leases.

(ix)    Bankruptcy Code section 1123(b)(3) – Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action.  This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the compromise and settlement, release, exculpation, and injunction provisions set forth in sections X.A. through and including E. of the Plan.  The Plan is consistent with Bankruptcy Code section 1123(b)(3) because the Plan's discretionary provisions, including certain release and exculpation provisions (in sections X. B., C., and D. of the Plan), are appropriate and consistent with the applicable provisions of chapter 11.

a.    Debtors' Release.  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of Claims and Causes of Action by the Debtors described in

section X.B. of the Plan (the "Debtors' Release") represent a valid exercise of the Debtors' business judgment.  The Debtors', the Reorganized Debtors', Reorganized RTI's or RT Lodge Company's pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies and is fair and equitable.  The Plan, including the Debtors' Release, was negotiated by sophisticated parties represented by able counsel and financial advisors.  The Debtors' Release is therefore the result of an arms'-length negotiation and appropriately offers protection to parties that participated in the Debtors' restructuring process. Specifically, the Released Parties under the Plan made significant concessions and contributions to the Debtors' Chapter 11 Cases, including, as applicable, entering into the RSA and related term sheet and agreements, actively supporting the Plan and the Chapter 11 Cases, settling and compromising substantial rights and Claims against the Debtors under the Plan and providing debtor in possession and exit financing, as the case may be.  The Debtors' Release for the Debtors' directors and officers is appropriate because the Debtors' directors and officers share an identity of interest with the Debtors, supported the Plan and the Chapter 11 Cases, and actively participated in meetings, negotiations, and implementation of the restructuring during the Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.  The scope of the Debtors' Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtors' Release to the Plan, the Debtors' Release is appropriate.

        b.        <u>Third Party Release</u>.  The release by the Releasing Parties (the "<u>Third Party Release</u>"), set forth in section X.C. of the Plan, is an essential provision of the Plan.

13

The Third Party Release is: (1) consensual; (2) in exchange for the good and valuable consideration provided by the Released Parties; (3) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release (see section X.A. of the Plan); (4) mutually beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (5) fair, equitable and reasonable; (6) given and made after due notice and opportunity for hearing; (7) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of the Released Parties; and (8) consistent with sections 105, 524, 1123, 1129 and 1141 and other applicable provisions of the Bankruptcy Code.  Like the Debtor Release, the Third Party Release facilitated participation of the Released Parties in both the Plan and the Chapter 11 Cases generally.  The Third Party Release is instrumental to and an integral part of the Plan and the Restructuring it implements and was critical in incentivizing the Released Parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  The Third Party Release was instrumental in developing a Plan that maximized value for all of the Debtors' stakeholders and preserved the Debtors' business as a going concern.  The Third Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' Restructuring process. The projected recovery under the Plan for Holders of Class 4 General Unsecured Claims derives from the settlement embodied by the Plan and RSA, and the releases contemplated therein, which are also the result of the agreement of parties to such settlement that bargained, in exchange, to be Released Parties under the Plan.  Further, the Third Party Release is consensual

14

as the Releasing Parties were given the opportunity to opt out of the Third Party Release, and the release provisions of the Plan were conspicuous in the Confirmation Hearing Notice, the Plan, the Disclosure Statement, the Ballots and Non-Voting Class Notice.  There is an identity of interests between the Debtors and the entities that will benefit from the Third Party Release. Each of the Released Parties, as stakeholders and critical participants in the Debtors' reorganization process, share a common goal with the Debtors in seeing the Plan succeed. The scope of the Third Party Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases, and parties received due and adequate notice of the Third Party Release. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third Party Release, and no other disclosure is necessary. In light of the foregoing, the Third Party Release is appropriate.

> c.    <u>Exculpation, Injunction and Preservation of Claims and Causes of Action</u>.  The exculpation, injunction, and preservation of Claims and Causes of Action provisions are integral to the Plan and the Restructuring it implements and were critical in incentivizing parties in interest to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  The exculpation, injunction, and preservation of Claims and Causes of Action provisions are key components of developing a Plan that maximized value for all of the Debtors' stakeholders and preserved the Debtors' business as a going concern, and are appropriately tailored to the facts and circumstances of the Chapter 11 Cases.

> P.    <u>Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code (including

sections 1125 and 1126), the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the

Solicitation Procedures Order, and other orders of this Court, thereby satisfying Bankruptcy

Code section 1129(a)(2).  Additionally, the Debtors are proper debtors under Bankruptcy Code

section 109.

Q.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan has been

proposed in good faith and not by any means forbidden by law, and thereby complies with

Bankruptcy Code section 1129(a)(3).  The Plan is the result of extensive, good faith,

arm's-length negotiations among the Debtors, the Prepetition Secured Creditors, the Creditors'

Committee and the Equity Parent, bears the support of a Class of impaired creditors (Class 3

Prepetition Secured Debt Claims), and implements a result that is in keeping with (and, indeed,

central to) the goals of the Bankruptcy Code.  The Plan is designed to maximize the values

available for distribution and to distribute them equitably.  The Plan contains only provisions that

are consistent with the Bankruptcy Code.

R.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  As further

set forth in section II.B of the Plan, any payment made or to be made by the Debtors under the

Plan for services or for costs and expenses of specified professionals in connection with the

Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, is

subject to the approval of the Court as reasonable, or has already been approved by prior Court

order, thereby satisfying Bankruptcy Code section 1129(a)(4), as applicable.

S.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  As set forth more fully

above, section V.L. of the Plan and the Plan Supplement at its Exhibit 5 and the Amended Plan

Supplement describe the composition of the Board of the Reorganized Debtors, RT Lodge

16

Company and Reorganized RTI as of the Effective Date.  The proposed directors and officers for

the Reorganized Debtors, RT Lodge Company and Reorganized RTI are qualified, and the

appointments to, or continuance in, such offices by the proposed directors and officers is

consistent with the interests of the Holders of Claims and Equity Interests and with public policy,

thereby satisfying Bankruptcy Code section 1129(a)(5).

       T.      No Rate Changes (11 U.S.C. § 1129(a)(6)).  Bankruptcy Code section 1129(a)(6)

is inapplicable in these cases.

       U.      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The "best interests of

creditors" test of Bankruptcy Code 1129(a)(7) is satisfied as to all Holders of Claims and Equity

Interests in Impaired Classes under the Plan because each such Holder of a Claim or Equity

Interest is projected and estimated to receive or retain under the Plan a distribution of not less

than the distribution that such Holder is projected and estimated to receive if the Chapter 11

Cases were converted to cases under chapter 7 of the Bankruptcy Code.  Because the non-

accepting Holders would not receive any greater recovery in a chapter 7 liquidation than under

the Plan, the Plan satisfies the "best interests" of creditors test.

       V.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Bankruptcy Code

section 1129(a)(8) is satisfied because Classes 1, 2, 5 and 9 are Unimpaired, were not entitled to

vote and are deemed to have accepted the Plan pursuant to the conclusive presumption mandated

by Bankruptcy Code section 1126(f) and, as reflected in the Tabulation Affidavit and based on

votes tabulated in accordance with Bankruptcy Code section 1126(c) and (d) and Bankruptcy

Rule 3018(a) and (c), the Plan has been accepted by Class 3.

W.    <u>Treatment of Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The Plan satisfies

Bankruptcy Code section 1129(a)(9) because Article II of the Plan provides that:  (a) any unpaid

Administrative Expense Claims (as to which Bankruptcy Code section 1129(a)(9)(A) applies), if

or once Allowed, will be paid in full on the Effective Date or as soon as practicable thereafter

unless the Holder has agreed to less favorable treatment; (b) Allowed Non-Priority Tax Claims

will receive treatment mirroring that permissible under Bankruptcy Code section 1129(a)(9)(B);

and (c) Allowed Priority Tax Claims will receive treatment mirroring that permissible under

Bankruptcy Code section 1129(a)(9)(C).

X.    <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>.

The voting members of Class 3, exclusive of any claims of Insiders (as defined in the

Bankruptcy Code), have voted in favor of the Plan, therefore satisfying the requirements of

Bankruptcy Code section 1129(a)(10).

Y.    <u>Feasibility of the Plan (11 U.S.C. § 1129(a)(11))</u>.  The Plan satisfies the feasibility

requirement of Bankruptcy Code section 1129(a)(11) because, as illustrated by the Financial

Projections, annexed to the Disclosure Statement as Exhibit E [Docket No. 762-5] and the

NeJame Declaration as its Exhibit A, the statements set forth in the NeJame Declaration, the

requirement in the RSA term sheet that the Debtors have a minimum of $12.5 million of opening

liquidity as of the Effective Date as a condition precedent to the provision of the Exit Facility

and the added funding availability under the Exit Facility, the Reorganized Debtors will have

sufficient cash flow and Cash on hand to make all payments required pursuant to the Plan while

conducting ongoing business operations.  Confirmation and consummation of the Plan is,

therefore, not likely to be followed by the liquidation or further reorganization of the Reorganized Debtors.

Z.      Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).  Sections II.D. and XIII.B. of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).  The Plan, therefore, satisfies the requirements of Bankruptcy Code section 1129(a)(12).

AA.      Exit Facility.  The Exit Facility is an essential element of the Plan, and entry into the Exit Facility is in the best interest of the Debtors, the Estates and all holders of Claims and Equity Interests, and is necessary for confirmation and consummation of the Plan.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Facility, and have provided sufficient and adequate notice of the material terms of the Exit Facility in sections V.D., E. and F. of the Plan, Disclosure Statement and Plan Supplement Exhibit 2 [Docket No. 920-2], and the terms of the Exit Facility are fair and reasonable, and were negotiated in good faith and at arm's-length, and any credit extended to the Reorganized Debtors by the Exit Lenders pursuant to the Exit Facility shall be deemed to have been extended, made, assumed and assigned, issued or made in good faith.  The Debtors and Reorganized Debtors are authorized without further approval of the Court or any other party, to execute and deliver all agreements, guarantees, instruments, mortgages, control agreements, certificates, and other documents or take any necessary action to confirm, extend, reinstate, or assign and assume such existing documents relating to the Exit Facility and to perform their obligations thereunder, including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities.

