UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC, | ) | Case No.: 20-12456 (JTD) |
| | ) | |
| | ) | (Jointly Administered) |
| Reorganized Debtors[1] | ) | |

**Objection Deadline: April 29, 2021 at 4:00 p.m. (ET)**
**Hearing Date: May 18, 2021 at 2:00 p.m. (ET)**

**FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL FOR THE
DEBTORS AND DEBTORS IN POSSESSION FOR THE
PERIOD FROM OCTOBER 7, 2020, THROUGH FEBRUARY 23, 2021**

| | |
|---|---|
| Name of Applicant | Pachulski Stang Ziehl & Jones LLP |
| Authorized to Provide Professional Services to: | Debtors and Debtors in Possession |
| Date of Retention: | October 7, 2020[2] |
| Period for which Compensation and Reimbursement is Sought: | October 7, 2020, through February 23, 2021 |

[1] The Reorganized Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.
[2] Pursuant to an order of the Court entered November 4, 2020.

| | |
|---|---|
| Amount of Fees Sought as Actual, Reasonable and Necessary During the Compensation Period: | $3,400,000.00[3] |
| Amount of Expenses Sought as Actual, Reasonable and Necessary During the Compensation Period: | $115,464.15[4] |
| Total Fees Approved by Interim Order to Date: | $2,197,490.00 |
| Total Expenses Approved by Interim Order to Date: | $105,741.22 |
| Total Allowed Fees Paid to Date: | $2,197,490.00 |
| Total Allowed Expenses Paid to Date: | $105,741.22 |
| Fees Sought in this Application Already Paid Pursuant to a Monthly Compensation Order but not yet Allowed: | $0.00 |
| Expenses Sought in this Application Already Paid Pursuant to a Monthly Compensation Order but not yet Allowed: | $0.00 |
| Number of Professionals Included in this Application: | 29 |
| If Applicable, Number of Professionals in this Application not Included in Staffing Plan Approved by Client: | N/A |
| If Applicable, Difference Between Fees Budgeted and Compensation Sought for this Period: | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During this Period: | 11 |
| Rates are Higher than those Approved or Disclosed at Retention?  Yes___  No X  If yes, Total Compensation Sought Using Rates Disclosed in Retention Application : | |

This is an:  ☐ monthly  ☐ interim  ☒ final application.

---

[3] For the Compensation Period, the Firm's actual fees totaled $3,467,056.  The Firm previously agreed to a courtesy discount of the lesser of (a) $150,000 and (b) the difference between the Firm's total fees and $3,400,000. Accordingly, the Firm has reduced its fee request to $3,400,000 herein.

[4] Reproduction expenses for the First Quarterly Fee Application were erroneously billed at $0.20 per page, instead of at $0.10 per page, resulting in a reduction of $83.10 in total expenses requested.

2

**PRIOR APPLICATIONS FILED**

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| First Quarterly Application | October 7, 2020 – December 31, 2020 - | $2,197,490.00 | $105,741.22 | $2,197,490.00 | $105,741.22 |

**PSZ&J PROFESSIONALS**

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Richard M. Pachulski | Partner 1983; Member of CA Bar since 1979 | $1,445.00 | 278.30 | $402,143.50 |
| Iain A. W. Nasatir | Partner 1998; Member of CA Bar since 1990; Member of NY Bar since 1983 | $1,145.00 | 13.90 | $15,915.50 |
| Alan J. Kornfeld | Partner 1996; Member of CA Bar since 1987; Member of DEC bar since 2002; Member of New York Bar since 2004 | $1,145.00 | 36.90 | $42,250.50 |
| Gruber, Richard J. | Of Counsel 1982; Member of CA Bar since 1982 | $1,125.00 | 16.90 | $19,012.50 |
| Stanley E. Goldich | Partner 1988; Member of CA Bar since 1980 | $1,025.00 | 108.70 | $111,417.50 |
| Mary F. Caloway | Of Counsel 2020; Member of DE Bar since 1992 | $995.00 | 0.80 | $796.00 |
| Maxim B. Litvak | Partner 2004; Member of TX Bar since 1997; Member of CA Bar since 2001 | $950.00 | 83.90 | $79,705.00 |
| James E. O'Neill | Partner 2005; Member of DE Bar since 2001; Member of PA Bar since 1985 | $925.00 | 597.40 | $552,595.00 |
| Victoria A. Newmark | Of Counsel 2008; Member of CA Bar since 1996 | $925.00 | 184.10 | $170,292.50 |

