# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RTI HOLDING COMPANY, LLC, *et al.*, [1] | Case No.:  20-12456 (JTD) <br> Jointly Administered |
| Debtors. | **Hearing Date:  July 13, 2021 at 10:00 a.m. (ET)** <br> **Obj. Deadline:  July 6, 2021 at 5:00 p.m. (ET)** |

## MOTION OF GOLDMAN SACHS SPECIALITY LENDING GROUP, L.P. TO ENFORCE CONFIRMATION ORDER

Goldman Sachs Specialty Lending Group, L.P. ("GSSLG"), by and through its

undersigned counsel, hereby moves (the "Motion") for entry of an order, substantially in the

form attached hereto as **Exhibit A** (the "Proposed Order"), enforcing the *Findings of Fact,*

*Conclusions of Law, and Order Confirming the Debtors' Second Amended Chapter 11 Plan, as*

*Modified* [Docket No. 1144] (the "Confirmation Order")[2], confirming the *Debtors' Second*

*Amended Chapter 11 Plan, as Modified* [Docket No. 1135] (the "Plan"), against BNA

Associates, LLC ("BNA Associates"), who recently filed a complaint (the "Complaint"),

---

[1]        The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

[2]        Capitalized terms used but not defined in the Motion shall have the meanings ascribed to them in the Confirmation Order.

attached hereto as **Exhibit B**, in the Chancery Court for the Twentieth Judicial District of

Tennessee, Davidson County against GSSLG styled *BNA Assocs., LLC v. Goldman Sachs*

*Specialty Lending Group, L.P.*, Case No. 21-0403-IV (the "Interference Action").[3]  The

Complaint is predicated on allegations that GSSLG "unlawfully interfered with BNA Associates'

contractual and business relationship with Ruby Tuesday" and correspondingly attacks material

aspects of the Plan and the Confirmation Order approved by this Court in the above-captioned

cases (the "Chapter 11 Cases").  Complaint ¶¶ 1, A–F.  In support of the Motion, GSSLG, by and

through its undersigned counsel, respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Complaint is a frontal attack by a disgruntled bidder on the Plan and

this Court's findings of fact and conclusions of law in the Confirmation Order.  On May 4,

2021—two months after entry of the Confirmation Order and the Effective Date of the Plan—

BNA Associates commenced the Interference Action, attacking the assumption of the RT Lodge

Lease and the transfer of interests in RT Lodge Company in partial satisfaction of GSSLG's

prepetition claims.  This assumption was an integral part of the restructuring transactions first

negotiated with the Debtors nearly ten months earlier, as contemplated by the Restructuring

Support Agreement ("RSA"), subjected to an auction process in this Court, described in the

Disclosure Statement that this Court approved on December 21, 2020, and effectuated pursuant

to the Plan that this Court confirmed on February 17, 2021.

2.    Throughout these Chapter 11 Cases, and through multiple court hearings

and orders of this Court, BNA Associates had ample notice and opportunity to litigate its claims,

---

[3]    Immediately prior to filing this Motion, GSSLG filed a notice of removal of the Interference Action to the United States District Court for the Middle District of Tennessee.  GSSLG has yet to be served with the Complaint and files this Motion reserving without waiving any rights and defenses to the Complaint, including, without limitation, for lack of or improper service.

and in fact took steps to do so.  BNA Associates submitted a bid to purchase the RT Lodge, commenced discovery in connection with its bid and filed an objection to confirmation of the Plan [Docket No. 998] (the "<u>BNA Plan Objection</u>").  The Complaint is premised on the same alleged underlying misstatements that BNA Associates asserted in the BNA Plan Objection.

3.    BNA, however, abandoned its attempts to buy the RT Lodge pursuant to this Court's auction process and dropped its challenge in these Chapter 11 Cases to GSSLG's good faith conduct.  BNA Associates cannot now circumvent the Plan or the Confirmation Order by litigating the same issues in another forum; it is bound by this Court's findings in the Confirmation Order that the Plan was "proposed in good faith and not by any means forbidden by law," Confirmation Order ¶ at Q, and that the vesting of RT Lodge in Reorganized RTI was effectuated "free and clear of all Liens, Claims, charges or other encumbrances." *Id.* at 23. Accordingly, and for the reasons set forth herein, the Court should grant this Motion, enforce the Confirmation Order against BNA Associates, require BNA Associates to immediately dismiss the Complaint against GSSLG and award GSSLG the costs it was unnecessarily forced to incur by having to defend against the baseless Complaint and bring this Motion.

