# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RTI HOLDING COMPANY, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.:  20-12456 (JTD)<br>Jointly Administered<br><br>Hearing Date:  August 3, 2021 at 3:00 p.m. (ET) |

### REPLY TO OBJECTION OF BNA ASSOCIATES TO MOTION OF GOLDMAN SACHS SPECIALITY LENDING GROUP, L.P.  TO ENFORCE CONFIRMATION ORDER

Goldman Sachs Specialty Lending Group, L.P. ("GSSLG"), by and through its undersigned counsel, hereby submits this reply (the "Reply") in response to the *Objection of BNA Associates, LLC to Motion of Goldman Sachs Specialty Lending Group, L.P. to Enforce Confirmation Order* [Docket No. 1551] (the "Objection") and in further support of the *Motion of Goldman Sachs Specialty Lending Group, L.P. to Enforce Confirmation Order* [Docket No. 1465]

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

{A&B-00750343-}

(the "<u>Motion</u>").[2]  In support of the Reply, GSSLG, by and through its undersigned counsel, respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

1. The core of BNA's Objection is that its claims in the Interference Action are somehow outside the scope of the Confirmation Order.  However, the relief BNA Associates seeks in the Interference Action—the economic equivalent of owning the RT Lodge Lease—attacks a fundamental feature of the Plan and Confirmation Order.  The vesting of the RT Lodge Lease in an entity controlled by GSSLG was an integral component of the Plan, without which the comprehensive restructuring of the Debtors on a going-concern basis would not have been possible.

2. BNA Associates had ample notice and opportunity to litigate its claim and challenge the vesting of the RT Lodge Lease in Reorganized RTI, an entity controlled by GSSLG, and indeed took advantage of that opportunity through the BNA Plan Objection.  BNA Associates could have avoided the damages it claims to have suffered by successfully prosecuting its objection to the Plan.  Moreover, it could have submitted a Topping Bid (as defined in the Bidding Procedures) for the RT Lodge Lease.  Instead, BNA Associates withdrew the BNA Plan Objection, only to attack the very same conduct and pursue the very same relief in a different forum following this Court's entry of the Confirmation Order.

3. After raising all of the same allegations of bad faith on the part of GSSLG and arguing that the Plan failed to satisfy the "good faith" standard because of the process relating to the vesting of the RT Lodge Lease, BNA Associates decided it would stand on the sidelines and wait for this Court to enter the Confirmation Order.  Among this Court's numerous findings and

---

[2]  Capitalized terms used but not defined in the Reply shall have the meanings ascribed to them in the Motion.

in the face of the allegations made by BNA Associates, the Court explicitly found in the Confirmation Order that the Plan had been proposed and negotiated in good faith, not just by the Debtors but among numerous other stakeholders, including GSSLG.

4. The Interference Action is an impermissible collateral attack on the Court's explicit findings in the Confirmation Order and on the integral aspects of the restructuring transactions that it approved, is at odds with the fundamental premise of finality of transfers effectuated pursuant to a confirmed Plan and is an overt attack on the integrity of the bankruptcy process.

## ARGUMENT

### A. The Interference Action Is a Collateral Attack on the Confirmation Order's Vesting of Estate Assets

5. The vesting of the Debtors' assets, including the RT Lodge Lease, was a fundamental feature of the Plan, which was approved by this Court in the Confirmation Order. Confirmation Order ¶ 5 ("[T]he RT Lodge shall vest in Reorganized RTI [and] one hundred percent (100%) of the Equity Interests in RT Lodge Company shall vest in the Holders of the Allowed Subclass 3A Claims on a Pro Rata basis . . . ."). By seeking the economic equivalent of owning the RT Lodge Lease in the Complaint, the Interference Action challenges a cornerstone of the Plan and Confirmation Order. Although BNA Associates argues that the Interference Action "seeks different relief," Obj. ¶ 31, by successfully objecting to the Bidding Procedures and the Plan prior to confirmation, BNA Associates could have prevented this vesting and therefore avoided the "damages" that it hopes the Interference Action will rectify.

6. BNA Associates incorrectly claims that it "could not have litigated" these issues in the Bankruptcy Court. Obj. ¶ 5. That assertion is belied by BNA Associates' own conduct; BNA Associates *did* litigate these issues, and then it strategically chose to withdraw its claims. In its objection to the Plan, BNA Associates made the same allegations against GSSLG as in the

Interference Action. BNA Associates also argued that the Plan was not confirmable because of the Debtors' and GSSLG's refusal to sell the RT Lodge Lease to BNA Associates and, therefore, the RT Lodge Lease should be "excluded from confirmation of the Plan in the event the Court is inclined to otherwise confirm the proposed Plan." BNA Plan Obj. ¶¶ 22, 26.

