### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| RTI HOLDING COMPANY, LLC, *et al.*, ) | Case No. 20-12456 |
| ) | (Jointly Administered) |
| Reorganized Debtors. ) | |
| ) | **Re:  D.I. 1465, 1551 & 1560** |

### MEMORANDUM OPINION AND ORDER

BNA Associates, LLC ("**BNA Associates**") filed a complaint (the "**Complaint**") against Goldman Sachs Specialty Lending Group, L.P. ("**GS**"), the Debtors' prepetition and DIP lender, in Tennessee asserting claims arising out of the sale of one of Debtors' leasehold interests that was negotiated prepetition and never consummated.[1]  Subsequently, GS filed a Motion (the "**Motion**") for entry of an order to enforce the *Order Confirming the Debtors' Second Amended Chapter 11 Plan*.[2]  BNA Associates responded to GS's Motion  (the "**Objection**")[3] and a hearing was held August 3, 2021.  For the reasons set forth below, the Motion is denied.

### BACKGROUND

**A.  The Prepetition Purchase Agreement**

In 1997, Debtor Ruby Tuesday Inc. ("**RTI**") attained a leasehold interest (the "**Leasehold Interest**") in a former residence, restaurant, and corporate retreat and the surrounding 7.25-acre property located on the campus of Maryville College in Maryville, Tennessee (the "**RT**

---

[1] The Chancery Court for the Twentieth Judicial District of Tennessee, Davidson County named *BNA Assocs., LLC v. Goldman Sachs Specialty Lending Group, L.P.*, Case No. 21-04030-IV (the "**Tennessee Action**").  GS filed a notice of removal of the Tennessee Action to the United States District Court for the Middle District of Tennessee. D.I. 1465, Exhibit B.
[2] *As modified* (the "**Confirmation Order**"), confirming the *Debtors' Second Amended Chapter 11 Plan, as Modified* (with D.I. 920, the "**Plan**"), against BNA Associates.  GS alleges that they have yet to be served with the Complaint.  When GS filed this Motion, they state that they do not waive any rights and defenses to the Complaint, including without limitation, for lack of or improper service.
[3] D.I. 1551.

**Lodge**").[4]  Before the Chapter 11 petitions, BNA Associates[5] and RTI negotiated and executed an asset purchase and sale agreement (the "**PSA**") pursuant to which BNA Associates would acquire RTI's Leasehold Interest in the RT Lodge through December 31, 2070, for $5.25 million, subject to the consent of the property owner, Maryville College and RTI's secured lender, GS.[6]

Because of the COVID-19 pandemic, the closing of the transaction under the PSA was delayed.[7]  By June 26, 2020, Maryville College consented to the transaction, but GS's consent was still needed.[8]  BNA Associates claims that in the summer of 2020, it contacted GS to obtain their consent.  Despite the lack of consent from GS, BNA Associates sent a letter dated September 21, 2020, to RTI that it was prepared to proceed with the transaction.  Shortly thereafter, however, RTI filed for bankruptcy.  On October 30, 2020, RTI sent a letter to BNA Associates officially advising them that GS had not consented to the Proposed BNA Sale.  RTI told BNA Associates that the Proposed BNA Sale could no longer take place, and BNA Associates could only acquire RT Lodge through the auction to be conducted in the bankruptcy.

### B. The Chapter 11 Auction and Plan Objection

On October 7, 2020, RTI Holding Company, LLC, (the "**Debtors**") filed voluntary petitions under Chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101–1531 (the "**Bankruptcy Code**").  The Debtors' original Disclosure Statement stated that the Debtors and Prepetition Secured Creditors will "follow a dual path whereby the Debtors will either reorganize

---

[4] *Declaration of Shawn Lederman, Chief Executive Officer, In support of First Day Pleadings* ("**First Day Declaration**"), D.I. 3 at ¶ 19.
[5] BNA Associates is a Nashville-based real estate development company founded in 2009 that targets distinctive real estate projects, and develops hotels, restaurants, multi-family complexes, and mixed-use projects that have a differentiating or unique quality.  D.I. 1551 at ¶ 17.
[6] D.I. 1551 at ¶ 18.
[7] D.I. 1551 at ¶ 18.
[8] D.I. 1551 at ¶ 18.  The Credit and Guaranty Agreement dated December 21, 2017, (as amended or supplemented, the "**Prepetition Credit Agreement**") between RTI Holding Company, LLC, and the Secured Lenders stipulated that GS must consent to the sale of any of RTI's assets, including the RT Lodge.  First Day Declaration, D.I. 3 at ¶ 20; Injunction Motion at ¶ 7; Prepetition Credit Agreement §§ 6.9, 10.5.