BB.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  Under the Plan, to the extent that the

Debtors have any retiree benefit plans within the meaning of Bankruptcy Code section 1114,

they are assumed (*see* sections V.U. and VI.I. of the Plan).  Thus, Bankruptcy Code

section 1129(a)(13) is satisfied.

CC.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The Plan satisfies the

requirements of Bankruptcy Code section 1129(d) because it reflects a consensual restructuring

transaction negotiated among the Debtors, Prepetition Secured Creditors, the Creditors'

Committee and Equity Parent to reorganize the Debtors as a going-concern business and leave

the Debtors with an improved capital structure.  The principal purpose of the Plan is therefore

not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of

1933, and there has been no filing by any governmental agency asserting such avoidance.

DD.    <u>Good Cause Exists to Waive the Stay of the Order</u>.  Good cause exists for waiving

and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004,

and 6006 so that the Confirmation Order will be effective immediately upon its entry.

Moreover, cause also exists to waive the fourteen-day stay under Bankruptcy Rule 3020(e) based

on the absence of unresolved objections of any Holder of a Claim or Equity Interest.  As a result

thereof, no party likely will be seeking to obtain a stay on implementation of the Confirmation

Order pending appeal, and an automatic temporary stay is not needed to protect any appellate

rights.

EE.    <u>Burden of Proof and Satisfaction of Confirmation Requirements</u>.  Based upon the

foregoing, the Debtors, as proponents of the Plan, have met their burden of proving the elements

of Bankruptcy Code sections 1129(a) and 1129(b) by a preponderance of the evidence.

DOCS_LA:335333.23

FF.    <u>Liquor Licenses</u>.  Alcohol purchases and sales currently are conducted by the

Debtors at locations that will continue to be operated by the Reorganized Debtors, Reorganized

RTI, RT Lodge Company or their respective affiliates, as applicable, after the Effective Date

(such locations, collectively, the "<u>Retained Locations</u>").  Such purchases and sales of alcohol are

made pursuant to the respective alcoholic beverage licenses governing such purchases and sales

at each such Retained Location (collectively, the "<u>Liquor Licenses</u>").  The purchase and sale of

alcohol is an important component of the operation of the Retained Locations.  This Court finds

that it is in the best interests of the Debtors' estates and all other parties in interest for alcohol

purchases and sales to continue uninterrupted during the transition of operation of the Retained

Locations pursuant to the Plan, subject to reasonable and good faith efforts to thereafter timely

transfer existing Liquor Licenses (as well as liquor licenses associated with closed stores) or

apply for new liquor licenses equivalent to the Liquor Licenses that are not subject to transfer.

## <u>ORDER</u>

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS
THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.    <u>Confirmation</u>.  The Plan, including all exhibits, and each of the documents

comprising the Plan Supplement and Amended Plan Supplement, each as may be amended,

modified or supplemented from time to time prior to or after the date hereof in accordance with,

and subject to the approvals and consents set forth in the RSA and the Plan, and each of which

are incorporated by reference into and are an integral part of this Confirmation Order, are

approved in their entirety and confirmed under section 1129 of the Bankruptcy Code.  The

Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and

consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including (but not limited to) entry into the agreements contained in the Plan Supplement and the Amended Plan Supplement.

2.    <u>Objections</u>.  Unless adjourned, all formal and informal objections, responses and reservations of rights pertaining to confirmation that have not been withdrawn, waived, or settled are overruled on the merits.

3.    <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Bankruptcy Court that the Plan, including, without limitation, each of the documents comprising the Plan Supplement, each as may be amended, modified or supplemented from time to time after the date hereof in accordance with, and subject to the approvals and consents set forth in the RSA and the Plan, be approved and confirmed in its entirety.

4.    <u>Immediate Binding Effect</u>.  Except as otherwise provided in the Plan or this Confirmation Order, notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the final, executed versions of the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, RT Asset Company, RT Lodge Company, Reorganized RTI, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

5.    <u>Vesting of Assets in the Reorganized Debtors, Reorganized RTI and RT Lodge Company</u>.  Except as otherwise provided in the Plan or this Confirmation Order, on the

22

Effective Date:  (a) the RT Lodge shall vest in Reorganized RTI, one hundred percent (100%) of the Equity Interests in RT Lodge Company shall vest in the Holders of the Allowed Subclass 3A Claims on a Pro Rata basis, and RT Lodge Company shall, at the direction of the Prepetition Secured Creditors, designate any Assets of RTI that have not been sold prior to the Effective Date and are not directly related to and directly useful to the operations of the RT Lodge to RT Asset Company, and (b) to the extent any Assets (other than the RT Lodge) remain unsold as of the Effective Date, such Assets (other than the RT Lodge) shall vest in RT Asset Company, consistent with the definition of the term Restructuring in Article I.C of the Plan. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, to the extent it is impractical to effect the transfer of Assets to RT Asset Company on the Effective Date, the transfer of such Assets (including the liquor licenses currently held by RTI) and the pre-transfer operation of such Assets shall be governed by the Transition Agreements and this Confirmation Order.  Except as otherwise provided in the Plan or this Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action, Litigation Claims) and any property and Assets acquired by the Debtors pursuant to the Plan shall vest in Reorganized RTI, RT Lodge Company, or the Reorganized Debtors or their successors, free and clear of all Liens, Claims, charges or other encumbrances.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors, RT Asset Company, RT Lodge Company and Reorganized RTI with regard to their respective Assets may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly

imposed by the Plan and this Confirmation Order.  Without limiting the foregoing, the

Reorganized Debtors, RT Asset Company, RT Lodge Company and Reorganized RTI with

regard to their respective Assets shall pay the charges that they incur after the Effective Date for

reasonable and documented Professionals' fees, disbursements, expenses or related support

services (including reasonable and documented fees relating to the preparation of Professional

fee applications) in the ordinary course of business and without application or notice to, or order

of, the Bankruptcy Court.  For clarity, the Executory Contracts and Unexpired Leases assumed

by a Debtor, a Reorganized Debtor, Reorganized RTI and/or RT Lodge Company that are not

related to the RT Lodge shall be, at the written direction of TCW, assigned to RT Asset

Company on the Effective Date without the need for a further authorization by the Bankruptcy

Court, subject, in all cases, to the Transition Agreements and this Confirmation Order, and the

Executory Contracts and Unexpired Leases that are related to the RT Lodge shall be, at the

written direction of GS, assumed by Reorganized RTI on the Effective Date, without the need for

a further authorization by the Bankruptcy Court.  For the avoidance of doubt, the transfer of

Assets to RT Asset Company in accordance with the Plan shall be deemed and treated as

involving (i) TCW, in its capacity as a Prepetition Secured Creditor and a DIP Facility Lender,

contributing some or all of its Prepetition Secured Debt Claim and/or DIP Facility Claim (the

"Contributed Debt") to RT Asset Company Holdings LLC in exchange for new equity, (ii) RT

Asset Company Holdings LLC contributing the Contributed Debt to RT Asset Company in

exchange for new equity, and (iii) the Debtors transferring the Assets (other than RT Lodge) to

RT Asset Company in satisfaction of their obligations in respect of the Contributed Debt.

6.      Corporate Existence.  Except as otherwise provided in the Plan, the Plan

Supplement, the Amended Plan Supplement or this Confirmation Order, the Debtors all shall

continue to exist after the Effective Date as separate legal entities, with all of the powers of

corporations, limited liability companies, memberships and partnerships pursuant to the

applicable law in their states of incorporation or organization subject to the terms of, and except

as otherwise provided in or by, the Plan and the Alternative Structures.  The respective limited

liability company agreements, articles or certificate of incorporation and by-laws (or other

applicable formation documents) in effect prior to the Effective Date for each Debtor shall

continue to be in effect after the Effective Date, except (a) with respect to RT Asset Company, as

to which there shall be amended and restated limited liability company agreement or other

applicable organizational documents as set forth in the Amended Organizational Documents

Filed as an Exhibit with the Plan Supplement without prejudice to any right to terminate such

existence (whether by merger or otherwise) under applicable law after the Effective Date and

(b) as any other Debtor's limited liability company agreements, articles or certificate of

incorporation or by-laws (or other formation documents) may be amended or amended and

restated pursuant to the Plan without any further notice to or action, order, or approval of the

Bankruptcy Court or any other court of competent jurisdiction (other than the requisite filings

required under applicable state, provincial, or federal law).  On or after the Confirmation Date or

as soon thereafter as is reasonably practicable, the Debtors, Reorganized Debtors, Reorganized

RTI or RT Lodge Company, as applicable, may undertake the Restructuring Transactions and, to

the extent determined necessary or appropriate by the Debtors, with the consent of the

Prepetition Agent and Prepetition Secured Creditors (which consent shall not be unreasonably

withheld or delayed) and, if before the Effective Date, after consultation with the Creditors'

Committee, the Reorganized Debtors, as applicable or their successors, Reorganized RTI or RT

Lodge Company may take all other actions to effect any transaction described in, approved by,

or necessary or appropriate to effectuate the Plan and that is consistent with the RSA, including,

without limitation:  (a) the execution and delivery of appropriate agreements or other documents

of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, name

change, Chapter 11 Case closing, plans of reorganization, transfer or extinguishment of

Intercompany Interests among RT Lodge Company, Reorganized RTI, the Reorganized Debtors

or other successors to, or Affiliates of, the Debtors, or liquidation, containing terms that are

consistent with the terms of the Plan and the Plan Documents and that satisfy the requirements of

applicable law and any other terms to which the applicable entities may agree (the "Alternative

Structures"); (b) the execution and delivery of appropriate instruments of transfer, assignment,

assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms

consistent with the terms of the Plan and having other terms to which the applicable parties

agree; (c) the filing of appropriate certificates or articles of formation or incorporation and

amendments thereto, reincorporation, merger, consolidation, conversion, or dissolution pursuant

to applicable law; (d) the Restructuring Transactions; and (e) all other actions that the applicable

entities determine to be necessary or appropriate, including, without limitation, making filings or

recordings that may be required by applicable law in connection with such transactions.