3

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Jeffrey W. Dulberg | Partner 2004; Member of CA Bar since 1995 | $895.00 | 350.30 | $313,518.50 |
| Malhar S. Pagay | Partner 2003, 2020; Of Counsel 2013; Member of CA Bar since 1997 | $875.00 | 1,186.90 | $1,038,537.50 |
| Robert M. Saunders | Of Counsel 2001; Member of NY Bar since 1984; Member of FL Bar since 1995; Member of CA Bar since 2003 | $825.00 | 350.60 | $289,245.00 |
| Gillian N. Brown | Of Counsel 2016; Member of California Bar since 1999; Member of DC Bar since 2008; Member of New York Bar since 2010; Member of Texas Bar since 2018 | $795.00 | 16.30 | $12,958.50 |
| Peter J. Keane | Of Counsel 2018; Member of DE Bar since 2010 | $750.00 | 1.50 | $1,125.00 |
| Tavi C. Flanagan | Of Counsel 2018; Member of CA Bar since 1993 | $725.00 | 197.00 | $142,825.00 |
| Leslie A. Forrester | Law Library Director 2003 | $450.00 | 42.30 | $19,035.00 |
| Beth D. Dassa | Paralegal 2007 | $425.00 | 377.80 | $160,565.00 |
| Patricia J. Jeffries | Paralegal 1999 | $425.00 | 2.20 | $935.00 |
| Elizabeth C. Thomas | Paralegal 2016 | $425.00 | 105.70 | $44,922.50 |
| Karina K. Yee | Paralegal 2000 | $425.00 | 5.30 | $2,252.50 |
| Patricia Cuniff | Paralegal 2000 | $425.00 | 10.00 | $4,250.00 |
| Cheryl A. Knotts | Paralegal 2000 | $395.00 | 7.80 | $3,081.00 |
| Melisa DesJardien | Case Management Assistant 2020 | $395.00 | 0.30 | $118.50 |
| Myra Kulick | Case Management Assistant 2020 | $395.00 | 25.70 | $10,151.50 |
| Andrea R. Paul | Case Management Assistant | $375.00 | 0.30 | $112.50 |
| Sheryle L. Pitman | Case Management Assistant 2001 | $350.00 | 2.00 | $700.00 |
| Charles J. Bouzoukis | Case Management Assistant 2001 | $350.00 | 36.30 | $12,705.00 |
| Karen S. Neil | Case Management | $350.00 | 32.20 | $11,270.00 |

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| | Assistant 2003 | | | |
| Beatrice M. Koveleski | Case Management Assistant 2009 | $350.00 | 13.20 | $4,620.00 |

**Grand Total (prior to discount):** **$3,467,056.00**
**Total Hours:** **4,084.60**
**Blended Hourly Rate:** **$848.81**

5

## COMPENSATION BY CATEGORY

| Project Categories | Total Hours | Total Fees |
|---|---|---|
| Asset Analysis/Recovery | 221.00 | $206,891.50 |
| Asset Disposition | 262.90 | $236,226.00 |
| Bankruptcy Litigation | 699.60 | $609,349.00 |
| Case Administration | 390.20 | $288,681.00 |
| Claims Admin/Objections | 142.70 | $108,573.50 |
| Compensation of Professionals | 42.80 | $22,733.00 |
| Compensation of Professionals/Other | 74.00 | $43,251.50 |
| Employee Benefit/Pension | 168.80 | $142,234.50 |
| Executory Contracts | 380.70 | $340,740.00 |
| Financial Filings | 78.40 | $53,231.00 |
| Financing | 186.20 | $176,704.00 |
| First Day | 66.90 | $55,662.50 |
| General Creditors Committee | 22.80 | $25,037.00 |
| Hearing | 40.80 | $22,137.50 |
| Insurance Coverage | 7.30 | $8,358.50 |
| Litigation/Non-Bankruptcy | 5.90 | $5,066.50 |
| Meeting of Creditors | 12.00 | $10,915.00 |
| Plan & Disclosure Statement | 965.40 | $861,100.00 |
| Operations | 7.90 | $7,845.50 |
| Retention of Professionals | 5.70 | $3,952.50 |
| Retention of Professionals/Other | 167.30 | $122,805.50 |
| Stay Litigation | 57.70 | $46,089.50 |
| Tax Issues | 45.20 | $39,123.00 |
| Utilities | 32.40 | $30,348.00 |
| **Total** | **4,084.60** | **$3,467,056.00** |
| **Less Courtesy Discount[5]** | | **($67,056.00)** |
| **Grand Total** | | **$3,400,000.00** |

[5] For the Compensation Period, the Firm's actual fees totaled $3,467,056. The Firm previously agreed to a courtesy discount of the lesser of (a) $150,000 and (b) the difference between the Firm's total fees and $3,400,000. Accordingly, the Firm has reduced its fee request to $3,400,000 herein.

DOCS_LA:336890.4 76136/003

## EXPENSE SUMMARY

| Expense Category | Total Expenses |
|---|---|
| Bloomberg (Online Research) | $3,772.59 |
| Conference Call | $6,624.93 |
| Delivery/ Courier Service | $21.50 |
| Federal Express | $16.42 |
| Filing Fee | $89,955.00 |
| Lexis/Nexis Legal Research | $4,486.66 |
| Pacer – Court research | $3,018.90 |
| Reproduction Expense | $557.10[6] |
| Reproduction/ Scan Copy | $4,250.20 |
| Transcript | $2,843.95 |
| **Sub-Total** | **$115,547.25** |
| **Less Write-Offs** | **($83.10)** |
| **Grand Total** | **$115,464.15** |

---

[6] Reproduction expenses for the First Quarterly Fee Application were erroneously billed at $0.20 per page, instead of at $0.10 per page, resulting in a reduction of $83.10 in total expenses requested.