## <u>JURISDICTION</u>

4.    This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Indeed, this Court specifically retained jurisdiction in the Confirmation Order to enforce the provisions of the Plan and Confirmation Order.  Confirmation Order ¶ 58.

5.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. GSSLG's Role as Agent and Secured Lender to the Debtors

6.     GSSLG and the Secured Lenders provided the Debtors with a term loan in the principal amount of $115 million and up to $12.5 million of revolving commitments to be used for the issuance of standby letters of credit pursuant to that certain Credit and Guaranty Agreement, dated as of December 21, 2017 (as amended or supplemented, the "Credit and Guaranty Agreement" or the "Prepetition Credit Agreement"), by and among Ruby Tuesday Inc. ("RTI") and certain of its subsidiaries, as borrowers, RTI Holding Company, LLC ("Holding"), as borrower representative, GSSLG, as administrative agent, collateral agent and lender, and the other lenders party thereto from time to time (collectively, the "Secured Lenders").  *Declaration of Shawn Lederman, Chief Executive Officer, In Support of First Day Pleadings* [Docket No. 3] (the "First Day Declaration") at ¶ 20.

7.     Amongst the collateral securing the Prepetition Credit Agreement was the leasehold interest in a restaurant and special event destination named RT Lodge and the surrounding 7.25 acre property at Maryville College in Maryville, Tennessee (the "RT Lodge Lease", and together with related assets, the "RT Lodge").  *Id.* at ¶ 19; *see also* Prepetition Credit Agreement; Complaint at ¶ 25.  The Prepetition Credit Agreement and the related loan documents explicitly provided GSSLG with a consent right over the sale of the RT Lodge Lease. Prepetition Credit Agreement §§ 6.9, 10.5; *see also* Complaint at ¶ 25.

8.     Prior to the Petition Date, the Secured Lenders, including GSSLG, were among the Debtors' most significant creditors and, when the Debtors encountered financial difficulties, extended credit and provided flexibility to help the Debtors execute their business and turn-around plan.  *See* First Day Decl. ¶ 21.

9.     The Debtors' significant financial challenges were exacerbated by the COVID-19 pandemic.  As the pandemic took hold, GSSLG and the Secured Lenders worked closely with the Debtors to help address the numerous outstanding defaults under the Prepetition Credit Agreement.  *Id*. at ¶ 48; *Disclosure Statement for Debtors' Amended Chapter 11 Plan* (the "Amended Disclosure Statement") [Docket No. 762] at 41–42.  By July of 2020, GSSLG and the Secured Lenders had begun to negotiate the terms of a comprehensive, consensual restructuring with the Debtors that would allow the Debtors to continue as a going concern, maintain jobs, improve operations and pay down debt.  These extensive negotiations culminated in the execution of a Restructuring Support Agreement Term Sheet among the Debtors and Secured Lenders ("RSA Term Sheet") on September 22, 2020 and the RSA on October 8, 2020, both of which contemplated a chapter 11 bankruptcy filing to implement the restructuring.  First Day Decl. ¶ 48; Amended Disclosure Statement at 41–42.

10.    According to the Complaint, while discussions among the Debtors and Secured Lenders were ongoing last spring and summer, RTI was also engaging in discussions with BNA Associates concerning the sale of the RT Lodge.  *See* Complaint ¶¶ 23-24, 26, 30.  On August 28, 2020, BNA Associates executed a reinstated, amended and restated asset, purchase and sale agreement to purchase the RT Lodge (the "August 28 PSA"), which expressly acknowledged the need for GSSLG's consent to the transaction.  *See* Complaint, Exh. F at Section 12.20 ("BUYER ACKNOWLEDGES THAT SELLER MUST OBTAIN APPROVAL FROM ITS LENDER FOR THE TRANSACTION CONTEMPLATED HEREIN…").  Following months of heavy negotiations to finalize the RSA Term Sheet and RSA—which provided for a comprehensive restructuring of *all* of the Debtors' assets, including the RT

Lodge—GSSLG exercised its contractual right to withhold consent to the sale of the RT Lodge under the August 28 PSA.