7. By withdrawing its objection to the Plan, BNA Associates agreed to the allocation of value under the Plan, including the vesting of the RT Lodge Lease in an entity controlled by GSSLG. In so doing, it also chose not to challenge the obvious consequence of that allocation—that it would not have the economics of owning the RT Lodge Lease. Yet that is precisely the relief it now seeks in the Interference Action. BNA Associates should not be permitted to seek relief in state court that attacks the same economic framework that it previously challenged in the bankruptcy process but ultimately assented to, which this Court effectuated through the Confirmation Order.

8. BNA Associates asserts that the Interference Action should be permitted because it is not seeking to enjoin the Plan. Obj. ¶ 37. However, numerous courts, including courts within the Third Circuit, have held that a purportedly independent cause of action seeking damages nonetheless amounts to an impermissible collateral attack if it would undo the economics of a bankruptcy court order approving the transfer of an asset. *See, e.g.*, *In re Christ Hospital*, 502 B.R. 158, 177 (Bankr. D.N.J. 2013), *aff'd*, 2014 WL 4613316 (D. N.J. Sept. 12, 2014) (finding that state litigation claims seeking damages "are nonetheless a collateral attack on bankruptcy court orders and the bankruptcy sale process"); *In re Farmland Indus., Inc.*, 376 B.R. 718, 726 (W.D. Mo. 2007), *aff'd*, 639 F.3d 402 (8th Cir. 2011) ("The fact that [the losing bidder at a section 363 sale] does not seek to undo the sale with regard to title is not dispositive; it is sufficient that the [p]laintiff is seeking to undo the economics of the sale by seeking damages against [the successful

bidder] . . . ."); *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) ("[B]y seeking heavy damages from the seller, the purchaser, [and others who benefitted from section 363 sale], [a collateral] suit is a thinly disguised collateral attack on the judgment confirming the sale").³ The Interference Action, which would have the effect of transferring the entire economic benefit of owning the RT Lodge Lease from GSSLG to BNA Associates, unambiguously runs afoul of this standard.

9. BNA Associates also cannot credibly argue that this Court was not the proper forum to raise its dispute with GSSLG when BNA Associates itself put the dispute before the Court prior to the confirmation hearing. The BNA Plan Objection made the same allegations about GSSLG's conduct in withholding its consent to the sale of the RT Lodge Lease to BNA Associates. BNA Associates also argued that the Plan was not proposed in good faith with respect to the RT Lodge Lease because "the Debtors and [GSSLG] have refused to sell it." BNA Plan Obj. ¶¶ 25–26. Thus, BNA Associates' argument in the Objection that the "good faith" finding in the Confirmation Order is inapplicable to the conduct of GSSLG as a non-Debtor is directly contradicted by its prior argument in the BNA Plan Objection that the Plan did not satisfy section 1129(a)(3) and should not be confirmed because GSSLG's conduct was not in "good faith." *Id.* ¶ 25 ("[T]he Debtors fail to demonstrate that section 1129(a)(3) is satisfied, given BNA's binding bid, cancellation of the auction without explanation, and *proposed conveyance of those assets to [GSSLG] through the proposed Plan*.") (emphasis added). Moreover, as explained below, it is

---

³ BNA Associates summarily attempts to distinguish these cases because they concerned sale orders under section 363 without explaining why the same principles of finality and protection for transferees animating those decisions should not exist for the disposition of assets effectuated under the Plan. Obj. ¶ 47. Moreover, although BNA Associates makes much of the fact that the vesting of the RT Lodge Lease was pursuant to the Plan rather than section 363, the Plan explicitly incorporated section 363 into all "settlements reflected in the Plan," Plan Art. X.A.3, which includes settlements of GSSLG's Claims that were "resolved pursuant to the Plan," Plan Art. V.A.

directly contradicted by the language of the Confirmation Order which makes it clear that the Court found GSSLG had acted in good faith.

**B. The Interference Action Is Precluded by the Plain Language of the Confirmation Order**

10. BNA Associates does not dispute—as it could not—that, by its plain language, the Confirmation Order made good faith findings with respect to the Plan itself as well as the months-long process during which the Plan was negotiated and developed by, among others, the Debtors and GSSLG. Contrary to BNA Associates' assertions, the conduct of GSSLG during this process, which included the purported "bad faith" conduct that underlies the Interference Action, was *explicitly* within the scope of the good faith findings. "The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors, the *Prepetition Secured Creditors*, the Creditors' Committee and the Equity Parent, bears the support of a Class of impaired creditors (Class 3 Prepetition Secured Debt Claims), and implements a result that is in keeping with (and, indeed, central to) the goals of the Bankruptcy Code." Confirmation Order ¶ Q (emphasis added).