via a consensual transaction that would provide for the Debtors to emerge from these chapter 11 proceedings under new ownership by the Prepetition Secured Creditors or sell their assets as a going concern."[9]

On November 20, 2020, I entered an order approving procedures for bidding on the Debtors' assets, including the Leasehold Interest in the RT Lodge[10] (the order, the "**Bidding Procedures Order**" and the authorized procedures thereunder, the "**Bidding Procedures**"). The Bidding Procedures imposed a bid deadline of January 14, 2021, for an auction to be held no later than January 19, 2021 (the "**Auction**"). The Bidding Procedures stated that "a bidder may bid on a portion or all of the Assets, provided that such bid, either individually or in combination with other bids, must qualify as a Topping Bid."[11]

BNA Associates submitted a binding bid of $5.3 million for the RT Lodge (the "**BNA Bid**").[12] The Debtors determined that the BNA Bid was not a Qualified bid pursuant to the terms of the Bidding Procedures because the bid was insufficient to constitute a Topping Bid.[13] On January 18, 2021, the Debtors filed a notice of cancellation of the Auction.[14] Therefore, as the Disclosure Statement and RSA stated, the Debtors pursued reorganization under the Plan. The Debtors filed their Plan[15] and Amended Disclosure Statement on December 21, 2020.

On January 19, 2021, BNA Associates filed an objection to the Plan (the "**BNA Plan Objection**"), which alleged that (1) BNA Associates had a prepetition deal with RTI for the RT

---

[9] Disclosure Statement, D.I. 354 at 2.
[10] D.I. 585.
[11] Bidding Procedures, D.I. 585 at 2. A "Topping Bid … (a) must provide for cash consideration at closing that is sufficient to pay all DIP Facility Claims and Pre-Petition Secured Debt Claims in full on the closing date or (b) the Debtors, in consultation with the Consultation Parties, must be able to combine such Bid with other Bids for subsets of Assets such that, collectively, such Bids meet the criteria for a Topping Bid." Bidding Procedures, D.I. 585 at 6.
[12] D.I. 1465 at ¶ 15.
[13] *Declaration of Malhar S. Pagay*, D.I. 1012 at ¶ 3.
[14] D.I. 886 (the "**Notice of Cancellation**"); *see also Declaration of Malhar S. Pagay*, D.I. 1012 at ¶ 3.
[15] D.I. 751.

3

Lodge Lease it was prepared to close in September 2020,[16] (2) GS had expressed an interest in acquiring the RT Lodge Lease beginning in July 2020,[17] (3) BNA Associates was informed by RTI that closing could not occur without the approval of the Secured Lenders,[18] and (4) on October 30, 2020, RTI informed BNA Associates in writing that the Secured Lenders had not consented to the proposed sale of the RT Lodge and that the purchase agreement relating to the RT Lodge between BNA Associates and RTI was being terminated.[19] Based on these allegations, and BNA Associates' allegations of impropriety in the auction process, BNA Associates claimed that the Plan was not confirmable because it was not proposed in "good faith."[20]

BNA Associates sought discovery from the Debtors.[21] At a hearing on February 1, 2021, I granted discovery because BNA Associates "claim[ed] that they have some indication that there was a tainted process that didn't result in their ability to purchase this one asset [RT Lodge]."[22] After informally receiving additional information with respect to the Auction, BNA Associates withdrew the Plan Objection prior to the confirmation hearing.[23]

I entered the Confirmation Order on February 17, 2021, and the Plan went effective on February 24, 2021.[24] As a result, GS, as the sole Holder of the Allowed Subclass 3A Claim, received 100% equity in the RT Lodge Company, which retained the RT Lodge through its