   7. <u>Corporate Action</u>.  Except as otherwise provided in the Plan or this

Confirmation Order, each of the Debtors, the Reorganized Debtors, Reorganized RTI and/or RT

Lodge Company, as applicable, may take any and all actions to execute, deliver, File or record

such contracts, instruments, releases and other agreements or documents and take such actions as

may be necessary or appropriate to effectuate and implement the provisions of the Plan,

Restructuring Transactions or to effectuate the Alternative Structures, including, without

limitation, the distribution of the securities to be issued pursuant hereto in the name of and on

behalf of RT Asset Company and/or RT Lodge Company, and, in each case, except as expressly

required pursuant to the Plan or the RSA, without further notice to or order of the Bankruptcy

Court, act or action under applicable law, regulation, order, or rule or any requirement of further

action, vote or other approval or authorization by the security holders, officers or directors of the

Debtors or the Reorganized Debtors, as applicable, or by any other Person.  Other actions

necessary to effect the Restructuring Transactions or any Alternative Structures may include:

(a) the execution and delivery of appropriate agreements or other documents of merger,

amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement,

continuance, dissolution, sale, purchase or liquidation containing terms that are consistent with

the terms of the Plan and that satisfy the applicable requirements of applicable law and any other

terms to which the applicable Debtors or Reorganized Debtors (or Reorganized RTI or RT Lodge

Company, as applicable) may agree; (b) the execution and delivery of appropriate instruments of

transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or

obligation on terms consistent with the terms of the Plan and having other terms to which the

applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation,

reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance or

dissolution pursuant to applicable state or provincial law; and (d) all other actions that the

applicable Debtors or Reorganized Debtors (or Reorganized RTI or RT Lodge Company, as

applicable) determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions or any Alternative Structures. If and to the extent necessary, any controlling organization or formation documents or agreements for the Reorganized Debtors, Reorganized RTI and/or RT Lodge Company shall be deemed amended to authorize the foregoing. Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person (except as expressly required pursuant to the RSA). All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable (or Reorganized RTI or RT Lodge Company, as applicable) and any legal or corporate action required by any Debtor or any Reorganized Debtor, as applicable (or Reorganized RTI or RT Lodge Company, as applicable) in connection with the Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtor, as applicable (or Reorganized RTI or RT Lodge Company, as applicable), or by any other Person (except as expressly required pursuant to the RSA). On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as

28

applicable (or Reorganized RTI or RT Lodge Company, as applicable), are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor, and each Reorganized Debtor, as applicable (or Reorganized RTI or RT Lodge Company, as applicable), in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person (except as expressly required pursuant to the RSA).  The secretary and any assistant secretary or managing member of each Debtor and each Reorganized Debtor, as applicable (or Reorganized RTI or RT Lodge Company, as applicable), shall be authorized to certify or attest to any of the foregoing actions.

8.      <u>Further Assurances</u>.  The Debtors, the Reorganized Debtors, Reorganized RTI and/or RT Lodge Company, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or this Confirmation Order.  On and after the Effective Date, the Reorganized Debtors, Reorganized RTI, RT Lodge Company and RT Asset Company shall each use commercially reasonable efforts to effectuate the allocation of assets and liabilities contemplated by the Plan.

9.      <u>DIP Facility</u>.  As set forth in section II.C of the Plan and except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, in full satisfaction, settlement, discharge and release of, and in exchange for, such DIP Facility Claims

DOCS_LA:335333.23

(in an amount outstanding determined as of the Effective Date), all DIP Facility Claims shall be

indefeasibly paid and satisfied in full in Cash from available Cash consistent with the Final DIP

Order.  Notwithstanding the foregoing, GS and TCW may voluntarily reduce or defer their

distributions under Article II.C of the Plan or may otherwise modify the treatment of their DIP

Facility Claims under Article II.C of the Plan to roll obligations into the Exit Facility to provide

for additional liquidity of the Debtors (the "Voluntary DIP Impairment") to satisfy, among other

things, the Minimum GUC Reorg Payment; provided that nothing herein modifies (1) the

requirement under the RSA and the Exit Facility that the Reorganized Debtors have at least

$12.5 million in Cash on the balance sheet on the Effective Date, or (2) the requirement that

Holders of Class 4 General Unsecured Claims receive the Minimum GUC Reorg Payment.  In

the event there is insufficient Cash to make the payments on the DIP Facility Claims or the

Prepetition Secured Debt claims as contemplated herein and pay the Minimum GUC Reorg

Payment, the Reorganized Debtors shall still pay the Minimum GUC Reorg Payment and

provide the Note to Holders of Class 4 General Unsecured Claims; provided, however, that

nothing herein shall require GS to accept Cash payment in an amount less than described in the

RSA on account of its Prepetition Secured Debt Claim.  To the extent GS and/or TCW elect

Voluntary DIP Impairment, none of the resulting liquidity shall be considered for purposes of

calculating whether there is any Excess Cash or in calculating the amount of any Excess Cash

Payments.  Except as otherwise expressly provided in the DIP Facility, upon indefeasible

payment and/or satisfaction in full of all DIP Facility Claims, the DIP Facility Loan Documents

and all related loan documents, and all Liens and security interests granted to secure the DIP

Facility Claims, shall be immediately terminated, extinguished and released, and the DIP Facility

30

Agent shall promptly execute and deliver to RT Asset Company and/or RT Lodge Company, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by RT Asset Company and/or RT Lodge Company (as the case may be) to effectuate the foregoing.

          10.     <u>Exit Facility</u>.  As set forth in section V.D., E. and F. of the Plan, this Confirmation Order shall be deemed approval of the Exit Facility, the Exit Loan Documents and all transactions contemplated thereby, and authorization of all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including, without limitation, the payment of all reasonable and documented fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Loan Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility.  On the Effective Date, RT Asset Company shall be and is authorized to execute and deliver the Exit Loan Documents and any related loan documents, and shall be and is authorized to execute, deliver, file, record and issue any other notes, guarantees, deeds of trust, security agreements, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, subject to any lien limitations set forth herein or in the Plan.  The obligations of RT Asset Company (and any Subsidiaries that are parties to the Exit Facility) under the Exit Facility shall be secured by substantially all of its assets, whether now existing or hereinafter acquired.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Loan

Documents (a) shall be deemed to be granted in good faith, for legitimate business purposes, and

for reasonably equivalent value, (b) shall be legal, binding, and enforceable Liens on, and

security interests in, the collateral granted thereunder in accordance with the terms of the Exit

Loan Documents, (c) shall be deemed automatically perfected on the Effective Date and have a

first priority, subject only to such Liens and security interests as may be permitted under the Exit

Loan Documents, and (d) shall not be subject to avoidance, recharacterization, or equitable

subordination for any purposes whatsoever and shall not constitute preferential transfers,

fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable

non-bankruptcy law.  Notwithstanding anything to the contrary herein, nothing in this Order

shall authorize the Exit Loan Documents to (i) grant a lien or other security interest in leasehold

interests if it would be a default or otherwise prohibited by the underlying lease agreement, (ii)

afford the lenders under the Exit Facility any greater access rights with respect to the Debtors'

leasehold interests than those access rights held by the Debtors, or (iii) afford the lenders under

the Exit Facility access rights with respect the Debtors' leasehold interests to the extent such

access would violate the terms of the applicable real property lease or applicable state law, nor

shall anything in this Order prohibit rights under 10(i), (ii) or (iii) being otherwise granted or

afforded under agreement with the applicable landlord, as permitted by applicable non-

bankruptcy law, or as approved by this Court pursuant to separate motion and order.

      11.   <u>New Common Shares and Warrants</u>.  As set forth in section V.H. of the

Plan and except as otherwise provided in the Plan or this Confirmation Order, on and after the

Effective Date, RT Asset Company shall be authorized to and shall issue (a) the New Common

Shares to the Holders of Allowed Class 3 Prepetition Secured Debt Claims and (b) the Warrants

to the Exit Lender, and RT Lodge Company shall be authorized to and shall issue Equity Interests to the Holders of Claims and Equity Interests, as applicable, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  On the Effective Date, the Exchange Common Shares are to be distributed (or issuable under the Amended Organizational Documents), as provided in the Plan, to each Holder of Allowed Subclass 3B Claims.  To the extent that any such instruments constitute "securities" under applicable securities laws, the offer and sale of Exit Term Loans, Exchange Common Shares and the Warrants pursuant to the Plan shall be effected without registration under section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon the exemption from such registration requirements afforded by section 1145 of the Bankruptcy Code.  The offer and sale of Equity Securities to officers and other key employees of the Reorganized Debtors pursuant to the MIP shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon available exemptions from such registration requirements afforded by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.  The New Common Shares of RT Asset Company shall constitute a single class of Equity Security in RT Asset Company and, other than as contemplated under the MIP or by issuance of New Common Stock upon any exercise of Warrants as set forth in the Plan, there shall exist no other Equity Securities, warrants, options, or other agreements to acquire any equity interest in RT Asset Company.

12.    <u>Section 1145 Exemption</u>.  To the extent that any such instruments constitute "securities" under applicable securities laws, the offer and sale of the Exit Facility, New Common Shares, Warrants, the Equity Interests in RT Lodge Company, and any stock, warrants, options or other Equity Securities in connection with the Management Incentive Plan ("<u>MIP</u>") pursuant to section V.G. of the Plan, shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon the exemption from such registration requirements afforded by section 1145 of the Bankruptcy Code.