DOCS_LA:336890.4 76136/003

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RTI HOLDING COMPANY, LLC, | ) Case No.: 20-12456 (JTD)) |
| | ) |
| Reorganized Debtors[1] | ) (Jointly Administered) |
| | ) |
| | ) **Objection Deadline: April 29, 2021 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: May 18, 2021 at 2:00 p.m. (ET)** |

**FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF
EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL FOR THE
DEBTORS AND DEBTORS IN POSSESSION FOR THE
<u>PERIOD FROM OCTOBER 7, 2020, THROUGH FEBRUARY 23, 2021</u>**

Pursuant to sections 330 and 331 of Title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (collectively, the

"<u>Bankruptcy Rules</u>"), and the Court's *Order Establishing Procedures for Interim Compensation

and Reimbursement of Expenses of Professionals*, signed on or about March 24, 2016 (the

"<u>Administrative Order</u>"), Pachulski Stang Ziehl & Jones LLP ("<u>PSZ&J</u>" or the "<u>Firm</u>"), counsel

---

[1] The Reorganized Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

for the debtors in the bankruptcy cases of the above-captioned debtors (the "Debtors"), hereby submits its *Final Application for Compensation and for Reimbursement of Expenses for the Period from October 7, 2020 through February 23, 2021* (the "Final Application").

By this Final Application, PSZ&J seeks a final allowance of fees in the amount of $3,400,000.00[2] as compensation for necessary professional services rendered, and actual and necessary expenses in the amount of $115,464.15 for a total of $3,515,464.15 and payment of the unpaid amount of such fees and expenses for the period October 7, 2020, through February 23, 2021 (the "Compensation Period").  In support of this Final Application, PSZ&J respectfully represents as follows:

## Background

1.      On October 7, 2020, the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing these cases.  Throughout the pendency of their cases until the time their plan became effective, the Debtors continued in possession of their property and operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner was appointed in the Debtors' chapter 11 cases.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[2]  For the Compensation Period, the Firm's actual fees totaled $3,467,056.  The Firm previously agreed to a courtesy discount of the lesser of (a) $150,000 and (b) the difference between the Firm's total fees and $3,400,000. Accordingly, the Firm has reduced its fee request to $3,400,000 herein.

2

3.      On or about November 10, 2020, the Court signed the Administrative
Order, authorizing certain professionals ("Professionals") to submit monthly applications for
interim compensation and reimbursement for expenses, pursuant to the procedures specified
therein.  The Administrative Order provides, among other things, that a Professional may submit
monthly fee applications.  If no objections are made within twenty (20) days after service of the
monthly fee application the Debtors are authorized to pay the Professional eighty percent (80%)
of the requested fees and one hundred percent (100%) of the requested expenses.  Beginning
with the period ending on December 31, 2020, and at three-month intervals thereafter, each of
the Professionals shall file and serve an interim fee application for compensation and
reimbursement of expenses sought in its monthly fee applications for that period.  All fees and
expenses paid are on an interim basis until final allowance by the Court.  PSZ&J was one of the
Professionals that participated in the monthly and interim fee application processes.

4.      Attorneys retained pursuant to sections 327 or 1103 of the Bankruptcy
Code must comply with certain requirements of the United States Trustee's Guidelines for
Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11
U.S.C. §330 by Attorneys in Larger Chapter 11 Cases (the "Revised UST Guidelines").  The
Office of the United States Trustee has promulgated forms to aid in compliance with the Revised
UST Guidelines.  Charts and tables based on such forms are attached hereto as exhibits and filled
out with data to the extent relevant to these cases:  Exhibit "A", Customary and Comparable
Compensation Disclosures with Fee Applications; Exhibit "B", Summary of Timekeepers
Included in this Fee Application, Exhibit "C-1", Budget; Exhibit "C-2", Staffing Plan;

3

Exhibit "D-1", Summary of Compensation Requested by Project Category; Exhibit "D-2", Summary of Expense Reimbursement Requested by Category; and Exhibit "E", Summary Cover Sheet of Fee Application.

5.    The retention of PSZ&J, as counsel for the Debtors, was approved effective as of October 7, 2020, by this Court's *Order Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 Authorizing the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date*, signed on or about November 4, 2020 [Docket No. 277] (the "Retention Order").  The Retention Order authorized PSZJ to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

## PSZ&J's APPLICATION FOR COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES

### Compensation Paid and Its Source

1.    PSZJ's prior monthly fee applications (the "Monthly Fee Applications") covering the period October 7, 2020, through December 31, 2020, have been filed and served pursuant to the Administrative Order.

2.    On February 17, 2021, PSZ&J filed its *First Quarterly Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel for the Debtors and Debtors in Possession, for the Period from October 7, 2020 Through December 31, 2020* [Docket No. 1145] (the "First Quarterly Fee Application"), requesting interim approval of $2,197,490.00 in fees and $105,741.22 in expenses.  The First

4

Quarterly Fee Application was approved by order entered March 18, 2021 [Docket No. 1203].

PSZ&J has received payment of 100% of the fees and 100% of the expenses incurred on account

of the First Quarterly Fee Application.