11.     Without the support of the Secured Lenders, the Debtors would have been liquidated.  In connection with the RSA Term Sheet and the RSA, GSSLG and the other Secured Lenders waived numerous defaults, agreed to forbear from exercising rights and extended $2 million in bridge financing before the Debtors filed for bankruptcy on October 7, 2020, and agreed to provide up to $18.5 million in debtor-in-possession financing (the "DIP Facility") to fund RTI's operations and restructuring activities during the bankruptcy.  *See* First Day Decl. ¶¶ 21–22; *see also Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* [Docket No. 558] at ¶ 3.  This Court found that obtaining funds under the DIP Facility was "necessary to avoid immediate and irreparable harm to the Debtors.  *Id.* at ¶ N.

### B. Chapter 11 Filing and the Plan Confirmation Process

12.     On October 7, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"), commencing the Chapter 11 Cases.

13.     The Debtors filed the *Disclosure Statement for Debtors' Chapter 11 Plan* (the "Disclosure Statement") [Docket No. 354] on November 7, 2020, which described the transactions contemplated by the Plan.  The Disclosure Statement explained that the "Plan reflects the agreement reached among the Debtors and the [Secured Lenders] to follow a dual

path whereby the Debtors will either reorganize via a consensual transaction that would provide

for the Debtors to emerge from these chapter 11 proceedings under new ownership by the

Prepetition Secured Creditors or sell their assets as a going concern." Disclosure Statement at 2.

The Debtors filed the *Debtors' Amended Chapter 11 Plan* [Docket No. 751] and the Amended

Disclosure Statement on December 21, 2020, which this Court approved with no objection from

BNA Associates.

14.     On November 20, 2020, the Bankruptcy Court entered an order approving

procedures for bidding on the sale of the Debtors' assets (such procedures, the "Bidding

Procedures"). *See Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B)*

*Approving Certain Bidder Incentives in Connection with the Debtors' Entry Into a Stalking*

*Horse Agreement, if Any, and (C) Approving Procedures for the Assumption and Assignment of*

*Executory Contracts and Unexpired Leases* [Docket No. 585]. Again, BNA Associates filed no

objections to the Bidding Procedures, and those procedures governed the auction process,

contemplated by the Disclosure Statement and the RSA.

15.     Following this Court's entry of the order approving the Bidding

Procedures, BNA Associates had the opportunity to seek to purchase the RT Lodge, and indeed

submitted a binding bid of $5.3 million for the RT Lodge (the "BNA Bid"). BNA Plan Obj. at ¶

1. The BNA Bid, however, did not satisfy the requirements of the Bidding Procedures Order and

was insufficient to constitute a Topping Bid.[4] As a result, the Debtors determined that the BNA

Bid was not a Qualified Bid pursuant to the terms of the Bidding Procedures and cancelled the

---

[4]      As defined in the Bidding Procedures, in order for a Bid to qualify as a Topping Bid, " (a) it must provide
for cash consideration at closing that is sufficient to pay all DIP Facility claims and Pre-Petition Secured Debt
Claims in full on the closing date or (b) the Debtors, in consultation with the Consultation Parties, must be able to
combine such Bid with other Bids for subsets of Assets such that, collectively, such Bids meet the criteria for a
Topping Bid." *See* Bidding Procedures at 6.

Auction. *Debtors' Motion for Protective Order as to BNA Associates LLC's Deposition Notice and Requests for Production, and/or Motion to Quash Deposition Notice from BNA Associates LLC* [Docket No. 1012] (the "Motion to Quash") at ¶ 17.[5]

16.    In accordance with the Disclosure Statement and the RSA, because the sale process did not result in any Topping Bids, the Debtors pursued the reorganization contemplated by the RSA and the Plan: GSSLG would become the indirect owner of Reorganized RTI (which would remain as the owner of the RT Lodge assets) and the other Secured Lender would become the owner of the Debtors' legacy restaurant operations.