11. BNA Associates argues that, notwithstanding the good faith findings in the Confirmation Order, "[i]t can be true that Goldman engaged in good faith negotiations with the Debtors . . . but acted in bad faith with respect to third parties, such as BNA, not involved in the Plan process." Obj. ¶ 40. However, this position ignores the fact that the alleged misconduct in the Complaint was part and parcel of negotiations related to the Debtors' broader restructuring and the development of the Plan.

12. BNA Associates' repeated emphasis that the Interference Action relates solely to GSSLG's alleged prepetition conduct is a red herring. Even if the good faith findings in the Confirmation Order made a distinction between pre- and post-petition conduct (which they do not), GSSLG's decision to withhold consent was not formalized until October 30, 2020, *after* the Petition Date on October 7, 2020. *See* Obj. ¶¶ 10, 21. As a result, the *same conduct* would have

to support both the good faith findings in the Confirmation Order and BNA Associates' claim for tortious interference. Under BNA Associates' strained reading, GSSLG would have negotiated the Plan with the Debtors in good faith by, in part, engaging in tortious conduct to block a sale that the Debtors would otherwise have consummated with BNA Associates. The Court should not adopt an interpretation of the good faith findings in the Confirmation Order that yields such an incoherent result. Indeed, BNA itself argued that GSSLG's conduct was within the purview of this Court's "good faith" finding when it argued in the BNA Plan Objection that a lack of "good faith" was one of the reasons the Court could *not* confirm the Plan.

13. In addition, BNA Associates' position ignores case law in the District of Delaware holding that good faith findings are made in light of the totality of the circumstances surrounding the establishment of the plan. *See, e.g.*, *In re Century Glove, Inc.*, Civ. A. 90–400–SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) (finding the "requirement of good faith must be viewed in light of the totality of circumstances surrounding establishment of a Chapter 11 plan") (internal quotations omitted); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 164 (D. Del. 2006) (finding plan satisfied good faith requirement after examining "the totality of the circumstances surrounding the formulation of the [p]lan").[4] Courts in this district have explicitly considered the conduct of parties other than plan proponents in the plan development process when evaluating whether the "good faith" standard has been met. *See In re Washington Mut., Inc.*, 461 B.R. 200, 239 (Bankr. D. Del. 2011), *vacated in part on other grounds*, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012) (considering allegations that certain noteholders of the debtors "'dominated' or 'hijacked' plan settlement negotiations and "engaged in inequitable conduct, including trading in

---

[4] As part of this analysis, courts consider whether the plan has been "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001); *see also In re Breitburn Energy Partners LP*, 582 B.R. 321, 352 (Bankr. S.D.N.Y. 2018).

{A&B-00750343-}    7

the debtors' securities while in possession of material nonpublic information," in holding that a plan was proposed in good faith); *see also In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004) (finding a plan was not proposed in good faith based on the conduct of certain creditors who engaged in "obvious self-dealing" in the plan development process).  It is also well-established that a good faith finding under section 1129(a)(3) means that a plan does not contravene any law, including applicable state law.  *See* 7 Collier on Bankruptcy P 1129.02 (16th 2021) (citing *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) for the proposition that "means forbidden by law" refers, *inter alia*, to state law).

14. Here, there is no question that the Court was aware of the conduct alleged in the Complaint when it made the good faith findings in the Confirmation Order.  The same conduct was directly related to the development of the Plan, a fundamental feature of which was the vesting of the RT Lodge Lease and other assets, and, as such, was part of the "totality of circumstances" surrounding the Plan.  The Court did not find that the Plan resulted from a process purportedly tainted by GSSLG; instead, the Court ultimately found that the Plan was proposed, negotiated and developed in good faith by all parties involved, including GSSLG.  Accordingly, the Interference Action, which is premised on the alleged impropriety of GSSLG's conduct in negotiating the Plan, is wholly incompatible with the good faith findings in the Confirmation Order.

**C. The Interference Action Is Barred by the Principles of Res Judicata and Collateral Estoppel**

15. BNA Associates argues that res judicata does not bar the Interference Action because the BNA Plan Objection addressed different conduct that purportedly is "entirely outside of the context of the Chapter 11 Cases." Obj. ¶ 63.  To the contrary, as discussed above, the misconduct alleged in the Complaint was part of the development of the Plan and is the same conduct that the Court approved in making its good faith findings.  This kind of conduct is clearly

intertwined with the Chapter 11 Cases. The notion that the vesting of an important asset of the Debtors, which was effectuated by the Plan, was improper and predicated on bad faith behavior is incompatible with the findings by this Court that the Plan was proposed in good faith. Moreover, notwithstanding BNA Associates' *post hoc* attempt to diminish the importance of their allegations, the BNA Plan Objection alleged that the Plan should not be confirmed because GSSLG had improperly refused to consent to the sale of the RT Lodge Lease to BNA Associates. "[A] confirmation order is *res judicata* as to all issues decided or which *could have been* decided at the hearing on confirmation." *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)) (emphasis added).[5] BNA Associates put these issues before the Court in advance of confirmation so they undoubtedly "could have been litigated" had BNA Associates not strategically withdrawn the BNA Plan Objection.