---

[16] D.I. 998 at ¶ 11.
[17] D.I. 998 at ¶ 12.
[18] D.I. 998 at ¶ 14.
[19] D.I. 998 at ¶ 14.
[20] D.I. 998 at ¶ 25. BNA Associates also alleged that it was informed that "there was an unidentified problem with another unidentified bidder that would likely result in the cancellation of the [A]uction." D.I. 998 at ¶ 18.
[21] At the same time, BNA Associates asserts that it never mentioned GS in its discovery request and never sought discovery from GS.
[22] D.I. 1040 at 16:8–11.
[23] D.I. 1122 at 16:10–15.
[24] *See Notice of Entry of Order Confirming Debtors' Second Amended Chapter 11 Plan, as Modified, and Occurrence of the Effective Date (February 24, 2021)* D.I. 1163.

subsidiary, Reorganized RTI.[25]  In the Confirmation Order, I determined that the Plan was "proposed in good faith and not by any means forbidden by law."[26]

### C. The Tennessee Action

A few months after the Effective Date of the Plan, on May 4, 2021, BNA Associates commenced the Tennessee Action in the Chancery Court for the Twentieth Judicial District of Tennessee, Davidson County, seeking damages from GS based on GS's alleged intentional interference with business relationships prior to the commencement of the Chapter 11 cases (the "**Tortious Interference Claim**").  In the complaint, BNA Associates claims that GS was not acting in good faith and that GS "improperly used its position as [RTI's] lender to refuse to consent to [RTI's] sale of its leasehold interest to BNA Associates."[27]

In its Motion, GS alleges that the Complaint is an impermissible collateral attack on the Court's Confirmation Order, and the Confirmation Order bars BNA Associates' claims under the doctrines of res judicata and collateral estoppel.[28]  GS also argues that the Court's determination that all parties negotiated the Plan in good faith negates any finding that they acted in bad faith.  GS requests an order (a) (i) enforcing the Confirmation Order by ordering BNA Associates to immediately dismiss the Complaint with prejudice and (ii) forever enjoining BNA Associates from pursuing the claims alleged in the Complaint; and (b) granting related relief, including awarding costs.[29]  On July 26, 2021, BNA Associates filed its Objection to GS's Motion asserting that the Tennessee Action does not collaterally attack the Confirmation Order, and it is

---

[25] Amended Plan, D.I. 1135 at 1, 32–33.
[26] D.I. 1144 at ¶ Q.  I held that "[t]he Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors, the Prepetition Secured Creditors, the Creditors' Committee and the Equity Parent, bears the support of a Class of impaired creditors (Class 3 Prepetition Secured Debt Claims), and implements a result that is in keeping with (and, indeed, central to) the goals of the Bankruptcy Code.  The Plan is designed to maximize the values available for distribution and to distribute them equitably."  D.I. 1144 at ¶ Q.
[27] D.I. 1551, Exhibit B, Complaint at ¶ 40.
[28] D.I. 1465.
[29] D.I. 1465 at ¶ 26.

not barred by either res judicata or collateral estoppel because BNA Associates never actually litigated or received a final judgment regarding GS's prepetition conduct.[30] I will address each of these arguments below.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. In the Confirmation Order, this Court retained jurisdiction to enforce provisions of the Plan and Confirmation Order.[31] In *In re Continental Airlines, Inc.*, the court held "[i]n the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, inter alia, to enforce its confirmation order." *In re Continental Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999).

Enforcing a confirmation order has long been accepted to be a core proceeding under § 157(b).[32] Therefore, this adversary matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## ANALYSIS

### I. DISCUSSION

In its Motion, GS raises four legal arguments.

#### A. Collateral Attack on the Confirmation Order

   a. <u>Legal Standard</u>

A collateral attack on a judgment is "an attempt to impeach the judgment by matters [outside] the record … to avoid, defeat, or evade it or deny its force and effect, in some incidental proceeding not provided by law for the purpose of attacking it." *Agape Motorcoach*

---

[30] D.I. 1551.
[31] D.I. 1144 at ¶ 58.
[32] *See In re Millennium Lab Holdings, LLC*, 575 B.R. 252, 261–62 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd sub nom. In re Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019).