13.    <u>Substantive Consolidation</u>.  As of the Effective Date, the substantive consolidation of the Estates of all of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes only, is granted.  Substantive consolidation under the Plan and this Confirmation Order, however, shall not (a) alter the state of incorporation of any Debtor for purposes of determining applicable law of any of the Causes of Action or Litigation Claims, (b) alter or impair the legal and equitable rights of any Debtor, Reorganized Debtor, RT Asset Company, Reorganized RTI or RT Lodge Company, as applicable, to enforce any of the Causes of Action or Litigation Claims, or (c) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or Litigation Claims, or issues raised as a part of any thereof.  As of the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate solely for purposes of treatment of and distributions on Claims.  All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors.  All

34

guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors.  Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

14.     <u>Cancellation of Notes, Certificates and Instruments.</u>   As set forth in section V.N. of the Plan except as otherwise set forth in the Plan or this Confirmation Order, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim against the Debtors and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, the holders of or parties to such cancelled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

15.     <u>Release of Liens.</u>  As set forth in section V.J. of the Plan and except as otherwise provided in the Plan, this Confirmation Order or except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or

delivered in connection with the Plan, on the Effective Date and concurrently with the applicable

distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of

trust, or other security interests against the property of the Estates shall be fully released,

terminated, extinguished and discharged, in each case without further notice to or order of the

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote,

consent, authorization or approval of any Entity.  Any Entity holding such Liens or Equity

Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to

the Reorganized Debtors, RT Asset Company, Reorganized RTI and/or RT Lodge Company (as

the case may be), such instruments of termination, release, satisfaction and/or assignment (in

recordable form) as may be reasonably requested by the Reorganized Debtors, RT Asset

Company, Reorganized RTI and/or RT Lodge Company.

      16.    <u>Plan Administrator</u>

      a.    The Plan Administrator shall be appointed, as of the Effective

Date, and have all the rights, duties and obligations as set forth in the Plan and the Plan

Administrator Agreement.

      b.    The Plan Administrator shall be the Holder of the Unsecured Note,

for the benefit of Holders of Allowed Class 4 General Unsecured Claims. The terms of the

Unsecured Note shall be set forth in the Unsecured Promissory Note, to be filed as a Plan

Supplement.

      c.    The Plan Administrator is granted a security interest in the

Interchange Distribution for the benefit of Holders of Allowed Class 4 General Unsecured

Claims. On the Effective Date, the Liens and security interests to be granted to the Plan

DOCS_LA:335333.23

Administrator in the Interchange Distribution (a) shall be deemed to be granted in good faith, for legitimate business purposes, and for reasonably equivalent value, (b) shall be legal, binding, and enforceable Lien on, and security interests in, the Interchange Distribution, (c) shall be deemed automatically perfected on the Effective Date without necessity of any further action other than entry of this Order and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Plan Administrator has the right to sell at any time the Interchange Distribution for the benefit of Holders of Allowed Class 4 General Unsecured Claims. Additional terms relating to the monetization of the Unsecured Note are set forth in the Plan.

### Settlement, Release, Injunctions and Related Provisions

17.    <u>Compromise and Settlement</u>.  As set forth in section X.A. of the Plan and except as otherwise provided in the Plan or this Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims against the Debtors and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI or RT Lodge Company or any of their respective assets, property and estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property shall  have been distributed or retained pursuant to the Plan on account of

DOCS_LA:335333.23

such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of

Action or liabilities, or Equity Interests or other rights of a holder of an Equity Security or other

ownership interest, and upon the Effective Date, the Debtors, the Reorganized Debtors, RT Asset

Company, Reorganized RTI and the RT Lodge Company shall (i) be deemed to have received a

discharge under section 1141(d)(1)(A) of the Bankruptcy Code and release from any and all

Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of

Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Security or

other ownership interest, of any nature whatsoever, including, without limitation, liabilities that

arose before the Effective Date (including prior to the Petition Date), and all debts of the kind

specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof

of Claim based upon such debt is Filed or deemed Filed under section 501 of the Bankruptcy

Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code

(or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the

Plan and (ii) terminate and cancel all rights of any Equity Security holder in any of the Debtors

and all Equity Interests, subject to the Subsidiary Structure Maintenance or Alternative

Structures.

       18.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and

Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and

other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall

constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and

controversies released, settled, compromised, discharged, satisfied, or otherwise resolved

pursuant to the Plan. Such compromise and settlement is the product of extensive arm's-length,

DOCS_LA:335333.23

good faith negotiations that represent a fair and reasonable compromise of all Claims, Interests, and controversies and entry into which represented a sound exercise of the Debtors' business judgment and the Debtors' assumption of such agreements are approved. Such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

19.     This Confirmation Order shall constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (a) supported by the Debtors' sound exercise of business judgment and in the best interests of the Debtors, their estates and all Holders of Claims, (b) supported by the Prepetition Secured Creditors and the Creditors' Committee, (c) fair, equitable and reasonable, (d) made in good faith and (e) approved by the Bankruptcy Court pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  In addition, the allowance, classification and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist:  (a) between the Debtors, Reorganized Debtors, Reorganized RTI, RT Lodge Company and Estates, on the one hand, and the Released Parties, on the other hand (to the extent set forth in the release contained in section X.B. of the Plan); and (b) as between the Releasing Parties and the Released Parties (to the extent set forth in the release contained in section X.C. of the Plan); and, as of the Effective Date, any and all such Causes of Action are settled, compromised and released pursuant hereto.  This Confirmation Order shall approve the releases in the Plan of all contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

20.     As set forth in section X.A. of the Plan and except as otherwise provided in the Plan or this Confirmation Order, all Persons shall be precluded from asserting against each

DOCS_LA:335333.23

of the Debtors, the Debtors' respective assets, property and Estates, the Reorganized Debtors, RT

Asset Company, Reorganized RTI and RT Lodge Company any other or further Claims, or any

other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or

liabilities of any nature whatsoever, and all Equity Interests or other rights of a holder of an

Equity Interest, relating to any of the Debtors, Reorganized Debtors, RT Asset Company,

Reorganized RTI or RT Lodge Company or any of their respective assets, property and estates

based upon any act, omission, transaction or other activity of any nature that occurred prior to the

Effective Date.  In accordance with the foregoing and section X.A.1. of the Plan, except as

otherwise provided in the Plan or this Confirmation Order, this Confirmation Order shall

constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims

or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or

liabilities, and any Equity Interests or other rights of a holder of an Equity Interest and

termination of all rights of any such holder in any of the Debtors, pursuant to sections 524 and

1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment

obtained against the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI,

RT Lodge Company or any of their respective assets, property and Estates at any time, to the

extent such judgment is related to a discharged Claim, debt or liability or terminated right of any

holder of any Equity Interest in any of the Debtors or terminated Equity Interest.

       21.    <u>Settlement, Release, Injunction and Related Provisions</u>.  The following

releases, injunction, exculpation and related provisions, as set forth in Article X of the Plan, are

hereby approved and authorized in their entirety, except as otherwise provided in the Plan or this

Confirmation Order:

(i)      Exculpation.  As set forth in section X.D. of the Plan and except as

otherwise provided in the Plan or this Confirmation Order, the Exculpated Parties shall neither

have, nor incur any liability to any Entity for any act on or after the Petition Date and on or

before the Effective Date taken or omitted to be taken in connection with, or related to, the

Chapter 11 Cases, the formulation, negotiation, solicitation, preparation, dissemination,

confirmation, or implementation of the Plan, or consummation of the Plan, the RSA, the

Disclosure Statement, the Plan Supplement, the Amended Organizational Documents, or other

new corporate governance documents, any transactions contemplated by the Plan, the MIP, the

Exit L/C Facility, the Exit Term Loan Facility, the issuance, distribution, and/or sale of any

shares of the New Common Shares, the Warrants, the Equity Interests in RT Lodge Company or

any other Security offered, issued, or distributed in connection with the Plan, the Chapter 11

Cases, or any contract, instrument, release or other agreement, or document created or entered

into in connection with the Plan, the Restructuring Transactions or Alternative Structures or any

other prepetition or postpetition act taken or omitted to be taken in connection with or in

contemplation of the restructuring of the Debtors; provided, however, that each Exculpated Party

shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or

in connection with, the Plan or any other related document, instrument, or agreement and may

assert such defense to the extent permitted by law; provided, further, that the foregoing

"Exculpation" shall have no effect on the liability of any Entity solely to the extent resulting

from any such act or omission that is determined in a Final Order to have constituted fraud, gross

negligence, bad faith or willful misconduct.

41

(ii)     <u>Mutual Releases by the Debtors and Released Parties</u>.  As set forth in

section X.B. of the Plan and except as otherwise provided in the Plan or this Confirmation Order,

on the Confirmation Date and effective as of the Effective Date, for good and valuable

consideration provided by each of the Debtors, the Reorganized Debtors, RT Asset Company,

Reorganized RTI, RT Lodge Company and the Estates, on the one hand, and the Released

Parties, on the other hand, to the fullest extent permissible under applicable law, the Debtors, the

Reorganized Debtors, RT Asset Company, Reorganized RTI, RT Lodge Company and the

Estates, on the one hand, and the Released Parties, on the other hand, shall, and shall be deemed

to, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void,

extinguish and discharge each other, their Related Persons, and their respective property from

any and all Claims, Equity Interests, obligations, debts, rights, suits, damages, Causes of Action,

remedies, judgments, defenses, counterclaims, and liabilities of any nature whatsoever, including

any derivative Claims asserted or which could be asserted on behalf of a Debtor, a Reorganized

Debtor, RT Asset Company, Reorganized RTI and/or RT Lodge Company, whether liquidated or

unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or

unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise,

that the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI, RT Lodge

Company and the Estates, on the one hand, and Released Parties, on the other hand, would have

been legally entitled to assert against the other, their Related Persons or their property in their

own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity

Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in

part, the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI, RT Lodge

Company, any transactions contemplated by the Plan, the Chapter 11 Cases, the DIP Facility, the

DIP Facility Loan Documents, the Prepetition Credit and Guaranty Agreement, the purchase,

sale, or rescission of the purchase or sale of any security of the Debtors, the Reorganized

Debtors, RT Asset Company, Reorganized RTI, or RT Lodge Company, any payments,

distributions, or dividends any Debtor or Affiliate paid to or received from any Released Party,

fraudulent or preferential transfer or conveyance, tort, contract, breach of fiduciary duty,

violation of state or federal laws, including securities laws, negligence, the subject matter of, or

the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan,

the business or contractual arrangements between any Debtor and any Released Party, the

restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation,

formulation, or preparation of the RSA, the Plan, the Disclosure Statement, the Plan Supplement,

or related agreements, instruments, or other documents; provided, however, that the foregoing

release shall not operate to waive or release any Claims, obligations, debts, rights, suits,

damages, remedies, Causes of Action, and liabilities in respect of RT Asset Company,

Reorganized RTI, RT Lodge Company or any Debtor, Reorganized Debtor or Estate, on the one

hand, or any Released Party, on the other hand, solely to the extent: (1) arising out of or relating

to any act or omission of such purportedly released Entity that constitutes actual fraud, gross

negligence, bad faith, or willful misconduct as determined by Final Order of a court of

competent jurisdiction; or (2) arising under the Plan, this Confirmation Order, or the Plan

Documents.