**Fee Application for Stub Period of**
**January 1, 2021, to February 23, 2021**

3.     The monthly invoices for the period from January 1, 2021, through

February 23, 2021 (the "Stub Period"), are attached hereto as Exhibit "F" and Exhibit "G",

respectively.  These statements contain the daily time logs describing the time spent by each

attorney and paraprofessional during the Stub Period.  To the best of PSZ&J's knowledge, this

Final Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy

Rules and the Compensation Procedures Order.  PSZ&J's time reports are initially handwritten

or typewritten by the attorney or paralegal performing the described services.  The time reports

are organized on a daily basis.  PSZ&J is particularly sensitive to issues of "lumping" and, unless

time was spent in one time frame on a variety of different matters for a particular client, separate

time entries are set forth in the time reports.  PSZ&J's charges for its professional services are

based upon the time, nature, extent and value of such services and the cost of comparable

services other than in a case under the Bankruptcy Code.  PSZ&J has reduced its charges related

to any non-working travel time to fifty percent (50%) of PSZ&J's standard hourly rate.  To the

extent it is feasible, PSZ&J professionals attempt to work during travel.

4.     The actual and necessary expenses incurred by PSZ&J for the Stub Period

are attached hereto as part of Exhibit "F" and Exhibit "G".  PSZ&J customarily charges $0.10

per page for photocopying expenses related to cases arising in Delaware, such as the Debtors'

5

cases.  PSZ&J's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier.  PSZ&J summarizes each client's photocopying charges on a daily basis.

5.      PSZ&J charges $0.25 per page for out-going facsimile transmissions. There is no additional charge for long distance telephone calls on faxes.  The charge for outgoing facsimile transmissions reflects PSZ&J's calculation of the actual costs incurred by PSZ&J for the machines, supplies and extra labor expenses associated with sending telecopies and is reasonable in relation to the amount charged by outside vendors who provide similar services. PSZ&J does not charge the Debtors for the receipt of faxes.

6.      With respect to providers of on-line legal research services (e.g., LEXIS and WESTLAW), PSZ&J charges the standard usage rates these providers charge for computerized legal research.  PSZ&J bills its clients the actual amounts charged by such services, with no premium.  Any volume discount received by PSZ&J is passed on to the client.

7.      PSZ&J believes the foregoing rates are the market rates that the majority of law firms charge clients for such services.  In addition, PSZ&J believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

**Summary of Services Rendered for Stub**
**Period of January 1, 2021, to February 23, 2021**

8.      The names of the timekeepers of PSZ&J who have rendered professional services in this case during the Stub Period are set forth in the attached Exhibit "F" and Exhibit

6

"G".  PSZ&J, by and through such persons, has prepared and assisted in the preparation of

various motions and orders submitted to the Court for consideration, advised the Debtors on a

regular basis with respect to various matters in connection with the Debtors' bankruptcy cases,

and performed all necessary professional services which are described and narrated in detail

below.  PSZ&J's efforts have been extensive due to the size and complexity of the Debtors'

bankruptcy cases.

**<u>Summary of Services by Project</u>**

9.      The services rendered by PSZ&J during the Stub Period can be grouped

into the categories set forth below.  PSZ&J attempted to place the services provided in the

category that best relates to such services.  However, because certain services may relate to one

or more categories, services pertaining to one category may in fact be included in another

category.  These services performed, by categories, are generally described below, with a more

detailed identification of the actual services provided set forth on the attached Exhibits "F" and

"G".  Exhibits "F" and "G" "identify the attorneys and paraprofessionals who rendered services

relating to each category, along with the number of hours billed by each individual and the total

compensation sought for each category.

**A.      Asset Analysis**

10.     This category includes work related to analysis and recovery of the

Debtors' assets.  During the Stub Period, the Firm, among other things:  (a) analyzed the estates'

Visa/MasterCard interchange claims and their potential disposition; (b) conferred among

members of the Firm regarding bond recovery issues; (c) conferred with Regions Bank regarding

7

accounting of trust assets and proceeds relating to a rabbi trust of which the bank is trustee, and (d) performed legal research regarding appeal bonds.

Fees:  $3,235.00          Hours:  5.30

**B.    Asset Disposition**

11.    This category includes work relating to the disposition of the Debtors' assets.  During the Stub Period, the Firm, among other activities: (a) researched credit bidding; (b) worked on *de minimis* asset sales, including the sale of liquor licenses, and prepared pleadings regarding the same; (c) searched for potential buyers for the interchange claim and worked on a draft form claim purchase agreement regarding the same; (d) worked on the sale of the company's Maryville, Tennessee, headquarters and related assets; (e) worked on the sale of the company's Valrico, Florida, property and prepared pleadings regarding the same; (f) prepared a broker application; (g) addressed issues relating to the disposition of the Lodge property; (h) conferred with client regarding a related-party interim management agreement; (i) provided a sale status update for the company's independent directors; (j) analyzed bids and addressed same with client, Board, CR3, and the Committee; (k) prepared a form asset purchase agreement; (l) researched the standing of an unsuccessful bidder; and (m) conferred with the Committee and Aziz Hashim regarding NRD and liquor license issues.