17.    On January 27, 2021, BNA Associates filed a *Notice of Deposition Upon Oral Examination of Designated Representatives of Debtors Relating to Debtors' Chapter 11 Plan and Sale Motion* [Docket No. 948] (the "Deposition Notice"), seeking a Rule 30(b)(6) deposition from the Debtors on a number of topics related to the implementation of the Bidding Procedures, *see* Deposition Notice at 2, and, on January 28, 2021, BNA Associates filed a notice that it had served a discovery request on the Debtors and their counsel [Docket No. 953].

18.    On January 29, 2021, BNA Associates filed the BNA Plan Objection, which, like the Complaint, alleged that (i) BNA Associates had a deal with RTI for the RT Lodge Lease and had been prepared to close in September 2020, BNA Plan Obj. at ¶ 11, (ii) GSSLG had expressed an interest in acquiring the RT Lodge Lease beginning in July 2020, *id.* at ¶ 12, (iii) BNA Associates was informed by RTI that closing could not occur without the approval of the Secured Lenders, *id.* at ¶ 14, and (iv) on October 30, 2020, RTI informed BNA Associates in writing that the Secured Lenders had not consented to the proposed sale of the RT

---

[5]    The Bidding Procedures clearly provided that "[i]f the Debtors do not receive at least one . . . Topping Bid, then no Auction shall be scheduled or conducted," Bidding Procedures at 9. *See Notice of Non-Receipt of Topping Bid and Cancelation of Auction.* [Docket No. 886].

Lodge and that the purchase agreement relating to the RT Lodge between BNA Associates and RTI was being terminated.  *Id.*  Based on these allegations, and BNA Associates' allegations of impropriety in the auction process, BNA Associates argued that the Plan was not confirmable because it was not proposed in "good faith."  *See* BNA Plan Objection ¶ 25.

19.    On February 1, 2021 the Debtors filed the *Debtors' Motion for Protective Order as to BNA Associates LLC's Deposition Notice and Requests for Production, and/or Motion to Quash Deposition Notice From BNA Associates LLC* [Docket No. 1012] (the "Motion to Quash").  In the Motion to Quash, the Debtors argued that "BNA [Associates] is a disappointed potential bidder that sought to buy only a single asset offered for sale as part of the Debtors' parallel marketing and plan efforts pursuant to the [RSA]." Mot. to Quash at ¶ 1.

20.    At a hearing on February 1, 2021, notwithstanding the Debtors' objections, this Court granted discovery to BNA Associates, permitting it to obtain documents and conduct a deposition of the Debtors' representative regarding the marketing of the RT Lodge.  *See* February 2, 2021 Hr'g Tr. at 15:25-16:14.  The Court expressly allowed such discovery because BNA Associates was "claiming that they have some indication that there was a tainted process that didn't result in their ability to purchase [the RT Lodge]."  *Id.* at 16:8-11.

21.    Nonetheless, BNA Associates elected to not pursue that discovery or further litigate its objection to confirmation of the Plan.  Instead, it voluntarily withdrew its objection and said nothing at the Confirmation Hearing.  *See* February 11, 2021 Hr'g Tr. at 16:10-15.[6]

---

[6]    At the Confirmation Hearing, the Debtors' representative, Mr. Malhar Pagay, represented that "[t]he resolution that was reached by Goldman and the College also addressed another objection, with which Your Honor was familiar, because of some discovery issues, that of BNA, and that objection has also been withdrawn." *Id.*

22.     The Bankruptcy Court entered the Confirmation Order on February 17, 2021, and the Effective Date of the Plan was February 24, 2021. *See Notice of Entry of Order Confirming Debtors' Second Amended Chapter 11 Plan, as Modified, and Occurrence of the Effective Date (February 24, 2021)* [Docket No. 1163].  As a result, GSSLG, as the sole Holder of an Allowed Subclass 3A Claim, received 100% of the equity in the RT Lodge Company, which after the Effective Date retained the RT Lodge through its subsidiary, Reorganized RTI. Plan at 1, 32–33.