16. BNA Associates' argument that it could not receive full relief from the Court is similarly unavailing. Obj. ¶ 64. BNA Associates had ample opportunity in the Chapter 11 Cases to obtain the economic benefit of the RT Lodge Lease, including by participating in the sale process established by the Bidding Procedures and by prosecuting the BNA Plan Objection, in which BNA Associates argued that the Plan was not confirmable because "the Debtors have been unwilling to move forward with the sale" of the RT Lodge Lease to BNA Associates. BNA Plan Obj. ¶ 22.

17. The cases cited by BNA Associates in the Objection, which are not binding on the Court, are easily distinguishable. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150 (2d Cir. 2017), *In re Atlanta Retail, Inc.*, 456 F.3d 1277 (11th Cir. 2006), and *Kaiser Aerospace &*

---

[5] "In deciding whether two suits are based on the same cause of action, [courts in the Third Circuit] take a broad view, looking to whether there is an essential similarity of the underlying events giving rise to the various legal claims." *Corestates Bank N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (internal quotations omitted).

*Electronics Corp. v. Teledyne Industries, Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289 (11th Cir. 2001), involved claims that were not raised before the bankruptcy court at the time of entry of the applicable bankruptcy orders. These cases stand in stark contrast to the Chapter 11 Cases, where BNA Associates was actively engaged in the sale and plan confirmation processes, including by seeking discovery related to the potential transfer of the RT Lodge Lease, and made all of the same allegations of purported misconduct in connection with the vesting of the RT Lodge Lease prior to confirmation.

18. As with res judicata, BNA Associates' argument that the Interference Action is not barred by collateral estoppel is based on the faulty premise that the Complaint and BNA Plan Objection involve distinct conduct. In addition, BNA Associates mistakenly relies on a chapter 7 case, *In re Cowden*, for the proposition that issues raised in the BNA Plan Objection were not "fully litigated" simply because BNA Associates withdrew its objection at the confirmation hearing. The facts of *In re Cowden* bear little resemblance to this case. The *Cowden* court considered whether an issue previously litigated but withdrawn by the debtor's sister (Soviero) barred by collateral estoppel the Chapter 7 trustee's fraudulent conveyance action against the debtor and her husband. *In re Cowden*, 337 B.R. 512, 537–38 (Bankr. W.D. Pa. 2006). The court found that the issue was "never actually litigated" where the order in question merely "operated to dismiss Soviero's exemption objection without passing upon the merits thereof." *Id.* Moreover, the dispute did not involve a confirmation order, *see id.*, where the Bankruptcy Code "imposes an independent duty upon the court to determine whether a plan satisfies each element of § 1129." *In re Lernout & Hauspie Speech Prods.*, N.V., 301 B.R. 651, 656 (Bankr. D. Del. 2003)

19. "Even an explicit attempt to abandon an issue may fail [for purposes of avoiding issue preclusion] if a later court concludes that it was necessarily resolved by the ensuing

judgment." Wright and Miller, 18 Fed. Prac. & Proc. Juris. § 4419 (3d ed.). Unlike in *Cowden*, BNA Associates put the issues underlying its tortious interference claim before this Court in the BNA Plan Objection and took steps to litigate those issues by seeking discovery and prevailing in a discovery dispute before this Court. This Court then resolved such issues on the merits by rendering the good faith findings in the Confirmation Order.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Motion, GSSLG respectfully requests that this Court (a) enter the order, substantially in the form attached to the Motion as <u>Exhibit A</u>, (i) enforcing the Confirmation Order by ordering BNA Associates to immediately dismiss the Complaint with prejudice and (ii) forever enjoining BNA Associates from pursuing the claims alleged in the Interference Action and (b) grant such other and further relief as is just and proper, including the awarding of costs incurred by GSSLG in defending against the Complaint and filing the Motion and this Reply.

Dated: July 29, 2021

/s/ John M. Seaman
John M. Seaman (#3868)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
Telephone: (302) 778-1000
Facsimile: (302) 778-1001
Email: seaman@abramsbayliss.com

/s/ Sean A. O'Neal
Sean A. O'Neal
Jane VanLare
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Counsel to Goldman Sachs Specialty Lending Group, L.P.*