6

*Retreat, LLC v. Brintle*, 523 F. App'x 948, 955 (4th Cir. 2013) (quoting *Guinness, PLC v. Ward*, 955 F.2d 875, 895 (4th Cir. 1992)). "By definition … [a] 'collateral attack' is '[a]n attack on a judgment in a proceeding other than a direct appeal.'" *United States v. Braddy*, 837 F. App'x 112, 114 (3d Cir. 2020) (quoting Black's Law Dictionary 298 (9th ed. 2009)). Generally, a party cannot challenge the validity of an existing judgment. *Intervest Nat'l Bank v. Welch*, 2011 U.S. Dist. LEXIS 38510, at *20 (E.D. Pa. Apr. 7, 2011). "The Confirmation Order is a final judgment as to the matters it addressed, including the discharge of the claims in issue. As a final judgment, it precludes a collateral attack on its various provisions." *In re City of Cent. Falls*, 2015 Bankr. LEXIS 4527, at *42 (Bankr. D.R.I. Nov. 13, 2015).

Meanwhile, the Third Circuit has stated that "[t]his court has frequently noted that we have 'taken a flexible, practical approach to interpreting the finality requirement in bankruptcy cases.'" *Official Comm. of Unsecured Creditors of Life Serv. Sys., Inc. v. Westmoreland Cty. MH/MR*, 183 F.3d 273, 277 (3d Cir. 1999) (quoting *In re Blue Coal Corp.*, 986 F.2d 687, 689 (3d Cir. 1993)). A crucial element that bars a collateral attack on a judgment is whether the party had the opportunity to litigate their claims. *See Brown v. United States*, 508 F.2d 618, 631 (3d Cir. 1974).

### b. BNA Associates' Collateral Attack on the Confirmation Order

The first argument that GS raises is that BNA Associates' Tennessee Action is an impermissible collateral attack on the Confirmation Order and allows "BNA Associates to conduct an end-run around the Plan and Confirmation Order."[33] GS argues that they are a released party under the Plan and are therefore protected by the Confirmation Order. GS also states that the plan provided for the vesting of the RT Lodge in an entity indirectly owned by the

---

[33] D.I. 1465 at ¶ 28.

GS "free and clear." GS claims that BNA Associates had every opportunity to raise arguments throughout the Chapter 11 Cases including at Confirmation.[34]

GS argues that BNA Associates' Tennessee Action is inseparably related to the Chapter 11 Cases and BNA Associates' unhappiness with the Auction process and Plan. *See, e.g., In re Christ Hosp.*, 502 B.R. 158 (Bankr. D. N.J. 2013) (dismissing a losing bidder's tortious interference claim against the defendant because the defendant bought the assets pursuant to a § 363 sale and received the assets "free and clear"); *see also GAF Holdings, LLC v. Rinaldi (In re Farmland Indus.)*, 376 B.R. 718 (Bankr. W.D. Mo. 2007), *aff'd*, 639 F.3d 402 (8th Cir. 2011) (holding the plaintiffs' tortious interference lawsuit constituted an impermissible collateral attack on the court's § 363 sale order because the damages sought would undo the economics of the sale); *see, e.g., In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988) (affirming the dismissal of a lawsuit, where the plaintiff sought damages from the seller, purchaser, and the secured creditors who benefited from the § 363 sale and concluding that the suit was a thinly disguised collateral attack on the judgment confirming the sale).

BNA Associates responds that the Tennessee Action is not a collateral attack on the Confirmation Order because the allegations in the Tennessee Action are against GS, while the Plan Objection was directed toward the Debtors' conduct in connection with the Auction and the post-petition sale. BNA Associates contends that the Tortious Interference Claim in the Tennessee Action is not based on the post-petition sale process or confirmation. Further it is directed toward different parties on a different theory than the Plan Objection. BNA Associates asserts the Tortious Interference Claim is a tort claim under Tennessee law directed at GS's prepetition conduct. In contrast, the Plan Objection asked me to deny confirmation of the Plan

---

[34] GS also states that my good faith findings in Paragraph Q of the Confirmation Order means that they could not have acted in bad faith. That argument also fails to persuade me, which I will address later in the opinion.

under §§ 1129(a)(3) and 1129(a)(7) of the Bankruptcy Code because of the Debtors' "apparent failure to maximize the value of assets combined with the lack of justification for the decision to cancel the [Auction]."