> (iii)    <u>Releases by Holders of Claims and Equity Interests</u>.  As set forth in

section X.C. of the Plan and except as otherwise provided in the Plan or this Confirmation Order,

on the Confirmation Date and effective as of the Effective Date, for good and valuable

consideration, to the fullest extent permissible under applicable law, each of the Releasing

Parties shall, and shall be deemed to, conclusively, absolutely, unconditionally, irrevocably, and

forever release, waive, void, extinguish, and discharge each Released Party (and each such

Released Party so discharged and released shall be deemed discharged and released by the

Releasing Parties) and their respective property from any and all Claims, Equity Interests,

obligations, debts, rights, suits, damages, Causes of Action, remedies, judgments, defenses,

counterclaims, and liabilities of any nature whatsoever, including any derivative Claims asserted

or which could be asserted on behalf of a Debtor, RT Asset Company, Reorganized RTI, RT

Lodge Company and/or a Reorganized Debtor, whether liquidated or unliquidated, fixed or

contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or

unforeseen, then existing or thereafter arising, in law, equity or otherwise, that such Releasing

Party would have been legally entitled to assert in their own right (whether individually or

collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on

or relating to, or in any manner arising from, in whole or in part, the Debtors, RT Asset

Company, Reorganized RTI, RT Lodge Company or the Reorganized Debtors, any transactions

contemplated by the Plan, the Chapter 11 Cases, the Prepetition Credit and Guaranty Agreement,

the DIP Facility, the DIP Facility Loan Documents, the purchase, sale, or rescission of the

purchase or sale of any security of the Debtors, the Reorganized Debtors or Reorganized RTI,

any payments, distributions, or dividends any Debtor or Affiliate paid to or received from any

Released Party, fraudulent or preferential transfer or conveyance, tort, contract, breach of

fiduciary duty, violation of state or federal laws, including securities laws, negligence, the

44

subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the RSA, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents; provided, however, that the foregoing release shall not operate to waive or release any Claims, obligations, debts, rights, suits, damages, remedies, Causes of Action, and liabilities in respect of any Released Party, solely to the extent: (1) arising out of or relating to any act or omission of such Released Party that constitutes actual fraud, gross negligence, bad faith, or willful misconduct as determined by Final Order of a court of competent jurisdiction or (2) arising under the Plan, this Confirmation Order, or the Plan Documents.

(iv)    Confirmation Date Injunction.  AS SET FORTH IN SECTION V.E.1. OF THE PLAN AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THIS CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

(v)    Injunction Against All Entities.  AS SET FORTH IN SECTION V.E.2. OF THE PLAN AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THIS CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING,

45

PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR

RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT,

CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE

RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE

DISCHARGED PURSUANT TO THE PLAN OR THIS CONFIRMATION ORDER.  BY

ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN

ALLOWED CLAIM OR EQUITY INTEREST SHALL BE DEEMED TO HAVE

SPECIFICALLY CONFIRMED ITS CONSENT TO THIS INJUNCTION.

(vi)    Injunction Against Holders of Released, Discharged or Exculpated

Claims.  As set forth in section X.E.2.b. of the Plan and except as otherwise provided in the Plan

or this Confirmation Order or for obligations issued pursuant hereto, all Entities that have held,

hold, or may hold Claims or Equity Interests that have been released pursuant to subsection (ii)

or (iii) of this paragraph and/or sections X.B. and X.C. of the Plan, discharged pursuant to this

Confirmation Order and/or section X.A. of the Plan, or are subject to exculpation pursuant to

subsection (i) of this paragraph and/or section X.D. of the Plan, are permanently enjoined, from

and after the Effective Date, from taking any of the following actions against, as applicable, the

Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI, RT Lodge Company,

the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any

such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner

or means any judgment, award, decree, or order against such Entities on account of or in

connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting,

46

or enforcing any encumbrance of any kind against such Entities or the property or Estates of such

Entities on account of or in connection with or with respect to any such Claims or Equity

Interests; (d) asserting any right of setoff (except for setoffs asserted prior to the Petition Date),

subrogation, or of any kind against any obligation due from such Entities or against the property

or Estates of such Entities on account of or in connection with or with respect to any such Claims

or Equity Interests; and (e) commencing or continuing in any manner any action or other

proceeding of any kind on account of or in connection with or with respect to any such Claims or

Equity Interests released, exculpated, or settled pursuant to the Plan.  Notwithstanding anything

to the contrary herein or in the Plan, nothing in this Confirmation Order or in the Plan shall in

any way limit, reduce, or otherwise bar an otherwise valid and enforceable right of setoff,

subrogation, or recoupment against the Debtors to the extent that such right is based upon a non-

residential real property lease or applicable bankruptcy law.

22. <u>Discharge of Claims and Termination of Equity Interests</u>.  As set forth in

this Confirmation Order and section X.A.1. of the Plan and except as otherwise provided in the

Plan or this Confirmation Order, upon the Effective Date, the Debtors, the Reorganized Debtors,

RT Asset Company, Reorganized RTI  and RT Lodge Company shall (i) be deemed to have

received a discharge under section 1141(d)(1)(A) of the Bankruptcy Code and release from any

and all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies,

Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity

Security or other ownership interest, of any nature whatsoever, including, without limitation,

liabilities that arose before the Effective Date (including prior to the Petition Date), and all debts

of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not

47

(a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate and cancel all rights of any Equity Security holder in any of the Debtors and all Equity Interests, subject to the Subsidiary Structure Maintenance or Alternative Structures.  Except as expressly provided in the Plan or this Confirmation Order, this Confirmation Order constitutes a judicial determination, as of the Effective Date, of such discharge, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI, RT Lodge Company, or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtors or terminated Equity Interest.

23.    <u>Waiver of Deficiency Claims</u>.  If Holders of DIP Facility Claims and Prepetition Secured Debt hold any undersecured or unsecured claims, such claims are waived as of the Effective Date.

24.    <u>Subordinated Claims</u>.  The allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all such rights described in the

48

preceding sentence are settled, compromised and taken into account and otherwise released pursuant hereto.

25.     Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, by agreement between the Debtors and the Holders of Dissenters Claims, (a) the Debtors shall not seek to subordinate and extinguish the Dissenters Claims pursuant to the Plan; instead, the Debtors may seek to subordinate Dissenters Claims after confirmation by filing objections to such Claims (notwithstanding Fed. R. Bankr. P. 3007(b)); (b) the Holders of Dissenters Claims shall be deemed to have opted out of granting the releases set forth in section X.C. of the Plan; and (c) the Holders of Dissenters Claims withdraw this objection to confirmation of the Plan.

26.     <u>Preservation or Waiver of Causes of Action</u>.  As set forth in section X.J.1. of the Plan and except as otherwise provided in the Plan or this Confirmation Order, after the Effective Date, the Reorganized Debtors, RT Asset Company, Reorganized RTI, and RT Lodge Company, as applicable, shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.  The Reorganized Debtors, RT Asset Company, Reorganized RTI, and RT Lodge Company (as applicable), as the successors in interest to the Debtors and the Estates, may, and shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court provided that reconciliation of any Litigation Claims that are Class 4 General Unsecured Claims shall be

49

subject to the oversight and reasonable consent of the Plan Administrator.  In accordance with

the provisions of the Plan, and pursuant to sections 105(a) and 363 of the Bankruptcy Code and

Bankruptcy Rule 9019, without any further notice to or action, order or approval of the

Bankruptcy Court, after the Effective Date, the Reorganized Debtors, RT Asset Company,

Reorganized RTI, and RT Lodge Company (as applicable) may compromise and settle Litigation

Claims.

### Executory Contracts and Leases

27.    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

The Executory Contract and Unexpired Lease provisions of Article VI of the Plan are approved

as modified herein.

28.    <u>Assumption of Contracts and Leases</u>.  As set forth in section VI.A. of the

Plan and except as otherwise provided in the Plan or this Confirmation Order, as of the Effective

Date, all executory contracts and unexpired leases of the Debtors (the "<u>Assumed Executory</u>

<u>Contracts/Unexpired Leases</u>") shall be deemed assumed by the applicable Debtor in accordance

with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy

Code, except for those Executory Contracts (including, without limitation, employment

agreements) and Unexpired Leases that: (i) have previously expired or terminated pursuant to

their own terms or by agreement of the parties thereto; (ii) have been rejected by order of the

Bankruptcy Court; (iii) are the subject of a motion to reject pending on the Confirmation Date;

(iv) are identified in the Rejected Executory Contract/Unexpired Lease List; or (v) are rejected

pursuant to the terms of the Plan.  For the avoidance of doubt, the Assumed Executory

50

Contracts/Unexpired Leases identified on **Exhibit A** attached hereto constitute existing,

continuing, executory and unexpired obligations of the relevant Debtor and counterparty to such

Executory Contract or Unexpired Leases which, upon payment of any cure cost, are in good

standing, free from default and assumed by the relevant Reorganized Debtor, RT Asset

Company, Reorganized RTI, and RT Lodge Company, as applicable.