Fees:  $81,279.00          Hours:  90.80

**C.    Bankruptcy Litigation**

12.    This category includes the Firm's work during the Stub Period related to contested matters and adversary proceedings pending in the Bankruptcy Court, including: (a)

8

addressing third-party due diligence issues; (b) reviewing director and officer issues; (c) reviewing various landlord motions and working on oppositions to compel compliance under section 365(d)(3) of the Bankruptcy Code; (d) working on responses to discovery propounded by the Committee and lenders; (e) working on abatement litigation issues and objections regarding the same, preparing for and attending hearings and preparing status reports regarding the same; (f) reviewing oppositions to summary judgment motions and preparing replies regarding the same (relating to abatement litigation defendants Evergreen, Moody National Ruby T, Weis Markets, and 434 King Street), and preparing for hearings thereon; (g) drafting lease amendments; (h) reviewing and working on BNA discovery issues and attending a hearing re BNA's discovery requests regarding the Lodge property; and (i) preparing a motion for protective order regarding BNA's discovery efforts.

Fees:  $133,147.00          Hours:  161.60

**D.    Case Administration**

13.    This category includes work related to administering the cases in an efficient manner.  During the Stub Period, the Firm, among other things:  (a) prepared and distributed a daily memo narrative; (b) maintained service lists; (c) maintained document control; (d) maintained a memorandum of critical dates; (e) corresponded and conferred regarding case administration issues and work in process; (f)  participated on team calls and weekly strategy calls; (g) responded to creditor inquiries; (h) participated on weekly board calls and provided updates to Board; and (i) reviewed hearing agendas.

Fees:  $93,468.00          Hours:  126.00

9

E.      **Claims Administration and Objections**

14.      This category includes work related to claims administration and claims objections.  During the Stub Period, the Firm, among other activities:  (a) prepared objections to four shareholder dissenter claims, drafted notices, and conferred with dissenters' counsel regarding the same; (b) reviewed PACA creditors' claims regarding attorneys' fees; (c) reviewed a stipulation regarding a dissenter claim; (d) reviewed filed administrative claims; (e) conferred regarding the claim filed by Powell Anderson; (f) conferred with counsel to the Ad Hoc Committee of Plan Participants regarding fee reimbursement pursuant to a settlement; and (g) reviewed claim and worked on a stipulation to permit a claimant to file a late claim.

Fees:  $56,058.00          Hours:  74.10

F.      **Compensation of Professionals**

15.      This category includes work related to the compensation of the Firm's professionals.  The Firm prepared its monthly fee statement for December 2020 and its first quarterly fee application.

Fees:  $11,250.00          Hours:  20.80

G.      **Compensation of Professionals/Others**

16.      This category includes work during the Stub Period related to the compensation of professionals, other than the Firm.  The Firm, among other actions, (a) worked on a reconciliation of professionals fees and addressed the management of the fee escrow account and budget issues; (b) reviewed and revised Baker Donelson's first and second monthly fee statements and quarterly fee application; (c) prepared the order regarding first quarterly fees

10

of professionals and attended to payments regarding the same; (d) reviewed and revised monthly

fee statements of estate professionals Epiq, CR3, and Cheng Cohen; (e) reviewed and addressed

payment of Hilco's fees; (f) addressed Crowe's quarterly and monthly fee applications; (g)

addressed FocalPoint's fees; (h) assisted with Johnson & Associates' first and final fee

application; (i) assisted with Cheng Cohen's, Epiq's, FocalPoint's and CR3's first quarterly fee

applications; (j) assisted with final fee applications of Johnson & Associates and Epiq; and (k)

prepared multiple notices of fee applications.

Fees:  $21,692.00          Hours:  37.80

## H.      Employee Benefits and Pensions

17.     This category includes work related to employee benefits and pension

plans, and other employee issues.  During the Stub Period, the Firm, among other things:

(a) analyzed issues regarding claims of Plan Participants; (b) reviewed objections to the debtors'

KEIP/KERP motion and conferred and prepared a reply regarding the same, prepared omnibus

hearing notice, attended the hearing thereon, and prepared the order regarding the same; (c)

conferred with the Committee, CR3 and TCW regarding the debtors' qualified benefit plan; and

(d) conferred with the debtors regarding PBGC information requests.

Fees:  $46,772.00;          Hours:  58.10

## I.      Executory Contracts

18.     This category includes work related to executory contracts and unexpired

leases of real property.  Given the number of leases to which the Debtors were a party, the Firm

and other estate professionals spent a significant amount of time working on matters in this

11

category.  The Firm:  (a) prepared a motion to extend time to assume/reject leases, client proffers in support of the motion, a motion to shorten time, notice, order, and attended the hearing thereon; (b) prepared a stipulation and order regarding leases with the STORE landlord group, and conferred with the Debtors regarding the same; (c) responded to landlord inquiries; (d) reviewed a master lease amendment with the NNN landlord group and addressed dispute resolution regarding the same; (e) worked on response to Kalliopi's objection to the Debtors' rejection of a recapture right, prepared for and attended hearing, and conferred with client regarding the same; (f) reviewed, analyzed and responded to cure objections/claims and worked on resolutions regarding the same, conferred with client and prepared the cure notice regarding the same; (g) addressed resolution of lease disputes (STORE, Moody, Gloucester, Canal Street Properties, etc.) and conferred with client regarding the same; (h) reviewed and revised Canal St Properties lease amendment; (i) worked on assumption/assignment settlements; (j) drafted a consent order regarding landlord 434 King Street's motion to compel; (k) reviewed and revised an order regarding landlord Yu-Ching Hsu's motion to compel payment of administrative expense; and (l) attended to landlord defendant 434 King Street and Moody abatement litigation dismissals and Gloucester and other landlord resolutions.