23.     In its Confirmation Order, this Court found that the Plan, including Reorganized RTI's assumption of the RT Lodge Lease and retention of the RT Lodge assets, was "proposed in good faith and not by any means forbidden by law."  Confirmation Order at ¶ Q.  In so finding, this Court recognized that "[t]he Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors, the Prepetition Secured Creditors, the Creditors' Committee and the Equity Parent, bears the support of a Class of impaired creditors . . ., and implements a result that is in keeping with (and, indeed, central to) the goals of the Bankruptcy Code. The Plan is designed to maximize the values available for distribution and to distribute them equitably." *Id.*

24.     The Confirmation Order also included a finding that the vesting of the RT Lodge in Reorganized RTI was made "free and clear" of liens, claims and other encumbrances, providing that "[e]xcept as otherwise provided in the Plan or this Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action, Litigation Claims) and any property and Assets acquired by the Debtors pursuant to the Plan shall vest in Reorganized RTI, RT Lodge Company, or the Reorganized Debtors or their

successors, free and clear of all Liens, Claims, charges or other encumbrances."  Confirmation

Order at ¶ 5.

### C. BNA Associates' Lawsuit

25.    On May 4, 2021, BNA Associates commenced the Interference Action,

asserting a single claim against GSSLG for intentional interference with business relationships.

In the Complaint, BNA Associates repeated as the basis for its claims the same alleged conduct

of GSSLG that BNA Associates previously asserted in the BNA Plan Objection but failed to

prosecute.  BNA Associates again argued that "[GSSLG] was not acting in good faith" and that

GSSLG "improperly used its position as [RTI's] lender to refuse to consent to [RTI's] sale of its

leasehold interest to BNA Associates."  The below excerpts of the Complaint and the BNA Plan

Objection highlight the overlapping allegations.

| Complaint | BNA Plan Objection |
|---|---|
| "On August 28, 2020, BNA Associates and Ruby Tuesday, Inc. executed a reinstated, amended and restated asset purchase agreement (the "August 28, 2020 Restated PSA")…" Complaint ¶ 30. | "Throughout the negotiations with RTI, BNA worked with Stephanie Medley, RTI's Chief Strategy Officer. In August and September 2020, Ms. Medley indicated that the faster the RT Lodge deal could close the better. BNA had financing in place and was prepared to close in September 2020…" BNA Plan Obj. ¶ 11 (internal citations omitted). |
| "Starting in July 2020—after [RTI] requested that Goldman Sachs consent to the assignment of the 1997 RT Lodge Lease to BNA Associates—Goldman Sachs regularly contacted Maryville College (and the management staff of RT Lodge) to express a strong interest in acquiring an assignment of the 1997 RT Lodge Lease because Goldman Sachs knew that Maryville College had to consent to any assignment." Complaint ¶ 27. | "Unbeknownst to BNA, RTI's lender, [GSSLG], had contacted [Maryville College] in July 2020 expressing a strong interest in acquiring the RT Lodge lease and seeking the College's approval for the assignment." BNA Plan Obj. ¶ 12 (internal citations omitted). |
| "But Goldman Sachs was not acting in good faith.  Goldman Sachs improperly used its position as [RTI's] lender to refuse to consent to [RTI's] sale of its leasehold interest to BNA Associates even though [RTI's] | "Although BNA was prepared to close the transaction for the RT Lodge in September 2020, Ms. Medley informed BNA that the closing could not occur because GSSLP had not consented to the transaction. . . . Ms. |

| | |
|---|---|
| indebtedness to Goldman Sachs was to be paid in full at the closing." Complaint ¶ 32. | Medley informed BNA, without a given reason, that GSSLP was not giving a timeline of approval of the sale even though the sales price satisfied the Leasehold Deed of Trust. GSSLP blocked the transaction between BNA and RTI that the College had approved." BNA Plan Obj. ¶ 14 (internal citations omitted). |
| "By letter dated October 30, 2020 [], [RTI's] counsel advised BNA Associates that "Seller's Lender [Goldman Sachs] has not consented to the proposed transaction. Therefore, [RTI] terminated the August 28, 2020 Restated PSA."  Complaint ¶ 33. | |

## RELIEF REQUESTED

26.     By this Motion, GSSLG requests the entry of an order (a) (i) enforcing the Confirmation Order by ordering BNA Associates to immediately dismiss the Complaint with prejudice and (ii) forever enjoining BNA Associates from pursuing the claims alleged in the Complaint and (b) granting related relief, including awarding costs to GSSLG for having to defend against this collateral attack on the Plan and Confirmation Order.