BNA Associates argues that it is not seeking to unwind the Plan or alter the ownership of the RT Lodge. Instead, BNA Associates asserts it is suing for compensatory and punitive damages based on GS's prepetition conduct. Therefore, BNA Associates states that the proper forum to adjudicate this claim is in Tennessee, not Delaware Bankruptcy Court.

Here, GS fails to bridge the gap between a § 363 sale and my Confirmation Order. This distinction matters because the transfer of the RT Lodge was not through a § 363 sale. Instead, the RT Lodge was indirectly transferred by operation of the Plan. While the Plan mentions and contemplates a § 363 sale, the Debtors never conducted one. Section 363 sales give special rights to the successful bidder. *See, e.g.*, *In re Christ Hosp.*, 502 B.R. at 176–77 (concluding that the sale and § 363(f)[35] gave the defendant those assets free and clear of all claims regarding the assets including defendant's prepetition conduct). Meanwhile, the RT Lodge vested in Reorganized RTI, which GS—as sole Holder of an Allowed Subclass 3A Claim—was the indirect owner of. The transfer of RT Lodge was never through a § 363 sale and did not receive the "free and clear" protection of § 363(f).

The Plan and Confirmation Order discuss the possibility of Reorganized RTI receiving assets and any property "free and clear of all Liens, Claims, charges or other encumbrances."[36] However, the free and clear provision of the Confirmation Order does not specifically mention GS and does not have the same effect as a § 363 sale order. A § 363 sale, as stated in previous decisions, puts the entire world on notice, including nonparties. *See In re Farmland Indus., Inc.*,

---

[35] Section 363(f) states "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate…"
[36] D.I. 1144 at ¶ 5.

9

376 B.R. at 729 ("[A] proceeding under section 363 is an in rem proceeding.  It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding") quoting *In re Met-L-Wood Corp.*, 861 F.2d at 1017.  A sale order is shielded from collateral attack not by res judicata, but by the virtue of the nature of rights transferred under 11 U.S.C. § 363. *In re Farmland Indus., Inc.*, 376 B.R. at 729.  A transfer through a confirmation order does not give the world the same notice and therefore does not have the same shield.  Consequently, the transfer of an asset from a debtor to a prepetition secured creditor in a confirmation order does not release that creditor from claims relating to the asset that might have arisen prepetition.

Both the Plan and Confirmation Order mention a Third Party Release.[37]  While GS arguably could fit the definition of a Released Party as a prepetition secured creditor, BNA Associates does not fit the definition of a Releasing Party because they do not hold a claim in the bankruptcy case.  In the Confirmation Order, I concluded that the Third Party Release is "[t]he release by the Releasing Parties."[38]  The Third Party Release was "a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third Party Release against any of

---

[37] The Plan states that Released Party means:
> in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Reorganized RTI and RT Lodge Company; (d) the Prepetition Agent; (e) each of the Prepetition Secured Creditors; (f) the DIP Facility Agent; (g) the Creditors' Committee and its members in such capacity only; (h) each of the DIP Facility Lenders; (i) NRD; and (j) each Related Person of any of (a) through (h) of the foregoing; provided that, notwithstanding the foregoing, a person is not a "Released Party" if such Person is an Excluded Party.
>
> D.I. 1135 at ¶ 162.

The Plan states that Releasing Party means:
> in its capacity as such: (a) each Holder of a Claim that votes to accept or reject this Plan and does not elect on their ballot to opt out of granting the releases set forth in ARTICLE X.C; (b) each Holder of a Claim that is Unimpaired under this Plan; (c) the Prepetition Agent; (f) each of the Prepetition Secured Creditors; (d) the DIP Facility Agent; (e) each of the DIP Lenders; (f) NRD; and (g) each Related Person of each of (a) through (f) of the foregoing. For the avoidance of doubt, a Holder of a Claim shall constitute a Releasing Party unless it affirmatively opts out of granting the releases by indicating on and returning its ballot.
>
> D.I. 1135 at ¶ 162.

[38] D.I. 1144 at ¶ O (ix)(b).

the Released Parties."[39]  The Third Party Release does not mention any new parties outside the Releasing Party definition, and while courts allow nonconsensual third-party releases, there is a stringent standard.  *See generally In re Millennium Lab Holdings II, LLC*, 575 B.R. 252 (Bankr. D. Del. 2017).  Since the Third Party Release in the Confirmation Order only contemplated a release by the Releasing Parties, the Confirmation Order does not bar BNA Associates' Tennessee Action.