        29.    Without amending or altering any prior order of the Bankruptcy Court

approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of

this Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions

and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any

provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned to a

successor pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is

breached or deemed breached by, the Debtors' assumption or assumption and assignment to a

successor (including, but not limited to, a Reorganized Debtor, RT Asset Company, Reorganized

RTI, or RT Lodge Company, as applicable) of such Executory Contract or Unexpired Lease,

then, notwithstanding anything to the contrary in the Plan, application of such provision shall be

deemed waived such that the transactions contemplated by the Plan shall not entitle the non-

debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any

other default-related rights with respect thereto.  Each assumed Executory Contract and

Unexpired Lease shall revest in and be fully enforceable by the Debtors or the applicable

successor (including, but not limited to, a Reorganized Debtor, RT Asset Company, Reorganized

RTI, or RT Lodge Company, as the case may be), except as modified by an order of the

Bankruptcy Court.

51

DOCS_LA:335333.23

30.    <u>Assignment of Executory Contracts or Unexpired Leases</u>.  As set forth in

section VI.B. of the Plan and except as otherwise provided in the Plan or this Confirmation

Order, as of the Effective Date, all Executory Contracts and Unexpired Leases not identified in

the Rejected Executory Contract/Unexpired Lease List shall be deemed assumed and, to the

extent applicable, assigned to the designated Reorganized Debtor or RT Asset Company;

*provided, however*, that such Executory Contracts and Unexpired Leases relating to the RT

Lodge shall be assumed by or assumed and assigned to, as the case may be, Reorganized RTI.

This Confirmation Order shall constitute an order of the Bankruptcy Court approving any such

assumptions and/or assignments identified in section VI.B. of the Plan pursuant to sections 365

and 1123 of the Bankruptcy Code as of the Effective Date.

31.    <u>Workers' Compensation</u>. As set forth in section VI.I. of the Plan and

except as otherwise provided in the Plan or this Confirmation Order, as of the Effective Date, the

applicable Reorganized Debtor or RT Asset Company (or, solely to the extent related to the RT

Lodge and assumed by Reorganized RTI, Reorganized RTI) shall continue to honor its

obligations under:  (a) all applicable workers' compensation laws in states in which the

applicable Reorganized Debtor, RT Asset Company or, as applicable, Reorganized RTI,

operates; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self-

insurer workers' compensation bonds, and any other policies, programs, and plans regarding or

relating to workers' compensation and workers' compensation insurance.  All such contracts and

agreements are treated as Executory Contracts under the Plan and, unless rejected pursuant to

section VI.C. of the Plan, on the Effective Date shall be assumed and assigned to the applicable

Reorganized Debtor or RT Asset Company (or, solely to the extent related to the RT Lodge and

assumed by Reorganized RTI, Reorganized RTI), pursuant to the provisions of sections 365 and

1123 of the Bankruptcy Code.  Notwithstanding anything to the contrary contained in the Plan,

confirmation of the Plan shall not impair or otherwise modify any rights of the Reorganized

Debtors, RT Asset Company, Reorganized RTI or RT Lodge Company (as applicable) under any

such contracts, agreements, policies, programs or plans regarding or relating to workers'

compensation or workers' compensation insurance.

32.    <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>.

As set forth in section VI.D. of the Plan and except as otherwise provided in the Plan or this

Confirmation Order, any monetary amounts by which any Executory Contract or Unexpired

Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the

Bankruptcy Code, by the Debtors upon the earlier of assumption thereof and the Effective Date,

by payment of the undisputed default amount in Cash or on such other terms as the parties to

such Executory Contract or Unexpired Lease may otherwise agree.  Pursuant to Bankruptcy

Code section 365(k), and notwithstanding anything to the contrary in the Plan, the Debtors shall

have no further liability with respect to any Executory Contract or Unexpired Lease that has been

assumed and assigned under this Plan following payment of the requisite cure costs for such

Executory Contract or Unexpired Lease.   Resolution of any outstanding dispute as to cure

amount shall be subject to the provisions of Article VI.E of the Plan, provided however, that the

undisputed portion of such cure amount shall be paid upon the earlier of assumption thereof and

the Effective Date.  The Debtors may serve a notice on parties to Executory Contracts and

Unexpired Leases to be assumed reflecting the Debtors' intention to assume the Executory

Contract or Unexpired Lease in connection with the Plan and setting forth the proposed cure (if

any).  If a counterparty to any Executory Contract or Unexpired Lease that the Debtors intend to assume does not receive such a notice, the proposed cure for such Executory Contract or Unexpired Lease shall be deemed to be zero dollars ($0), provided however, that this additional notice shall not modify or limit in any way any objection previously raised by a counterparty to any such Executory Contract or Unexpired Lease.

33.    Notwithstanding anything to the contrary in the Plan, with respect to any assumed Unexpired Lease of non-residential real property, the Debtors (or, if after the Effective Date, the applicable Reorganized Debtor or RT Asset Company or, solely in the case of any Unexpired Lease that relates to the RT Lodge and has been assumed by Reorganized RTI, Reorganized RTI) shall remain liable for all obligations arising under the Unexpired Lease that were not otherwise required to be asserted as a cure cost, including:  (a) for amounts owed or accruing under such Unexpired Lease that are unbilled or not yet due as of the Cure Objection Deadline regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, and similar charges; (b) any regular or periodic adjustment or reconciliation of charges under such Unexpired Lease that are not due or have not been determined as of the Cure Objection Deadline; (c) any percentage rent that comes due under such Unexpired Lease; (d) post-assumption obligations under such Unexpired Lease; and (e) any obligations to indemnify the non-Debtor counterparty under such Unexpired Lease for any claims of third parties pursuant to the terms of the Unexpired Lease, which are not known or liquidated by the time of the Cure Objection Deadline (and therefore not payable as a cure cost pursuant to Bankruptcy Code § 365(b)(1)(A)); provided, however, that any such obligations are subject to any Lease Amendment or other agreement between the applicable Debtor and the non-

54

Debtor party to such Unexpired Lease.  With respect to leases in a shopping center, adequate

assurance of future performance upon assumption and assignment includes adequate assurance

of the obligations enumerated under Bankruptcy Code § 365(b)(3).  Other than with respect to

cure amounts fixed in connection with the Plan or by agreement between the parties, all rights of

the parties to any assumed Unexpired Lease of non-residential real property to dispute amounts

due thereunder are preserved.  Notwithstanding anything to the contrary in the Plan, this

Confirmation Order, or the Amended Cure Notice, in the event an applicable Debtor entered into

any settlement or lease amendment (a "Landlord Agreement") in connection with the assumption

of a lease with a landlord to such lease, the relationship of the applicable Debtor and the

applicable landlord shall be governed and determined by the terms and conditions of the

applicable Landlord Agreement which shall supersede and control any inconsistent terms or

provisions of this Confirmation Order, the Plan, or the Amended Cure Notice.

34.    Nothing in the Plan or the Confirmation Order shall modify the rights, if

any, of landlords with Claims arising under real property leases, including for damage to the

leased premises or personal injuries lawsuits, to seek payment from non-debtor third party

guarantors, insurance companies or the proceeds of insurance policies, if any.

35.    Objections to Assumption, Assignment or Cure of Executory Contracts or

Unexpired Leases.  Any counterparty to an Executory Contract and Unexpired Lease that fails to

object timely to the proposed assumption, assignment or cure amount shall be deemed to have

consented to such assumption or assumption and assignment, and to such cure, of its Executory

Contract or Unexpired Lease.  This Confirmation Order shall constitute an order of the

Bankruptcy Court approving any proposed assumption or assumption and assignment of

55

Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy

Code as of the Effective Date.  In the event of a dispute regarding assumption, assumption and

assignment, or cure of any Executory Contract or Unexpired Lease, the undisputed portion of

such cure amount shall be paid upon assumption of the Executory Contract or Unexpired Lease

and the disputed portion shall be reserved and paid following the entry of a Final Order or orders

resolving the dispute and approving the cure.  The Debtors reserve the right to reject any

Executory Contract or Unexpired Lease at any time in lieu of assuming or assuming and

assigning it to a successor, provided however, that with respect to unexpired leases of

nonresidential real property, such Unexpired Lease shall be assumed or assumed and assigned or

rejected as of the date of the entry of this Confirmation Order as required by 11 U.S.C. §

365(d)(4), and any ability of the Debtors to modify their decision to assume or reject such

Unexpired Lease shall be limited by Section 365(d)(4) and subject to the consent of the

counterparty to such Unexpired Lease. Should the parties be unable to resolve a dispute

regarding the amount of any payments required to cure a default with respect to an Unexpired

Lease being assumed by the Debtors within thirty (30) days following the Confirmation Date,

such parties may request a hearing before the Bankruptcy Court to resolve such dispute upon

fourteen (14) days' notice.