Fees:  $135,461.50;          Hours:  161.30

**J.     Financing**

19.     This category includes work related to debtor in possession ("DIP") financing and use of cash collateral.  During the Stub Period, the Firm, among other activities: (a) worked on a stipulation, order and related pleadings regarding International Fidelity

12

Insurance Company ("IFIC"), and conferred with IFIC counsel, CR3, and the U.S. Trustee regarding the same; (b) addressed issues regarding Liberty/Safeco and conferred with Liberty's counsel regarding the same; (c) worked on an amended DIP order and emailed lender counsel and the U.S. Trustee regarding the same; (d) conferred regarding lender professionals fees; and (e) reviewed the professional fee budget with the client.

Fees:  $16,324.50;          Hours:  21.10

**K.      Financial Filings**

> 20.      Time spent in this category was minimal and included reviewing information regarding a scheduled creditor (Trapzap), addressing US Trustee quarterly fees, reviewing and filing a monthly operating report and reviewing an invoice presented for payment.

Fees:  $540.00;          Hours:  0.80

**L.      General Creditors Committee**

> 21.      Time spent in this category was minimal and included reviewing issues regarding sale and marketing efforts and conferring with the Committee regarding a case update.

Fees:  $716.00;          Hours:  0.80

**M.      Hearing**

> 22.      This category includes work related to preparing for and attending hearings.  During the Stub Period, the Firm, among other things, prepared for and attended various hearings, prepared hearing agendas and prepared hearing binders.

Fees:  $7,445.00;          Hours:  16.20

13

**N.    Insurance Coverage**

23.    This category includes work related to insurance issues.  During the Stub Period, the Firm analyzed insurance policies and reviewed the Plan regarding assumption of the same, reviewed AIG surety bond language and addressed other insurance-related matters.

Fees:  $8,358.50;                  Hours:  7.30

**O.    Litigation/Non-Bankruptcy**

24.    This category includes work related to non-bankruptcy litigation.  During the Stub Period, Firm professionals:  (a) worked on the motion to extend the removal period; (b) addressed issues regarding dissenter litigation; and (c) responded to emails regarding a Virginia litigation matter and appeal bond.

Fees:  $5,066.50;                  Hours:  5.90

**P.    Operations**

25.    Time spent in this category was minimal and included responding to utility issues and reviewing and responding to emails regarding Liberty insurance.

Fees:  $268.50;                  Hours:  0.30

**Q.    Plan and Disclosure Statement**

26.    This category includes work related to the Plan of Reorganization and Disclosure Statement.  During the Stub Period, the Firm, among other things:  (a) worked on the solicitation procedures motion and addressed balloting and voting issues; (b) worked on the amended Disclosure Statement and Second Amended Plan; (c) reviewed and analyzed Plan issues, including ERISA plan termination issues, and conferred with the Debtors regarding the

14

same; (d) reviewed and revised the Exit Facility Credit and Guaranty Agreement and conferred with the Committee regarding the same; (e) worked on a revised Plan Settlement Term Sheet and conferred with the Debtors, TCW and the Committee regarding the same; (f) reviewed NRD and other related Plan confirmation issues, including NRD releases; (g) worked on Plan confirmation brief and declarations and addressed issues regarding sale; (h) worked on Plan supplement, exhibits, and amendments to Plan supplement and conferred with the Debtors and the Committee regarding the same; (i) worked on global settlement and addressed issues regarding a potential violation of the Restructuring Support Agreement, and conferred with the Debtors, the Committee, and Board regarding settlement; (j) reviewed and addressed exclusivity issues; (k) reviewed and addressed objections to Plan confirmation and prepared replies thereto; (l) reviewed exculpation materials; (m) addressed the impact of the withdrawal of the NRD bid and conferred with the Committee regarding the same; (n) responded to creditor inquiries regarding the Plan; (o) conferred regarding PBGC language requested for inclusion in the Plan and confirmation order; (p) analyzed a ghost kitchen claim and revenue issue; (q) prepared the Plan confirmation order; (r) participated on client strategy and Board calls and lender/Committee settlement calls; (s) addressed objections regarding BNA and the Lodge; (t) conferred with Cheng Cohen regarding a Plan transactions closing checklist; (u) reviewed and addressed cure objections and conferred with the Debtors and their financial advisors regarding the same; (v) prepared a motion for protective order and/or to quash BNA discovery, declarations, order, and confidentiality agreement, and addressed discovery dispute; (w) addressed continuance of Plan confirmation hearing; (x) conferred with the US Trustee regarding Plan confirmation; (y)

conferred with landlord's counsel; (z) reviewed and responded to emails regarding Franklin

Junction and feasibility issues; (aa)  addressed surety bond issues/policies; (bb) drafted a motion

to extend exclusivity and solicitation periods; (cc) participated on Board calls regarding Plan and

lease issues; (dd) addressed liquor license transfer issues; (ee) prepared for and attended the Plan

confirmation hearing; (ff) worked on transition issues following Plan confirmation; (gg)

reviewed and worked to implement Plan Effective Date requirements; and (hh) reviewed

documents needed for the final version of the Plan.