## BASIS FOR RELIEF

27.      "In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order." *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999), *aff'd sub nom. In re Cont'l Airlines, Inc.*, No. 90-932, 2000 WL 1425751 (D. Del. Sept. 12, 2000), *aff'd sub nom. In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002).  Where the Court has jurisdiction, section 105 of the Bankruptcy Code provides that the Court has broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

### A. The Interference Action Is an Impermissible Collateral Attack on the Confirmation Order

28.     The Court should not allow BNA Associates to conduct an end-run around the Plan and Confirmation Order.  Under Tennessee law, to succeed on a claim of intentional interference with business relationships, the plaintiff must prove that either (i) the defendant's

- 12 -

actions were illegal or independently tortious, "such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship," or (ii) that the defendant's predominant purpose was to "injure the plaintiff." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 at n. 5 (Tenn. 2002); *see* Complaint at ¶ 39 (citing *Trau-Med*).  Exercising contractual rights in order to be repaid substantial amounts extended to the Debtors, and to facilitate a restructuring, does not satisfy these requirements.

29.    BNA Associates' allegations in the Complaint that GSSLG acted in bad faith are wholly contradicted by the Court's good faith findings in paragraph Q of the Confirmation Order, which specifically determined that the Plan "was proposed in good faith" and "is the result of extensive, good faith, arm's-length negotiations" among GSSLG and other parties in interest.[7]  As BNA Associates has acknowledged, "[w]hether a reorganization plan has been proposed in good faith must be viewed in the totality of the circumstances, and the requirement of section 1129(a)(3) 'speaks more to the process of plan development than to the content of the plan.'"  BNA Plan Objection ¶ 25 (citing *In re Chemtura, Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010)).  Here, the process of plan development and negotiation of the RSA and Plan began by July 2020 and, from the outset, contemplated the possible assumption of the RT Lodge Lease and transfer of ownership of RT Lodge Company to GSSLG, one of the Secured Lenders to whom the Debtors owed over $42 million.[8]  Accordingly, GSSLG's actions

---

[7]    *See In re Farmland Indus., Inc.*, 376 B.R. 718, 726 (W.D. Mo. 2007), *aff'd*, 639 F.3d 402 (8th Cir. 2011) (holding that the court's good faith finding in section 363 sale order "alone defeats [plaintiffs'] claim of tortious interference" with plaintiffs' alleged business expectancy in the sold property).

[8]    As of the Petition Date, the indebtedness owing under the Prepetition Credit Facility was approximately $42.7 million.  *See* First Day Decl. at ¶ 23.

in connection with the restructuring, including GSSLG's decision to exercise its contractual right to withhold its consent to the sale of the RT Lodge Lease to BNA Associates and all of GSSLG's actions in connection with the RSA and the Plan, fall squarely within the scope of the good faith findings in paragraph Q of the Confirmation Order.

30.     Moreover, the vesting of the RT Lodge in an entity indirectly owned by GSSLG and the Court's attendant good faith and "free and clear" findings were integral components of the Plan.  To the extent BNA Associates disagreed with the vesting of the RT Lodge or the Court's good faith and "free and clear" findings, BNA Associates had every opportunity to raise those arguments throughout the Chapter 11 Cases—including at confirmation.  BNA Associates filed and withdrew its objection to the Plan, which was based on the *same* misstatements of fact that now purport to support the Complaint and the sole cause of action raised therein.

31.     This Court clearly has authority to act in an equitable capacity to protect its prior proceedings.  *See, e.g.*, *In re Public Service Co. of New Hampshire*, 43, F.3d 763, 767 (1st Cir. 1995) (affirming an injunction issued by the bankruptcy court where the plaintiffs "did raise or had the opportunity to raise in the reorganization all of the issues that they now seek to litigate") (internal quotations omitted).