GS fails to convince me otherwise for a few reasons.  First, BNA Associates was never a creditor to RTI and did not assert a claim in the bankruptcy.  BNA Associates might have originally objected to the Plan, but that Plan Objection was about the conduct of the Debtors regarding the Auction.  The Plan Objection was never about GS's prepetition conduct.  Second, the transaction that governed the transfer of the RT Lodge was not a § 363 sale, but part of the Plan.  Finally, BNA Associates was not a Releasing Party under the Plan or Confirmation Order.  The Tennessee Action is a suit between a third party and non-debtor of the original bankruptcy case and does not involve a fight over any of the assets of the bankruptcy estate.  The Tennessee Action does not affect the handling of the bankruptcy estate.  I therefore hold that it is not an impermissible collateral attack on the Confirmation Order.

### B. Res Judicata

#### a. Legal Standard

When a bankruptcy court enters a confirmation order, it renders a final judgment. *Zardinovsky v. Artic Glacier Income Fund (In re Arctic Glacier Int'l, Inc.)*, 901 F.3d 162, 166 (3d Cir. 2018) (citing 8 *Collier on Bankruptcy* ¶ 1141.01[4], at 1141–11 (Richard Levin & Henry J. Sommer eds., 16th Ed. 2017)).  A confirmation order judgment is like any other judgment, it is res judicata, and it bars all challenges to the plan that could have been raised during the

---

[39] D.I. 1144 at ¶ O (ix)(b).

bankruptcy proceeding. *In re Artic Glacier Int'l, Inc.*, 901 F.3d at 166. "A plan's preclusive effect is a principle that anchors bankruptcy law: '[A] confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.'" *Id.* (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997)) (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989)).

Res judicata applies if there is "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Bd. Of Trustees of Trucking Employees of N.J. Welfare Fund, Inc.-Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). "[B]ankruptcy cases require a careful application of res judicata. Although the first two prongs of the doctrine will usually be readily apparent, the third prong, whether the present suit is based on the previous cause of action, is usually far less clear." *Fox v. Congress Fin. Corp. (In re Target Indus., Inc.)*, 328 B.R. 99, 116 (Bankr. D.N.J. 2005). Claims are bound only when "the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *Id.* (quoting *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 337–38 (3d Cir. 2000)).

    b. <u>Applying Res Judicata to BNA Associates' Tennessee Action</u>

GS argues that BNA Associates' claims in the Complaint satisfy the three-factor test for claim preclusion. First, the Confirmation Order is a final order as a matter of law for purposes of res judicata. Second, BNA Associates actively participated in the plan confirmation process, as they appeared in the Chapter 11 cases and filed their Plan Objection. Finally, GS argues that the

claims in the Complaint are based on the same underlying events that were addressed in finding good faith in the Confirmation Order.

BNA Associates argues that GS's res judicata argument fails for two reasons.  First, the Plan Objection and Tennessee Action are based on different claims and conduct: the Tennessee Action is based on GS's prepetition conduct of not approving the Proposed BNA Sale, while the Plan Objection was based on the Debtors' conduct during the Auction process.  Second, BNA Associates argues that it has the right under basic res judicata principles to sue GS in the forum where they can seek full relief.  BNA Associates states that the bankruptcy court would not provide full relief because BNA Associates' only remedy was to prevent the confirmation of the Plan.

For a claim to fall within a bankruptcy court's jurisdiction, it must be one that would have some effect on the estate being "administered in bankruptcy." *CoreStates Bank, N.A. v. Huls Am. Inc.*, 176 F.3d 187, 191 (3d Cir. 1999) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  BNA Associates was never a creditor of the Debtors.[40]  They were a party interested in purchasing an asset, RT Lodge, from the Debtors.  They attempted to make the purchase prepetition but failed to secure the requisite consent from all involved parties.  While BNA Associates did raise an objection to the Plan, it did not deal with the prepetition conduct that is the subject of the Tennessee Action.  BNA Associates' claim against GS simply does not relate to any of the actions taken in the bankruptcy case.  The Tennessee Action will not affect the administration of the bankruptcy estate, will not alter any of the terms of the Plan, and will not modify the Confirmation Order in any way.