    36.  <u>Rejection of Executory Contracts or Unexpired Leases</u>.  The Plan

Supplement and the Amended Plan Supplement, and any amendments thereto, constituted

sufficient notice of the rejection of Executory Contracts and Unexpired Leases listed in the

Rejected Executory Contract/Unexpired Lease List, and any amendments thereto.  As set forth in

section VI.C. of the Plan and except as otherwise provided in the Plan or this Confirmation Order

all Executory Contracts and Unexpired Leases identified in the Rejected Executory

Contract/Unexpired Lease List shall be deemed rejected as of the later of: (a) the Effective Date

and (ii) with respect to an Unexpired Lease, the date of unequivocal surrender of the subject

property to the applicable Lease counterparty.  This Confirmation Order shall constitute an order

of the Bankruptcy Court approving the rejections identified in the Rejected Executory

Contract/Unexpired Lease List, and any amendments thereto, and section VI.C. of the Plan

pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

      37.    All Proofs of Claim with respect to Claims arising from the rejection of

Executory Contracts or Unexpired Leases pursuant to the Plan or this Confirmation Order, if any,

must be Filed with the Bankruptcy Court within thirty (30) days after the date of entry of an

order of the Bankruptcy Court (including this Confirmation Order) approving such rejection or

such other date as may be set by such order, provided however, that with respect to claims

arising from the rejection of unexpired leases of nonresidential real property, claims shall be

filed by 30 days after the later of: (i) entry of an order of the Bankruptcy Court (including the

Confirmation Order) approving such rejection, and (ii) the date the Debtors relinquish control of

the Premises to the relevant landlord by notifying the landlord in writing of Debtors' unequivocal

surrender of the Premises and by turning over the keys to the Premises or, where the keys are not

available, advising the landlord in writing that it may rekey the Premises (the "Rejection Claim

Bar Date").  The Debtors shall provide notice of such rejection and specify the appropriate

deadline for the filing of such Proof of Claim.  The deadline for filing a Proof of Claim with

respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases

pursuant to a prior order of the Bankruptcy Court shall be as set forth in such order; *provided,*

DOCS_LA:335333.23

*however,* if such order does not set such a deadline, the deadline shall be the Rejection Claim Bar Date. Each Claim arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

38.    Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors, RT Asset Company, RT Lodge Company, the Estates, and the Debtors, their Estates, the Reorganized Debtors, RT Asset Company and RT Lodge Company, and their respective property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in section X.E.2. of the Plan. If such Claim is untimely Filed, it shall not be Allowed for distribution purposes pursuant to Plan, unless the Claims Objection Bar Date passes without an objection or other proceeding to disallow, or otherwise eliminate or reduce such Claim having been initiated.

39.    Notwithstanding anything to the contrary herein or in the Plan, all rights of the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI, RT Lodge Company and any counterparty to any Executory Contract or Unexpired Lease are reserved in the event that the Debtors, the Reorganized Debtors, RT Asset Company, Reorganized RTI or RT Lodge Company, as applicable, amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease, provided however, that any amendment with respect to

58

the rejection of an unexpired lease of nonresidential real property made after entry of this

Confirmation Order requires the consent of the counterparty to such Unexpired Lease.

40.     Abandoned Property.  The Debtors are authorized but not directed, at any

time on or before the applicable Rejection Date, to remove or abandon any of the Debtors'

personal property that may be located on the Debtors' leased premises that are subject to a

rejected contract or lease.  For the avoidance of doubt, any and all property located on the

Debtors' leased premises on the Rejection Date of the applicable lease of nonresidential real

property shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is,

effective as of the Rejection Date.  Notwithstanding anything herein to the contrary, Landlords

may, without further notice or order of this Bankruptcy Court, utilize and/or dispose of such

property without notice or liability to the Debtors or third parties and, to the extent applicable,

the automatic stay is modified to allow such disposition.

41.     Management Incentive Plan. The terms of the MIP as set forth in section

V.G. of the Plan are approved.  The remaining terms of the MIP shall be determined by the New

Board.

42.     Continuation of Retiree Benefits. The obligations of the Reorganized

Debtors or RT Asset Company, as applicable, with respect to the payment of "retiree benefits"

(as that term is defined in section 1114(a) of the Bankruptcy Code), if any, shall continue for the

duration of the periods the Debtors have obligated themselves to provide such benefits, if any,

subject to any contractual rights to terminate or modify such benefits.

43.     Return of Deposits.  All utilities and other Persons who received a Cash

deposit or other form of "adequate assurance" of performance pursuant to section 366 of the

59

Bankruptcy Code during the Chapter 11 Cases (collectively, the "Deposits"), whether pursuant to the *Final Order (A) Approving Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (B) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, (C) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (D) Granting Related Relief* [Docket No. 540] (the "Utilities Order") or otherwise on a postpetition basis, including, gas, electric, telephone, data, cable, trash, and sewer services, are directed to return such postpetition Deposits to RT Asset Company or, with respect to utility services provided to the RT Lodge, to Reorganized RTI, either by setoff against postpetition indebtedness or by Cash refund, within thirty (30) days following the Effective Date.  Additionally, upon expiration of the 30-day period in the immediately preceding sentence for return of postpetition Deposits (by setoff or Cash payment), the Debtors, Reorganized Debtors, RT Asset Company, Reorganized RTI or RT Lodge Company, as applicable, are hereby authorized to close the Adequate Assurance Account (as defined in the Utilities Order) and utilize such funds in the operation of their businesses thirty (30) days following the Effective Date.

## **Bar Dates, Fees and Expenses**

44.     <u>Administrative Claims Bar Date</u>.  Other than Holders of (a) DIP Facility Claims, (b) Professional Fee Claims, (c) Administrative Expense Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, (d) Administrative Expense Claims of the Prepetition Agent and its professionals, which, to the extent reasonable and documented, are Allowed Administrative Expense Claims, (e) notwithstanding anything to the contrary in the Plan, landlords whose leases have been assumed and/or assigned under the Plan (as such cure

amounts shall be subject to ARTICLE VI.D of the Plan), or (f) Administrative Claims that are

not Disputed and arose in the ordinary course of business and were paid or are to be paid in

accordance with the terms and conditions of the particular transaction giving rise to such

Administrative Expense Claim, Holders of any Administrative Expense Claim must Filed a

request for allowance and payment of such Administrative Expense Claim by no later than the

Administrative Expense Claims Bar Date.

45.     <u>Administrative Expense Claims</u>.  As set forth in Article II.A of the Plan,

on or before the Effective Date, the Debtors shall establish and fund the RT Administrative

Expense Claim Reserve with Cash in an amount equal to the RT Administrative Expense Claim

Reserve Amount.  The Debtors shall satisfy all Allowed Administrative Expense Claims in

accordance with the terms of the Plan.  Notwithstanding anything to the contrary contained

herein or in the Plan, any shortfall in the sufficiency of the RT Administrative Expense Claim

Reserve Amount shall not reduce or alter the treatment of such Allowed Administrative Expense

Claims.

46.     <u>Professional Fee Claims</u>. As set forth in section II.B. of the Plan and

except as otherwise provided in the Plan or this Confirmation Order, on or before the Effective

Date, the Debtors shall establish the RT Professional Fee Claim Reserve and fund the RT

Professional Fee Claim Reserve with Cash in an amount equal to the RT Professional Fee Claim

Reserve Amount.  The Cash transferred to the RT Professional Fee Claim Reserve shall not be

used for any purpose other than to pay Allowed Professional Fee Claims, and no payments on

account of such Claims shall be made from any source other than the RT Professional Fee Claim

Reserve; provided, that RT Asset Company may release funds from the RT Professional Fee

61

Claim Reserve to RT Asset Company, held with respect to each Professional, after payment in full of all amounts Allowed with respect to such Professional's final fee application by a Final Order. Professionals or other Entities asserting Professional Fee Claims for services rendered through the Effective Date must File, within forty-five (45) days after the Effective Date, and serve on RT Asset Company and such other Entities who are designated by the Bankruptcy Rules, this Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; *provided, however,* that the Reorganized Debtors shall pay professionals in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash; *provided, further,* that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

47. <u>Statutory Fees</u>. As set forth in section XIII.B. of the Plan and except as otherwise provided in the Plan or this Confirmation Order, all statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due (without the necessity of the United States Trustee filing a proof of claim or obtaining a Bankruptcy Court order allowing such amounts). All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date. All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

DOCS_LA:335333.23

48.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. As set forth

in section XIII.L. of the Plan and except as otherwise provided in the Plan or this Confirmation

Order, to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer

from a Debtor to a Reorganized Debtor or to any entity pursuant to, in contemplation of, or in

connection with the Plan (including, without limitation, RT Asset Company, Reorganized RTI

and RT Lodge Company) or pursuant to: (a) the issuance, distribution, transfer, or exchange of

any debt, securities, or other interest (including the New Common Shares) in the Debtors, the

Reorganized Debtors, RT Asset Company, Reorganized RTI or RT Lodge Company; (b) the

creation, modification, consolidation, or recording of any mortgage, deed of trust or other

security interest, or the securing of additional indebtedness by such or other means; (c) the

making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or

recording of any deed or other instrument of transfer under, in furtherance of, or in connection

with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer

executed in connection with any transaction arising out of, contemplated by, or in any way

related to the Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment

in the United States, and this Confirmation Order shall direct the appropriate federal, state or

local governmental officials or agents or taxing authority to forgo the collection of any such

Stamp or Similar Tax or governmental assessment and to accept for filing and recordation

instruments or other documents pursuant to such transfers of property without the payment of

any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically

applies, without limitation, to (a) all actions, agreements and documents necessary to evidence

and implement the provisions of and the distributions to be made under the Plan; (b) the issuance

63

of the Exit L/C Facility, Exit Term Loans, the New Common Shares; (c) the maintenance or

creation of security or any Lien as contemplated by the Exit Loan Documents; and (d)

assignments executed in connection with any transaction occurring under the Plan.