Fees:  $552,856.00;          Hours:  631.30

**R.    Retention of Professionals/Others**

27.    This category includes work related to the retention of professionals, other

than the Firm.  During the Stub Period, the Firm (a) prepared a broker retention application

regarding the sale of property in Valrico, Florida; (b) prepared notices of second and third

amended lists of ordinary course professionals and reviewed declarations regarding the same; (c)

conferred regarding retention of a restaurant consultant; and (d) addressed Crowe retention issues

raised by the US Trustee and revised supplemental declaration and retention order regarding the

same.

Fees:  $12,151.50;          Hours:  18.50

**S.    Stay Litigation**

28.    This category includes work related to the disposition of motions for relief

from stay filed by litigants, landlords and other parties.   During the Stub Period, the Firm,

among other things: (a) worked on the stipulation with IFIC to amend financing order; (b)

16

prepared oppositions to motions for relief from stay, filed by Berman, Marchand and Millman and addressed issues related to Marchand stay relief order; (c) reviewed and addressed issues regarding Yu-Ching Hsu, Quadre and Mastrioianni motions for relief from stay; and (d) prepared an objection to Adams Family motion to abandon appeal bond and relief from stay.

Fees:  $22,227.00;           Hours:  26.80

**Valuation of Services**

29.    Attorneys and paraprofessionals of PSZ&J expended a total of 1,464.80 hours in connection with the representation of the Debtors during the Stub Period, as follows:

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Richard M. Pachulski | Partner 1983; Member of CA Bar since 1979 | $1,445.00 | 77.50 | $111,987.50 |
| Iain A. W. Nasatir | Partner 1998; Member of CA Bar since 1990; Member of NY Bar since 1983 | $1,145.00 | 13.90 | $15,915.50 |
| Alan J. Kornfeld | Partner 1996; Member of CA Bar since 1987; Member of DEC bar since 2002; Member of New York Bar since 2004 | $1,145.00 | 9.50 | $10,877.50 |
| Gruber, Richard J. | Of Counsel 1982; Member of CA Bar since 1982 | $1,125.00 | 5.90 | $6,637.50 |
| James E. O'Neill | Partner 2005; Member of DE Bar since 2001; Member of PA Bar since 1985 | $925.00 | 222.10 | $205,442.50 |
| Victoria A. Newmark | Of Counsel 2008; Member of CA Bar since 1996 | $925.00 | 29.40 | $27,195.00 |
| Jeffrey W. Dulberg | Partner 2004; Member of CA Bar since 1995 | $895.00 | 113.40 | $101,493.00 |
| Malhar S. Pagay | Partner 2003, 2020; Of Counsel 2013; Member of CA Bar since 1997 | $875.00 | 470.40 | $411,600.00 |

17

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Prior Relevant Experience, Year of Obtaining License to Practice | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Robert M. Saunders | Of Counsel 2001; Member of NY Bar since 1984; Member of FL Bar since 1995; Member of CA Bar since 2003 | $825.00 | 215.10 | $177,457.50 |
| Gillian N. Brown | Of Counsel 2016; Member of California Bar since 1999; Member of DC Bar since 2008; Member of New York Bar since 2010; Member of Texas Bar since 2018 | $795.00 | 13.10 | $10,414.50 |
| Tavi C. Flanagan | Of Counsel 2018; Member of CA Bar since 1993 | $725.00 | 22.40 | $16,240.00 |
| Leslie A. Forrester | Law Library Director 2003 | $450.00 | 32.90 | $14,805.00 |
| Beth D. Dassa | Paralegal 2007 | $425.00 | 136.00 | $57,800.00 |
| Elizabeth C. Thomas | Paralegal 2016 | $425.00 | 38.90 | $16,532.50 |
| Karina K. Yee | Paralegal 2000 | $425.00 | 1.30 | $552.50 |
| Patricia Cuniff | Paralegal 2000 | $425.00 | 0.40 | $170.00 |
| Cheryl A. Knotts | Paralegal 2000 | $395.00 | 2.70 | $1,066.50 |
| Myra Kulick | Case Management Assistant 2020 | $395.00 | 25.70 | $10,151.50 |
| Andrea R. Paul | Case Management Assistant | $375.00 | 0.30 | $112.50 |
| Charles J. Bouzoukis | Case Management Assistant 2001 | $350.00 | 12.60 | $4,410.00 |
| Karen S. Neil | Case Management Assistant 2003 | $350.00 | 16.10 | $5,635.00 |
| Beatrice M. Koveleski | Case Management Assistant 2009 | $350.00 | 5.20 | $1,820.00 |

**Grand Total:** $1,208,316.00
**Total Hours:** 1,464.80
**Blended Rate:** $824.90

30.   The nature of work performed by these persons during the Stub Period is fully set forth in Exhibits "F" and "G" hereto.  These are PSZ&J's normal hourly rates for work of this character.  The reasonable value of the services rendered by PSZ&J for the Debtors during the Stub Period is $1,208,316.00.