32.     Although BNA Associates has styled the Complaint as an independent cause of action, the purported economic tort claims raised in the Complaint are inseparably related to the Chapter 11 Cases and BNA's unhappiness with the auction process and the Plan. The bankruptcy court in *In re Christ Hospital* confronted a similar situation and ruled that the disgruntled bidder's tortious interference claims were barred by the plan and confirmation order. In that case, like here, a disgruntled bidder raised tortious interference claims in state court based

on prepetition conduct of the successful bidder who had purchased assets pursuant to a section 363 sale. 502 B.R. 158, 161 (Bankr. D. N.J. 2013). In granting the successful bidder's motion for injunctive relief, the court held that the plaintiff's tort claims, despite seeking only damages, "are quite obviously intertwined with this Chapter 11 Case," *id.* at 163, and "are nonetheless a collateral attack on bankruptcy court orders and the bankruptcy sale process." *Id*. at 177.

33.    Other courts have similarly held that a plaintiff cannot collaterally attack an order confirming the transfer of an asset by seeking damages, even when the plaintiff does not seek to undo the transfer itself. *See, e.g.*, *In re Farmland Indus., Inc.*, 376 B.R. 718, 726 (W.D. Mo. 2007), *aff'd*, 639 F.3d 402 (8th Cir. 2011) (finding that plaintiffs' tortious interference lawsuit constituted an impermissible collateral attack on the court's section 363 sale order because the damages sought would undo the economics of the sale and "plac[e] [the plaintiff] in [the defendant's] economic position as the successful buyer," and stating that the court's good faith finding in the sale order "alone defeats [plaintiffs'] claim of tortious interference"); *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) (affirming dismissal of lawsuit "seeking heavy damages from the seller, the purchaser . . . and the secured creditors that benefited from the [section 363] sale" and finding that "the suit is a thinly disguised collateral attack on the judgment confirming the sale").

34.    The reasoning of the courts in *Christ Hospital*, *Farmland* and *Met-L-Wood Corp.* applies in this case as well, where BNA Associates is challenging GSSLG's prepetition and post-petition conduct as the basis for tort claims that would undo the economics of the Plan. Indeed, courts have routinely held that parties in interest cannot "attack confirmation orders by simply characterizing their attempt as an independent cause of action, rather than a motion to revoke the order." *Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.)*, 340

B.R. 729, 733 (D. Del. 2006) (quoting *In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y. 1990)).  Here, the Complaint explicitly seeks damages that would place BNA Associates in GSSLG's economic position as the successful buyer of the RT Lodge, precisely the result that BNA Associates was unable to achieve in the Chapter 11 Cases.  *See* Compl. ¶ 41 (seeking "substantial damages, including but not limited to the lost profits and fees [BNA Associates] would have earned from owning and managing the leasehold interest in the RT Lodge for the next 50 years").  As in *Farmland*, this Court should recognize BNA Associates' damages claims as an attempt to undo the economics of the Plan and the Confirmation Order.[9]

35.     In so doing, the Complaint seeks to effectively encumber the vesting of assets under the Plan and therefore is a collateral attack on the "free and clear" provision of the Confirmation Order.  Confirmation Order at ¶ 5.  Pursuant to the Plan, GSSLG received 100% of the equity in the RT Lodge Company, which after the Effective Date retained the RT Lodge through its subsidiary, Reorganized RTI.  Plan at 1, 32–33.  Accordingly, GSSLG received the RT Lodge "free and clear" of any Liens, Claims, charges or other encumbrances.

36.     For these reasons, the Interference Action is an impermissible collateral attack on the Confirmation Order, which this Court should enforce against BNA Associates by granting the relief requested herein.

**B. The Confirmation Order Bars BNA Associates' Claims in the Interference Action under the Principle of Res Judicata**

37.     "When a bankruptcy court enters a confirmation order, it renders a final judgment . . . [and] [t]hat judgment, like any other judgment, is res judicata." *In re Arctic Glacier Int'l Inc.*, 901 F.3d 162, 166 (3d Cir. 2018) (citing 8 Collier on Bankruptcy ¶ 1141.01[4],

---

[9]     The Complaint seeks more than $54 million in damages, which is more than ten times BNA Associates' proposed purchase price for the RT Lodge.

at 1141-11 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017)).  In the Third Circuit, it is

well established that challenges to a plan of reorganization must be litigated prior to confirmation

of the plan if such challenges could have been raised.  *Arctic Glacier Int'l Inc.*, 901 F.3d at 166;

*Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) ("[A] confirmation order is *res*

*judicata* as to all issues decided or which could have been decided at the hearing on

confirmation.") (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)).