---

[40] BNA Associates was a bidder during the sales process before its cancellation. D.I. 886. Thus, BNA Associates had standing to examine, test, and object to the sufficiency of the sales process, and the decision to cancel the Auction.  *See, e.g.*, *Kabro Assocs., LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 273–74 (2d Cir. 1997) (holding that an aggrieved bidder had standing to the extent that a defendant's action destroyed the "intrinsic fairness" of the sale transaction).

Claims arising from the prepetition conduct of two non-debtors does not fall within this Court's jurisdiction. Accordingly, BNA Associates did not have any obligation to bring their state law claim against GS in the bankruptcy proceedings. *See, e.g.*, *Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.)*, 456 F.3d 1277, 1285–86 (11th Cir. 2006) (holding the plaintiff did not have to raise objections to the bankruptcy plan's confirmation because the objection would have only resulted in defeating the confirmation and not provided the relief the plaintiff sought under state law). Based on the totality of the circumstances, BNA Associates is not precluded from bringing its Tennessee Action. *See, e.g.*, *CoreStates Bank, N.A.*, 176 F.3d at 199–200 (noting "in general, a creditor who does not raise a claim against another party to the bankruptcy proceeding cannot be precluded from later asserting a claim"). Applying the res judicata principles, I conclude they are not met and will not bar BNA Associates' Tennessee Action.

### C. Collateral Estoppel

#### a. Legal Standard

Issue preclusion, also known as collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). There are four requirements for issue preclusion that must be satisfied to find the issue precluded. The prerequisites of applying issue preclusion are satisfied when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Id.* at 174–75 (quoting *Burlington Northern Railroad v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995)). "[I]t is well settled that a finding made on an issue not necessary to the judgment rendered cannot be

used for collateral estoppel purposes in a subsequent action." *Albanese v. Emerson Electric Co.*, 552 F. Supp. 694, 700 (D. Del. 1982).

      b. <u>Applying Collateral Estoppel to BNA Associates' Tennessee Action</u>

Similar to its res judicata argument, GS argues that BNA Associates' Tennessee Action is barred by collateral estoppel. GS contends that BNA Associates raised the same issues in the Plan Objection that it now alleges in the Complaint. GS claims that BNA Associates took steps to litigate the issues by filing the Plan Objection and seeking discovery from the Debtors. The Court conducted a Confirmation Hearing to consider objections to the Plan and rendered a final and valid judgment when it entered the Confirmation Order. Finally, GS argues that the vesting of the RT Lodge in an entity indirectly owned by GS and the attendant good faith findings were integral components of the Plan and essential to the Confirmation Order.

BNA Associates again asserts that its Plan Objection and Complaint in the Tennessee Action do not raise the same issues: the Plan Objection raised issues regarding the Debtors' actions during the Auction process, while the Tennessee Action complains of GS's prepetition conduct. BNA Associates also claims that even if the issues relevant to the Plan Objection and the Complaint in the Tennessee Action were the same, the parties never "actually litigated" them because BNA Associates withdrew the Plan Objection.

As stated above, collateral estoppel has four requirements that must be satisfied in order to find an issue precluded. *See In re Farmland Indus.*, 376 B.R. at 727. In this case, not all four elements are present. BNA Associates' Tennessee Action raises different issues that the Plan Objection never raised. I never decided whether GS's prepetition conduct was proper. Thus, that issue was never actually litigated and determined by a final and valid judgment. GS also fails to meet the fourth requirement. Even if there was a final and valid judgment about GS's

15

prepetition conduct, the determination would not be essential to the prior judgment. A final and valid judgment about GS's prepetition conduct is not essential, as it would not affect the bankruptcy estate or modify the Confirmation Order.

When applying collateral estoppel, I must find that all four factors are met and applicable. Here, because I find that all four elements are not present, I find that GS's collateral estoppel argument lacks merit. Therefore, I determine BNA Associates' Tennessee Action is not barred by collateral estoppel.