### Miscellaneous and Other Provisions

49.    <u>Morrison Restaurants, Inc. Retirement Plan</u>.  Immediately prior to the

Effective Date, RTI shall assume the Morrison Restaurants, Inc. Retirement Plan ("<u>Pension

Plan</u>") and assign the Pension Plan to RT Asset Company, pursuant to section 365 of the

Bankruptcy Code.  In the event of an inconsistency between section 365 of the Bankruptcy Code

and ERISA, ERISA shall control.  As the contributing sponsor of the Pension Plan, RT Asset

Company is required to comply with all applicable statutory provisions of the Employee

Retirement Income Security Act ("<u>ERISA</u>") and the Internal Revenue Code ("<u>IRC</u>"), including,

but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430,

and 29 U.S.C. §§ 1082, 1083; paying the Pension Benefit Guaranty Corporation ("<u>PBGC</u>")

premiums in accordance with 29 U.S.C. §§ 1306, 1307 (including, but not limited to, any unpaid

premiums due before the Pension Plan's assumption by RTI and/or assignment to RT Asset

Company); administering the Pension Plan in accordance with its terms and the provisions of

ERISA and the IRC; and properly amending the Pension Plan to reflect RT Asset Company as

the Pension Plan's new sponsor within meaning of 29 U.S.C. § 1301(a)(13).  Notwithstanding

anything in the Plan or this Confirmation Order to the contrary, none of RTI, Holding,

Reorganized RTI or RT Lodge Company shall have any further liability with respect to the

Pension Plan following the assumption and assignment of the Pension Plan to RT Asset

Company, and the Plan and Confirmation Order shall constitute an injunction against the

64

assertion of any Claims against RTI, Holding, Reorganized RTI or RT Lodge Company arising

out of, relating to or in connection with the Pension Plan on or after the Effective Date

50.     Except as expressly set forth in paragraph 49 of this Confirmation Order,

nothing in the Debtors' bankruptcy proceedings, Confirmation Order, Plan, the Bankruptcy Code

(and § 1141 thereof), or any other document filed in the Debtors' bankruptcy cases shall in any

way be construed to discharge, release, limit, or relieve the Debtors, Reorganized Debtors, or any

other party, in any capacity, from any liability or responsibility, if any, with respect to the

Pension Plan.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing

such liability or responsibility by any of the provisions of the Plan, this Confirmation Order,

Bankruptcy Code, or any other document filed in the Debtors' Chapter 11 Cases. The Debtors

and their successors reserve the right to contest any such asserted liability or responsibility.

51.     Disposition of Comcast Equipment.   Notwithstanding anything to the

contrary in this Confirmation Order or the Plan, any and all facilities, equipment or devices

provided by Comcast Cable Communications Management, LLC and/or its affiliates

(collectively, "**Comcast**") or Comcast's authorized contractors that are used to deliver the

services at the Debtor's premises and locations where Comcast is providing services

(the "**Comcast Equipment**") shall remain property of Comcast; provided, however, that inside

telephone wiring within the Debtors' premises and locations where Comcast is providing

services, whether or not installed by Comcast, shall not be considered Comcast Equipment.  To

the extent that any leases between the Debtors and landlords for locations at which Comcast

provides services or contract(s) between Comcast and the Debtors are rejected or not otherwise

assumed or assumed and assigned under section 365 of the Bankruptcy Code, and

notwithstanding anything to the contrary contained in this Confirmation Order or the Plan, the Debtors shall cooperate with Comcast to allow Comcast to retrieve the Comcast Equipment at such designated time as Comcast and the Debtors may agree, and, promptly upon discontinuing services with Comcast the Debtors shall  use their best efforts to package the Comcast Equipment for shipment as best as reasonably possible, and send the Comcast Equipment to Comcast via UPS using Comcast's shipping instructions to Comcast Business-Customer Returns, 4400 Port Union Rd., Hamilton, OH 45011 or to such other address as provided by Comcast.  Upon shipping Comcast Equipment to Comcast, the Debtors shall provide email notice to Comcast concerning such shipment via email sent to Lynn_vivirito@comcast.com with a copy to Comcast's counsel at summersm@ballardspahr.com, provided, however, that failure to provide such email notification shall not be deemed ineffective return of the Comcast Equipment or a violation of any provision of this Confirmation Order.

52.    <u>Transfer of Liquor Licenses</u>.  To the extent any license or permit necessary for the operation of any of the Retained Locations (including, without limitation, any Liquor Licenses necessary for the purchase or sale of alcohol at any of the Retained Locations) is not immediately assumable or assignable, the Reorganized Debtors, Reorganized RTI or RT Lodge Company, as applicable, shall be permitted to operate the Retained Locations under the Liquor Licenses and other related permits, and shall be permitted to purchase and sell alcohol under such Liquor Licenses and related permits until such time that (i) said Liquor Licenses and permits are transferred to the Reorganized Debtors, Reorganized RTI, RT Lodge Company or any of their respective affiliates, as applicable, or (ii) the Reorganized Debtors, Reorganized

66

RTI, RT Lodge Company or any of their respective affiliates, as applicable, obtain replacement licenses and permits.

53.     Pursuant to this Confirmation Order, the Reorganized Debtors, Reorganized RTI, RT Lodge Company or their respective affiliates, directors and officers, as applicable, shall make reasonable efforts to apply for and obtain any such Liquor License or permit promptly after the Effective Date and, prior to the Effective Date, the Debtors and their directors and officers shall cooperate reasonably in those efforts.  All existing Liquor Licenses or permits shall remain in place for the benefit of the Reorganized Debtors, Reorganized RTI, RT Lodge Company and their respective affiliates, as applicable, until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable Law.  Similarly, liquor licenses held by any of the Debtors prior to the Effective Date associated with any closed store locations shall remain in place for the benefit of the Reorganized Debtors, Reorganized RTI, RT Lodge Company and their respective affiliates, as applicable, until sold, and the Reorganized Debtors, Reorganized RTI, RT Lodge Company and their respective affiliates, as applicable, shall use reasonable efforts to sell such liquor licenses in an expeditious but commercially reasonable manner.

54.     With regard to the purchase and sale of alcohol at the Retained Locations, pursuant to the Plan, the Debtors and all other parties in interest (including without limitation, each governmental and regulatory agency with jurisdiction over the Retained Locations) shall cooperate fully with and support the Reorganized Debtors, Reorganized RTI, RT Lodge Company and their respective affiliates, as applicable, in executing such applications and furnishing such documents as are necessary for the Reorganized Debtors, Reorganized RTI, RT

67

Lodge Company or their respective affiliates, as applicable, to obtain, in its name, a temporary

new alcohol beverage license or transferred Liquor License. Moreover, except for violations of

Law unrelated to the transition of operation of the Retained Locations pursuant to the Plan and

this Order, each of the governmental and regulatory agencies with jurisdiction over the Retained

Locations (including without limitation, law enforcement and regulatory agencies), shall not

interrupt the operations conducted at the Retained Locations, including the purchase and sale of

alcohol by the Reorganized Debtors, Reorganized RTI, RT Lodge Company or their respective

affiliates, as applicable, without first obtaining relief from this Court. The Reorganized Debtors,

Reorganized RTI, RT Lodge Company or their respective affiliates, as applicable, may continue

to operate at the Retained Locations under existing ABC Licenses, state food service licenses,

local occupational licenses, and any other licenses needed to operate at the Retained Locations,

with no interruption of the business conducted at the premises, until the ABC Licenses and other

licenses and permits have been transferred to the Reorganized Debtors, Reorganized RTI, RT

Lodge Company or their respective affiliates, as applicable, or new alcohol  beverage licenses

and other licenses and permits have been issued to the Reorganized Debtors, Reorganized RTI,

RT Lodge Company or their respective affiliates, as applicable.

55.    This Confirmation Order stays, and orders the maintenance of, all licenses

and permits, including Liquor Licenses and other related permits, of the Debtors, and does not in

any way void or cancel same.

56.    To the maximum extent permitted by the Bankruptcy Code, no

Governmental Unit may revoke or suspend any permit or license, including, but not limited to,

Liquor Licenses and other related permits, relating to the operation of the Retained Locations on

account of the filing or pendency of the Debtors' cases or the consummation of the Plan.  This

Court shall retain exclusive jurisdiction over any action to revoke or suspend any permit or

license, including, but not limited to, Liquor Licenses and other related permits, relating to the

operation of the Retained Locations on account of the filing or pendency of the Debtors' cases or

the consummation of the Plan.

57.     The transfer of alcohol inventory, as contemplated under the Plan, shall be

governed by the Transition Agreements and shall occur upon the earliest of (a) where allowed by

applicable Law, the Effective Date; (b) where required by applicable Law, receipt by the

Reorganized Debtors, Reorganized RTI, RT Lodge Company or their respective affiliates, as

applicable, of authorization from the applicable Governmental Unit or (c) receipt by the

Reorganized Debtors, Reorganized RTI, RT Lodge Company or their respective affiliates, as

applicable, of the applicable Liquor License.

58.     <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly, and upon

the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters

arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XII

of the Plan and section 1142 of the Bankruptcy Code.

59.     <u>Modification of Plan</u>.  As set forth in section XIII.C. of the Plan and

except as otherwise provided in the Plan  or this Confirmation Order, effective as of the date

hereof and subject to the limitations and rights contained in the Plan and in the RSA:  (a) the

Debtors reserve the right, with the consent of the Prepetition Agent and the Prepetition Secured

Creditors (which consent shall not be unreasonably withheld or delayed), in consultation with the

Creditors' Committee (provided, however, that the Creditors' Committee shall have consent

69

rights over material modifications to the Plan that directly impact the rights or recoveries of

Holders of General Unsecured Claims) and after notice to the United States Trustee, and in

accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan

after the entry of this Confirmation Order, the Debtors, with the consent of the Prepetition Agent

and the Prepetition Secured Creditors (which consent shall not be unreasonably withheld or

delayed), or the Reorganized Debtors, RT Asset Company, Reorganized RTI and/or RT Lodge

Company, as applicable, may, and after notice and hearing and entry of an order of the

Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the

Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in

such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a

Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as

altered, amended or modified, if the proposed alteration, amendment or modification does not

materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

60.    Failure to Consummate Plan and Substantial Consummation.  If

Consummation of the Plan does not occur, then:  (a) the Plan shall be null and void in all

respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of

Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement

executed pursuant hereto shall be deemed null and void except as may be set forth in a separate

order entered by the Bankruptcy Court; and (c) nothing contained in the Plan or this

Confirmation Order shall:  (i) constitute a waiver or release of any Claims by or against, or any

Equity Interests in, the Debtors or any other Entity; (ii) prejudice in any manner the rights of the

70

Debtors or any other Entity; or (iii) constitute an admission, acknowledgement, offer or

undertaking of any sort by the Debtors or any other Entity.

**Dated: February 17th, 2021**
**Wilmington, Delaware**

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

DOCS_LA:335333.23