31.   Expenses incurred during the Stub Period are listed as follows:

| Expense Category | Service Provider (if applicable)[3] | Total Expenses |
|---|---|---|
| Bloomberg | | $1,756.58 |
| Conference Call | | $511.56 |
| Court Research | Pacer | $1,817.40 |
| Delivery/Courier | | $21.50 |
| Federal Express | | $16.42 |
| Filing Fee | | $2,288.00 |
| Legal Research | Lexis Nexis | $1,267.12 |
| Reproduction Expense | | $122.80 |
| Reproduction/Scan Copy | | $1,044.30 |
| Transcript | | $877.25 |
| **TOTAL** | | **$9,722.93** |

### Requested Relief

32.    By this Application, PSZ&J requests that the Court approve payment of one-hundred percent (100%) of the fees and expenses incurred by PSZ&J during the Compensation Period of October 7, 2020, through February 23, 2021.

33.    All services for which PSZ&J requests compensation were performed for or on behalf of the Debtors.

34.    PSZ&J has received no payment and no promises for payment from any source other than the Debtors for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between PSZ&J and any other person other than the partners of PSZ&J for the sharing of compensation to be received for services rendered in these cases.

35.    The professional services and related expenses for which PSZ&J requests interim allowance of compensation and reimbursement of expenses were rendered and incurred in connection with this case in the discharge of PSZ&J's professional responsibilities as

---

[3] PSZJ may use one or more service providers. The service providers identified herein below are the primary service providers for the categories described.

19

attorneys for the Debtors in these chapter 11 cases.  PSZ&J's services were necessary and

beneficial to the Debtors' estates, creditors and other parties in interest.

36.     In accordance with the factors enumerated in section 330 of the

Bankruptcy Code, it is respectfully submitted that the amount requested by PSZ&J is fair and

reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and

extent of the services rendered, (d) the value of such services, and (e) the costs of comparable

services other than in a case under the Bankruptcy Code.  Moreover, PSZ&J has reviewed the

requirements of Del. Bankr. LR 2016-2 and the Administrative Order and believes that this

Application complies with such Rule and Order.

## **Statement from PSZ&J**

37.     Pursuant to the *Appendix B Guidelines for Reviewing Application for*

*Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in*

*Larger Chapter 11 Cases*, PSZ&J responds to the following questions regarding the Application:

| Question | Yes | No | Additional Explanation or Clarification |
|---|---|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain. | Yes | | The Firm previously agreed to a courtesy discount of the lesser of (a) $150,000 and (b) the difference between the Firm's total fees and $3,400,000. |
| If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? | N/A | | Fees sought are within budget |
| Have any of the professionals included in this fee application varied their hourly rate | | No | |

| Question | Yes | No | Additional Explanation or Clarification |
|---|---|---|---|
| based on the geographic location of the bankruptcy case? | | | |
| Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? | Yes | | Time incurred reviewing and preparing PSZ&J Final Fee Application. |
| Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees. | | No | |
| If the fee application includes any rate increases since retention in these Cases:<br>i.    Did your client review and approve those rate increases in advance?<br>ii.    Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458? | N/A | | |

WHEREFORE, PSZ&J respectfully requests that the Court enter an order, in the form attached hereto, providing that a final allowance be made to PSZ&J for the period from October 7, 2020, through February 23, 2021, in the sum $3,400,000.00,[4] as compensation for necessary professional services rendered, and actual and necessary expenses in the amount of $115,464.15 for a total award of $3,515,464.15; that the Debtors be authorized and directed to

---

[4] For the Compensation Period, the Firm's actual fees totaled $3,467,056. The Firm previously agreed to a courtesy discount of the lesser of (a) $150,000 and (b) the difference between the Firm's total fees and $3,400,000. Accordingly, the Firm has reduced its fee request to $3,400,000 herein.

pay to PSZ&J the outstanding amount of such sums; and for such other and further relief as may

be just and proper.

Dated:  April 9, 2021                            PACHULSKI STANG ZIEHL & JONES LLP

                                                 */s/ James E. O'Neill*
                                                 Richard M. Pachulski (CA Bar No. 90073)
                                                 Malhar S. Pagay (CA Bar No. 189289)
                                                 James E. O'Neill (Bar No. 4042)
                                                 919 North Market Street, 17th Floor
                                                 P.O. Box 8705
                                                 Wilmington, DE  19899-8705 (Courier 19801)
                                                 Telephone:  302-652-4100
                                                 Facsimile:   302-652-4400
                                                 Email:  rpachulski@pszjlaw.com
                                                         mpagay@pszjlaw.com
                                                         joneill@pszjlaw.com

                                                 *Counsel to the Reorganized Debtors*

**<u>VERIFICATION</u>**

STATE OF DELAWARE        :
                                               :
COUNTY OF NEW CASTLE  :

        James E. O'Neill, after being duly sworn according to law, deposes and says:

        a)      I am a partner at the applicant law firm Pachulski Stang Ziehl & Jones LLP, and have been admitted to appear before this Court.

        b)      I am familiar with the work performed on behalf of the Debtors by the lawyers and paraprofessionals of PSZ&J.

        c)      I have reviewed the foregoing Final Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. LR 2016-2 and the Administrative Order signed on or about October 13, 2015, and submit that the Final Application substantially complies with such Rule and Order.

                                 */s/ James E. O'Neill*
                                   James E. O'Neill