      38.     In determining whether res judicata, or claim preclusion, applies, courts in

the Third Circuit have evaluated whether there is "(1) a final judgment on the merits in a prior

suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same

cause of action."  *See, e.g.*, *In re Bd. of Trustees of Trucking Employees of N.J. Welfare Fund,*

*Inc.-Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992).  "If these three factors are

present, a claim that was or could have been raised previously must be dismissed as precluded."

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).  With respect to the

third prong of the test, courts look to whether there is an "essential similarity of the underlying

events giving rise to the various legal claims."  *Id*.

      39.     BNA Associates' claims in the Complaint satisfy the three-factor test for

claim preclusion.  First, the Confirmation Order is a final order as a matter of law for purposes of

res judicata.  *See Arctic Glacier Int'l Inc.*, 901 F.3d at 166.  Second, BNA Associates was an

active participant in the plan confirmation process, appearing in the Chapter 11 Cases, filing the

BNA Plan Objection and seeking discovery in support of the BNA Plan Objection.  Third, as

discussed above, the claims in the Complaint are based on the same underlying events that were

addressed by this Court's good faith findings in the Confirmation Order.  *See* Mot., *supra*, ¶ 25.

40.     Accordingly, this Court should find that the Confirmation Order bars the claims in the Complaint under the doctrine of res judicata and grant the relief requested herein.

## C. The Doctrine of Collateral Estoppel Also Bars BNA Associates from Re-Litigating the Claims in Its Plan Objection

41.     The doctrine of collateral estoppel derives from the principle that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). In the Third Circuit, Courts have found that collateral estoppel applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Burlington Northern R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995) (quoting *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).

42.     The prerequisites for collateral estoppel apply to the claims alleged in the Complaint. As discussed above, BNA Associates raised the same issues in the BNA Plan Objection that it now alleges in the Complaint. BNA Associates took steps to litigate these issues by filing the BNA Plan Objection and seeking discovery and this Court held the Confirmation Hearing to consider objections to the Plan. Following the Confirmation Hearing, this Court rendered a final and valid judgment in entering the Confirmation Order, conclusively finding that GSSLG acted in good faith and negating the claims now alleged in the Complaint. Lastly, the vesting of the RT Lodge in an entity indirectly owned by GSSLG and the attendant good faith findings were integral components of the Plan and essential to the Confirmation Order.

43.     For these reasons, this Court should find that the claim in the Complaint is barred under the doctrine of collateral estoppel and grant the relief requested herein.

**D. BNA Associates' Claims in the Interference Action Are Meritless**

44.     Finally, though this Court need not reach the merits of the Complaint, the tortious interference claim against GSSLG is meritless.  As explained above, the claim is predicated entirely on allegations of "bad faith" relating to GSSLG's exercise of its contractual right not to grant consent to the transfer of the RT Lodge Lease to BNA Associates.  Not only are mere allegations of bad faith insufficient to satisfy the legal standard for a claim for "tortious interference" under Tennessee law, but this also completely ignores that the RT Lodge Lease was ultimately marketed pursuant to the Bidding Procedures and assumed pursuant to the terms of the Plan, each of which was proposed by the Debtors and approved by this Court.

## NOTICE

45.     Notice of this Motion has been provided to the following parties:  (a) counsel to the Debtors, (b) counsel to BNA Associates, (c) the Office of the United States Trustee for the District of Delaware; and (d) all others that are required to be noticed in accordance with Bankruptcy Rule 2002.  GSSLG submits that, given the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

46.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of the page left intentionally blank.]*

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, GSSLG respectfully requests that this Court (a) enter the order, substantially in the form attached hereto as Exhibit A, (i) enforcing the Confirmation Order by ordering BNA Associates to immediately dismiss the Complaint with prejudice and (ii) forever enjoining BNA Associates from pursuing the claims alleged in the Interference Action (b) grant such other and further relief as is just and proper, including the awarding of costs incurred by GSSLG in defending against the Complaint and filing this Motion.

Dated:      June 22, 2021

/s/ John M. Seaman
John M. Seaman (#3868)
Abrams & Bayliss, LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
Email: seaman@abramsbayliss.com

/s/ Sean A. O'Neal
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Goldman Sachs Specialty Lending Group, L.P.*