### D. Good faith vs. Bad Faith

#### a. Legal Standard

Section 1129(a)(3) of the Bankruptcy Code requires that a reorganization plan must be "proposed in good faith and not by any means forbidden by law." *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012); *see also In re Armstrong World Indus.*, 348 B.R. 136, 164 (Bankr. D. Del. 2006); s*ee also In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010). The advocate of the confirmation bears the burden of proof by a preponderance of the evidence. *See In re Am. Capital Equip., LLC*, 688 F.3d at 155; *see also In re Chemtura Corp.*, 439 B.R. at 608.

Courts generally interpret good faith in the context of plan confirmation to mean that there is a reasonable likelihood that the "plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Am. Capital Equip., LLC*, 688 F.3d at 156 (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004)). A plan is proposed in good faith only if it has "a legitimate and honest purpose to reorganize the debtor." *In re Chemtura Corp.*, 439 B.R. at 608. The requirement of § 1129(a)(3) "speaks more to the

process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. at 608.

                b.   <u>A Finding of Good Faith for the Plan does not Decide Good Faith of Prepetition Conduct</u>

GS argues that BNA Associates' allegations that GS acted in bad faith are "wholly contradicted by the Court's good faith findings in Paragraph Q of the Confirmation Order."[41] Paragraph Q of the Confirmation Order specifically determined that the Plan "was proposed in good faith" and "is the result of extensive, good faith, arm's-length negotiations" among GS and other parties in interest.[42] GS argues that the courts view the good faith requirement in the totality of the circumstances and with respect to plan development rather than the content of the plan. *See, e.g.*, *In re Chemtura Corp.*, 439 B.R. at 608 (examining whether a reorganization plan has been proposed in good faith, the court views it in the totality of the circumstances); *see also In re Bush Indus., Inc.*, 315 B.R. 292, 304 (Bankr. W.D.N.Y. 2004). GS asserts that the plan development began in 2020 with the negotiation of the Restructuring Support Agreement ("**RSA**") and Plan. GS argues that its decision to withhold its prepetition consent to the sale of the RT Lodge Lease to BNA Associates along with its actions in connection with the RSA and the Plan fall within the scope of the good faith findings in Paragraph Q of the Confirmation Order.

---

[41] D.I. 1465 at ¶ 29. Paragraph Q states:
    The Plan has been proposed in good faith and not by any means forbidden by law, and thereby complies with Bankruptcy Code section 1129(a)(3). The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors, the Prepetition Secured Creditors, the Creditors' Committee and the Equity Parent, bears the support of a Class of impaired creditors (Class 3 Prepetition Secured Debt Claims), and implements a result that is in keeping with (and, indeed, central to) the goals of the Bankruptcy Code. The Plan is designed to maximize the values available for distribution and to distribute them equitably. The Plan contains only provisions that are consistent with the Bankruptcy Code.

[42] *Id.*

In response, BNA Associates argues GS's characterization of Paragraph Q is overly broad. BNA Associates contends that Paragraph Q provides only that the Debtors proposed their Plan in good faith; noting that it was not a joint plan or GS's plan. BNA Associates acknowledges that the Debtors' Plan was the result of negotiations with certain parties, including GS, but contends that I never concluded that GS acted in good faith, with respect to all other parties at all times. BNA Associates argues that GS could have engaged in good faith negotiations with the Debtors, the Creditors' Committee, and the Equity Parent on the Plan process but acted in bad faith toward third parties, including BNA Associates, who were not involved in the Plan process. I agree.

The Confirmation Order clearly conveys only a finding that GS, Debtors, the Creditors' Committee, and Equity Parent had acted in good faith <u>toward each other</u> in the negotiation of the Plan. It does not mention whether GS <u>acted in good faith toward third parties at all times</u>. My findings in Paragraph Q should not be read to mean that the parties acted in good faith in all respects. *See, e.g.*, *In re Lyondell Chem. Co.*, 445 B.R. 277, 295 (Bankr. S.D.N.Y. 2011) (holding that finding of good faith with respect to one statutory requirement does not mean the court determined the party acted in good faith in other respects). GS's good faith argument fails and does not bar the Tennessee Action from moving forward.

## **CONCLUSION**

For the foregoing reasons, the Motion is denied.

IT IS SO ORDERED.

Dated: October 27, 2021

_____
JOHN T. DORSEY, U.S.B.J.